IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | |
| LAUREN HANDY : | NO. 1:22-cr-00096CKK |

**DEFENDANT LAUREN HANDY'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

Defendant Lauren Handy ("Ms. Handy"), by and through undersigned counsel, respectfully moves this Court to dismiss Counts One and Two of the Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

### INTRODUCTION

Ms. Handy is charged with Conspiracy Against Rights [18 U.S.C. § 241] and with violating the Freedom of Access to Clinic Entrances Act ("FACE") [18 U.S.C. § 248(a)(1)] due to her alleged participation in a sit-in at a local abortion clinic.

The conspiracy statute is specifically predicated on the violation of a constitutional right. The separate FACE statute does not predicate itself on any congressional finding (such as an effect on interstate commerce) or upon any other provision of the U.S. Constitution. But FACE was enacted after the decision in _Roe vs. Wade_, 410 U.S. 113 (1973), and is implicitly based upon a constitutional right to abortion. Like the conspiracy statute, the FACE Act is contained in Chapter 13 of Title 18 of the U.S. Code. That is the chapter on Civil Rights.

Since _Dobbs v. Jackson Women's Health Organization_, 597 U.S. ___ (2022), overruled _Roe_, there is no longer a federal constitutional interest to protect, and Congress lacks jurisdiction. For the same reason, the Court here does likewise. The events in question occurred prior to _Dobbs_,

but the ruling is dispositive nonetheless. The *Dobbs* court did not indicate that there is no longer a constitutional right to abortion; the court has made clear there never was.

The *Dobbs* case is fatal to the conspiracy charge. The *Dobbs* case and other precedents seriously undermine the FACE charge.

The pertinent part of the conspiracy statute provides, with emphasis supplied:

> **§ 241. Conspiracy against rights**
> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District <u>in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States</u>, or because of his having so exercised the same; [ ] They shall be fined under this title or imprisoned not more than ten years, or both; [ ].

The FACE act has no similar predicate, but like the conspiracy charge with the constitutional predicate, it is contained in the Civil Rights chapter, Chapter 13, of title 18. The entire chapter is predicated on the protection of constitutional rights. Where those do not exist, the Chapter has no application.

There is no general police power delegated to the federal government under the U.S. Constitution. Yet, a general police power is what the Government seeks to exercise here, indicting Ms. Handy for actions that lack a federal jurisdictional nexus and are properly a matter of state law. Application of FACE to Ms. Handy exceeds the powers granted to the federal government by the Constitution and offends both principles of federalism and the Tenth Amendment.

Therefore, Ms. Handy respectfully asks that the indictment be dismissed with prejudice for the reasons explained more fully below.

## LEGAL STANDARD

"A motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). If an indictment does not allege a federal offense, the Court

lacks jurisdiction, and the indictment may be dismissed. *See United States v. Spinner*, 180 F.3d 514, 516 (3d Cir. 1999) ("'failure of an indictment sufficiently to state an offense is a fundamental defect . . . and it can be raised at any time'") (quoting *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)); *see also United States v. Freeman*, 813 F.2d 303, 304 (10th Cir. 1987) ("It is well established . . . that the failure of an indictment to state an offense is a fatal defect that may be raised at any time.").

## ARGUMENT

**I. APPLICATION OF FACE TO MS. HANDY EXCEEDS CONGRESS' POWERS UNDER THE COMMERCE CLAUSE.**

**A. The Commerce Clause Does Not Provide Jurisdiction For This Prosecution.**

Enacted in 1994, the FACE Act reads in pertinent part as follows:

> Whoever—
>
> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services [shall be subject to the penalties and civil remedies set forth in the act].

18 U.S.C. § 248(a). Unlike many other federal criminal statutes, FACE contains no express jurisdictional element. It does not predicate itself on the interstate commerce clause, as many federal laws do, or upon any other provision of the federal constitution. In providing the basis for federal action, such a predicate also provides for its limitations. It prevents a statute, and its application, from exceeding the powers granted to the federal government under the predicate provision of the U.S. Constitution. *See, e.g., United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (jurisdictional nexus sufficient for constitutionality of criminal statute at issue (18 U.S.C. § 922(g)(1)); *but see United States v. Rodia*, 194 F.3d 465, 472-73 (3d Cir. 1999)

3

(jurisdictional nexus for offense not necessarily sufficient to support constitutionality of a statute under the Commerce Clause).

Article I, section 8, clause 3 of the U.S. Constitution grants Congress the power to regulate interstate commerce. This has been interpreted to reach three subjects of regulation: "the use of the channels of interstate commerce;" "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and "activities having a substantial relation to interstate commerce . . . *i.e.*, those activities that substantially affect interstate commerce[.]" *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (internal citations omitted).

"While this final category is broad, 'thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature.'" *United States v. Morrison*, 529 U.S. 598, 613 (2000) (quoting *Lopez*, 514 U.S. at 559-60). The Third Circuit has explained further that, though it is not necessarily a *per se* rule, Congress generally may "not regulate non-economic conduct based solely on that conduct's aggregate effect on interstate commerce." *United States v. Kukafka*, 478 F.3d 531, 535 (3d Cir. 2007) (internal quotation and marks citations omitted). To determine whether purely intrastate activity can be regulated under this third category, often referred to as the "Affectation Doctrine," courts look to "(1) the economic nature of the regulated activity; (2) **a jurisdictional element limiting the reach of the law** to a discrete set of activities that additionally has an explicit connection with or effect on interstate commerce; (3) **express congressional findings regarding the effects upon interstate commerce of the activity in question**; and (4) the link between the regulated activity and interstate commerce." *Id.* at 535-36 (internal quotation marks and citations omitted).

4

Applying these factors, the Third Circuit has previously upheld by the constitutionality of FACE under the Commerce Clause in *United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000) (emphasis supplied). The intervening two decades have worked changes in Commerce Clause jurisprudence that further undermine federal jurisdiction necessary to sustain FACE.

      **1.**  **The Indictment Fails To Allege Actions Within *Gregg*'s Scope.**

The Third Circuit's 2000 decision in *Gregg* sustained (over a dissent) the facial constitutionality of FACE, and even did so despite the statute's failure to include an express jurisdictional requirement as an element of a FACE violation.

      **2.**  **Post-*Gregg* Decisions Of The Supreme Court Make Clear That Congress Does Not Possess Unfettered Power To Regulate Simply By Invoking A "Market" For Services.**

While *Gregg* relies extensively on the interstate (or "national") market for abortion services to sustain the facial constitutionality of FACE, *see id.* at 263-67, it cannot be read in light of more recent case law to countenance broad criminalization of isolated and noneconomic <u>intrastate</u> activity. The subsequent precedent demands more specificity than simply some conceivable connection between the alleged conduct and an interstate market. The federal government's mere assertion that there is a "market" for certain services does not allow it to regulate that which would otherwise fall outside of the jurisdiction of the federal government. Additionally, absent clear Congressional intent, federal statutes are not generally to be interpreted as reaching local crimes that are traditionally matters of state concern.

      **a.**  **The Commerce Clause Requires Specificity In The Activity To Be Regulated Sufficient To Reasonably Cabin A Statute's Reach.**

"[T]he Commerce Clause does not authorize Congress to 'regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.'" *United States v. Whited*, 311 F.3d 259, 266 (3d Cir. 2022) (quoting *Morrison*, 529 U.S. at 617). The Third

5

Circuit, too, has "agree[d] that the concerns expressed in *Lopez* preclude applying the 'aggregation test' so broadly that it sweeps within its reach every use of every property that has an effect on interstate commerce no matter how diluted." *United States v. McGuire*, 178 F.3d 203, 211 (3d Cir. 1999); *see id.* ("The government is correct in conceding that 'some uses are so trivial or attenuated that they are not covered by [the statute].'").

While the Government is not constitutionally required to show that a *particular* instance of an offense has a substantial effect on interstate commerce, the "class of acts" proscribed by a statute pursuant to the Commerce Clause must be susceptible to description <u>with sufficient specificity that the category **does not include** noneconomic local crime that has no connection to interstate commerce.</u> For example, in *Gonzales v. Raich*, 545 U.S. 1 (2005), the Supreme Court explained that "purely local activities that are part of an **economic** 'class of activities' that have a substantial effect on interstate commerce" fall within the reach of Congress' Commerce Clause powers. *Id.* at 17 (citations omitted) (emphasis added). Because the growing of a product, even for local use only, is "quintessentially economic" activity, Congress could validly regulate the intrastate cultivation, possession, and use of marijuana. *Id.* at 25-26; *see also id.* at 32-33; *Jones v. United States*, 529 U.S. 848, 859 (2000) ("We hold that the [a statute criminalizing arson of property 'used in . . . any activity affecting . . . commerce'] . . . covers only property currently used in commerce or in an activity affecting commerce. The home owned and occupied . . . was not so used—it was a dwelling place used for everyday family living.").

Similarly, Congress is not permitted to criminalize brief and rare sit-ins of abortion clinics simply because *some* may have an economic character that might be aggregated to find an effect on interstate commerce. Nevertheless, this prosecution seeks to sweep into federal jurisdiction allegations of purely local noneconomic conduct. Any definition that included the purely local,

6

noneconomic act charged in this case would be insufficiently specific to pass scrutiny under Commerce Clause jurisprudence.

### b. An Interstate Market Alone Is Insufficient For Plenary Regulation Of Intrastate Conduct.

Following the Third Circuit's decision in *Gregg*, the U.S. Supreme Court made plain the insufficiency of an interstate "market" alone to support plenary federal regulation under the Commerce Clause of *any form* of intrastate conduct. Thus, in *NFIB v. Sebelius*, 567 U.S. 519 (2012), the Supreme Court held that an individual's decision to not purchase health insurance was beyond the regulation of Congress under the Commerce Clause. The Court reasoned that an individual's decision against purchasing health insurance is not economic activity, and moreover it could not be swept into the jurisdictional power of the federal government simply because there is, indisputably, a national market for healthcare. *See* 567 U.S. at 551-57.

### c. Federal Criminal Statutes Must Be Interpreted To Avoid Intrusion On The State's Traditional Control Over Local Criminal Conduct.

Furthermore, when confronted with "an improbably broad reach" of a federal criminal statute, it is appropriate to seek recourse to principles of federalism. This includes a presumption against "interpreting the statute's expansive language in a way that intrudes on the police power of the States" to reach "purely local crimes." *Bond v. United States*, 572 U.S. 844, 859-60 (2014) (internal citations omitted). While the federal government possesses only those powers expressly enumerated in the Constitution. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "As James Madison wrote, 'the powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.'" *Lopez*, 514 U.S. at 552 (quoting The Federalist No.

45, pp. 292-93 (C. Rossiter ed. 1961)). This division between the powers of the federal and State governments is not a trifling technicality, but rather "was adopted by the Framers to ensure the protection of 'our fundamental liberties.'" *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985) (quoting *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 572 (1985) (Powell, J., dissenting)); *see Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) (describing "dual sovereignty").

One of the powers the federal government lacks that the states retain is a general police power. "For nearly two centuries it has been 'clear' that, lacking a police power, 'Congress cannot punish felonies generally' . . . A criminal act committed wholly within a State 'cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.'" *Bond*, 572 U.S. at 854 (internal citations omitted). Thus, it must be clear that Congress intended to reach crime of a local nature before a federal statute will be construed to criminalize such conduct. *Id.* at 860.

There is no class of *economic* activity into which Ms. Handy's conduct legitimately falls. By failing to connect the alleged offenses in a meaningful to way particular economic actions over which there is federal jurisdiction, the Government impermissibly tries to regulate types of persons (namely, those advocating against abortion) instead of conduct. The Supreme Court has made clear, however, that Congress has the "power to regulate 'class[es] of activities,' . . . not classes of individuals, apart from any activity in which they are engaged[.]." *Sebelius*, 567 U.S. at 556 (internal quotation marks and citations omitted).

"[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance" regarding criminal law since "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States." *United*

*States v. Bass*, 404 U.S. 336, 349 (1971) (emphasis supplied). Ultimately, the incident at issue in this case is, at most, a state trespass, easily reached by the Washington, D.C. trespass statute. Pertinent parts of that statute provide:

> **§ 22-3302. Unlawful entry on property.**
>
> (a)
>
> (1) Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than the amount set forth in § 22-3571.01, imprisonment for not more than 180 days, or both. [ ]

Regulation of such matters, both civilly and criminally, has been a matter for the states since the founding of the United States. *See, e.g., Lopez*, 514, U.S. at 561 n.3 ("Under our federal system, the States possess primary authority for defining and enforcing the criminal law.") (citation omitted)).

Application of FACE to the facts at issue here would displace important policy decisions made by the District of Columbia in the exercise of its traditional sovereign power to proscribe and punish crime occurring on its streets. *See Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 169 F.3d 820, 841-42 (4th Cir. 1999) (describing most crimes as matters of traditional state concern) ("Congress not only has encroached upon the States' ability to determine when and how violent crime will be punished . . . but in so doing has blurred the boundary between federal and state responsibility for the deterrence and punishment of such crime.").

Without a basis for the Court's exercise of federal jurisdiction, the indictment in this case should be dismissed.

**II.     II. SINCE THE DECISION IN *DOBBS* NO FEDERAL CIVIL RIGHTS INTEREST CAN SUPPORT FACE'S CONSTITUTIONALITY.**

**Since the Dobbs Decision, There Is No Federal Interest In Abortion To Be Protected.**

With the issuance of the ruling in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022), federal Supreme Court precedent conferring a right to abortion was overruled. Accordingly, "the authority to regulate abortion [was] returned to the people and their elected representatives" because "the Constitution does not confer a right to abortion." *Id.* at 2279, 213 L. Ed. 2d 545. If there is to be a basis for sustaining Congress' ability to enact FACE, then, it can only be found in the Commerce Clause and not in the authority to protect a non-existent federal right to abortion.

## CONCLUSION

Based upon the foregoing reasons, Defendant Lauren Handy respectfully requests that Counts One and Two of the Indictment be dismissed.

**Respectfully submitted,**

*/s/ Martin A. Cannon*
Martin A. Cannon, Esquire (Admitted *Pro Hac Vice*)
Thomas More Society
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
Email: mcannonlaw@gmail.com
Phone: (402) 690-1484

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Boyle & Jasari
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
         bjasari@dennisboylelegal.com

Phone: (202) 430-1900

*Counsel for Defendant Lauren Handy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2023, I electronically filed the foregoing Motion and proposed Order with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to all counsel of record.

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire