IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **NO. 22-cr-00096-CKK** |
| | : | |
| v. | : | |
| | : | |
| **LAUREN HANDY,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through its counsel of record, respectfully submits its response in opposition to Defendant Lauren Handy's Motion to Dismiss for Lack of Jurisdiction (the "Motion to Dismiss").[1] ECF No. 159. Controlling case law establishes that the Commerce Clause vested Congress with ample authority to enact the Freedom of Access to Clinic Entrances Act ("FACE Act"). Jurisdiction over this prosecution therefore exists, and the government respectfully requests that the Defendant's motion be denied.

### Background

The Defendant's motion challenges the constitutionality of the FACE Act, which prohibits (among other things) using force, threats, and physical obstruction to injure, intimidate, or interfere with persons obtaining or providing available reproductive health care. *See* 18 U.S.C. § 248(a)(1). On October 22, 2020, Defendant Lauren Handy ("the Defendant"), along with her nine co-defendants, arrived at a clinic providing women's reproductive health services in Washington, D.C. ("the Clinic"), where the Defendant had made an appointment using a false name. As the

---

[1] With the exception of Co-Defendants Smith, Hinshaw, and Idoni, the co-defendants have filed a joinder notice. *See* ECF Nos. 160-165.

1

Superseding Indictment explains in further detail, when the Clinic opened, the Defendant and eight of her Co-Defendants forcefully pushed through the Clinic door into the Clinic's waiting room, while the tenth Co-Defendant broadcast the incident using social media.

When Co-Defendant Smith forcefully backed into the clinic, he caused one of the Clinic employees – Nurse K – to stumble and sprain her ankle. Once in the waiting room, the group worked together to blockade two of the Clinic's doors, with the Defendant directing her co-conspirators. Specifically, Co-Defendants Smith, Harlow, Marshall, Hinshaw, and Bell sat in chairs they had moved to obstruct passage into the Clinic's treatment area, and they chained and roped themselves together. Co-Defendants Goodman and Idoni stood in front of the doorway of the employee entrance to the Clinic. When a patient ("Patient A") arrived at the Clinic, the co-conspirators blocked Patient A from entering the treatment area. When Patient A attempted to use the employee entrance to gain access to the treatment area, Co-Defendants Goodman and Idoni blocked her from entering.

Meanwhile, the Defendant stood at the doorway of the Clinic's main entrance, blocking individuals from trying to enter the waiting room, and Co-Defendant Darnel livestreamed the activities of his co-conspirators in a Facebook event that he titled, "No one dies today."

As a result of the Defendants' actions on October 22, 2020, they were charged under 18 U.S.C. § 241 (Count 1) with conspiring to injure, oppress, threaten, and intimidate patients and employees of the Clinic in the free exercise and enjoyment of rights secured to them by the laws of the United States. Further, the Defendants were charged under 18 U.S.C. § 248(a)(1) (Count 2) with using force and physical obstruction to intentionally injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with, Patient A and the employees of the Clinic, because Patient A was obtaining, and the Clinic was providing, reproductive health services.

**Argument**

The Court should deny the Motion to Dismiss, which is wholly based upon the Defendant's mistaken premise, set forth on the first page of her motion, that the FACE Act is "implicitly based upon a constitutional right to abortion." ECF No. 159 at 1. Tellingly, the Defendant cites no case in support of this proposition – because there is none. As explained more fully below, long before the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (June 24, 2022), numerous federal courts – including the United States Court of Appeals for the District of Columbia Circuit – have held that the Commerce Clause, not the Fourteenth Amendment, provides the jurisdictional basis for § 248. For this reason, the ruling in *Dobbs* cannot affect the validity of § 248. Similarly, Count 1 charged the Defendant under 18 U.S.C. § 241, the civil rights conspiracy statute, for the deprivation of a right created by the civil provisions of the FACE Act. It is not premised on the Fourteenth Amendment or on the previously recognized right to obtain an abortion. Because both the criminal provisions of the FACE Act and the FACE Act's civil provisions, which underlie the civil rights conspiracy charge, are constitutionally sound, this Court should reject the Defendant's Motion to Dismiss both Count 1 and Count 2.

I. **POST-*DOBBS*, SECTION 248 OF TITLE 18 REMAINS A VALID EXERCISE OF CONGRESS'S AUTHORITY UNDER THE COMMERCE CLAUSE.**

   a. **The Ruling in *Dobbs* Does Not Affect the Validity of 18 U.S.C. § 248.**

The Defendant argues that the FACE Act is no longer constitutional because of the Supreme Court's recent ruling in *Dobbs*. *See* ECF No. 159 at 1. This argument is unpersuasive. The FACE Act is not limited by statute or otherwise to abortion care. It prohibits conduct that targets the provision of reproductive health care, which the statue defines as services to "include[] medical, surgical, counselling or referral services relating to the human reproductive system,

3

including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5). Historically, courts have not held (and the government generally has not argued) that the FACE Act was predicated upon or enacted to enforce or otherwise in furtherance of any Constitutional right to or protection for abortion care. Rather, § 248 has been upheld as an appropriate exercise of Congress's power to legislate under the Commerce Clause, which provides Congress with the authority to regulate individual behavior that affects interstate or foreign commerce. In fact, every court to have examined § 248's constitutionality has found it to be valid, and all have cited the Commerce Clause as the source of its validity. *Terry v. Reno*, 101 F.3d 1412-1417 (D.C. Cir. 1996) ("Because the legislative record contains sufficient findings to conclude that violent and obstructive protest activities substantially affect interstate commerce in reproductive health services, Congress did not exceed its commerce power in enacting the [FACE Act]."); *United States v. Gregg*, 226 F.3d 253, 264–66 (3d Cir. 2000); *Norton v. Ashcroft*, 298 F.3d 547, 556 (6th Cir. 2002); *United States v. Weslin*, 156 F.3d 292, 296 (2d Cir. 1998); *Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir. 1997); *United States v. Bird*, 124 F.3d 667, 678-684 (5th Cir. 1997); *United States v. Soderna*, 82 F.3d 1370, 1373-74 (7th Cir. 1996); *United States v. Dinwiddie*, 76 F.3d 913, 919 (8th Cir. 1996); *United States v. Wilson*, 73 F.3d 675, 680 (7th Cir. 1995); *Cheffer v. Reno*, 55 F.3d 1517, 1520 (11th Cir. 1995); *American Life League, Inc. v. Reno*, 47 F.3d 642, 647 (4th Cir. 1995). No court has determined that, in enacting § 248, Congress was enforcing the previously-recognized right to abortion, recognized by *Roe v. Wade*, 410 U.S. 113 (1973), as guaranteed by the Fourteenth Amendment. *See Norton*, 298 F.3d at 556 (collecting cases); *United States v. Dillard*, 184 F. Supp. 3d 999, 1001 (D. Kan. 2016) (collecting cases). *Dobbs* nowhere addresses or discusses Congress's authority to enact legislation pursuant to the Commerce Clause. Thus, neither the *Dobbs* decision generally, nor its specific holding overturning *Roe* in any way

4

affects the continued validity of § 248.

### b. Under Controlling D.C. Circuit Authority, the FACE Act is a valid exercise of Congress's Commerce Clause Authority.

The Defendant argues that Congress lacked authority under the Commerce Clause to enact § 248. This argument is entirely foreclosed by the D.C. Circuit's controlling opinion in *Terry v. Reno*, 101 F.3d 1412, 1417 (D.C. Cir. 1996), a case the Defendant failed to address in her motion. Relying primarily on a Third Circuit case that *upholds* the constitutionality of the FACE Act, the Defendant seeks to relitigate Congress's authority under the Commerce Clause. Even were this Court to find the Defendant's arguments persuasive, this Court lacks authority to overrule *Terry*. *See Brookens v. Acosta*, 297 F. Supp. 3d 40, 49 (D.D.C. 2018) (Simon, J) ("This Court will follow the case which directly controls, leaving to the D.C. Circuit the prerogative of overruling its own decisions.") (internal quotations and brackets omitted), *aff'd sub nom. Brookens v. Dep't of Lab.*, No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018); *cf. Agostini v. Felton*, 521 U.S. 203, 207 (1997) ("[L]ower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

As explained both by the D.C. Circuit in *Terry* and by every other circuit court to have opined on this issue, the FACE Act falls squarely within Congress's Commerce Clause authority. *Terry*, 101 F.3d at 1418; *Gregg*, 226 F.3d at 264–66; *Norton*, 298 F.3d at 556; *Weslin*, 156 F.3d at 296; *Bird*, 124 F.3d at 678-684; *Hoffman*, 126 F.3d at 584; *Soderna*, 82 F.3d at 1373-74; *Dinwiddie*, 76 F.3d at 919; *Wilson*, 73 F.3d at 680; *Cheffer*, 55 F.3d 1517; *American Life League*, 47 F.3d at 647. Congress's commerce power broadly extends to activities that "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce." *United States v. Lopez*, 514 U.S. 549, 561 (1995). In other words, Congress's authority under the Commerce Clause encompasses the regulation of commercial

activity and, resultantly, of obstructive conduct that substantially affects interstate commerce. *See Terry*, 101 F.3d at 1417; *Cheffer*, 55 F.3d at 1520.

In arguing that the FACE Act is unconstitutional, the Defendant stresses that the Act contains no express jurisdictional element requiring that the jury find that the Defendant's activities were in or affecting commerce. ECF No. 159 at 3. The Supreme Court, however, has held that Congress may, without identifying a jurisdictional element, proscribe conduct where it has rationally concluded that the *class of activities* substantially affected interstate commerce. *Perez v. United States*, 402 U.S. 146, 154 (1971); *Soderna*, 82 F.3d at 1373 (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 332 (1991)) ("[T]he test [is] not the effect of the particular conduct alleged, but that effect cumulated over all the conduct subject to the statute."). The FACE Act is a quintessential example of such a statute; in fact, every court of appeals to address the issue, including the D.C. Circuit, has held that Congress' extensive findings provide a rational basis for concluding the conduct prohibited by 18 U.S.C. § 248 substantially affects interstate commerce. *Terry*, 101 F.3d at 1418 ("[V]iolent and obstructive activity outside abortion clinics adversely affects interstate commerce in reproductive health services."); *see also Gregg*, 226 F.3d at 264–66; *Norton*, 298 F.3d at 556; *Weslin*, 156 F.3d at 296; *Bird*, 124 F.3d at 678-684; *Hoffman*, 126 F.3d at 584; *Soderna*, 82 F.3d at 1373-74; *Dinwiddie*, 76 F.3d at 919; *Wilson*, 73 F.3d at 680; *Cheffer*, 55 F.3d at 1520-21; *American Life League, Inc.*, 47 F.3d at 647.

The Defendant alleges that upholding the FACE Act under the Commerce Clause would contravene *Lopez*, as well as subsequent Supreme Court cases outlining the power of Congress under the Commerce Clause,[2] and would result in an expansion of the commerce power to

---

[2] *See* ECF No. 159 at 4, 6-7 (citing *United States v. Morrison*, 529 U.S. 598 (2000), *Gonzalez v. Raich*, 545 U.S. 1 (2005), and *NFIB v. Sebelius*, 567 U.S. 519 (2012)).

activities she describes as "noneconomic local crimes." ECF No. 159 at 6. She argues that these "noneconomic local crimes" are unconnected with interstate commerce or connected only by a "conceivable connection between the alleged conduct and an interstate market." ECF No. 159 at 5-6. Such a position is contradicted by controlling authority,[3] inconsistent with the history of post-*Terry* enforcement,[4] and contradicted by Congress's myriad findings (beyond the mere existence of an "interstate market") discussed in the aforementioned circuit court cases.[5] Indeed, *Terry* explicitly discussed and found that § 248 remained a valid exercise of Congress's Commerce Clause authority in light of the (then recent) ruling in *Lopez*. *See Terry*, 101 F.3d at 1415 (discussing the impact of *Lopez*).

The Defendant has not cited a single case in the Motion to Dismiss that undercuts the holding of *Terry*. In fact, as noted above, the Defendant does not discuss D.C. Circuit precedent at all, but instead primarily relies upon a Third Circuit case, *Gregg*, *upholding* the constitutionality of FACE under the Commerce Clause. While citing the case, the Defendant argues that its

---

[3] *See Terry*, 101 F.3d at 1418 ("[T]he chain connecting the prohibited activity and interstate commerce contains only one link: violent and obstructive activity outside abortion clinics adversely affects interstate commerce in reproductive health services. In enacting the Access Act, Congress did not exceed its Commerce Clause power.").

[4] No D.C. Circuit case has held that the Supreme Court's post-*Lopez* Commerce Clause jurisprudence affected the holding of *Terry*. Moreover, although *Terry* was decided in 1996, the Defendant cites no cases since which have extended the holding to reach crimes that have no connection to economic activity.

[5] *See Terry*, 101 F.3d at 1417 (explaining that Congress "found that clinics purchase equipment and supplies in interstate commerce, own and lease office space, and generate income" and that these findings, combined with "the interstate travel of patients and staff" supported "the conclusion that the Access Act does not exceed Congress's Commerce Clause power"); *Norton*, 298 F.3d at 557 ("Both the Senate Judiciary Committee and the House Committee on Labor and Human Resources submitted extensive reports detailing that clinic blockades and violent anti-abortion protests burdened interstate commerce."); *Gregg*, 226 F.3d at 263 (compiling congressional findings and holding that based on those findings, "the activity proscribed by FACE has a substantial effect on the interstate commerce of reproductive health services").

7

reasoning is no longer controlling. *See* ECF No. 159 at 7. But not only is the Defendant's argument premised on an out-of-circuit holding that stands for the opposite proposition than what she advocates, her argument has recently been flatly rejected by a district court in the Third Circuit. That court expressly considered and rejected the argument that subsequent federal court decisions undermined the Third Circuit's conclusion in *Gregg* that § 248 is a constitutional exercise of Congress's Commerce Clause authority. *See United States v. Houck*, No. 22-CR-00323 (E.D. Pa. Jan. 10, 2023), Doc. 51 at 12 (upholding the continued validity of § 248 under the Commerce Clause). And, as that same court explained, when an individual interferes "with the kind of commercial activity – reproductive health services – to which [§ 248] seeks to ensure access," that person is engaging in "conduct within the 'class of activities' [§ 248] regulates." *Id.* Section 248 is not unconstitutional as applied to individual actions, and the Defendant's argument that her conduct at the Clinic represented a "local, noneconomic act" is unavailing.

In sum, controlling D.C. Circuit precedent is clear that "[i]n enacting [§ 248], Congress did not exceed its Commerce Clause power." *Terry*, 101 F.3d at 1418. Therefore, the Motion to Dismiss must be denied.

## II. THE DEFENDANT IS CHARGED UNDER 241 WITH INTERFERING WITH THE STATUTORY RIGHT CREATED BY THE FACE ACT.

Just as the *Dobbs* decision has no bearing on the charge against the Defendant under § 248, it is similarly irrelevant to the charge against the Defendant under § 241. The FACE Act creates a federal right to obtain and provide, and to seek to obtain and provide, available reproductive health services free from force, threats, and physical obstruction, *see* 18 U.S.C. § 248(c)(1), and it is *this* right against which the Defendant and her co-defendants conspired in violation of § 241.

Section 241 prohibits conspiring to "injure, oppress, threaten, or intimidate any person…in the free exercise or enjoyment of any right or privilege secured to him by the Constitution *or laws*

8

of the United States, or because of his having so exercised the same." 18 U.S.C. § 241 (emphasis added).  A right has been "secured" by the laws of the United States when the right has been "made specific either by the express terms of the federal constitution or laws or by decisions interpreting them." *United States v. Kozminski*, 487 U.S. 931, 941 (1988).

The civil provision of the FACE Act, 18 U.S.C. § 248(c)(1), creates such a specific right – the right to obtain and provide, and to seek to obtain and provide, available reproductive health services free from force, threats, or physical obstruction.  That Congress intended the provision to establish an individual right is clear both from the text and legislative history of the statute.  Federal rights created by federal statutes routinely form the basis of criminal civil rights prosecutions, and this case is no different.  *See* 42 U.S.C. § 3631; *United States v. Johnson*, 390 U.S. 563, 566 (1968) (finding that Section 201 of the Civil Rights Act of 1964 created a right enforceable under Section 241).  Because the Defendant was charged with conspiring to injure, oppress, threaten, and intimidate patients and employees of the Clinic in the free exercise and enjoyment of the right secured to them by the FACE Act – not any right to abortion, however secured – the *Dobbs* decision is irrelevant to this Court's jurisdiction over the § 241 charge.

### III. THE COURT NEED NOT DETERMINE WHETHER THERE REMAINS A CONSTITUTIONAL RIGHT TO ABORTION IN ORDER TO ESTABLISH JURISDICTION.

The Court has requested supplemental briefing on the following two issues: 1) whether the scope of *Dobbs* is in fact confined to the Fourteenth Amendment, and 2) whether, if so, any other provision of the Constitution, such as the Thirteenth Amendment, could confer a right to abortion. ECF No. 167.  The Court need not consider, let alone decide these issues to resolve the pending motion, as doing so is not necessary to answer the straightforward jurisdictional questions before the Court.  Put simply, the Court need not reach whether the Thirteenth Amendment – or any other

provision of the Constitution - protects a right to abortion or that Congress had authority under anything other than the Commerce Clause to enact the FACE Act. Rather, as explained above, the constitutionality of § 248, which guarantees a right to obtain and provide, or to seek to obtain or provide, a range of available reproductive health services free from force, threats, or physical obstruction, has been upheld as a valid exercise of Congress's Commerce Clause power. Further, the basis of the § 241 charge against the Defendant is not the right to abortion, but the statutory right established by § 248 to obtain and provide, or to seek to obtain and provide available reproductive services free from force, threat, or physical obstruction. Therefore, this Court has jurisdiction over Counts 1 and 2 regardless of whether any Constitutional provision confers any right to abortion.

## Conclusion

For the foregoing reasons, the Government requests that this Court deny the Motion to Dismiss.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section
Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/Elizabeth Aloi*
ELIZABETH ALOI
JOHN CRABB, Jr.
D.C. Bar. No. 1015864 (Aloi)
NY Bar No. 2367670 (Crabb)
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20001
Email: Elizabeth.Aloi@usdoj.gov
          John.D.Crabb@usdoj.gov

## **CERTIFICATE OF SERVICE**

      SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the defendant.

DATED: March 3, 2023                                             */s/ Sanjay H. Patel*
                                                                                       Sanjay H. Patel

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-96-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **LAUREN HANDY,** | : | |
| | : | |
| **Defendant.** | : | |

# ORDER

**AND NOW**, this \_\_\_\_ day of _____ 202\_\_, after reviewing the submissions by the Government and defense counsel, and a hearing on this matter;

It is hereby **ORDERED** that the defendant's motion to dismiss is **DENIED**.

**BY THE COURT:**

_____
**THE HONORABLE COLLEEN KOLLAR-KOTELLY**
United States District Judge