## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 22-CR-96 (CKK) |
| | : | |
| LAUREN HANDY, | : | |
| JONATHAN DARNEL, | : | |
| PAULA "PAULETTE" HARLOW, | : | |
| JEAN MARSHALL, | : | |
| JOHN HINSHAW, | : | |
| HEATHER IDONI, | : | |
| WILLIAM GOODMAN, | : | |
| JOAN BELL, and | : | |
| HERB GERAGHTY, | : | |
| Defendants. | : | |

## GOVERNMENT'S MOTION TO ADMIT RULE 404(b) EVIDENCE OF OTHER ACTS

The United States hereby requests that, pursuant to Fed. R. Evid. 404(b) (FRE 404(b)), certain evidence of other acts or crimes be admitted in the trials of this matter.   Ten Defendants were charged with civil rights conspiracy and Freedom of Access to Clinic Entrances (FACE) Act offenses for the October 22, 2020, blockade of a reproductive health clinic in Washington, D.C., which oppressed and interfered with the access rights of patients and health care providers.   The government moves *in limine* to admit evidence of certain Defendants' other crimes or acts where they engaged in similar conduct, which is proof of motive, intent, knowledge, plan, and associations; and highly probative of the charged conduct.   Those other acts were committed by the following six Defendants: Handy, Darnel, Idoni, Goodman, Bell, and Hinshaw (collectively, "404(b) Defendants").[1]   As detailed herein, the government respectfully submits that those 404(b) Defendants' prior acts are admissible under FRE 404(b).

---

[1] The government submits that one of Defendant Handy's other acts, which preceded the charged offenses, is in fact intrinsic evidence.   If this Court finds that it is extrinsic, then it is nevertheless admissible under FRE 404(b).

I.        **Summary of the Charged Conduct**

On October 22, 2020, the Defendants blockaded a reproductive health clinic in Washington, D.C.   ECF No. 113.   In the weeks leading up to the blockade, several Defendants planned and coordinated the blockade, which included arranging lodging and travel for those Defendants who traveled from other states.   *Id*.   Defendant Handy – one of the blockade organizers – also made a fake appointment for services at the clinic on the date of the blockade to help facilitate entry into the secured facility.   *Id*.   Minutes before the clinic was scheduled to open, and Defendant Handy's fake appointment, Handy and eight other co-defendants gathered outside of the clinic while a tenth Defendant, Darnel, announced that a livestream of the blockade was imminent.   *Id*.   When the clinic opened for business, the nine Defendants forcefully pushed through the clinic door and into the waiting room while Darnel broadcast the incident using social media.   *Id*.   The forced entry caused a clinic nurse to stumble and suffer bodily injury.[2]   *Id*.

Once in the waiting room, the Defendants worked together to blockade two of the clinic's doors.   *Id*.   As Defendant Darnel livestreamed the blockade, Defendant Handy directed her remaining eight Co-defendants on what to do.   *Id*.   Defendants Hinshaw, Bell, and other Co-defendants, rearranged furniture and used chains and ropes to bind themselves together and physically block a door to the clinic's treatment area.   *Id*.   Defendants Goodman and Idoni went into the hallway outside of the clinic and used their bodies to blockade the doorway of the clinic's employee entrance.   *Id*.   And, Defendant Handy blocked the clinic's main entrance that led into the waiting room.   *Id*.   Collectively, the Defendants interfered with patients' ability to access, and the clinic's provision of, reproductive health care.   *Id*.

---

[2] Defendant Smith has pleaded guilty for committing a felony FACE Act offense that resulted in this nurse's bodily injury.   See ECF Nos. 177, 181.

As Defendants Handy, Idoni, Goodman, Bell, and others physically blocked clinic access, Defendant Darnel continuously broadcasted the incident and narrated the event, which included explaining to his on-line audience why the Defendants chose to engage in this conduct.   *Id*. Defendant Darnel explained that the Defendants were "doing their job," and that they were "not allowing women to enter the abortion clinic . . . to kill their children."   *Id*.

## II.     Summary of Proposed FRE 404(b)

The government intends to offer evidence at trial of 12 other acts (or incidents) committed by various 404(b) Defendants.   The similarity of each other act committed by the respective 404(b) Defendant to the charged FACE Act offense is admissible to establish their intent, motive, knowledge, plan, and associations to commit the charged offenses, as permitted by FRE 404(b).

Specifically, all 12 of the other acts involved either a clinic invasion or an actual blockade where the 404(b) Defendants sought to interfere with patients and providers because the patient or provider was exercising their reproductive health care rights.   The other acts were motivated by the 404(b) Defendants strongly held anti-abortion beliefs, and is evidence of their intent and motive to blockade the clinic charged in the indictment.   All of the other acts are also admissible to rebut the 404(b) Defendants' denial or anticipated defenses.   Further, some of those other acts are proof of scienter for the 404(b) Defendant against whom the evidence is admitted, and proof of that Defendant's plan and prior association to commit the charged offenses.   Those other acts and the bases for each act's admissibility are discussed below.

## III.     The Proffered Evidence is Admissible Pursuant to FRE 404(b)

The D.C. Circuit has routinely recognized that FRE 404(b) is a rule of *inclusion* rather than exclusion.   *See United States v. Machado-Erazo*, 901 F.3d 326, 333 (D.C. Cir. 2018) (holding that "[i]ndeed, Rule 404(b) is a rule of inclusion rather than exclusion prohibiting the admission

of other crimes evidence in but one circumstance – for purpose of proving that a person's actions

conformed to his character") (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).

Specifically, the D.C. Circuit has recognized that FRE 404(b) "permits such evidence for other

purposes, including proof of motive, intent, knowledge, identity and absence of mistake."

*Machado-Erazo*, 901 F.3d at 333.    As the Court of Appeals has reiterated:

> Although stated as a restriction, the Rule is actually one of "inclusion rather than
> exclusion."    *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000).
> Evidence is only prohibited if it is offered for the impermissible inference that a
> defendant is of bad character resulting in bad conduct.    *See, e.g., United States v.
> Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990).    Thus evidence of a defendant's
> prior bad acts is admissible for purposes *unrelated* to the defendant's character or
> propensity to commit crime, such as "proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or accident."    Fed.
> R. Evid. 404(b); *see also Miller*, 895 F.2d at 1436 ("[U]nder Rule 404(b), *any*
> purpose for which bad-acts evidence is introduced is a proper purpose so long as
> the evidence is not offered solely to prove character.").

*United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (emphasis in original).

Analysis of the admissibility of other acts evidence involves two steps.    First, the Court

determines "whether the evidence is probative of some issue other than character."    *Cassell*, 292

F.3d at 792.    Second, if the FRE 404(b) criteria are met, the evidence should be admitted unless

it is prohibited by other "general strictures limiting admissibility, such as Rule 403."    *Id*.    A

limiting instruction can guard "against the jury's reliance on impermissible inferences that might

have been drawn from Rule 404(b) evidence."    *United States v. Brown*, 597 F.3d 399, 400 (D.C.

Cir. 2010).    Admissible evidence under FRE 404(b) includes acts that occurred both prior and

subsequent to the offense charged in the indictment.    *See United States v. Gallo*, 543 F.2d 361,

364 (D.C. Cir. 1976) ("evidence of prior and subsequent acts are admissible and probative of [a

defendant's] knowledge"); *see also United States v. Briley*, 770 F.3d 267, 276 (4th Cir. 2014) ("we

make 'no distinction' between prior and subsequent bad acts under Rule 404(b) . . . with timing of

the act often being a matter of evidentiary weight for the jury.") (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)).

The proffered other acts evidence should be admitted in this case because "1) the evidence of other crimes or acts is relevant in that it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' Fed.R.Evid. 401; 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act [citations omitted]." *Bowie*, 232 F.3d at 930.   Specifically: a) all of the other acts evidence is admissible to prove the 404(b) Defendants' intent and motive for committing the charged offenses; b) all of the other acts evidence is admissible to rebut any 404(b) Defendant's denial or anticipated defense; c) the *prior* acts evidence (those committed before the charged offense) is admissible to establish Defendant Handy, Idoni, Goodman, and Bell's knowledge; d) Defendant Handy's prior act from March 19, 2019, is admissible intrinsic evidence, or alternatively admissible to prove her opportunity and plan to interfere with the victims' reproductive health rights; and e) Defendant Goodman and Bell's prior act from October 14, 2020, is admissible to show their associations with one another as co-conspirators.   *See United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) ("Rule 404(b) evidence will often have [] multiple utility, showing at once, intent, knowledge, motive, preparation and the like.").

A.  <u>All 12 of the proffered other acts should be admitted against the respective Defendant to prove intent and motive.</u>

The 404(b) Defendants are charged in Count Two with committing a FACE Act offense, in violation of 18 U.S.C. § 248(a)(1).   The elements of § 248(a)(1) are as follows: 1) the defendant

used force, threat of force, or a physical obstruction; 2) the defendant intentionally injured, intimidated, or interfered with the victim, or attempted to do so; and 3) the defendant acted because the victim was obtaining or providing reproductive health services.   The FACE Act offense has as essential elements a *mens rea* state of intent and motivation.   For the government to meet the burden of proof required to establish any defendant's guilt, it must show that the defendant had the requisite intent to: injure, intimidate, or interfere with the victim; and motivation to act because the victim was a patient or provider of reproductive health services.

Evidence of the 12 other acts committed by the respective 404(b) Defendants is relevant to show that Defendant's intent and motivation for blockading the clinic as charged in the superseding indictment.   As discussed below, in all 12 incidents, the 404(b) Defendants engaged in conduct with intent to interfere with, or an attempt to interfere with, the provision of reproductive health care.   Whether these 12 other acts were in fact a blockade or a clinic invasion that involved a trespass into the reproductive health care facility, the 404(b) Defendants' purpose was to prevent access to reproductive health care.   These other acts were motivated by the 404(b) Defendants' strongly held anti-abortion beliefs, and they sought to prevent patients and providers from obtaining or providing reproductive health care.   Their purpose in committing the other acts was the same as that in the charged case – to prevent abortions from occurring.   These other acts prove that the 404(b) Defendants possessed the requisite intent and motivation to commit the charged FACE Act offense.   *See United States v. Long*, 328 F.3d 655, 664 (D.C. Cir. 2003) ("Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent, but that evidence is not required to have exact congruence.") (internal quotations and citations omitted); *Cassell*, 292 F.3d at 792 (evidence of a prior bad act is admissible to prove motive and intent).

6

    *1.   January 30, 2021 – clinic invasion by Defendants Handy and Darnel*

On January 30, 2021, Defendants Handy and Darnel, along with another individual, participated in a planned reproductive health clinic invasion.   Defendant Handy and another individual, aided and abetted by Darnel, trespassed into a Maryland reproductive health care clinic, and used threats and a physical obstruction to intimidate and interfere with the clinic's patients and providers.   They had traveled to Maryland to participate in the event, and their conduct was motivated by their strongly held anti-abortion beliefs.   Defendant Darnel livestreamed the clinic invasion on social media, during which both Defendants stated that their purpose was to prevent abortions from taking place.   Video footage of that livestream recorded co-conspirators discussing the plan and Defendant Handy and Darnel's agreement to commit the act.   Defendant Handy and Darnel were arrested and charged with local trespass offenses.   This incident is proof of Defendant Handy and Darnel's intent to interfere with the victim clinic's patients and providers, and their motive to commit the charged FACE Act offense.   The government will present evidence of this other act through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer, and video footage from Defendant Darnel's livestream.

    *2.   November 16, 2021 – clinic invasion by Defendants Handy, Darnel, and Bell*

On November 16, 2021, Defendants Handy, Darnel, and Bell, along with others, trespassed into a Virginia reproductive health clinic.   They traveled to the clinic, blocked the facility's doors, and disrupted operations in an attempt to interfere with the provision of reproductive health care. Defendants Handy, Darnel, and Bell were repeatedly told to leave, which they refused and thereby created a security risk for the clinic's patients and providers.   Defendants Handy, Darnel, and Bell were arrested and charged with local trespass offenses.   Their stated purpose was to stop children from being murdered.   Defendant Darnel appeared to be recording the incident with his

cell phone in an apparent attempt to livestream the incident on social media.    Defendant Handy, Darnel, and Bell's conduct at the Virginia clinic is evidence of their intent to interfere with the provision of reproductive health services, which was motivated by their anti-abortion beliefs. This other act is proof of their intent to interfere with the provision of reproductive health care and their motive commit the charged FACE Act offense.    The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

### 3. May 26, 2018 – clinic invasion by Defendant Handy

On May 26, 2018, Defendant Handy and other individuals trespassed into a District of Columbia health care clinic (different from the victim clinic charged in the superseding indictment).    Defendant Handy traveled to the clinic and disrupted its operations by accosting clinic patients and discouraging them from obtaining reproductive health services.    Defendant Handy and the other invaders refused to leave, which created a security risk for the clinic's patients and staff, and resulted in Handy's arrest for trespass.    This other act is proof of Defendant Handy's intent to interfere with the patients and providers of the victim clinic, and her motive to commit the charged FACE Act offense based upon her strongly held anti-abortion beliefs.    The government will present evidence of this other act through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

### 4. March 19, 2019 – clinic invasion by Defendant Handy[3]

---

[3] The government submits that this incident is intrinsic evidence, rather than extrinsic FRE 404(b).    The supporting arguments for admission of this intrinsic evidence is addressed further below.    Should this Court find that the incident is extrinsic, the government alternatively argues that it is admissible under FRE 404(b).

On March 19, 2019, Defendant Handy and others trespassed into the victim clinic prior to the date charged in the indictment.   While in the clinic's waiting room, Defendant Handy and the others disrupted the clinic's operations by refusing to leave and creating a security risk for the clinic's patients and providers.   Defendant Handy's stated purpose was to protest against the clinic's provision of reproductive health services.   Defendant Handy was arrested and charged with local trespass offenses.   This other act is proof of Defendant Handy's intent to interfere with the same clinic's provision of reproductive health care, and her motivation to commit the charged FACE Act offense based upon her strongly held anti-abortion beliefs.   The government will present evidence of this other act through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

### 5.   *August 27, 2020 – clinic blockade by Defendant Idoni*[4]

On August 27, 2020, Defendant Idoni and several other individuals participated in a planned blockade of a Michigan reproductive health care clinic, which was livestreamed by one of the participants on social media.   Defendant Idoni and others used their bodies to block the clinic's entrances.   Their stated purpose was to prevent patients from obtaining, and the clinic from providing, reproductive health services.   This other act is proof of Defendant Idoni's intent to interfere with the patients and providers of the victim clinic, and her motivation to commit the charged FACE Act offense based upon her strongly held anti-abortion beliefs.   Defendant Idoni was arrested by local law enforcement and charged with trespass offenses, and subsequently indicted in the Eastern District of Michigan for civil rights conspiracy and FACE Act offenses. *See U.S. v. Zastrow, et al.*, 23-cr-20100 (EDMI).   The government will present evidence of this

---

[4] Defendant Idoni has been indicted in two other districts for federal civil rights conspiracy and FACE Act offenses for this incident, and those summarized in Nos. 6 & 7, below.   The government does not intend to present evidence that Defendant Idoni has been indicted or is a defendant in these pending cases.

incident through the testimony of one eyewitness and video footage showing Defendant Idoni blockading the Michigan clinic.

### 6.   *April 16, 2021 – clinic blockade by Defendant Idoni*

On April 16, 2021, Defendant Idoni and another individual blockaded a second Michigan reproductive health care clinic.    Defendant Idoni again used her body to block a clinic entrance. She used chains and a lock to bind herself to the door, similar to the Defendants' conduct in the charged case.    Defendant Idoni's stated purpose was to prevent patients from obtaining, and the clinic from providing, reproductive health services.    This other act is proof of Defendant Idoni's intent to interfere with the patients and provider of the victim clinic, and her motivation to commit the charged FACE Act offense based upon her strongly held anti-abortion beliefs.    Defendant Idoni was arrested by local law enforcement and charged with trespass offenses, and subsequently indicted in the Eastern District of Michigan for violating the FACE Act.    *See U.S. v. Zastrow, et al.*, 23-cr-20100 (EDMI).    The government will present evidence of this incident through the testimony of one law enforcement eyewitness and video footage showing Defendant Idoni blockading the second Michigan clinic.

### 7.   *March 5, 2021 – clinic blockade by Defendant Idoni*

On March 5, 2021, Defendant Idoni and several other individuals participated in a planned blockade of a Tennessee reproductive health care clinic, which was livestreamed by several participants on social media.    Defendant Idoni and others used their bodies to block the clinic's entrances.    Their stated purpose was to prevent patients from obtaining, and the clinic from providing, reproductive health services.    This other act is proof of Defendant Idoni's intent to interfere with patients and providers of the victim clinic, and her motivation to commit the charged FACE Act offense based upon her strongly held anti-abortion beliefs.    Defendant Idoni was

arrested by local law enforcement and charged with trespass offenses, and subsequently indicted in the Middle District of Tennessee for civil rights conspiracy and FACE Act offenses.   *See U.S. v. Gallagher, et al.*, 22-cr-327 (MDTN).   The government will present evidence of this incident through the testimony of one eyewitness and video footage showing Defendant Idoni blockading the Tennessee clinic.

### 8.   *October 14, 2020 – clinic invasion by Defendants Goodman and Bell*

On October 14, 2020, Defendants Goodman and Bell, along with others, participated in a clinic invasion at a New Jersey reproductive health care facility.   Defendants Goodman and Bell, while aiding and abetting each other and other individuals, blocked the facility's building vestibule in an attempt to interfere with patients from accessing the clinic.   They also trespassed into the clinic disrupting operations in an attempt to prevent patients from obtaining, and the clinic from providing, reproductive health services.   Their stated purpose was to protest against abortions, and to remain in the clinic until it was shut down.   Defendants Goodman and Bell were arrested and charged with local trespass offenses.   This other act is evidence of Defendant Goodman and Bell's intent to interfere with the patients and staff of the victim clinic, and motive to commit the charged FACE Act offense based upon their strongly held anti-abortion beliefs.   The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

### 9.   *November 27, 2021 – clinic invasion by Defendant Goodman*

On November 27, 2021, Defendant Goodman and others participated in a clinic invasion at a New York reproductive health care facility to protest against that clinic's provision of abortion care.   Defendant Goodman along with others trespassed into the clinic after making a fake appointment, and disrupted the clinic's operation by refusing to leave and creating a security risk

for the clinic's patients and staff.   Defendant Goodman disrupted the clinic's operations in an attempt to interfere with the provision of reproductive health care.   Defendant Goodman was arrested and charged with local trespass offenses.   This other act is evidence of Defendant Goodman's intent to interfere with the provision of reproductive health care, and his motive to commit the charged FACE Act offense based upon his strongly held anti-abortion beliefs.   The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

*10. May 14, 2020 – clinic invasion by Defendant Goodman*

On May 14, 2020, Defendant Goodman and another individual trespassed into a District of Columbia reproductive health care facility (different from the victim clinic charged in the superseding indictment) to protest against that clinic's provision of abortion care.   They disrupted the clinic's operations in an attempt to prevent the patients from obtaining, and the clinic from providing, reproductive health care.   Defendant Goodman and the other individual refused to leave and were subsequently arrested and charged with local trespass offenses.   This other act is evidence of Defendant Goodman's intent to interfere with the provision of reproductive health care, and his motivation to commit the charged FACE Act offense based upon his strongly held anti-abortion beliefs.   The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

*11. April 24, 2021 – clinic invasion by Defendant Hinshaw*

On April 24, 2021, Defendant Hinshaw and others trespassed into a New York reproductive health clinic and disrupted clinic operations in an attempt to interfere with the clinic's provision of reproductive health services.   Specifically, Defendant Hinshaw and other individuals entered the clinic, kneeled on the ground, and refused to leave.   Their purpose was to protest against

abortion care that was provided by the clinic.   The invaders posed a security risk to the clinic's patients and staff, and passively resisted arrest.   Defendant Hinshaw was arrested and charged with local trespass offenses.   This other act is evidence of Defendant Hinshaw's intent to interfere with the victim clinic and patients, and his motivation to commit the charged FACE Act offense based upon his strongly held anti-abortion beliefs.   The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

*12. August 27, 2021 – clinic invasion by Defendant Hinshaw*

On August 27, 2021, Defendant Hinshaw and others participated in a clinic invasion at a Pennsylvania reproductive health care facility.   Specifically, Defendant Hinshaw, along with other individuals, trespassed into the facility and disrupted the clinic's operations by refusing to leave and creating a security risk for the clinic's patients and staff.   Defendant Hinshaw the others stated purpose for trespassing at the facility was to prevent the clinic from performing abortions. Defendant Hinshaw was arrested and charged with local trespass offenses.   This other act is evidence of Defendant Hinshaw's intent to interfere with the provision of reproductive health services, and his motivation to commit the charged FACE Act offense based upon his strongly held anti-abortion beliefs.   The government will present evidence of this incident through the testimony of two eyewitnesses, one of whom was an arresting law enforcement officer.

B.   <u>All 12 of the proffered other acts should further be admitted against the respective Defendant to rebut that Defendant's denial or anticipated defense.</u>

All of the other acts discussed above should be admitted to rebut the 404(b) Defendants' denial and anticipated defenses that they lacked the requisite intent and motivation to commit the charged offenses.   *See Mathews v. United States*, 485 U.S. 58, 64-65 (1988) ("A simple plea of

not guilty, Fed.Rule Crim.Proc. 11, puts the prosecution to its proof as to all elements of the crime charged . . .").   Questions of the Defendants' intent and motive will likely be important at trial depending on the defenses they raise.   In the FRE 404(b) calculus, facts of consequence include facts that are relevant to reasonably anticipated defenses.   *See United States v. Douglas*, 482 F.3d 591, 597-600 (D.C. Cir. 2007) (evidence of a prior arrest for possession of crack cocaine with intent to distribute was relevant and admissible to establish knowledge and intent in a prosecution for intent to distribute crack cocaine, even though the defendant did not dispute elements of knowledge and intent, because the evidence made it more probable that he knew the substance he was charged with possessing was crack cocaine; and the government bore the burden of proving intent beyond a reasonable doubt); *see also United States v. Roberson*, 581 F.Supp.3d 65, 75 (D.D.C. 2022) (admitting other acts evidence as highly probative of rebutting a defendant's denial).   "'Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.'"   *Id*., (citing *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007)).

Here, the government anticipates the 404(b) Defendants may claim that they were engaged in First Amendment protected activity – namely their right to protest, and that their collective decision to invade the clinic was happenstance based upon their coincidental presence at the scene. Should any 404(b) Defendant pursue this defense, the other acts evidence will become material to the government's proof of that Defendant's motive, which was to use a physical obstruction to interfere with patients from obtaining and clinic staff from providing reproductive health services including abortion related care.   To forbid introduction of any 404(b) Defendant's other acts could create a factual gap that may undermine a persuasive presentation of the evidence to the jury.   Put another way, by providing the jury with other acts evidence that establishes the 404(b) Defendant's

intent and motive for committing the charged offenses, it provides context for what could otherwise appear to be an isolated incident of unwitting activism.

The other acts committed by the respective 404(b) Defendants, therefore, are probative of that Defendant's intent and motive in committing the charged offenses, and rebutting their anticipated defenses that they lacked the requisite *mens rea* to prove the FACE Act violation. The other acts are factually similar and not remote. They are relevant to the material issue of proving the 404(b) Defendants' intent and motive, and should be admitted under FRE 404(b).

    C.  <u>The proffered *prior* acts evidence should be admitted against the respective Defendant to prove knowledge.</u>

The proffered other acts that preceded the charged blockade (*prior* acts) are also relevant to establish that particular 404(b) Defendant's knowledge that their conduct charged in the indictment was in fact criminal. Other acts are routinely admitted to demonstrate knowledge, *Cassell*, 292 F.3d at 792, and here, the prior acts prove that the respective 404(b) Defendant knew at the time of the charged offenses that the planned blockade was a crime. *See United States v. Sang Han*, 962 F.3d 568, 572-73 (D.C. Cir. 2020) (evidence of a defendant's past expenditures on flashy cars (and other items) as business expenditures on his personal tax returns for years 2004 to 2009 were relevant to 2010-2011 tax evasion charges, to show that he "developed 'knowledge of [his] tax obligations and began willfully planning to defy them").

In the proffered other acts that occurred prior to the charged offense, the respective 404(b) Defendants were arrested by local law enforcement, thereby establishing knowledge that their commission of the similar charged conduct was a crime. Specifically, those prior acts that preceded the October 22, 2020, charged blockade are: the May 26, 2018, incident at the District of Columbia clinic involving Defendant Handy; the March 19, 2019, incident at the victim clinic

from the charged case involving Defendant Handy (the government submits, as argued below, that notwithstanding the FRE 404(b) analysis, this is intrinsic evidence); the August 27, 2020, incident at the Michigan clinic involving Defendant Idoni; the October 14, 2020, incident at the New Jersey clinic involving Defendants Goodman and Bell; and the May 14, 2020, incident at the District of Columbia clinic involving Defendant Goodman.

In each prior act, those particular 404(b) Defendants' refused to leave the clinic premises when asked by staff and law enforcement, and each Defendant was charged with a local offense. These prior acts should be admitted against those particular 404(b) Defendants as to their knowledge that the charged conduct was a crime.

Here, the proffered prior acts committed by Defendants Handy, Idoni, Goodman, and Bell involved similar conduct and resulted in arrests, which is probative of a guilty mind.   The prior acts show that Defendants Handy, Idoni, Goodman, and Bell were aware that blockading the victim clinic named in the superseding indictment was indeed a crime, and their choice to risk arrest by their participation in the FACE Act offense is evidence that they possessed a culpable state of mind at the time of the charged conduct.   Accordingly, the proffered prior acts are further admissible on these grounds pursuant to FRE 404(b).

D. <u>Defendant Handy's prior act from March 19, 2019, is intrinsic to the charged crimes, or alternatively admissible to prove her plan to commit the charged offenses.</u>

As a threshold matter, the government submits that Defendant Handy's other act from March 19, 2019, committed at the victim clinic that resulted in Handy's arrest, is intrinsic to the charged offenses.   However, should this Court determine that Defendant Handy's prior act from March 19, 2019, is extrinsic, the government submits that it is nevertheless admissible under FRE 404(b) for the reasons argued above.

The government anticipates the evidence at trial will show that Defendant Handy's other act from March 19, 2019, is intrinsic to the charged offenses because it was a precursor to the conspiracy to blockade the clinic on October 22, 2020.   The government will prove that the Defendants met in advance of the October 22, 2020, blockade, where Handy – based upon her familiarity with the facility from her prior March 19, 2019, arrest – described the clinic's layout and planned the entry by making a fake appointment.   She further identified the two access doors to blockade, and then actively directed the Defendants on what to do during the blockade.

"Rule 404(b) excludes only evidence 'extrinsic'" or "'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache.")); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("The Rule does not bar 'evidence ... of an act that is part of the charged offense'") (citation omitted); *Gartmon*, 146 F.3d at 1020 (evidence that defendant charged with fraud had threatened a co-conspirator not "other crime evidence" but instead "inextricably intertwined" with charged offense); *United States v. Garces*, 133 F.3d 70, 77 (D.C. Cir. 1998) (holding that evidence that "was part of the story" was not other crimes evidence); *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("Moreover, Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'   The testimony revealing that Early used his cousin's Kaiser Permanente health insurance card to obtain medical treatment was intrinsic to the charged offense because it helped establish his identity as the driver of the Mazda . . ."); Fed. R. Evid. 404(b), Advisory Comm. Note regarding 1991 Amendment ("The amendment

does not extend to evidence of acts which are 'intrinsic' to the charged offense [citation omitted].").

This well-established principle applies with particular force in cases, such as this, that involve a conspiracy: "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."   *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994).   Moreover, where evidence of the defendants' acts are either inextricably intertwined with the charged conspiracy, or provide evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis, even if those acts fall outside the period during which the indictment alleges the conspiracy existed.   *See United States v. Diaz*, 878 F.2d 608, 614-16 & n.2 (2nd Cir. 1989) (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior); *Bowie*, 232 F.3d at 929 ("[U]ncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the crime charged," thus taking such acts outside of the scope of FRE 404(b).).[5]

---

[5] It should be noted that *Bowie* seems to have questioned the admission of intrinsic other crimes evidence without a 404(b) analysis, but one panel of the Circuit cannot overrule standing precedent.   *See, e.g., United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("panels of this court [] are obligated to follow controlling circuit precedent until either [the Court of Appeals] sitting *en banc*, or the Supreme Court, overrule it."); *see also United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003) ("Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic distinction, [citation omitted], we have nonetheless recognized that "at least in a narrow range of circumstances ... evidence can be 'intrinsic to' the charged crime").   In any event, the *Bowie* court recognized that its position does not affect the admissibility of the evidence: the "only consequences of labeling evidence 'intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon the defense counsel's request."   *Id.* at 927.

Here, evidence of Defendant Handy's familiarity with the victim clinic from her prior arrest provided the framework for the Defendants' plan and preparation to blockade the clinic. In fact, the government will prove at trial that one of Defendant Handy's co-conspirators admitted to law enforcement officers that Handy's prior knowledge with the facility was used to plan precisely how the blockade would be executed.    Defendant Handy used that knowledge from her March 19, 2019, arrest regarding the clinic's security measures and layout to plan the blockade.    As part of the conspiracy, the Defendants relied on that knowledge to: make the fake appointment to facilitate entry; scheme how to blockade the clinic's doors; and assigned roles for each co-conspirator (e.g., Defendant Smith would force entry; Bell, Harlow, Hinshaw, and Smith would blockade the interior door; Handy would blockade the main entrance and direct the Defendants; Goodman and Idoni would blockade the employee entrance; Geraghty would float and assist the other blockaders as needed; and Darnel would livestream the event).    Therefore, Defendant Handy's prior invasion of the clinic and her arrest are intrinsic to the charged conspiracy, which "arose out of the same transaction or series of transactions as the charged offense . . . or if it is necessary to complete the story of the crime of trial."    *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996).

If, however, this Court determines that Defendant Handy's prior trespass at the victim clinic is extrinsic, then alternatively, it is relevant to prove her plan to commit the charged offenses. She was a leader and organizer of the charged conspiracy and FACE Act offenses.    Defendant Handy mobilized her Co-defendants and directed them on what to do.    ECF No. 113.    Her prior familiarity with the clinic is admissible to prove her plan to commit the charged FACE Act offense. FRE 404(b) specifically provides for the admission of other acts to prove opportunity, preparation, and plan.    Fed.R.Evid. 404(b); *see United States v. Hite*, 916 F.Supp.2d 110, 116 (D.D.C. 2013)

("plan evidence is admissible under Rule 404(b) to show the existence of a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other.") (internal quotations and citations omitted).

Defendant Handy's prior act of trespass at the victim clinic is highly probative of her plan to commit the charged offenses.  Her familiarity with the facility's premises and operations provided her with the opportunity to organize and plan the subsequent blockade.  *See* ECF No. 113.  Defendant Handy mobilized blockade participants from around the country, made a fake appointment to help facilitate entry into the clinic, identified herself as a patient to clinic staff minutes before the clinic was scheduled to open, directed her co-conspirators on what to do following the forced entry, and she blockaded the clinic's main entrance.  *Id*.  Her prior arrest at the same facility during which she had trespassed into the clinic provided her with the capacity to perform the charged crimes.  Her co-conspirator admitted as much following arrests.  Accordingly, the prior March 19, 2019, incident is admissible against Defendant Handy to prove her plan to commit the crimes.

E. Defendant Goodman and Bell's prior act from October 14, 2020, is admissible evidence of prior association that proves formation of the charged civil rights conspiracy.

The charged offenses were committed by the Defendants acting in concert with one another, most of whom were from out-of-state.  Any prior acts evidence of association is particularly relevant to proving their intent to conspire with one another.  Accordingly, the government submits that the prior acts committed together by Defendants Goodman and Bell on October 14, 2020, is further admissible to show their relationships.  Their prior partnership in similar criminal behavior is relevant to show their association.  *See, e.g.*, *United States v. Burwell*, 642 F.3d 1062, 1067 (D.C. Cir. 2011) (evidence of defendants' three car jackings, thefts of 40

cars, use of false names, and marijuana cultivation and distribution was relevant to prove their association); *United States v. Gaviria*, 116 F.3d 1498, 1532-33 (D.C. Cir. 1997) (other crimes evidence properly admitted where "'it shows or tends to show the existence of a relationship between the defendants, and whether it shows or tends to show the defendants had a common scheme or plan which included the offenses for which they are now charged.'"); *United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996) (evidence of the criminal activity preceding the charged conspiracy helped explain the subsequent formation of the larger conspiracy).

Evidence of Defendant Goodman and Bell's prior activities with one another will elucidate the formation, evolution, and organization of the charged conspiracy.   In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses "to inform the jury of the background of the conspiracy charged, to complete the story of the crime charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed . . ."   *United States v. Williams*, 205 F.3d 23, 33–34 (2d Cir. 2000); *see also United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) (evidence of defendants' involvement in uncharged hostage takings was relevant for non-propensity purposes to show how those defendants started to work together as kidnappers, to show their motive and intent to kidnap wealthy civilians to extort ransom money, and to establish their state of mind).

Accordingly, the October 14, 2020, prior act is admissible against Defendants Goodman and Bell to prove their relationship and is relevant to proving the charged conspiracy offense.

## IV.    The probative value of the proffered other acts does not run afoul FRE 403

Federal Rule of Evidence 403 (FRE 403) precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice . . . ."   Fed.R.Evid. 403 (emphasis added).   That rule "tilts, as do the rules [of

evidence] as a whole, toward the admission of evidence in close cases." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984).

The other acts evidence outlined above should not be excluded pursuant to FRE 403. Its definition of prejudicial evidence does not include incriminating evidence that simply prejudices a defendant's chances of acquittal. The Supreme Court has described "unfair" prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Court of Appeals has explained that FRE 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value. [citations omitted, alterations in original].

*Gartman*, 146 F.3d at 1021 (affirming admission, pursuant to Rule 404(b), of evidence that the defendant, charged with fraud, had placed gun in co-conspirator's vagina and threatened her); *see also United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("Rule 403 'does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially outweigh[s]" the evidence's probative value.'"). "[I]n determining whether the probative value is *substantially* outweighed by the danger of unfair prejudice it is a sound rule that the balance should be struck in favor of admission when the evidence indicates a close relationship to the event

charged." *United States v. Clarke*, 24 F.3d 257, 265-66 (D.C. Cir. 1994) (quotations and citations omitted) (emphasis in original).

The other acts evidence offered here presents no danger of unfair prejudice. It does not, for example, inject something new and prejudicial into the case, such as violence or perversion, which might inflame the jury. Even if this Court were to conclude that the proffered other acts presented some "unfair prejudice," it would not "substantially outweigh" the evidence's great probative value. The balancing between probative and unfairly prejudicial should lean toward inclusion. *See, e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.").

As discussed above, the proffered other acts evidence[6] is extremely probative of facts in issue, namely the 404(b) Defendants intent, motive, knowledge, plan, and association. That probative value is not substantially outweighed by any unfair prejudice. In fact, inasmuch as the other acts evidence is similar to the charged conduct, it exclusively involves incidents of non-violent obstruction, trespass, and disruptive behavior, and it would not inject any new or inflammatory issue into the case.

---

[6] The government maintains that Defendant Handy's prior act from March 19, 2019, is intrinsic to the charged offenses. Nevertheless, it is alternatively admissible under FRE 404(b) for the reasons argued in this motion.

## V.      Conclusion

For all of the foregoing reasons, the government respectfully requests that this Court enter

an order admitting the proffered other acts evidence against the respective 404(b) Defendants.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section
Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ John Crabb, Jr.*
JOHN CRABB, Jr.
NY Bar No. 2367670
Assistant United States Attorney
601 D Street, NW
Washington, DC 20001
Email: John.D.Crabb@usdoj.gov

## **CERTIFICATE OF SERVICE**

      SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the defendant.

DATED: April 7, 2023                                   */s/ Sanjay H. Patel*
                                                    Sanjay H. Patel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 22-CR-96 (CKK)** |
| | : | |
| **LAUREN HANDY,** | : | |
| **JONATHAN DARNEL,** | : | |
| **PAULA "PAULETTE" HARLOW,** | : | |
| **JEAN MARSHALL,** | : | |
| **JOHN HINSHAW,** | : | |
| **HEATHER IDONI,** | : | |
| **WILLIAM GOODMAN,** | : | |
| **JOAN BELL, and** | : | |
| **HERB GERAGHTY,** | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this _____ day of _____ 202__, after reviewing the

Government's motion to admit evidence of other acts pursuant to Federal Rule of Evidence

404(b), it is hereby **ORDERED** that the Government's motion is **GRANTED**.

BY THE COURT:

_____
**THE HONORABLE COLLEEN KOLLAR-KOTELLY**
United States District Judge

26