UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>LAUREN HANDY, *et al.*,<br><br>    Defendants. | Criminal Action No. 22-096 (CKK) |

MEMORANDUM OPINION
(July 25, 2023)

Defendants are charged by indictment, which describes their actions in broad terms as effecting a conspiracy to prevent patients from accessing a reproductive health clinic in the District of Columbia and injuring an employee of the clinic in the process. Defendants have moved to dismiss both counts of the operative indictment, mainly arguing that *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) precludes application of the charged statutes to violent or obstructive conduct in or around a reproductive health clinic. *Dobbs* does not sweep so broadly. Accordingly, and upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court shall **DENY** Defendants' [159] Motion to Dismiss for Lack of Jurisdiction.[2]

---

[1] The Court's consideration has focused on:
- Defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 159 ("Motion" or "Mot.");
- The Government's Response in Opposition to Defendant's Motion to Dismiss, ECF No. 189 ("Opp.");
- Defendant Geraghty's Reply to Government's Opposition to Motion to Dismiss, ECF No. 196;
- Defendant Handy's Reply in Support of Her Motion to Dismiss, ECF No. 197 ("Repl."); and
- The Superseding Indictment, ECF No. 113 ("Indictment").

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

[2] The Motion was filed by Defendant Handy (1) and is joined by all Defendants except for Defendant Smith (3), who has since entered a plea of "guilty" as to Count One of the Indictment.

1

I. **BACKGROUND**

Defendants are charged by indictment with: (1) conspiracy against rights (i.e., a statutory right to access a reproductive health clinic to receive or provide reproductive health services), in violation 18 U.S.C. § 241, a felony; and (2) a misdemeanor violation of the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248.

The Indictment centers on Defendants' successful scheme to disrupt access to a reproductive health clinic in the District of Columbia on October 22, 2020. *Id.* at 5. The Indictment alleges that Defendant Handy orchestrated this conspiracy, directing her co-Defendants to undertake various preparations to blockade the clinic. *Id.* For example, Defendant Harlow allegedly brought with her a duffle bag containing chain and rope, which Defendants Smith, Harlow, Marshall, Hinshaw, and Bell used to lock the clinic's doors. *Id.* at 6. For her part, Defendant Handy allegedly made an appointment at the clinic under a false name in order to ensure her entry and her co-conspirators' entry shortly thereafter. *See id.* at 4. According to the Indictment, at least Defendant Smith's entry was particularly violent, causing a nurse "to stumble and break her ankle." *Id.* at 5. Defendant Handy then purportedly directed others to blockade the clinic's doors, locking staff in and potential patients out. *See id.* at 5-6. Meanwhile, Defendant Darnel live-streamed the incursion, telling listeners that he and co-conspirators had "intervene[d] physically with their bodies to prevent women from entering the clinic[.]" *Id.* at 6.

At the time of the alleged conspiracy, Supreme Court precedent continued to recognize a substantive due process right to abortion under certain circumstances. Last year, however, the Supreme Court held that the Fourteenth Amendment contained no right to abortion. *See Dobbs*, 142 S. Ct. at 2279. Relying on *Dobbs*, Defendant Handy moved to dismiss the indictment for lack of jurisdiction, arguing that *Dobbs*' holding further precluded any federal regulation of conduct

around or within facilities that provide, among other things, abortion services. *See* Mot. at 1. In light of the recent and substantial change in the Supreme Court's jurisprudence, this Court requested supplemental briefing on *Dobbs*' scope and whether any other provision of the Constitution might provide some protection for abortion access. Because this case is mainly governed by clear appellate precedent, this Court does not reach that issue.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a criminal defendant may, at any time, move to dismiss an indictment for lack of jurisdiction. When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment," whose allegations the Court must "presume . . . to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed). Nevertheless, the burden is on the Government to establish jurisdiction by a preponderance of the evidence. *United States v. Carvajal*, 924 F. Supp. 2d 219, 230 (D.D.C. 2013).

## III.   DISCUSSION

Although Defendants invoke *Dobbs* rather broadly, their legal challenge is fairly narrow. Defendants move to dismiss the indictment exclusively for lack of jurisdiction, arguing mainly that Congress does not have the authority to regulate the charged conduct under the Commerce Clause. Mot. at 5. This primary argument is foreclosed by clear appellate precedent, *Terry v. Reno*, 101 F.3d 1412 (D.C. Cir. 1996). Second, Defendants briefly argue, incorrectly, that Count One cannot be applied to the charged conduct, because 18 U.S.C. § 241 governs only rights guaranteed by the Constitution and laws effecting constitutional rights.

### A.  Commerce Clause and the FACE Act

Defendants first and predominantly move to dismiss Count Two on the grounds that

3

Congress lacks the authority to regulate conduct around or within reproductive health clinics under the Commerce Clause. As the Court of Appeals explained in *Terry*, the FACE Act criminalizes:

> By force or threat of force or by physical obstruction, intentionally injur[ing], intimidat[ing] or interfer[ing] with . . . any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from obtaining or providing reproductive health services . . .

101 F.3d at 1414 (quoting 18 U.S.C. § 248(a)(1)). Force, threats of force, physical obstruction, and violence have substantial effects on reproductive health "clinics and their operations," which, in turn, has a substantial effect on interstate commerce. *Id.* at 1416-17. As *Terry* explains, Congress made sufficient findings to support this conclusion. *Id.* Whether one considers a criminal ban on obstructive conduct within and around a reproductive health clinic to regulate protest or the provision of reproductive health services, that obstructive conduct nevertheless substantially affects interstate commerce. *Id.* at 1417.

Nothing in *Dobbs* puts *Terry*'s holding into question. *Dobbs*, of course, is not a case about the Commerce Clause. The question presented addressed exclusively Section 1 of the Fourteenth Amendment. Order at 2, ECF No. 167 (Feb. 6, 2023). The Commerce Clause is mentioned nowhere in the majority opinion, and only once in the dissent. *See* 142 S. Ct. at 2335 (Breyer, J., dissenting). At its broadest, the sole "issue before th[e] Court [in *Dobbs*] [was] what the Constitution says about abortion[,]" and not what the Constitution says about any other clause. *See id.* at 2304 (Kavanaugh, J., concurring). Furthermore, *Dobbs* leaves undisturbed, at present, all other constitutional rights, even those found in a substantive due process right to privacy. *See id.* at 2243.[3] Because *Terry* remains good law, the Court is bound to apply it. Therefore,

---

[3] The parties mainly contest the FACE Act's application to abortion services, as it appears Defendants' strong opposition to lawful abortions is the main motivation for the charged conduct. Although not necessary to the resolution of the pending Motion, it should nevertheless be noted that the FACE Act is not aimed exclusively at abortion. It is also aimed at all other reproductive health services, including sonograms, counseling, and the provision of

Defendants' Commerce Clause challenge to Count Two fails.

### B. Section 241

Defendants next argue that *Dobbs*' holding extends to section 241, too. Broadly, section 241 criminalizes conspiracies to strip an individual of a right or privilege guaranteed by the Constitution or the "laws of the United States." Defendants maintain (1) that *Dobbs*' constitutional holding retrospectively applies to section 241 such that they could not have conspired to impede a nonexistent right to abortion access, and (2) that they could not have conspired to violate any "law" within the meaning of section 241. The Government contests both arguments. Without reaching retrospective application, the Court concludes that, as a matter of statutory interpretation, the FACE Act is a "law" of the United States for the purposes of section 241.

Defendants rightly note that the Government's application of section 241 here is rather novel. To this Court's knowledge, not since approximately a year ago had the Government charged in any district section 241 for obstruction of access to reproductive health services. *See, e.g.*, *United States v. Gallagher*, --- F. Supp. 3d ---, 2023 WL 4317264, at *14 (M.D. Tenn. July 3, 2023). However unconventional the use of section 241 here, clear and longstanding principles of statutory interpretation nevertheless compel the conclusion that the FACE Act is, indeed, a sufficient predicate for section 241.

Like any federal statute, section 241, specifically, must be given its "plain" meaning. *See United States v. Price*, 383 U.S. 787, 800 (1966) (concluding that the statute's "language [] is plain and unlimited"). To do so, the Court begins with the statutory text. *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1018 (D.C. Cir. 2018). The Court must first apply the ordinary

---

contraception. *See* 18 U.S.C. § 248(e)(5) (defining "reproductive health services"). At present, the Constitution continues to provide some privacy protections to "intimate sexual relations, contraception, and marriage." *Dobbs*, 142 S. Ct. at 2243.

"tools of statutory interpretation." *See United States v. Bronstein*, 849 F.3d 1101, 1104 (D.C. Cir. 2017).  Only in the face of ambiguity may the Court employ additional canons of construction, including, for instance, legislative history or the rule of lenity.  *See United States v. Fischer*, 64 F.4th 329, 346 (D.C. Cir. 2023) (legislative history); *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (rule of lenity).

The conspiracy statute here sweeps quite broadly.  *See United States v. Lanier*, 520 U.S. 259, 264 (1997).  Yet its meaning is clear:  "its language embraces all of the rights secured to citizens by all of the Constitution and *all of the laws* of the United States."  *Price*, 383 U.S. at 800 (emphasis added).  Through its use of the term "all of the laws," Congress "intended the statute to incorporate by reference a large body of potentially evolving federal law."  *See United States v. Kozminski*, 487 U.S. 931, 941 (1988).  Although the right or privilege at issue must be "specific[ally]" identified by the "express terms" of the federal law that creates the right or privilege, that is not a high bar.  *See id.*  For example, a federal law permitting a retired law enforcement officer to carry a concealed firearm "that has been shipped or transported in interstate or foreign commerce" is a "law of the United States" that creates an enforceable privilege.  *See DuBerry v. District of Columbia*, 824 F.3d 1046, 1049 (D.C. Cir. 2016) (quoting 18 U.S.C. § 926C(a)) (applying similar language in 42 U.S.C. § 1983).  Similarly, a federal law's requirement that a nursing home must protect a resident's health and safety creates a privilege that a nursing-home resident may enforce.  *See Health and Hosp. Corp. of Marion Cty. v. Talevski*, 143 S.Ct. 1444, 1450 (2023) (also applying similar language in 42 U.S.C. § 1983).

Here, the FACE Act operates quite similarly.  By rendering it unlawful to interfere with any person receiving or obtaining reproductive health services, including abortion services, 18 U.S.C. § 248(a)(1), it provides a clear statutory privilege to be free from such interference.  *Accord*

*Gallagher*, 2023 WL 4317264, at *14.  The FACE Act even provides a private cause of action.  18 U.S.C. § 248(c).  In doing so, the FACE Act "specific[ally]" identifies by "express terms" a right or privilege created by federal law.  *See Kozminski*, 487 U.S. at 941.

In the face of clear statutory text, Defendants rely mainly on legislative history and context.  Defendants predominantly note that, as *Price* explains, section 241 is a Reconstruction-era statute that was aimed at the nascent Ku Klux Klan and others who sought to defeat the implementation of the Reconstruction Amendments and the Civil Rights Act of 1866.  Repl. at 23 (citing *Price*, 383 U.S. at 800-02).  Defendants evidently propose adding to the statute "adopted pursuant to Section 5 of the Fourteenth Amendment" after "laws of the United States" in light of this purported legislative history.  *See id.* at 22.  Even if Congress *meant* to insert such language, the Court may not "'rescue Congress from its drafting errors'" in the face of clear statutory text.  *See King v. Burwell*, 576 U.S. 473, 514 (2015) (Scalia, J., dissenting) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004)).  In any event, any law, including Reconstruction-era laws, should be interpreted first in accordance with their plain text, not first in accordance with their historical context.  *See Talevski*, 143 S.Ct. at 1450 ("'Laws' means 'laws,' no less today than in the 1870s[.]").  To the extent that Defendants complain that section 241 covers a broad array of conduct under the Court's reading, "Congress may, and often does, enact separate criminal statutes that may, in practice, [often] cover some of the same conduct."  *See Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995).  It is for Congress to "improve upon" statutory text, not the Court.  *See Pavelic & LeFlore v. Marvel Entertainment Grp.*, 493 U.S. 120, 126 (1989).  Because, as the Supreme Court has held, section 241's text is clear and plain, and because the FACE Act creates a right or privilege under federal law, Defendants' challenge to Count One fails.

## IV. CONCLUSION

For the foregoing reasons, Defendants' [159] Motion to Dismiss for Lack of Jurisdiction is **DENIED**. An appropriate order consistent with this decision accompanies this memorandum opinion.

Dated: July 25, 2023

                                                       /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge