IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v.    : | |
| : | |
| LAUREN HANDY : | NO. 1:22-cr-00096-CKK |

## DEFENDANT LAUREN HANDY'S OBJECTION TO MOTION IN LIMINE

Defendant Handy's exhibits are not offered for the purposes suggested by the government. Her purposes are appropriate.

The elementsof the FACE act are set forth below, with emphasis supplied:

### § 248. Freedom of access to clinic entrances

**(a)** PROHIBITED ACTIVITIES.-Whoever-
**(1)** by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person **because** that person is or has been, **or in order to intimidate** such person or any other person or any class of persons **from**, obtaining or providing **reproductive health services.**

FACE is a specific intent statute. The Government must prove that Handy acted <u>because</u> of the provision of reproductive health services. Those are defined in the statute. If she acted to prevent what are <u>not</u> reproductive health services, she did not violate FACE.

Since proof of her motive is an element of the government's case, as to which it will presumably present evidence, Ms. Handy must be permitted to rebut it by evidence of her actual and lawful motive. She will testify that she acted here out of a belief that children are being killed at the Santangelo clinic outside the parameters of the reproductive health services defined and protected by the FACE act. She must not be limited to only her own testimony in that regard. Standing alone, this testimony will likely be seen as the ill-founded ramblings of an activist in the hot seat. <u>Ms. Handy must be allowed to demonstrate the reasonable basis for her belief and that she holds it in good faith.</u>

**What Are, and What Are Not, Reproductive Health Services**

At 248(e)(5), the statute defines reproductive health services:

> **(5)** REPRODUCTIVE HEALTH SERVICES.-The term "reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to <u>pregnancy</u> or the <u>termination of a pregnancy</u>.

(emphasis supplied)

While reproductive health care is defined in the statute, "pregnancy" is not. But there is no available argument that a living child, outside the womb, is a pregnancy. In fact, at 1 USC 8 (rules of construction for the entire U.S. Code and all other federal law) the U. S. Code defines a living child outside the womb, at any stage of development as a <u>person</u> and a <u>human being</u>:

> **§8. "Person", "human being", "child", and "individual" as including born-alive infant**
>
>   (a) In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, **the words "person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development.**
>   (b) As used in this section, the term "born alive", with respect to a member of the species homo sapiens, means the complete expulsion or extraction from his or her mother of that member, at any stage of development, who after such expulsion or extraction breathes or has a beating heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, regardless of whether the umbilical cord has been cut, and regardless of whether the expulsion or extraction occurs as a result of natural or induced labor, cesarean section, or induced abortion.
>   (c) Nothing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being "born alive" as defined in this section.
>
> (Added Pub. L. 107–207, §2(a), Aug. 5, 2002, 116 Stat. 926 .)

Under this section, a living child outside the womb is a person and a human being for all purposes under federal law. That child is presumably entitled to all protections and interventions that follow from it.

Both Federal law **(18 USC §1111)** and Washington, DC code **(Sections 22-2101 and 2103)** make it a crime to kill a human being:

### §1111. Murder

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

[ ]

(18 USC §1111)

### § 22–2101. Murder in the first degree — Purposeful killing; killing while perpetrating certain crimes.

Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate an offense punishable by imprisonment in the penitentiary, or without purpose to do so kills another in perpetrating or in attempting to perpetrate any arson, as defined in § 22-301 or § 22-302, first degree sexual abuse, first degree child sexual abuse, first degree cruelty to children, mayhem, robbery, or kidnaping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, or in perpetrating or attempting to perpetrate a felony involving a controlled substance, is guilty of murder in the first degree. For purposes of imprisonment following revocation of release authorized by § 24-403.01(b)(7), murder in the first degree is a Class A felony.

(DC Code Section 22-2101)

### § 22–2103. Murder in the second degree.

Whoever with malice aforethought, except as provided in §§ 22-2101, 22-2102, kills another, is guilty of murder in the second degree. For purposes of imprisonment following revocation of release authorized by § 24-403.01(b)(7), murder in the second degree is a Class A felony.

(DC Code Section 22-2103)

It can hardly be argued that FACE includes within "reproductive health services" the killing or neglect of a living person, as defined by federal law. Thus, while FACE protects the termination of a "pregnancy", the killing of a living child outside the womb is not protected by it. A person reasonably fearing such a crime and attempting to prevent it is not only <u>not</u> violating FACE. She is entitled to the defenses available where a person has acted in defense of another.

With that in mind, Handy's exhibits are as follows and are offered for the purposes set forth respectively:

**Exhibit 4. Santangelo Video 1**

In this video, Dr. Santangelo clearly acknowledges that if a baby is born alive, he will not assist it in surviving. There are other fair inferences from his statements in the video. Ms. Handy will testify that this video, and the prospect of children being born alive and killed or left to die, is the reason she entered pro-life activism generally, and is the reason she entered Santangelo's clinic in particular on the day in question. The video is not hearsay. It is not offered to prove that Dr. Santangelo would kill children born alive. Whether or not they are true, his statements deeply affected Ms. Handy and are the basis for her actions on the day in question.

**Exhibit 5. Santangelo Video 2**

This video is taken January 20, 2022, which is after the events in question. Dr. Santangelo's nurse makes it clear that the patient will not be allowed to consult with the doctor until after she has taken a drug which the nurse says will make her "sleepy," and is "pants-off" in the operating room. Ms. Handy will testify that she feels such coercion is a failure of basic informed consent, and she does not believe it can be included within

"reproductive health services." The video supports Ms. Handy's concern that women at Dr. Santangelo's clinic are subject to conduct outside the scope of the reproductive health services protected by FACE. Like Exhibits 7 through 22, this exhibit arose after the events in question. The relevance of such exhibits is addressed below.

**Exhibit 6. Santangelo Handout from Day of Event**

This pamphlet was being handed out at the clinic during the event in question. It expresses and thus corroborates Ms. Handy's belief that Dr. Santangelo had engaged in criminal conduct. It is not offered to prove the truth of the statements contained in it. Rather, it is offered to corroborate Ms. Handy's contemporaneous belief about children being illegally killed.

**Exhibit 7. Curtis Bay Truck Photo 1**

**Exhibit 8. Curtis Bay Truck Photo 2**

**Exhibit 9. Curtis Bay Truck Photo 3**

These three photos are offered to provide foundation for the photographs and videos of the children retrieved from the Curtis Bay medical waste truck by Ms. Handy outside the Santangelo clinic in March of 2022. Anticipating skepticism about the source of these remains or her firsthand knowledge of the matter, the box pictured next to a Curtis Bay truck at the clinic, and the same box (identified by the label and other marks on the box) in Ms. Handy's home, provide needed foundation for later exhibits. She personally observed the children depicted and was present while all photographs and videos were made.

**Exhibit 10. Curtis Bay Contents Videos**

   10A Baby 1

   10B Baby 3

   10C Baby 5

These are videos of the children retrieved from the Curtis Bay truck. Ms. Handy will point out the evidence in the videos she feels corroborates her concerns about illegal killing of live children (not reproductive health services) occurring at the clinic.

The government will argue, or the court will question, whether Ms. Handy is an expert on the subject. But a person need not be an expert to develop a good faith belief on a subject, and Ms. Handy (who will testify as to a level of study on the matter) didn't need to obtain supportive conclusions of an expert before acting on her good faith belief. Likewise, as is demonstrated by exhibits 17 through 20, (below) a person needn't be an expert to see that facts raise a serious question and to act upon it, either by pushing for investigation as Congress did here, or by seeking to save mothers and their children from a possible crime. Ms. Handy should be allowed to point out on the videos and photographs of these children why she feels children were and are being killed illegally at the Santangelo clinic. This directly rebuts the government's element, and any evidence put on in support of it, that Ms. Handy acted on account of "reproductive health services."

**Exhibit 11. Photo of Containers**

This photo is offered for completeness, and to distinguish the five children whom Ms. Handy believes may have been killed illegally from the many routine abortions (smaller containers) also done at the clinic.

**Exhibit 12. Photo Baby 1**

**Exhibit 13. Photo Baby 2**

**Exhibit 14. Photo Baby 3**

**Exhibit 15. Photo Baby 4**

**Exhibit 16. Photo Baby 5**

Each of these five photos is of one of the children retrieved from the Curtis Bay truck. Ms. Handy will point out the evidence in each photo she feels corroborates her concerns about illegal killing of live children (not reproductive health services) occurring at the clinic.

**Exhibit 17. Cooley Letter to DC Police (March 29, 2022)**

**Exhibit 18. Email from Steve Cooley Office**

**Exhibit 19. Email from Cooley**

These emails from former Los Angeles County District Attorney Steve Cooley were provided by the government in discovery. They serve two distinct purposes. They demonstrate that the five children raise fair questions in minds <u>other</u> than Ms. Handy's about illegal killing of children at the Santangelo clinic. This supports the reasonableness and good faith of Ms. Handy's own belief. But on account of material in the exhibits beyond merely the contents of the initial letters from Mr. Cooley, the exhibits also demonstrate that local law enforcement received the letters and was aware that those questions were being raised. Understanding that interference with <u>legal</u> abortion is an element of its case, the government ignored these questions at its peril.

The letters are not offered to prove the truth of any substantive ideas expressed in them. The letters have significance apart from the truth of ideas proposed in them as to the death

of the children. By virtue of their mere existence, they support the reasonableness and good faith of Ms. Handy's concerns.

**Exhibit 20. Letter from Members of Congress to Mayor Bowser**

The same argument supports this exhibit and the next. This is a letter signed by twenty-three senators and congressmen urging DC Mayor Bowser (the chief local law enforcement officer) to direct a thorough investigation of the deaths of these five children. It was also directed to Attorney General Merrick Garland.

**Exhibit 21. Response Letter from Mayor Bowser**

This letter serves two purposes. It demonstrates that Mayor Bowser received the letter from the senators and congressmen and that she dismissed their concerns instead of seeking to determine whatever the truth is that may have exonerated Ms. Handy and the other defendants. It is not offered to prove the truth of any assertion she makes in it.

**Exhibit 22. Examination of Fetuses By OCME (1 page report)**

This report demonstrates only a cursory examination of the five children, reflecting only an approximate gestational age and nothing more. It demonstrates the government's dismissal of widespread concern and undermines the basis for any evidence the government may produce suggesting the children were <u>legally</u> killed. The exhibit is not offered to prove any of the opinions reflected in it.

This case should not descend into a trial over whether children are in fact being killed illegally at the Santangelo clinic. The government, in the position to do so, has not generated competent evidence one way or the other on that question, and the exhibits offered by Ms. Handy are not offered to prove the correctness of her concerns. The government doesn't have to prove the children were killed legally any more than Ms, Handy has to prove the contrary.

But Ms. Handy's <u>reason</u> for acting is an element of the government's case. She must be able to demonstrate, with all evidence pertinent to her motivations, that she did not act for the illegal purpose.

Ms. Handy's actions here were directly motivated by Dr. Santangelo's admission on video, prior to the events in question, that he would disregard his duties to a child born alive. By any reasonable reading of the law, that child is no longer a "pregnancy."  The admission placed his services beyond "reproductive health services" and beyond the protections of FACE.

The photographs and videos of the children recovered after the events in question suggest that his statements on video were neither misunderstood nor the concern transitory. Rather, they demonstrate that Ms. Handy's fear for children born alive, reasonable after Dr. Santangelo's admission, remained reasonable at the later date and therefore at all dates in between. The Santangelo video from 2012 and the children recovered in 2022 from his clinic are book-ends on the events in question, supporting Ms. Handy's fear for the illegal killing of born children from both before and after the events charged.

**CONCLUSION**

For the foregoing reasons, the government's motion in limine should be denied.

Date: July 31, 2023

Respectfully submitted,

*/s/ Martin A. Cannon*
Martin A. Cannon, Esquire (Admitted *Pro Hac Vice*)
Thomas More Society
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
Email: mcannonlaw@gmail.com
Phone: (402) 690-1484


*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Boyle & Jasari
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com
            bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Defendant Lauren Handy*