UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>LAUREN HANDY, *et al.*,<br><br>    Defendants. | Criminal Action No. 22-096 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(August 1, 2023)

Defendants are charged by indictment, which describes their actions in broad terms as effecting a conspiracy to prevent patients from accessing a reproductive health clinic in the District of Columbia and injuring an employee of the clinic in the process. According to the Government, Defendants have engaged in similar conduct in the past, regularly and for some time. The Government moves *in limine* to admit instances of similar conduct pursuant to Federal Rule of Evidence 404(b). The Court concludes that one proposed event is intrinsic to the charged conspiracy and the remainder satisfy the strictures of Federal Rule of Evidence 404(b). However, and pursuant to Federal Rule of Evidence 403, the Court holds admissible only those events in which one or more Defendants also acted in concert through similar unlawful means and to achieve similar unlawful ends. Accordingly, and upon consideration of the briefing,[1] the relevant legal

---

[1] The Court's consideration has focused on:
- The Government's [206] Motion to Admit Rule 404(b) Evidence of Other Acts, ECF No. 206 ("Motion" or "Mot.");
- Defendant Handy's Response to Motion to Admit Rule 404(b) Evidence of Other Acts, ECF No. 209;
- Defendant Idoni's Response to Government's Motion to Admit 404(b) Evidence of Other Acts, ECF No. 211;
- Defendant Darnel's Response to Government's 404(b[)] Motion, ECF No. 213, and Supplemental Response to Government's 404(b) Motion, ECF No. 237;
- Defendant Hinshaw's Reply in Support of Her Motion to Dismiss, ECF No. 247; and
- The Superseding Indictment, ECF No. 113 ("Indictment").

1

authorities, and the entire record, the Court shall **GRANT IN PART AND DENY IN PART** the Government's [206] Motion to Admit Rule 404(b) Evidence of Other Acts. Although the Government has moved as to all Defendants, the Motion concerns only Defendants Handy, Darnel, Goodman, Bell, and Hinshaw. The Motion is granted in part and denied in part as to Defendants Handy, Darnel, Goodman, and Bell, and denied as to Defendant Hinshaw.

## I.   BACKGROUND

### A. Allegations in the Indictment

Defendants are charged by indictment with: (1) conspiracy against rights (i.e., a statutory right to access a reproductive health clinic to receive or provide reproductive health services), in violation 18 U.S.C. § 241, a felony; and (2) a misdemeanor violation of the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248.

The Indictment centers on Defendants' successful scheme to disrupt access to a reproductive health clinic in the District of Columbia on October 22, 2020. *Id.* at 5. The Indictment alleges that Defendant Handy orchestrated this conspiracy, directing her co-Defendants to undertake various preparations to blockade the clinic. *Id.* For example, Defendant Harlow allegedly brought with her a duffle bag containing chain and rope, which Defendants Smith, Harlow, Marshall, Hinshaw, and Bell used to lock the clinic's doors. *Id.* at 6. For her part, Defendant Handy allegedly made an appointment at the clinic under a false name in order to ensure her entry and her co-conspirators' entry shortly thereafter. *See id.* at 4. According to the Indictment, at least Defendant Smith's entry was particularly violent, causing a nurse "to stumble and break her ankle." *Id.* at 5. Defendant Handy then purportedly directed others to blockade the clinic's doors, locking staff in and potential patients out. *See id.* at 5-6. Meanwhile, Defendant

---

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

Darnel live-streamed the incursion, telling listeners that he and co-conspirators had "intervene[d] physically with their bodies to prevent women from entering the clinic[.]" *Id.* at 6.

**B. Proposed 404(b) Evidence**

In its Motion, the Government details each event it argues is admissible, either as intrinsic evidence of the charged conspiracy or as permissible 404(b) evidence. For ease of reference, the Court reproduces abridged versions of the Government's factual summaries here.

1. Intrinsic Evidence as to Defendant Handy

The Government alleges that Defendant Handy and others previously breached the clinic at issue in this case on March 19, 2019. Mot. at 9. Defendant Handy and her cadre purportedly "refus[ed] to leave[,] creating a security risk for the clinic's patients and providers." *Id.* The Government claims that Defendant Handy stated that she refused to leave and obstructed the provision of services at the clinic because she wanted "to protest against the clinic's provision of reproductive health services," evidently including abortion services. *See id.* The Government argues that Defendant Handy's actions that day may have started or furthered the conspiracy at issue in this case, resulting in the alleged criminal conduct approximately one year after this first breach. *See id.* at 9, 17.

2. Extrinsic Evidence as to Defendants Handy and Darnel

The Government proffers three additional episodes purportedly involving Defendant Handy that, the Government claims, demonstrate the requisite intent and motive for the charged conspiracy, in addition to demonstrating plan and agreement among her co-Defendants. *First*, the Government alleges that Defendants Handy and Darnel traveled to Maryland on January 30, 2021 to engage in a similar "clinic invasion." *Id.* at 7. There, Defendant Darnel allegedly livestreamed the incident, much like his role in the conspiracy charged in the Indictment. *See id.* Additional

3

"[v]ideo footage of that livestream recorded co-conspirators discussing the plan and Defendant[s] Handy and Darnel's agreement to commit the act." *Id.*  *Second*, the Government alleges that Defendants Handy, Darnel, and Bell similarly disrupted a Virginia reproductive health clinic on November 16, 2021, "block[ing] the facility's doors[,] and disrupt[ing] operations in an attempt to interfere with the provision of reproductive health care." *Id.*  They purportedly did so, in their words, "to stop children from being murdered." *Id.*  Defendant Darnel also allegedly livestreamed this incident.  *Id.* at 7-8.  *Third* and finally, Defendant Handy allegedly entered another reproductive health clinic in the District of Columbia on May 26, 2018, purposefully obstructing services there.  *See id.* at 8.

### 3. Extrinsic Evidence as to Defendants Bell and Goodman

In addition to the November 16, 2021 incident, the Government claims that Defendants Goodman and Bell trespassed in a New Jersey reproductive health facility "in an attempt to prevent patients from obtaining, and the clinic from providing, reproductive health services." *Id.* at 11. According to the Government, their "stated purpose was to protest against abortions, and to remain in the clinic until it was shut down." *Id.*  The Government further claims that Defendant Goodman invaded another reproductive health facility in New York on November 27, 2021. *Id.*  The Government alleges Defendant Goodman, evidently with others, made "a fake appointment" to gain access to the clinic, and entered with the intent to impede the receipt and provision of reproductive health services. *Id.* at 11-12. Lastly, the Government alleges that Defendant Goodman unlawfully entered another reproductive health clinic in the District of Columbia on May 14, 2020 "to protest that clinic's provision of abortion care." *Id.* at 12.

4

4. Extrinsic Evidence as to Defendant Idoni and Hinshaw

Unlike Defendants Handy, Darnel, Bell, and Goodman, the Government proffers no 404(b) evidence alleging that Defendants Idoni conspired or worked with any other co-Defendant in this matter. Rather, the Government relies on alleged conduct charged in two other federal indictments. *See id.* at 9-10. Each indictment alleges similar conduct as here and brings the same charges. *Compare* Indictment, ECF No. 1, *United States v. Zastrow*, Crim. A. No. 23-20100 (E.D. Mich. Feb. 15, 2023), *with* Indictment, ECF No. 3, *United States v. Gallagher*, Crim. Case No. 3:22-00327 (Oct. 3, 2022). Similarly, as to Defendant Hinshaw, the Government proffers conduct unconnected to any other Defendant in this matter. First, the Government claims that Defendant Hinshaw trespassed with others into a New York reproductive health clinic on April 24, 2021, refusing to leave in order to cease the receipt and provision of abortion services. Mot. at 12-13. Second, the Government claims that Defendant Hinshaw participated in a similar endeavor with others at a Pennsylvania clinic on August 27, 2021. There, Defendant Hinshaw again refused to leave the premises in a purported effort to cease the provision and receipt of abortion services. *Id.* at 13.

II. **LEGAL STANDARD**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). "Pretrial motions *in limine* are an important mechanism to effectuate th[e] goal of insulating the jury from inadmissible evidence and further the purpose of the rules, generally, to administer the proceedings 'fairly . . . to the end of ascertaining the truth and securing a just determination.'" *United States v. Ausby*, 436 F. Supp. 3d 134, 145 (D.D.C. 2019) (quoting

Fed. R. Evid. 102). Although evidentiary questions are sometimes better left for trial, *see United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 175 (D.D.C. 2015) (BAH), courts of this jurisdiction generally favor pretrial resolution of evidentiary issues because, in part, pretrial resolution "permits counsel to make [] necessary strategic determinations," *see United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980). *See also* Wright & Miller, Fed. Prac. & Proc. § 5042 (West 2022) (the motion in limine "remains a favorite method for satisfying" the ends of the Federal Rules of Evidence).

### III. DISCUSSION

As a general rule, the Government may not use "[e]vidence of a person's character," i.e., their purported predisposition to commit a charged offense, "to prove that on a particular occasion the person acted in accordance with the[ir] character or trait." Fed. R. Evid. 404(a)(1). This rule of evidence codifies a longstanding principle in the Anglo-American tradition that "a defendant must be tried for what he did, not for who he is." *See United States v. Linares*, 367 F.3d 941, 945 (D.C. Cir. 2004) (internal quotation marks omitted). Rule 404 recognizes that any argument that a defendant acted on one occasion merely because he acted similarly on another occasion "weigh[s] too much with the jury" and risks "overpersuad[ing] them as to prejudge on with a bad general record and deny him a fair opportunity to defendant against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476 (1948). That said, evidence of so-called prior wrongs *is* admissible for certain other, limited reasons: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

In this jurisdiction, Rule 404(b)'s exception is often a rule of inclusion, prohibiting evidence only "which lacks any purpose *but* proving character." *See United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (emphasis added) (quoting *United States v. Bowie*, 232 F.3d 923,

6

930 (D.C. Cir. 2000)).  Rule 404(b) is particularly potent when used to prove "a conspiracy charge, which increases the probative[ value] of Rule 404(b) evidence."  *United States v. Manner*, 887 F.2d 317, 322 (D.C. Cir. 1989).  A conspiracy charge also makes it more likely that the proposed evidence is, alternatively, intrinsic proof of the conspiracy itself.  *See United States v. Becton*, 601 F.3d 588, 598 (D.C. Cir. 2010); *see also United States v. Williams*, 947 F.3d 320, 357 (3d Cir. 2020) (collecting cases).  In either case, the Court must nevertheless be mindful of Rule 403 as well, which precludes the admission of evidence whose probative value is "substantially outweighed" by, among other things, prejudice to a defendant and the risk of sending a trial off track.  *See McGill*, 815 F.3d at 880 (applying Rule 403 to Rule 404(b) context); *United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir. 2012) (risk of "sending the trial off track" (internal quotation marks omitted)).  With this legal background in mind, the Court turns to the Government's proffered evidence.

### A.  Intrinsic Evidence

The Government first requests that the Court should hold admissible Defendant Handy's alleged conduct at the clinic here on March 19, 2019.  The Government argues primarily that this alleged conduct is intrinsic evidence of the charged conspiracy or, in the alternative, that it is 404(b) evidence that goes to intent, motive, plan, and preparation.  Because the Court agrees with the Government's main position, it need not reach the Government's argument in the alternative.

Because "uncharged acts may be admissible as direct evidence of the [charged] conspiracy itself," even pre-conspiracy conduct can be admissible intrinsic evidence where it continues in some form once the conspiracy began.  *See McGill*, 815 F.3d at 316 (cleaned up) (pre-conspiracy violence and drug dealing admissible as intrinsic evidence where such violence

and drug dealing were both means and ends of charged conspiracy). The Government's proffered account suggests that Defendant Handy's 2019 entry into the clinic was part and parcel of the conspiracy to disrupt the very same clinic again a year later. *See* Mot. at 17. Although somewhat attenuated in time, that, according to the Government, she used this prior unlawful conduct to guide the instant conspiracy is more than sufficient to conclude that the two courses of conduct are "inextricably intertwined" and, therefore, intrinsic evidence of the charged conspiracy. *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994). Accordingly, the Court holds admissible evidence regarding Defendant Handy's March 19, 2019 conduct in and around the clinic in this case.

### B. Extrinsic Evidence

#### 1. Rule 404(b)

The Government identifies a number of purposes for the remaining, extrinsic evidence that it has proffered. So long as one purpose is probative of an issue in dispute other than character, the evidence is admissible pursuant to Rule 404(b). *See McGill*, 815 F.3d at 879.

*First*, the Government argues that prior "clinic invasions" demonstrate that Defendants had "the requisite intent and motivation to commit the charged offenses." Mot. at 13-14. Both Count One and Count Two have specific-intent requirements. Count One requires the Government to show beyond a reasonable doubt that each Defendant specifically intended through their alleged conspiracy to injure, oppress, threaten, or intimidate a person in their "exercise or enjoyment of any right or privilege" secured by the Constitution or laws of the United States. *See United States v. Guest*, 383 U.S. 745, 753 (1966); *United States v. Kimble*, 719 F.2d 1253, 1256 (5th Cir. 1983). Similarly, Count Two requires the Government to show beyond a reasonable doubt that Defendants obstructed access to and provision of reproductive

health services (here, abortion services) *because* the person or institution obstructed sought or provided such services. *See United States v. Retta*, 840 F. Supp. 2d 262, 265 (D.D.C. 2012).[2]

If, as the Government claims, Defendants have previously attempted to obstruct access to abortion services because of their opposition to such services, it is more likely that Defendants acted with the requisite intent in this case. That makes the Government's proffered evidence admissible as to intent. *See United States v. Shedlock*, 62 F.3d 214, 218 (8th Cir. 1995) (subsequent obstructive acts related to provision of abortion services admissible pursuant to Rule 404(b) in FACE Act prosecution); *cf. also New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 461 (S.D.N.Y. 2006) (holding admissible under 404(b) defendant's prior obstructive conduct at reproductive health clinics in civil FACE-Act case).

*Second*, the Government argues that the incidents where certain Defendants acted in concert with other co-Defendants demonstrate "association." *See* Mot. at 20. Particularly as to an indictment charging conspiracy, instances of co-Defendants previously working together to accomplish unlawful ends is usually permissible 404(b) evidence. *See United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996). Such evidence "shows or tends to show the existence of a relationship between the defendants[] and . . . [that] the defendants had a common scheme or plan which included the offenses for which they are now charged." *United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997). Insofar as this proffered evidence goes to a relevant purpose other than character, it is admissible under Rule 404(b). *See McGill*, 815 F.3d at 879.

*Third*, the Court briefly notes that Government also argues that prior "clinic invasions" demonstrates that Defendants "knew at the time of the charged offenses that the planned blockade was a crime." Mot. at 15. The Government appears to imply, in relying on a tax

---

[2] The Court does not address whether the Government must further show that a person was, in fact, obstructed in seeking reproductive health services.

prosecution, that it must demonstrate willfulness as to one or both Counts. *See id.* at 14-15 (citing, *inter alia*, *United States v. Sang Han*, 962 F.3d 568 (D.C. Cir. 2020)). It does not appear to the Court that either Count of the Indictment carries a "willfulness" mental state, and the Government cites no authority for such a proposition in its proposed jury instructions. *See, e.g.*, ECF No. 270 at 27 (arguing that "[t]he [G]overnment is not required to prove that the defendant knew [a] right was secured by the laws of the United States" to prove Count One beyond a reasonable doubt). Nevertheless, because the Court has concluded that the proffered evidence is permissible for other reasons, the Court does not reach whether the evidence is admissible pursuant to Rule 404(b) to demonstrate "knowledge." 229 589

2. Rule 403

Relevance and admissibility under Rule 404(b) is not the end of the inquiry. The Court must also address whether the Government's evidence runs afoul of Rule 403. *United States v. Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015). In context, much of it does.

*First*, a substantial amount of the Government's proffered 404(b) evidence carries with it a substantial risk of prejudice. Although the Government has identified purposes other than character, the proffered evidence is particularly similar to the acts charged in the indictment. Both the number and similarity of the proffered instances of near identical conduct may come perilously close to showing "disposition to commit [the charged] crime," as opposed to focusing the inquiry on the conduct charged in the Indictment itself. *See McGill*, 815 F.3d at 879. The risk of prejudice to the Defendants by placing them on trial for many courses of uncharged conduct is only heightened by the admittedly "profoundly difficult and contentious issue[s]" that the provision of abortion services raises throughout this country and, necessarily, within the venire. *See Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2304 (2022) (Kavanaugh,

J., concurring).

*Second*, permitting the Government to spend much of its case on uncharged conduct would risk "creating a sideshow and sending the trial off track." *Bigesby*, 685 F.3d at 1065. Although much of the uncharged conduct is relevant, it is ultimately *un*charged conduct far attenuated from the charged conspiracy. *See United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (affirming exclusion of evidence of purported payoffs not relevant to the bribes at issue). To the extent that much of the proffered 404(b) focuses on motivation and intent, it will undoubtedly be cumulative of Defendants' own alleged statements captured on video. *See Levin v. United States*, 338 F.2d 265, 273 (D.C. Cir. 1964) (discussing cumulativeness).

Weighing these considerations, the Court must exercise its discretion to exclude certain portions of the proffered 404(b) evidence as overly prejudicial to Defendants, needlessly cumulative, and a waste of time. The Court holds admissible those instances of conduct which demonstrate both Defendants' intent and motivation *and* agreement to undertake collective obstruction. The Court excludes the remainder, because those instances of conduct feature Defendants working only with individuals not charged in this case.

### IV. CONCLUSION AND ORDER

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED**, that the Government's [206] Motion to Admit Rule 404(b) Evidence of Other Acts is **GRANTED IN PART AND DENIED IN PART**. It is further

**ORDERED**, that the following proffered instances of conduct are **EXCLUDED** pursuant to Federal Rule of Evidence 403: (1) the May 26, 2018 incident involving Defendant Handy; (2) the November 27, 2021 incident involving Defendant Goodman; (3) the May 14, 2020 incident involving Defendant Goodman; (4) all incidents involving Defendant Idoni; and

(5) all incidents involving Defendant Hinshaw. The Court may, in its discretion, revisit this holding as necessary at trial. It is further

**ORDERED**, that the following proffered instances are held **ADMISSIBLE**: (1) the March 19, 2019 incident involving Defendant Handy; (2) the January 30, 2021 incident involving Defendants Handy and Darnel; (3) the November 16, 2021 incident involving Defendants Handy, Darnel, and Bell; and (4) the November 16, 2021 incident involving Defendants Goodman and Bell. The Court may, in its discretion, revisit this holding as necessary at trial.

**SO ORDERED**.

                                                          /s/
                                     **COLLEEN KOLLAR-KOTELLY**
                                     United States District Judge

Dated: August 1, 2023