UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

LAUREN HANDY,

　　　Defendant.

Criminal Action No. 22-096-1 (CKK)

**ORDER**
(August 3, 2023)

Before the Court is the Government's [316] Motion to Exclude Certain Defense Exhibits ("Motion" or "Mot."). Pursuant to Federal Rules of Evidence 401 and 403, the Government moves to exclude all exhibits identified in Defendant Handy's [275] Exhibit List, except for those which overlap with the Government's. In opposition, Defendant[1] explains that the exhibits demonstrate that she lacked the intent necessary for conviction on both counts of the operative indictment. As to each count, the Government must prove beyond a reasonable doubt that, among other things, Defendants intended to obstruct or interfere with the receipt or provision of reproductive health services as such. *See United States v. Mahoney*, 247 F.3d 279, 282 (D.C. Cir. 2001); *United States v. Handy*, 2023 WL 4744057, at *3 (D.D.C. July 25, 2023). The term "reproductive health services" is defined by statute as "medical, surgical, counselling or referral services related to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5).

Defendant claims that, at the time of the charged conduct, she subjectively believed that the clinic in question was conducting, evidently in addition to reproductive health services, what

---

[1] Although some of her co-Defendants have joined her initial proposed list of trial exhibits, the motion is as to Defendant Handy alone.

1

the Court will term "post-birth abortions," which are undoubtedly unlawful under state and federal law. Based on this subjective belief, Defendant proffers that her sole intent in undertaking the charged conduct was to obstruct post-birth abortions, and not a reproductive health service. The Government does not object to such a defense in theory, arguing instead that its evidence conclusively demonstrates that Defendant Handy could not have possibly held such a mental state. *See* ECF No. 324 at 1-2 & n.1. Yet that argument goes to the weight of the evidence, which is the exclusive province of the jury.

That said, the Government correctly explains that the vast majority of the proffered exhibits must be excluded pursuant to Federal Rule of Evidence 403. Even assuming some degree of relevance, the Court will not permit Defendants to show photos of expired fetuses (or, in their telling, dead babies) and the containers in which the fetal remains were purportedly placed. Such photos are particularly incendiary and entirely distracting from the events at issue. The truth of the procedures related to the fetal remains are not, as Defendant concedes, relevant to this case, and the Court will not permit the jury to review exhibits of such "scant or cumulative probative force, dragged in by the heels for the sake of [their] prejudicial effect." *See United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983); *cf. also United States v. Riego*, No. 1:21-cr-00596-WJ-1, 2022 WL 4182486, at *4 (D.N.M. Sept. 13, 2022) (in manslaughter case, excluding under Rule 403 audio of defendant exclaiming, after learning of her children's death due to her conduct, "my babies").

Nor may Defendant rely on evidence of which she became aware *after* the charged conduct in order to bolster her professed state of mind on October 22, 2020. As Defendant concedes, her proposed exhibits serve only to demonstrate how she came to form her purported belief, by further extension, to cause her to specifically intend only to disrupt a particular

2

activity. *See* ECF No. 319 at 4. Because she could not have relied upon these exhibits at the time of the charged conduct, the unsupported allegations of post-birth abortion in these materials substantially outweigh any modicum of probative value. *See United States v. St. Michael's Credit Union*, 880 F.2d 579, 602 (1st Cir. 1989) (abuse of discretion to admit evidence of activities of which defendant was unaware to demonstrate intent); *cf. also United States v. Zeese*, 437 F. Supp. 3d 86, 98-99 (D.D.C. 2020) (explaining generally that intent inquiry is subjective and revolves around what defendant perceived at the time of the charged conduct). Therefore, on Defendant's second amended exhibit list, exhibits 5 and 7-22 are **EXCLUDED**.[2]

That leaves two proposed exhibits: (1) an undated pamphlet alleging that a doctor working at the facility performed post-birth abortions (unlawful killings) at the facility in question, and (2) a 2012 video purportedly reflecting statements by that doctor. As to the former, the pamphlet is clearly prejudicial. It makes entirely unsubstantiated allegations in lurid terms claiming, evidently wrongly, that the doctor "left a baby struggling for life to die after a failed abortion." This case is, as Defendant concedes, not about the truth of such an assertion, and it is so incendiary as to undoubtedly inflame the passions of the jury. For now, however, the Court need not reach its admissibility, because Defendant has yet to explain how she would lay the foundation for the pamphlet. It remains unclear when Defendant viewed this pamphlet and under what circumstances, for example. Nor is it clear how Defendant would establish its authenticity or its provenance. Therefore, the Court will hold in abeyance the Government's objection to this exhibit and direct Defendant to file a more detailed proffer.

---

[2] These are: (1) Santangelo Video 2, (2) Cutis Bay Truck Photo 1, (3) Curtis Bay Truck Photo 2, (4) Curtis Bay Truck Photo 3, (5) Curtis Bay Contents Videos (10A Baby 1, 10A Baby 2, 10A Baby 5), (6) Photo Containers, (7) Photo Baby 1, (8) Photo Baby 2, (9) Photo Baby 3, (10) Photo Baby 4, (11) Photo Baby 5, (12) Cooler Letter to DC Police, (13) Email from Steve Cooley Office, (14) Email from Cooley, (15) Letter from Members of Congress to Mayor Bowser, (16) Response Letter from Mayor Bowser, and (17) Examination of Fetuses by OCME.

As to the latter, Defendant represents that she "will testify that this video, and the prospect of children being born alive and killed or left to die, is the reason she entered pro-life activism generally, and is the reason she entered [the] clinic in particular on the day in question." ECF No. 319 at 4.  As an initial matter, the Court must note that Defendant mischaracterizes the exhibit insofar as she suggests that the doctor affirmatively admitted that he will never assist an evacuated fetus that survives the procedure and, further, affirmatively kills children born alive.  Upon the Court's review of the full video (lasting approximately fifty minutes), that is not what the video reflects.

The video appears to feature an "undercover" pro-life activist surreptitiously recording the doctor as she asks a number of leading questions, encouraging the doctor to confirm that he would do everything he could to ensure that her fetus would not survive if the procedure failed and it were extracted alive.  The vast majority of the doctor's responses explain, in his words, that "it [would] be too early [for the activist's pregnancy] to survive" and "[she] wouldn't go into labor anyway."  He further indicates that "legally, technically, [he] would be obligated to help it survive.  It's all in how vigorously you do things to help a fetus survive."  Only once does the doctor say, most precisely worded, "some things we would not do [to assist the fetus]" without further illustration, before again insisting that the statistical likelihood of the procedure's failure was negligible; in his words, "[t]hese kinds of things [the activist stated she was] worrying about, they don't happen."  Importantly, when asked whether a fetus "has ever survived" the abortion procedure in the clinic, the doctor responded, in no uncertain terms, "not here, no."  In other words, the clinic could never have previously caused the death of a fetus after its evacuation, because no fetus had ever survived the procedure.  Therefore, at no time in the video is there any indication that the doctor would, as Defendant characterizes it, either ensure a born-alive fetus's

death or affirmatively perform a post-birth abortion.

Even if offered with a limiting instruction and exclusively for its effect on Defendant as the listener, the video's purported probative value is substantially weakened by its temporal distance from the charged conduct.  A video from 2012 predates the charged conduct by eight years, and any reliance on such stale evidence could be so misplaced as to render its probative value substantially outweighed by its prejudicial effect on the jury.  *See United States v. Carter*, 969 F.2d 197, 199 (6th Cir. 1992) (discussing remoteness problems in Rule 401 context); *Broaddus v. Fl. Power Corp.*, 145 F.3d 1283, 1289 (11th Cir. 1998) (same, in context of Rule 403).  Nevertheless, the Court need not decide the issue now, because, like the pamphlet, the foundation for this exhibit remains opaque.  The Court does not know when Defendant viewed this video, precisely when it was created, nor its precise provenance.  Therefore, like the pamphlet, the Court will afford Defendant an opportunity to file a more specific proffer.  Additionally, insofar as the Government mainly focused in its reply on the availability of Defendant's proffered defense, the Court will afford the Government an opportunity to file a surreply addressing these two exhibits.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED**, that the Government's [316] Motion to Exclude Certain Defense Exhibits is **GRANTED IN PART AND HELD IN ABEYANCE IN PART**.  It is further

**ORDERED**, that all of Defendants proposed exhibits are **EXCLUDED** except for the proffered pamphlet and 2012 video, objections to which are **HELD IN ABEYANCE** pending supplemental briefing, and those shared with the Government.  It is further

**ORDERED**, that Defendant may file a more detailed proffer no later than **August 5, 2023 at 12:00 PM ET**.  It is further

**ORDERED**, that the Government may file a surreply no later than **August 5, 2023 at 12:00 PM ET**.

**SO ORDERED**.

Dated: August 3, 2023

                                                          /s/
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge