IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| LAUREN HANDY | : | NO. 1:22-cr-00096-CKK |

### DEFENDANT HANDY'S FURTHER FOUNDATION FOR PAMPHLET AND VIDEO

In accord with the court's request, Defendant Handy offers the following additional support for her Exhibits 4 (Santangelo Video 1) and 6 (Santangelo Handout from day of event).

**Exhibit 4 (Santangelo Video 1)**

This video can be authenticated by Joseph Lipp. He is the records custodian at Live Action, which organization produced the video. He will testify as follows:

That Live Action was founded by Lila Rose, and is a recognized 501(c)(3), dedicated to publicizing information about the abortion industry, often through undercover journalism and video;

That as part of his duties, he is the current records custodian for the organization. That he has access to all investigative materials and videos, in their original formats, and all records and other information as to the mechanics and history of every Live Action video, and that Live Action keeps such records in the ordinary course of its business;

That on November 29, 2012, Live Action arranged for a woman to go into the abortion clinic run by Dr. Cesare Santangelo in Washington, DC and engage him in conversation on video. That her

entire engagement was videotaped, from when she entered the clinic waiting room until she left it after her visit. There were no interruptions in the video.

That immediately after the engagement, the woman delivered the video to Live Action, and that Live Action retains the original, in its entirety. That parts of it remain on the Live Action website. That there are a few places where the sound, but not the video, has been paused for a second or less to protect the identity of the woman, whose name might otherwise be audible.

That when he appears to testify at Ms. Handy's trial, he will bring with him a full copy of the original video. That since Live Action originally created it, it will never have been out of Live Action's control, and it will not have been altered in any way, except as indicated above.

Ms. Handy will testify that she saw the video when it was released, she believes in 2013, and learned that Live Action would be holding a press conference at Dr. Santangelo's clinic as a result of the video. She skipped a college final exam and took a long train ride to attend the conference, after which she went full time into the pro-life ministry. She will testify that also because of the video, in the year or so prior to the events charged, she focused almost entirely on studying the incidence of babies born alive and killed or left to die and participated in the events charged motivated by her research.

Even absent authentication and regardless of the differing interpretations of the statements contained in it, because of the effect it had on Ms. Handy, the video is highly probative and corroborative of her beliefs at the time.

**Exhibit 6 (Santangelo Handout from Day of Event)**

<u>Ms. Handy will testify that she wrote and produced this pamphlet.</u> She based the initial allegation in the pamphlet on a local wrongful death case she found against Dr. Santangelo in civil court in Washington, DC. (copy attached). The allegation in the pamphlet is drawn from paragraph 27 of the civil complaint.

The allegations in the pamphlet under the heading "Babies Born Alive" reflect her own view of what is being acknowledged in the Live Action video and inferences she drew from it.

This pamphlet is direct, contemporaneous evidence of Ms. Handy's beliefs at the time of the events charged. Because FACE is a specific intent statute, and because Ms. Handy's defense by right includes her demonstration of her beliefs at the time, the probative value of the pamphlet is so high that it can hardly be outweighed. Given Dr. Santangelo's statements on the video and inferences that Ms. Handy actually drew from them, and given the governments burden here, prejudice to the government's case is not unfair in any event.

Like the video, even absent authentication and regardless of the truth of the statements contained in it, the pamphlet is highly probative and corroborative, <u>if not dispositive</u>, of her beliefs at the time.

**Each of these exhibits can be introduced with a proper limiting instruction.**

**CONCLUSION**

For the foregoing reasons, the government's motion in limine as to Exhibits 4 and 6 should be denied.

Date: August 5, 2023                               Respectfully submitted,

                                                   */s/ Martin A. Cannon*
                                                   Martin A. Cannon, Esquire (Admitted *Pro Hac Vice*)
                                                   Thomas More Society
                                                   10506 Burt Circle, Suite 110
                                                   Omaha, Nebraska 68114
                                                   Email: mcannonlaw@gmail.com
                                                   Phone: (402) 690-1484


                                                   */s/ Dennis E. Boyle*
                                                   Dennis E. Boyle, Esquire
                                                   Blerina Jasari, Esquire
                                                   Boyle & Jasari
                                                   1050 Connecticut Ave, Suite 500
                                                   Washington, D.C., 20036
                                                   Email: dboyle@dennisboylelegal.com
                                                          bjasari@dennisboylelegal.com
                                                   Phone: (202) 430-1900

                                                   *Counsel for Defendant Lauren Handy*