IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, ) | |
| ) | |
| v. ) | Crim. No.22cr96 |
| ) | Hon. Colleen Kollar-Kotelly |
| HERB GERAGHTY, ) | |
| Defendant. ) | |

## MOTION TO RECONSIDER DEFENDANTS'
## MOTION TO DISMISS BASED ON SELECTIVE PROSECUTION

Comes now undersigned counsel on behalf of all Group One Defendants and hereby files this Motion to Reconsider Defendants' Motion to Dismiss Based on Selective Prosecution. In support of this Motion, Group One Defendants state as follows:

Last week, the D.C. Circuit Court of Appeals clarified that "a selective enforcement claim under the First Amendment" is "distinct from equal protection claims and do[es] not require a [defendant] to demonstrate intentional discrimination." *Frederick Douglass Found., Inc. v. D.C.*, No. 21-7108, 2023 WL 5209556, at *4 (D.C. Cir. Aug. 15, 2023). This landmark decision distinguished as dicta a prior statement of the D.C. Circuit (en banc) that "selective enforcement is not, of course, a First Amendment cause of action," *Sanjour v. EPA*, 56 F.3d 84, 92 n.9 (D.C. Cir. 1995) (en banc), and instead held that "selective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech," *Frederick Douglass*, 2023 WL 5209556, at *9, *11 n.7. The Court thus held that unlike selective enforcement claims under the Equal Protection Clause, "[a] benign purpose does not defeat a claim that the government has selectively enforced the laws in violation of the First Amendment." *Id.* at *12.

1

Accordingly, because Defendants' initial motion asserting selective prosecution (Doc. 215) and this Court's rejection thereof (Doc. 297) were predicated on an alleged need to show improper government *motive*, Defendants now move this Court to reconsider their motion for selective prosecution under the First Amendment in light of the clarified standard in *Frederick Douglass*.

## ARGUMENT

Selective enforcement occurs where "(1) [the defendant] was similarly situated in material respects to other individuals against whom the law was not enforced, and (2) the selective enforcement infringed a constitutional right." *Id.* at *4.

Viewpoint discrimination of course violates First Amendment rights. "Restrictions based on viewpoint are especially invidious; viewpoint discrimination is 'poison.'" *Id.* at *9 (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J., concurring)). "[T]he government has no authority to license one side to fight freestyle, while forbidding the other to fight at all." *Id.* (quoting *Mahoney v. Babbitt*, 105 F.3d 1452, 1454 (D.C. Cir. 1997)). And "[g]ranting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 325 (2002).

To be sure, "[c]onduct may be regulated" without violating the First Amendment, *unless* it is "regulated *because* of the [person's] viewpoint." *United States v. Scott*, 957 F. Supp. 761, 774 (D. Conn. 1997) (emphasis added). And as Defendants previously noted (Doc. 235 at 2), the D.C. Circuit has acknowledged "[t]hat conduct prohibited by [FACE] might have expressive value," including "sit-ins which temporarily interfere with and block access to abortion facilities." *Terry v. Reno*, 101 F.3d 1412, 1419 (D.C. Cir. 1996). Thus the Government's prosecution of Defendants for similar conduct inherently triggers the First Amendment.

2

Moreover, the FACE Act "does not play favorites," since it protects both "abortion clinics" and "facilities providing pregnancy counseling services." *Id.* at 1419. Thus, given FACE's prohibition on both blocking access *and inflicting damage on* facilities providing reproductive health care services, *see* 18 U.S.C. § 248(a)(1), (3), the Act "would apply to an individual who spray paints the words 'KEEP ABORTION LEGAL' on a facility providing counseling regarding abortion alternatives." *Riely v. Reno*, 860 F. Supp. 693, 702 (D. Ariz. 1994). FACE also expressly prohibits blocking access to or damaging "a place of religious worship." 18 U.S.C. § 248(a)(2), (3).

In light of these principles, the Government's prosecution of Defendants constitutes selective enforcement in violation of the First Amendment.[1] Defendants are similarly situated to a significantly greater number of pro-abortion individuals who have damaged and defaced pro-life pregnancy resource centers and houses of worship around the country since the leak of the *Dobbs* opinion in May 2022, in blatant violation of FACE but resulting in almost zero legal consequences. And the Government's selective enforcement of the FACE Act against Defendants' conduct, while effectively exempting the far more rampant pro-abortion vandalism of pro-life pregnancy centers, violates Defendants' First Amendment rights under *Frederick Douglass*.

**A.  Similarly Situated**.

"Individuals are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Frederick Douglass*, 2023 WL 5209556, at *5 (internal quote omitted). To determine whether the prosecution "turns on 'unlawful favoritism,' rather than lawful

---

[1] Defendants do not concede the FACE Act is facially content-neutral but assume arguendo such neutrality for purposes of this defense.

3

prosecutorial considerations," courts must consider "relevant prosecutorial factors" that "will vary" based on "case-specific" circumstances and cannot be reduced to a singular list." *Id.*

In *Frederick Douglass*, where the plaintiffs wrote in chalk on a public sidewalk stating a single message that "Black Pre-Born Lives Matter" and were prosecuted for it under a local defacement statute, the Court found they were plausibly similarly situated to Black Lives Matters (BLM) advocates who were not prosecuted for chalking and painting "Black Lives Matters" messages throughout the City. *Id.* at *6. The Court highlighted that "both groups gathered about matters of public concern and sought to disseminate a political message,"; the types of locations and time of conduct were approximately the same; "[t]here was also strong evidence that both groups violated the defacement ordinance"; and the "differential response fail[ed] to correspond with the culpability of the two groups or the general deterrence value of enforcement against them," as plaintiffs engaged in only "a single" violation, while "for weeks individuals participating in the [BLM] protests painted their messages" on protected property without any arrests being made therefor. *Id.* at *6. "This lopsided prosecutorial response . . . does not comport with the deterrence value or culpability associated with the number of protestors and the scope of defacement, suggesting improper selective enforcement." *Id.*

The same is true here. Defendants are being prosecuted for a single incident of allegedly disrupting access to an abortion facility on October 22, 2020, while the Government has altogether failed to bring charges under FACE for more than 200 acts of physical violence against pro-life pregnancy centers and churches nationwide in the wake of the leak and official release of the *Dobbs* opinion.[2] This despite the fact that both groups have gathered to disseminate

---

[2] Mary Margaret Olohan, "'Jane's Revenge' Claims Another Pregnancy Center Victim," The Daily Signal, March 7, 2023, https://www.dailysignal.com/2023/03/07/pregnancy-center-violently-attacked-following-pro-abortion-protest//, citing Catholic Vote Tracker regarding recent

(conflicting) political messages; the types of relevant locations have been the same (allegedly blocking or damaging "reproductive health care" facilities); there is strong evidence that the unprosecuted pro-abortion vandals have blatantly violated the FACE Act, *see Riely*, 860 F. Supp. at 702; and the differential response entirely fails to correspond to the two group's relative culpability and deterrence value of enforcement, given the single-incident nature of Defendants' conduct here compared to the continuous and repetitive violence carried out for months against pro-life pregnancy centers in direct violation of FACE. This is all the more true given that Defendants here were at most allegedly engaged in act of civil disobedience that is by definition not deterred by resulting punishment,[3] whereas the exponentially greater amount of pro-abortion violence in direct contravention FACE has not similarly been an open act of civil disobedience, and thus the prosecution thereof would more readily further legitimate prosecutorial interests in deterrence. Accordingly, the Government's "lopsided prosecutorial response"—arresting and prosecuting Defendants for a single alleged clinic disruption while leaving unpunished more than 200 apparent direct violations of FACE by pro-abortion advocates—"suggest[s] improper selective enforcement." *Id.*

It's true that in recent months the Government has charged five pro-abortion individuals under FACE for inflicting physical damage on pro-life pregnancy centers.[4] But the D.C. Circuit just instructed that courts must "consider whether the [defendants] were similarly to *any* individuals against whom the defacement ordinance was not enforced." *Id.* at *7 (emphasis added). Moreover, these few charges still leave more than 200 acts of FACE-inflicting violence

---

attacks on pro-life pregnancy centers, https://catholicvote.org/pregnancy-center-attack-tracker/, and churches, https://catholicvote.org/tracker-church-attacks/.
[3] "Civil Disobedience," Britannica, https://www.britannica.com/topic/civil-disobedience.
[4]   https://www.justice.gov/crt/recent-cases-violence-against-reproductive-health-care-providers; https://www.13abc.com/2023/07/06/alleged-bg-pregnancy-center-vandal-facing-federal-charges/.

on pro-life centers over the past 15 months unpunished—even pregnancy center firebombings captured on security footage depicting the unmasked assailants and their vehicle's readable license plate.[5] At the same time, the Government charged 26 pro-life individuals under FACE in 2022, far more than the total number of FACE prosecutions in the prior 10 years, and it has charged eight more pro-lifers in 2023.[6] This is exactly the sort of "pattern of unlawful favoritism" that reveals "viewpoint discriminatory enforcement." *Brown v. City of Pittsburgh*, 586 F.3d 263, 293 (3d Cir. 2009) (quoting *Thomas*, 534 U.S. at 325). And it confirms the manifestly "differential response" between the two groups, especially given the abundant evidence of direct FACE violations by pro-abortion individuals (and the far greater occurrence of such violations), relative to the paltry number of pro-abortion prosecutions and the record high number of pro-life prosecutions.

Accordingly, Defendants are similarly situated to pro-abortion individuals who have damaged pro-life pregnancy centers in furtherance of a pro-abortion message without being prosecuted under FACE, thus satisfying the first element of a selective prosecution defense.

### B. Viewpoint Discrimination.

As noted, viewpoint discrimination is a blatant violation of the First Amendment, "whether by legislative enactment or executive action," and regardless of the Government's motive. *Frederick Douglass*, 2023 WL 6209556, at *13. In *Frederick Douglass*, the Court found the plaintiffs had plausibly stated a claim of viewpoint discriminatory enforcement where the City "permitted individuals expressing the 'Black Lives Matter' message to violate the

---

[5] CompassCare, "CompassCare Releases Description of Perpetrators, Implying FBI Involvement in Crime; Offers $5,000 Reward," https://www.compasscarecommunity.com/2022/09/compasscare-releases-description-of-perpetrators-implying-fbi-involvement-in-crime-offers-5000-reward/.
[6] https://www.justice.gov/crt/recent-cases-violence-against-reproductive-health-care-providers.

ordinance, as evidence by the *widespread*" BLM defacements across the City that resulted in no arrests, while "[i]n contrast, the police showed up in force to the" plaintiffs' rally and arrested the pro-life individuals who chalked a pro-life message. *Id.* at \*10. It noted that both messages were "political speech," and yet the government effectively allowed one view but not the other to remain unprohibited. *Id.* While the Court also highlighted that the plaintiff's speech occurred on a public sidewalk where speakers traditionally have heightened protection, it admitted the City could still enforce the defacement statute against political speech that defaces such sidewalk—but only in a viewpoint-neutral manner. *Id.*

The Government engaged in precisely such viewpoint discrimination here. By making a paltry number of arrests relative to the "widespread" incidents of ostensible pro-abortion FACE violations against pro-life centers since May of 2022, the Government has "effectively exempted advocates" of a pro-abortion, anti-*Dobbs* "message from the requirements of the [FACE Act]," while "the police showed up in force to" arrest the Defendants in this case based on a single alleged violation in 2020.[7] *Id.* Moreover, Defendants' *motivation and message was plainly pro-life*, and thus just as much "political speech" as the communication at issue in *Frederick Douglass*, and as that painted on (and motivating the physical destruction of) innocent pro-life pregnancy clinics throughout the country since last year. *See supra*. But the Government has punished Defendants' single interference with an abortion facility, while allowing hundreds (literally) of acts of interference against pro-life facilities and churches to go unpunished—even though the FACE Act "does not play favorites" and applies in both situations. *Reno*, 101 F.3d at 1419.

---

[7] Calvin Freiburger, "Video surfaces of FBI raid, arrest of nonviolent pro-life activists," LifeSite News, April 1, 2022, https://www.lifesitenews.com/news/video-surfaces-of-biden-fbi-raid-arrest-of-nonviolent-pro-life-activists/ ("The video…shows armed agents entering the home, holding pro-lifers at gunpoint").

7

The executive branch, too, "may not play favorites" with the FACE Act—"permitting some messages and prohibiting others." *Frederick Douglass*, 2023 WL 5209556, at *10. But that's exactly what the Government has done in bringing this prosecution.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the prosecution must be dismissed as unconstitutional selective prosecution under the First Amendment.

Respectfully Submitted,

HERB GERAGHTY
By Counsel

_____/s/_____
John C. Kiyonaga

600 Cameron Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonagaa.com

Counsel for the Defendant

<u>Certificate of Electronic Service</u>

    I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties.

                                                                          /s/_____
                                                                  John C. Kiyonaga