UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAUREN HANDY, *et al.*,<br><br>Defendants. | Crim. A. No. 22-096-1, -08, -10 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(August 21, 2023)

This criminal matter is in its third week of trial. Defendants Handy, Goodman, and Geraghty are charged with conspiracy against civil rights in violation of 18 U.S.C. § 241 and obstructing a reproductive health clinic in violation of 18 U.S.C. § 248. Just one evidentiary issue remains outstanding: the Government's request to exclude two of Defendants' proffered trial exhibits. After examining their probative value, the Court ordered supplemental briefing, focused on how Defendant intended to lay a foundation for the exhibits' admission. Order at 5-6, ECF No. 333 (Aug. 3, 2023) ("Order"). Upon review of that supplemental briefing, the relevant legal authority, and the pamphlet and video at issue, the Court shall exclude both exhibits.

As the Court explained in its last order on this subject, the Government must prove beyond a reasonable doubt, among other things, that Defendants intended to obstruct or interfere with the receipt or provision of reproductive health services as such. *See United States v. Mahoney*, 247 F.3d 279, 282 (D.C. Cir. 2001); *United States v. Handy*, 2023 WL 4744057, at *3 (D.D.C. July 25, 2023). The term "reproductive health services" is defined by statute as "medical, surgical, counselling or referral services related to the human reproductive system,

1

including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5).

Defendants claim that, at the time of the charged conduct, they subjectively believed that the clinic in question was conducting, evidently in addition to reproductive health services, what the Defendants refer to as "born alive abortions," which are undoubtedly unlawful under state and federal law. In other words, Defendants claim that they believed that the clinic was engaging in conduct that is not a "reproductive health service" within the meaning of 18 U.S.C. § 248(e)(5). In coming to this belief, Defendants[1] proffer that they viewed a video produced by an anti-abortion advocacy group, posted on YouTube approximately a decade ago.[2] In this video, an anti-abortion activist interviewed a doctor at the clinic "undercover," and used the surreptitious recording to produce an anti-abortion documentary regarding the morality and legal propriety of late-term abortions. The video excerpts, out of context, some exchanges from longer "B-roll" footage, and adds superimposed images, text, and music.[3]

Defendant Handy stresses that the video is not being offered to demonstrate that the clinic *in fact* engaged in unlawful conduct—nor could it. Regardless of Defendants' subjective beliefs, the video clearly stands for the proposition that there is never been a live birth at the clinic.

---

[1] Defendants Handy and Goodman have submitted specific proffers. Counsel for Defendant Geraghty only briefly placed on the record orally that Defendant Geraghty also viewed this video and it informed his intent in entering the clinic.

[2] Live Action, "Inhuman: Undercover in America's Late-Term Abortion Industry – Washington, D.C." (Apr. 28, 2013) *available at* https://www.youtube.com/watch?app=desktop&v=NxOWyumLufA&t=6s (last accessed Aug. 21, 2023 1:15 PM ET).

[3] Additionally, the Court briefly notes that the video concerns itself with late-term abortions, and abortion at any stage of pregnancy is lawful in the District of Columbia. *See* D.C. Council Committee Report, Enhancing Reproductive Health Protections Amendment Act, B24-0726 (Sept. 22, 2022), at 2 *available at* https://lims.dccouncil.gov/downloads/LIMS/49181/Committee_Report/B24-0726-Committee_Report1.pdf?Id=146150 (last accessed Aug. 21, 2023 1:24 PM ET) (describing statutory framework).

When the activist asks the doctor whether a fetus has ever survived the procedure at the clinic, the doctor responds, "[t]hat's why I try and sever the umbilical cord first, . . . and this way the fetus is expired first, so it doesn't [survive]." When asked again more directly, "has [a fetus] ever survived," the doctor responds again, "No. Not here, no. No."[4] These answers are unequivocal, and Defendants have proffered absolutely no evidence to otherwise suggest any unlawful conduct beyond their own unsubstantiated theories. The remainder of the discussion features exclusively hypotheticals, about a circumstance that, the doctor states, is nearly uncertain to occur.

    Nevertheless, Defendants proffer that they somehow understood these clear statements to mean, incorrectly, that the clinic had delivered an intact and viable baby, and that the clinic then so neglected the child as to cause its death. Predicated on this belief, Defendants will testify that they engaged in the offense conduct because, and only because, they intended to stop the provision of unlawful services. As the Court previously held in its last order on this subject, this testimony is relevant, if true, because it can negate the requisite mental state for the charged offenses. *See* Order at 2.

    The probative value of the exhibits, however, are substantially outweighed by their prejudice. Before continuing, the Court notes that it does not exclude probative evidence lightly. The Court always first considers the potential effectiveness of a curative instruction, "the primary weapon[] against improper jury bias," *United States v. Tucker*, 12 F.4th 804, 826 (D.C. Cir. 2021), before excluding relevant evidence. In doing so, however, the Court must maintain a "realistic view of the capabilities of the human mind," i.e., whether prejudice would nevertheless

---

[4] Although Defendant included this second exchange in her briefing, Defendant omitted the crucial preceding exchange, which sets the context for the doctor's clear statement that there has never been a live birth at his clinic.

unduly linger after an instruction is given. *See Virgin Islands v. Pinney*, 967 F.2d 912, 918 (2d Cir. 1992) (excluding relevant evidence of violence against children as so "emotionally charged" that curative instruction would be ineffective). Wholesale exclusion, rather than tailoring and a limiting instruction, is particularly appropriate where defense evidence would impermissibly shift the focus of the case away from a defendant's conduct towards the irrelevant misdeeds of a third party. *See United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997).

Unlike the complete video that defense counsel provided to Chambers, from which the video at issue was excised, Defendants evidently only viewed the shorter video prior to the charged conduct. The video on which Defendants *did* rely is, in a word, propaganda. It begins with superimposed text asking rhetorically, "[w]hat happens when a baby survives an abortion?" It labels the doctor in the video an "abortionist," a derogatory slur against doctors who provide abortion services.[5] The video then rhetorically asks, "Will the abortionist fulfill his legal responsibilities" should a fetus survive a procedure at his clinic. It characterizes the clinic and doctor as "inhuman," "cruel and barbaric," and "not human in nature or character." It superimposes an image of a child purportedly born at 24 weeks, and features dramatic music throughout. The entire point of the video is to engender sympathies in favor of the pro-life movement in the United States and against this particular doctor and clinic. Admitting the video would create a "minitrial" on the clinic, shifting the jury's focus from Defendants' charged conduct to the conduct of the clinic and doctor eight years prior. *Cf. United States v. Williams*, 40 F.4th 263, 268 (5th Cir. 2022) (excluding portions of defendant's tax history in tax prosecution where it would create a minitrial "giv[ing] the jury the chance to decide the case on

---

[5] Oxford English Dictionary, "abortionist" *available at* https://www.oed.com/dictionary/abortionist_n (last accessed Aug. 20, 2023 10:01 PM ET) ("[c]hiefly depreciative").

an improper basis").

As the Court has repeated *ad nauseum*, the merits or morals of abortion are irrelevant to this case. The Court cannot permit, pursuant to Federal Rule of Evidence 403, the jury's attention to be focused on a video of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *See United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983); *cf. also United States v. Riego*, No. 1:21-cr-00596-WJ-1, 2022 WL 4182486, at *4 (D.N.M. Sept. 13, 2022) (in manslaughter case, excluding under Rule 403 audio of defendant exclaiming, after learning of her children's death due to her conduct, "my babies"). Although the Court may have been inclined to admit the complete version of the video that did not feature superimposed text, images, and music, because Defendants did not rely on that less prejudicial video in coming to their proffered intent, *that* video has no probative value.

Although the Court excludes the video, it does not exclude testimony regarding Defendants' proffered beliefs that they developed after having purportedly viewed the video. In doing so, Defendants may not simply read the video into the record. Defendants shall not otherwise characterize the video, other than to say that they watched a video which, rightly or wrongly, led them to hold a certain belief that informed their intent leading up to and on October 22, 2020.

The proffered pamphlet faces the same problem. Defendant Handy proffers that she created the pamphlet before the incident at the clinic, and that its existence corroborates her assertion that she intended to obstruct the clinic only to the extent that it was providing, in her subjective view, unlawful services.[6] The pamphlet makes entirely unsubstantiated allegations in

---

[6] No other Defendant offers any proffer regarding the pamphlet or how it may or may not reflect their proffered mental state. There is no indication in any proffer that any Defendant other than Defendant Handy developed the pamphlet, so the probative value of the pamphlet as to all other Defendants is minimal, even if they possessed the pamphlet at the time of the charged conduct.

5

lurid terms claiming, wrongly, that the doctor "left a baby struggling for life to die after a failed abortion." It also claims that the doctor has engaged in medical malpractice which, even if a belief earnestly held by Defendants, would have no bearing on the merits of the case. More fundamentally, it places the clinic on trial, when the truth of the baseless assertions in the pamphlet have no probative value. Even though the pamphlet may bolster her account regarding her mental state, like the video, the pamphlet's probative value is substantially outweighed by the great risk that its admission would "creat[e] a sideshow and send[] the trial off track" into prejudicial and irrelevant aspersions on the doctor's character and clinic's efficacy. *See United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir. 2012). For the same reason, Defendant Handy may offer no more testimony regarding the contents of the pamphlet other than her assertion that she developed and may have distributed a pamphlet reflecting her subjective belief as to the clinic's services at the time of the charged conduct.

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED**, that the remainder of the Government's [316] Motion to Exclude Certain Defense Exhibits is **GRANTED**. It is further

**ORDERED**, that the remainder of Defendants' proposed exhibits are **EXCLUDED**.

**SO ORDERED**.

Dated: August 21, 2023

                                                                    /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge