IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | NO. 22-cr-00096-CKK |
| | : | |
| v. | : | |
| | : | |
| **LAUREN HANDY, et al.,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S AMENDED RESPONSE
### IN OPPOSITION TO MOTION TO RECONSIDER
### <u>MOTION TO DISMISS BASED ON SELECTIVE PROSECUTION</u>

The United States of America, by and through its counsel of record, respectfully submits its amended response in opposition to the Defendants' Motion to Reconsider Defendants' Motion to Dismiss Based on Selective Prosecution (the "Motion to Reconsider"). *See* Doc. 370.

On May 3, 2023, Defendant Idoni, joined by Defendants Goodman, Harlow, Hinshaw, and Geraghty, filed a motion to dismiss the indictment (the "Motion to Dismiss") arguing, among other things, that the government engaged in vindictive and selective prosecution. *See* Doc. 215 at 3 ("[T]his entire case was undertaken for an improper motive, as retaliation for the Supreme Court's overruling *Roe v. Wade*"); Doc. 235 at 1 (stating that "this charging decision penalizes Defendant for a political opinion" and asserting that prosecutorial discretion is subject to the restrictions of the Fifth Amendment Due Process Clause).

The Court denied the Motion to Dismiss based on selective or vindictive prosecution, *see* Doc. 299 at 3, and Defendants Geraghty, Handy, Goodman, Idoni, Hinshaw, and Darnel seek reconsideration of the Court's July 24, 2023 order (the "Order").[1] The government filed a response

---

[1] The government notes that while Defendant Handy has joined in the Motion to Reconsider, she did not join the underlying Motion to Dismiss. Rather, she separately moved to dismiss the indictment on other grounds. *See* Doc. 159. This Court denied that motion on July 25, 2023. *See* Doc. 306.

1

in opposition to the Motion to Reconsider, Doc. 373, asserting that reconsideration was not warranted because there had been no controlling or significant change in the relevant law given that 1) the selective prosecution claim asserted by the Defendants in the Motion to Dismiss was based on the Due Process Clause of the Fifth Amendment; 2) the case cited as the basis for the Motion to Reconsider clarified D.C. Circuit law regarding selective prosecution claims predicated on the First, not Fifth, Amendment; and 3) a motion for reconsideration "should not be used or seen as an opportunity to relitigate… 'arguments that could have been, but were not, raised previously.'" *United States v. Sutton*, 2022 WL 11744415 at *2 (D.D.C. Oct. 20, 2022) (quoting *United States v. Booker*, 613 F. Supp. 2d 32, 34 (D.D.C. 2009)).

As the Court noted, the Motion to Reconsider asserts a distinct, new theory of selective prosecution based on the First Amendment. *See* Aug. 23, 2023 Minute Order.[2] The Court directed the government to file additional briefing and to "assume that Defendant presses a selective-prosecution claim predicated on the First Amendment" and to "assume that Defendant has proffered comparators." *Id.*

## Argument

The Motion to Reconsider should be denied.[3] As explained in further detail below, there has been no controlling or significant change in the law warranting reconsideration of the

---

[2] The government maintains that there has been no controlling or significant change in the law with respect to the Defendants' assertion of selective prosecution under the Fifth Amendment and that the Defendants have not otherwise established any other circumstances warranting reconsideration with respect to their Fifth Amendment argument. On this point, the government incorporates by reference the arguments set forth in its Response to the Motion to Dismiss and its first Response to the Motion for Reconsideration. *See* Docs. 223 and 373. This Court has held that the Defendants "offer no evidence, much less 'clear evidence,' that the Government's prosecutorial priorities are constitutionally suspect," and they therefore have not established that their Fifth Amendment rights were infringed. Doc. 299 at 4. Thus, they cannot satisfy the second prong of the selective prosecution analysis under their Fifth Amendment theory, and the Court's denial of the Motion to Dismiss based on the Fifth Amendment selective prosecution claim should remain unchanged regardless of whether the Court finds that the Defendants have now identified a similarly situated group sufficient to satisfy the first prong of the selective prosecution analysis.

[3] The government incorporates by reference the arguments set forth in its Response to the Motion to Dismiss. *See* Doc. 223.

2

Defendants' Motion to Dismiss and, even if there had been, the Defendants' First Amendment selective prosecution claim fails on the merits.

## I. Reconsideration of the Motion to Dismiss is not warranted.

The Federal Rules of Criminal Procedure do not provide for motions for reconsideration, however, some judges of this Court have applied the "as justice requires" standard used in civil cases under Federal Rule of Criminal Procedure 54(b) to analyze motions to reconsider interlocutory orders in criminal cases. *See, e.g., United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015); *United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C. 2014); *United States v. Hemingway*, 930 F. Supp. 2d 11, 12 (D.D.C. 2013). In *Hemingway*, the Court explained that "[j]ustice may require reconsideration where a court patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred." *Hemingway*, 930 F. Supp. 2d at 12-13. Importantly, a "motion for reconsideration is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *Hassanshahi*, 145 F. Supp. 3d at 80-81 (internal quotations omitted).

None of the circumstances under which justice may require reconsideration of the Court's order is present in this case. The court did not misunderstand Defendant Idoni's motion to dismiss or make a decision beyond the issues presented by Idoni's motion – and Idoni does not allege or attempt to show that the Court did so. Further, the Court did not fail to consider controlling case law in issuing its order, and no change in the law has occurred in the intervening time. Reconsideration of the Court's order is, therefore, not warranted.

### II. To the extent Defendants are submitting a new motion to dismiss for selective prosecution, the motion should be denied as untimely.

Motions to dismiss alleging selective prosecution must be filed pretrial. Fed. R. Crim. P. 12(b)(3)(iv); *see also* Amended Pretrial Scheduling Order (Doc. 154) (requiring motions challenging the indictment to be filed by January 27, 2023). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely" (Fed. R. Crim. P. 12(c)(3)), unless the moving party demonstrates good cause for the delay. Here, the Defendants have not demonstrated "good cause" for their tardy filing. *See, e.g., United States v. Scrushy*, 721 F.3d 1288, 1305 (11th Cir. 2013) (finding no "good cause" for late filed motion to dismiss for selective prosecution); *United States v. Bryant*, 5 F.3d 474, 476 (10th Cir. 1993) ("record clearly indicates that Defendant has failed to show cause for his failure to make a timely motion [to dismiss for selective prosecution]"). The Defendants now move to dismiss for selective prosecution, asserting that the D.C. Circuit's opinion in *Frederick Douglass Foundation, Inc. v. District of Columbia*, 2023 WL 5209556 (D.C. Cir. Aug. 15, 2023), represents a controlling or significant change in the law such that the Defendants should now, for the first time, be permitted to bring a selective prosecution claim based on the First Amendment. But, as explained in further detail below, the analysis applicable to the Defendants' First Amendment claim is wholly unchanged by *Foundation*,[4] therefore, there is no "good cause" for the Defendants' late filed motion to dismiss alleging selective prosecution.

### III. The Defendants' First Amendment selective prosecution claim has no merit.

The Defendants' allegation of selective prosecution in violation of the First Amendment fails on the merits. In general, "[t]he Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). If a prosecutor "has probable cause

---

[4] *See* Sec. III (C), below.

4

to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Because the "decision to prosecute is particularly ill-suited to judicial review," the standard for asserting such selective prosecution claims "is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To succeed on their motion to dismiss for selective prosecution, Defendants must demonstrate that 1) they were similarly situated in material respects to other individuals against whom the law was not enforced, and 2) the selective prosecution infringed a constitutional right. *Foundation*, 2023 WL 5209556 at *4; *see also United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009) (applying the two-prong analysis to an equal protection selective prosecution claim). The Defendants have shown neither.

### A. The Defendants have not shown that they are similarly situated to other individuals who were not prosecuted.

With respect to the first prong, individuals "are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Foundation*, 2023 WL 5209556 at *5 (citing *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000)). Determining whether individuals or groups are similarly situated is a "fact-intensive and case-specific comparative inquiry." *Id.* at 6. In making this determination, "courts must assess whether a [group] is similarly situated to a [group] against whom the law was not enforced across the relevant prosecutorial factors," including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Id.* at 5 (quoting *Wayte*, 470 U.S. at 607). However, "[t]he factors will vary and cannot be reduced to a singular list." *Id.* at 6 (internal citations omitted).

Defendants attempt to make the requisite showing with respect to a similarly situated group first by citing to a blog post describing vandalism of a pro-life pregnancy center in Minneapolis. Doc. 370 at 4. The blog post itself, however, notes that no arrests had been made at the time of publication because the perpetrators were no longer present when officers responded to the scene. Defendants next cite to a press release from a self-identified "pro-life medical office," describing a fire-bombing attack on the office. *Id.* at 6. Similarly, the press release itself notes that the perpetrators had not been identified at the time of publication; rather, the press release provides descriptions of the individuals believed to be involved and speculates that unnamed FBI agents, acting on behalf of the group "Jane's Revenge," were complicit in the attack.

This Court need go no further than assess the first relevant prosecutorial factor identified by the Supreme Court – the strength of the case – to determine that the Defendants have not identified a similarly situated group with respect to either incident. Based on the information relied upon in the Motion for Reconsideration, the would-be defendants were not identified; even assuming they were, both incidents took place in the night with, apparently, few or no witnesses. The District Court in the Middle District of Tennessee specifically pointed to these factual distinctions in denying a motion to dismiss FACE Act charges brought on the basis of selective prosecution by some of the same Defendants charged here. The court explained that the defendants had "not established that the Government [was] making improper distinctions" where "the sources that the defendants suggest provide proof that the Department of Justice is refusing to protect crisis pregnancy centers consist in significant part of accounts of after-hours vandalism – including many cases in which, at least according to the cited reports, no particular culprit had yet been identified." *United States v. Gallagher et al.*, No. 3:33-cr-00327 (M.D. Tenn. July 3, 2023), Doc. 282 at 16. The court noted that this was "a stark contrast to the direct physical obstruction, targeted at actual

6

patients and employees, performed by these defendants in open view of witnesses during ordinary business hours." *Id.* In other words, these are "material difference[s]" that distinguish the incidents cited by Defendants from their own conduct. *See Khanu*, 664 F. Supp. 2d at 32 ("A similarly situated offender is one outside the protected class who has committed the same crime *under roughly the same circumstances* but against whom the law has not been enforced." (emphasis added)).

Both the blog post and the press release speculate that the pro-abortion group Jane's Revenge was responsible for the respective incidents described. To the extent the Defendants assert that they are similarly situated to Jane's Revenge as a whole, their argument fails because – as the Defendants themselves acknowledge – the government *has* prosecuted members of Jane's Revenge under the FACE Act for their conduct. *See* Doc. 370 at 5 n. 4.

Beyond these two incidents, in which the Defendants present no information indicating that a perpetrator was identified such that they would be able to be prosecuted, the Defendants' argument is based on unfounded statistics. Doc. 370 at 4 ("[T]he Government has altogether failed to bring charges under FACE for more than 200 acts of physical violence against pro-life pregnancy centers and churches nationwide…."); Doc. 370 at 6 ("[T]he Government charged 26 pro-life individuals under FACE in 2022, far more than the total number of FACE prosecutions in the prior 10 years, and it has charged eight more pro-lifers in 2023."). To the extent the Defendants can point to any factual basis for the statistics they cite, statistics alone are not enough to establish similarity for the purpose of a selective prosecution claim. *See Armstrong*, 517 U.S. 456 (finding that the defendant failed to meet the threshold for discovery because although the study they relied on showed that all defendants charged in the district with a particular offense during the preceding year were Black, defendants nonetheless "failed to identify individuals who were not [B]lack and

could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted"); *United States v. Hedaithy*, 392 F.3d 580, 608 (3rd Cir. 2004) (news articles demonstrating that much more cheating occurred than was prosecuted did not demonstrate that "s*imilarly situated* persons were treated differently"). Further, as the D.C. Circuit and this Court have recognized, a group "cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Terry v. Reno*, 101 F.3d 1412, 1420 (D.C. Cir. 1996) (citing *United States v. Soderna*, 82 F.3d 1370, 1376 (7th Cir. 1996)); Doc. 299 at 4 (stating with respect to the Defendant's selective prosecution claim that "[i]t is irrelevant whether, in practice, most of those prosecuted under FACE are anti-abortion protestors, because a group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group" (internal quotations omitted)).

Therefore, while the Defendants have proffered comparators, the proffer is not sufficient to show that the Defendants are similarly situated to any other individual who was not prosecuted, and the selective prosecution claim therefore fails. The Motion to Reconsider should be denied.

### B. The Defendants have not established that the prosecution infringed on their First Amendment rights.

With respect to the second prong of the analysis, the Defendants have failed to show that the prosecution infringed their First Amendment rights. As an initial matter, the Defendants' claim presupposes that the actions that led to their indictment were protected by the First Amendment. *See Terry,* 101 F.3d at 1419 ("Protesters have no First Amendment right to cordon off a street, or [the] entrance to a public or private building and allow no one to pass who did not agree to listen to their exhortations." (internal quotations omitted)). At most, the D.C. Circuit has recognized that the conduct prohibited by the FACE Act "might have expressive value." *Id.*

Assuming the Defendants' actions were subject to First Amendment protection, the claim of selective prosecution is still without merit. The D.C. Circuit, this Court in this very case, and every other court of appeals to consider the issue have upheld the FACE Act's constitutionality under the First Amendment. *Terry* 101 F.3d at 1418; Doc. 299 at 5; Doc. 223 at 5 (collecting cases). While "selective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech," *Frederick*, 2023 WL 5209556 at *9, the government's prosecutorial decisions here easily pass muster under the relevant test.

Specifically, when selective prosecution is alleged on First Amendment grounds with respect to a statute governing both speech and non-speech elements, the Supreme Court has applied the test articulated in *United States v. O'Brien*, 391 U.S. 367, 376 (1968), to determine if a constitutional violation has occurred. *Wayte*, 470 U.S. at 611. Under *O'Brien*, when "speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.* (quoting *O'Brien*, 391 U.S. at 376).

The defendant in *Wayte* wrote several letters to government officials stating that, in contravention of a recent Presidential Proclamation, he had not registered with the Selective Service System and did not intend to do so. He was subsequently indicted for his failure to register. *Id.* at 601-603. The defendant moved to dismiss his indictment for selective prosecution, alleging that he was similarly situated to other individuals who had not registered but had not been vocal about their intent not to register, and that the decision to prosecute him was therefore a violation of his Frist Amendment rights because it "created a content-based regulatory system." *Id.* at 610-11. The Supreme Court rejected the defendant's selective prosecution argument and explained

9

that the prosecution was constitutional because it satisfied each factor of the *O'Brien* test: the government had an important interest, unrelated to the suppression of free expression, in ensuring its own security, and the registration requirement – and prosecution for failure to comply – "placed no more limitation on speech than was necessary to ensure registration for the national defense." *Id.* at 613. Importantly, the Supreme Court noted that any other result would allow any individual to fail to register and avoid prosecution simply by reporting himself and claiming that his report constituted First Amendment protected activity. *Id.* at 613-14.

Similarly, here, the Defendants' allegation that the decision to prosecute them represents a content-based or viewpoint-based limitation on speech is a red herring. They are being prosecuted because their conduct violated the FACE Act, not because of the reasons they engaged in the conduct that violated the FACE Act. The D.C. Circuit has applied the *O'Brien* test to hold that the FACE Act is facially constitutional, explaining that the government has an important interest in ensuring access to lawful health services; that the interest is unrelated to the suppression of free expression – as the "statute…condemns only the independent noncommunicative impact of conduct within its reach"; and that the Act is "narrowly tailored to further the Government's interests" because it "merely forbids physical interference with people going about their own lawful private business" while "leav[ing] open ample alternative means for communication." *Terry*, 101 F.3d at 1419-20. As this Court has already explained, "[b]ecause *Terry* remains good law the Court is bound to apply it." Doc. 299 at 5.

While the Court in *Terry* stated that the "conclusion that the [FACE Act] satisfies the *O'Brien* test *might* be different" with respect to an as-applied, rather than facial, constitutional challenge, the Defendants have proffered no facts that would create such a distinction here. *Terry*, 101 F.3d at 1420 (emphasis added). Further, other courts have upheld the FACE Act's application

10

to conduct like that engaged in by the Defendants here. *See Soderna*, 82 F.3d at 1374-76 (upholding FACE Act convictions under First Amendment challenge where defendants "blockaded the clinic in order to express their opposition (the sincerity of which is not in question) to abortion"); *Weslin*, 156 F.3d at 296 (upholding FACE Act convictions against First Amendment claim that law discriminates based on content and viewpoint and explaining "[b]oth by its language and its application, FACE seeks to govern all people who obstruct the provision of reproductive health services," and "it does so regardless of whether the obstruction is or is not motivated by opposition to abortion"). In sum, like the defendant in *Wayte*, the Defendants here cannot avoid prosecution simply by being vocal about why they broke the law. "The First Amendment confers no such immunity from prosecution." *Wayte*, 470 U.S. at 614.

### C. *Foundation* is irrelevant to the First Amendment analysis.

*Foundation* is not contrary to the analysis set forth above; in fact, it does not affect the analysis applicable to the Defendants' First Amendment selective prosecution claim at all. *Foundation* clarifies that no discriminatory intent is necessary to establish a First Amendment claim of selective prosecution. *Foundation*, 2023 WL 5209556 at *11 ("[First Amendment selective enforcement] claims are distinct from equal protection claims and do not require a plaintiff to demonstrate intentional discrimination."). That clarification does not change the fact that the Defendants would need to show that the instant prosecution failed the *O'Brien* test in order to succeed on their selective prosecution claim. *Foundation* otherwise concerns content- and viewpoint-based selective enforcement of a city ordinance as it applied to political speech in a public forum and is therefore irrelevant to the Defendants' case. *Id.* at *10 (explaining that the speech at issue constituted "political speech" and "took place on a public sidewalk, a traditional public forum"). Regulation of political speech in a public forum is governed by a legal framework

11

wholly distinct from expressive conduct. *See United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998) ("The distinction between regulating speech and regulating conduct that has expressive components is fundamental."). The Motion to Reconsider asserts with no explanation that the Defendants were engaged in "political speech," Doc. 370 at 7, but the indictment is based only on the Defendant's obstructive actions and no other speech in which the Defendants might have been simultaneously engaged. As explained above, to the extent those obstructive actions are afforded First Amendment protection at all, it is only for the "expressive value" of the conduct, landing the analysis squarely within the *O'Brien* framework. *Terry*, 101 F.3d at 1419 (explaining that "conduct prohibited by the [FACE Act] might have expressive value" and therefore applying *O'Brien*).

Therefore, in addition to failing to show that they are similarly situated to any individual who was not prosecuted, the Defendants have also failed to show that the prosecution infringed on their First Amendment rights. The Court should reject the merits of the Defendants' First Amendment selective prosecution argument just as it did with respect to the Defendants' claim of selective prosecution based on the Fifth Amendment.

## Conclusion

For the foregoing reasons, the Government requests that this Court deny the Motion to Reconsider.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar No. 6272840
Trial Attorney
Criminal Section, Civil Rights Division
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052
*/s/ John Crabb Jr.*
JOHN CRABB JR.
NY Bar No. 2367670
REBECCA G. ROSS
NY Bar No. 5590666
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
Email: John.D.Crabb@usdoj.gov

**CERTIFICATE OF SERVICE**

      SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the government's amended response has been electronically filed and accordingly served upon attorney for the defendant.

DATE: August 29, 2023                                    */s/ Sanjay H. Patel*
                                                                          Sanjay H. Patel