IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| LAUREN HANDY | : | NO. 1:22-cr-00096CKK |

**DEFENDANTS LAUREN HANDY, JOHN HINSHAW, WILLIAM GOODMAN, AND HERB GERAGHTY'S MOTION FOR JUDGMENT OF ACQUITTAL**

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Defendants Lauren Handy, John Hinshaw, William Goodman, and Herb Geraghty hereby jointly move this Court for a judgment of acquittal because the Government's evidence was insufficient to sustain a conviction on either Count as a matter of law.

**Introduction.**

Fed. R. Crim. P. 29 provides:

> **(a) Before Submission to the Jury.** After the prosecution closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.  If the court denies a motion for a judgment of acquittal at the close of the prosecution's evidence, the defendant may offer evidence without having reserved the right to do so.
> **(b) Reserving Decision**. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.  If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

*Id*. Defendants here moved for acquittal both after the close of the Government's evidence and after the close of all the evidence.

**I.      Legal Standard.**

In ruling on a Rule 29 motion the Court must view the evidence in the light most favorable to the Government. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The question the Court must answer is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. A "Rule 29 judgment of acquittal is a substantive determination that the prosecution has failed to carry its burden." *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005). Although "the jury is the primary factfinder, the trial judge still resolves elements of the offense in granting a Rule 29 motion in the absence of a jury verdict." *Id*. (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571-75 (1977).

"[A] trial judge, . . . must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir.), *cert. denied*, 331 U.S. 837 (1947). If, on the other hand, she "concludes that upon the evidence there must be such a doubt in a reasonable mind, [s]he *must* grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion *must* be granted." *Id*. at 232-33 (emphasis added); *see also United States v. Jabr*, No. CR 18-0105 (PLF), 2019 WL 13110682, at *3 (D.D.C. May 16, 2019 (same)).

Nor does the Court's determination of a Rule 29 motion invade the province of the jury; "[t]he Court is not stepping into the shoes of the jury to assess the defendants' guilt or to make any findings about the credibility of witnesses, but rather, is 'simply applying a legal standard to the government's evidence.'" *United States v. Jabr*, 2019 WL 13110682, at *4 (citing *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 n.1 (D.D.C. 1989)). Moreover, the Court "is

2

obligated to take a hard look at the evidence and accord the government the benefit of only 'legitimate inferences.'" *Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (quoting *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C.Cir.1983)). Further, the Court "is not required to view the evidence through dirty window panes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt." *Id*. Thus, where, as here, there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the Court has no discretion; it simply *must* grant the motion.

**II.    Argument.**

    **A.    The Evidence is Insufficient as to Count One.**

Count One of the Indictment charges a violation of 18 U.S.C. § 241, Conspiracy Against Rights. The three elements of the crime here are: 1) That two or more persons reached an agreement or came to an understanding to injure, oppress, threaten, or intimidate someone in the free exercise of the right to access reproductive health services; 2) That defendant voluntarily and intentionally joined in the agreement or understanding; and 3) That defendant intended to hinder, interfere with, or prevent the patients and/or employees of the Washington Surgi-Clinic in their right of access. Jury Instruc. 24.[1]

Concerning the first element, as will be shown more fully below, there was no evidence presented that Defendants agreed or came to an understanding to injure or threaten anyone. That leaves only an agreement to "oppress" or "intimidate" someone. The jury, apparently recognizing that there was no evidence that Defendants agreed to injure or threaten anyone, sent a note to the Court asking the meaning of "oppress" and "intimidate." Contrary to the suggestions of the parties, this Court submitted the following response: "The words 'oppress' and 'intimidate' are not used in

---

[1] Defendants do not intend to waive any objections to the jury instructions by citing them herein.

any technical sense, but cover a variety of conduct intended to harm, frighten, punish, prevent, *or obstruct* a person's exercise or enjoyment of a right guaranteed by the laws of the United States." *United States of America v. Handy*, No. CR 22-096 (CKK), 2023 WL 6199084, at *2 (D.D.C. Sept. 22, 2023) (emphasis added).

This response was erroneous in several ways: First, instead of defining each word independently for the jury, the Court lumped them together and listed several ideas the words (apparently taken together) "cover" with no indication of which word covers which idea. Second, if a court instructs a jury that a word is "not used in any technical sense," as the Court did here, the next thing the jury should be told is that the word must be given its ordinary meaning. If the court is inclined to provide a definition, it should do so by reference to a reliable dictionary. Webster's New International Dictionary, Second Edition, Unabridged, defines "intimidate":

> To make timid or fearful; to inspire or affect with fear; to make fearful; to frighten; specif., to deter, as by threats; to overawe; cow.

The same dictionary defines "oppress":

> 1(a) *Obs.* To hurt by physical pressure; to crush; smother; trample. (b) C*hiefly poetic.* To overpower, as by weight; overwhelm.
>
> 2. To burden spiritually as if with weight; to weigh heavily upon; to weigh down; as, *oppressed* by a sense of failure.
>
> 3. To crush, burden, or trample down by abuse of power or authority; to treat with unjust rigor or with cruelty.

The modern Webster's Dictionary online is much simpler, but similar. *Neither dictionary includes "obstruct" or anything like it within the definition of either "intimidate" or "oppress*." Thus, the Court here, in its response to the jury's question, improperly imported language that was not within the contemplation of the statute and inadvertently misled the jury. This error cannot be harmless. We need not speculate upon whether the definitions of the words mattered to the jury.

4

*They specifically asked for them.* The incorrect addition of "obstruct" could not have been insignificant.

It is at least arguable that the evidence did not support a finding that Defendants agreed to "harm, frighten, punish, or prevent" anyone in the exercise or enjoyment of a right of access. But injecting "obstruct" into the mix provided the jury a means to find a conspiracy where otherwise they would not have done so.

As to the second element, the evidence fails to support a finding that Defendants voluntarily and intentionally joined any such agreement. Instead, no reasonable mind could have fairly concluded beyond a reasonable doubt that Defendants agreed to anything other than "to remain peaceful" and even if others tried to hurt them, "to be loving in their response to that." The Government's star witness, Caroline Davis, even admitted that. Trial Trans. 38:7-14 (Aug. 17, a.m.) (testimony of Caroline Davis); *see also id*. at 33:15-19 (Q. "Were there any individuals who had agreed to enter into the clinic, participate in the initial blockade, but then say – or decide that they weren't going to risk arrest and leave when the police arrived?" A. "I don't know."); *id.* at 36:13-19 (the use of chains or bike locks and going limp when being arrested were discussed, but Ms. Handy "just made it clear that if you felt led to do so, she wasn't going to put a quash on it"); *id*. at 100:16-19 (Mr. Geraghty said "he wasn't a hundred percent sure what he was going to do"). See also Trans. 79:9-13, 80:5-14 (Aug. 22, 2023 a.m.) (testimony of Ms. Handy discussing "points of unity" such as "our commitment to nonviolence").

In this respect this case is like *Recognition Equip., Inc*., *supra*. There the court granted the defendants' Rule 29 motion to dismiss a conspiracy claim because the evidence failed to show that the defendants knew of the alleged scheme. *Id*. at 589. Similarly, the evidence here failed to show

5

that Defendants knew of any alleged scheme to "oppress" or "intimidate" anyone. Defendants' motion should therefore be granted as to Count One.

As to the third element, intent to hinder or interfere, the Government presented virtually no evidence as to the intent of Mssrs. Hinshaw and Goodman, and Mr. Geraghty testified affirmatively that he had no intention of breaking the law and that his only intent was to "to reach out to the patients going into the abortion clinic and let them know that they had a choice, they had other options." Trans. 105:19-21, 104:25-105:2 (Aug. 22, 2023 p.m.).

Regarding Ms. Handy, her unimpeached testimony was that in 2019 she had traveled from Baton Rouge, LA back to Washington, D.C. to go to this clinic to reach out to people in crisis pregnancies with alternatives to abortion "because of the video" she had seen about Dr. Santangelo's live birth abortions. Trans. 67:6-68:9 (Aug. 22, 2023 a.m.). Again, when considering where to hold the event in question on October 22, 2020, Ms. Handy testified unequivocally that "it had to be Washington Surgi-Center . . . because of the video." Trans. 69:12-17 (Aug. 22, 2023 a.m.); *see also id.* at 87:17-20. She further testified that she distributed a flyer at the event that also asserted her beliefs regarding Dr. Santangelo performing live birth abortions. Trans. 70:20-71:3 (Aug. 22, 2023 a.m.). No reasonable mind could conclude guilt beyond a reasonable doubt as to Ms. Handy because she was not at the clinic that day to hinder, interfere with, or prevent anyone from obtaining or providing *legal* services, but only *illegal* services. This intent to prevent illegal services was communicated to the other Defendants, who shared Ms. Handy's belief. Accordingly, the evidence was insufficient as to intent, and Defendants' motion should be granted.[2]

In fact, however, the Court informed the jury on the first day of trial that "[i]t's a conspiracy," Trial Trans. 140:4 (Aug. 16, 2023 a.m.), before there had been any testimony

---

[2] Defendants' intent, of course, negates a guilty finding on any of the charges.

concerning any agreement between the Defendants. As a result, it is reasonable to infer that the jury did not bother even to consider the actual evidence before concluding that the Government had proven its conspiracy charge – the Court had already settled the matter.

Additionally, as shown above, the evidence that was presented failed to show which Defendants, if any, knew of which specific acts any of the others were going to engage in, which if any knew of someone bringing locks and chains (which, after all, were kept in a closed bag until the clinic had already been entered), and so on. Indeed, some Defendants did not even know what *they* were going to do until the moment presented itself. *See*, *e.g.*, Trans. 8:5-11 (Aug. 22, 2023, p.m.) (testimony of Ms. Idoni – Q: "Had you decided what you were going to do before you got to Washington, D.C.?" A: "No, I had not. I had feelings toward one way, but *I totally like to really just pray and leave it up to how the Holy Spirit would lead me* about as far as whether I had peace about something or not, and making that decision, I would never have made that ahead of time.") (emphasis added); Trans. 100:16-20 (Aug. 17, 2023 a.m.) (testimony of Caroline Davis) (Mr. Geraghty "wasn't a hundred percent sure what he was going to do").

The texts, emails, and Facebook messages between some Defendants (such as Ms. Handy and Mr. Geraghty) regarding travel plans and who was coming establish only that some people were willing to risk arrest, most of whom remained unnamed, not that they were specifically intending to "oppress" or "intimidate" anyone. Mr. Hinshaw was not even mentioned in those exchanges, and Mr. Goodman only in passing. Accordingly, that evidence is insufficient to sustain a conviction under Count One, the conspiracy charge, and Defendants' motion should be granted as to this Count.

### B. The Evidence is Insufficient as to Count Two.

Count Two of the Indictment charges a violation of 18 U.S.C. § 248(a)(1), the Freedom of Access to Clinic Entrances Act. As applied here, the elements of an offense are: 1) A defendant used force or physical obstruction; 2) A defendant intentionally injured, intimidated, or interfered with Ashley Jones or the employees of the Washington Surgi-Clinic, or attempted to do so; and 3) A defendant did so because Ashley Jones was obtaining, or the clinic was providing, reproductive health services. Jury Instruc. No. 25.

### 1. The Evidence is Insufficient that Defendants Intentionally Used Force.

There is no real dispute that these Defendants did not use force. The evidence plainly showed that these Defendants did not personally use force. As the Indictment itself alleges, the only real allegation of the use of force was when Jay Smith "forcefully" backed into the clinic, allegedly causing "Nurse K" to stumble and sprain her ankle. Indictment, Doc. 1, ¶ 19.

Moreover, the intent requirement under FACE is quite specific: not only must a defendant intend to injure, intimidate or interfere with another, but the defendant must act "*because* the interfered-with person was seeking, obtaining, or providing, . . . reproductive health services." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004) (emphasis in original) (upholding summary judgment against the plaintiff because he failed to allege this second intent element); *accord*, *New York by Underwood v. Griepp*, No. 17-CV-3706 (CBA), 2018 WL 3518527, at *32 (E.D.N.Y. July 20, 2018), aff'd in part, vacated in part, remanded sub nom. *New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021), reh'g granted and opinion vacated sub nom. *People v. Griepp*, 997 F.3d 1258 (2d Cir. 2021), and on reh'g sub nom. *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021), and aff'd and remanded sub nom. *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021).

In *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 474 (S.D.N.Y. 2006), although the court found some contact between the defendants and "escorts" at the clinic to have been intentional because the escorts were assisting in providing reproductive health services, it declined to find other, incidental, contact in violation of FACE because it lacked this second intent element. This contact that did not violate FACE occurred because the defendants and the escorts followed clinic clients in close proximity, resulting in occasional "unwanted physical contact." *Id*. The court stated: "while such contact may be inappropriate, *it is not illegal under FACE if it is not motivated by an intent to restrict freedom of movement or place another in reasonable apprehension of bodily harm*. The plaintiffs have not shown that each instance where a defendant bumps into a patient or escort is motivated by this intent." *Id*. (emphasis added).

The *Cain* court also refused to find a FACE violation against another defendant even though the evidence clearly showed he had assaulted escorts and a passerby. *Id*. Nonetheless, the defendant did not assault these individuals because they were providing reproductive health services, but rather because they had interfered with his property. *Id*. To like effect was the district court's finding in *Griepp*: although some contact undoubtedly occurred with respect to one defendant when an escort "tried to block her access to the patient," the court found that the defendant had not acted with the intent to injure, intimidate, or interfere. *Griepp*, *supra*, 2018 WL 3518527, at *33.

The same analysis applies here. Even assuming *arguendo* that the jury could have found that these Defendants were somehow implicated in the clinic employee's injury, there is no evidence that the alleged use of force was applied against the clinic employees *because* they were providing reproductive health services. Any incidental contact with clinic employees was not undertaken with the intent to injure, intimidate, or interfere with them, nor was it done because

9

they provided reproductive health services. Like the situations in *Cain* and *Griepp*, the contact occurred only because the clinic employees tried to block Defendants' entry into the facility. Defendants' commitment to nonviolence was reiterated time and again. By contrast, the clinic employees' actions were plainly aggressive and forceful; it was the clinic employees, not Defendants, who initiated contact. Indeed, the clinic manager assaulted Mr. Geraghty with a broomstick. Under these circumstances there is no evidence upon which a reasonable mind might fairly conclude beyond a reasonable doubt that these Defendants intentionally used force to injure, intimidate, or interfere with clinic employees or patients.

### 2. The Evidence is Insufficient that Defendants Can Be Found Guilty Regarding Use of Force by Aiding and Abetting.

Nor can the Defendants be found guilty on the basis of aiding and abetting. In *Rosemond v. United States*, 572 U.S. 65 (2014), the Supreme Court held that under 18 U.S.C. § 2, the aiding and abetting statute, "'those who provide knowing aid to persons committing federal crimes, *with the intent to facilitate the crime*, are themselves committing a crime.'" *Id*. at 71 (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A*., 511 U.S. 164, 181 (1994)). The Court went on to counsel: "As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Id*. (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003) (an accomplice is liable as a principal when he gives "assistance or encouragement ... with the intent thereby to promote or facilitate commission of the crime"); and *Hicks v. United States*, 150 U.S. 442, 449 (1893) (an accomplice is liable when his acts of assistance are done "with the intention of encouraging and abetting" the crime)).

Critically, the Court said: "An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, *the intent must go to the specific and entire crime charged.*"

10

*Id*. at 76 (emphasis added). Defendants suggest this standard should also apply to co-conspirator liability. Accordingly, even if the evidence was such that the jury could have found beyond a reasonable doubt that Jay Smith and these Defendants conspired to physically obstruct the clinic, and that Jay Smith intended to use force to intentionally injure an employee, no reasonable juror could find beyond a reasonable doubt that these Defendants specifically intended to assist Jay Smith's use of force. Therefore, Defendants motion should be granted as to the use of force.

      3.     **The Evidence is Insufficient as to Obstruction.**

There was insufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt as to these Defendants with respect to physical obstruction, as well. Mr. Geraghty is not even alleged to have obstructed anyone; the evidence regarding Mr. Goodman was insufficient because he was never shown to have been in front of the employees' entrance, but only to the side of it; and Ms. Handy did not physically obstruct (and the chair with the rope on it at the lobby entrance did not render passage impassable or unreasonably difficult). As for Mr. Hinshaw, while he may have obstructed a door, his intent was presumably to prevent illegal services, not legal services, and therefore he cannot be guilty of obstruction.

      4.     **Defendants' Intent to Prevent only Illegal Services Negates any Finding as to Attempted Obstruction.**

As for the claim that Defendants attempted to obstruct even if they did not actually do so, the evidence was insufficient to show that Defendants had the requisite intent, as shown above. Accordingly, Defendants' motion should be granted as to attempted obstruction.

## Conclusion.

For all the foregoing reasons, these Defendants' Rule 29 motion should be granted, and the Court should enter an order acquitting them on all counts.

        Respectfully submitted,

        <u>/s/ Martin A. Cannon</u>
        Martin A. Cannon, Esquire (Admitted *Pro Hac Vice*)
        Thomas More Society
        10506 Burt Circle, Suite 110
        Omaha, Nebraska 68114
        Email: mcannonlaw@gmail.com
        Phone: (402) 690-1484

        Stephen M. Crampton, Esquire (Admitted *Pro Hac Vice*)
        P.O. Box 4506
        Tupelo, MS  38803
        Email: scrampton@thomasmoresociety.org
        Phone: (662) 255-9439

        Dennis E. Boyle, Esquire
        Blerina Jasari, Esquire
        Boyle & Jasari
        1050 Connecticut Ave, Suite 500
        Washington, D.C., 20036
        Email: dboyle@boylejasari.com
                bjasari@boylejasari.com
        Phone: (202) 430-1900

        *Counsel for Defendant Lauren Handy*

        Alfred Guillaume , III
        LAW OFFICES OF ALFRED GUILLAUME III, LLC
        1350 Connecticut Avenue NW
        Suite 308
        Washington, DC 20036
        (202) 321-0549
        Email: ag3law@gmail.com

        *Counsel for John Hinshaw*

>Howard J Walsh , III
>3712 Cardiff Court
>Chevy Chase, MD 20815
>301-602-8721
>Fax: 301-576-7900
>Email: hwalshesq@gmail.com
>
>*Counsel for William Goodman*
>
>John C. Kiyonaga
>JOHN C. KIYONAGA LAW OFFICE
>600 Cameron Street
>Alexandria, VA 22314
>(703) 739-0009
>Fax: (703) 549-2988
>Email: jkiyonaga@earthlink.net
>
>*Counsel for Herb Geraghty*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2023, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send electronic notification to all counsel of record.

>/s/*Stephen M. Crampton*
>Stephen M. Crampton