```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
     UNITED STATES OF AMERICA,      ) Criminal Action
 3                                  ) No. 1:22-CR-096
                     Plaintiff,     )
 4                                  ) JURY TRIAL
     vs.                            )
 5                                  ) Washington, D.C.
     LAUREN HANDY, JOHN HINSHAW,    )
 6   HEATHER IDONI, WILLIAM         ) August 9, 2023
     GOODMAN, HERB GERAGHTY,        ) Time:  2:05 P.M.
 7                                  ) AFTERNOON SESSION
                     Defendants.    )
 8
              TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
 9            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                     UNITED STATES DISTRICT JUDGE
10
                       A P P E A R A N C E S
11
     For Plaintiff:       JOHN CRABB, JR.
12                        U.S. Attorney's Office
                          Judiciary Center Building
13                        555 4th Street NW
                          Room 11-844
14                        Washington, DC 20530

15                        SANJAY HARIVADAN PATEL
                          DOJ-CRT
16                        Civil Rights Division, Criminal Section
                          950 Pennsylvania Avenue NW
17                        Washington, DC 20004

18   For Defendant        MARTIN A. CANNON
     LAUREN HANDY:        Thomas More Society
19                        16983 370th Street
                          Carson, IA 51525
20
                          STEPHEN M. CRAMPTON
21                        Thomas More Society
                          P.O. Box 4506
22                        Tupelo, MS 38803

23                        DENNIS E. BOYLE
                          BLERINA JASARI
24                        Boyle & Jasari, LLP
                          1050 Connecticut Avenue
25                        Suite 500
                          Washington, DC 20036
```

```
 1                    A P P E A R A N C E S - (Cont.)

 2      For Defendant      ALFRED GUILLAUME, III
        JOHN HINSHAW:       Law Offices of Alfred Guillaume, III, LLC
 3                          1350 Connecticut Avenue NW
                            Suite 308
 4                          Washington, DC 20036

 5      For Defendant      ROBERT J. DUNN
        HEATHER IDONI:      Robert J. Dunn, PC
 6                          1413 Center Avenue
                            Bay City, MI 48708
 7
        For Defendant      HOWARD J. WALSH, III
 8      WILLIAM GOODMAN:    3712 Cardiff Court
                            Chevy Chase, MD 20815
 9
        For Defendant      JOHN C. KIYONAGA
10      HERB GERAGHTY:      600 Cameron Street
                            Alexandria, VA 22314
11

12

13

14

15

16

17

18

19
        Stenographic Court Reporter:
20
                            Tamara M. Sefranek, RMR, CRR, CRC
21                          Official Court Reporter
                            United States Courthouse, Room 6714
22                          333 Constitution Avenue, NW
                            Washington, DC  20001
23                          202-354-3246

24

25
```

```
 1                        P R O C E E D I N G S
 2              THE COURT:  Good afternoon.  What I'd like to do is
 3    to suggest that we take the last 50 and send them home as
 4    opposed to making them wait all afternoon.  At the rate we're
 5    going, we're not going to get to them.
 6              Does anybody have a problem with that?
 7              MR. CANNON:  No, Judge.
 8              THE COURT:  Dorothy, do you think that will work?
 9              THE COURTROOM DEPUTY:  Yes, Judge.
10              THE COURT:  Do you want me to go say something to
11    them?  Why don't I do it quickly just to make sure we emphasize
12    that they have to show up tomorrow.  I'll be right back.
13              (Recess taken.)
14              THE COURT:  All right.  We're excusing the 50 jurors;
15    having them come back tomorrow morning.
16              We'll bring back the juror that we had, who is
17    Juror 1862.  In terms of -- this is, again, Juror No. 1862.  I
18    had stopped my questions, and so we were allowing defense
19    counsel to ask any questions.
20              MR. CRABB:  Your Honor, government can ask questions?
21              THE COURT:  Yes, starting with you.
22              MR. CRABB:  Good afternoon, sir.
23              THE PROSPECTIVE JUROR:  Good afternoon.
24              MR. CRABB:  Do I understand correctly that you've
25    contributed to Planned Parenthood twice in approximately 2019
```

1    and then again in either 2020 or 2021?

2              THE PROSPECTIVE JUROR:  That is correct.

3              MR. CRABB:  Do you understand that if you're picked

4    to serve this jury, Judge Kotelly will explain the law to you;

5    do you understand that?

6              THE PROSPECTIVE JUROR:  Yes.

7              MR. CRABB:  It will be your job to assess the facts

8    and to determine whether any of the defendants have violated

9    those laws.  Do you understand that?

10             THE PROSPECTIVE JUROR:  Correct.

11             MR. CRABB:  In making that decision, of applying the

12   facts to the law, would your views about abortion affect your

13   decision about whether these particular laws have been violated

14   in this case?

15             THE PROSPECTIVE JUROR:  No, it would not.

16             MR. CRABB:  Would the fact that you've contributed

17   money to Planned Parenthood affect your ability to fairly

18   assess the facts and whether they establish a violation of the

19   law in this case?

20             THE PROSPECTIVE JUROR:  It would not.

21             MR. CRABB:  Thank you, Your Honor.

22             THE COURT:  Defense counsel?

23             MR. CANNON:  Good afternoon, sir.  Thank you for

24   being here.

25             THE PROSPECTIVE JUROR:  Good afternoon.

```
1              MR. CANNON:  I think, if I understand my notes
2    correctly, you live near this Surgi-Clinic?
3              THE PROSPECTIVE JUROR:  I live right next to the FBI
4    building.  I'm not quite familiar with the address.  I think
5    when I originally wrote it down, I wrote 11th Street and
6    F Street Northwest.
7              MR. CANNON:  Have you ever seen any gatherings of
8    people, maybe protestors, in front of that building?
9              THE PROSPECTIVE JUROR:  I have not.
10             MR. CANNON:  Okay.  Now, you've indicated that you
11   worked or maybe you still do work in the bioengineering --
12             THE PROSPECTIVE JUROR:  No longer, no, sir.
13             MR. CANNON:  When did you work in bioengineering?
14             THE PROSPECTIVE JUROR:  I moved out to Colorado in
15   2012, and I left in 2019.
16             MR. CANNON:  So for seven years or something?
17             THE PROSPECTIVE JUROR:  Seven to eight years.
18             MR. CANNON:  What type of bioengineering were you
19   engaged in?
20             THE PROSPECTIVE JUROR:  Drug delivery systems and
21   biostatistics.
22             MR. CANNON:  Okay.  What was the first one you said;
23   delivery systems?
24             THE PROSPECTIVE JUROR:  Drug delivery systems.
25             MR. CANNON:  I think you mentioned earlier that you
```

1   were working with proteins --

2            THE PROSPECTIVE JUROR:  Yes, sir.

3            MR. CANNON:  -- trying to assess risk of cancer and

4   heart attack and stuff?

5            THE COURT:  Can you slow down a little bit for him as

6   well as the court reporter.

7            MR. CANNON:  Sure.

8            In working with proteins, I assume you had to have

9   access to proteins?

10            THE PROSPECTIVE JUROR:  I actually did not.  I was a

11   bioinformatician at that time.

12            MR. CANNON:  A bio what?

13            THE PROSPECTIVE JUROR:  Bioinformatician.  Someone

14   who does statistics in biology, biological questions.

15            And so other companies would use our assay to record

16   the data of these protein levels, and then we would use

17   statistics to try to interpret them.  So I never had access to

18   the wet lab, so to speak.

19            MR. CANNON:  Did your work involve proteins from a

20   wet lab?

21            THE PROSPECTIVE JUROR:  Yes.

22            MR. CANNON:  Do you know where those proteins came

23   from?

24            THE PROSPECTIVE JUROR:  They would have been taken

25   from the patients.  I wasn't there for the harvesting of any of

1    the tissue samples.

2              MR. CANNON:  Do you know whether those proteins ever

3    involved fetal stem cells or other fetal cells?

4              THE PROSPECTIVE JUROR:  I do not think so, no.

5              MR. CANNON:  But you're not sure?

6              THE PROSPECTIVE JUROR:  I'm not sure.  The research I

7    was strictly linked with was urine levels, blood serum

8    proteins, and tear fluids.

9              MR. CANNON:  What was the last one?

10             THE PROSPECTIVE JUROR:  Tear fluids.

11             MR. CANNON:  Okay.  Now, you've indicated that you

12   also -- well, as part of the protein aspect, did you ever

13   become aware of the issue over the use of fetal cells in tissue

14   research?

15             THE PROSPECTIVE JUROR:  No, I was not.

16             MR. CANNON:  Okay.  You mentioned that you now work

17   for the Department of Defense as a data scientist?

18             THE PROSPECTIVE JUROR:  Correct.

19             MR. CANNON:  What's the subject matter of that data

20   that you work with?

21             THE PROSPECTIVE JUROR:  I'm not at liberty to

22   discuss.

23             THE COURT:  He works at Fort Meade, so it's not

24   something that is generally out there, but it's not going to be

25   what you're talking about.

```
1                    MR. CANNON:  All right.  Now, you've indicated that

2         you have contributed to Planned Parenthood on -- for, was it

3         two years?

4                    THE PROSPECTIVE JUROR:  Two occasions.

5                    MR. CANNON:  Two occasions.  I assume that means that

6         you probably -- if you didn't to begin with, you probably do or

7         have gotten their newsletters?

8                    THE PROSPECTIVE JUROR:  Yes.

9                    MR. CANNON:  You read those?

10                   THE PROSPECTIVE JUROR:  Not front to back.

11                   MR. CANNON:  Say it again.

12                   THE PROSPECTIVE JUROR:  I do not read them front to

13        back.

14                   MR. CANNON:  Do you still get them today?

15                   THE PROSPECTIVE JUROR:  I have gotten them last year,

16        so I suppose I will get them this year.

17                   MR. CANNON:  Basically, you're on their mailing list,

18        right?

19                   THE PROSPECTIVE JUROR:  Yes.  I didn't offer to be on

20        the mailing list, but I am on their mailing list, it would

21        seem.

22                   MR. CANNON:  I think you said -- correct me if I'm

23        wrong -- that you donated to Planned Parenthood because you

24        support access to abortion?

25                   THE PROSPECTIVE JUROR:  Correct.
```

```
1              MR. CANNON:  All right.  I think you also said that
2     you accept that people have differing opinions about abortion,
3     but that you feel access to health care is very important; is
4     that right?
5              THE PROSPECTIVE JUROR:  Correct.
6              MR. CANNON:  Okay.  Now, you might understand
7     already, this case is very much about not abortion so much as
8     access to abortion.  It comes right out of the print, written
9     statute that we're dealing with.  It's about access.
10             And our people are accused of blocking access.
11    Doesn't that strike a little close to home for you?
12             THE PROSPECTIVE JUROR:  I'm not aware that they have
13    or have not.  I just know that's the indictment.
14             MR. CANNON:  Say it again.
15             THE PROSPECTIVE JUROR:  My understanding of the
16    indictment is that they conspired to block access.  I'm not
17    aware if they're actually guilty of that.
18             MR. CANNON:  Well, sure.  I guess what I'm asking
19    you -- I appreciate your willingness to make that distinction.
20             But do you think that when it really comes down to
21    it, that you can put your clear opinions aside and rule very
22    possibly against your -- your own kind of sentiments when
23    access to health care is the issue?
24             THE PROSPECTIVE JUROR:  Yes, I think I can do that.
25             MR. CANNON:  Now, you did say, I believe, when the
```

1    judge was asking you questions, that you said hopefully you can

2    be impartial, if I heard you correctly.  Why would you say

3    hopefully?

4    A.  I'm only human.  We can -- there's different types of

5    biases.  I think there's like 22 different type of textbook

6    versions of bias.  But I think, you know, courts, sciences,

7    this is a human endeavor.  I think that I can try and keep my

8    biases in check with the other 11 jurors.

9              MR. CANNON:  Now, you indicated that, I think for

10   some year, maybe it was 2020, some year that you didn't donate

11   to Planned Parenthood.  It might be because you forgot.

12             THE PROSPECTIVE JUROR:  Yes.  It's not like a rolling

13   subscription donation.

14             MR. CANNON:  So it's not that you wouldn't donate;

15   you just forgot.  Is that fair?

16             THE PROSPECTIVE JUROR: Yes.

17             MR. CANNON:  If you remember --

18             THE COURT:  I didn't hear an answer to that.

19             THE PROSPECTIVE JUROR:  Yes, that is correct.

20             MR. CANNON:  If you remembered, would you donate to

21   Planned Parenthood today?

22             THE PROSPECTIVE JUROR:  Probably, yes.

23             MR. CANNON:  Do you donate for any -- to any pro-life

24   organizations?

25             THE PROSPECTIVE JUROR:  I do not.

```
 1                MR. CANNON:  So if you were asked to today, would you
 2   do it?
 3                THE PROSPECTIVE JUROR:  I would not.
 4                MR. CANNON:  I have nothing further.  Thank you, sir.
 5                THE COURT:  All right.  Any other questions?
 6                MR. DUNN:  Yes.
 7                THE COURT:  Proceed.
 8                MR. DUNN:  Good afternoon, sir.  I'm Robert Dunn.
 9   These questions relate to the questions that Mr. Crabb asked
10   you about you have the law and you have the facts.  Remember
11   those questions?
12                THE PROSPECTIVE JUROR:  Yes, sir.
13                MR. DUNN:  You understand that it's your job to
14   determine the facts, not the lawyers; you understand that?
15                THE PROSPECTIVE JUROR:  Yes, sir.
16                MR. DUNN:  In fact, you don't have to believe
17   anything that the lawyers on either side try to tell you to
18   believe.  You are the independent arbiter of the facts -- do
19   you understand that? --
20                THE PROSPECTIVE JUROR:  Yes, sir.
21                MR. DUNN:  -- as a juror.  Thank you.
22                THE COURT:  Any other questions?
23                MR. CANNON:  I don't believe so.
24                THE COURT:  All right.  You can step down.  We'll
25   give you further instructions.
```

```
 1                    THE PROSPECTIVE JUROR:  Thank you.

 2                    (Prospective juror exited the courtroom.)

 3                    THE COURT:  Counsel?

 4                    MR. CANNON:  I'm not sure if this is the proper time.

 5                    THE COURT:  Yes.  We indicated if you're finished

 6         with your questions, if there were going to be any requests for

 7         dismissals for cause, this is the time to do it, one by one.

 8                    MR. CANNON:  Judge, for Lauren Handy, and maybe on

 9         behalf of all the defendants, I'd move to strike this last

10         prospective juror for cause.

11                    THE COURT:  Okay.  Hold on.  What's the government's

12         position?

13                    MR. CRABB:  We oppose that, Your Honor.

14                    THE COURT:  All right.  Let me hear what you have to

15         say, Counsel.

16                    MR. CANNON:  In support of it, I would point to a

17         couple of things.  He has received and still does receive the

18         Planned Parenthood newsletters.  If you've ever read them,

19         they're pretty -- they're pretty -- I don't want to say

20         extreme, but highly opinionated.  Let's put it that way.

21                    He said on two occasions, when you were questioning

22         him and then again he acknowledged it to me, that he feels

23         access to health care is very important.  He brought it up

24         twice.  It seems to drive him.  And he said, despite that,

25         hopefully he could be impartial.
```

1          When I questioned him about that, he says, I'm only

2    human.

3          THE COURT:  Well, he's probably being honest in terms

4    of that nobody guarantees anything, but he certainly

5    understands that he needs to be such.

6          MR. CANNON:  Right.

7          THE COURT:  And I believe what he said is, I would

8    hope that I would stick to the evidence presented in the case.

9    He also said at one point -- let's see.

10         Would that color your view of your consideration of

11   the evidence going into the fact that he'd contributed money to

12   the organization, et cetera, et cetera.  And then he indicated,

13   no, it would not.  He said that a couple of times, that it

14   would not influence him.

15         MR. CANNON:  I understand he said that.  My feeling

16   is that I'm not sure he's that well in control of his

17   expectations there.  My feeling is I'm just uncomfortable with

18   him anyway.

19         He indicated that he didn't fail to contribute to

20   Planned Parenthood because he didn't want to, just because he

21   forgot.  He would do it today.  He never has and will not

22   donate to a pro-life organization.

23         So, obviously, we have a guy who is pretty strongly

24   opinionated on the one side, and I think his acknowledgments

25   about hoping to be impartial and being only human suggests kind

1    of a lack of conviction on the question.

2              THE COURT:  So from your perspective, if somebody got

3    up here and said, I guarantee that I'm absolutely going to be

4    able to do it, you would think that -- that the person would be

5    better than what he gave as an honest answer, is that his

6    expectation that he would be, but he recognizes that there are

7    biases and he's aware of that?

8              MR. CANNON:  I actually would be more comfortable

9    with somebody who is very firm on himself being unbiased and

10   not --

11             THE COURT:  Okay.

12             MR. CANNON:  -- willing to be weak on it.

13             THE COURT:  All right.  I wouldn't interpret it that

14   way.

15             Let me hear from the government.  What's your

16   position?  Why are you opposing it?

17             MR. CRABB:  Thank you, Your Honor.  If I may, I'll

18   start with the point the Court raised about whether or not this

19   potential juror --

20             THE COURT:  If you could pull the microphone up.

21             MR. CRABB:  Sure.  I apologize.  Whether or not this

22   potential juror has some disqualified bias.  I think the

23   Court's exactly right; what this juror said is more precise

24   than most jurors or most humans.  He acknowledged that no one

25   can guarantee it.

1    In fact -- by that, guarantee it, I mean bias.  In

2    fact, I believe he said that there are 22 textbook biases

3    documented.  He's clearly very analytical and very well-versed

4    in this topic and gave a scientific -- which makes sense; he's

5    a scientist -- analytical answer explaining that he did not

6    believe biases would affect him.

7    But as the Court's pointed out, he gave a nuanced

8    honest answer.  No one can guarantee that they're not affected

9    by a bias.  So the fact -- what he said is much stronger than

10   just a blanket statement that I won't be biased.  He clearly

11   has thought about this, is analytical about it, was actually

12   able to note that he believes there are 22 textbook documented

13   types of bias.

14   So the record that he doesn't have any bias or does

15   not believe it would affect his ability to fairly judge this

16   case is quite strong.

17   With respect to his views about access to abortion,

18   he said he believes that everyone has a right to have access to

19   abortion.  Well, that's actually the law in the United States.

20   So what he says is he agrees with the law.  That can't be a

21   disqualifier.

22   That would be like someone who thinks that drugs

23   should be illegal can't sit on a case involving drugs.  He

24   simply said he believes in what the law is in the United

25   States, particularly in the District of Columbia.  That people

1    have a lawful right to have access to abortion.  So that also

2    cannot be a disqualifier.

3          So we'd ask that the Court deny the motion to excuse

4    this juror for cause.

5          THE COURT:  All right.  I'm going to deny it.  I

6    think, in terms of your being uncomfortable, you can do a

7    peremptory challenge.  I think it is correct, his concern about

8    access is actually the law in the District of Columbia and was

9    at the time of the charged offenses.

10         I think his answers -- he indicated that he would

11   not -- when I asked the question about the clinic involved

12   reproductive care, but that does include abortion, since you

13   obviously feel strongly enough about your views, you're willing

14   to contribute money to an organization, would that affect your

15   consideration of the evidence because you, obviously, already

16   have a view; would that view color your consideration of the

17   evidence.  And he said, no, it would not.  He also said that

18   one -- at one other point in terms of doing it as well.

19         He also did say after indicating and further

20   questioning to you -- from you as to, sort of, a scientific

21   view of -- that being aware that you can have biases and that

22   you need to be aware of them and not act on them, which is I

23   think why he said, I would hope that I would stick to the

24   evidence presented in the case.

25         It's not enough to excuse him, so I'll deny it.

1    Let's get the next one in.

2              (Prospective juror entered the courtroom.)

3              THE COURT:  Take your time.  If you could step up to

4    the witness box.  If you could remain standing, we're going to

5    swear you in.

6              (Prospective juror sworn.)

7              THE COURT:  If you'd be seated, you can move the

8    chair up and down.  So make yourself comfortable.

9              THE PROSPECTIVE JUROR:  Thank you.

10             THE COURT:  You do need to speak into the microphone.

11   I think you should pull it down a little bit so you're more

12   directly -- Ms. Patterson will help you with the microphone

13   here.

14             All right.  This is Juror No. 0425.  And it's

15   questions -- and I wasn't sure whether this is a 33 or a 35?

16             THE PROSPECTIVE JUROR:  33.

17             THE COURT:  33.  So those are the two questions.  33

18   is -- I'll start with that.

19             Would you follow the instructions of law that the

20   Court would give you regardless of whether or not you agree

21   with those instructions?  In other words, you're required to

22   follow my instructions.  And you appear to indicate you would

23   ignore them or not follow them if you thought they were wrong.

24             So is that your position?

25             THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Okay.  Do you want to explain why?

2          THE PROSPECTIVE JUROR:  Because I don't know nothing

3     about the case.

4          THE COURT:  Speak into the microphone.

5          THE PROSPECTIVE JUROR:  Sorry.  Because I don't know

6     nothing about the case.

7          THE COURT:  Okay.  Well, the point of it is, you

8     would not know things about the case, and what you would get is

9     the evidence in the courtroom.

10          No. 18 is whether you or members of your family or

11     close friends have been a victim, a witness, or accused of a

12     similar crime.  Is that you or somebody else?

13          THE PROSPECTIVE JUROR:  No, Your Honor.

14          THE COURT:  Who is it?  You don't have to name the

15     person.  I'm just saying, is it you or is it a relative or a

16     friend?

17          THE PROSPECTIVE JUROR:  Nobody.

18          THE COURT:  Why did you put it down?

19          THE PROSPECTIVE JUROR:  Maybe it was a mistake.

20          THE COURT:  Okay.  Anybody have any questions?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  I'm asking the other -- if counsel

23     doesn't have any questions at this point --

24          MR. DUNN:  No.

25          THE COURT:  Government, would you agree we don't need

1    to go any further?

2              MR. PATEL:  Good afternoon.  Ma'am, do you have --

3    are you currently employed?

4              THE PROSPECTIVE JUROR:  I'm sorry?

5              MR. PATEL:  Are you currently employed?

6              THE PROSPECTIVE JUROR:  Yes, I am.

7              MR. PATEL:  What do you do for a living?

8              THE PROSPECTIVE JUROR:  Caregivers.

9              MR. PATEL:  I'm sorry?

10             THE PROSPECTIVE JUROR:  Take care of older people.

11   Caregivers.

12             MR. PATEL:  Okay.  That's very noble work.

13             Okay.  That's the only question we have, Judge.

14   Thank you.

15             THE COURT:  Okay.  You can step down.  We'll give you

16   further instructions.

17             (Prospective juror exited the courtroom.)

18             THE COURT:  Obviously, she doesn't want to be a juror

19   in the case since her answer didn't make any sense.  There's no

20   point in having a juror that doesn't want to be on it as

21   strongly as she doesn't.

22             Would you agree that she should be excused for cause,

23   or do you want to leave her?

24             MR. PATEL:  Government agrees, Your Honor.

25             THE COURT:  To have her excused?

```
1                    MR. PATEL:  Yes.

2                    THE COURT:  Counsel?

3                    MR. CANNON:  I don't think we feel she needs to be

4    excused.  I might not have heard --

5                    THE COURT:  You think you want to keep her?

6                    MR. CANNON:  I don't -- I don't have an opinion on

7    that.  I have no reason to exclude her.

8                    THE COURT:  Okay.  So the fact that she's not going

9    to follow my instructions is not a reason to excuse her; is

10   that what you're telling me?

11                   MR. CANNON:  No, of course not.

12                   THE COURT:  That's what she said.  That's what her

13   answer was.

14                   MR. CANNON:  I didn't feel like she understood the

15   question.

16                   THE COURT:  Well, I don't know whether she understood

17   or not.  I asked her why, and she just said she didn't know

18   anything about the case.  I explained it and went to the

19   other -- the other one she doesn't seem to have either.

20                   At any rate, based on her answer, do you want her to

21   stay or not?

22                   MR. CANNON:  I don't -- I don't want her to stay.  I

23   just don't want her --

24                   THE COURT:  The question is whether you're asking to

25   excuse her or not.
```

1          MR. GUILLAUME:  Your Honor, if I may.  I think this

2     witness clearly had some issues with the Court.  However, as

3     Your Honor is well aware through many trials that you've had

4     over the course of your career, some jurors that indicate

5     initially through jury selection that they don't -- would not

6     be the most willing participant end up being robust

7     participants in trials.

8          So I don't think that based on her answers we can --

9     we have a basis for just outright disqualification.

10         THE COURT:  None of you did any follow-up to find out

11    whether there was any other reason.  I will excuse her for

12    cause.

13         Somebody who has indicated to start with -- and I'm

14    quite astonished at counsel.  But at any rate, you're entitled

15    to take your positions to protect your clients in terms of your

16    views.  But somebody who would not follow the instructions,

17    which might not be to the benefit of your own clients, frankly,

18    is not someone I'm leaving on the jury.

19         I don't know whether she would not follow them or

20    not, but it was quite clear that either she didn't want to be

21    on it or didn't understand it.  But she would not provide any

22    additional information.

23         Do you have something -- hold on.  She evidently

24    imparted to the deputy courtroom clerk that she didn't

25    understand the question.  I'm willing to bring her back and

1    have a fuller discussion if you want.  All right.  Let's bring

2    her back.

3              (Prospective juror re-entered the courtroom.)

4              THE COURT:  All right.  Go ahead and sit down.

5              THE PROSPECTIVE JUROR:  My mistake, Your Honor.  I am

6    sorry.

7              THE COURT:  I want to make sure that before we make

8    decisions that we go through this again.

9              This is Juror 0425.  And so let me -- I went over the

10   question quickly.  So let me make sure you understand.

11             You, obviously, have not been a juror in another

12   case; is that correct?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  So this is a new experience for

15   you.  You have to say something orally.  Just yes or no.  We

16   need a record.

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  So understanding that I realize that this

19   may be somewhat that you're uncomfortable and a little

20   concerned about participating.  So what's going to happen --

21   would happen in the trial is that evidence would be presented

22   in terms of factual information, and you would be making

23   decisions about whether you accepted the evidence, whether you

24   believed witnesses that testified, and I would give you law.

25   In other words, I would tell you what the law is.

1          So you would be able to consider the facts, decide

2     what you think is true or not true or partially true.  And then

3     you would consider the law that I would give you as to how you

4     would take those facts and decide whether or not the

5     government, for instance, had proven their case beyond a

6     reasonable doubt.

7          So I give instructions on the law.  I don't make the

8     factual decisions.  The jury does.  But I'm stating what the

9     law is, and you're required to accept the law and not

10    second-guess it or question it.

11         So that was the reason that I asked the question that

12    I had.  And so let me make sure that you do understand what I'm

13    asking you.  Let me ask first, do you understand so far what

14    I'm talking about?

15              THE PROSPECTIVE JUROR:  Yes.

16              THE COURT:  Okay.  So in terms of -- you had written

17    down 33.  33 says:  Will you follow the instructions of the

18    law?  In other words, I'm giving you instructions, and you take

19    those instructions, you put them together with the facts, and

20    then you make decisions as to whether the government has proven

21    the case beyond a reasonable doubt.

22         So I give you the law.  And you're expected --

23    whether you think I'm right or wrong about it, you would be

24    expected to accept it and to use that statement of the law.  So

25    do you understand the question?

```
 1                THE PROSPECTIVE JUROR:  I do.

 2                THE COURT:  Okay.  So let me ask it again.  Would you

 3    follow the law as I stated it to you and apply it to the -- to

 4    the facts that you have listened to and that you're deciding

 5    whether or not you would accept?  Would you follow my

 6    instructions?

 7                THE PROSPECTIVE JUROR:  Yes, I will.

 8                THE COURT:  Okay.  In the earlier answer, did you not

 9    understand my question or are you -- you changed your mind?

10                THE PROSPECTIVE JUROR:  I'm very nervous.  I never do

11    that before.

12                THE COURT:  Okay.  Well, that's why I said, I know

13    this is a new experience for you.  So I don't want you to be --

14    to be nervous.  A lot of people, this is something that they

15    have not done before.

16                But you'll be given instructions and told what you

17    need to do and -- in terms of what the process is, so you'll

18    know what the process is.

19                The one thing I do want to make sure is that when

20    you're in the jury room and you're deliberating -- in other

21    words, you're making a decision, the 12 of you as to whether

22    the government has proved the case against each of the

23    defendants -- whether you'll be willing to express your views?

24    I don't want you to be shy or nervous and not indicate what

25    your views of the evidence are.  And also to listen to other
```

1   people so that you can come to your own decision about it.

2              Would you be able to do that?

3              THE PROSPECTIVE JUROR:  Yes, I will.

4              THE COURT:  Okay.  And the other question was, I

5   think, 18.  And this was related to you or members of your

6   family or close friends, if they've been a victim or a witness

7   or somebody accused of a crime -- and I said it was a similar

8   crime.  I left that up to you as to how you wanted to define

9   this -- as the crime charged in this case.

10              Do you understand the question?

11              THE PROSPECTIVE JUROR:  I do.

12              THE COURT:  Okay.  And so what would your answer be?

13              THE PROSPECTIVE JUROR:  My answer is no, I will not

14   discuss it with anybody.

15              THE COURT:  Okay.  It's not a matter of discussing

16   it.  It's a matter of whether you've had -- you or somebody

17   close to you has had an experience that's similar to what you

18   understand this case is about.

19              Do you have somebody who has been involved in

20   something that's similar to the charges as I described them?

21              THE PROSPECTIVE JUROR:  No.

22              THE COURT:  Okay.  Is there a particular reason why

23   you wrote this one down?

24              THE PROSPECTIVE JUROR:  Because I cannot be attend to

25   the case because I have to go to work every day because I'm a

1    single mother, and also I do the caregiver, and I can't leave

2    my patient to come into the courthouse.

3              THE COURT:  Okay.  So did you just put these down

4    because you were concerned you'd be selected, and you'd rather

5    not be selected?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Okay.

8              THE PROSPECTIVE JUROR:  I don't want to get in

9    trouble with the law.

10             THE COURT:  Okay.  So I take it you're a caregiver

11   for somebody?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  And is there somebody else who would --

14   do you do it on your own, or do you do it as part of an agency?

15             THE PROSPECTIVE JUROR:  I do it with agency.

16             THE COURT:  So would the agency be able to send

17   somebody for the patient?

18             THE PROSPECTIVE JUROR:  They are my -- taking me out

19   of the case.

20             THE COURT:  So they probably could.  But that would

21   probably mean you wouldn't get paid; is that the point?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And is that of concern to you?

24             THE PROSPECTIVE JUROR:  No.  It's just the work.

25             THE COURT:  Okay.  You wouldn't be concerned that you

```
 1    wouldn't get paid?

 2                THE PROSPECTIVE JUROR:  Yes.

 3                THE COURT:  I guess I'm not understanding.  Would you

 4    be worried if you were selected that you weren't going to be

 5    giving care to your patient, and you wouldn't be getting a

 6    paycheck from the agency?

 7                THE PROSPECTIVE JUROR:  Yes.

 8                THE COURT:  All right.  Would that concern on your

 9    part, your worry about it -- and you're nervous about

10    participating, but would your worry about what happens to your

11    patient without your being there and also the fact that you

12    would not get a paycheck, would that be something that would

13    worry you throughout your participation as a juror?

14                THE PROSPECTIVE JUROR:  Yes.

15                THE COURT:  All right.  Any questions from the

16    government?

17                MR. PATEL:  Ma'am, you understand that the judge told

18    everybody --

19                THE COURT:  Can you tilt that a little bit.

20                MR. PATEL:  Sorry.  Yes.

21                Ma'am, you understand that this case, the trial, it

22    may last between three and three and a half weeks; do you

23    understand that?

24                THE PROSPECTIVE JUROR:  Yes.

25                MR. PATEL:  If you were picked to serve on the jury,
```

1   would that mean you wouldn't be able to work for those three

2   and a half weeks?

3               THE PROSPECTIVE JUROR:  Yes.

4               MR. PATEL:  And you would not get paid as a result?

5               THE PROSPECTIVE JUROR:  No.

6               MR. PATEL:  So if you were selected to serve as a

7   juror, would your inability to work and get paid cause you to

8   not be able to pay attention to the evidence in this case?

9               THE PROSPECTIVE JUROR:  No.  No, no.  I will pay

10  attention to this case.

11              MR. PATEL:  Okay.  But would participating in this

12  trial cause any hardships for you?

13              THE PROSPECTIVE JUROR:  No.

14              MR. PATEL:  If you weren't getting paid, would you

15  have any difficulty as a result of you having been selected to

16  serve on the jury?

17              THE PROSPECTIVE JUROR:  Probably, I will.

18              MR. PATEL:  Okay.  And what would some of those

19  difficulties be?

20              THE PROSPECTIVE JUROR:  Pay my bills, take care of my

21  kids.

22              MR. PATEL:  Are those things that you would worry

23  about if you were selected to serve on the jury?

24              THE PROSPECTIVE JUROR:  Yes.

25              MR. PATEL:  And if you were worried about those

1    things, it would be kind of hard to pay attention to what

2    everybody is saying during the trial and read all of the

3    documents and then sit and deliberate with the other jurors?

4                THE PROSPECTIVE JUROR:  No.

5                MR. PATEL:  It wouldn't be hard?

6                THE PROSPECTIVE JUROR:  No.

7                MR. PATEL:  Okay.  Your Honor, I've got no more

8    questions.

9                THE COURT:  Counsel?

10               MR. CANNON:  No questions, Judge.

11               THE COURT:  All right.  You can -- so from your

12   perspective, even though you have concerns about the paycheck

13   and the patient, but you think if you were selected that you

14   would actually be able to pay attention; you would not be

15   worried about it?

16               THE PROSPECTIVE JUROR:  Yes, I will.

17               THE COURT:  Okay.  And did you understand my other

18   questions that I asked?

19               THE PROSPECTIVE JUROR:  Yes.

20               THE COURT:  Okay.  So did you put down the two

21   questions not because you didn't understand them, but

22   because -- why did you put them down if you didn't really have

23   answers to it?

24               THE PROSPECTIVE JUROR:  Because I wasn't understand.

25               THE COURT:  I'm sorry.  Because you weren't?

```
 1              THE PROSPECTIVE JUROR:  I wasn't understand your
 2     questions.
 3              THE COURT:  Okay.  So did you understand -- if you
 4     didn't understand those two questions, are you sure you
 5     understood the others?
 6              THE PROSPECTIVE JUROR:  I'm less --
 7              THE COURT REPORTER:  I'm sorry?
 8              THE PROSPECTIVE JUROR:  I was less nervous than what
 9     I was before.
10              THE COURT:  So you're less nervous now than you were
11     when you were filling out the -- when you were putting down the
12     questions?
13              THE PROSPECTIVE JUROR:  Yes, Your Honor.
14              THE COURT:  Okay.  And so you're less nervous now.
15     So what does that mean?
16              THE PROSPECTIVE JUROR:  That I already face you and
17     everybody else, so I pay attention more than when I get inside
18     the courtroom; the first one.
19              THE COURT:  Okay.  Now, when you were in the other
20     courtroom and I was reading the questions, were you paying
21     attention to the questions or not?
22              THE PROSPECTIVE JUROR:  I was -- I was pay attention,
23     but I don't really understand the -- the two questions I wrote
24     down.
25              THE COURT:  Okay.  So you put them down in order to
```

```
 1      get a better explanation; is that correct?
 2                THE PROSPECTIVE JUROR:  Yes.
 3                THE COURT:  Okay.  If anybody wants to do follow-up
 4      from my questions, I'll allow it.
 5                MR. PATEL:  No, Your Honor.
 6                MR. CANNON:  No, Your Honor.
 7                THE COURT:  Then let me -- we're going to excuse you
 8      at this time, and we'll give you further directions, okay?
 9      We're going to give you further directions.
10                THE PROSPECTIVE JUROR:  Okay.  Thank you.
11                THE COURT:  You're welcome.
12                (Prospective juror exited the courtroom.)
13                THE COURT:  What's everybody's position?
14                MR. PATEL:  Your Honor, we'd move for cause to strike
15      this juror.  She clearly --
16                THE COURT:  Let me just hear whether there's an
17      objection to that or not.
18                MR. CANNON:  We'd object, Judge.
19                THE COURT:  Okay.
20                MR. PATEL:  Your Honor, this juror clearly
21      demonstrated a few things.  One, she cannot follow your
22      instructions.  Because she took an oath, she affirmed that she
23      would tell the truth, and then she answered questions.  After
24      she indicated she understood your questions, she also said she
25      wouldn't -- initially, she wouldn't be able to follow your
```

1    instructions and apply the law.  Then she said she could.  So

2    it demonstrates two things.

3              One, she either understands and made a false

4    statement under oath or, alternatively, she does not understand

5    what's happening today.

6              As a follow-up to some of my questions, I asked her if

7    this would create an undue hardship.  She said she wouldn't get

8    paid, she couldn't pay her bills, and she couldn't take care of

9    her children.  But then when I asked her, you know, would you

10   be able to pay attention to the evidence in the case, she said

11   yes.  Those are clearly two inconsistent statements.

12             I think, based upon all of the responses she gave,

13   she either does not understand or could not apply your

14   instructions or, alternatively, she understands what's going on

15   but she provided and made false statements.

16             THE COURT:  Counsel, let's hear what your objection

17   is.

18             MR. CANNON:  The two things that stand out to me on

19   that, Your Honor, is that she clearly did get more comfortable

20   once she had spent even just a few minutes in this room.  I

21   think by the time we get into the case and she gets to know a

22   juror or two and kind of gets comfortable with where she's at,

23   I think it will be a very different person.

24             She acknowledged it would be a hardship, but three

25   and a half weeks without a paycheck, that's a concern for

1    anyone.  The fact that she says she can deal with it is not in

2    any way inconsistent with the fact that it's a hardship.  You

3    expressed yourself to these jurors that it's a hardship.  This

4    is why we all appreciate them coming in and doing this.

5         So I feel like she went very quickly from sort of a

6    panicky, kind of, irrational approach to this thing to figuring

7    out what's going on and becoming a little more clear.

8         I do think that there might have been a little bit of

9    a language issue that was probably more of a concern during

10   this process than it will be during trial.  I'm not sure about

11   that, but she's got quite an accent.  English might not be her

12   first language.

13        Anyway, what I see is a nice lady who said kind of

14   dopey things to begin with, but once she figured out what it

15   really is all about, I think she got truthful, and I think

16   she's willing to serve and be objective.

17        THE COURT:  All right.  Anything else that anybody

18   wants to say back?  If not, I'll go ahead and make a ruling.

19        MR. PATEL:  No, Your Honor.

20        THE COURT:  My concern is, initially, it would appear

21   that her answers were she wasn't going to follow through, and

22   the other questions she had no information.  She indicated she

23   had just picked these two because she didn't understand and

24   wanted to get out of, frankly, being a juror.

25        When we brought her back to have a further discussion

1       about making sure that she understood, she indicated that she

2       was -- that she was nervous.  She indicated that she had

3       listened to the other questions.  She indicated that she was --

4       that there was a hardship but that -- she indicated that she

5       would pay attention.

6              Her answers are somewhat inconsistent.  The concern I

7       have, frankly, is that I'm not sure she understood what I was

8       talking about in terms of -- although I think she became more

9       comfortable in terms of at least giving us more fulsome answers

10      than she had originally.  It wasn't clear to me that -- some of

11      the answers, frankly, seemed contradictory and didn't make a

12      lot of sense when you put them all together.

13             So I think it's a close call, but I am going to

14      excuse her.

15             (Prospective juror entered the courtroom.)

16             THE COURT:  If you would step up here, please.  You

17      can go through the gates and just come on over here.  Step up

18      to the witness box.  If you could remain standing, the deputy

19      clerk is going to swear you in.

20             (Prospective juror was sworn.)

21             THE COURT:  All right.  Sir, you can take the mask

22      off so we can actually hear what you have to say.

23             THE PROSPECTIVE JUROR:  Okay.

24             THE COURT:  You can speak into the microphone.  This

25      is Juror 818, and this is Question 19.  You didn't list another

1    question, but I'm assuming -- I'll make it 34, the catchall

2    question.

3              THE PROSPECTIVE JUROR:  Uh-huh.

4              THE COURT:  So let's start with Question 19.

5    Question 19 is:  Have you or members of your family or close

6    friends been a victim or a witness or arrested or convicted of

7    any crime which has so affected you that it would interfere

8    with your ability to be fair and impartial in this case?

9              In other words, have you had another experience

10   either because you were a victim, a witness, arrested,

11   convicted, either you or somebody close to you, and that crime,

12   that experience has affected you so that you don't think you

13   could be fair and impartial in this case?  Is that -- that's

14   the question that you answered.  Is that correct?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Okay.  And is it you or somebody close to

17   you?

18             THE PROSPECTIVE JUROR:  It was actually me.

19             THE COURT:  Okay.  You need to turn and speak in the

20   microphone.  They need to be able to hear you, and we need a

21   record.

22             THE PROSPECTIVE JUROR:  Okay.

23             THE COURT:  So if you could explain your answer to

24   that.  In other words, it's you.  And which category do you fit

25   into?  Witness, victim, arrested, convicted?

1          THE PROSPECTIVE JUROR:  That particular incident, I

2     was the victim.

3          THE COURT:  Okay.  And what is the incident?

4          THE PROSPECTIVE JUROR:  A carjacking.

5          THE COURT:  Okay.  So you were the victim of a

6     carjacking?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  How long ago?

9          THE PROSPECTIVE JUROR:  It was, like, October 2014.

10    It might have been the 11th.  It was on a Saturday.

11         THE COURT:  Okay.  And what year was it?

12         THE PROSPECTIVE JUROR:  2014.

13         THE COURT:  Oh, 2014.  Okay.

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  And what is it about that carjacking --

16    which is a different crime than this, but it doesn't have to be

17    the same -- that you think would affect your fairness and

18    impartiality in this particular case?

19         THE PROSPECTIVE JUROR:  Well, I couldn't weigh the

20    values between both.  But based on the sentencing that the guy

21    got for carjacking me, I don't feel as though he got enough

22    time.  So it's like the -- I feel like the criminal justice

23    system somewhat failed me.

24         THE COURT:  Okay.  So from your perspective -- they,

25    obviously, caught the individual?

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Can you all hear him?  Okay.  The

3    individual was caught, charged, and evidently convicted; is

4    that correct?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  And he was sentenced?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  And it's your view that the sentence --

9    you didn't agree with the sentence; you thought it was too

10   lenient?

11          THE PROSPECTIVE JUROR:  Exactly.

12          THE COURT:  Okay.  And because of that, you think you

13   would not be able to participate in this case?

14          THE PROSPECTIVE JUROR:  I could participate.  I

15   just -- I couldn't guarantee that I would, you know, weigh the

16   balances correctly.

17          THE COURT:  So the question is whether you can be

18   fair and impartial in this case.

19          Do you think you could be fair and impartial in this

20   case based on the fact that the case in 2014 did not come out

21   the way you thought it should?

22          THE PROSPECTIVE JUROR:  Exactly.  I may not be a good

23   juror.

24          THE COURT:  Okay.  What's your idea of a good juror?

25   How would you define it?

1          THE PROSPECTIVE JUROR:  Basically, just be honest and

2     listening to the whole case and make a fair judgment.

3          THE COURT:  Okay.  So you're concerned you wouldn't

4     be able to do that?

5          THE PROSPECTIVE JUROR:  It's -- it would be difficult

6     based on past experience.

7          THE COURT:  Okay.  And what exactly about that

8     experience do you see that carries over to this particular

9     case?

10          THE PROSPECTIVE JUROR:  To be honest, I would just

11     say the criminal justice system, period.

12          THE COURT:  Okay.  And what about the criminal

13     justice system?

14          THE PROSPECTIVE JUROR:  It's not always fair.

15          THE COURT:  And you think it wasn't fair because of

16     what?

17          THE PROSPECTIVE JUROR:  Basically, the amount of time

18     that the gentleman was given considering the crime.

19          THE COURT:  You know in this particular case you

20     would not be deciding anything about punishment or anything?

21     So that's not something that should be considered.

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  But you still have the same answer?

24          THE PROSPECTIVE JUROR:  It would be difficult, yes.

25          THE COURT:  You put something else -- and I don't

```
 1    know whether you want to -- I'll hand this back to you.  You

 2    wrote something out.  You didn't give the number.

 3              So let me just give this back to you and have you

 4    explain what additionally you wanted to bring to our attention.

 5              THE PROSPECTIVE JUROR:  I can kind of tell you what

 6    it was.

 7              THE COURT:  Okay.  You need to speak into the

 8    microphone so they can hear.

 9              THE PROSPECTIVE JUROR:  Okay.  While I was waiting to

10    go back in Courtroom 20, a lady recognized my mask, and she

11    walked to me and started talking to me.  She actually is a

12    co-worker at my job.

13              THE COURT:  Okay.

14              THE PROSPECTIVE JUROR:  We chatted for maybe 10 or 15

15    minutes before I was able to come back here where I am now.

16              THE COURT:  So your mask is from work?

17              THE PROSPECTIVE JUROR:  Exactly.

18              THE COURT:  What do you do?

19              THE PROSPECTIVE JUROR:  I'm an electrician.

20              THE COURT:  Okay.  So is that a company?

21              THE PROSPECTIVE JUROR:  It's American University.

22    It's a college in the upper northwest.

23              THE COURT:  Okay.  And so this is somebody that works

24    with you as well?

25              THE PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  Okay.  And is this -- did you talk about

2     the case or you talked about other stuff?

3          THE PROSPECTIVE JUROR:  No.  Just basically our --

4     you know, employment.  That's it.

5          THE COURT:  Okay.  So if you wound up -- you and this

6     other person you just met wound up on the jury -- we ask this

7     question to make sure that if you wind up on the jury and

8     you're deliberating with somebody you know, whether that will

9     keep you from being totally -- bringing everything forward

10    because you might be uncomfortable taking, say, a different

11    position than that person.

12          Would it make any difference if the two of you worked

13    together?  Would that in any way influence how you would come

14    to your decision about a verdict?

15          THE PROSPECTIVE JUROR:  I would -- I would say no

16    because I just met her today.  I don't really know her that

17    well.

18          THE COURT:  All right.  Government?  The government

19    gets an opportunity, and the other counsel, to ask you

20    questions as follow-up.

21          THE PROSPECTIVE JUROR:  Okay.

22          MR. CRABB:  Your Honor, may we raise an issue with

23    the Court before we continue asking questions with this

24    particular individual?

25          THE COURT:  Sure.  We can do this through -- we can

```
1    either ask him to step out or we can do it on the intercom.

2              MR. CRABB:  However the Court prefers.

3              THE COURT:  How long a discussion is it?

4              MR. CRABB:  I just wanted to raise an issue we had

5    discussed this morning.

6              THE COURT:  Okay.  So let me -- can I ask you to just

7    step down for a second.  And we have a seat right outside.

8    We'll bring you right back in.

9              THE PROSPECTIVE JUROR:  Okay.

10             THE COURT:  It depends on whether you want to have it

11   in the open courtroom or you want it on the intercom.

12             MR. CRABB:  Thank you, Your Honor.  I just didn't

13   want to do it in front of the prospective juror.

14             This morning we raised with the Court the issue that

15   people were outside --

16             THE COURT:  Handing out a pamphlet.  Yes, I've seen

17   it.  It's, actually, a leaflet sort of thing.

18             MR. CRABB:  I believe we haven't addressed that with

19   the individual jurors.  Is the Court open to the parties doing

20   that?

21             THE COURT:  We can ask it specifically.  I assumed

22   that if they did not answer the questions about hearing about

23   the case -- since the pamphlet clearly talks about the case,

24   mentions me as the judge, mentions all of the defendants, and

25   talks about the charges and evidence -- that somebody would
```

1    have -- would have brought it up.

2          I don't have any problem asking the question

3    specifically.  I didn't -- and to some degree because I thought

4    it might make them curious about seeing the leaflet, frankly,

5    having had other cases.

6          On the other hand, I don't have a problem if you

7    decide with a specific juror to ask the question as to whether

8    they were provided with the pamphlet.

9          But the first two or three, I sort of felt we would

10   have heard something about it.  But I don't have any problem

11   asking if you want.  I just assumed that, having read the

12   leaflet, it certainly discusses this case.  It has all of the

13   defendants; it has me as the judge; it discusses alleged

14   evidence and what they're not getting as evidence.  I would

15   have thought they would have put down that they heard something

16   about the case.

17         Since they didn't, I assume they didn't get it.  If

18   you want to ask, I'm not keeping you from doing that.

19         MR. CRABB:  Thank you, Your Honor.  Thank you.

20         THE COURT:  You can make your own decision.  I think

21   we're at the point of bringing him back.  I'm finished with my

22   questions, so you can start.  We'll bring him back.

23         (Prospective juror re-entered the courtroom.)

24         THE COURT:  All right, sir.  Both the government

25   counsel and defense counsel have an opportunity to ask you some

```
 1    follow-up questions.  So we'll let them go ahead.
 2              THE PROSPECTIVE JUROR:  Okay.
 3              MR. CRABB:  Good afternoon, sir.
 4              THE PROSPECTIVE JUROR:  Good afternoon.
 5              MR. CRABB:  The situation you mentioned where you
 6    were the victim of a carjacking, did that happen here in the
 7    District of Columbia?
 8              THE PROSPECTIVE JUROR:  Yes.
 9              MR. CRABB:  Was that case tried over in Superior
10    Court?
11              THE PROSPECTIVE JUROR:  Yes, D.C. Superior Court.
12              MR. CRABB:  Okay.  And I assume that you dealt with
13    the U.S. Attorney's Office here, the prosecutor?
14              THE PROSPECTIVE JUROR:  Yes.
15              MR. CRABB:  And do I understand correctly that you're
16    not happy with how that case went; is that fair to say?
17              THE PROSPECTIVE JUROR:  Yes, the sentencing.  After
18    you question me, then I can add something to it.
19              MR. CRABB:  Please go ahead and add it.
20              THE PROSPECTIVE JUROR:  Okay.  The same person that
21    carjacked me, he ended up shooting somebody some months ago,
22    and it was on television, and he got caught again.  That was
23    probably less than three years after he was released.
24              MR. CRABB:  I understand.
25              THE PROSPECTIVE JUROR:  Because he was released, I
```

1    believe, in March 2020.

2              MR. CRABB:  Would that experience and your

3    disappointment and frustration with it affect the way you view

4    the prosecutors in this case?

5              THE PROSPECTIVE JUROR:  I wouldn't want to say -- I

6    mean, it could -- it's a hard question for me to answer based

7    on what I've dealt with.

8              MR. CRABB:  Let me say, there's no right or wrong

9    answer; only how you feel.

10             THE PROSPECTIVE JUROR:  It would be hard.  It would

11   be extremely hard.  I'll just say that.

12             MR. CRABB:  In addition to prosecutors, I assume the

13   carjacking case was handled by the Metropolitan Police

14   Department; is that correct?

15             THE PROSPECTIVE JUROR:  Yes.  They caught him, like,

16   probably within 20 minutes, if it was that long, with the

17   helicopter.

18             MR. CRABB:  Okay.  And as you may remember from

19   discussions this morning, there will be two or three

20   Metropolitan Police Officers who will probably testify in this

21   case.

22             Would the unfortunate experience you went through

23   affect the way you view their testimony?

24             THE PROSPECTIVE JUROR:  I mean, I can't say it won't.

25             MR. CRABB:  There's no right or wrong answer; just as

1    honest as you can be.

2              THE PROSPECTIVE JUROR:  I would just say possibly.

3              MR. CRABB:  Let me ask you about something different,

4    please.

5              THE PROSPECTIVE JUROR:  I'm sorry?

6              MR. CRABB:  I'm going to ask you about something

7    completely different.

8              THE PROSPECTIVE JUROR:  Okay.

9              MR. CRABB:  The time you've been in court today, when

10   you arrived and when you've been here, has anyone approached

11   you and tried to say anything to you about this matter?

12             THE PROSPECTIVE JUROR:  Not at all.

13             MR. CRABB:  Has anybody tried to give you any

14   materials, a flyer or a leaflet?

15             THE PROSPECTIVE JUROR:  No.

16             MR. CRABB:  Thank you, Your Honor.

17             THE COURT:  Okay.

18             MR. CANNON:  Good afternoon, sir.  Thank you for

19   being here.

20             THE PROSPECTIVE JUROR:  Good afternoon.

21             MR. CANNON:  I want to follow up a little bit.  You

22   indicated that the crime experience affected you; the

23   carjacking.  You don't feel the person got enough time, they

24   got released, they shot somebody.

25             THE PROSPECTIVE JUROR:  Uh-huh.

1          MR. CANNON:  You've explained a few different ways

2     that would give you trouble.

3          You answered questions for Mr. Crabb about whether

4     you would have negative attitudes about law enforcement or

5     prosecutors because maybe they -- I think you said the system

6     failed you.

7          I have to be concerned, kind of, from the other end

8     of the pipe and wonder if it makes you feel like people that

9     are getting charged with crimes are being treated too nicely.

10         And so what I need to know is if your experience

11    would make you have a hard time being fair and presuming

12    innocence until proof of guilt on behalf of the defendants.

13         Do you think that would be a problem for you?

14         THE PROSPECTIVE JUROR:  It's possible, because to me,

15    it seems -- it almost seems like the laws are geared more

16    towards leniency for the criminals.

17         MR. CANNON:  Say it again.

18         THE PROSPECTIVE JUROR:  It seems to me like laws are

19    almost, you know, considered more lenient for the criminals.

20         MR. CANNON:  Okay.  But what about -- what does it

21    make you feel about people who are not yet convicted as

22    criminals?  They're accused.  They're on trial.  They have a

23    presumption of innocence until the government proves their

24    guilt.

25         But does your experience kind of want to make you

1     maybe want to jump over that process a little and go straight

2     to guilt?

3               THE PROSPECTIVE JUROR:  Well, no.  I would have to,

4     actually, you know, hear what goes on and then just make a good

5     decision, hopefully.

6               MR. CANNON:  Do you think you'd be able to do that?

7               THE PROSPECTIVE JUROR:  I mean, it's very possible.

8               MR. CANNON:  Is it possible you wouldn't be able to?

9               THE PROSPECTIVE JUROR:  I can't say it's a trick

10    question, but -- I mean, me just dealing with what I went

11    through, it kind of gives me a lot of doubts.

12              THE COURT:  It's not meant to be a -- there's no

13    right or wrong answer.  It's not meant to be a trick question.

14    We're just trying to get a sense of sort of how you feel about

15    it so that we can -- a decision can be made about whether you

16    should be on the jury or not.

17              But we want you to be truthful.  You're entitled to

18    your own feelings.  There's nothing wrong with that.

19              THE PROSPECTIVE JUROR:  Yes.

20              THE COURT:  What we want you to do is tell us

21    truthfully how you feel about it.  Okay?

22              THE PROSPECTIVE JUROR:  Okay.  Thank you.

23              MR. CANNON:  Maybe a good way to approach this is

24    this way.  If you were accused of a crime by the federal

25    government, very important crime, would you want you on your

```
 1    jury?

 2              THE PROSPECTIVE JUROR:  I would say probably not.

 3              MR. CANNON:  Okay.  I have nothing further, Judge.

 4    Thank you, sir.

 5              THE COURT:  Anything else?  Anybody else want to ask

 6    a question?  I'm assuming not.  You need to signal to me

 7    whether you're not asking questions or you are.  Are you done?

 8              MR. KIYONAGA:  Yes.

 9              THE COURT:  All right.  Let me excuse you at this

10    time.  We're going to ask you to step outside, and we'll give

11    you further instructions.  Okay?

12              THE PROSPECTIVE JUROR:  Thank you.

13              (Prospective juror exited the courtroom.)

14              THE COURT:  Where are we on this juror?

15              MR. CANNON:  I'm sorry.  What was the question,

16    Judge?

17              THE COURT:  I'm asking where are we on this juror?

18    This is sort of like Alphonse Gaston.  Maybe you're too young

19    for that.

20              MR. CRABB:  Your Honor, all things considered, we

21    don't think it would be appropriate for this juror to sit.

22    We're asking he be excused for cause.

23              THE COURT:  Anybody objecting to it?

24              MR. CANNON:  No.

25              THE COURT:  Anybody else objecting to it?  All right.
```

1    I will excuse him.  It's not a fair question to ask if you were

2    the juror, but his answer and a number of the other answers are

3    certainly sufficiently equivocal that I think it's appropriate

4    to excuse him for cause.

5              (Prospective juror entered the courtroom.)

6              THE COURT:  If you would step up over here, please.

7    If you would come up to the jury box -- I'm sorry, the witness

8    box.  If I could ask you to stand, we need to swear you in

9    first and then we'll let you sit down.

10             (Prospective juror sworn.)

11             THE COURT:  Please go ahead.  You can take your mask

12   off while we're speaking just to make sure that we can hear

13   what your answers are.  And you can move the chair up and speak

14   into the microphone.  I have to hear it, and they also have to

15   hear it as well.

16             THE PROSPECTIVE JUROR:  Okay.

17             THE COURT:  This is Juror No. 1368.  She has listed

18   8E, 20, 21, 22, 28, and a question mark next to 34.  Let me go

19   through all of these.

20             THE PROSPECTIVE JUROR:  Okay.

21             THE COURT:  Let me start with 8E.  8E is

22   Mr. Kiyonaga.

23             THE PROSPECTIVE JUROR:  Yes.  I believe you asked if

24   I worked in proximity to his office.  I work at 309B Cameron

25   Street in Alexandria twice a week.

```
 1              THE COURT:  Okay.  So in terms of he is at
 2    600 Cameron Street, Alexandria --
 3              THE PROSPECTIVE JUROR:  Yes.  So it's in Alexandria,
 4    Virginia.
 5              THE COURT:  So you recognize him?
 6              THE PROSPECTIVE JUROR:  No.
 7              THE COURT:  Well, do you recognize what he looks like
 8    or his name?
 9              THE PROSPECTIVE JUROR:  No.  I just said that I
10    worked in proximity to him.
11              THE COURT:  Oh, okay.  All right.  So you don't know
12    him, but you work near there; is that correct?
13              THE PROSPECTIVE JUROR:  Correct.
14              THE COURT:  And is there anything about the fact --
15    you can go ahead and sit down, sir.
16              Is there anything about the fact that -- looking at
17    the addresses -- that you work near that would make any
18    difference if you were selected?
19              THE PROSPECTIVE JUROR:  No.  I just thought that was
20    a question.
21              THE COURT:  It definitely is in terms of -- but I
22    take it, you're indicating you don't know him?
23              THE PROSPECTIVE JUROR:  No, I do not.
24              THE COURT:  You haven't talked to him or anyone else?
25              THE PROSPECTIVE JUROR:  Not to my knowledge.
```

1          THE COURT:  All right.  The next question is 20.  And

2     this question is a longer one.

3          Although the case will mention abortion, I want to be

4     clear the case is not about whether abortion is right or wrong,

5     morally justified or unjustified.  It is about two laws that

6     permit clinics that do provide, among other things, abortion

7     services to do so without physical obstruction.

8          Now, having said that, I'm asking whether you have

9     any personal, political, moral, or religious opinions or

10    beliefs regarding the issue of reproductive health care,

11    including abortion, that are so deeply held that they could

12    interfere with your ability to be fair and impartial in this

13    case?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  That's the question.  If you could

16    explain your answer.

17          THE PROSPECTIVE JUROR:  I was raised Catholic, went

18    to Catholic school until I graduated from high school.  And I'm

19    now agnostic.  I would say that abortion rights were a large

20    part of me not having anything to do with the Catholic religion

21    anymore.

22          THE COURT:  Okay.  Not quite sure I understand in

23    terms of -- what are your views at this point in terms of --

24    are they religious, personal?  What are your views?

25          THE PROSPECTIVE JUROR:  That I believe in women's

1    right to an abortion, and it's -- I've gone against my family

2    because of that.

3                THE COURT:  Okay.  So you evidently have changed your

4    views in terms of initially being brought up in the Catholic

5    church, if I understand it, and the Catholic church position of

6    abortion --

7                THE PROSPECTIVE JUROR:  Correct.

8                THE COURT:  -- that you now -- correct me if I'm

9    wrong in any of this.  You now have a differing view; is that

10   accurate?

11               THE PROSPECTIVE JUROR:  I would say that I've

12   probably always felt that way.

13               THE COURT:  Okay.  But this is -- your view that you

14   have now, I take it, it's a personal view?

15               THE PROSPECTIVE JUROR:  Correct.  Or -- I mean, yes,

16   religious or moral.

17               THE COURT:  Okay.  And so is it -- I take it, then,

18   are you indicating that you believe that women should have

19   access to an abortion?

20               THE PROSPECTIVE JUROR:  Correct.

21               THE COURT:  Now, I've couched the question in terms

22   of whether the feelings are particularly strong such that they

23   would interfere with your ability to be fair and impartial.

24               THE PROSPECTIVE JUROR:  Well, I don't think that

25   anyone should put their moral beliefs on to anyone else.  I

1    mean, you can have your own beliefs, but people have their

2    rights, and I don't think that your religion should -- I don't

3    think that you should impose your religious beliefs on anyone

4    else.

5              THE COURT:  Okay.  So having expressed that view, the

6    question really gets to whether your views are such that you

7    would not be able to participate as a juror because you have

8    already decided some -- made some decisions about access to

9    abortion that you think --

10             THE PROSPECTIVE JUROR:  I would say that's correct.

11             THE COURT:  -- would or would not interfere with your

12   being able to be fair and impartial in this case?

13             I've worded it too long.  I'm trying to get a sense

14   of whether -- everybody has opinions.

15             THE PROSPECTIVE JUROR:  Correct.

16             THE COURT:  It's hard to find somebody who doesn't.

17   So you actually have an opinion.

18             The question is trying to get at whether your

19   opinions are so strong that it's going to influence how you

20   look at the evidence, how you consider it, how you might

21   deliberate, or is it something that you can put aside and do

22   this separately?

23             You've indicated, by putting the question down, part

24   of it is that whether you have --

25             THE PROSPECTIVE JUROR:  I mean, I would say I feel

1    strongly, but I mean, I guess the law is the law.  I do respect

2    the law.

3              THE COURT:  Okay.  If you could be a little more

4    explicit.  Would you -- you, obviously, have views which you've

5    expressed.

6              Would you be able to put those views aside and make

7    an independent decision about the evidence or --

8              THE PROSPECTIVE JUROR:  I don't think it would be

9    completely independent.

10             THE COURT:  I'm sorry?

11             THE PROSPECTIVE JUROR:  I don't think it would be

12   completely independent, no.

13             MR. CANNON:  I couldn't hear that.

14             THE PROSPECTIVE JUROR:  I don't think it would be

15   completely independent, no.

16             THE COURT:  So if I understood you -- maybe you could

17   explain what you mean by not being -- I don't think it would be

18   completely independent.  What do you mean?

19             THE PROSPECTIVE JUROR:  I mean, I think I have -- I

20   have an obvious, very strong feeling about, I think, the issue

21   at hand here.

22             THE COURT:  Okay.  Are you indicating that you don't

23   think that you could put them aside in terms of making a

24   decision in this case?

25             THE PROSPECTIVE JUROR:  No, I don't think so.

1          THE COURT:  All right.  Let me just look at -- let me

2      go through a couple of other questions that are somewhat

3      related.

4          21 is whether you or somebody close to you belong to

5      any group or organization, contributing to any group or

6      organization that either advocates for or against any aspect of

7      reproductive health care, including but not limited to

8      abortion.

9          THE PROSPECTIVE JUROR:  I donate to Planned

10     Parenthood and to the Human Rights Campaign.

11         THE COURT:  Okay.  And how long have you been

12     donating to these organizations?

13         THE PROSPECTIVE JUROR:  I would say for years.

14         THE COURT:  And what was the last time you donated?

15         THE PROSPECTIVE JUROR:  HRC I donate to monthly.

16         MR. CANNON:  Say it again.

17         THE PROSPECTIVE JUROR:  HRC I donate to monthly.

18         THE COURT:  You donate on a monthly basis to Human

19     Rights Campaign?

20         THE PROSPECTIVE JUROR:  Correct, yes.

21         THE COURT:  All right.  22 is whether you or somebody

22     close to you has ever participated in a protest, march, or

23     rally regarding reproductive health care.  Is that you or

24     somebody else?

25         THE PROSPECTIVE JUROR:  That's me.

```
1              THE COURT:  So what have you participated in?

2              THE PROSPECTIVE JUROR:  In many, like, women's

3      marches and different things throughout the past few years.

4              THE COURT:  Do they relate to access to reproductive

5      care, abortions?  Do they relate to those kinds of things or

6      something else?

7              THE PROSPECTIVE JUROR:  Yeah.  I would say women's

8      rights.

9              THE COURT:  How would you define as women's rights --

10             THE PROSPECTIVE JUROR:  Women's reproductive rights.

11             THE COURT:  We can't talk at the same time or she

12     won't get a record.

13             THE PROSPECTIVE JUROR:  Okay.

14             THE COURT:  So in terms of women's rights, what would

15     you include in that?

16             THE PROSPECTIVE JUROR:  Women's reproductive rights.

17             THE COURT:  Okay.  There's two other questions, but I

18     think I would be inclined to just stop at this point unless

19     somebody wants me to go on to 28, which is the length of the

20     trial.

21             MR. KIYONAGA:  I don't feel a need for the Court to

22     go on.  I don't believe the defense needs for the Court to go

23     on.

24             THE COURT:  All right.  Does the government wish to

25     ask any questions?
```

```
1                    MR. PATEL:  No, Your Honor.

2                    THE COURT:  Defense, any questions?

3                    MR. CANNON:  No, Your Honor.

4                    THE COURT:  All right.  Let me ask you to step down,

5       and we'll give you further instructions.  Thank you.

6                    (Prospective juror exited the courtroom.)

7                    THE COURT:  What's everybody's position?  Come on,

8       folks.  You need to move faster.  We're very slow.  We have

9       only gone through five people in this whole day.  Don't be

10      hesitant to get up, tell me what you want.

11                   MR. CANNON:  I guess I was waiting for the government

12      to do it first.  I think she needs to be excused for cause.  I

13      think she's the other fellow on steroids.

14                   THE COURT:  For cause.  Any objection?

15                   MR. PATEL:  No, Your Honor.

16                   THE COURT:  She's excused.  I mean, if there's no

17      objections, the people are gone.  That's what I told you.

18      She's excused.  Let's move on.

19                   (Prospective juror entered the courtroom.)

20                   THE COURT:  If you would step over here through the

21      center and come over to the witness box.  If you'd step up and

22      raise your right hand, we're going to swear you in.

23                   (Prospective juror sworn.)

24                   THE COURT:  All right.  You can turn the chair

25      around, make yourself comfortable.  You can move up and down,
```

1    and you do need to speak into the microphone.  You can take

2    your mask off so we can actually hear what you're saying.

3              THE PROSPECTIVE JUROR:  Okay.

4              THE COURT:  So this is Juror No. 0460, and it's 14,

5    16, and 17.  Let me look at the questions.

6              14 is whether you or somebody close to you has ever

7    been employed by the courts, which could be Superior Court or

8    District Court or whatever.  Is that you or somebody else?

9              THE PROSPECTIVE JUROR:  Somebody else.

10             THE COURT:  Is it a family member or a friend?

11             THE PROSPECTIVE JUROR:  Friends.

12             THE COURT:  Okay.  And more than one or just --

13             THE PROSPECTIVE JUROR:  Kind of hard not to be

14   friends with lawyers in D.C.

15             THE COURT:  Okay.  Why don't we go through the

16   different friends and where they work connected to the courts.

17             THE PROSPECTIVE JUROR:  Actually --

18             THE COURT:  Let me ask also, if it's present or in

19   the past as well.

20             THE PROSPECTIVE JUROR:  Presently.  And all of the

21   friends I know that work are with firms.

22             THE COURT:  Okay.  As this one talked about working

23   with the courts -- 14 was the courts, I think.

24             THE PROSPECTIVE JUROR:  Did I misinterpret that?

25             THE COURT:  16 is -- and 17 -- 16 is defense counsel,

1    17 is whether you just studied law.  But the 14 was about

2    whether somebody was employed by the court system, you know, in

3    the courts.

4              THE PROSPECTIVE JUROR:  Then, no.

5              THE COURT:  Okay.  So for 14, you don't have

6    anybody that -- the lawyer friends that ever clerked or worked

7    in the clerk's office or did anything else?

8              THE PROSPECTIVE JUROR:  Not that I'm aware of.

9              THE COURT:  Okay.  So then let's move to 16, which is

10   you or somebody close to you ever been employed by a criminal

11   defense lawyer or been involved in a way in the defense of a

12   criminal case.  So that's you, family, or friends.

13             So this one is about defense counsel or working in

14   the defense of a criminal case.

15             THE PROSPECTIVE JUROR:  My father was an attorney,

16   but he is deceased.  He's been passed away for 11 years now.

17             THE COURT:  Okay.  Did he do defense work?

18             THE PROSPECTIVE JUROR:  Some, but mostly personal

19   injury.

20             THE COURT:  Okay.  Did he do any criminal cases?

21             THE PROSPECTIVE JUROR:  Some.

22             THE COURT:  And I take it, since he was in his own

23   firm, that he would do -- be defending criminal cases; is that

24   correct?

25             THE PROSPECTIVE JUROR:  Correct.

1          THE COURT:  Okay.  Do you know anything about them,

2   any of the cases?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  He ever discuss them with you or

5   anything?

6          THE PROSPECTIVE JUROR:  Never.

7          THE COURT:  Okay.  Any other friends or any other

8   family members?

9          THE PROSPECTIVE JUROR:  No, not that I'm aware of.

10         THE COURT:  All right.  17 is you or, again, members

11  of your family, close friends, an attorney, worked for an

12  attorney, or studied the law.

13         Now, I assume you meant some friends that fit that

14  category; is that correct?

15         THE PROSPECTIVE JUROR:  Yes.  Friends and work at

16  firms, but I don't know anything about their work or what they

17  do, and I don't know anything about the law in terms of law

18  school or anything.

19         THE COURT:  So you have friends that are lawyers, but

20  you know that they work for different law firms.

21         I take it none of them work for firms associated with

22  the addresses I talked about?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  But you don't -- they don't -- you don't

25  know whether they do any criminal work or civil work or

1    anything else?

2              THE PROSPECTIVE JUROR:  I don't even know the name of

3    the firms that some of my friends work at.  No.  I just know

4    that they're lawyers.

5              THE COURT:  Okay.  All right.  Government?

6              MR. CRABB:  Good afternoon, ma'am.  Do I understand

7    correctly, do you work at a nonprofit environmental

8    organization?

9              THE PROSPECTIVE JUROR:  I do.

10             MR. CRABB:  What type of work do you do personally?

11             THE PROSPECTIVE JUROR:  I work in fundraising;

12   digital marketing and fundraising.

13             MR. CRABB:  Thank you, Your Honor.

14             THE COURT:  All right.  Defense counsel?

15             MR. CANNON:  We have no questions, Your Honor.

16             THE COURT:  All right.  You can step down.  We'll

17   give you further instructions.

18             THE PROSPECTIVE JUROR:  Thank you.

19             (Prospective juror exited the courtroom.)

20             THE COURT:  Any issue?

21             MR. CRABB:  No, Your Honor.

22             THE COURT:  I'm assuming not.  So this person is not

23   excused.  Moving along.

24             (Prospective juror entered the courtroom.)

25             THE COURT:  All right.  Sir, if you would step down

1    the middle here, come through the gates, and if you'd come over

2    here to my left.  If you would step up to the witness box.

3              Okay.  If you can stay standing for a minute, we're

4    going to swear you in.

5              (Prospective juror sworn.)

6              THE COURT:  All right.  You can move the chair up

7    and you can fix the microphone.  Just make sure you speak into

8    it.  You can take the mask off; otherwise, it's hard to get a

9    record.

10             This is Juror 1992; Questions 17, 21, and 28.  All

11   right.  17 is whether you or somebody close to you, either

12   family or close friends, is a lawyer, work for a lawyer, or

13   studied the law.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  So is that you or somebody else?

16             THE PROSPECTIVE JUROR:  No.  I have several friends

17   and family members who are --

18             THE COURT:  Well, let's start with family members.

19   Can you just identify what the relationship of the family

20   member is.

21             THE PROSPECTIVE JUROR:  Not immediate family, but --

22             THE COURT:  You need to speak into the microphone.

23             THE PROSPECTIVE JUROR:  Not immediate family, but

24   first cousins and other people.  Yeah.  And friends.

25             THE COURT:  We'll do it by family and then friends.

1          In terms of the cousins, do you know where they work?

2     Do they work at firms, the government, what, nonprofits?  Do

3     you know where they work?

4          THE PROSPECTIVE JUROR:  Yeah.  Firm.  They're

5     primarily out of town; not in the area.

6          THE COURT:  Okay.  Do you know if any of them do any

7     criminal work?

8          THE PROSPECTIVE JUROR:  I don't believe criminal law,

9     no.

10         THE COURT:  Okay.  Have you had discussions with them

11    about their work or if they go to court cases or their views

12    about, you know, counsel or the judge or anything else?  Have

13    you had any kind of discussions about that?

14         THE PROSPECTIVE JUROR:  I have not -- I wouldn't say

15    that to be the case.  I mean, I have friends who we've

16    discussed things over the years, but not -- yeah.

17         THE COURT:  Okay.  So in terms of -- let me just

18    stick with the family for a second.

19         In terms of cousins or that relationship or anything,

20    is there anything about their work or their discussions with

21    you about their work, their legal work, that you think would

22    affect your fairness and --

23         THE PROSPECTIVE JUROR:  In fairness, no.  No, it

24    wouldn't.  I wouldn't say so, no.

25         THE COURT:  Okay.  Looking at friends, are these in

1    town or somewhere distant?

2              THE PROSPECTIVE JUROR:  Some friends, yes, who are in

3    town.  We have corporate attorneys and other people that I work

4    with.

5              THE COURT:  Okay.  So in terms of the people, the

6    friends that you know, apart from the corporate attorneys, are

7    any of them doing any kind of criminal work, do you know?

8              THE PROSPECTIVE JUROR:  No, no.

9              THE COURT:  Anything about the discussion -- leaving

10   the corporate attorneys out for a second, their discussions

11   with you about their work or cases or the court, have you had

12   any discussions?

13             THE PROSPECTIVE JUROR:  I don't -- no, not that I

14   recall.  I don't think that that would be anything that would

15   be of --

16             THE COURT:  The corporate attorneys, is that

17   connected to your work or something else?

18             THE PROSPECTIVE JUROR:  Yes, yes.  My -- my company

19   works with attorneys.  I have people that I know.  Yeah,

20   certainly.

21             THE COURT:  What do you do, sir?

22             THE PROSPECTIVE JUROR:  I have a consulting firm.  I

23   have a consulting firm.

24             THE COURT:  Okay.  What do you -- what kinds

25   of things do --

1          THE PROSPECTIVE JUROR:  We do IT and other type of

2    work.

3          THE COURT:  Okay.  And so in terms of your consulting

4    firm, you have attorneys that give you legal advice; is that

5    what you're saying?

6          THE PROSPECTIVE JUROR:  Yes, that's correct.

7          THE COURT:  Okay.  Anything that -- in terms of your

8    dealings with your attorneys, if you've ever had any lawsuits

9    or anything else that involved you or the -- around your work

10   or your consulting firm, has there been anything like that?

11         THE PROSPECTIVE JUROR:  No.  No, not anything -- not

12   anything like that.  Most of it is just general legal --

13   legal-type work, contracts and such.

14         THE COURT:  So doing it broadly then, based on your

15   answers, it would appear that, generally speaking, you have not

16   had -- other than advice you've received from your corporate

17   attorneys, the rest of it has been a more generalized

18   conversation with family members and --

19         THE PROSPECTIVE JUROR:  That's correct.

20         THE COURT:  -- others?  We can't talk at the same

21   time.

22         THE PROSPECTIVE JUROR:  That's fine.

23         THE COURT:  No criminal matters; is that accurate?

24         THE PROSPECTIVE JUROR:  No, no.

25         THE COURT:  It's not accurate or it is accurate?

```
 1                THE PROSPECTIVE JUROR:  That is accurate, yes.

 2                THE COURT:  All right.  21 is you or family members

 3     or close friends belong to any group or organization that

 4     contributes to any group or organization that advocates for or

 5     against any aspect of reproductive health care, including but

 6     not limited to abortion.  Is that you or somebody else?

 7                THE PROSPECTIVE JUROR:  My wife.  Yes.

 8                THE COURT:  Okay.  And what organization does she

 9     contribute to?

10                THE PROSPECTIVE JUROR:  She's contributed in the past

11     to Planned Parenthood.

12                THE COURT:  Okay.  And how far in the past has that

13     been?

14                THE PROSPECTIVE JUROR:  I mean, I believe fairly

15     recently, within with the last -- I couldn't say for sure, but

16     within the last year or two.

17                THE COURT:  Okay.  Is this something that she does on

18     her own that's separate from anything you would do?  Is this

19     her decision to contribute, and it's not a joint contribution,

20     or it is a joint contribution?

21                THE PROSPECTIVE JUROR:  It's something that she has

22     done on her own for many years.

23                THE COURT:  So what I'm trying to get at, is it a

24     joint contribution even though she's the one who put the money

25     forward, or is it truly just hers?
```

```
1              THE PROSPECTIVE JUROR:  Well, it's -- it's a joint
2      contribution, but she's usually the one that facilitates that,
3      yes.
4              THE COURT:  Okay.  So --
5              THE PROSPECTIVE JUROR:  We have a shared account.  If
6      that's what you mean, yeah.
7              THE COURT:  Well, what I was trying to get at in
8      terms of joint, in terms of your feeling that you wanted to --
9      you, not just her, but you are also supporting the
10     organization, or not?
11             THE PROSPECTIVE JUROR:  Yeah.  I mean, she typically
12     has done this without my involvement.  I mean, I know that
13     that's an organization that's important to her, and I support
14     that.  But I haven't --
15             THE COURT:  Not to get into your marital
16     relationship.  In terms of -- she evidently contributes the
17     money, and you support her being able to and contributing?
18             THE PROSPECTIVE JUROR:  Yes.
19             THE COURT:  What I'm trying to get at is whether
20     you're supportive of the organization independently yourself or
21     whether this is something that is something that she does?
22             THE PROSPECTIVE JUROR:  What I do -- would I support
23     it independently?
24             THE COURT:  Do you give support to either --
25             THE PROSPECTIVE JUROR:  I do not give any support
```

1    independent of her, no.  I don't -- I'm not involved in the

2    organization at all, no.

3              THE COURT:  Okay.  So if I understood you, she

4    contributes, you're supportive of her contribution; you do not

5    contribute, and you're not involved in the organization, in

6    supporting it or otherwise?

7              THE PROSPECTIVE JUROR:  That's correct.

8              THE COURT:  Okay.

9              THE PROSPECTIVE JUROR:  I mean, not in any material

10   way, yes, that's right.  We support a number of organizations,

11   and that's one of them.  But that's one that she is primarily

12   most involved with on a -- but purely from a contribution

13   standpoint.

14             THE COURT:  What I'm trying to get at is --

15   obviously, we're interested in knowing, since Planned

16   Parenthood has, obviously, a goal in terms of collecting both

17   funding, as well as the services and what they stand for.

18             THE PROSPECTIVE JUROR:  Sure.

19             THE COURT:  So what we're trying to see is, leaving

20   aside your wife since you will be the juror and not her, is the

21   question of whether you are supportive of the organization --

22   support the views such that you are supporting the organization

23   itself or it's -- you have no position one way or the other

24   about it, and this is what she does?

25             THE PROSPECTIVE JUROR:  I would say that, yes, I'm

1   generally supportive of the organization, but I have not done

2   anything --

3            THE COURT:  So you're generally supportive, but not

4   to the point of donating; would that be fair?

5            THE PROSPECTIVE JUROR:  I have not -- I have not

6   personally -- I mean, yes.  I guess you would say -- if I were

7   doing it on my own, I typically --

8            THE COURT:  Okay.  So, obviously, we ask this

9   question because it can reflect people's views.

10           THE PROSPECTIVE JUROR:  No.  I understand.

11           THE COURT:  My question is, obviously, since you have

12   some sympathetic views towards Planned Parenthood -- I'll

13   describe it that way -- would that in any way influence you in

14   how you looked at the evidence, how you make decisions in this

15   particular case?

16           THE PROSPECTIVE JUROR:  I don't believe that it

17   would.  I mean, I think I could be impartial.

18           THE COURT:  28 relates to the length of the trial

19   with the two days that we definitely will not be sitting the

20   whole day.  There may be other days where we'll start later in

21   the morning or finish earlier in the afternoon because I have

22   other matters that I need to take care of.

23           But what is the -- since you put it down, what's

24   the --

25           THE PROSPECTIVE JUROR:  I have travel later this

1    month that I'm taking my daughter to college.

2              THE COURT:  What do you have --

3              THE PROSPECTIVE JUROR:  Towards -- towards the end of

4    the month, yeah.

5              THE COURT:  Can you give us --

6              THE PROSPECTIVE JUROR:  I don't have an exact date.

7    I think it's somewhere -- the 26th or 27th I think we're

8    supposed to be leaving.

9              THE COURT:  All right.  Let's -- where are you taking

10   her?  Where are you going?

11             THE PROSPECTIVE JUROR:  Boston.

12             THE COURT:  All right.  We are taking the 28th off,

13   so that is a day that we would not be sitting.  I don't know

14   whether you have choices in terms of what day that you would be

15   able to go.

16             But would you have choices if -- at the end in terms

17   of going on the 28th as opposed to some other day?

18             THE PROSPECTIVE JUROR:  Perhaps.

19             THE COURT:  Are you going for the day or are you

20   going --

21             THE PROSPECTIVE JUROR:  No.  We'll be gone for a

22   week, ten days.

23             THE COURT:  How many?

24             THE PROSPECTIVE JUROR:  A week to ten days.  We have

25   additional travel beyond that.

1          But we could -- I could potentially schedule -- I

2     could potentially reschedule at the beginning.  We might be

3     able to push back if that were a problem.

4          THE COURT:  Okay.  So as I understand it, you don't

5     have a specific, you know, set, rigid schedule.  You

6     potentially -- we're talking about -- around September 1st we

7     would hope that the case would be done, and August 28th and

8     August 18th we're not sitting at all.

9          So are you indicating -- assume you were selected.

10    Let me finish.  Assume you were selected -- that you would be

11    willing to sit through the duration of the trial and make other

12    arrangements for your daughter?

13         THE PROSPECTIVE JUROR:  September 1st would be a

14    stretch.  I mean, I think she has to be back by maybe the 27th

15    or 28th.  I don't have the exact date.  It's right around

16    there.  That's why we were planning the 25th or 26th.

17         THE COURT:  What I'm trying to get at is, if you were

18    selected, would you -- we can't have you leaving at the end.

19         THE PROSPECTIVE JUROR:  True.

20         THE COURT:  My question is, if -- since the 28th is

21    open and you don't have a rigid schedule, whether you could do

22    it then or some later point, but would you be willing to sit

23    and finish it and not be rushed at the end in terms of maybe in

24    deliberations and pay attention throughout the trial and stay

25    for the duration of the case, assuming it actually goes to

1      September 1st, knowing that the 28th is off?

2                  THE PROSPECTIVE JUROR:  I would have to -- I mean,

3      right now -- I mean, I -- it would be difficult, I think, to

4      stay until the 1st.  If it did go that far --

5                  THE COURT:  Understanding the difficulty, I'm still

6      trying to get you to indicate one way or the other.

7                  THE PROSPECTIVE JUROR:  Could I do it -- I would have

8      to check the date.  I would have to confirm the date that she

9      has to be there.  So -- I'm sorry I can't give you an exact

10     date.

11                 THE COURT:  So you would have to confirm whether --

12     what the date is?

13                 THE PROSPECTIVE JUROR:  That's correct.  It's right

14     around the -- it's right around the 27th or 28th; I know that.

15     I believe we're leaving the 25th or 26th.  I just need to --

16                 THE COURT:  You were planning on spending a week or

17     so or ten days.  Let's assume that you could go on the -- the

18     28th is a Monday.

19                 Assuming the trial went for the length of time that

20     I've indicated, it would be for the rest of the week.  So let's

21     assume she -- you could go for the 28th.  I'd still need to

22     know -- and you can check with your daughter and get back to

23     us -- whether you're not -- you would pay attention if selected

24     and be able to sit as a juror.

25                 THE PROSPECTIVE JUROR:  If I'm selected and I need to

1    make alternate arrangements, I would be -- absolutely, I could

2    sit and pay attention.  That would be fine.  I would take my

3    responsibility seriously.

4              THE COURT:  Okay.  So, potentially, even though you

5    might have to make alternate arrangements, you would be willing

6    to pay attention if selected?

7              THE PROSPECTIVE JUROR:  Sure.  Of course.

8              THE COURT:  Okay.  Is your wife planning on going

9    with you?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  So she would be able to go with your

12   daughter, and you could join her or something?

13             THE PROSPECTIVE JUROR:  That's -- potentially, yes.

14             THE COURT:  All right.

15             THE PROSPECTIVE JUROR:  We're driving, and I'm the

16   one driving.

17             THE COURT:  Potential things.  I think that that

18   covers the questions.  Government?

19             MR. PATEL:  No questions, Your Honor.

20             THE COURT:  All right.  Defense?

21             MR. CANNON:  Very quickly, sir.  We sure appreciate

22   your honesty, and it seems like you're thinking about this.

23             I do have a couple of questions, maybe zeroing in a

24   little bit on what the judge asked you.

25             THE PROSPECTIVE JUROR:  Sure.

1          MR. CANNON:  It's like your wife is the one that

2    writes the checks, but it's out of a joint account; is that

3    right?

4          THE PROSPECTIVE JUROR:  That's correct, yes.

5          MR. CANNON:  You're, obviously, not objecting to

6    those contributions that she --

7          THE PROSPECTIVE JUROR:  No, I have not objected.

8          MR. CANNON:  Are you actually with her on it?  Would

9    you be writing the checks or supporting Planned Parenthood if

10   she were not?

11         THE PROSPECTIVE JUROR:  Honestly, it's not something

12   we had talked about many times over the years.  But I know that

13   that's an organization -- like I said, we support a number of

14   organizations.  That's one that she has been supportive of, and

15   I -- I support her.

16         MR. CANNON:  So you support her in her support of the

17   organization.  If she weren't around, would you be writing

18   checks to Planned Parenthood?

19         THE PROSPECTIVE JUROR:  Probably -- probably not.  I

20   don't, you know --

21         MR. CANNON:  Does she --

22         THE PROSPECTIVE JUROR:  That doesn't mean that I

23   object to their mission.  It's just --

24         MR. CANNON:  Okay.  Does she or you contribute to

25   other groups that are kind of around Planned Parenthood or on

1      the -- I'm going to say the left side of the spectrum?

2              THE PROSPECTIVE JUROR:  No.  No.  That's the

3      primary one.

4              MR. CANNON:  If you were getting onto this case, I

5      don't know how emphatically or strongly your wife feels about

6      things.  But as you probably know, this case is going to come

7      down to a lot of discussion about access to abortion.

8              THE PROSPECTIVE JUROR:  True.

9              MR. CANNON:  Of course, our clients -- I'm

10     representing the defendants, along with other attorneys -- are

11     not yet found guilty.  They are accused of something.  The

12     state has to prove the conviction and so forth.

13             Would you be -- despite your obvious, sort of,

14     leanings towards Planned Parenthood and supporting Planned

15     Parenthood, do you feel that you would be able to do -- to give

16     my clients the presumption of innocence until the state

17     actually proved them guilty?

18             THE PROSPECTIVE JUROR:  I think I'm certainly capable

19     of giving anyone the presumption of innocence.  I would have to

20     see the case, but I think I could -- I could judge the case on

21     its -- purely on its merits.

22             MR. CANNON:  So you're capable of doing it.  Would

23     you promise to do it?  Can you tell us affirmatively that you

24     will do it?

25             THE PROSPECTIVE JUROR:  If -- if -- if I were

1    selected, I can tell you that I would -- I would have a

2    completely open mind coming in.  I don't know anything about

3    the case as it stands right now.

4            So I think that I could judge -- base my decision on

5    the -- purely on what I -- on what the evidence is and what I

6    hear in the courtroom.

7            MR. CANNON:  Okay.  So if the evidence shows that the

8    people went into a clinic when they probably weren't wanted

9    there and created a bit of a disturbance and all that, but you

10   didn't feel they actually violated the statute they're charged

11   under, but it's kind of a rarefied atmosphere, and it's --

12           THE COURT:  This is not an appropriate question in

13   terms of indicating what -- as you've asked it.

14           MR. CANNON:  My question is whether a not guilty

15   verdict by you would give you difficulty with your wife?  I

16   mean, I guess maybe the better thing to say is, would -- would

17   how to explain this to your wife affect your deliberations?

18           THE PROSPECTIVE JUROR:  I think, again, it would have

19   much to do with the case and what statutes, you know, were

20   violated or not violated.  I think I would have to look at the

21   case just based purely on that.  I don't think it would

22   necessarily cause any sort of marital issues, if that's your

23   question.

24           MR. CANNON:  Thank you.

25           THE COURT:  Any other questions?  All right.  You can

1    step down.  We'll give you further instructions.  All right.

2    Thank you.

3                   (Prospective juror exited the courtroom.)

4             THE COURT:  I don't hear anything, so I'm assuming

5    that he's staying.  He's a keeper.

6                   (Prospective juror entered the courtroom.)

7             THE COURT:  All right.  If you would step forward.

8    You can come this way to my left.  If you would step up to the

9    witness box.  Just come up here.  Yes.  Step up.  That's fine.

10   If you would raise your right hand, we're going to swear you

11   in.

12                  (Prospective juror sworn.)

13            THE COURT:  All right.  If you would go ahead and sit

14   down.  You can move the chair around, and you can take your

15   mask off so you can -- we can actually hear what you have to

16   say.  You can move the microphone around as well.

17                  This is Juror No. 1693.  It's question No. 17, which

18   is you or members of your family or close friends, a lawyer,

19   ever worked for a lawyer, or studied law.  Is that you or

20   somebody else?

21            THE PROSPECTIVE JUROR:  Close friends and colleagues.

22            THE COURT:  All right.  So let's do the close friends

23   for a second.

24                  Are any of them practicing in the criminal area, to

25   your knowledge?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Are they -- do they work for the

3    government or law firms?

4          THE PROSPECTIVE JUROR:  Most are corporate lawyers.

5    Some are with law firms, but in corporate law.

6          THE COURT:  All right.  And you said colleagues.  In

7    what way are they colleagues?

8          THE PROSPECTIVE JUROR:  I work for an organization

9    that does consulting around legal operations, among other

10   things, and there are people with whom I work who have JDs.

11         THE COURT:  Okay.  In terms of -- what does legal

12   operations entail?

13         THE PROSPECTIVE JUROR:  Our focus is on how corporate

14   legal services are delivered.  Just, basically, optimizing how

15   they apply people, processes, technology, and data to better

16   deliver legal services to their internal clients.

17         THE COURT:  So is it strategic management, basically?

18         THE PROSPECTIVE JUROR:  Basically, yes.

19         THE COURT:  And so you would deal with lawyers who

20   are with organizations that have requested your services for

21   the --

22         THE PROSPECTIVE JUROR:  Yes.  We have lawyers as

23   clients and, you know, as colleagues.  Not all -- the ones who

24   are colleagues are not practicing lawyers.  They have that

25   background.

1    THE COURT:  So you have lawyers that are on the staff

2    of your organization that provide the input in terms of the

3    strategic planning for other organizations; is that correct?

4    THE PROSPECTIVE JUROR:  Yes.

5    THE COURT:  I take it that -- any of this have

6    anything to do with the criminal area or criminal law?

7    THE PROSPECTIVE JUROR:  No, not at all.

8    THE COURT:  Okay.  Do you do anything in terms of

9    litigation or those who are connected to it?

10   THE PROSPECTIVE JUROR:  In my division or department

11   within the company, the closest we get to do anything with

12   regard to litigation is bill review.

13   THE COURT:  So is there anything about your

14   association with the lawyers, conversations with them, or

15   anything else that you think would affect your consideration of

16   the evidence in this case?

17   THE PROSPECTIVE JUROR:  I don't think so, no.

18   THE COURT:  All right.  Government?

19   MR. CRABB:  Good afternoon, ma'am.

20   THE PROSPECTIVE JUROR:  Hi.

21   MR. CRABB:  While you've been in court today since

22   your arrival, has anyone tried to talk to you about this case?

23   THE PROSPECTIVE JUROR:  No.

24   MR. CRABB:  Has anyone tried to give you any

25   materials, pamphlets, flyers?

```
1                    THE PROSPECTIVE JUROR:  No.

2                    MR. CRABB:  Thank you very much.  Thank you, Your

3       Honor.

4                    THE COURT:  Counsel?

5                    MR. CANNON:  No questions, Your Honor.

6                    THE COURT:  All right.  You can step down.  We'll

7       give you further instructions.

8                    THE PROSPECTIVE JUROR:  Thank you.

9                    (Prospective juror exited the courtroom.)

10                   THE COURT:  We're going to take a short break at this

11      point for the court reporter.

12                   So we're keeping 1693.

13                   So how about five minutes after 4:00, everybody come

14      back at that point, and we'll pick up at that point.  So people

15      should not be talking about the case, and please don't wind up

16      near any of the jurors.

17                   (Recess taken.)

18                   THE COURT:  Is everybody back?  We do need to pick up

19      speed a little bit here.  We're going very slowly.  We have

20      exactly six people.

21                   MR. CANNON:  Your Honor, we're missing just Heather

22      Idoni.  Apparently, she's in the restroom.

23                   THE COURT:  Okay.  We'll wait.

24                   MR. DUNN:  She's right here.

25                   THE COURT:  Okay.  I think we've got everybody.
```

```
1              (Prospective juror entered the courtroom).

2              THE COURT:  All right.  If you'd come through the

3    gates there, and if you'd step over here to the witness box.

4    If you would come up, and if you'd remain standing for a

5    moment, we're going to swear you in.

6              (Prospective juror sworn.)

7              THE COURT:  All right.  You can move the chair back

8    and forth.  You can take your mask down because we need to be

9    able to hear you, and if you'd use the microphone.

10             This is Juror No. 1493, and it's Questions 13 and 17.

11   So Question 13 is whether you or somebody close to you, family,

12   close friends, have ever been employed by any law enforcement

13   agency.  I listed a whole series of them and told you, you

14   could add on to it.

15             Is this you or family or friends?

16             THE PROSPECTIVE JUROR:  Family.

17             THE COURT:  Okay.  And what is the relationship in

18   terms of the family?

19             THE PROSPECTIVE JUROR:  My niece's husband.

20             THE COURT:  Your niece's husband.  What's the

21   connection?  What agency?

22             THE PROSPECTIVE JUROR:  What agency?

23             THE COURT:  What law enforcement agency is your

24   niece's husband connected to?

25             THE PROSPECTIVE JUROR:  In New York State.
```

```
 1                    THE COURT:  Okay.  And is he a police officer or
 2       what?
 3                    THE PROSPECTIVE JUROR:  A police officer.
 4                    THE COURT:  A state trooper or somebody who is
 5       within the city or --
 6                    THE PROSPECTIVE JUROR:  He's on the SWAT team.
 7                    MR. CANNON:  On that what?
 8                    THE COURT:  SWAT team.  So is that -- you said New
 9       York State.  Is there any particular place within New York
10       State?  Is he in the city or some other place?
11                    THE PROSPECTIVE JUROR:  One of the counties.  I'm not
12       sure which county.  It's near Newburgh, New York.
13                    THE COURT:  Okay.  Do you know how long he's been a
14       police officer?
15                    THE PROSPECTIVE JUROR:  I think about four years.
16                    THE COURT:  All right.  Have you had discussions with
17       him about his work, what it entails in terms of his law
18       enforcement responsibilities, or how he's dealt with different
19       people that he's arrested or anything else?
20                    THE PROSPECTIVE JUROR:  No.
21                    THE COURT:  Okay.  Obviously, we're going to have law
22       enforcement officers that have been introduced to you
23       testifying; both local police officers, as well as federal law
24       enforcement officers.
25                    Will you treat them as you would any other witness
```

1    and not give their testimony greater or lesser weight before

2    you actually hear what the testimony is?

3                    THE PROSPECTIVE JUROR:  Yes.

4                    THE COURT:  All right.  And the other question is 17.

5    You or your family or close friend a lawyer, work for a lawyer,

6    or studied law.

7                    So, again, that question is, you or family or a close

8    friend?

9                    THE PROSPECTIVE JUROR:  Family.

10                   THE COURT:  Okay.  And what's the relationship?

11                   THE PROSPECTIVE JUROR:  Partner.

12                   THE COURT:  Okay.  And your partner, in terms of --

13   is that person working here in D.C. or the suburbs?

14                   THE PROSPECTIVE JUROR:  In D.C.

15                   THE COURT:  Okay.  Does he work for a firm or a --

16   another -- a government agency, or who does your partner work

17   for?

18                   THE PROSPECTIVE JUROR:  Solar company called Sol.

19   Solar company called Sol.

20                   THE COURT:  So is your partner in an in-house counsel

21   for the company?

22                   THE PROSPECTIVE JUROR:  I don't think so, no.

23                   THE COURT:  So what is his job with the solar

24   company?  He's a lawyer, right?

25                   THE PROSPECTIVE JUROR:  Uh-huh.

1          THE COURT:  And he works for the company itself?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Okay.  Do you know what he does for the

4     company?  Does he just give them legal advice, or do you know

5     what else he does?

6          THE PROSPECTIVE JUROR:  I think he gives some legal

7     advice, executive staff, and then also represents them in

8     different types of hearings, I guess.

9          THE COURT:  Okay.  Has he ever discussed his work in

10    terms of what -- if he's gone to court hearings or other kinds

11    of things, what that's been like?

12         THE PROSPECTIVE JUROR:  Just that he's gone or what

13    he's talked about in terms of solar or trying to get a

14    community to put solar in, but not specifics to what happened

15    in the court.

16         THE COURT:  Okay.  Government?

17         MR. PATEL:  Good afternoon, sir.  What type of work

18    do you do?

19         THE PROSPECTIVE JUROR:  Engineering.  Program

20    manager.

21         MR. PATEL:  What type of engineering?

22         THE PROSPECTIVE JUROR:  Electrical engineering.

23         MR. PATEL:  Electrical engineering; is that right?

24         THE PROSPECTIVE JUROR:  That's correct, electrical.

25         THE COURT:  If you could move over a little bit,

1      Mr. Patel, with the microphone.

2                MR. PATEL:  I'm sorry.  There we go.  What company do

3      you work for?

4                THE PROSPECTIVE JUROR:  Company is called Argon.

5      It's a subsidiary of Boeing.

6                MR. PATEL:  Thank you.  Sir, has anyone tried to talk

7      to you about this case outside of the courthouse?

8                THE PROSPECTIVE JUROR:  No.

9                THE COURT:  Did you receive any flyers, leaflets, any

10     paperwork with any information about this case?

11               THE PROSPECTIVE JUROR:  No.

12               MR. PATEL:  Thank you, Your Honor.

13               THE COURT:  All right.  Defense counsel?

14               MR. CANNON:  No questions, Judge.

15               THE COURT:  All right.  You can step down, sir.

16     We'll give you further instructions.  Thank you.

17               (Prospective juror exited the courtroom.)

18               THE COURT:  Assuming we're keeping him, let's move on

19     to the next one.

20               (Prospective juror entered the courtroom.)

21               THE COURT:  If you would come through the gates and

22     come over here to the witness box.  If you could step up, sir,

23     and we're going to swear you in.

24               (Prospective juror sworn.)

25               THE COURT:  All right.  You can move your chair up,

1    and you can move the microphone.  You can take your mask off so

2    that we can actually hear what your answers are.

3              So this is Juror No. 0607, and the questions are 5,

4    14, 17, 23, and 31.

5              Let me start with Question 5.  Question 5 is that the

6    Washington Surgi-Clinic is located at 2112 F Street, Northwest

7    in D.C.  Do you work or live near that area?

8              THE PROSPECTIVE JUROR:  Yes.  I work near that area,

9    2055.  Do I have to give the address?

10             THE COURT:  No.  You don't have to give the address.

11   How far away, how many blocks, or whatever?

12             THE PROSPECTIVE JUROR:  Maybe about five or six.

13             THE COURT:  Okay.  And have you gone -- have you

14   noticed anything about the building, anything unusual, a lot of

15   people going in and out or protests or anything, or have you

16   never paid any real attention to it?

17             THE PROSPECTIVE JUROR:  No, I haven't paid real

18   attention to it.

19             THE COURT:  So you haven't noticed anything unusual

20   related to it?

21             THE PROSPECTIVE JUROR:  That's correct.

22             THE COURT:  In terms of 14, this one relates to you,

23   members of your family, or close friends, whether they've ever

24   been employed by the courts, which would be Superior Court or

25   District Court or other courts.  Is that you or somebody else?

```
 1              THE PROSPECTIVE JUROR:  It's a family member.
 2              THE COURT:  Can you just give the relationship.
 3              THE PROSPECTIVE JUROR:  Stepmother.
 4              THE COURT:  Okay.  And does -- is your stepmother
 5      presently working for the courts or in the past?
 6              THE PROSPECTIVE JUROR:  I believe it's in the past.
 7              THE COURT:  Okay.  Which court did she work for?
 8              THE PROSPECTIVE JUROR:  She lives in St. Thomas, so
 9      I'm guessing some court over there.
10              THE COURT:  So it's a court in St. Thomas?
11              THE PROSPECTIVE JUROR:  That's correct.
12              THE COURT:  Do you know if it's a local court or a
13      federal court?
14              THE PROSPECTIVE JUROR:  I'm not sure.
15              THE COURT:  Okay.  Do you know what she does, what
16      position she has there at the court?
17              THE PROSPECTIVE JUROR:  I'm also not sure, no.
18              THE COURT:  Okay.  But anything about her being
19      connected to the court, have you had any discussions with her
20      about her work or anything else that you think would influence
21      you in this case?
22              THE PROSPECTIVE JUROR:  I don't think so.
23              THE COURT:  All right.  17 is you or somebody close
24      to you, family or friends, a lawyer or work for a lawyer, or
25      studied law.  So is that you or somebody else?
```

1          THE PROSPECTIVE JUROR:  It's somebody else.  It's the

2    same relationship that I mentioned in question, I think, 14.

3          THE COURT:  I'm sorry?

4          THE PROSPECTIVE JUROR:  It's the same relationship

5    that I mentioned in the earlier question.

6          THE COURT:  Your stepmother?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Okay.  So your stepmother has studied law

9    or is an actual lawyer?

10          THE PROSPECTIVE JUROR:  Since she's a judge, I

11    believe she would have studied law.

12          THE COURT:  So she's a judge in St. Thomas?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Okay.  I take it from your answer --

15    earlier answer, she hasn't discussed her cases with you or

16    anything?

17          THE PROSPECTIVE JUROR:  That's correct.

18          THE COURT:  23 is:  During this trial you may learn

19    that the government has entered into a cooperation agreement or

20    court-approved plea agreement with a witness.  You may hear

21    that as part of an agreement the witness has agreed to testify

22    in the hopes of receiving more lenient treatment by law

23    enforcement in return for truthful cooperation with the

24    government.

25          Agreements such as these are lawful, and the

1    government is permitted to enter into them, as are the

2    witnesses.  Do you have an opinion, whether positive or

3    negative, about witnesses who testify for the prosecution under

4    such agreement?

5              So the first question is whether you have an opinion?

6              THE PROSPECTIVE JUROR:  Yes, negative opinion.

7              THE COURT:  Yes.  What is your opinion?

8              THE PROSPECTIVE JUROR:  So I think -- even though

9    it's lawful, I think the incentive to give a false testimony is

10   still there.  Like, it seems like whoever has the better story

11   will be more likely to turn on someone else and give a story

12   that's possibly inaccurate.

13             THE COURT:  So your view is that there's some

14   incentive on that person not to be truthful?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Would you be willing to wait to hear the

17   person testify and make a decision once the person testifies as

18   opposed to having decided in advance that they're not going to

19   be truthful?  In other words, what we want you to do -- you

20   have those views.

21             Can you separate them out, wait until the witness

22   testifies, assuming the witness does, and then come to your own

23   conclusions about what their credibility is?

24             THE PROSPECTIVE JUROR:  I could.  But it's also, they

25   could be telling me a false narrative.  So that would probably

1    be in the back of my head thinking, like, they may be saying

2    something, they may be sworn under oath, but that doesn't

3    necessarily mean they'll be telling me hundred percent -- or

4    presenting the 100 percent honest truth.  That's just my

5    thought.

6              THE COURT:  Okay.  I take it, then, that you would be

7    skeptical to start with of their testimony because of this

8    agreement and for this particular witness, unlike, say, other

9    witnesses where you'd wait to hear what they had to say; is

10   that correct?

11             THE PROSPECTIVE JUROR:  That's correct.

12             THE COURT:  All right.  The last question is 31.  Do

13   you have any religious, moral beliefs, social, political, or

14   philosophical, or other beliefs that would interfere with you

15   being a member of this jury and returning a fair and impartial

16   verdict solely on the evidence?

17             THE PROSPECTIVE JUROR:  Right.  So I mentioned that

18   one because I'm Christian, and I do believe that -- well,

19   according to the religion, it's not right to kill another

20   person.  So as far as abortion goes, I have a slight conflict

21   there.

22             I think I could be impartial, but it is something

23   that I feel like I'm influenced by.  So I thought I would

24   disclose that.

25             THE COURT:  Okay.  So you have religious views

1      relating to abortion; am I correct?

2             THE PROSPECTIVE JUROR:  That's correct.

3             THE COURT:  Okay.  So the question would be whether

4      being impartial -- which you think you could be -- whether or

5      not you would listen to the evidence with a view, perhaps, or a

6      view that abortion is not -- is not -- should not be allowed;

7      I'll put it that way.

8             Would that influence you in terms of -- this is not a

9      case about whether abortion is good or bad or anything.  The

10     question is whether -- the statute about access to certain

11     reproductive services.

12            But if you have strong views that are religious, do

13     you think you can put them aside and make a decision on the

14     evidence, or would your views about abortion be such that they

15     would color the way you looked at the evidence?

16            THE PROSPECTIVE JUROR:  Yeah.  I don't -- I don't

17     think those views would impact my judgment.

18            THE COURT:  All right.  Government?

19            MR. CRABB:  Good afternoon, sir.

20            THE PROSPECTIVE JUROR:  Good afternoon.

21            MR. CRABB:  I'd like to ask you a couple questions

22     about what you were just discussing with Judge Kotelly.

23            THE PROSPECTIVE JUROR:  Yes.

24            MR. CRABB:  So do I understand that you're opposed to

25     abortion?  Do I understand that correctly?

1          THE PROSPECTIVE JUROR:  I don't have an opinion on

2     it, I think, one way or the other.  So I'd say that's

3     incorrect.

4          MR. CRABB:  What did you mean when you said you

5     thought abortion was killing and that was wrong?

6          THE PROSPECTIVE JUROR:  Well, you're not supposed to

7     kill someone.  So I would think that's wrong.  And abortion,

8     you know, there's technically a life that's been started, and I

9     think that, by aborting someone, you're, essentially, killing

10    them.

11         But I feel like I'm in no place to judge whether

12    that's correct or not, I guess.

13         MR. CRABB:  Let me ask you this based on what you've

14    just explained about how you see things.

15         The allegations in this case are that people were

16    trying to stop abortions.  That's what's alleged in this case.

17         THE PROSPECTIVE JUROR:  Uh-huh.

18         MR. CRABB:  Would you be sympathetic to that and

19    think that they shouldn't be found guilty of a crime?

20         THE PROSPECTIVE JUROR:  I don't think so, no.

21         MR. CRABB:  Why do you say that?

22         THE PROSPECTIVE JUROR:  Because I feel like people

23    should be able to do what they want to do, whether it's an

24    abortion; it's up to them.

25         THE COURT:  If you could keep your voice up just a

93

1     little bit to make sure we can hear you.

2              THE PROSPECTIVE JUROR:  Sorry.  Do you want me to

3     repeat myself?

4              MR. CRABB:  I heard you fine.

5              THE COURT:  You're starting to drop.  I just wanted

6     to make sure we could all hear.

7              THE PROSPECTIVE JUROR:  I'll try to project more.

8              MR. CRABB:  Thank you.  I just want to make sure I

9     understand.

10             You're confident that you would be able to assess the

11    facts and decide whether or not -- based on the law that Judge

12    Kotelly gives you, whether or not a crime had been committed or

13    not; you're comfortable that you'd be able to make that

14    decision based on the facts alone?

15             THE PROSPECTIVE JUROR:  Yes, I feel confident.

16             MR. CRABB:  I want to ask you a couple things about

17    another issue you raised.  This is witnesses who have plea

18    agreements, what we call cooperating, and then testify.  Do you

19    know what I'm talking about?

20             THE PROSPECTIVE JUROR:  Yes, I know.

21             MR. CRABB:  You expressed some skepticism about that;

22    is that fair to say?

23             THE PROSPECTIVE JUROR:  Yep.

24             MR. CRABB:  Tell me how strong your skepticism is

25    about a witness like that.

1              THE PROSPECTIVE JUROR:  Like on a scale of 1 to 10?

2              MR. CRABB:  However you can express it.

3              THE PROSPECTIVE JUROR:  So zero being, like, not

4    skeptical at all, 10 being, like, extremely skeptical, it's

5    probably, like, an 8.

6              MR. CRABB:  And that's before you hear the person

7    testify at all?

8              THE PROSPECTIVE JUROR:  Yeah.

9              MR. CRABB:  Judge Kotelly will give you instructions,

10   and I believe she'll instruct you that that's certainly

11   something you can consider when you assess someone's

12   credibility; by that I mean if they have an agreement to

13   cooperate.  It's one factor.

14             THE PROSPECTIVE JUROR:  Right.

15             MR. CRABB:  Would that factor alone disqualify this

16   person as a witness and make you not believe anything that

17   witness said?

18             THE PROSPECTIVE JUROR:  No, not that factor in

19   isolation.  But that is a factor that I'd consider at the start

20   of their testimony.

21             MR. CRABB:  Why is it you're so skeptical of a

22   witness like that?

23             THE PROSPECTIVE JUROR:  Just because the incentives

24   don't seem like they're there for them to tell the truth.  It

25   seems like, even if you're the most honest person ever and the

1    incentive is -- it's in your best interest to throw someone

2    else under the bus instead of -- you know, rather than have you

3    be convicted of anything, I think just a person in general

4    would be more likely to succumb to that pressure.

5        MR. CRABB:  If you heard testimony from a witness

6    like that, a witness with an agreement, and after you heard

7    that witness testify, you factored in the issue you've already

8    identified, your skepticism about having plea agreements and

9    cooperating, but you heard all the evidence, you assessed that

10   witness's testimony, would you be able to believe that person

11   if overall the other evidence or corroboration was in support

12   of their testimony?

13       THE PROSPECTIVE JUROR:  If it was -- yeah.  If it was

14   compelling enough, yeah.  If the other evidence was compelling

15   enough, I would -- I would still listen to their testimony.

16       MR. CRABB:  And then reach an independent conclusion

17   as to whether or not you believe them?

18       THE PROSPECTIVE JUROR:  Yeah.  I would be able to

19   come to a conclusion.  I would -- I would consider what they

20   had to say.

21       MR. CRABB:  Thank you, sir.  Thank you, Your Honor.

22       THE COURT:  All right.  Defense?

23       MR. CANNON:  Thank you, sir.  No questions, Judge.

24       THE COURT:  All right.  You may step down, sir, and

25   we'll give you further instructions.  You can just follow

1      Ms. Patterson.

2              (Prospective juror exited the courtroom.)

3              THE COURT:  Anybody saying anything, or are we

4      keeping this person?

5              MR. CRABB:  No motion here, Your Honor.

6              MR. CANNON:  No motion.

7              THE COURT:  All right.  Then we're keeping the

8      person.

9              (Prospective juror entered the courtroom.)

10             THE COURT:  If you'd come through the gates there and

11     come forward, please.  If you would step up, please, and if you

12     would raise your right hand, we're going to swear you in.

13             (Prospective juror sworn.)

14             THE COURT:  You can move the chair around or move it

15     up.  You can fix the microphone so you can speak into it.  And

16     also, you can take your mask off so we can make sure we can

17     hear you.

18             THE PROSPECTIVE JUROR:  Okay.

19             THE COURT:  This is Juror 0145; 21, 22, and 24.  All

20     right.

21             21 is whether you or a family member or close friend

22     belong to any group or organization or contribute to any group

23     or organization that advocates for or against any aspect of

24     reproductive health care, including but not limited to

25     abortion.

1              So is that you, a family member, or close friend?

2              THE PROSPECTIVE JUROR:  Me.

3              THE COURT:  Okay.  And what is the organization that

4    you are affiliated with or belong to or contribute to?

5              THE PROSPECTIVE JUROR:  I have contributed to Planned

6    Parenthood.

7              THE COURT:  Okay.  When was the last time you

8    contributed?

9              THE PROSPECTIVE JUROR:  I believe I give $5 monthly.

10   I was not able to check that.

11             THE COURT:  So you're on a plan of paying $5 a month?

12             THE PROSPECTIVE JUROR:  Correct.

13             THE COURT:  How long have you been doing that?

14             THE PROSPECTIVE JUROR:  Since 2016 or so.

15             THE COURT:  Okay.  And, obviously, we're -- is that

16   the only one, just you?

17             THE PROSPECTIVE JUROR:  Correct.

18             THE COURT:  Okay.  Now, the reason we're, obviously,

19   asking this question is Planned Parenthood has a particular

20   goal and views about reproductive health, including abortion.

21   And, obviously, this case is about not abortion but

22   reproductive care, which can include abortion.

23             So our question would be, does your affiliation and

24   the fact that you, obviously, are sympathetic to it since

25   you're donating to it, would that affect your consideration in

1     this case of the evidence?

2              THE PROSPECTIVE JUROR:  I don't believe so.  I

3     believe I would be able to be impartial.

4              THE COURT:  Would you be able to separate out what

5     your views are about reproductive health care, which would

6     include abortion from whatever was presented in court?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  How strongly do you feel about the views

9     of Planned Parenthood -- which you're, obviously, sympathetic

10    to, I would understand, because you're contributing monthly.

11             How strongly are your views about that in conjunction

12    with looking at what the evidence in this case would be?

13             THE PROSPECTIVE JUROR:  My views are strongly in

14    support of Planned Parenthood.  I do have deeply held beliefs

15    in what they do.

16             But I reflected on this during the previous question

17    of No. 20, and I don't believe it would have an impact on how I

18    would make a decision when presented with the facts in front of

19    me, like, is something lawful or not.  I don't think that my

20    personal beliefs would have an impact on, you know, does this

21    fit into X category or Y category.  So that's kind of what I --

22    how I made that decision.

23             But, obviously, yes, I do feel strongly in support of

24    Planned Parenthood.

25             THE COURT:  In terms of what -- what aspect of

1      Planned Parenthood are you supportive of or sympathetic to

2      since they, obviously, have a broad view on various areas?

3      What are you most sympathetic or supportive of?

4             THE PROSPECTIVE JUROR:  Yeah.  So I believe I started

5      to contribute financially because it was around a debate about

6      whether Planned Parenthood would continue to receive federal

7      funding, I believe.  And so it was when the conversation was

8      defund Planned Parenthood, I believe that's when I started to

9      give money.

10            And so I wouldn't say there's anything in particular.

11     I would say women's reproductive health, in general, is what

12     I'm supportive of.

13            THE COURT:  So is there anything in particular about

14     women's reproductive health that you're supportive of with the

15     organization or just in a more general way?

16            THE PROSPECTIVE JUROR:  I like that it helps

17     low-income women and people receive reproductive care.  As a

18     woman myself, I find that to be a helpful and useful service

19     for people who can't afford it.

20            THE COURT:  All right.  22 is whether you or somebody

21     close to you, family or close friends, ever participated in a

22     protest, march or rally, regarding reproductive health care.

23            THE PROSPECTIVE JUROR:  Yes.  I participated in the

24     2021 women's march here in Washington, D.C. and -- wait, hold

25     on -- 2017.  Sorry.  And then I believe I participated in the

1    same march the following year in 2018.  Yeah, 2018.

2              THE COURT:  So 2021 or 2017 and 2018?

3              THE PROSPECTIVE JUROR:  I'm sorry.  I misspoke.  It

4    was 2017 and 2018.  I said 21 because it was January 21st.

5              THE COURT:  All right.  The 2017 and 2018 marches,

6    they've had marches since then, but you haven't participated in

7    them; is that correct?

8              THE PROSPECTIVE JUROR:  That's correct.

9              THE COURT:  Okay.  And the women's march, I believe,

10   covers a series of different issues.

11             THE PROSPECTIVE JUROR:  I believe that's correct.

12             THE COURT:  So what specifically were you supporting

13   in the march?

14             THE PROSPECTIVE JUROR:  Yeah.  I was trying to

15   consider if that was like an umbrella organization of other

16   organizations, and I just assumed that probably one of the

17   things they support is abortion access, and so I -- I'm sorry.

18   Can you repeat the question.

19             THE COURT:  I was just trying to say the women's

20   march generally -- in general, my understanding -- and you can

21   correct me if I'm wrong -- that it supports various views; it's

22   not just one thing.

23             THE PROSPECTIVE JUROR:  Correct.  Yes.  That's my

24   understanding as well.

25             THE COURT:  I'm asking you about what you -- what are

1     you supporting with the women's march specifically?

2              THE PROSPECTIVE JUROR:  Yes.  Certainly, access to

3     reproductive care is part of it.  Just in general, women's

4     representation in the media, in public life, that kind of

5     thing.

6              THE COURT:  Okay.  And 24 is whether you've ever

7     served on a grand jury.  That's not a trial juror, but a grand

8     jury where you're there with others and the government presents

9     their evidence, and you make a decision as to whether or not a

10    crime has been committed and whether a particular person

11    committed the crime.

12             So is that what you participated in?

13             THE PROSPECTIVE JUROR:  I was called to serve on a

14    grand jury in Minnesota in Dakota county court, but I ended up

15    being an alternate and not being part of the proceedings at

16    all.

17             THE COURT:  Okay.

18             THE PROSPECTIVE JUROR:  Or a backup or something like

19    that.

20             THE COURT:  Was it a trial or was it the grand jury?

21             THE PROSPECTIVE JUROR:  It was a grand jury.

22             THE COURT:  Okay.  So you were an alternate on the

23    grand jury.  And if somebody was missing, you would have come

24    in and substituted?

25             THE PROSPECTIVE JUROR:  Correct, yes.

```
1              THE COURT:  And you were never called?

2              THE PROSPECTIVE JUROR:  That's correct.

3              THE COURT:  And if you had been called, do you know

4    that the standard in a grand jury is much lower than what it

5    would be for trial where it's beyond a reasonable doubt?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  All right.  Government?

8              MR. PATEL:  Good afternoon.

9              THE PROSPECTIVE JUROR:  Hi.

10             MR. PATEL:  I just want to make sure I understood.

11   You can set aside all of your beliefs, your opinions, and sit

12   as a juror in this case and impartially deliberate in this case

13   and be very fair in your assessment of the evidence; is that

14   right?

15             THE PROSPECTIVE JUROR:  That's correct.

16             MR. PATEL:  Okay.  Thank you.

17             MR. DUNN:  Good afternoon.

18             THE PROSPECTIVE JUROR:  Hello.

19             MR. DUNN:  I understand that you are the

20   communications director for a Democratic Party congresswoman?

21             THE PROSPECTIVE JUROR:  That is correct.

22             MR. DUNN:  SO part of being the communications

23   director would be putting out publicly the congresswoman's

24   position on issues, including the abortion issue?

25             THE PROSPECTIVE JUROR:  That is correct.
```

1          MR. DUNN:  And she strongly supports legalized

2     abortion; is that correct?

3          THE PROSPECTIVE JUROR:  She is a pro-choice

4     legislator, yes.

5          MR. DUNN:  Strongly supports legalized abortion; is

6     that correct?

7          THE PROSPECTIVE JUROR:  I'm not speaking in my

8     capacity for her right now, but you can generally say that's

9     correct, yes.

10          MR. DUNN:  Right.  And when congressmen and other

11     politicians support agencies like Planned Parenthood, when it

12     comes election time, they try to solicit contributions of

13     support from these organizations, don't they?

14          THE PROSPECTIVE JUROR:  I do not work on the campaign

15     or political side.  I work on the official side.

16          MR. DUNN:  Of course, you know what this case is

17     about now.  I think the judge has explained that to you, right?

18          THE COURT:  You have to say yes or no.

19          THE PROSPECTIVE JUROR:  Oh, yes.

20          MR. DUNN:  So despite that, despite knowing that

21     these people are charged with committing offenses against

22     Planned Parenthood organization --

23          THE COURT:  Well, wait.  That's a little broad.  I

24     mean, Planned Parenthood, which she has indicated provides a

25     number of services, and certainly abortion is one of them.  But

1    it's not the only one for Planned Parenthood, according to the

2    way she has described it.  And according to --

3               MR. DUNN:  But abortion is the money part of those

4    clinics, Judge.  That's where they make their money.

5               THE COURT:  That may be your view, but we don't have

6    that here.  If you want to ask her in terms of the Planned

7    Parenthood -- but you've described it incorrectly as she has

8    described what they do.  So we'll have to stick to that.

9               MR. DUNN:  All right.  I'm sure you could be a fair

10   and impartial juror in probably any other case in the world,

11   any other conceivable case.

12              But do you really think you can in this particular

13   instance?

14              THE PROSPECTIVE JUROR:  I do believe so, yes.

15              MR. DUNN:  What if it turned out in the end and

16   you're in the jury room and you're looking at the evidence and,

17   geez, it seems like a close call here, a close call whether I

18   ought to go guilty or not guilty.

19              Wouldn't you tilt towards the government based on

20   your views and beliefs that you've expressed here today?

21              THE PROSPECTIVE JUROR:  No.

22              MR. DUNN:  No further questions, Your Honor.

23              THE COURT:  When you are acting as the media

24   consultant for the congresswoman, the views that are espoused,

25   are they yours or are they hers?

1    THE PROSPECTIVE JUROR:  They are hers.  I'm glad you

2    mentioned that because I wasn't sure if that was appropriate

3    for me to bring up earlier.

4        There are times, absolutely, where I disagree with

5    something, but still have to put it out on behalf of the

6    congresswoman because that's how she feels.  So I'm very much

7    able to keep separate her platform and my own personal views

8    and feelings, and so I think that that is -- that speaks for

9    itself.

10    THE COURT:  What do you do as the media consultant?

11    Can you just give us a snapshot of what you do.

12    THE PROSPECTIVE JUROR:  Yes.  So I develop talking

13    points for the congresswoman for any interviews that she does.

14    I put out social media posts for the congresswoman's official

15    pages, and I take in media inquiries from the press, write

16    statements and quotes and things like that, that go on the

17    record.

18    THE COURT:  Do you have a particular subject matter

19    that you're assigned as part of these media, or it just covers

20    anything?

21    THE PROSPECTIVE JUROR:  No.  It covers her entire

22    legislative portfolio, as well as commenting on things that

23    happen back home in Minnesota's Fourth Congressional District,

24    but nothing in particular.

25    THE COURT:  Any other questions based on mine?

```
 1              MR. CANNON:  Ma'am, I think you said you donate a
 2     little bit every month to Planned Parenthood?
 3              THE PROSPECTIVE JUROR:  Yes.
 4              MR. CANNON:  You get their newsletters then, don't
 5     you?
 6              THE PROSPECTIVE JUROR:  I think so.
 7              MR. CANNON:  Whatever their regular mailings are?
 8              THE PROSPECTIVE JUROR:  Yes.
 9              MR. CANNON:  Do you read them?
10              THE PROSPECTIVE JUROR:  I don't read them.  I have
11     too much to read.
12              MR. CANNON:  If I heard you right, you participated
13     in the women's marches in 2017 and 2018?
14              THE PROSPECTIVE JUROR:  Yes.
15              MR. CANNON:  And the thing that motivated you to do
16     that was the support in that group for access to reproductive
17     health care; is that right?
18              THE PROSPECTIVE JUROR:  Oh, okay.  So I participated
19     with -- I do have that belief in reproductive access, right,
20     but I wouldn't say that was the motivation for me.  The
21     motivation was the, like, 2016 election outcome.  It was
22     broader than that, if that makes sense.
23              MR. CANNON:  Okay.
24              THE PROSPECTIVE JUROR:  If that answers the question.
25              MR. CANNON:  You've mentioned access a couple of
```

1    times.

2            Would it be fair to say that your strongest concern

3    about reproductive health care is access to it?

4            THE PROSPECTIVE JUROR:  That is certainly something

5    that I'm thinking of.

6            MR. CANNON:  You probably understand already that the

7    defendants in this case are not accused of having opinions

8    about health care.  They are accused of obstructing access to

9    reproductive health care, which is the very thing you care a

10   lot about.

11           Do you feel that would affect your ability to remain

12   impartial in this case?

13           THE PROSPECTIVE JUROR:  I don't believe so.

14           MR. CANNON:  Okay.  Now, did you meet any people on

15   the sidewalk outside when you were coming into the courthouse

16   today?

17           THE PROSPECTIVE JUROR:  No.

18           MR. CANNON:  Any protestors?

19           THE PROSPECTIVE JUROR:  I saw protestors.  I did not

20   engage.

21           MR. CANNON:  You did not engage with them at all?

22           THE PROSPECTIVE JUROR:  Correct.

23           MR. CANNON:  You did not say anything to them?

24           THE PROSPECTIVE JUROR:  No.

25           MR. CANNON:  Did they say anything to you?

```
1              THE PROSPECTIVE JUROR:  I believe someone said good
2      morning.
3              MR. CANNON:  Say it again.
4              THE PROSPECTIVE JUROR:  I believe someone said good
5      morning to me.  I think it was to me.
6              THE COURT:  Good morning.
7              MR. CANNON:  Oh, good morning.  Okay.  And you didn't
8      respond?
9              THE PROSPECTIVE JUROR:  Correct.
10             THE COURT:  Was a leaflet or anything else handed to
11     you?
12             THE PROSPECTIVE JUROR:  No.
13             MR. CANNON:  I have no further questions, Judge.
14             THE COURT:  All right.
15             MR. DUNN:  I know I've already had one chance, Judge.
16     Could I have one more chance?
17             THE COURT:  It depends on your question.  As long as
18     it's a different one and not the same, and an appropriate one.
19             MR. DUNN:  It's a follow-up to one of his.  You say
20     you support reproductive health care?
21             THE PROSPECTIVE JUROR:  Yes.
22             MR. DUNN:  Doesn't reproduce mean to create more
23     babies, reproduce?
24             MR. PATEL:  Objection, Your Honor.
25             THE COURT:  Counsel, that's an inappropriate
```

1    question.  You don't have to answer it.

2              MR. DUNN:  I don't know how using the definition of

3    the term --

4              THE COURT:  Sir -- sir, it's an inappropriate

5    question.  You can sit down.  Thank you.

6              MR. DUNN:  I'll withdraw it.

7              THE COURT:  Sorry.  All right.  If there doesn't

8    appear to be anything else, let me excuse you at this time.

9    You're going to get further direction.  Okay?

10             (Prospective juror exited the courtroom.)

11             THE COURT:  You all seem to think that you can just

12   ask anything, ignore me.

13             MR. CANNON:  Say it again.

14             THE COURT:  A couple of you seem to think you can

15   just argue in front of the jurors, ask totally inappropriate

16   questions.  Reproductive health has a larger definition than

17   what you had proposed.  These are not appropriate questions.

18   And, frankly, you're starting to harass some of the jurors.

19             So I would be careful, sir, about what you do.  I've

20   made a ruling.  You have your question out there, and that's

21   it.  When I tell you it's inappropriate, I expect you to sit

22   down.  You can have a discussion at a later point, but it's not

23   appropriate.

24             I'm assuming that in courts where you usually

25   practice you do not act that way.  So let us move on to the

1    next question.  We're late.  Go ahead, sir.

2              MR. CANNON:  I just want to bring something to the

3    attention of the Court.  We're told by a couple of people in

4    the gallery here that this last juror got in a shouting match

5    with people on the sidewalk coming into the courthouse here.

6    She has denied that.

7              THE COURT:  Right.

8              MR. CANNON:  I think one of the people who would say

9    she observed it is here in the courtroom.  It, obviously, gives

10   me great concern.  I wonder if the Court might like to inquire

11   of that -- of that witness.

12             THE COURT:  Okay.  At what point did they get into

13   the shouting match?

14             MR. CANNON:  I'm just told it was sometime today.

15             THE COURT:  Okay.  Who is it?

16             MR. CANNON:  I think it may be Kristin Turner.  Is

17   that correct?

18             THE COURT:  And who is this?  Is this a -- is she

19   just simply watching it?  She's here as a group?

20             MR. CANNON:  She's part of a group.  She's here in

21   support of Lauren Handy.  They were having their -- whatever

22   their thing is out on the sidewalk.  I don't know anything

23   about it.  But, apparently, this lady got into it a little bit

24   with them.

25             I don't know anything other than what I'm hearing,

1    but Kristin Turner may be able to give you firsthand

2    information.

3            THE COURT:  Does the government have any issue or

4    anybody else with -- hearing from this witness as to what she

5    supposedly heard?

6            MR. PATEL:  Yes, Your Honor.

7            THE COURT:  Okay.

8            MR. PATEL:  The government would object to Ms. Turner

9    providing any testimony regarding whatever interaction she

10   witnessed outside.  Counsel had an opportunity to ask that

11   prospective juror whether or not they interacted with anybody

12   outside.  The juror answered the question.  She said, good

13   morning, and that was it.

14           To the extent that Ms. Turner may have some

15   additional information she may wish to add, I would bring to

16   the Court's attention that Ms. Turner -- she is some sort of an

17   executive member of one of the organizations who had been

18   advertising this trial and encouraging people to pack the

19   court.

20           So I don't know whether or not anything she would

21   have to say would be either, one, entirely accurate or, two,

22   whether or not it was individuals with her organization

23   solicited to come down to the court to offer support for

24   Ms. Handy.

25           Either way, the question was posed to the prospective

1     juror; she was under oath.  She answered the question.  She

2     said it was good morning, and that was it.  I don't think

3     there's any need to take additional testimony.

4            THE COURT:  Is she one of the ones handing out

5     pamphlets and leaflets this morning?

6            MR. PATEL:  I don't know.

7            THE COURT:  She's nodding her head yes.

8            THE COURT:  Okay.  I think at this point that I'll

9     take this under advisement.  We're near the end as to whether I

10    want to hear from anybody.  But, obviously, somebody who is

11    handing pamphlets out to prospective jurors -- although,

12    happily, so far we haven't gotten anybody who admits to getting

13    one of them -- certainly, the pamphlets are clearly meant to

14    influence the jurors and to do a jury nullification.  Yes, I

15    would view it that way.

16           They have a right to hand them out, but there is a

17    problem in terms of potentially influencing people with it.  So

18    I would just simply add that.  We heard what she had to say.  I

19    will take under advisement as to whether I think it's

20    appropriate to hear from somebody else, particularly -- she's

21    allowed to protest; she's allowed to hand things out.

22           However, I would just point out that, looking at what

23    was handed out, clearly was intended to influence the -- if you

24    handed it to jurors, there's no question about it.  I've read

25    it.  You can't possibly think of it as anything else.

1          So under those circumstances, I'll leave it at that

2     point and make a decision.  We're at the end of the day.  And I

3     will -- we'll hold on to this particular individual, and I'll

4     make a decision and tell you tomorrow morning.

5          MR. CANNON:  If I could very briefly address that,

6     Judge.  Obviously, I think if the juror is being untruthful

7     with the Court and there's some reason to think that it should

8     be looked at, it should be looked at.

9          The other thing I'd like to point out is it is my

10    understanding that the pamphlet the Court is aware of is not

11    the pamphlet that Ms. Turner had been handing out.

12         THE COURT:  So there's another one.  Oh, I'd love to

13    see it.  Please do hand it up.  Let me see what else has been

14    handed out.

15         MR. CANNON:  Apparently, she doesn't have it.  But

16    they took pains to point out to me when they found this

17    pamphlet, they said this is not something we've had anything to

18    do with.

19         THE COURT:  Okay.  I don't know what -- I didn't

20    realize that there was more than one.  But if somebody seems

21    to -- somebody seems to have one.  There it is.  Let's see what

22    it is.

23         Okay.  So this is a different -- this is a different

24    pamphlet, although I've seen variations of the theme with this

25    one in terms of the position.

1          It still, obviously, was intended to influence the

2     jury since, as a practical matter, we have no evidence so far.

3     I'm not suggesting the intent, if you saw my -- if you saw my

4     order, it was very clear, intent.  I don't have any problem,

5     but we don't have any facts -- listened to the video and

6     everything else -- that would support what's in the pamphlet,

7     leaving it aside one way or the other.

8          It clearly was intended to influence them.  There's

9     no way you would not view this as that.  Granted, it doesn't

10    indicate the evidence that, potentially, would be presented.

11    Although, it's presented as if this would be evidence that

12    should be presented at the trial.

13         It's neither here nor there at this point.  I'm

14    taking it under advisement.  We'll ask the juror to come back,

15    and I'll let you know in the morning what my position is.

16         MR. CANNON:  Okay.  One more thing for clarification,

17    Judge.  You've indicated that I've been somehow misusing or

18    overbroadly using reproductive health care.

19         THE COURT:  You've listened to me discussing the two

20    counsel, not you.

21         MR. CANNON:  Okay.

22         THE COURT:  I think I have stopped you on one or two

23    questions.  But, certainly, it's not in the sense of you

24    have -- whenever I have stopped you, you've stopped.  It cannot

25    be said for all counsel.

1          Government, and then we need to stop.

2          MR. CRABB:  Your Honor, may I just clarify one thing.

3     It's not entirely clear to us that anyone has a right to hand

4     out these pamphlets.  18 U.S.C. 1504 makes it a crime to try to

5     influence a juror.

6          THE COURT:  I said to you that handing out pamphlets

7     and protesting is not a problem.  I do think that this is

8     trying to influence the jury, so that's a different issue.

9          MR. CRABB:  That's the distinction we're trying to

10    make.  Thank you, Your Honor.

11         THE COURT:  All right.  Let me excuse all of you.

12    We're going to start at 9:00, if you would get here by quarter

13    of so we can get you all set up.  We will tell the jury and

14    the other -- we'll hold on to the people that we have not

15    excused, and the rest of the jurors will be asked to come back

16    tomorrow.  They go to the jury office and then come back to the

17    courtroom.  Sir?

18         MR. DUNN:  Judge, I don't recall you asking if there

19    were challenges for cause on the last prospective juror.  If

20    you did, I missed it.  I wanted to object for cause to the last

21    juror.

22         THE COURT:  Okay.  I assumed that -- without even

23    hearing from the other person; is that what you're saying?  We

24    could do this quickly -- or maybe not.  Excuse me.  Hold on a

25    second.

1           Leaving aside whether there's somebody else that

2    would say she was out there having a dispute with this last

3    juror, based on the answers she has given so far, is that why

4    you're asking to have her excused?

5           MR. DUNN:  Yes.

6           THE COURT:  Okay.  And what's the basis?

7           MR. DUNN:  She's the communications director for a

8    democratic congressman that puts out positions strongly

9    supporting abortion rights, aligning themselves with Planned

10   Parenthood.

11          Really, it's no different than if she was the

12   communications director of the United States Attorney's Office

13   or the communications director of the FBI in this case because

14   they're, obviously, all on the same side of this prosecution.

15   She can't be fair and impartial.

16          These are offenses that occurred at a Planned

17   Parenthood clinic involving Planned Parenthood people.  She's,

18   essentially, on their side.  Who can blame her?  I mean,

19   there's nothing wrong with the position she's in, but she can't

20   be fair and impartial.  Just because she said she can doesn't

21   mean she can be fair and impartial.

22          THE COURT:  Well, you can look at the other --

23   obviously, other indications in making that decision.  She has

24   indicated she can be fair and impartial.

25          Does the government want to respond to this?  Leaving

1    aside whatever it is that this other issue of somebody else

2    supposedly witnessing something, do you want to say anything in

3    response to his -- what he has indicated?

4          MR. PATEL:  Your Honor, the prospective juror made it

5    pretty clear that she could be fair and impartial and put her

6    views and her beliefs aside.  Thank you.

7          THE COURT:  I have to say that she indicated that her

8    views were espoused by the congresswoman; they're not

9    necessarily hers.  And she indicated that there were times when

10   she put out views that were not hers; that she made a

11   distinction.

12         The fact that she works for a democratic

13   congresswoman, by itself, goes nowhere.  Granted, that the

14   congresswoman is in favor of access to abortion rights,

15   obviously, that's something to consider.

16         But she indicated that -- and I don't know whether

17   you would necessarily assume that all media consultants

18   necessarily agree with all of the positions that the person

19   that they work with as opposed to some other issues, and she

20   doesn't have a particular subject matter.  She indicated the

21   things that she does, which do not include any kind of raising

22   money or any of that or in terms of the political aspect of it

23   where I would see, perhaps, more of an issue.

24         I think the fact that she works for a Democrat who

25   happens to believe in abortion rights, by itself, is

1    insufficient based on what she has said so far.

2              Her Planned Parenthood issues in terms of she has --

3    part of it is in terms of her viewing it as an access issue,

4    which is something that -- you know, her view in terms of

5    people having access.  That happens to be the law right now.

6              So I would not excuse her based on the answers she's

7    provided so far.  I'll take under advisement the other issue of

8    the other person that has supposedly seen other activity.

9              All right.  I will see you tomorrow at quarter to

10   9:00 in here so we can get all set up.  We'll continue.  At

11   this point we have 8 of 42.  Have a good evening everybody.

12              (The trial adjourned at 5:02 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

119

```
1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, TAMARA M. SEFRANEK, do hereby certify that the

4       above and foregoing constitutes a true and accurate transcript

5       of my stenographic notes and is a full, true, and complete

6       transcript of the proceedings to the best of my ability.

7                    Dated this 9th day of August, 2023.

8

9                         /s/ Tamara M. Sefranek_____
                          Tamara M. Sefranek, RMR, CRR, CRC
10                        Official Court Reporter
                          Room 6714
11                        333 Constitution Avenue, N.W.
                          Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**/**

**/s** [1] - 119:9

**0**

**0145** [1] - 96:19
**0425** [2] - 17:14, 22:9
**0460** [1] - 58:4
**0607** [1] - 86:3

**1**

**1** [1] - 94:1
**10** [3] - 39:14, 94:1, 94:4
**100** [1] - 90:4
**1050** [1] - 1:24
**11** [2] - 10:8, 59:16
**11-844** [1] - 1:13
**11th** [2] - 5:5, 36:10
**12** [1] - 24:21
**13** [2] - 81:10, 81:11
**1350** [1] - 2:3
**1368** [1] - 49:17
**14** [8] - 58:4, 58:6, 58:23, 59:1, 59:5, 86:4, 86:22, 88:2
**1413** [1] - 2:6
**1493** [1] - 81:10
**15** [1] - 39:14
**1504** [1] - 115:4
**16** [4] - 58:5, 58:25, 59:9
**1693** [2] - 77:17, 80:12
**16983** [1] - 1:19
**17** [11] - 58:5, 58:25, 59:1, 60:10, 62:10, 62:11, 77:17, 81:10, 83:4, 86:4, 87:23
**18** [3] - 18:10, 25:5, 115:4
**1862** [2] - 3:17
**18th** [1] - 71:8
**19** [3] - 34:25, 35:4, 35:5
**1992** [1] - 62:10
**1:22-CR-096** [1] - 1:3
**1st** [4] - 71:6, 71:13, 72:1, 72:4

**2**

**20** [5] - 39:10, 44:16, 49:18, 51:1, 98:17
**20001** [2] - 2:22, 119:11
**20004** [1] - 1:17
**20036** [2] - 1:25, 2:4
**2012** [1] - 5:15

**2014** [4] - 36:9, 36:12, 36:13, 37:20
**2016** [2] - 97:14, 106:21
**2017** [5] - 99:25, 100:2, 100:4, 100:5, 106:13
**2018** [6] - 100:1, 100:2, 100:4, 100:5, 106:13
**2019** [2] - 3:25, 5:15
**202-354-3246** [1] - 2:23
**2020** [3] - 4:1, 10:10, 44:1
**2021** [3] - 4:1, 99:24, 100:2
**2023** [2] - 1:6, 119:7
**20530** [1] - 1:14
**2055** [1] - 86:9
**20815** [1] - 2:8
**21** [7] - 49:18, 55:4, 62:10, 66:2, 96:19, 96:21, 100:4
**2112** [1] - 86:6
**21st** [1] - 100:4
**22** [7] - 10:5, 15:2, 15:12, 49:18, 55:21, 96:19, 99:20
**22314** [1] - 2:10
**23** [2] - 86:4, 88:18
**24** [2] - 96:19, 101:6
**25th** [2] - 71:16, 72:15
**26th** [3] - 70:7, 71:16, 72:15
**27th** [3] - 70:7, 71:14, 72:14
**28** [4] - 49:18, 56:19, 62:10, 69:18
**28th** [9] - 70:12, 70:17, 71:7, 71:15, 71:20, 72:1, 72:14, 72:18, 72:21
**2:05** [1] - 1:6

**3**

**308** [1] - 2:3
**309B** [1] - 49:24
**31** [2] - 86:4, 90:12
**33** [6] - 17:15, 17:16, 17:17, 23:17
**333** [2] - 2:22, 119:11
**34** [2] - 35:1, 49:18
**35** [1] - 17:15
**370th** [1] - 1:19
**3712** [1] - 2:8
**38803** [1] - 1:22

**4**

**42** [1] - 118:11
**4506** [1] - 1:21
**48708** [1] - 2:6
**4:00** [1] - 80:13
**4th** [1] - 1:13

**5**

**5** [5] - 86:3, 86:5, 97:9, 97:11
**50** [2] - 3:3, 3:14
**500** [1] - 1:25
**51525** [1] - 1:19
**555** [1] - 1:13
**5:02** [1] - 118:12

**6**

**600** [2] - 2:10, 50:2
**6714** [2] - 2:21, 119:10

**8**

**8** [2] - 94:5, 118:11
**818** [1] - 34:25
**8E** [3] - 49:18, 49:21

**9**

**9** [1] - 1:6
**950** [1] - 1:16
**9:00** [2] - 115:12, 118:10
**9th** [1] - 119:7

**A**

**ability** [7] - 4:17, 15:15, 35:8, 51:12, 52:23, 107:11, 119:6
**able** [36] - 14:4, 15:12, 23:1, 25:2, 26:16, 28:1, 28:8, 29:14, 31:25, 32:10, 35:20, 37:13, 38:4, 39:15, 47:6, 47:8, 53:7, 53:12, 54:6, 67:17, 70:15, 71:3, 72:24, 73:11, 75:15, 81:9, 92:23, 93:10, 93:13, 95:10, 95:18, 97:10, 98:3, 98:4, 105:7, 111:1
**aborting** [1] - 92:9
**abortion** [44] - 4:12, 8:24, 9:2, 9:7, 9:8, 15:17, 15:19, 16:1, 16:12, 51:3, 51:4,

51:6, 51:11, 51:19, 52:1, 52:6, 52:19, 53:9, 55:8, 66:6, 75:7, 90:20, 91:1, 91:6, 91:9, 91:14, 91:25, 92:5, 92:7, 92:24, 96:25, 97:20, 97:21, 97:22, 98:6, 100:17, 102:24, 103:2, 103:5, 103:25, 104:3, 116:9, 117:14, 117:25
**abortions** [2] - 56:5, 92:16
**absolutely** [3] - 14:3, 73:1, 105:4
**accent** [1] - 33:11
**accept** [4] - 9:2, 23:9, 23:24, 24:5
**accepted** [1] - 22:23
**access** [29] - 6:9, 6:17, 8:24, 9:3, 9:8, 9:9, 9:10, 9:16, 9:23, 12:23, 15:17, 15:18, 16:1, 16:8, 52:19, 53:8, 56:4, 75:7, 91:10, 100:17, 101:2, 106:16, 106:19, 106:25, 107:3, 107:8, 117:14, 118:3, 118:5
**according** [3] - 90:19, 104:1, 104:2
**account** [2] - 67:5, 74:2
**accurate** [7] - 52:10, 65:23, 65:25, 66:1, 111:21, 119:4
**accused** [8] - 9:10, 18:11, 25:7, 46:22, 47:24, 75:11, 107:7, 107:8
**acknowledged** [3] - 12:22, 14:24, 32:24
**acknowledgments** [1] - 13:24
**act** [2] - 16:22, 109:25
**acting** [1] - 104:23
**Action** [1] - 1:2
**activity** [1] - 118:8
**actual** [1] - 88:9
**add** [5] - 43:18, 43:19, 81:14, 111:15, 112:18
**addition** [1] - 44:12
**additional** [4] - 21:22, 70:25, 111:15, 112:13
**additionally** [1] - 39:4
**address** [4] - 5:4,

86:9, 86:10, 113:5
**addressed** [1] - 41:18
**addresses** [2] - 50:17, 60:22
**adjourned** [1] - 118:12
**admits** [1] - 112:12
**advance** [1] - 89:18
**advertising** [1] - 111:18
**advice** [4] - 65:4, 65:16, 84:4, 84:7
**advisement** [4] - 112:9, 112:19, 114:14, 118:7
**advocates** [3] - 55:6, 66:4, 96:23
**affect** [13] - 4:12, 4:17, 15:6, 15:15, 16:14, 36:17, 44:3, 44:23, 63:22, 76:17, 79:15, 97:25, 107:11
**affected** [4] - 15:8, 35:7, 35:12, 45:22
**affiliated** [1] - 97:4
**affiliation** [1] - 97:23
**affirmatively** [1] - 75:23
**affirmed** [1] - 31:22
**afford** [1] - 99:19
**afternoon** [20] - 3:2, 3:4, 3:22, 3:23, 4:23, 4:25, 11:8, 19:2, 43:3, 43:4, 45:18, 45:20, 61:6, 69:21, 79:19, 84:17, 91:19, 91:20, 102:8, 102:17
**AFTERNOON** [2] - 1:7, 1:8
**agencies** [1] - 103:11
**agency** [9] - 26:14, 26:15, 26:16, 27:6, 81:13, 81:21, 81:22, 81:23, 83:16
**agnostic** [1] - 51:19
**ago** [2] - 36:8, 43:21
**agree** [5] - 17:20, 18:25, 19:22, 37:9, 117:18
**agreed** [1] - 88:21
**agreement** [7] - 88:19, 88:20, 88:21, 89:4, 90:8, 94:12, 95:6
**agreements** [3] - 88:25, 93:18, 95:8
**agrees** [2] - 15:20, 19:24
**ahead** [8] - 22:4, 33:18, 43:1, 43:19, 49:11, 50:15, 77:13, 110:1

**Alexandria** [4] - 2:10, 49:25, 50:2, 50:3
**ALFRED** [1] - 2:2
**Alfred** [1] - 2:2
**aligning** [1] - 116:9
**allegations** [1] - 92:15
**alleged** [2] - 42:13, 92:16
**allow** [1] - 31:4
**allowed** [3] - 91:6, 112:21
**allowing** [1] - 3:18
**almost** [2] - 46:15, 46:19
**alone** [2] - 93:14, 94:15
**Alphonse** [1] - 48:18
**alternate** [4] - 73:1, 73:5, 101:15, 101:22
**alternatively** [2] - 32:4, 32:14
**AMERICA** [1] - 1:2
**American** [1] - 39:21
**amount** [1] - 38:17
**analytical** [3] - 15:3, 15:5, 15:11
**answer** [22] - 10:18, 14:5, 15:5, 15:8, 19:19, 20:13, 20:20, 24:8, 25:12, 25:13, 35:23, 38:23, 41:22, 44:6, 44:9, 44:25, 47:13, 49:2, 51:16, 88:14, 88:15, 109:1
**answered** [5] - 31:23, 35:14, 46:3, 111:12, 112:1
**answers** [14] - 16:10, 21:8, 29:23, 33:21, 34:6, 34:9, 34:11, 49:2, 49:13, 65:15, 86:2, 106:24, 116:3, 118:6
**anyway** [2] - 13:18, 33:13
**apart** [1] - 64:6
**apologize** [1] - 14:21
**appear** [4] - 17:22, 33:20, 65:15, 109:8
**apply** [4] - 24:3, 32:1, 32:13, 78:15
**applying** [1] - 4:11
**appreciate** [2] - 9:19, 33:4, 73:21
**approach** [2] - 33:6, 47:23
**approached** [1] - 45:10
**appropriate** [8] - 48:21, 49:3, 76:12,

105:2, 108:18, 109:17, 109:23, 112:20
**approved** [1] - 88:20
**arbiter** [1] - 11:18
**area** [5] - 63:5, 77:24, 79:6, 86:7, 86:8
**areas** [1] - 99:2
**Argon** [1] - 85:4
**argue** [1] - 109:15
**arrangements** [3] - 71:12, 73:1, 73:5
**arrested** [4] - 35:6, 35:10, 35:25, 82:19
**arrival** [1] - 79:22
**arrived** [1] - 45:10
**aside** [11] - 9:21, 53:21, 54:6, 54:23, 68:20, 91:13, 102:11, 114:7, 116:1, 117:1, 117:6
**aspect** [6] - 7:12, 55:6, 66:5, 96:23, 98:25, 117:22
**assay** [1] - 6:15
**assess** [5] - 4:7, 4:18, 6:3, 93:10, 94:11
**assessed** [1] - 95:9
**assessment** [1] - 102:13
**assigned** [1] - 105:19
**associated** [1] - 60:21
**association** [1] - 79:14
**assume** [11] - 6:8, 8:5, 42:17, 43:12, 44:12, 60:13, 71:9, 71:10, 72:17, 72:21, 117:17
**assumed** [4] - 41:21, 42:11, 100:16, 115:22
**assuming** [9] - 35:1, 48:6, 61:22, 71:25, 72:19, 77:4, 85:18, 89:22, 109:24
**astonished** [1] - 21:14
**atmosphere** [1] - 76:11
**attack** [1] - 6:4
**attend** [1] - 25:24
**attention** [8] - 28:8, 28:10, 29:1, 29:14, 30:17, 30:21, 30:22, 32:10, 34:5, 39:4, 71:24, 72:23, 73:2, 73:6, 86:16, 86:18, 110:3, 111:16
**attitudes** [1] - 46:4
**attorney** [3] - 59:15, 60:11, 60:12

**Attorney's** [3] - 1:12, 43:13, 116:12
**attorneys** [9] - 64:3, 64:6, 64:10, 64:16, 64:19, 65:4, 65:8, 65:17, 75:10
**August** [4] - 1:6, 71:7, 71:8, 119:7
**Avenue** [6] - 1:16, 1:24, 2:3, 2:6, 2:22, 119:11
**aware** [10] - 7:13, 9:12, 9:17, 14:7, 16:21, 16:22, 21:3, 59:8, 60:9, 113:10

## B

**babies** [1] - 108:23
**background** [1] - 78:25
**backup** [1] - 101:18
**bad** [1] - 91:9
**balances** [1] - 37:16
**base** [1] - 76:4
**based** [17] - 20:20, 21:8, 32:12, 36:20, 37:20, 38:6, 44:6, 65:14, 76:21, 92:13, 93:11, 93:14, 104:19, 105:25, 116:3, 118:1, 118:6
**basis** [3] - 21:9, 55:18, 116:6
**Bay** [1] - 2:6
**became** [1] - 34:8
**become** [1] - 7:13
**becoming** [1] - 33:7
**BEFORE** [1] - 1:9
**begin** [2] - 8:6, 33:14
**beginning** [1] - 71:2
**behalf** [3] - 12:9, 46:12, 105:5
**belief** [1] - 106:19
**beliefs** [11] - 51:10, 52:25, 53:1, 53:3, 90:13, 90:14, 98:14, 98:20, 102:11, 104:20, 117:6
**believes** [3] - 15:12, 15:18, 15:24
**belong** [1] - 55:4, 66:3, 96:22, 97:4
**benefit** [1] - 21:17
**best** [2] - 95:1, 119:6
**better** [5] - 14:5, 31:1, 76:16, 78:15, 89:10
**between** [2] - 27:22, 36:20
**beyond** [4] - 23:5,

23:21, 70:25, 102:5
**bias** [6] - 10:6, 14:22, 15:1, 15:9, 15:13, 15:14
**biased** [1] - 15:10
**biases** [6] - 10:5, 10:8, 14:7, 15:2, 15:6, 16:21
**bill** [1] - 79:12
**bills** [2] - 28:20, 32:8
**bio** [1] - 6:12
**bioengineering** [3] - 5:11, 5:13, 5:18
**bioinformatician** [2] - 6:11, 6:13
**biological** [1] - 6:14
**biology** [1] - 6:14
**biostatistics** [1] - 5:21
**bit** [12] - 6:5, 17:11, 27:19, 33:8, 45:21, 73:24, 76:9, 80:19, 84:25, 93:1, 106:2, 110:23
**blame** [1] - 116:18
**blanket** [1] - 15:10
**BLERINA** [1] - 1:23
**block** [1] - 9:16
**blocking** [1] - 9:10
**blocks** [1] - 86:11
**blood** [1] - 7:7
**Boeing** [1] - 85:5
**Boston** [1] - 70:11
**box** [9] - 17:4, 34:18, 49:7, 49:8, 57:21, 62:2, 77:9, 81:3, 85:22
**Box** [1] - 1:21
**BOYLE** [1] - 1:23
**Boyle** [1] - 1:24
**break** [1] - 80:10
**briefly** [1] - 113:5
**bring** [9] - 3:16, 21:25, 22:1, 39:4, 41:8, 42:22, 105:3, 110:2, 111:15
**bringing** [2] - 40:9, 42:21
**broad** [2] - 99:2, 103:23
**broader** [1] - 106:22
**broadly** [1] - 65:14
**brought** [4] - 12:23, 33:25, 42:1, 52:4
**Building** [1] - 1:12
**building** [3] - 5:4, 5:8, 86:14
**bus** [1] - 95:2

## C

**Cameron** [3] - 2:10, 49:24, 50:2
**Campaign** [2] - 55:10, 55:19
**campaign** [1] - 103:14
**cancer** [1] - 6:3
**CANNON** [120] - 1:18, 3:7, 4:23, 5:1, 5:7, 5:10, 5:13, 5:16, 5:18, 5:22, 5:25, 6:3, 6:7, 6:12, 6:19, 6:22, 7:2, 7:5, 7:9, 7:11, 7:16, 7:19, 8:1, 8:5, 8:9, 8:11, 8:14, 8:17, 8:22, 9:1, 9:6, 9:14, 9:18, 9:25, 10:9, 10:14, 10:17, 10:20, 10:23, 11:1, 11:4, 11:23, 12:4, 12:8, 12:16, 13:6, 13:15, 14:8, 14:12, 20:3, 20:6, 20:11, 20:14, 20:22, 29:10, 31:6, 31:18, 32:18, 45:18, 45:21, 46:1, 46:17, 46:20, 47:6, 47:8, 47:23, 48:3, 48:15, 48:24, 54:13, 55:16, 57:3, 57:11, 61:15, 73:21, 74:1, 74:5, 74:8, 74:16, 74:21, 74:24, 75:4, 75:9, 75:22, 76:7, 76:14, 76:24, 80:5, 80:21, 82:7, 85:14, 95:23, 96:6, 106:1, 106:4, 106:7, 106:9, 106:12, 106:15, 106:23, 106:25, 107:6, 107:14, 107:18, 107:21, 107:23, 107:25, 108:3, 108:7, 108:13, 109:13, 110:2, 110:8, 110:14, 110:16, 110:20, 113:5, 113:15, 114:16, 114:21
**cannot** [4] - 16:2, 25:24, 31:21, 114:24
**capable** [2] - 75:18, 75:22
**capacity** [1] - 103:8
**Cardiff** [1] - 2:8
**care** [27] - 9:3, 9:23, 12:23, 16:12, 19:10, 27:5, 28:20, 32:8,

51:10, 55:7, 55:23, 56:5, 66:5, 69:22, 96:24, 97:22, 98:5, 99:17, 99:22, 101:3, 106:17, 107:3, 107:8, 107:9, 108:20, 114:18
**career** [1] - 21:4
**careful** [1] - 109:19
**caregiver** [2] - 26:1, 26:10
**caregivers** [2] - 19:8, 19:11
**carjacked** [1] - 43:21
**carjacking** [7] - 36:4, 36:6, 36:15, 36:21, 43:6, 44:13, 45:23
**carries** [1] - 38:8
**Carson** [1] - 1:19
**case** [83] - 4:14, 4:19, 9:7, 13:8, 15:16, 15:23, 16:24, 18:3, 18:6, 18:8, 19:19, 20:18, 22:12, 23:5, 23:21, 24:22, 25:9, 25:18, 25:25, 26:19, 27:21, 28:8, 28:10, 32:10, 32:21, 35:8, 35:13, 36:18, 37:13, 37:18, 37:20, 38:2, 38:9, 38:19, 40:2, 41:23, 42:12, 42:16, 43:9, 43:16, 44:4, 44:13, 44:21, 51:3, 51:4, 51:13, 53:12, 54:24, 59:12, 59:14, 63:15, 69:15, 71:7, 71:25, 75:4, 75:6, 75:20, 76:3, 76:19, 76:21, 79:16, 79:22, 80:15, 85:7, 85:10, 87:21, 91:9, 92:15, 92:16, 97:21, 98:1, 98:12, 102:12, 103:16, 104:10, 104:11, 107:7, 107:12, 116:13
**cases** [7] - 42:5, 59:20, 59:23, 60:2, 63:11, 64:11, 88:15
**catchall** [1] - 35:1
**category** [4] - 35:24, 60:14, 98:21
**Catholic** [5] - 51:17, 51:18, 51:20, 52:4, 52:5
**caught** [4] - 36:25, 37:3, 43:22, 44:15
**cells** [3] - 7:3, 7:13
**Center** [2] - 1:12, 2:6

**center** [1] - 57:21
**certain** [1] - 91:10
**certainly** [11] - 13:4, 42:12, 49:3, 64:20, 75:18, 94:10, 101:2, 103:25, 107:4, 112:13, 114:23
**CERTIFICATE** [1] - 119:1
**certify** [1] - 119:3
**cetera** [2] - 13:12
**chair** [8] - 17:8, 49:13, 57:24, 62:6, 77:14, 81:7, 85:25, 96:14
**challenge** [1] - 16:7
**challenges** [1] - 115:19
**chance** [2] - 108:15, 108:16
**changed** [2] - 24:9, 52:3
**charged** [6] - 16:9, 25:9, 37:3, 46:9, 76:10, 103:21
**charges** [2] - 25:20, 41:25
**Chase** [1] - 2:8
**chatted** [1] - 39:14
**check** [4] - 10:8, 72:8, 72:22, 97:10
**checks** [3] - 74:2, 74:9, 74:18
**Chevy** [1] - 2:8
**children** [1] - 32:9
**choice** [1] - 103:3
**choices** [2] - 70:14, 70:16
**Christian** [1] - 90:18
**church** [2] - 52:5
**circumstances** [1] - 113:1
**city** [2] - 82:5, 82:10
**City** [1] - 2:6
**civil** [1] - 60:25
**Civil** [1] - 1:16
**clarification** [1] - 114:16
**clarify** [1] - 115:2
**clear** [8] - 9:21, 21:20, 33:7, 34:10, 51:4, 114:4, 115:3, 117:5
**clearly** [11] - 15:3, 15:10, 21:2, 31:15, 31:20, 32:11, 32:19, 41:23, 112:13, 112:23, 114:8
**clerk** [2] - 21:24, 34:19
**clerk's** [1] - 59:7
**clerked** [1] - 59:6
**clients** [6] - 21:15,

21:17, 75:9, 75:16, 78:16, 78:23
**clinic** [3] - 16:11, 76:8, 116:17
**Clinic** [2] - 5:2, 86:6
**clinics** [2] - 51:6, 104:4
**close** [31] - 9:11, 18:11, 25:6, 25:17, 34:13, 35:5, 35:11, 35:16, 55:4, 55:22, 58:6, 59:10, 60:11, 62:11, 62:12, 66:3, 77:18, 77:21, 77:22, 81:11, 81:12, 83:5, 83:7, 86:23, 87:23, 96:21, 97:1, 99:21, 104:17
**closest** [1] - 79:11
**co** [1] - 39:12
**co-worker** [1] - 39:12
**colleagues** [5] - 77:21, 78:6, 78:7, 78:23, 78:24
**collecting** [1] - 68:16
**COLLEEN** [1] - 1:9
**college** [2] - 39:22, 70:1
**color** [3] - 13:10, 16:16, 91:15
**Colorado** [1] - 5:14
**Columbia** [3] - 15:25, 16:8, 43:7
**COLUMBIA** [1] - 1:1
**comfortable** [7] - 14:8, 17:8, 32:19, 32:22, 34:9, 57:25, 93:13
**coming** [4] - 33:4, 76:2, 107:15, 110:5
**commenting** [1] - 105:22
**committed** [3] - 93:12, 101:10, 101:11
**committing** [1] - 103:21
**communications** [5] - 102:20, 102:22, 116:7, 116:12, 116:13
**community** [1] - 84:14
**companies** [1] - 6:15
**company** [11] - 39:20, 64:18, 79:11, 83:18, 83:19, 83:21, 83:24, 84:1, 84:4, 85:2, 85:4
**compelling** [2] - 95:14
**complete** [1] - 119:5
**completely** [4] - 45:7,

54:9, 54:12, 54:15, 54:18, 76:2
**conceivable** [1] - 104:11
**concern** [9] - 16:7, 26:23, 27:8, 32:25, 33:9, 33:20, 34:6, 107:2, 110:10
**concerned** [5] - 22:20, 26:4, 26:25, 38:3, 46:7
**concerns** [1] - 29:12
**conclusion** [2] - 95:16, 95:19
**conclusions** [1] - 89:23
**confident** [2] - 93:10, 93:15
**confirm** [2] - 72:8, 72:11
**conflict** [1] - 90:20
**Congressional** [1] - 105:23
**congressman** [1] - 116:8
**congressmen** [1] - 103:10
**congresswoman** [7] - 102:20, 104:24, 105:6, 105:13, 117:8, 117:13, 117:14
**congresswoman's** [2] - 102:23, 105:14
**conjunction** [1] - 98:11
**connected** [5] - 58:16, 64:17, 79:9, 81:24, 87:19
**Connecticut** [2] - 1:24, 2:3
**connection** [1] - 81:21
**consider** [8] - 23:1, 23:3, 53:20, 94:11, 94:19, 95:19, 100:15, 117:15
**consideration** [5] - 13:10, 16:15, 16:16, 79:15, 97:25
**considered** [3] - 38:21, 46:19, 48:20
**considering** [1] - 38:18
**conspired** [1] - 9:16
**constitutes** [1] - 119:4
**Constitution** [2] - 2:22, 119:11
**consultant** [2] - 104:24, 105:10
**consultants** [1] -

117:17
**consulting** [5] - 64:22, 64:23, 65:3, 65:10, 78:9
**Cont** [1] - 2:1
**continue** [3] - 40:23, 99:6, 118:10
**contracts** [1] - 65:13
**contradictory** [1] - 34:11
**contribute** [9] - 13:19, 16:14, 66:9, 66:19, 68:5, 74:24, 96:22, 97:4, 99:5
**contributed** [7] - 3:25, 4:16, 8:2, 13:11, 66:10, 97:5, 97:8
**contributes** [3] - 66:4, 67:16, 68:4
**contributing** [3] - 55:5, 67:17, 98:10
**contribution** [6] - 66:19, 66:20, 66:24, 67:2, 68:4, 68:12
**contributions** [2] - 74:6, 103:12
**control** [1] - 13:16
**conversation** [2] - 65:18, 99:7
**conversations** [1] - 79:14
**convicted** [6] - 35:6, 35:11, 35:25, 37:3, 46:21, 95:3
**conviction** [2] - 14:1, 75:12
**cooperate** [1] - 94:13
**cooperating** [2] - 93:18, 95:9
**cooperation** [2] - 88:19, 88:23
**corporate** [8] - 64:3, 64:6, 64:10, 64:16, 65:16, 78:4, 78:5, 78:13
**correct** [58] - 4:2, 4:10, 7:18, 8:22, 8:25, 9:5, 10:19, 16:7, 22:12, 31:1, 35:14, 37:4, 44:14, 50:12, 50:13, 52:7, 52:8, 52:15, 52:20, 53:10, 53:15, 55:20, 59:24, 59:25, 60:14, 65:6, 65:19, 68:7, 72:13, 74:4, 79:3, 84:24, 86:21, 87:11, 88:17, 90:10, 90:11, 91:1, 91:2, 92:12, 97:12, 97:17, 100:7,

100:8, 100:11,
100:21, 100:23,
101:25, 102:2,
102:15, 102:21,
102:25, 103:2,
103:6, 103:9,
107:22, 108:9,
110:17
**correctly** [7] - 3:24,
5:2, 10:2, 37:16,
43:15, 61:7, 91:25
**corroboration** [1] -
95:11
**couched** [1] - 52:21
**Counsel** [1] - 12:15
**counsel** [22] - 3:19,
4:22, 12:3, 18:22,
20:2, 21:14, 29:9,
32:16, 40:19, 42:25,
58:25, 59:13, 61:14,
63:12, 80:4, 83:20,
85:13, 108:25,
111:10, 114:20,
114:25
**counties** [1] - 82:11
**county** [2] - 82:12,
101:14
**couple** [9] - 12:17,
13:13, 55:2, 73:23,
91:21, 93:16,
106:25, 109:14,
110:3
**course** [5] - 20:11,
21:4, 73:7, 75:9,
103:16
**court** [21] - 6:6, 45:9,
59:2, 63:11, 64:11,
79:21, 80:11, 84:10,
84:15, 87:7, 87:9,
87:10, 87:12, 87:13,
87:16, 87:19, 88:20,
98:6, 101:14,
111:19, 111:23
**Court** [24] - 2:8, 2:19,
2:21, 14:18, 16:3,
17:20, 21:2, 40:23,
41:2, 41:14, 41:19,
43:10, 43:11, 56:21,
56:22, 58:7, 58:8,
86:24, 86:25, 110:3,
110:10, 113:7,
113:10, 119:10
**COURT** [414] - 1:1,
3:2, 3:8, 3:10, 3:14,
3:21, 4:22, 6:5, 7:23,
10:18, 11:5, 11:7,
11:22, 11:24, 12:3,
12:5, 12:11, 12:14,
13:3, 13:7, 14:2,
14:11, 14:13, 14:20,

16:5, 17:3, 17:7,
17:10, 17:17, 18:1,
18:4, 18:7, 18:14,
18:18, 18:20, 18:22,
18:25, 19:15, 19:18,
19:25, 20:2, 20:5,
20:8, 20:12, 20:16,
20:24, 21:10, 22:4,
22:7, 22:14, 22:18,
23:16, 24:2, 24:8,
24:12, 25:4, 25:12,
25:15, 25:22, 26:3,
26:7, 26:10, 26:13,
26:16, 26:20, 26:23,
26:25, 27:3, 27:8,
27:15, 27:19, 29:9,
29:11, 29:17, 29:20,
29:25, 30:3, 30:7,
30:10, 30:14, 30:19,
30:25, 31:3, 31:7,
31:11, 31:13, 31:16,
31:19, 32:16, 33:17,
33:20, 34:16, 34:21,
34:24, 35:4, 35:16,
35:19, 35:23, 36:3,
36:5, 36:8, 36:11,
36:13, 36:15, 36:24,
37:2, 37:6, 37:8,
37:12, 37:17, 37:24,
38:3, 38:7, 38:12,
38:15, 38:19, 38:23,
38:25, 39:7, 39:13,
39:16, 39:18, 39:20,
39:23, 40:1, 40:5,
40:18, 40:25, 41:3,
41:6, 41:10, 41:16,
41:21, 42:20, 42:24,
45:17, 47:12, 47:20,
48:5, 48:9, 48:14,
48:17, 48:23, 48:25,
49:6, 49:11, 49:17,
49:21, 50:1, 50:5,
50:7, 50:11, 50:14,
50:21, 50:24, 51:1,
51:15, 51:22, 52:3,
52:8, 52:13, 52:17,
52:21, 53:5, 53:11,
53:16, 54:3, 54:10,
54:16, 54:22, 55:1,
55:11, 55:14, 55:18,
55:21, 56:1, 56:4,
56:9, 56:11, 56:14,
56:17, 56:24, 57:2,
57:4, 57:7, 57:14,
57:16, 57:20, 57:24,
58:4, 58:10, 58:12,
58:15, 58:18, 58:22,
58:25, 59:5, 59:9,
59:17, 59:20, 59:22,
60:1, 60:4, 60:7,
60:10, 60:19, 60:24,

61:5, 61:14, 61:16,
61:20, 61:22, 61:25,
62:6, 62:15, 62:18,
62:22, 62:25, 63:6,
63:10, 63:17, 63:25,
64:5, 64:9, 64:16,
64:21, 64:24, 65:3,
65:7, 65:14, 65:20,
65:23, 65:25, 66:2,
66:8, 66:12, 66:17,
66:23, 67:4, 67:7,
67:15, 67:19, 67:24,
68:3, 68:8, 68:14,
68:19, 69:3, 69:8,
69:11, 69:18, 70:2,
70:5, 70:9, 70:12,
70:19, 70:23, 71:4,
71:17, 71:20, 72:5,
72:11, 72:16, 73:4,
73:8, 73:11, 73:14,
73:17, 73:20, 76:12,
76:25, 77:4, 77:7,
77:13, 77:22, 78:2,
78:6, 78:11, 78:17,
78:19, 79:1, 79:5,
79:8, 79:13, 79:18,
80:4, 80:6, 80:10,
80:18, 80:23, 80:25,
81:2, 81:7, 81:17,
81:20, 81:23, 82:1,
82:4, 82:8, 82:13,
82:16, 82:21, 83:4,
83:10, 83:12, 83:15,
83:20, 83:23, 84:1,
84:3, 84:9, 84:16,
84:25, 85:9, 85:13,
85:15, 85:18, 85:21,
85:25, 86:10, 86:13,
86:19, 86:22, 87:2,
87:4, 87:7, 87:10,
87:12, 87:15, 87:18,
87:23, 88:3, 88:6,
88:8, 88:12, 88:14,
88:18, 89:7, 89:13,
89:16, 90:6, 90:12,
90:25, 91:3, 91:18,
92:25, 93:5, 95:22,
95:24, 96:3, 96:7,
96:10, 96:14, 96:19,
97:3, 97:7, 97:11,
97:13, 97:15, 97:18,
98:4, 98:8, 98:25,
99:13, 99:20, 100:2,
100:5, 100:9,
100:12, 100:19,
100:25, 101:6,
101:17, 101:20,
101:22, 102:1,
102:3, 102:7,
103:18, 103:23,
104:5, 104:23,

105:10, 105:18,
105:25, 108:6,
108:10, 108:14,
108:17, 108:25,
109:4, 109:7,
109:11, 109:14,
110:7, 110:12,
110:15, 110:18,
111:3, 111:7, 112:4,
112:7, 112:8,
113:12, 113:19,
114:19, 114:22,
115:6, 115:11,
115:22, 116:6,
116:22, 117:7, 119:1
**Court's** [3] - 14:23,
15:7, 111:16
**court-approved** [1] -
88:20
**courthouse** [4] - 26:2,
85:7, 107:15, 110:5
**Courthouse** [1] - 2:21
**courtroom** [29] - 12:2,
17:2, 18:9, 19:17,
21:24, 22:3, 30:18,
30:20, 31:12, 34:15,
41:11, 42:23, 48:13,
49:5, 57:6, 57:19,
61:19, 61:24, 76:6,
77:3, 77:6, 80:9,
85:17, 85:20, 96:2,
96:9, 109:10, 110:9,
115:17
**COURTROOM** [1] -
3:9
**Courtroom** [1] - 39:10
**courtroom)** [1] - 81:1
**courts** [10] - 10:6,
58:7, 58:16, 58:23,
59:3, 86:24, 86:25,
87:5, 109:24
**cousins** [3] - 62:24,
63:1, 63:19
**covers** [4] - 73:18,
100:10, 105:19,
105:21
**CRABB** [67] - 1:11,
3:20, 3:22, 3:24, 4:3,
4:7, 4:11, 4:16, 4:21,
12:13, 14:17, 14:21,
40:22, 41:2, 41:4,
41:12, 41:18, 42:19,
43:3, 43:5, 43:9,
43:12, 43:15, 43:19,
43:24, 44:2, 44:8,
44:12, 44:18, 44:25,
45:3, 45:6, 45:9,
45:13, 45:16, 48:20,
61:6, 61:10, 61:13,
61:21, 79:19, 79:21,

79:24, 80:2, 91:19,
91:21, 91:24, 92:4,
92:13, 92:18, 92:21,
93:4, 93:8, 93:16,
93:21, 93:24, 94:2,
94:6, 94:9, 94:15,
94:21, 95:5, 95:16,
95:21, 96:5, 115:2,
115:9
**Crabb** [2] - 11:9, 46:3
**CRAMPTON** [1] - 1:20
**CRC** [2] - 2:20, 119:9
**create** [2] - 32:7,
108:22
**created** [1] - 76:9
**credibility** [2] - 89:23,
94:12
**crime** [16] - 18:12,
25:7, 25:8, 25:9,
35:7, 35:11, 36:16,
38:18, 45:22, 47:24,
47:25, 92:19, 93:12,
101:10, 101:11,
115:4
**crimes** [1] - 46:9
**criminal** [16] - 36:22,
38:11, 38:12, 59:10,
59:12, 59:14, 59:20,
59:23, 60:25, 63:7,
63:8, 64:7, 65:23,
77:24, 79:6
**Criminal** [2] - 1:2, 1:16
**criminals** [3] - 46:16,
46:19, 46:22
**CRR** [2] - 2:20, 119:9
**CRT** [1] - 1:15
**curious** [1] - 42:4

## D

**D.C** [8] - 1:5, 43:11,
58:14, 83:13, 83:14,
86:7, 99:24, 119:11
**Dakota** [1] - 101:14
**data** [4] - 6:16, 7:17,
7:19, 78:15
**date** [6] - 70:6, 71:15,
72:8, 72:10, 72:12
**Dated** [1] - 119:7
**daughter** [4] - 70:1,
71:12, 72:22, 73:12
**days** [5] - 69:19,
69:20, 70:22, 70:24,
72:17
**DC** [5] - 1:14, 1:17,
1:25, 2:4, 2:22
**deal** [2] - 33:1, 78:19
**dealing** [2] - 9:9,
47:10
**dealings** [1] - 65:8

**dealt** [3] - 43:12, 44:7, 82:18
**debate** [1] - 99:5
**deceased** [1] - 59:16
**decide** [4] - 23:1, 23:4, 42:7, 93:11
**decided** [2] - 53:8, 89:18
**deciding** [2] - 24:4, 38:20
**decision** [21] - 4:11, 4:13, 24:21, 25:1, 40:14, 42:20, 47:5, 47:15, 54:7, 54:24, 66:19, 76:4, 89:17, 91:13, 93:14, 98:18, 98:22, 101:9, 113:2, 113:4, 116:23
**decisions** [6] - 22:8, 22:23, 23:8, 23:20, 53:8, 69:14
**deeply** [2] - 51:11, 98:14
**Defendant** [5] - 1:18, 2:2, 2:5, 2:7, 2:9
**defendants** [8] - 4:8, 12:9, 24:23, 41:24, 42:13, 46:12, 75:10, 107:7
**Defendants** [1] - 1:7
**defending** [1] - 59:23
**Defense** [1] - 7:17
**defense** [15] - 3:18, 4:22, 42:25, 56:22, 57:2, 58:25, 59:11, 59:13, 59:14, 59:17, 61:14, 73:20, 85:13, 95:22
**define** [3] - 25:8, 37:25, 56:9
**definitely** [2] - 50:21, 69:19
**definition** [2] - 109:2, 109:16
**defund** [1] - 99:8
**degree** [1] - 42:3
**deliberate** [3] - 29:3, 53:21, 102:12
**deliberating** [2] - 24:20, 40:8
**deliberations** [2] - 71:24, 76:17
**deliver** [1] - 78:16
**delivered** [1] - 78:14
**delivery** [3] - 5:20, 5:23, 5:24
**Democrat** [1] - 117:24
**Democratic** [1] - 102:20
**democratic** [2] -

116:8, 117:12
**demonstrated** [1] - 31:21
**demonstrates** [1] - 32:2
**denied** [1] - 110:6
**DENNIS** [1] - 1:23
**deny** [3] - 16:3, 16:5, 16:25
**department** [1] - 79:10
**Department** [2] - 7:17, 44:14
**DEPUTY** [1] - 3:9
**deputy** [2] - 21:24, 34:18
**describe** [1] - 69:13
**described** [4] - 25:20, 104:2, 104:7, 104:8
**despite** [4] - 12:24, 75:13, 103:20
**determine** [2] - 4:8, 11:14
**develop** [1] - 105:12
**difference** [2] - 40:12, 50:18
**different** [19] - 10:4, 10:5, 32:23, 36:16, 40:10, 45:3, 45:7, 46:1, 56:3, 58:16, 60:20, 82:18, 84:8, 100:10, 108:18, 113:23, 115:8, 116:11
**differing** [2] - 9:2, 52:9
**difficult** [3] - 38:5, 38:24, 72:3
**difficulties** [1] - 28:19
**difficulty** [3] - 28:15, 72:5, 76:15
**digital** [1] - 61:12
**direction** [1] - 109:9
**directions** [2] - 31:8, 31:9
**directly** [1] - 17:12
**director** [5] - 102:20, 102:23, 116:7, 116:12, 116:13
**disagree** [1] - 105:4
**disappointment** [1] - 44:3
**disclose** [1] - 90:24
**discuss** [3] - 7:22, 25:14, 60:4
**discussed** [4] - 41:5, 63:16, 84:9, 88:15
**discusses** [2] - 42:12, 42:13
**discussing** [3] - 25:15, 91:22, 114:19
**discussion** [6] - 22:1,

33:25, 41:3, 64:9, 75:7, 109:22
**discussions** [8] - 44:19, 63:10, 63:13, 63:20, 64:10, 64:12, 82:16, 87:19
**dismissals** [1] - 12:7
**dispute** [1] - 116:2
**disqualification** [1] - 21:9
**disqualified** [1] - 14:22
**disqualifier** [2] - 15:21, 16:2
**disqualify** [1] - 94:15
**distant** [1] - 64:1
**distinction** [3] - 9:19, 115:9, 117:11
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [6] - 15:25, 16:8, 43:7, 58:8, 86:25, 105:23
**disturbance** [1] - 76:9
**Division** [1] - 1:16
**division** [1] - 79:10
**documented** [2] - 15:3, 15:12
**documents** [1] - 29:3
**DOJ** [1] - 1:15
**DOJ-CRT** [1] - 1:15
**donate** [10] - 10:10, 10:14, 10:20, 10:23, 13:22, 55:9, 55:15, 55:17, 55:18, 106:1
**donated** [2] - 8:23, 55:14
**donating** [5] - 55:12, 69:4, 97:25
**donation** [1] - 10:13
**done** [6] - 24:15, 48:7, 66:22, 67:12, 69:1, 71:7
**dopey** [1] - 33:14
**Dorothy** [1] - 3:8
**doubt** [3] - 23:6, 23:21, 102:5
**doubts** [1] - 47:11
**down** [37] - 5:5, 6:5, 9:20, 11:24, 17:8, 17:11, 18:18, 19:15, 22:4, 23:17, 25:23, 26:3, 29:20, 29:22, 30:11, 30:24, 30:25, 41:7, 42:15, 49:9, 50:15, 53:23, 57:4, 57:25, 61:16, 61:25, 69:23, 75:7, 77:14, 80:6, 81:8, 85:15, 95:24, 109:5,

109:22, 111:23
**drive** [1] - 12:24
**driving** [2] - 73:15, 73:16
**drop** [1] - 93:5
**drug** [2] - 5:20, 5:24
**drugs** [2] - 15:22, 15:23
**DUNN** [28] - 2:5, 11:6, 11:8, 11:13, 11:16, 11:21, 18:24, 80:24, 102:17, 102:19, 102:22, 103:1, 103:5, 103:10, 103:16, 103:20, 104:3, 104:9, 104:15, 104:22, 108:15, 108:19, 108:22, 109:2, 109:6, 115:18, 116:5, 116:7
**Dunn** [2] - 2:5, 11:8
**duration** [2] - 71:11, 71:25
**during** [5] - 29:2, 33:9, 33:10, 88:18, 98:16

---

**E**

**eight** [1] - 5:17
**either** [14] - 4:1, 11:17, 20:19, 21:20, 32:3, 32:13, 35:10, 35:11, 41:1, 55:6, 62:11, 67:24, 111:21, 111:25
**election** [2] - 103:12, 106:21
**electrical** [3] - 84:22, 84:23, 84:24
**electrician** [1] - 39:19
**emphasize** [1] - 3:11
**emphatically** [1] - 75:5
**employed** [7] - 19:3, 19:5, 58:7, 59:2, 59:10, 81:12, 86:24
**employment** [1] - 40:4
**encouraging** [1] - 111:18
**end** [9] - 21:6, 46:7, 70:3, 70:16, 71:18, 71:23, 104:15, 112:9, 113:2
**endeavor** [1] - 10:7
**ended** [2] - 43:21, 101:14
**enforcement** [7] - 46:4, 81:12, 81:23, 82:18, 82:22, 82:24,

88:23
**engage** [2] - 107:20, 107:21
**engaged** [1] - 5:19
**engineering** [4] - 84:19, 84:21, 84:22, 84:23
**English** [1] - 33:11
**entail** [1] - 78:12
**entails** [1] - 82:17
**enter** [1] - 89:1
**entered** [12] - 17:2, 22:3, 34:15, 42:23, 49:5, 57:19, 61:24, 77:6, 81:1, 85:20, 88:19, 96:9
**entire** [1] - 105:21
**entirely** [2] - 111:21, 115:3
**entitled** [2] - 21:14, 47:17
**environmental** [1] - 61:7
**equivocal** [1] - 49:3
**espoused** [2] - 104:24, 117:8
**essentially** [2] - 92:9, 116:18
**establish** [1] - 4:18
**et** [2] - 13:12
**evening** [1] - 118:11
**evidence** [35] - 13:8, 13:11, 16:15, 16:17, 16:24, 18:9, 22:21, 22:23, 24:25, 28:8, 32:10, 41:25, 42:14, 53:20, 54:7, 69:14, 76:5, 76:7, 79:16, 90:16, 91:5, 91:14, 91:15, 95:9, 95:11, 95:14, 98:1, 98:12, 101:9, 102:13, 104:16, 114:2, 114:10, 114:11
**evidently** [4] - 21:23, 37:3, 52:3, 67:16
**exact** [2] - 70:6, 71:15, 72:9
**exactly** [6] - 14:23, 37:11, 37:22, 38:7, 39:17, 80:20
**exclude** [1] - 20:7
**excuse** [14] - 16:3, 16:25, 20:9, 20:25, 21:11, 31:7, 34:14, 48:9, 49:1, 49:4, 109:8, 115:11, 115:24, 118:6
**excused** [10] - 19:22, 19:25, 20:4, 48:22,

57:12, 57:16, 57:18,
61:23, 115:15, 116:4
**excusing** [1] - 3:14
**executive** [2] - 84:7,
111:17
**exited** [11] - 12:2,
19:17, 31:12, 48:13,
57:6, 61:19, 77:3,
80:9, 85:17, 96:2,
109:10
**expect** [1] - 109:21
**expectation** [1] - 14:6
**expectations** [1] -
13:17
**expected** [2] - 23:22,
23:24
**experience** [12] -
22:14, 24:13, 25:17,
35:9, 35:12, 38:6,
38:8, 44:2, 44:22,
45:22, 46:10, 46:25
**explain** [7] - 4:4, 18:1,
35:23, 39:4, 51:16,
54:17, 76:17
**explained** [4] - 20:18,
46:1, 92:14, 103:17
**explaining** [1] - 15:5
**explanation** [1] - 31:1
**explicit** [1] - 54:4
**express** [2] - 24:23,
94:2
**expressed** [5] - 33:3,
53:5, 54:5, 93:21,
104:20
**extent** [1] - 111:14
**extreme** [1] - 12:20
**extremely** [2] - 44:11,
94:4

## F

**face** [1] - 30:16
**facilitates** [1] - 67:2
**fact** [16] - 4:16, 11:16,
13:11, 15:1, 15:2,
15:9, 20:8, 27:11,
33:1, 33:2, 37:20,
50:14, 50:16, 97:24,
117:12, 117:24
**factor** [4] - 94:13,
94:15, 94:18, 94:19
**factored** [1] - 95:7
**facts** [14] - 4:7, 4:12,
4:18, 11:10, 11:14,
11:18, 23:1, 23:4,
23:19, 24:4, 93:11,
93:14, 98:18, 114:5
**factual** [2] - 22:22,
23:8
**fail** [1] - 13:19

**failed** [2] - 36:23, 46:6
**fair** [25] - 10:15, 35:8,
35:13, 37:18, 37:19,
38:2, 38:14, 38:15,
43:16, 46:11, 49:1,
51:12, 52:23, 53:12,
69:4, 90:15, 93:22,
102:13, 104:9,
107:2, 116:15,
116:20, 116:21,
116:24, 117:5
**fairly** [3] - 4:17, 15:15,
66:14
**fairness** [3] - 36:17,
63:22, 63:23
**false** [4] - 32:3, 32:15,
89:9, 89:25
**familiar** [1] - 5:4
**family** [32] - 18:10,
25:6, 35:5, 52:1,
58:10, 59:12, 60:8,
60:11, 62:12, 62:17,
62:18, 62:19, 62:21,
62:23, 62:25, 63:18,
65:18, 66:2, 77:18,
81:11, 81:15, 81:16,
81:18, 83:5, 83:7,
86:23, 87:1,
87:24, 96:21, 97:1,
99:21
**far** [10] - 23:13, 66:12,
72:4, 86:11, 90:20,
112:12, 114:2,
116:3, 118:1, 118:7
**faster** [1] - 57:8
**father** [1] - 59:15
**favor** [1] - 117:14
**FBI** [2] - 5:3, 116:13
**federal** [4] - 47:24,
82:23, 87:13, 99:6
**feelings** [3] - 47:18,
52:22, 105:8
**fellow** [1] - 57:13
**felt** [2] - 42:9, 52:12
**fetal** [3] - 7:3, 7:13
**few** [4] - 31:21, 32:20,
46:1, 56:3
**figured** [1] - 33:14
**figuring** [1] - 33:6
**filling** [1] - 30:11
**financially** [1] - 99:5
**fine** [4] - 65:22, 73:2,
77:9, 93:4
**finish** [3] - 69:21,
71:10, 71:23
**finished** [2] - 12:5,
42:21
**firm** [8] - 14:9, 59:23,
63:4, 64:22, 64:23,
65:4, 65:10, 83:15

**firms** [8] - 58:21,
60:16, 60:20, 60:21,
61:3, 63:2, 78:3,
78:5
**first** [9] - 5:22, 23:13,
30:18, 33:12, 42:9,
49:9, 57:12, 62:24,
89:5
**firsthand** [1] - 111:1
**fit** [3] - 35:24, 60:13,
98:21
**five** [3] - 57:9, 80:13,
86:12
**fix** [2] - 62:7, 96:15
**fluids** [2] - 7:8, 7:10
**flyer** [1] - 45:14
**flyers** [2] - 79:25, 85:9
**focus** [1] - 78:13
**folks** [1] - 57:8
**follow** [20] - 17:19,
17:22, 17:23, 20:9,
21:10, 21:16, 21:19,
23:17, 24:3, 24:5,
31:3, 31:21, 31:25,
32:6, 33:21, 40:20,
43:1, 45:21, 95:25,
108:19
**follow-up** [6] - 21:10,
31:3, 32:6, 40:20,
43:1, 108:19
**following** [1] - 100:1
**FOR** [1] - 1:1
**foregoing** [1] - 119:4
**forgot** [3] - 10:11,
10:15, 13:21
**Fort** [1] - 7:23
**forth** [2] - 75:12, 81:8
**forward** [4] - 40:9,
66:25, 77:7, 96:11
**four** [1] - 82:15
**Fourth** [1] - 105:23
**frankly** [6] - 21:17,
33:24, 34:7, 34:11,
42:4, 109:18
**friend** [6] - 18:16,
58:10, 83:5, 83:8,
96:21, 97:1
**friends** [32] - 18:11,
25:6, 35:6, 58:11,
58:14, 58:16, 58:21,
59:6, 59:12, 60:7,
60:11, 60:13, 60:15,
60:19, 61:3, 62:12,
62:16, 62:24, 62:25,
63:15, 63:25, 64:2,
64:6, 66:3, 77:18,
77:21, 77:22, 81:12,
81:15, 86:23, 87:24,
99:21
**front** [6] - 5:8, 8:10,

8:12, 41:13, 98:18,
109:15
**frustration** [1] - 44:3
**full** [1] - 119:5
**fuller** [1] - 22:1
**fulsome** [1] - 34:9
**funding** [2] - 68:17,
99:7
**fundraising** [1] -
61:11, 61:12

## G

**gallery** [1] - 110:4
**Gaston** [1] - 48:18
**gates** [5] - 34:17, 62:1,
81:3, 85:21, 96:10
**gatherings** [1] - 5:7
**geared** [1] - 46:15
**geez** [1] - 104:17
**general** [6] - 65:12,
95:3, 99:11, 99:15,
100:20, 101:3
**generalized** [1] -
65:17
**generally** [6] - 7:24,
65:15, 69:1, 69:3,
100:20, 103:8
**gentleman** [1] - 38:18
**GERAGHTY** [2] - 1:6,
2:10
**given** [3] - 24:16,
38:18, 116:3
**glad** [1] - 105:1
**goal** [2] - 68:16, 97:20
**GOODMAN** [2] - 1:6,
2:8
**government** [33] -
3:20, 14:15, 18:25,
19:24, 23:5, 23:20,
24:22, 27:16, 40:18,
42:24, 46:23, 47:25,
56:24, 57:11, 61:5,
63:2, 73:18, 78:3,
79:18, 83:16, 84:16,
88:19, 88:24, 89:1,
91:18, 101:8, 102:7,
104:19, 111:3,
111:8, 115:1, 116:25
**government's** [1] -
12:11
**graduated** [1] - 51:18
**grand** [7] - 101:7,
101:14, 101:20,
101:21, 101:23,
102:4
**granted** [2] - 114:9,
117:13
**great** [1] - 110:10
**greater** [1] - 83:1

**group** [9] - 55:5, 66:3,
66:4, 96:22, 106:16,
110:19, 110:20
**groups** [1] - 74:25
**guarantee** [5] - 14:3,
14:25, 15:1, 15:8,
37:15
**guarantees** [1] - 13:4
**guess** [9] - 9:18,
23:10, 27:3, 54:1,
57:11, 69:6, 76:16,
84:8, 92:12
**guessing** [1] - 87:9
**GUILLAUME** [2] - 2:2,
21:1
**Guillaume** [1] - 2:2
**guilt** [3] - 46:12,
46:24, 47:2
**guilty** [7] - 9:17,
75:11, 75:17, 76:14,
92:19, 104:18
**guy** [1] - 13:23, 36:20

## H

**half** [3] - 27:22, 28:2,
32:25
**hand** [10] - 39:1, 42:6,
54:21, 57:22, 77:10,
96:12, 112:16,
112:21, 113:13,
115:3
**handed** [4] - 108:10,
112:23, 112:24,
113:14
**handing** [5] - 41:16,
112:4, 112:11,
113:11, 115:6
**handled** [1] - 44:13
**HANDY** [2] - 1:5, 1:18
**Handy** [3] - 12:8,
110:21, 111:24
**happily** [1] - 112:12
**happy** [1] - 43:16
**harass** [1] - 109:18
**hard** [9] - 29:1, 29:5,
44:6, 44:10, 44:11,
46:11, 53:16, 58:13,
62:8
**hardship** [5] - 32:7,
32:24, 33:2, 33:3,
34:4
**hardships** [1] - 28:12
**HARIVADAN** [1] - 1:15
**harvesting** [1] - 6:25
**head** [2] - 90:1, 112:7
**health** [20] - 9:3, 9:23,
12:23, 51:10, 55:7,
55:23, 66:5, 96:24,
97:20, 98:5, 99:11,

99:14, 99:22,
106:17, 107:3,
107:8, 107:9,
108:20, 109:16,
114:18
**hear** [30] - 10:18,
12:14, 14:15, 31:16,
32:16, 34:22, 35:20,
37:2, 39:8, 47:4,
49:12, 49:14, 49:15,
54:13, 58:2, 76:6,
77:4, 77:15, 81:9,
83:2, 86:2, 88:20,
89:16, 90:9, 93:1,
93:6, 94:6, 96:17,
112:10, 112:20
**heard** [11] - 10:2, 20:4,
42:10, 42:15, 93:4,
95:5, 95:6, 95:9,
106:12, 111:5,
112:18
**hearing** [4] - 41:22,
110:25, 111:4,
115:23
**hearings** [2] - 84:8,
84:10
**heart** [1] - 6:4
**Heather** [1] - 80:21
**HEATHER** [2] - 1:6,
2:5
**held** [2] - 51:11, 98:14
**helicopter** [1] - 44:17
**hello** [1] - 102:18
**help** [1] - 17:12
**helpful** [1] - 99:18
**helps** [1] - 99:16
**HERB** [2] - 1:6, 2:10
**hereby** [1] - 119:3
**hesitant** [1] - 57:10
**hi** [2] - 79:20, 102:9
**high** [1] - 51:18
**highly** [1] - 12:20
**himself** [1] - 14:9
**HINSHAW** [2] - 1:5,
2:2
**hold** [6] - 12:11,
21:23, 99:24, 113:3,
115:14, 115:24
**home** [3] - 3:3, 9:11,
105:23
**honest** [8] - 13:3,
14:5, 15:8, 38:1,
38:10, 45:1, 90:4,
94:25
**honestly** [1] - 74:11
**honesty** [1] - 73:22
**Honor** [41] - 3:20,
4:21, 12:13, 14:17,
18:13, 19:24, 21:1,
21:3, 22:5, 29:7,

30:13, 31:5, 31:6,
31:14, 31:20, 32:19,
33:19, 40:22, 41:12,
42:19, 45:16, 48:20,
57:1, 57:3, 57:15,
61:13, 61:15, 61:21,
73:19, 80:3, 80:5,
80:21, 85:12, 95:21,
96:5, 104:22,
108:24, 111:6,
115:2, 115:10, 117:4
**HONORABLE** [1] - 1:9
**hope** [3] - 13:8, 16:23,
71:7
**hopefully** [4] - 10:1,
10:3, 12:25, 47:5
**hopes** [1] - 88:22
**hoping** [1] - 13:25
**house** [1] - 83:20
**HOWARD** [1] - 2:7
**HRC** [2] - 55:15, 55:17
**human** [4] - 10:4,
10:7, 13:2, 13:25
**Human** [2] - 55:10,
55:18
**humans** [1] - 14:24
**hundred** [1] - 90:3
**husband** [3] - 81:19,
81:20, 81:24

## I

**IA** [1] - 1:19
**idea** [1] - 37:24
**identified** [1] - 95:8
**identify** [1] - 62:19
**Idoni** [1] - 80:22
**IDONI** [2] - 1:6, 2:5
**ignore** [2] - 17:23,
109:12
**III** [3] - 2:2, 2:2, 2:7
**illegal** [1] - 15:23
**immediate** [2] - 62:21,
62:23
**impact** [3] - 91:17,
98:17, 98:20
**imparted** [1] - 21:24
**impartial** [22] - 10:2,
12:25, 13:25, 35:8,
35:13, 37:18, 37:19,
51:12, 52:23, 53:12,
69:17, 90:15, 90:22,
91:4, 98:3, 104:10,
107:12, 116:15,
116:20, 116:21,
116:24, 117:5
**impartiality** [1] - 36:18
**impartially** [1] -
102:12
**important** [4] - 9:3,

12:23, 47:25, 67:13
**impose** [1] - 53:3
**IN** [1] - 1:1
**in-house** [1] - 83:20
**inability** [1] - 28:7
**inaccurate** [1] - 89:12
**inappropriate** [4] -
108:25, 109:4,
109:15, 109:21
**incentive** [3] - 89:9,
89:14, 95:1
**incentives** [1] - 94:23
**incident** [2] - 36:1,
36:3
**inclined** [1] - 56:18
**include** [5] - 16:12,
56:15, 97:22, 98:6,
117:21
**including** [6] - 51:11,
55:7, 66:5, 96:24,
97:20, 102:24
**income** [1] - 99:17
**inconsistent** [3] -
32:11, 33:2, 34:6
**incorrect** [1] - 92:3
**incorrectly** [1] - 104:7
**independent** [8] -
11:18, 54:7, 54:9,
54:12, 54:15, 54:18,
68:1, 95:16
**independently** [2] -
67:20, 67:23
**indicate** [5] - 17:22,
21:4, 24:24, 72:6,
114:10
**indicated** [26] - 5:10,
7:11, 8:1, 10:9, 12:5,
13:12, 13:19, 16:10,
21:13, 31:24, 33:22,
34:1, 34:2, 34:3,
34:4, 45:22, 53:23,
72:20, 103:24,
114:17, 116:24,
117:3, 117:7, 117:9,
117:16, 117:20
**indicating** [6] - 16:19,
50:22, 52:18, 54:22,
71:9, 76:13
**indications** [1] -
116:23
**indictment** [2] - 9:13,
9:16
**individual** [5] - 36:25,
37:3, 40:24, 41:19,
113:3
**individuals** [1] -
111:22
**influence** [12] - 13:14,
40:13, 53:19, 69:13,
87:20, 91:8, 112:14,

112:23, 114:1,
114:8, 115:5, 115:8
**influenced** [1] - 90:23
**influencing** [1] -
112:17
**information** [6] -
21:22, 22:22, 33:22,
85:10, 111:2, 111:15
**injury** [1] - 59:19
**innocence** [4] - 46:12,
46:23, 75:16, 75:19
**input** [1] - 79:2
**inquire** [1] - 110:10
**inquiries** [1] - 105:15
**inside** [1] - 30:17
**instance** [2] - 23:5,
104:13
**instead** [1] - 95:2
**instruct** [1] - 94:10
**instructions** [24] -
11:25, 17:19, 17:21,
17:22, 19:16, 20:9,
21:16, 23:7, 23:17,
23:18, 23:19, 24:6,
24:16, 31:22, 32:1,
32:14, 48:11, 57:5,
61:17, 77:1, 80:7,
85:16, 94:9, 95:25
**insufficient** [1] - 118:1
**intended** [3] - 112:23,
114:1, 114:8
**intent** [2] - 114:3,
114:4
**interacted** [1] - 111:11
**interaction** [1] - 111:9
**intercom** [2] - 41:1,
41:11
**interest** [1] - 95:1
**interested** [1] - 68:15
**interfere** [5] - 35:7,
51:12, 52:23, 53:11,
90:14
**internal** [1] - 78:16
**interpret** [2] - 6:17,
14:13
**interviews** [1] - 105:13
**introduced** [1] - 82:22
**involve** [1] - 6:19
**involved** [7] - 7:3,
16:11, 25:19, 59:11,
65:9, 68:1, 68:5,
68:12
**involvement** [1] -
67:12
**involving** [2] - 15:23,
116:17
**irrational** [1] - 33:6
**isolation** [1] - 94:19
**issue** [18] - 7:13, 9:23,
33:9, 40:22, 41:4,

41:14, 51:10, 54:20,
61:20, 93:17, 95:7,
102:24, 111:3,
115:8, 117:1,
117:23, 118:3, 118:7
**issues** [6] - 21:2,
76:22, 100:10,
102:24, 117:19,
118:2
**IT** [1] - 65:1
**itself** [5] - 68:23, 84:1,
105:9, 117:13,
117:25

## J

**January** [1] - 100:4
**JASARI** [1] - 1:23
**Jasari** [1] - 1:24
**JDs** [1] - 78:10
**job** [4] - 4:7, 11:13,
39:12, 83:23
**JOHN** [4] - 1:5, 1:11,
2:2, 2:9
**join** [1] - 73:12
**joint** [6] - 66:19,
66:20, 66:24, 67:1,
67:8, 74:2
**JR** [1] - 1:11
**Judge** [18] - 3:7, 4:4,
19:13, 29:10, 31:18,
48:3, 48:16, 85:14,
91:22, 93:11, 94:9,
95:23, 104:4,
108:13, 108:15,
113:6, 114:17,
115:18
**JUDGE** [1] - 1:9
**judge** [15] - 3:9, 10:1,
12:8, 15:15, 27:17,
41:24, 42:13, 63:12,
73:24, 75:20, 76:4,
88:10, 88:12, 92:11,
103:17
**judgment** [2] - 38:2,
91:17
**Judiciary** [1] - 1:12
**jump** [1] - 47:1
**JUROR** [433] - 3:23,
4:2, 4:6, 4:10, 4:15,
4:20, 4:25, 5:3, 5:9,
5:12, 5:14, 5:17,
5:20, 5:24, 6:2, 6:10,
6:13, 6:21, 6:24, 7:4,
7:6, 7:10, 7:15, 7:18,
7:21, 8:4, 8:8, 8:10,
8:12, 8:15, 8:19,
8:25, 9:5, 9:12, 9:15,
9:24, 10:12, 10:16,
10:19, 10:22, 10:25,

11:3, 11:12, 11:15, 11:20, 12:1, 17:9, 17:16, 17:25, 18:2, 18:5, 18:13, 18:17, 18:19, 18:21, 19:4, 19:6, 19:8, 19:10, 22:5, 22:13, 22:17, 23:15, 24:1, 24:7, 24:10, 25:3, 25:11, 25:13, 25:21, 25:24, 26:6, 26:8, 26:12, 26:15, 26:18, 26:22, 26:24, 27:2, 27:7, 27:14, 27:24, 28:3, 28:5, 28:9, 28:13, 28:17, 28:20, 28:24, 29:4, 29:6, 29:16, 29:19, 29:24, 30:1, 30:6, 30:8, 30:13, 30:16, 30:22, 31:2, 31:10, 34:23, 35:3, 35:15, 35:18, 35:22, 36:1, 36:4, 36:7, 36:9, 36:12, 36:14, 36:19, 37:1, 37:5, 37:7, 37:11, 37:14, 37:22, 38:1, 38:5, 38:10, 38:14, 38:17, 38:22, 38:24, 39:5, 39:9, 39:14, 39:17, 39:19, 39:21, 39:25, 40:3, 40:15, 40:21, 41:9, 43:2, 43:4, 43:8, 43:11, 43:14, 43:17, 43:20, 43:25, 44:5, 44:10, 44:15, 44:24, 45:2, 45:5, 45:8, 45:12, 45:15, 45:20, 45:25, 46:14, 46:18, 47:3, 47:7, 47:9, 47:19, 47:22, 48:2, 48:12, 49:16, 49:20, 49:23, 50:3, 50:6, 50:9, 50:13, 50:19, 50:23, 50:25, 51:14, 51:17, 51:25, 52:7, 52:11, 52:15, 52:20, 52:24, 53:10, 53:15, 53:25, 54:8, 54:11, 54:14, 54:19, 54:25, 55:9, 55:13, 55:15, 55:17, 55:20, 55:25, 56:2, 56:7, 56:10, 56:13, 56:16, 58:3, 58:9, 58:11, 58:13, 58:17, 58:20, 58:24, 59:4, 59:8, 59:15, 59:18, 59:21, 59:25, 60:3, 60:6, 60:9, 60:15, 60:23, 61:2, 61:9, 61:11,

61:18, 62:14, 62:16, 62:21, 62:23, 63:4, 63:8, 63:14, 63:23, 64:2, 64:8, 64:13, 64:18, 64:22, 65:1, 65:6, 65:11, 65:19, 65:22, 65:24, 66:1, 66:7, 66:10, 66:14, 66:21, 67:1, 67:5, 67:11, 67:18, 67:22, 68:2, 68:7, 68:9, 68:18, 68:25, 69:5, 69:10, 69:16, 69:25, 70:3, 70:6, 70:11, 70:18, 70:21, 70:24, 71:13, 71:19, 72:2, 72:7, 72:13, 72:25, 73:7, 73:10, 73:13, 73:15, 73:25, 74:4, 74:7, 74:11, 74:19, 74:22, 75:2, 75:8, 75:18, 75:25, 76:18, 77:21, 78:1, 78:4, 78:8, 78:13, 78:18, 78:22, 79:4, 79:7, 79:10, 79:17, 79:20, 79:23, 80:1, 80:8, 81:16, 81:19, 81:22, 81:25, 82:3, 82:6, 82:11, 82:15, 82:20, 83:3, 83:9, 83:11, 83:14, 83:18, 83:22, 83:25, 84:2, 84:6, 84:12, 84:19, 84:22, 84:24, 85:4, 85:8, 85:11, 86:8, 86:12, 86:17, 86:21, 87:1, 87:3, 87:6, 87:8, 87:11, 87:14, 87:17, 87:22, 88:1, 88:4, 88:7, 88:10, 88:13, 88:17, 89:6, 89:8, 89:15, 89:24, 90:11, 90:17, 91:2, 91:16, 91:20, 91:23, 92:1, 92:6, 92:17, 92:20, 92:22, 93:2, 93:7, 93:15, 93:20, 93:23, 94:1, 94:3, 94:8, 94:14, 94:18, 94:23, 95:13, 95:18, 96:18, 97:2, 97:5, 97:9, 97:12, 97:14, 97:17, 98:2, 98:7, 98:13, 99:4, 99:16, 99:23, 100:3, 100:8, 100:11, 100:14, 100:23, 101:2, 101:13, 101:18, 101:21, 101:25, 102:2, 102:6, 102:9,

102:15, 102:18, 102:21, 102:25, 103:3, 103:7, 103:14, 103:19, 104:14, 104:21, 105:1, 105:12, 105:21, 106:3, 106:6, 106:8, 106:10, 106:14, 106:18, 106:24, 107:4, 107:13, 107:17, 107:19, 107:22, 107:24, 108:1, 108:4, 108:9, 108:12, 108:21
**juror** [72] - 3:16, 11:21, 12:2, 12:10, 14:19, 14:22, 14:23, 16:4, 17:2, 17:6, 19:17, 19:18, 19:20, 22:3, 22:11, 27:13, 28:7, 31:12, 31:15, 31:20, 32:22, 33:24, 34:15, 34:20, 37:23, 37:24, 41:13, 42:7, 42:23, 48:13, 48:14, 48:17, 48:21, 49:2, 49:5, 49:10, 53:7, 57:6, 57:19, 57:23, 61:19, 61:24, 62:5, 68:20, 72:24, 77:3, 77:6, 77:12, 80:9, 81:1, 81:6, 85:17, 85:20, 85:24, 96:2, 96:9, 96:13, 101:7, 102:12, 104:10, 109:10, 110:4, 111:11, 111:12, 112:1, 113:6, 114:14, 115:5, 115:19, 115:21, 116:3, 117:4
**Juror** [12] - 3:17, 17:14, 22:9, 34:25, 49:17, 58:4, 62:10, 77:17, 81:10, 86:3, 96:19
**jurors** [14] - 3:14, 10:8, 14:24, 21:4, 29:3, 33:3, 41:19, 80:16, 109:15, 109:18, 112:11, 112:14, 112:24, 115:15
**JURY** [2] - 1:4, 1:8
**jury** [27] - 4:4, 21:5, 21:18, 23:8, 24:20, 27:25, 28:16, 28:23, 40:6, 40:7, 47:16, 48:1, 49:7, 90:15,

101:7, 101:8, 101:14, 101:20, 101:21, 101:23, 102:4, 104:16, 112:14, 114:2, 115:8, 115:13, 115:16
**justice** [3] - 36:22, 38:11, 38:13
**justified** [1] - 51:5

**K**

**keep** [5] - 10:7, 20:5, 40:9, 92:25, 105:7
**keeper** [1] - 77:5
**keeping** [5] - 42:18, 80:12, 85:18, 96:4, 96:7
**kids** [1] - 28:21
**kill** [2] - 90:19, 92:7
**killing** [2] - 92:5, 92:9
**kind** [18] - 9:22, 13:25, 29:1, 32:22, 33:6, 33:13, 39:5, 46:7, 46:25, 47:11, 58:13, 63:13, 64:7, 74:25, 76:11, 98:21, 101:4, 117:21
**kinds** [3] - 56:5, 64:24, 84:10
**Kiyonaga** [1] - 49:22
**KIYONAGA** [3] - 2:9, 48:8, 56:21
**knowing** [3] - 68:15, 72:1, 103:20
**knowledge** [2] - 50:25, 77:25
**KOLLAR** [1] - 1:9
**KOLLAR-KOTELLY** [1] - 1:9
**Kotelly** [4] - 4:4, 91:22, 93:12, 94:9
**KOTELLY** [1] - 1:9
**Kristin** [2] - 110:16, 111:1

**L**

**lab** [2] - 6:18, 6:20
**lack** [1] - 14:1
**lady** [3] - 33:13, 39:10, 110:23
**language** [2] - 33:9, 33:12
**large** [1] - 51:19
**larger** [1] - 109:16
**last** [14] - 3:3, 7:9, 8:15, 12:9, 27:22, 55:14, 66:15, 66:16,

90:12, 97:7, 110:4, 115:19, 115:20, 116:2
**late** [1] - 110:1
**Lauren** [2] - 12:8, 110:21
**LAUREN** [2] - 1:5, 1:18
**Law** [1] - 2:2
**law** [49] - 4:4, 4:12, 4:19, 11:10, 15:19, 15:20, 15:24, 16:8, 17:19, 22:24, 22:25, 23:3, 23:7, 23:9, 23:18, 23:22, 23:24, 24:3, 26:9, 32:1, 46:4, 54:1, 54:2, 59:1, 60:12, 60:17, 60:20, 62:13, 63:8, 77:19, 78:3, 78:5, 79:6, 81:12, 81:23, 82:17, 82:21, 82:23, 83:6, 87:25, 88:8, 88:11, 88:22, 93:11, 118:5
**lawful** [4] - 16:1, 88:25, 89:9, 98:19
**laws** [5] - 4:9, 4:13, 46:15, 46:18, 51:5
**lawsuits** [1] - 65:8
**lawyer** [12] - 59:6, 59:11, 62:12, 77:18, 77:19, 83:5, 83:24, 87:24, 88:9
**lawyers** [11] - 11:14, 11:17, 58:14, 60:19, 61:4, 78:4, 78:19, 78:22, 78:24, 79:1, 79:14
**leaflet** [5] - 41:17, 42:4, 42:12, 45:14, 108:10
**leaflets** [2] - 85:9, 112:5
**leanings** [1] - 75:14
**learn** [1] - 88:18
**least** [1] - 34:9
**leave** [3] - 19:23, 26:1, 113:1
**leaving** [9] - 21:18, 64:9, 68:19, 70:8, 71:18, 72:15, 114:7, 116:1, 116:25
**left** [5] - 5:15, 25:8, 62:2, 75:1, 77:8
**legal** [10] - 63:21, 65:4, 65:12, 65:13, 78:9, 78:11, 78:14, 78:16, 84:4, 84:6
**legal-type** [1] - 65:13

**legalized** [2] - 103:1, 103:5
**legislative** [1] - 105:22
**legislator** [1] - 103:4
**length** [3] - 56:19, 69:18, 72:19
**leniency** [1] - 46:16
**lenient** [3] - 37:10, 46:19, 88:22
**less** [5] - 30:6, 30:8, 30:10, 30:14, 43:23
**lesser** [1] - 83:1
**levels** [2] - 6:16, 7:7
**liberty** [1] - 7:21
**life** [4] - 10:23, 13:22, 92:8, 101:4
**likely** [2] - 89:11, 95:4
**limited** [3] - 55:7, 66:6, 96:24
**linked** [1] - 7:7
**list** [4] - 8:17, 8:20, 34:25
**listed** [2] - 49:17, 81:13
**listen** [3] - 24:25, 91:5, 95:15
**listened** [4] - 24:4, 34:3, 114:5, 114:19
**listening** [1] - 38:2
**litigation** [2] - 79:9, 79:12
**live** [3] - 5:2, 5:3, 86:7
**lives** [1] - 87:8
**living** [1] - 19:7
**LLC** [1] - 2:2
**LLP** [1] - 1:24
**local** [2] - 82:23, 87:12
**located** [1] - 86:6
**look** [5] - 53:20, 55:1, 58:5, 76:20, 116:22
**looked** [4] - 69:14, 91:15, 113:8
**looking** [5] - 50:16, 63:25, 98:12, 104:16, 112:22
**looks** [1] - 50:7
**love** [1] - 113:12
**low** [1] - 99:17
**low-income** [1] - 99:17
**lower** [1] - 102:4

**M**

**ma'am** [6] - 19:2, 27:17, 27:21, 61:6, 79:19, 106:1
**mailing** [3] - 8:17, 8:20
**mailings** [1] - 106:7

**management** [1] - 78:17
**manager** [1] - 84:20
**march** [8] - 55:22, 99:22, 99:24, 100:1, 100:9, 100:13, 100:20, 101:1
**March** [1] - 44:1
**marches** [4] - 56:3, 100:5, 100:6, 106:13
**marital** [2] - 67:15, 76:22
**mark** [1] - 49:18
**marketing** [1] - 61:12
**MARTIN** [1] - 1:18
**mask** [10] - 34:21, 39:10, 39:16, 49:11, 58:2, 62:8, 77:15, 81:8, 86:1, 96:16
**match** [2] - 110:4, 110:13
**material** [1] - 68:9
**materials** [2] - 45:14, 79:25
**matter** [7] - 7:19, 25:15, 25:16, 45:11, 105:18, 114:2, 117:20
**matters** [2] - 65:23, 69:22
**MD** [1] - 2:8
**Meade** [1] - 7:23
**mean** [36] - 15:1, 26:21, 28:1, 30:15, 44:6, 44:24, 47:7, 47:10, 52:15, 53:1, 53:25, 54:1, 54:17, 54:18, 54:19, 57:16, 63:15, 66:14, 67:6, 67:11, 67:12, 68:9, 69:6, 69:17, 71:14, 72:2, 72:3, 74:22, 76:16, 90:3, 92:4, 94:12, 103:24, 108:22, 116:18, 116:21
**means** [1] - 8:5
**meant** [4] - 47:12, 47:13, 60:13, 112:13
**media** [7] - 101:4, 104:23, 105:10, 105:14, 105:15, 105:19, 117:17
**meet** [1] - 107:14
**member** [7] - 58:10, 62:20, 87:1, 90:15, 96:21, 97:1, 111:17
**members** [11] - 18:10, 25:5, 35:5, 60:8, 60:10, 62:17, 62:18,

65:18, 66:2, 77:18, 86:23
**mention** [1] - 51:3
**mentioned** [8] - 5:25, 7:16, 43:5, 88:2, 88:5, 90:17, 105:2, 106:25
**mentions** [2] - 41:24
**merits** [1] - 75:21
**met** [2] - 40:6, 40:16
**Metropolitan** [2] - 44:13, 44:20
**MI** [1] - 2:6
**microphone** [16] - 14:20, 17:10, 17:12, 18:4, 34:24, 35:20, 39:8, 49:14, 58:1, 62:7, 62:22, 77:16, 81:9, 85:1, 86:1, 96:15
**middle** [1] - 62:1
**might** [13] - 9:6, 10:11, 20:4, 21:17, 33:8, 33:11, 36:10, 40:10, 42:4, 53:20, 71:2, 73:5, 110:10
**mind** [2] - 24:9, 76:2
**mine** [1] - 105:25
**Minnesota** [1] - 101:14
**Minnesota's** [1] - 105:23
**minute** [1] - 62:3
**minutes** [4] - 32:20, 39:15, 44:16, 80:13
**misinterpret** [1] - 58:24
**missed** [1] - 115:20
**missing** [2] - 80:21, 101:23
**mission** [1] - 74:23
**misspoke** [1] - 100:3
**mistake** [2] - 18:19, 22:5
**misusing** [1] - 114:17
**moment** [1] - 81:5
**Monday** [1] - 72:18
**money** [9] - 4:17, 13:11, 16:14, 66:24, 67:17, 99:9, 104:3, 104:4, 117:22
**month** [4] - 70:1, 70:4, 97:11, 106:2
**monthly** [5] - 55:15, 55:17, 55:18, 97:9, 98:10
**months** [1] - 43:21
**moral** [4] - 51:9, 52:16, 52:25, 90:13
**morally** [1] - 51:5

**morning** [14] - 3:15, 41:5, 41:14, 44:19, 69:21, 108:2, 108:5, 108:6, 108:7, 111:13, 112:2, 112:5, 113:4, 114:15
**most** [8] - 14:24, 21:6, 65:12, 68:12, 78:4, 94:25, 99:3
**mostly** [1] - 59:18
**mother** [1] - 26:1
**motion** [3] - 16:3, 96:5, 96:6
**motivated** [1] - 106:15
**motivation** [2] - 106:20, 106:21
**move** [19] - 12:9, 17:7, 31:14, 49:13, 57:8, 57:18, 57:25, 59:9, 62:6, 77:14, 77:16, 81:7, 84:25, 85:18, 85:25, 86:1, 96:14, 109:25
**moved** [1] - 5:14
**moving** [1] - 61:23
**MR** [255] - 3:7, 3:20, 3:22, 3:24, 4:3, 4:7, 4:11, 4:16, 4:21, 4:23, 5:1, 5:7, 5:10, 5:13, 5:16, 5:18, 5:22, 5:25, 6:3, 6:7, 6:12, 6:19, 6:22, 7:2, 7:5, 7:9, 7:11, 7:16, 7:19, 8:1, 8:5, 8:9, 8:11, 8:14, 8:17, 8:22, 9:1, 9:6, 9:14, 9:18, 9:25, 10:9, 10:14, 10:17, 10:20, 10:23, 11:1, 11:4, 11:6, 11:8, 11:13, 11:16, 11:21, 11:23, 12:4, 12:8, 12:13, 12:16, 13:6, 13:15, 14:8, 14:12, 14:17, 14:21, 18:24, 19:2, 19:5, 19:7, 19:9, 19:12, 19:24, 20:1, 20:3, 20:6, 20:11, 20:14, 20:22, 21:1, 27:17, 27:20, 27:25, 28:4, 28:6, 28:11, 28:14, 28:18, 28:22, 28:25, 29:5, 29:7, 29:10, 31:5, 31:6, 31:14, 31:18, 31:20, 32:18, 33:19, 40:22, 41:2, 41:4, 41:12, 41:18, 42:19, 43:3, 43:5, 43:9, 43:12, 43:15, 43:19, 43:24,

44:2, 44:8, 44:12, 44:18, 44:25, 45:3, 45:6, 45:9, 45:13, 45:16, 45:18, 45:21, 46:1, 46:17, 46:20, 47:6, 47:8, 47:23, 48:3, 48:8, 48:15, 48:20, 48:24, 54:13, 55:16, 56:21, 57:1, 57:3, 57:11, 57:15, 61:6, 61:10, 61:13, 61:15, 61:21, 73:19, 73:21, 74:1, 74:5, 74:8, 74:16, 74:21, 74:24, 75:4, 75:9, 75:22, 76:7, 76:14, 76:24, 79:19, 79:21, 79:24, 80:2, 80:5, 80:21, 80:24, 82:7, 84:17, 84:21, 84:23, 85:2, 85:6, 85:12, 85:14, 91:19, 91:21, 91:24, 92:4, 92:13, 92:18, 92:21, 93:4, 93:8, 93:16, 93:21, 93:24, 94:2, 94:6, 94:9, 94:15, 94:21, 95:5, 95:16, 95:21, 95:23, 96:5, 96:6, 102:8, 102:10, 102:16, 102:17, 102:19, 102:22, 103:1, 103:5, 103:10, 103:16, 103:20, 104:3, 104:9, 104:15, 104:22, 106:1, 106:4, 106:7, 106:9, 106:12, 106:15, 106:23, 106:25, 107:6, 107:14, 107:18, 107:21, 107:23, 107:25, 108:3, 108:7, 108:13, 108:15, 108:19, 108:22, 108:24, 109:2, 109:6, 109:13, 110:2, 110:8, 110:14, 110:16, 110:20, 111:6, 111:8, 112:6, 113:5, 113:15, 114:16, 114:21, 115:2, 115:9, 115:18, 116:5, 116:7, 117:4
**MS** [1] - 1:22

**N**

**N.W** [1] - 119:11

**name** [3] - 18:14, 50:8, 61:2
**narrative** [1] - 89:25
**near** [8] - 5:2, 50:12, 50:17, 80:16, 82:12, 86:7, 86:8, 112:9
**necessarily** [5] - 76:22, 90:3, 117:9, 117:17, 117:18
**need** [24] - 16:22, 17:10, 18:25, 22:16, 24:17, 35:19, 35:20, 39:7, 46:10, 48:6, 49:8, 56:21, 57:8, 58:1, 62:22, 69:22, 72:15, 72:21, 72:25, 80:18, 81:8, 112:3, 115:1
**needs** [4] - 13:5, 20:3, 56:22, 57:12
**negative** [3] - 46:4, 89:3, 89:6
**nervous** [8] - 24:10, 24:14, 24:24, 27:9, 30:8, 30:10, 30:14, 34:2
**never** [6] - 6:17, 13:21, 24:10, 60:6, 86:16, 102:1
**New** [4] - 81:25, 82:8, 82:9, 82:12
**new** [2] - 22:14, 24:13
**Newburgh** [1] - 82:12
**newsletters** [3] - 8:7, 12:18, 106:4
**next** [6] - 5:3, 17:1, 49:18, 51:1, 85:19, 110:1
**nice** [1] - 33:13
**nicely** [1] - 46:9
**niece's** [3] - 81:19, 81:20, 81:24
**noble** [1] - 19:12
**nobody** [2] - 13:4, 18:17
**none** [2] - 21:10, 60:21
**nonprofit** [1] - 61:7
**nonprofits** [1] - 63:2
**northwest** [1] - 39:22
**Northwest** [2] - 5:6, 86:6
**note** [1] - 15:12
**notes** [2] - 5:1, 119:5
**nothing** [7] - 11:4, 18:2, 18:6, 47:18, 48:3, 105:24, 116:19
**noticed** [2] - 86:14, 86:19
**nowhere** [1] - 117:13

**nuanced** [1] - 15:7
**nullification** [1] - 112:14
**number** [5] - 39:2, 49:2, 68:10, 74:13, 103:25
**NW** [4] - 1:13, 1:16, 2:3, 2:22

## O

**oath** [4] - 31:22, 32:4, 90:2, 112:1
**object** [4] - 31:18, 74:23, 111:8, 115:20
**objected** [1] - 74:7
**objecting** [3] - 48:23, 48:25, 74:5
**objection** [4] - 31:17, 32:16, 57:14, 108:24
**objections** [1] - 57:17
**objective** [1] - 33:16
**observed** [1] - 110:9
**obstructing** [1] - 107:8
**obstruction** [1] - 51:7
**obvious** [2] - 54:20, 75:13
**obviously** [27] - 13:23, 16:13, 16:15, 19:18, 22:11, 36:25, 54:4, 68:15, 68:16, 69:8, 69:11, 74:5, 82:21, 97:15, 97:18, 97:21, 97:24, 98:9, 98:23, 99:2, 110:9, 112:10, 113:6, 114:1, 116:14, 116:23, 117:15
**occasions** [3] - 8:4, 8:5, 12:21
**occurred** [1] - 116:16
**October** [1] - 36:9
**OF** [4] - 1:1, 1:2, 1:8, 119:1
**offenses** [3] - 16:9, 103:21, 116:16
**offer** [2] - 8:19, 111:23
**office** [3] - 49:24, 59:7, 115:16
**Office** [3] - 1:12, 43:13, 116:12
**officer** [3] - 82:1, 82:3, 82:14
**Officers** [1] - 44:20
**officers** [3] - 82:22, 82:23, 82:24
**Offices** [1] - 2:2
**Official** [2] - 2:21, 119:10

**official** [2] - 103:15, 105:14
**OFFICIAL** [1] - 119:1
**older** [1] - 19:10
**once** [3] - 32:20, 33:14, 89:17
**one** [60] - 5:22, 7:9, 12:7, 13:9, 13:24, 14:24, 15:8, 16:18, 17:1, 20:19, 24:19, 25:23, 30:18, 31:21, 32:3, 51:2, 58:12, 58:22, 59:13, 66:24, 67:2, 68:11, 68:23, 72:6, 73:16, 74:1, 74:14, 75:3, 82:11, 85:19, 86:22, 90:18, 92:2, 94:13, 97:16, 100:16, 100:22, 103:25, 104:1, 108:15, 108:16, 108:18, 108:19, 110:8, 111:17, 111:21, 112:4, 112:13, 113:12, 113:20, 113:21, 113:25, 114:7, 114:16, 114:22, 115:2
**ones** [2] - 78:23, 112:4
**open** [4] - 41:11, 41:19, 71:21, 76:2
**operations** [2] - 78:9, 78:12
**opinion** [7] - 20:6, 53:17, 89:2, 89:5, 89:6, 89:7, 92:1
**opinionated** [2] - 12:20, 13:24
**opinions** [7] - 9:2, 9:21, 51:9, 53:14, 53:19, 102:11, 107:7
**opportunity** [3] - 40:19, 42:25, 111:10
**oppose** [1] - 12:13
**opposed** [5] - 3:4, 70:17, 89:18, 91:24, 117:19
**opposing** [1] - 14:16
**optimizing** [1] - 78:14
**orally** [1] - 22:15
**order** [2] - 30:25, 114:4
**organization** [28] - 13:12, 13:22, 16:14, 55:5, 55:6, 61:8, 66:3, 66:4, 66:8, 67:10, 67:13, 67:20, 68:2, 68:5, 68:21, 68:22, 69:1, 74:13,

74:17, 78:8, 79:2, 96:22, 96:23, 97:3, 99:15, 100:15, 103:22, 111:22
**organizations** [9] - 10:24, 55:12, 68:10, 74:14, 78:20, 79:3, 100:16, 103:13, 111:17
**originally** [2] - 5:5, 34:10
**otherwise** [2] - 62:8, 68:6
**ought** [1] - 104:18
**outcome** [1] - 106:21
**outright** [1] - 21:9
**outside** [7] - 41:7, 41:15, 48:10, 85:7, 107:15, 111:10, 111:12
**overall** [1] - 95:11
**overbroadly** [1] - 114:18
**own** [13] - 9:22, 21:17, 25:1, 26:14, 42:20, 47:18, 53:1, 59:22, 66:18, 66:22, 69:7, 89:22, 105:7

## P

**p.m** [1] - 118:12
**P.M** [1] - 1:6
**P.O** [1] - 1:21
**pack** [1] - 111:18
**pages** [1] - 105:15
**paid** [8] - 26:21, 27:1, 28:4, 28:7, 28:14, 32:8, 86:16, 86:17
**pains** [1] - 113:16
**pamphlet** [8] - 41:16, 41:23, 42:8, 113:10, 113:11, 113:17, 113:24, 114:6
**pamphlets** [6] - 79:25, 112:5, 112:11, 112:13, 115:4, 115:6
**panicky** [1] - 33:6
**paperwork** [1] - 85:10
**Parenthood** [35] - 3:25, 4:17, 8:2, 8:23, 10:11, 10:21, 12:18, 13:20, 55:10, 66:11, 68:16, 69:12, 74:9, 74:18, 74:25, 75:14, 75:15, 97:6, 97:19, 98:9, 98:14, 98:24, 99:1, 99:6, 99:8, 103:11, 103:22, 103:24, 104:1,

104:7, 106:2, 116:10, 116:17, 118:2
**part** [13] - 7:12, 26:14, 27:9, 51:20, 53:23, 88:21, 101:3, 101:15, 102:22, 104:3, 105:19, 110:20, 118:3
**partially** [1] - 23:2
**participant** [1] - 21:6
**participants** [1] - 21:7
**participate** [3] - 37:13, 37:14, 53:7
**participated** [9] - 55:22, 56:1, 99:21, 99:23, 99:25, 100:6, 101:12, 106:12, 106:18
**participating** [3] - 22:20, 27:10, 28:11
**participation** [1] - 27:13
**particular** [19] - 4:13, 25:22, 36:1, 36:18, 38:8, 38:19, 40:24, 69:15, 82:9, 90:8, 97:19, 99:10, 99:13, 101:10, 104:12, 105:18, 105:24, 113:3, 117:20
**particularly** [3] - 15:25, 52:22, 112:20
**parties** [1] - 41:19
**partner** [4] - 83:11, 83:12, 83:16, 83:20
**Party** [1] - 102:20
**passed** [1] - 59:16
**past** [7] - 38:6, 56:3, 58:19, 66:10, 66:12, 87:5, 87:6
**PATEL** [41] - 1:15, 19:2, 19:5, 19:7, 19:9, 19:12, 19:24, 20:1, 27:17, 27:20, 27:25, 28:4, 28:6, 28:11, 28:14, 28:18, 28:22, 28:25, 29:5, 29:7, 31:5, 31:14, 31:20, 33:19, 57:1, 57:15, 73:19, 84:17, 84:21, 84:23, 85:2, 85:6, 85:12, 102:8, 102:10, 102:16, 108:24, 111:6, 111:8, 112:6, 117:4
**Patel** [1] - 85:1
**patient** [5] - 26:2, 26:17, 27:5, 27:11, 29:13

**patients** [1] - 6:25
**Patterson** [2] - 17:12, 96:1
**pay** [14] - 28:8, 28:9, 28:20, 29:1, 29:14, 30:17, 30:22, 32:8, 32:10, 34:5, 71:24, 72:23, 73:2, 73:6
**paycheck** [4] - 27:6, 27:12, 29:12, 32:25
**paying** [2] - 30:20, 97:11
**PC** [1] - 2:5
**Pennsylvania** [1] - 1:16
**people** [38] - 5:8, 9:2, 9:10, 15:25, 19:10, 24:14, 25:1, 41:15, 46:8, 46:21, 53:1, 57:9, 57:17, 62:24, 64:3, 64:5, 64:19, 76:8, 78:10, 78:15, 80:14, 80:20, 82:19, 86:15, 92:15, 92:22, 99:17, 99:19, 103:21, 107:14, 110:3, 110:5, 110:8, 111:18, 112:17, 115:14, 116:17, 118:5
**people's** [1] - 69:9
**percent** [2] - 90:3, 90:4
**peremptory** [1] - 16:7
**perhaps** [3] - 70:18, 91:5, 117:23
**period** [1] - 38:11
**permit** [1] - 51:6
**permitted** [1] - 89:1
**person** [24] - 14:4, 18:15, 32:23, 40:6, 40:11, 43:20, 45:23, 61:22, 83:13, 89:14, 89:17, 90:20, 94:6, 94:16, 94:25, 95:3, 95:10, 96:4, 96:8, 101:10, 115:23, 117:18, 118:8
**personal** [6] - 51:9, 51:24, 52:14, 59:18, 98:20, 105:7
**personally** [2] - 61:10, 69:6
**perspective** [3] - 14:2, 29:12, 36:24
**philosophical** [1] - 90:14
**physical** [1] - 51:7
**pick** [2] - 80:14, 80:18
**picked** [3] - 4:3, 27:25,

33:23
**pipe** [1] - 46:8
**place** [3] - 82:9, 82:10, 92:11
**Plaintiff** [2] - 1:3, 1:11
**plan** [1] - 97:11
**Planned** [35] - 3:25, 4:17, 8:2, 8:23, 10:11, 10:21, 12:18, 13:20, 55:9, 66:11, 68:15, 69:12, 74:9, 74:18, 74:25, 75:14, 97:5, 97:19, 98:9, 98:14, 98:24, 99:1, 99:6, 99:8, 103:11, 103:22, 103:24, 104:1, 104:6, 106:2, 116:9, 116:16, 116:17, 118:2
**planning** [4] - 71:16, 72:16, 73:8, 79:3
**platform** [1] - 105:7
**plea** [3] - 88:20, 93:17, 95:8
**point** [25] - 12:16, 13:9, 14:18, 16:18, 18:7, 18:23, 19:20, 26:21, 42:21, 51:23, 56:18, 69:4, 71:22, 80:11, 80:14, 109:22, 110:12, 112:8, 112:22, 113:2, 113:9, 113:16, 114:13, 118:11
**pointed** [1] - 15:7
**points** [1] - 105:13
**police** [4] - 82:1, 82:3, 82:14, 82:23
**Police** [2] - 44:13, 44:20
**political** [4] - 51:9, 90:13, 103:15, 117:22
**politicians** [1] - 103:11
**portfolio** [1] - 105:22
**posed** [1] - 111:25
**position** [13] - 12:12, 14:16, 17:24, 31:13, 40:11, 52:5, 57:7, 68:23, 87:16, 102:24, 113:25, 114:15, 116:19
**positions** [3] - 21:15, 116:8, 117:18
**positive** [1] - 89:2
**possible** [3] - 46:14, 47:7, 47:8
**possibly** [4] - 9:22,

45:2, 89:12, 112:25
**posts** [1] - 105:14
**potential** [3] - 14:19, 14:22, 73:17
**potentially** [7] - 71:1, 71:2, 71:6, 73:4, 73:13, 112:17, 114:10
**practical** [1] - 114:2
**practice** [1] - 109:25
**practicing** [2] - 77:24, 78:24
**precise** [1] - 14:23
**prefers** [1] - 41:2
**present** [1] - 58:18
**presented** [8] - 13:8, 16:24, 22:21, 98:6, 98:18, 114:10, 114:11, 114:12
**presenting** [1] - 90:4
**presently** [2] - 58:20, 87:5
**presents** [1] - 101:8
**press** [1] - 105:15
**pressure** [1] - 95:4
**presuming** [1] - 46:11
**presumption** [3] - 46:23, 75:16, 75:19
**pretty** [4] - 12:19, 13:23, 117:5
**previous** [1] - 98:16
**primarily** [2] - 63:5, 68:11
**primary** [1] - 75:3
**print** [1] - 9:8
**pro** [3] - 10:23, 13:22, 103:3
**pro-choice** [1] - 103:3
**pro-life** [2] - 10:23, 13:22
**problem** [9] - 3:6, 42:2, 42:6, 42:10, 46:13, 71:3, 112:17, 114:4, 115:7
**proceed** [1] - 11:7
**proceedings** [2] - 101:15, 119:6
**process** [4] - 24:17, 24:18, 33:10, 47:1
**processes** [2] - 78:15
**program** [1] - 84:19
**project** [1] - 93:7
**promise** [1] - 75:23
**proof** [1] - 46:12
**proper** [1] - 12:4
**proposed** [1] - 109:17
**prosecution** [2] - 89:3, 116:14
**prosecutor** [1] - 43:13
**prosecutors** [3] -

44:4, 44:12, 46:5
**Prospective** [18] - 17:2, 19:17, 22:3, 31:12, 42:23, 49:5, 57:6, 57:19, 61:19, 61:24, 77:3, 77:6, 81:1, 85:17, 85:20, 96:2, 96:9, 109:10
**PROSPECTIVE** [433] - 3:23, 4:2, 4:6, 4:10, 4:15, 4:20, 4:25, 5:3, 5:9, 5:12, 5:14, 5:17, 5:20, 5:24, 6:2, 6:10, 6:13, 6:21, 6:24, 7:4, 7:6, 7:10, 7:15, 7:18, 7:21, 8:4, 8:8, 8:10, 8:12, 8:15, 8:19, 8:25, 9:5, 9:12, 9:15, 9:24, 10:12, 10:16, 10:19, 10:22, 10:25, 11:3, 11:12, 11:15, 11:20, 12:1, 17:9, 17:16, 17:25, 18:2, 18:5, 18:13, 18:17, 18:19, 18:21, 19:4, 19:6, 19:8, 19:10, 22:5, 22:13, 22:17, 23:15, 24:1, 24:7, 24:10, 25:3, 25:11, 25:13, 25:21, 25:24, 26:6, 26:8, 26:12, 26:15, 26:18, 26:22, 26:24, 27:2, 27:7, 27:14, 27:24, 28:3, 28:5, 28:9, 28:13, 28:17, 28:20, 28:24, 29:4, 29:6, 29:16, 29:19, 29:24, 30:1, 30:6, 30:8, 30:13, 30:16, 30:22, 31:2, 31:10, 34:23, 35:3, 35:15, 35:18, 35:22, 36:1, 36:4, 36:7, 36:9, 36:12, 36:14, 36:19, 37:1, 37:5, 37:7, 37:11, 37:14, 37:22, 38:1, 38:5, 38:10, 38:14, 38:17, 38:22, 38:24, 39:5, 39:9, 39:14, 39:17, 39:19, 39:21, 39:25, 40:3, 40:15, 40:21, 41:9, 43:2, 43:4, 43:8, 43:11, 43:14, 43:17, 43:20, 43:25, 44:5, 44:10, 44:15, 44:24, 45:2, 45:5, 45:8, 45:12, 45:15, 45:20, 45:25, 46:14, 46:18, 47:3, 47:7, 47:9, 47:19, 47:22,

48:2, 48:12, 49:16, 49:20, 49:23, 50:3, 50:6, 50:9, 50:13, 50:19, 50:23, 50:25, 51:14, 51:17, 51:25, 52:7, 52:11, 52:15, 52:20, 52:24, 53:10, 53:15, 53:25, 54:8, 54:11, 54:14, 54:19, 54:25, 55:9, 55:13, 55:15, 55:17, 55:20, 55:25, 56:2, 56:7, 56:10, 56:13, 56:16, 58:3, 58:9, 58:11, 58:13, 58:17, 58:20, 58:24, 59:4, 59:8, 59:15, 59:18, 59:21, 59:25, 60:3, 60:6, 60:9, 60:15, 60:23, 61:2, 61:9, 61:11, 61:18, 62:14, 62:16, 62:21, 62:23, 63:4, 63:8, 63:14, 63:23, 64:2, 64:8, 64:13, 64:18, 64:22, 65:1, 65:6, 65:11, 65:19, 65:22, 65:24, 66:1, 66:7, 66:10, 66:14, 66:21, 67:1, 67:5, 67:11, 67:18, 67:22, 67:25, 68:7, 68:9, 68:18, 68:25, 69:5, 69:10, 69:16, 69:25, 70:3, 70:6, 70:11, 70:18, 70:21, 70:24, 71:13, 71:19, 72:2, 72:7, 72:13, 72:25, 73:7, 73:10, 73:13, 73:15, 73:25, 74:4, 74:7, 74:11, 74:19, 74:22, 75:2, 75:8, 75:18, 75:25, 76:18, 77:21, 78:1, 78:4, 78:8, 78:13, 78:18, 78:22, 79:4, 79:7, 79:10, 79:17, 79:20, 79:23, 80:1, 80:8, 81:16, 81:19, 81:22, 81:25, 82:3, 82:6, 82:11, 82:15, 82:20, 83:3, 83:9, 83:11, 83:14, 83:18, 83:22, 83:25, 84:2, 84:6, 84:12, 84:19, 84:22, 84:24, 85:4, 85:8, 85:11, 86:8, 86:12, 86:17, 86:21, 87:1, 87:3, 87:6, 87:8, 87:11, 87:14, 87:17, 87:22, 88:1, 88:4, 88:7, 88:10, 88:13,

88:17, 89:6, 89:8, 89:15, 89:24, 90:11, 90:17, 91:2, 91:16, 91:20, 91:23, 92:1, 92:6, 92:17, 92:20, 92:22, 93:2, 93:7, 93:15, 93:20, 93:23, 94:1, 94:3, 94:8, 94:14, 94:18, 94:23, 95:13, 95:18, 96:18, 97:2, 97:5, 97:9, 97:12, 97:14, 97:17, 98:2, 98:7, 98:13, 99:4, 99:16, 99:23, 100:3, 100:8, 100:11, 100:14, 100:23, 101:2, 101:13, 101:18, 101:21, 101:25, 102:2, 102:6, 102:9, 102:15, 102:18, 102:21, 102:25, 103:3, 103:7, 103:14, 103:19, 104:14, 104:21, 105:1, 105:12, 105:21, 106:3, 106:6, 106:8, 106:10, 106:14, 106:18, 106:24, 107:4, 107:13, 107:17, 107:19, 107:22, 107:24, 108:1, 108:4, 108:9, 108:12, 108:21
**prospective** [20] - 12:2, 12:10, 17:6, 34:15, 34:20, 41:13, 48:13, 49:10, 57:23, 62:5, 77:12, 80:9, 81:6, 85:24, 96:13, 111:11, 111:25, 112:11, 115:19, 117:4
**protect** [1] - 21:15
**protein** [2] - 6:16, 7:12
**proteins** [7] - 6:1, 6:8, 6:9, 6:19, 6:22, 7:2, 7:8
**protest** [3] - 55:22, 99:22, 112:21
**protesting** [1] - 115:7
**protestors** [3] - 5:8, 107:18, 107:19
**protests** [1] - 86:15
**prove** [1] - 75:12
**proved** [2] - 24:22, 75:17
**proven** [2] - 23:5, 23:20

**proves** [1] - 46:23
**provide** [3] - 21:21, 51:6, 79:2
**provided** [3] - 32:15, 42:8, 118:7
**provides** [1] - 103:24
**providing** [1] - 111:9
**proximity** [2] - 49:24, 50:10
**public** [1] - 101:4
**publicly** [1] - 102:23
**pull** [2] - 14:20, 17:11
**punishment** [1] - 38:20
**purely** [4] - 68:12, 75:21, 76:5, 76:21
**push** [1] - 71:3
**put** [24] - 9:21, 12:20, 18:18, 23:19, 26:3, 29:20, 29:22, 30:25, 34:12, 38:25, 42:15, 52:25, 53:21, 54:6, 54:23, 66:24, 69:23, 84:14, 91:7, 91:13, 105:5, 105:14, 117:5, 117:10
**puts** [1] - 116:8
**putting** [3] - 30:11, 53:23, 102:23

**Q**

**quarter** [2] - 115:12, 118:9
**questioned** [1] - 13:1
**questioning** [2] - 12:21, 16:20
**Questions** [2] - 62:10, 81:10
**questions** [60] - 3:18, 3:19, 3:20, 6:14, 10:1, 11:5, 11:9, 11:11, 11:22, 12:6, 17:15, 17:17, 18:20, 18:23, 27:15, 29:8, 29:10, 29:18, 29:21, 30:2, 30:4, 30:12, 30:20, 30:21, 30:23, 31:4, 31:23, 31:24, 32:6, 33:22, 34:3, 40:20, 40:23, 41:22, 42:22, 43:1, 46:3, 48:7, 55:2, 56:17, 56:25, 57:2, 58:5, 61:15, 73:18, 73:19, 73:23, 76:25, 80:5, 85:14, 86:3, 91:21, 95:23, 104:22, 105:25, 108:13, 109:16, 109:17,

114:23
**quickly** [5] - 3:11, 22:10, 33:5, 73:21, 115:24
**quite** [6] - 5:4, 15:16, 21:14, 21:20, 33:11, 51:22
**quotes** [1] - 105:16

**R**

**raise** [5] - 40:22, 41:4, 57:22, 77:10, 96:12
**raised** [4] - 14:18, 41:14, 51:17, 93:17
**raising** [1] - 117:21
**rally** [2] - 55:23, 99:22
**rarefied** [1] - 76:11
**rate** [3] - 3:4, 20:20, 21:14
**rather** [2] - 26:4, 95:2
**re** [2] - 22:3, 42:23
**re-entered** [2] - 22:3, 42:23
**reach** [1] - 95:16
**read** [9] - 8:9, 8:12, 12:18, 29:2, 42:11, 106:9, 106:10, 106:11, 112:24
**reading** [1] - 30:20
**real** [2] - 86:16, 86:17
**realize** [2] - 22:18, 113:20
**really** [8] - 9:20, 29:22, 30:23, 33:15, 40:16, 53:6, 104:12, 116:11
**reason** [7] - 20:7, 20:9, 21:11, 23:11, 25:22, 97:18, 113:7
**reasonable** [3] - 23:6, 23:21, 102:5
**receive** [4] - 12:17, 85:9, 99:6, 99:17
**received** [2] - 12:17, 65:16
**receiving** [1] - 88:22
**recently** [1] - 66:15
**Recess** [3] - 3:13, 80:17
**recognize** [2] - 50:5, 50:7
**recognized** [1] - 39:10
**recognizes** [1] - 14:6
**record** [7] - 6:15, 15:14, 22:16, 35:21, 56:12, 62:9, 105:17
**reflect** [1] - 69:9
**reflected** [1] - 98:16
**regard** [1] - 79:12
**regarding** [4] - 51:10,

55:23, 99:22, 111:9
**regardless** [1] - 17:20
**regular** [1] - 106:7
**relate** [3] - 11:9, 56:4, 56:5
**related** [3] - 25:5, 55:3, 86:20
**relates** [2] - 69:18, 86:22
**relating** [1] - 91:1
**relationship** [8] - 62:19, 63:19, 67:16, 81:17, 83:10, 87:2, 88:2, 88:4
**relative** [1] - 18:15
**released** [3] - 43:23, 43:25, 45:24
**religion** [3] - 51:20, 53:2, 90:19
**religious** [7] - 51:9, 51:24, 52:16, 53:3, 90:13, 90:25, 91:12
**remain** [4] - 17:4, 34:18, 81:4, 107:11
**remember** [3] - 10:17, 11:10, 44:18
**remembered** [1] - 10:20
**repeat** [2] - 93:3, 100:18
**Reporter** [3] - 2:19, 2:21, 119:10
**reporter** [2] - 6:6, 80:11
**REPORTER** [2] - 30:7, 119:1
**representation** [1] - 101:4
**representing** [1] - 75:10
**represents** [1] - 84:7
**reproduce** [2] - 108:22, 108:23
**reproductive** [25] - 16:12, 51:10, 55:7, 55:23, 56:4, 56:10, 56:16, 66:5, 91:11, 96:24, 97:20, 97:22, 98:5, 99:11, 99:14, 99:17, 99:22, 101:3, 106:16, 106:19, 107:3, 107:9, 108:20, 109:16, 114:18
**requested** [1] - 78:20
**requests** [1] - 12:6
**required** [2] - 17:21, 23:9
**reschedule** [1] - 71:2
**research** [2] - 7:6,

7:14
**respect** [2] - 15:17, 54:1
**respond** [2] - 108:8, 116:25
**response** [1] - 117:3
**responses** [1] - 32:12
**responsibilities** [1] - 82:18
**responsibility** [1] - 73:3
**rest** [3] - 65:17, 72:20, 115:15
**restroom** [1] - 80:22
**result** [2] - 28:4, 28:15
**return** [1] - 88:23
**returning** [1] - 90:15
**review** [1] - 79:12
**Rights** [3] - 1:16, 55:10, 55:19
**rights** [10] - 51:19, 53:2, 56:8, 56:9, 56:10, 56:14, 56:16, 116:9, 117:14, 117:25
**rigid** [2] - 71:5, 71:21
**risk** [1] - 6:3
**RMR** [2] - 2:20, 119:9
**ROBERT** [1] - 2:5
**Robert** [2] - 2:5, 11:8
**robust** [1] - 21:6
**rolling** [1] - 10:12
**room** [3] - 24:20, 32:20, 104:16
**Room** [3] - 1:13, 2:21, 119:10
**rule** [1] - 9:21
**ruling** [2] - 33:18, 109:20
**rushed** [1] - 71:23

**S**

**samples** [1] - 7:1
**SANJAY** [1] - 1:15
**Saturday** [1] - 36:10
**saw** [3] - 107:19, 114:3
**scale** [1] - 94:1
**schedule** [3] - 71:1, 71:5, 71:21
**school** [3] - 51:18, 60:18
**sciences** [1] - 10:6
**scientific** [2] - 15:4, 16:20
**scientist** [2] - 7:17, 15:5
**seat** [1] - 41:7
**seated** [1] - 17:7

**second** [6] - 23:10, 41:7, 63:18, 64:10, 77:23, 115:25
**second-guess** [1] - 23:10
**Section** [1] - 1:16
**see** [11] - 13:9, 33:13, 38:8, 68:19, 75:20, 92:14, 113:13, 113:21, 117:23, 118:9
**seeing** [1] - 42:4
**seem** [5] - 8:21, 20:19, 94:24, 109:11, 109:14
**Sefranek** [3] - 2:20, 119:9, 119:9
**SEFRANEK** [1] - 119:3
**selected** [15] - 26:4, 26:5, 27:4, 28:6, 28:15, 28:23, 29:13, 50:18, 71:9, 71:10, 71:18, 72:23, 72:25, 73:6, 76:1
**selection** [1] - 21:5
**send** [2] - 3:3, 26:16
**sense** [7] - 15:4, 19:19, 34:12, 47:14, 53:13, 106:22, 114:23
**sentence** [2] - 37:8, 37:9
**sentenced** [1] - 37:6
**sentencing** [2] - 36:20, 43:17
**sentiments** [1] - 9:22
**separate** [4] - 66:18, 89:21, 98:4, 105:7
**separately** [1] - 53:22
**September** [3] - 71:6, 71:13, 72:1
**series** [2] - 81:13, 100:10
**seriously** [1] - 73:3
**serum** [1] - 7:7
**serve** [7] - 4:4, 27:25, 28:6, 28:16, 28:23, 33:16, 101:13
**served** [1] - 101:7
**service** [1] - 99:18
**services** [7] - 51:7, 68:17, 78:14, 78:16, 78:20, 91:11, 103:25
**SESSION** [2] - 1:7, 1:8
**set** [4] - 71:5, 102:11, 115:13, 118:10
**seven** [2] - 5:16, 5:17
**several** [1] - 62:16
**shared** [1] - 67:5

**shooting** [1] - 43:21
**short** [1] - 80:10
**shot** [1] - 45:24
**shouting** [2] - 110:4, 110:13
**show** [1] - 3:12
**shows** [1] - 76:7
**shy** [1] - 24:24
**side** [7] - 11:17, 13:24, 75:1, 103:15, 116:14, 116:18
**sidewalk** [3] - 107:15, 110:5, 110:22
**signal** [1] - 48:6
**similar** [4] - 18:12, 25:7, 25:17, 25:20
**simply** [3] - 15:24, 110:19, 112:18
**single** [1] - 26:1
**sit** [14] - 15:23, 22:4, 29:3, 48:21, 49:9, 50:15, 71:11, 71:22, 72:24, 73:2, 77:13, 102:11, 109:5, 109:21
**sitting** [3] - 69:19, 70:13, 71:8
**situation** [1] - 43:5
**six** [2] - 80:20, 86:12
**skeptical** [4] - 90:7, 94:4, 94:21
**skepticism** [3] - 93:21, 93:24, 95:8
**slight** [1] - 90:20
**slow** [2] - 6:5, 57:8
**slowly** [1] - 80:19
**snapshot** [1] - 105:11
**SO** [1] - 102:22
**social** [2] - 90:13, 105:14
**Society** [2] - 1:18, 1:21
**Sol** [2] - 83:18, 83:19
**solar** [5] - 83:18, 83:19, 83:23, 84:13, 84:14
**solely** [1] - 90:16
**solicit** [1] - 103:12
**solicited** [1] - 111:23
**someone** [9] - 6:13, 15:22, 21:18, 89:11, 92:7, 92:9, 95:1, 108:1, 108:4
**sometime** [1] - 110:14
**somewhat** [4] - 22:19, 34:6, 36:23, 55:2
**somewhere** [2] - 64:1, 70:7
**sorry** [19] - 18:5, 19:4, 19:9, 22:6, 27:20,

29:25, 30:7, 45:5, 48:15, 49:7, 54:10, 72:9, 85:2, 88:3, 93:2, 99:25, 100:3, 100:17, 109:7
**sort** [9] - 16:20, 33:5, 41:17, 42:9, 47:14, 48:18, 75:13, 76:22, 111:16
**speaking** [3] - 49:12, 65:15, 103:7
**speaks** [1] - 105:8
**specific** [2] - 42:7, 71:5
**specifically** [4] - 41:21, 42:3, 100:12, 101:1
**specifics** [1] - 84:14
**spectrum** [1] - 75:1
**speed** [1] - 80:19
**spending** [1] - 72:16
**spent** [1] - 32:20
**St** [3] - 87:8, 87:10, 88:12
**staff** [2] - 79:1, 84:7
**stand** [3] - 32:18, 49:8, 68:17
**standard** [1] - 102:4
**standing** [4] - 17:4, 34:18, 62:3, 81:4
**standpoint** [1] - 68:13
**stands** [1] - 76:3
**start** [12] - 14:18, 17:18, 21:13, 35:4, 42:22, 49:21, 62:18, 69:20, 86:5, 90:7, 94:19, 115:12
**started** [4] - 39:11, 92:8, 99:4, 99:8
**starting** [3] - 3:21, 93:5, 109:18
**state** [3] - 75:12, 75:16, 82:4
**State** [3] - 81:25, 82:9, 82:10
**statement** [3] - 15:10, 23:24, 32:4
**statements** [3] - 32:11, 32:15, 105:16
**States** [4] - 2:21, 15:19, 15:25, 116:12
**STATES** [3] - 1:1, 1:2, 1:9
**stating** [1] - 23:8
**statistics** [2] - 6:14, 6:17
**statute** [3] - 9:9, 76:10, 91:10
**statutes** [1] - 76:19
**stay** [5] - 20:21, 20:22,

62:3, 71:24, 72:4
**staying** [1] - 77:5
**stem** [1] - 7:3
**stenographic** [1] - 119:5
**Stenographic** [1] - 2:19
**step** [25] - 11:24, 17:3, 19:15, 34:16, 34:17, 41:1, 41:7, 48:10, 49:6, 57:4, 57:20, 57:21, 61:16, 61:25, 62:2, 77:1, 77:7, 77:8, 77:9, 80:6, 81:3, 85:15, 85:22, 95:24, 96:11
**STEPHEN** [1] - 1:20
**stepmother** [4] - 87:3, 87:4, 88:6, 88:8
**steroids** [1] - 57:13
**stick** [4] - 13:8, 16:23, 63:18, 104:8
**still** [10] - 5:11, 8:14, 12:17, 38:23, 72:5, 72:21, 89:10, 95:15, 105:5, 114:1
**stop** [3] - 56:18, 92:16, 115:1
**stopped** [4] - 3:18, 114:22, 114:24
**story** [2] - 89:10, 89:11
**straight** [1] - 47:1
**strategic** [2] - 78:17, 79:3
**Street** [8] - 1:13, 1:19, 2:10, 5:5, 5:6, 49:25, 50:2, 86:6
**stretch** [1] - 71:14
**strictly** [1] - 7:7
**strike** [3] - 9:11, 12:9, 31:14
**strong** [6] - 15:16, 52:22, 53:19, 54:20, 91:12, 93:24
**stronger** [1] - 15:9
**strongest** [1] - 107:2
**strongly** [12] - 13:23, 16:13, 19:21, 54:1, 75:5, 98:8, 98:11, 98:13, 98:23, 103:1, 103:5, 116:8
**studied** [8] - 59:1, 60:12, 62:13, 77:19, 83:6, 87:25, 88:8, 88:11
**stuff** [2] - 6:4, 40:2
**subject** [3] - 7:19, 105:18, 117:20
**subscription** [1] -

10:13
**subsidiary** [1] - 85:5
**substituted** [1] - 101:24
**suburbs** [1] - 83:13
**succumb** [1] - 95:4
**sufficiently** [1] - 49:3
**suggest** [1] - 3:3
**suggesting** [1] - 114:3
**suggests** [1] - 13:25
**Suite** [2] - 1:25, 2:3
**Superior** [4] - 43:9, 43:11, 58:7, 86:24
**support** [24] - 8:24, 12:16, 67:13, 67:17, 67:22, 67:24, 67:25, 68:10, 68:22, 74:13, 74:15, 74:16, 95:11, 98:14, 98:23, 100:17, 103:11, 103:13, 106:16, 108:20, 110:21, 111:23, 114:6
**supporting** [8] - 67:9, 68:6, 68:22, 74:9, 75:14, 100:12, 101:1, 116:9
**supportive** [10] - 67:20, 68:4, 68:21, 69:1, 69:3, 74:14, 99:1, 99:3, 99:12, 99:14
**supports** [3] - 100:21, 103:1, 103:5
**suppose** [1] - 8:16
**supposed** [2] - 70:8, 92:6
**supposedly** [3] - 111:5, 117:2, 118:8
**Surgi** [2] - 5:2, 86:6
**Surgi-Clinic** [2] - 5:2, 86:6
**SWAT** [2] - 82:6, 82:8
**swear** [9] - 17:5, 34:19, 49:8, 57:22, 62:4, 77:10, 81:5, 85:23, 96:12
**sworn** [10] - 17:6, 34:20, 49:10, 57:23, 62:5, 77:12, 81:6, 85:24, 90:2, 96:13
**sympathetic** [6] - 69:12, 92:18, 97:24, 98:9, 99:1, 99:3
**system** [5] - 36:23, 38:11, 38:13, 46:5, 59:2
**systems** [3] - 5:20, 5:23, 5:24

# T

**talks** [2] - 41:23, 41:25
**TAMARA** [1] - 119:3
**Tamara** [3] - 2:20, 119:9, 119:9
**team** [2] - 82:6, 82:8
**tear** [2] - 7:8, 7:10
**technically** [1] - 92:8
**technology** [1] - 78:15
**television** [1] - 43:22
**ten** [3] - 70:22, 70:24, 72:17
**term** [1] - 109:3
**terms** [51] - 3:17, 13:3, 16:6, 16:18, 21:15, 22:22, 23:16, 24:17, 34:8, 34:9, 50:1, 50:21, 51:23, 52:4, 52:21, 54:23, 56:14, 60:17, 63:1, 63:17, 63:19, 64:5, 65:3, 65:7, 67:8, 67:16, 68:16, 70:14, 70:16, 71:23, 76:13, 78:11, 79:2, 79:8, 81:18, 82:17, 83:12, 84:10, 84:13, 86:22, 91:8, 98:25, 104:6, 112:17, 113:25, 117:22, 118:2, 118:3, 118:4
**testified** [1] - 22:24
**testifies** [2] - 89:17, 89:22
**testify** [7] - 44:20, 88:21, 89:3, 89:17, 93:18, 94:7, 95:7
**testifying** [1] - 82:23
**testimony** [12] - 44:23, 83:1, 83:2, 89:9, 90:7, 94:20, 95:5, 95:10, 95:12, 95:15, 111:9, 112:3
**textbook** [3] - 10:5, 15:2, 15:12
**THE** [849] - 1:1, 1:1, 1:9, 3:2, 3:8, 3:9, 3:10, 3:14, 3:21, 3:23, 4:2, 4:6, 4:10, 4:15, 4:20, 4:22, 4:25, 5:3, 5:9, 5:12, 5:14, 5:17, 5:20, 5:24, 6:2, 6:5, 6:10, 6:13, 6:21, 6:24, 7:4, 7:6, 7:10, 7:15, 7:18, 7:21, 7:23, 8:4, 8:8, 8:10, 8:12, 8:15, 8:19, 8:25, 9:5, 9:12, 9:15, 9:24, 10:12,

10:16, 10:18, 10:19, 10:22, 10:25, 11:3, 11:5, 11:7, 11:12, 11:15, 11:20, 11:22, 11:24, 12:1, 12:3, 12:5, 12:11, 12:14, 13:3, 13:7, 14:2, 14:11, 14:13, 14:20, 16:5, 17:3, 17:7, 17:9, 17:10, 17:16, 17:17, 17:25, 18:1, 18:2, 18:4, 18:5, 18:7, 18:13, 18:14, 18:17, 18:18, 18:19, 18:20, 18:21, 18:22, 18:25, 19:4, 19:6, 19:8, 19:10, 19:15, 19:18, 19:25, 20:2, 20:5, 20:8, 20:12, 20:16, 20:24, 21:10, 22:4, 22:5, 22:7, 22:13, 22:14, 22:17, 23:8, 23:15, 23:16, 24:1, 24:2, 24:7, 24:8, 24:10, 24:12, 25:3, 25:4, 25:11, 25:12, 25:13, 25:15, 25:21, 25:22, 25:24, 26:3, 26:6, 26:7, 26:8, 26:10, 26:12, 26:13, 26:15, 26:16, 26:18, 26:20, 26:22, 26:23, 26:24, 26:25, 27:2, 27:3, 27:7, 27:8, 27:14, 27:15, 27:19, 27:24, 28:3, 28:5, 28:9, 28:13, 28:17, 28:20, 28:24, 29:4, 29:6, 29:9, 29:11, 29:16, 29:17, 29:19, 29:20, 29:24, 29:25, 30:1, 30:3, 30:6, 30:7, 30:8, 30:10, 30:13, 30:14, 30:16, 30:19, 30:22, 30:25, 31:2, 31:3, 31:7, 31:10, 31:11, 31:13, 31:16, 31:19, 32:16, 33:17, 33:20, 34:16, 34:21, 34:23, 34:24, 35:3, 35:4, 35:15, 35:16, 35:18, 35:19, 35:22, 35:23, 36:1, 36:3, 36:4, 36:5, 36:7, 36:8, 36:9, 36:11, 36:12, 36:13, 36:14, 36:15, 36:19, 36:24, 37:1, 37:2, 37:5, 37:6, 37:7, 37:8, 37:11, 37:12, 37:14, 37:17,

37:22, 37:24, 38:1, 38:3, 38:5, 38:7, 38:10, 38:12, 38:14, 38:15, 38:17, 38:19, 38:22, 38:23, 38:24, 38:25, 39:5, 39:7, 39:9, 39:13, 39:14, 39:16, 39:17, 39:18, 39:19, 39:20, 39:21, 39:23, 39:25, 40:1, 40:3, 40:5, 40:15, 40:18, 40:21, 40:25, 41:3, 41:6, 41:9, 41:10, 41:16, 41:21, 42:20, 42:24, 43:2, 43:4, 43:8, 43:11, 43:14, 43:17, 43:20, 43:25, 44:5, 44:10, 44:15, 44:24, 45:2, 45:5, 45:8, 45:12, 45:15, 45:17, 45:20, 45:25, 46:14, 46:18, 47:3, 47:7, 47:9, 47:12, 47:19, 47:20, 47:22, 48:2, 48:5, 48:9, 48:12, 48:14, 48:17, 48:23, 48:25, 49:6, 49:11, 49:16, 49:17, 49:20, 49:21, 49:23, 50:1, 50:3, 50:5, 50:6, 50:7, 50:9, 50:11, 50:13, 50:14, 50:19, 50:21, 50:23, 50:24, 50:25, 51:1, 51:14, 51:15, 51:17, 51:22, 51:25, 52:3, 52:7, 52:8, 52:11, 52:13, 52:15, 52:17, 52:20, 52:21, 52:24, 53:5, 53:10, 53:11, 53:15, 53:16, 53:25, 54:3, 54:8, 54:10, 54:11, 54:14, 54:16, 54:19, 54:22, 54:25, 55:1, 55:9, 55:11, 55:13, 55:14, 55:15, 55:17, 55:18, 55:20, 55:21, 55:25, 56:1, 56:2, 56:4, 56:7, 56:9, 56:10, 56:11, 56:13, 56:14, 56:16, 56:17, 56:24, 57:2, 57:4, 57:7, 57:14, 57:16, 57:20, 57:24, 58:3, 58:4, 58:9, 58:10, 58:11, 58:12, 58:13, 58:15, 58:17, 58:18, 58:20, 58:22, 58:24, 58:25, 59:4, 59:5, 59:8, 59:9, 59:15, 59:17,

59:18, 59:20, 59:21, 59:22, 59:25, 60:1, 60:3, 60:4, 60:6, 60:7, 60:9, 60:10, 60:15, 60:19, 60:23, 60:24, 61:2, 61:5, 61:9, 61:11, 61:14, 61:16, 61:18, 61:20, 61:22, 61:25, 62:6, 62:14, 62:15, 62:16, 62:18, 62:21, 62:22, 62:23, 62:25, 63:4, 63:6, 63:8, 63:10, 63:14, 63:17, 63:23, 63:25, 64:2, 64:5, 64:8, 64:9, 64:13, 64:16, 64:18, 64:21, 64:22, 64:24, 65:1, 65:3, 65:6, 65:7, 65:11, 65:14, 65:19, 65:20, 65:22, 65:23, 65:24, 65:25, 66:1, 66:2, 66:7, 66:8, 66:10, 66:12, 66:14, 66:17, 66:21, 66:23, 67:1, 67:4, 67:5, 67:7, 67:11, 67:15, 67:18, 67:19, 67:22, 67:24, 67:25, 68:3, 68:7, 68:8, 68:9, 68:14, 68:18, 68:19, 68:25, 69:3, 69:5, 69:8, 69:10, 69:11, 69:16, 69:18, 69:25, 70:2, 70:3, 70:5, 70:6, 70:9, 70:11, 70:12, 70:18, 70:19, 70:21, 70:23, 70:24, 71:4, 71:13, 71:17, 71:19, 71:20, 72:2, 72:5, 72:7, 72:11, 72:13, 72:16, 72:25, 73:4, 73:7, 73:8, 73:10, 73:11, 73:13, 73:14, 73:15, 73:17, 73:20, 73:25, 74:4, 74:7, 74:11, 74:19, 74:22, 75:2, 75:8, 75:18, 75:25, 76:12, 76:18, 76:25, 77:4, 77:7, 77:13, 77:21, 77:22, 78:1, 78:2, 78:4, 78:6, 78:8, 78:11, 78:13, 78:17, 78:18, 78:19, 78:22, 79:1, 79:4, 79:5, 79:7, 79:8, 79:10, 79:13, 79:17, 79:18, 79:20, 79:23, 80:1, 80:4, 80:6, 80:8, 80:10, 80:18, 80:23,

80:25, 81:2, 81:7, 81:16, 81:17, 81:19, 81:20, 81:22, 81:23, 81:25, 82:1, 82:3, 82:4, 82:6, 82:8, 82:11, 82:13, 82:15, 82:16, 82:20, 82:21, 83:3, 83:4, 83:9, 83:10, 83:11, 83:12, 83:14, 83:15, 83:18, 83:20, 83:22, 83:23, 83:25, 84:1, 84:2, 84:3, 84:6, 84:9, 84:12, 84:16, 84:19, 84:22, 84:24, 84:25, 85:4, 85:8, 85:9, 85:11, 85:13, 85:15, 85:18, 85:21, 85:25, 86:8, 86:10, 86:12, 86:13, 86:17, 86:19, 86:21, 86:22, 87:1, 87:2, 87:3, 87:4, 87:6, 87:7, 87:8, 87:10, 87:11, 87:12, 87:14, 87:15, 87:17, 87:18, 87:22, 87:23, 88:1, 88:3, 88:4, 88:6, 88:7, 88:8, 88:10, 88:12, 88:13, 88:14, 88:17, 88:18, 89:6, 89:7, 89:8, 89:13, 89:15, 89:16, 89:24, 90:6, 90:11, 90:12, 90:17, 90:25, 91:2, 91:3, 91:16, 91:18, 91:20, 91:23, 92:1, 92:6, 92:17, 92:20, 92:22, 92:25, 93:2, 93:5, 93:7, 93:15, 93:20, 93:23, 94:1, 94:3, 94:8, 94:14, 94:18, 94:23, 95:13, 95:18, 95:22, 95:24, 96:3, 96:7, 96:10, 96:14, 96:18, 96:19, 97:2, 97:3, 97:5, 97:7, 97:9, 97:11, 97:12, 97:13, 97:14, 97:15, 97:17, 97:18, 98:2, 98:4, 98:7, 98:8, 98:13, 98:25, 99:4, 99:13, 99:16, 99:20, 99:23, 100:2, 100:3, 100:5, 100:8, 100:9, 100:11, 100:12, 100:14, 100:19, 100:23, 100:25, 101:2, 101:6, 101:13, 101:17, 101:18, 101:20,

101:21, 101:22, 101:25, 102:1, 102:2, 102:3, 102:6, 102:7, 102:9, 102:15, 102:18, 102:21, 102:25, 103:3, 103:7, 103:14, 103:18, 103:19, 103:23, 104:5, 104:14, 104:21, 104:23, 105:1, 105:10, 105:12, 105:18, 105:21, 105:25, 106:3, 106:6, 106:8, 106:10, 106:14, 106:18, 106:24, 107:4, 107:13, 107:17, 107:19, 107:22, 107:24, 108:1, 108:4, 108:6, 108:9, 108:10, 108:12, 108:14, 108:17, 108:21, 108:25, 109:4, 109:7, 109:11, 109:14, 110:7, 110:12, 110:15, 110:18, 111:3, 111:7, 112:4, 112:7, 112:8, 113:12, 113:19, 114:19, 114:22, 115:6, 115:11, 115:22, 116:6, 116:22, 117:7

**theme** [1] - 113:24
**themselves** [1] - 116:9
**they've** [3] - 25:6, 86:23, 100:6
**thinking** [3] - 73:22, 90:1, 107:5
**thinks** [1] - 15:22
**Thomas** [4] - 1:18, 87:8, 87:10, 88:12
**thomas** [1] - 1:21
**three** [7] - 27:22, 28:1, 32:24, 42:9, 43:23, 44:19
**throughout** [3] - 27:13, 56:3, 71:24
**throw** [1] - 95:1
**tilt** [2] - 27:19, 104:19
**tissue** [2] - 7:1, 7:13
**today** [11] - 8:14, 10:21, 11:1, 13:21, 32:5, 40:16, 45:9, 79:21, 104:20, 107:16, 110:14
**together** [3] - 23:19, 34:12, 40:13

**tomorrow** [5] - 3:12, 3:15, 113:4, 115:16, 118:9
**took** [2] - 31:22, 113:16
**topic** [1] - 15:4
**totally** [2] - 40:9, 109:15
**towards** [6] - 46:16, 69:12, 70:3, 75:14, 104:19
**town** [3] - 63:5, 64:1, 64:3
**transcript** [2] - 119:4, 119:6
**TRANSCRIPT** [1] - 1:8
**travel** [2] - 69:25, 70:25
**treat** [1] - 82:25
**treated** [1] - 46:9
**treatment** [1] - 88:22
**trial** [18] - 22:21, 27:21, 28:12, 29:2, 33:10, 46:22, 56:20, 69:18, 71:11, 71:24, 72:19, 88:18, 101:7, 101:20, 102:5, 111:18, 114:12, 118:12
**TRIAL** [2] - 1:4, 1:8
**trials** [2] - 21:3, 21:7
**trick** [2] - 47:9, 47:13
**tried** [6] - 43:9, 45:11, 45:13, 79:22, 79:24, 85:6
**trooper** [1] - 82:4
**trouble** [2] - 26:9, 46:2
**true** [7] - 23:2, 71:19, 75:8, 119:4, 119:5
**truly** [1] - 66:25
**truth** [3] - 31:23, 90:4, 94:24
**truthful** [5] - 33:15, 47:17, 88:23, 89:14, 89:19
**truthfully** [1] - 47:21
**try** [6] - 6:17, 10:7, 11:17, 93:7, 103:12, 115:4
**trying** [7] - 6:3, 47:14, 53:13, 53:18, 66:23, 67:7, 67:19, 68:14, 68:19, 71:17, 72:6, 84:13, 92:16, 100:14, 100:19, 115:8, 115:9
**Tupelo** [1] - 1:22
**turn** [3] - 35:19, 57:24, 89:11
**turned** [1] - 104:15

**Turner** [2] - 110:16, 111:1
**turner** [4] - 111:8, 111:14, 111:16, 113:11
**twice** [3] - 3:25, 12:24, 49:25
**two** [23] - 8:3, 8:4, 8:5, 12:21, 17:17, 29:20, 30:4, 30:23, 32:2, 32:11, 32:18, 32:22, 33:23, 40:12, 42:9, 44:19, 51:5, 56:17, 66:16, 69:19, 111:21, 114:19, 114:22
**type** [7] - 5:18, 10:5, 61:10, 65:1, 65:13, 84:17, 84:21
**types** [3] - 10:4, 15:13, 84:8
**typically** [2] - 67:11, 69:7

## U

**U.S** [2] - 1:12, 43:13
**U.S.C** [1] - 115:4
**umbrella** [1] - 100:15
**unbiased** [1] - 14:9
**uncomfortable** [4] - 13:17, 16:6, 22:19, 40:10
**under** [11] - 32:4, 76:11, 89:3, 90:2, 95:2, 112:1, 112:9, 112:19, 113:1, 114:14, 118:7
**understood** [9] - 20:14, 20:16, 30:5, 31:24, 34:1, 34:7, 54:16, 68:3, 102:10
**undue** [1] - 32:7
**unfortunate** [1] - 44:22
**United** [4] - 2:21, 15:19, 15:24, 116:12
**UNITED** [3] - 1:1, 1:2, 1:9
**University** [1] - 39:21
**unjustified** [1] - 51:5
**unless** [1] - 56:18
**unlike** [1] - 90:8
**untruthful** [1] - 113:6
**unusual** [2] - 86:14, 86:19
**up** [49] - 3:12, 12:23, 14:3, 14:20, 17:3, 17:8, 21:6, 21:10, 25:8, 31:3, 32:6,

34:16, 34:17, 40:5, 40:6, 40:7, 40:20, 42:1, 43:1, 43:21, 45:21, 49:6, 49:7, 49:13, 52:4, 57:10, 57:21, 57:25, 62:2, 62:6, 77:8, 77:9, 80:14, 80:15, 80:18, 81:4, 85:22, 85:25, 92:24, 92:25, 96:11, 96:15, 101:14, 105:3, 108:19, 113:13, 115:13, 118:10
**upper** [1] - 39:22
**urine** [1] - 7:7
**useful** [1] - 99:18

## V

**VA** [1] - 2:10
**values** [1] - 36:20
**variations** [1] - 113:24
**various** [2] - 99:2, 100:21
**verdict** [3] - 40:14, 76:15, 90:16
**versed** [1] - 15:3
**versions** [1] - 10:6
**victim** [8] - 18:11, 25:6, 35:6, 35:10, 35:25, 36:2, 36:5, 43:6
**video** [1] - 114:5
**view** [10] - 13:10, 16:16, 16:21, 37:8, 44:3, 44:23, 52:9, 52:13, 52:14, 53:5, 89:13, 91:5, 91:6, 99:2, 104:5, 112:15, 114:9, 118:4
**viewing** [1] - 118:3
**views** [33] - 4:12, 15:17, 16:13, 21:16, 24:23, 24:25, 51:23, 51:24, 52:4, 53:6, 54:4, 54:6, 63:11, 68:22, 69:9, 69:12, 89:20, 90:25, 91:12, 91:14, 91:17, 97:20, 98:5, 98:8, 98:11, 98:13, 100:21, 104:20, 104:24, 105:7, 117:6, 117:8, 117:10
**violated** [5] - 4:8, 4:13, 76:10, 76:20
**violation** [1] - 4:18
**Virginia** [1] - 50:4
**voice** [1] - 92:25

**vs** [1] - 1:4

## W

**wait** [7] - 3:4, 80:23, 89:16, 89:21, 90:9, 99:24, 103:23
**waiting** [2] - 39:9, 57:11
**walked** [1] - 39:11
**WALSH** [1] - 2:7
**wants** [3] - 31:3, 33:18, 56:19
**Washington** [9] - 1:5, 1:14, 1:17, 1:25, 2:4, 2:22, 86:6, 99:24, 119:11
**watching** [1] - 110:19
**ways** [1] - 46:1
**weak** [1] - 14:12
**week** [5] - 49:25, 70:22, 70:24, 72:16, 72:20
**weeks** [3] - 27:22, 28:2, 32:25
**weigh** [2] - 36:19, 37:15
**weight** [1] - 83:1
**welcome** [1] - 31:11
**well-versed** [1] - 15:3
**wet** [2] - 6:18, 6:20
**whole** [4] - 38:2, 57:9, 69:20, 81:13
**wife** [7] - 66:7, 68:20, 73:8, 74:1, 75:5, 76:15, 76:17
**WILLIAM** [2] - 1:6, 2:8
**willing** [10] - 14:12, 16:13, 21:6, 21:25, 24:23, 33:16, 71:11, 71:22, 73:5, 89:16
**willingness** [1] - 9:19
**wind** [2] - 40:7, 80:15
**wish** [2] - 56:24, 111:15
**withdraw** [1] - 109:6
**witness** [29] - 17:4, 18:11, 21:2, 25:6, 34:18, 35:6, 35:10, 35:25, 49:7, 57:21, 62:2, 77:9, 81:3, 82:25, 85:22, 88:20, 88:21, 89:21, 89:22, 90:8, 93:25, 94:16, 94:17, 94:22, 95:5, 95:6, 95:7, 110:11, 111:4
**witness's** [1] - 95:10
**witnessed** [1] - 111:10
**witnesses** [5] - 22:24,

89:2, 89:3, 90:9, 93:17

**witnessing** [1] - 117:2
**woman** [1] - 99:18
**women** [2] - 52:18, 99:17
**women's** [15] - 51:25, 56:2, 56:7, 56:9, 56:10, 56:14, 56:16, 99:11, 99:14, 99:24, 100:9, 100:19, 101:1, 101:3, 106:13
**wonder** [2] - 46:8, 110:10
**worded** [1] - 53:13
**words** [7] - 17:21, 22:25, 23:18, 24:21, 35:9, 35:24, 89:19
**worker** [1] - 39:12
**works** [6] - 7:23, 39:23, 64:19, 84:1, 117:12, 117:24
**world** [1] - 104:10
**worried** [3] - 27:4, 28:25, 29:15
**worry** [4] - 27:9, 27:10, 27:13, 28:22
**wound** [2] - 40:5, 40:6
**write** [1] - 105:15
**writes** [1] - 74:2
**writing** [2] - 74:9, 74:17
**written** [2] - 9:8, 23:16
**wrote** [5] - 5:5, 25:23, 30:23, 39:2

## Y

**year** [7] - 8:15, 8:16, 10:10, 36:11, 66:16, 100:1
**years** [11] - 5:16, 5:17, 8:3, 43:23, 55:13, 56:3, 59:16, 63:16, 66:22, 74:12, 82:15
**York** [4] - 81:25, 82:9, 82:12
**young** [1] - 48:18
**yourself** [4] - 17:8, 33:3, 57:25, 67:20

## Z

**zero** [1] - 94:3
**zeroing** [1] - 73:23