1     IN THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF COLUMBIA
2

3  UNITED STATES OF AMERICA,  ) Criminal Action
           ) No. 1:22-CR-096
         Plaintiff, )
4            ) **JURY TRIAL**
  vs.          )
5            ) Washington, D.C.
  LAUREN HANDY, JOHN HINSHAW, )
6  HEATHER IDONI, WILLIAM   ) **August 10, 2023**
  GOODMAN, HERB GERAGHTY,  ) **Time:  2:12 P.M.**
7            ) **AFTERNOON SESSION**
         Defendants. )
8

    **TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION**
9    BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
      UNITED STATES DISTRICT JUDGE
10

       A P P E A R A N C E S
11

12  For Plaintiff:  JOHN CRABB, JR.
         U.S. Attorney's Office
13        601 D Street NW
         Washington, DC 20530
14

         SANJAY HARIVADAN PATEL
15        DOJ-CRT
         Civil Rights Division, Criminal Section
16        950 Pennsylvania Avenue NW
         Washington, DC 20004
17

  For Defendant   MARTIN A. CANNON
18  LAUREN HANDY:   Thomas More Society
         16983 370th Street
19        Carson, IA 51525
20        STEPHEN M. CRAMPTON
         Thomas More Society
21        P.O. Box 4506
         Tupelo, MS 38803
22

         DENNIS E. BOYLE
23        BLERINA JASARI
         Boyle & Jasari, LLP
24        1050 Connecticut Avenue
         Suite 500
25        Washington, DC 20036

A P P E A R A N C E S - (Cont.)

```
For Defendant          ALFRED GUILLAUME, III
JOHN HINSHAW:           Law Offices of Alfred Guillaume, III, LLC
                        1350 Connecticut Avenue NW
                        Suite 308
                        Washington, DC 20036

For Defendant          ROBERT J. DUNN
HEATHER IDONI:          Robert J. Dunn, PC
                        1413 Center Avenue
                        Bay City, MI 48708

For Defendant          HOWARD J. WALSH, III
WILLIAM GOODMAN:        3712 Cardiff Court
                        Chevy Chase, MD 20815

For Defendant          JOHN C. KIYONAGA
HERB GERAGHTY:          600 Cameron Street
                        Alexandria, VA 22314
```

Stenographic Court Reporter:

```
                        Tamara M. Sefranek, RMR, CRR, CRC
                        Official Court Reporter
                        United States Courthouse, Room 6714
                        333 Constitution Avenue, NW
                        Washington, DC  20001
                        202-354-3246
```

```
 1                         P R O C E E D I N G S
 2            THE COURT:  Good afternoon everyone.
 3            (Everyone says:  Good afternoon, Your Honor.)
 4            THE COURT:  All right.  In terms of the juror, which
 5   is Juror 0239 that I had taken under advisement, I am going to
 6   excuse her for cause.
 7            I think it's a very close call, but my concern is
 8   that if -- she may become more comfortable with the rest of the
 9   jurors, but we don't know how divisive the discussions may be
10   even if she's comfortable in terms of within the jury pool.
11   And my concern is that she won't then participate.  So I'll
12   excuse her on those grounds.
13            THE LAW CLERK:  Would you like the next juror, Your
14   Honor?
15            THE COURT:  Yes, please.
16            MR. DUNN:  Judge, the next juror on my list does not
17   appear in the occupation report.
18            THE COURT:  I'm sorry?
19            MR. DUNN:  The next juror I have on the list does not
20   appear on the occupation report.
21            THE COURT:  Is it just blank?
22            MR. DUNN:  That would be ██████████████ 0876.
23            THE COURT:  Well, she may not work.  Are you
24   indicating they indicate no employment; is that what you're
25   saying?
```

```
 1                    MR. DUNN:  She's not in the occupation report, so we

 2        can't -- it doesn't list her.

 3                    THE COURT:  What I'm asking is -- can you hold on,

 4        please.  Let me just take a look.  0876 is on page 2.  She is

 5        listed here.

 6                    MR. DUNN:  Okay.  All right.  I didn't see her when I

 7        first looked.

 8                    THE COURT:  She's on the list.

 9                    MR. DUNN:  She's there.  Sorry.

10                    (Prospective juror entered the courtroom.)

11                    THE COURT:  If you could step through, please, here,

12        and come to my left.  You can put things down to make yourself

13        comfortable.  Remain standing; we need to swear you in.

14                    (Prospective juror was sworn.)

15                    THE COURT:  All right.  This is Juror No. -- let me

16        just say, you can take the mask down so we can hear you.  Make

17        sure you speak into the microphone.  All right?

18                    This is Juror No. 0876.  It's 5, 6B, 9, 13, 14, 17,

19        20, 21, 28, and 34.

20                    All right.  Let me start with 5.  The clinic at issue

21        is at 2112 F Street, Northwest, in D.C.  Do you work or live

22        near that area?

23                    THE PROSPECTIVE JUROR:  I do.

24                    THE COURT:  Which one?

25                    THE PROSPECTIVE JUROR:  I work near there.
```

```
 1                  THE COURT:  Okay.  You don't have to give the
 2      location particularly, but how far away is it, roughly?
 3                  THE PROSPECTIVE JUROR:  Well, I guess in terms --
 4                  THE COURT:  You need to speak up.  They need to hear
 5      you.
 6                  THE PROSPECTIVE JUROR:  Thank you.  I work within
 7      three blocks of that location.
 8                  THE COURT:  Okay.
 9                  THE PROSPECTIVE JUROR:  And I have another office
10      that I work at, which is about six blocks away from that
11      location.
12                  THE COURT:  Okay.  Are you familiar with the
13      building?  Do you know what it looks like?
14                  THE PROSPECTIVE JUROR:  Based on addresses, no.
15                  THE COURT:  Okay.  So have you -- so you don't know
16      exactly where it is?  You haven't seen it specifically as that
17      building?  We're asking if people have seen people out front or
18      going in or anything else.
19                  Have you -- you don't know which building it is, but
20      you know what block it is; is that accurate?
21                  THE PROSPECTIVE JUROR:  Yes.
22                  THE COURT:  Is there anything about it that -- the
23      building itself that houses it that would concern you in terms
24      of where you work?
25                  THE PROSPECTIVE JUROR:  I don't think so.
```

```
 1              THE COURT:  Okay.  Then 6B is whether -- the
 2    government's represented by the U.S. Attorney's Office and the
 3    Department of Justice, Civil Rights Division, and it asks if
 4    you've ever worked for or dealt with either the U.S. Attorney's
 5    Office or the Department of Justice, Civil Rights Division.
 6              Have you dealt with both or one; which one?
 7              THE PROSPECTIVE JUROR:  So this one I may have marked
 8    incorrectly, but I have a friend who works -- she's an
 9    assistant U.S. attorney.
10              THE COURT:  Okay.  So you have not worked for the
11    U.S. Attorney's Office; is that correct?
12              THE PROSPECTIVE JUROR:  I have not.
13              THE COURT:  And have you dealt with the
14    U.S. Attorney's Office in any capacity?
15              THE PROSPECTIVE JUROR:  No.
16              THE COURT:  How about the Department of Human Rights,
17    Civil Rights?
18              THE PROSPECTIVE JUROR:  This might be towards a later
19    question, but I have a sister who has been a lawyer at the
20    Department of Justice.
21              THE COURT:  Okay.  That's fine.  This is very
22    specific to this.
23              So this is not you; this is somebody that you know
24    who works in the U.S. Attorney's Office, a friend?
25              THE PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  Okay.  It will be picked up on another

2     one, but I'll go ahead and ask it here.

3          Do you know where in the U.S. Attorney's Office she

4     works; what division?

5          THE PROSPECTIVE JUROR:  I only know that she -- what

6     she's described to me is that she's here to help prosecute for

7     January 6th.

8          MR. CANNON:  Prosecute what?

9          THE PROSPECTIVE JUROR:  Those individuals who are

10    involved with January 6th.

11         THE COURT:  Has she discussed her work or the cases

12    or anything else?

13         THE PROSPECTIVE JUROR:  She has not.

14         THE COURT:  Okay.  So anything about her being in the

15    U.S. Attorney's Office and a representative from the

16    U.S. Attorney's Office as the government attorney in this case

17    that would raise any concern or affect your consideration of

18    the evidence in the case?

19         THE PROSPECTIVE JUROR:  I do not think so.

20         THE COURT:  All right.  Then let's move to 9, which

21    is whether you recognize somebody in the panel, either from

22    school, work, whatever else.  So you recognize somebody?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  How do you know the person?

25         THE PROSPECTIVE JUROR:  She's a work colleague.

1    THE COURT:  Okay.  Does she work directly with you,

2    or does she -- is she generally in the office that you work

3    with?

4    THE PROSPECTIVE JUROR:  So she works at a different

5    agency than I do, but we work together on a daily basis

6    sometimes.  We also just were in France on a work trip

7    together.

8    THE COURT:  Okay.  How recently was the France trip?

9    THE PROSPECTIVE JUROR:  June.

10   THE COURT:  Okay.  The reason we ask this question is

11   sometimes if you know people from whatever walk of life you're

12   in, if you're both on the jury, there may be some reluctance to

13   take different positions than the other person because you may

14   see them at a later point; or the opposite, you may be overly

15   influenced by them because you know them as opposed to the

16   other jurors who you will have just met during this trial.

17   Is there any concern that having -- assuming that

18   this person winds up -- is one of the jurors deliberating, the

19   fact that you know her or may have dealings with her, including

20   after this trial, that would affect how you would comport

21   yourself during deliberations?

22   THE PROSPECTIVE JUROR:  I think it would be

23   difficult.

24   THE COURT:  In what way?  Can you take different

25   opinions or positions, or would you be overly influenced, or

1     what would be your concern?

2              THE PROSPECTIVE JUROR:  She and I tend to have -- in

3     work-related engagements, sometimes it is difficult to

4     sometimes work with her based on different views, different

5     opinions, how to find ways to move forward on certain issues.

6              THE COURT:  So is it an issue that she would be

7     simply difficult to work with as a juror, or is it that you're

8     concerned that having -- from your perspective -- leave her out

9     of -- what her thinking is; I'm finding it out from your

10    perspective -- that you might find it difficult to take a

11    different position?  I'm trying to figure out what the --

12             THE PROSPECTIVE JUROR:  I think it would be both;

13    both working with her as a colleague on a jury, but also

14    possible impacts for our work relationship afterwards.

15             THE COURT:  So you're saying that if you had somebody

16    who, evidently, is difficult to work with, that you don't want

17    to be on the jury because, if you took a different position,

18    you might have to deal with her later, and that would be

19    difficult for you; is that what you're saying?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  28 is -- what is the pressing commitment

22    that you have for the trial?

23             THE PROSPECTIVE JUROR:  I have a trip to India

24    scheduled for August 24 to August 30.

25             THE COURT:  And is that -- can somebody else go?  Can

1          it be rescheduled?

2                    THE PROSPECTIVE JUROR:  It cannot be rescheduled, and

3          no one else can go.

4                    THE COURT:  I'm sorry?

5                    THE PROSPECTIVE JUROR:  It cannot be rescheduled, and

6          no one else can go.

7                    THE COURT:  Okay.  So you're the only person who can

8          handle this?

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  And what is your position?

11                   THE PROSPECTIVE JUROR:  I am the U.S. negotiator on a

12         joint statement that will be issued as part of the G20 under

13         India's presidency this year; and I am staffing our chief

14         science advisor, who will be our head of delegation there.

15                   THE COURT:  So is that the period when the G20 is

16         taking place?

17                   THE PROSPECTIVE JUROR:  Correct.

18                   THE COURT:  Do you want me to go on with the other

19         questions at this point?  It is outside of the two weeks.  So

20         it is the third week, which she would not have been expected to

21         keep open.

22                   Anybody want me to -- she's got other questions, but

23         anybody want me, at least on this last question, to ask any

24         further ones?

25                   MR. CANNON:  You said it was outside the two weeks?

1          THE COURT:  I mean, it's outside -- it's the third

2     week.  These are people who are supposed to keep their schedule

3     open for at least the two weeks.  This is the third week that

4     would be scheduled.  So she would not be in contravention of

5     what she's been told about jury duty is the point I'm making.

6          MR. CANNON:  Okay.  I don't think we have any further

7     questions, Judge.

8          THE COURT:  Okay.  Government?

9          MR. PATEL:  No questions.

10          THE COURT:  All right.  You can step down.  We'll

11     give you further information.

12          (Prospective juror exited the courtroom.)

13          MR. CANNON:  Judge, I would move to strike.  She said

14     three different times, I think it would be difficult, the lady

15     is difficult to work with, could affect the working

16     relationship thereafter.  And then beyond that, she has this

17     thing with India which sounds pretty immovable, and I think if

18     the trial got to be --

19          THE COURT:  Is there any objection here?

20          MR. PATEL:  No.

21          THE COURT:  So we don't need to get into all of this.

22     We'll excuse her based on that she's, evidently, going to be

23     doing work on the G20, which clearly cannot be done separately

24     and rescheduled, and not on the fact that she -- on her

25     relationship with her colleague and her in the deliberations.

```
 1                I'm a little skeptical of that, but I am not

 2     skeptical of the last question.  So I'll excuse her based on

 3     her not being available.  Let's move on.

 4                (Prospective juror entered the courtroom.)

 5                THE COURT:  Sir, if you could come through the wooden

 6     gates and come over here to my left.  You can put your things

 7     down.  And if you'd step up and remain standing, we need to

 8     swear you in.

 9                (Prospective juror was sworn.)

10                THE COURT:  All right.  You can go ahead and sit

11     down.  The chair moves back and forth, so make yourself

12     comfortable.  Set the microphone up so you can speak into it.

13     You can take your mask off so we can actually get a record of

14     what you're saying.

15                All right.  This is Juror No. 1706.  The questions

16     are 13, 17, 20, and 28.  13 is whether you or somebody close to

17     you has been employed by any law enforcement agency.  I defined

18     a bunch of them.  Was that you or somebody else?

19                THE PROSPECTIVE JUROR:  Friends and family.

20                THE COURT:  You're going to have to speak louder into

21     the microphone.

22                THE PROSPECTIVE JUROR:  Friends and family.

23                THE COURT:  Okay.  So let's start with family.

24     What's the relationship in terms of that?

25                THE PROSPECTIVE JUROR:  A cousin; they work for
```

1   Capitol Police.

2          THE COURT:  You have to keep your voice up a little

3   bit.  They all need to -- the attorneys need to hear you.

4          THE PROSPECTIVE JUROR:  A cousin that works for the

5   D.C. Capitol Police, uncle with the New Jersey State Police,

6   friends at church that work for the Secret Service and D.C.

7   Metro Police and are federal probation officers.

8          THE COURT:  Okay.  So are these all relatives, or are

9   these a combination of relatives and friends?

10          THE PROSPECTIVE JUROR:  Combination.

11          THE COURT:  Okay.  In terms of the law enforcement

12   people or, frankly, all of them, have you had discussions about

13   their work at all in terms of any specifics about it or just

14   general discussions?

15          THE PROSPECTIVE JUROR:  Both specific and general

16   discussions.

17          THE COURT:  Anything about the discussions about

18   their work that you think would affect your consideration of

19   the evidence in this case?

20          THE PROSPECTIVE JUROR:  Likely nothing that relates

21   to this case, no.

22          THE COURT:  I'm sorry?

23          THE PROSPECTIVE JUROR:  Not to this case, no.

24          THE COURT:  Okay.  These discussions, have they been

25   about particular arrests or things they've been involved with

 1    or more routine aspects about it?  What are the content of the

 2    discussions in summary form?

 3              THE PROSPECTIVE JUROR:  Summary.

 4              THE COURT:  I'm sorry?

 5              THE PROSPECTIVE JUROR:  Summary.

 6              THE COURT:  So have they talked about specific cases

 7    or arrests, or they've just sort of generally discussed what

 8    they do?

 9              THE PROSPECTIVE JUROR:  I mean, they've talked about

10    specific cases and the -- not in great detail, but, you know,

11    about specific things that they had to do in their job.

12              THE COURT:  Okay.  Is there anything that they've

13    talked about that, from your perspective, sounds at all like

14    the charges that are in this case?

15              THE PROSPECTIVE JUROR:  Nothing similar to this case,

16    no.

17              THE COURT:  In terms of arrests or anything?

18              THE PROSPECTIVE JUROR:  No.

19              THE COURT:  Okay.  And you didn't put it down, but

20    one of the questions would be to make sure having relatives and

21    friends in law enforcement -- and we will have law enforcement

22    officers testifying -- that you would treat them as you would

23    any civilian witness and not give their testimony greater or

24    lesser weight.  Can you do that?

25              THE PROSPECTIVE JUROR:  Yes.

```
 1                    THE COURT:  All right.  And 17 is:  You or somebody
 2          close to you, either a lawyer or studied law or -- is that you
 3          or somebody else?
 4                    THE PROSPECTIVE JUROR:  Family.
 5                    THE COURT:  Okay.  And what's the relationship in
 6          terms of the family that are attorneys?
 7                    THE PROSPECTIVE JUROR:  I have a cousin that, I
 8          believe, does -- I'm not sure what kind of law.  But then a
 9          sister-in-law that does pro bono work.
10                    THE COURT:  Maybe we could ask it this way.  In terms
11          of your cousin, does your cousin work for a law firm or the
12          government, or do you know where they work?
13                    THE PROSPECTIVE JUROR:  They work for a law firm.
14                    THE COURT:  Okay.  Do you know if your cousin does
15          any criminal work, one way or the other?
16                    THE PROSPECTIVE JUROR:  No.
17                    THE COURT:  Okay.  You don't know or --
18                    THE PROSPECTIVE JUROR:  I do not know.
19                    THE COURT:  Okay.  In terms of your sister-in-law,
20          does she work for a firm, a government agency, or what, in
21          terms of the pro bono work she does?
22                    THE PROSPECTIVE JUROR:  It's a government agency.  I
23          guess it's counsel for people that wouldn't be able to afford
24          legal services.
25                    THE COURT:  You have to keep your voice up, sir.
```

```
 1                THE PROSPECTIVE JUROR:  Sorry.  She --
 2                THE COURT:  Let me ask it this way.  What government
 3      agency does she work for?
 4                THE PROSPECTIVE JUROR:  It's with the -- it's with
 5      Virginia, like with the State.  She does a lot of --
 6                THE COURT:  Does she work for, like, a public
 7      defender service office?
 8                THE PROSPECTIVE JUROR:  Yeah, I think that's what it
 9      is.
10                THE COURT:  Is she doing -- in the pro bono work, is
11      she doing criminal cases, to your knowledge?
12                THE PROSPECTIVE JUROR:  Not to my knowledge.
13                THE COURT:  Okay.  Have you had discussions with
14      either your cousin or sister-in-law about the work in terms of
15      legal issues or how cases work or how the court works or
16      anything like that?
17                THE PROSPECTIVE JUROR:  Yes.
18                THE COURT:  Anything about those discussions that you
19      think would affect your consideration of the evidence in this
20      case?
21                THE PROSPECTIVE JUROR:  I don't believe so.
22                THE COURT:  Okay.  So part of it would be if they
23      discussed what defense counsel are like or what prosecutors are
24      like or the judge; have you had those kind of specific
25      discussions or just more generalized?
```

 1              THE PROSPECTIVE JUROR:  More general.

 2              THE COURT:  All right.  20 is:  Although this case

 3     will mention abortion, I want to be clear the case is not about

 4     whether abortion is right or wrong, morally justified or

 5     unjustified.  The case is about two laws that permit clinics

 6     that do provide, among other things, abortion services to do so

 7     without physical obstruction.

 8              I'll ask you whether you have personal, political,

 9     moral, or religious opinions or beliefs regarding the issue of

10     reproductive health care, including abortion, that are so

11     deeply held that they would interfere with your ability to be

12     fair and impartial.

13              So if you have specific views about abortion that you

14     think would interfere in this -- this is not a case directly,

15     as I've indicated, about abortion.  It's about whether the

16     defendants acted with the intent to obstruct access to

17     reproductive health services in a broad sense, but not

18     necessarily only abortion at this particular clinic.

19              So do you have very strongly held views, and what are

20     they?

21              THE PROSPECTIVE JUROR:  I believe that abortion is --

22              THE COURT:  You have to keep your voice up.  Sorry.

23              THE PROSPECTIVE JUROR:  I believe that abortion is

24     fundamentally, morally wrong.  So I -- from my understanding of

25     the case, I don't think that it would have happened if -- they

1    wouldn't have -- they would not be trying to deny access to

2    anything other than abortion based on the description.  So I

3    think it would be hard to separate those beliefs from the facts

4    of the case.

5              THE COURT:  So there is a statute that protects

6    people who are seeking access for reproductive care, which is

7    broader than just abortion.  And there's protection in the

8    statute -- which is a federal statute -- for the clinic in

9    terms of providing the services.

10             Are you indicating to me that you think the statute

11   is wrong or shouldn't be protected because you believe that

12   abortions should not be allowed?  Is that a correct statement

13   of your views, or am I incorrect?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  It is yes, I'm incorrect, or yes, it's

16   correct?

17             THE PROSPECTIVE JUROR:  Yes, correct.

18             THE COURT:  Okay.  So in terms of would you apply

19   then the statute -- which is what we're going to be

20   discussing -- the issue is they've been charged with violating

21   the statute which protects you from obstructing people from

22   coming in and getting reproductive health care, which, as I

23   said, is broader than abortion, and also the clinics.  But,

24   certainly, part of the reproductive health care can be

25   abortion.

1         So if you don't believe the statute should be

2    protected, can you actually participate in terms of applying

3    the statute in this case?

4         THE PROSPECTIVE JUROR:  It would be more difficult, I

5    guess, to be --

6         THE COURT:  You have to keep your voice up.

7         THE PROSPECTIVE JUROR:  It would be more difficult to

8    be -- I don't know -- not obstructed by that.

9         THE COURT:  Well, what we're trying to find out is if

10   your views are -- you answered 20, which says -- the bottom

11   line is, if your feelings are -- and you're entitled to your

12   opinions, and there's no correct answer -- you know, right or

13   wrong answer.  We're trying to have you tell us honestly what

14   your views are so we can make some decisions here.

15        So you've indicated you have -- what your opinions

16   are relating to abortion, and you've indicated that they're

17   strongly held.  So the question is whether your views about

18   them and the fact that you question the statute that would

19   protect this access, because you don't believe in abortions,

20   whether you'd be able to actually be fair and impartial to both

21   sides or whether this would interfere with your consideration

22   of the evidence?

23        THE PROSPECTIVE JUROR:  I mean, I don't know if I

24   could completely remove it from --

25        MR. CANNON:  Speak up.

1    THE PROSPECTIVE JUROR:  I don't know if I could

2    completely remove it from my consideration knowing the

3    reason -- knowing the intent of what they are accused of, I

4    guess.

5    THE COURT:  Okay.  So let me -- I don't want to put

6    words in your mouth.  I just want to make sure we have a record

7    of what you're actually saying.

8    You've seemed to indicate you couldn't completely

9    remove it from your consideration in terms of your views, both

10   about abortion and the fact that you don't think that the

11   statute should protect access to what you don't believe in,

12   which is abortion.  Am I correct so far?

13   THE PROSPECTIVE JUROR:  Yes.

14   THE COURT:  Okay.  And so you indicate that I don't

15   know if I could completely remove it from my consideration

16   knowing the reason, the intent of what they're accused of.

17   So are you indicating you don't think you could apply

18   the law, which relates to, basically, enforcing -- assuming the

19   evidence is there -- and you'd have to make that decision, that

20   the government had proven beyond a reasonable doubt --

21   enforcing that particular statute; would that be fair?

22   THE PROSPECTIVE JUROR:  Sorry.  Could you restate

23   that.

24   THE COURT:  Sure.  Part of the consideration here is,

25   this is a legal statute, this is a case that would be -- you'll

 1     be making a decision about whether it should be enforced based

 2     on the actions that the -- the defendants are charged with.

 3     Okay?  At this point they're just charged with it.  The

 4     government would have to prove the case beyond a reasonable

 5     doubt.

 6               But you would be enforcing the statute should you

 7     find that the elements that are connected to the statute and

 8     for these charges, that they had proven that beyond a

 9     reasonable doubt, the government, you'd have to find them

10     guilty, which would enforce the statute.  The statute, you

11     appear to feel should not -- you know, that we shouldn't have

12     this statute; I guess that's the best way of putting it.

13               THE PROSPECTIVE JUROR:  Right.  I -- I could possibly

14     have reservations about enforcing a statute that I don't

15     support.

16               MR. KIYONAGA:  I didn't hear it.

17               THE COURT:  I could possibly have reservations about

18     enforcing a statute that I don't support.

19               THE PROSPECTIVE JUROR:  Yes.

20               THE COURT:  So from your perspective then,

21     participating in this, it sounds as if your views about

22     abortion and about -- and the statute as to whether we should

23     have this kind of statute would inform part of your decision if

24     you were chosen as a juror; is that not correct?

25               THE PROSPECTIVE JUROR:  Possibly.

```
 1              THE COURT:  Let me just ask another -- 28 is:  You

 2    would have a pressing commitment to not be able to be

 3    available.  What's the pressing commitment?

 4              THE PROSPECTIVE JUROR:  My mother-in-law is moving to

 5    Michigan, and I need to assist.

 6              THE COURT:  Okay.  And when is that occurring?

 7              THE PROSPECTIVE JUROR:  That's in two weeks.  So

 8    it's --

 9              THE COURT:  Do you have, sort of, a date?

10              THE PROSPECTIVE JUROR:  The 21st of August.

11              THE COURT:  Okay.  So she's moving from where to

12    where?  From where to Michigan?

13              THE PROSPECTIVE JUROR:  New Jersey to Michigan.  And

14    my -- I mean, my spouse and -- we --

15              THE COURT:  I'm sorry.  I missed that.  Your spouse

16    and?

17              THE PROSPECTIVE JUROR:  I was trying to think through

18    it.  My spouse and I were planning to help her out.  And in

19    the worst-case scenario, then that could be rescheduled.

20    But --

21              THE COURT:  Okay.

22              THE PROSPECTIVE JUROR:  -- consideration --

23              THE COURT:  If you got chosen, can she move it, or

24    can somebody else help your mother-in-law?

25              THE PROSPECTIVE JUROR:  I don't know at the moment.
```

1          THE COURT:  Okay.  I've covered all of the questions.

2     Government?

3          MR. CRABB:  Good afternoon, sir.  I want to ask you

4     about a couple things to make sure I understand.

5          Do I understand that you feel strongly that abortion

6     is wrong?

7          THE PROSPECTIVE JUROR:  Yes.

8          MR. CRABB:  And do I understand -- did you say

9     that -- so you don't think that access to abortion should be

10    allowed because abortion, in and of itself, is wrong?

11         THE PROSPECTIVE JUROR:  No.

12         THE COURT:  No what?  No is too ambiguous.  I want to

13    make sure what the "no" goes to.

14         THE PROSPECTIVE JUROR:  It doesn't need to --

15         THE COURT:  We're trying to figure out -- it says --

16    his answer was -- his question, do I understand, did you say

17    that you don't think that access to abortion should be allowed

18    because abortion, in and of itself, is wrong?  You answered no.

19         You disagree with that statement, or you're

20    indicating something else?

21         THE PROSPECTIVE JUROR:  No, I don't think there

22    should be access.

23         MR. CRABB:  I'm sorry.  You said no, you don't think

24    there should be access?

25         THE PROSPECTIVE JUROR:  No.

1          MR. CRABB:  Do you understand that's the allegation

2     in this case is that -- the allegation is that the accused

3     blocked access to abortion and whether -- and that's a

4     violation of federal law.  Does that make sense?

5          THE PROSPECTIVE JUROR:  Yes, I understand.

6          MR. CRABB:  Okay.  Do I understand what you're

7     saying, though, is it should be okay to block access to

8     abortion because abortion is wrong?

9          THE PROSPECTIVE JUROR:  I don't think they're -- I

10    don't think it should be provided.  I guess, restricting

11    access -- taking -- I don't think it should be provided for

12    people to take it into their own hands to make that happen.  I

13    don't necessarily --

14         THE COURT:  You need to keep your voice up, sir.

15         THE PROSPECTIVE JUROR:  I apologize.

16         THE COURT:  I'm sorry to keep saying that, but it's

17    very hard -- a lot of people need to hear what you say.

18         As I said, nobody is judging your answer.  There's no

19    right or wrong answer.  We just need to know what your position

20    is, and you're entitled to have a position.

21         THE PROSPECTIVE JUROR:  I don't think abortion should

22    be provided for people to take that into their own hands.  I

23    don't necessarily agree that that's the correct method, to not

24    have abortion be a thing, but it's, I guess, based on the

25    circumstances of the case.

1          THE COURT:  Keep your voice up, sir.

2          THE PROSPECTIVE JUROR:  Based on the circumstances of

3    the case.  Sorry.  Does that answer your --

4          MR. CRABB:  I'm sorry, Your Honor.  Did I interrupt

5    you?  I thought I heard you speak.

6          THE COURT:  No.  I was just looking at it.

7          MR. CRABB:  So let me ask you this.  That is, I

8    believe, what would be your job if you were a juror in this

9    case, is to look at the facts and determine whether or not the

10   facts established a violation of the law, a law that prohibits

11   people from blocking access to abortion.

12          Does that make any sense?

13          THE PROSPECTIVE JUROR:  Right.  Yes, that makes

14   sense.

15          MR. CRABB:  So in light of all the things that you've

16   talked about this afternoon with us, would you be able to make

17   that decision, whether that law -- which prohibits blocking

18   access to abortion -- whether that law had been violated?

19   Would you be able to look at the facts and make a determination

20   of whether you believe that law had been violated based on the

21   facts, the facts alone, and not have it affected by your larger

22   views about the propriety of abortion?

23          THE PROSPECTIVE JUROR:  It's possible.  Yes, that is

24   possible for me to -- to look at the specifics of a case.

25          MR. CRABB:  Would you explain a little more, when you

1    say it's possible, what you mean.

2              THE PROSPECTIVE JUROR:  I -- I mean, I can -- I could

3    make an assessment based on the specifics of whether a specific

4    law has been violated or not, even if I don't support it.

5              MR. CRABB:  So you're sure you can do that?

6              THE PROSPECTIVE JUROR:  I -- depending on the

7    specifics of a case.

8              MR. CRABB:  Well, let me ask you a different way.  If

9    you were on this jury, Judge Kotelly would tell you that you

10   must apply the law regardless of what you think of it and

11   determine whether or not you think the law in this case had

12   been violated.

13             Are you sure you could do that?

14             THE PROSPECTIVE JUROR:  If I was -- if I was put on

15   to the jury, yes, I could do that.

16             MR. CRABB:  You'd be able to follow that instruction

17   and the oath that you would take?

18             THE PROSPECTIVE JUROR:  Yes.

19             MR. CRABB:  Thank you, Your Honor.

20             THE COURT:  Counsel?

21             MR. CANNON:  No questions, Judge.

22             THE COURT:  Okay.  So let me just make sure, in terms

23   of the last question, that -- if I understand you correctly.

24   What you've indicated, although you're opposed to abortion, you

25   are opposed to having access to be able to have an abortion.

 1   You have some question about the statute that, basically,

 2   allows people to have access to get the abortion.

 3        But that you think that you would be able to put

 4   those views aside and make -- enforce a statute, assuming that

 5   the government proved the case beyond a reasonable doubt.

 6        In other words, you would make a decision not

 7   informed by your own views, but informed by what the law is in

 8   terms of what the statute is and the specifics that would have

 9   to be shown beyond a reasonable doubt in order to have the

10   person convicted.  And if you determined that the government

11   had proven it, you would have to find them guilty.

12        Do you think you can do all of that?

13        THE PROSPECTIVE JUROR:  That sounds correct.  That

14   sounds correct.

15        THE COURT:  That sounds right in terms of explaining

16   it, but the question I asked you is whether you think you could

17   do it.

18        THE PROSPECTIVE JUROR:  I believe so.

19        THE COURT:  Okay.  All right.  Then, if there are no

20   other questions --

21        MR. CANNON:  No questions.

22        THE COURT:  All right.  Go ahead.

23        MR. CRABB:  Sir, what I want to understand is when

24   you say you believe you could do what Judge Kotelly just said,

25   how sure are you, you could do that?

```
 1                    THE PROSPECTIVE JUROR:  I'm not positive.

 2                    MR. CRABB:  I'm sorry?

 3                    THE PROSPECTIVE JUROR:  I'm not positive.  I'm half

 4        certain.

 5                    MR. CRABB:  Okay.  About half certain?

 6                    THE PROSPECTIVE JUROR:  Yes.

 7                    MR. CRABB:  Thank you.

 8                    THE COURT:  Go ahead.

 9                    MR. DUNN:  You work for the Navy, sir?

10                    THE PROSPECTIVE JUROR:  Yes.

11                    MR. DUNN:  Thank you for serving our country.

12                    THE PROSPECTIVE JUROR:  I --

13                    MR. DUNN:  When you begin your employment with the

14        Navy, do you take an oath?

15                    THE PROSPECTIVE JUROR:  As a civilian, yes.

16                    MR. DUNN:  Pardon me?

17                    THE PROSPECTIVE JUROR:  As a civilian, yes.

18                    THE COURT:  I'm assuming --

19                    THE PROSPECTIVE JUROR:  I'm not active duty.

20                    MR. DUNN:  So you don't have to take an oath?

21                    THE PROSPECTIVE JUROR:  There's an oath with federal

22        employment, but -- yes, there's some oath.

23                    MR. DUNN:  You take oath seriously?

24                    THE PROSPECTIVE JUROR:  Yes.

25                    MR. DUNN:  So if you had an oath administered to you
```

1    before sitting down as a juror in this case by this Court,

2    would you obey that oath?

3                    THE PROSPECTIVE JUROR:  Yes.

4                    MR. DUNN:  Would you honor that oath?

5                    THE PROSPECTIVE JUROR:  Yes.

6                    MR. DUNN:  If that oath also included sitting fairly

7    and impartially as a juror in this case, would you do it?

8                    THE PROSPECTIVE JUROR:  If I -- if that was the duty

9    that was required of me, yes.

10                   MR. DUNN:  Thank you, sir.

11                   THE COURT:  I think there is a presumption that when

12   they take the oath that they're going to follow through with

13   it.  I would hope that nobody would take the oath and expect

14   not to follow through.  But at any rate, that's fine.

15                   Any other questions?  If not, I'll ask him to step

16   down.  You can step down.  We'll give you further instructions,

17   okay?

18                   (Prospective juror exited the courtroom.)

19                   THE COURT:  He took an oath today.  I'm assuming he's

20   telling the truth today.

21                   MR. CRABB:  Your Honor, we move to strike the juror

22   for cause.

23                   MR. CANNON:  We'd object.

24                   THE COURT:  Okay.  So let me hear from Mr. Crabb.

25                   MR. CRABB:  Your Honor, this juror's ability to be

1    certain that he could follow the instructions that the Court

2    will give and apply the law in this case started yesterday when

3    he answered Question 20 and said that the nature of this case

4    would make it difficult for him -- would interfere with his

5    ability to be fair and impartial in this case.  So no to that

6    question.  He's been consistent.

7           During his time here talking with the Court and with

8    counsel, he clearly was very reluctant and had trouble saying

9    that he would be able to follow instructions.  There were long

10   pauses, there was some back-and-forth.

11          I'd ask the Court to consider, most importantly, at

12   the end after the Court had discussed this issue with the juror

13   several times and quite clearly, I had attempted to ask him

14   questions, what he said was he was half sure he could do

15   that -- follow the Court's instructions.  And half sure is

16   woefully short of what's necessary to be a juror in this case.

17          That was his answer, half.  Notwithstanding whatever

18   histrionics, the slamming on the podium the defense might have

19   done later.  But the answer given by this potential juror after

20   a number of questions was the best he could do is be half sure

21   he'll follow the Court's instructions, and that's not

22   sufficient.  We ask you to strike him for cause.

23          MR. DUNN:  Judge, we've had jurors passed already

24   that believe that women have an absolute right to access to the

25   abortion clinic, which is the very issue that we're here to

1    decide.  And if that -- he did not show any more bias than

2    that; in fact, less.

3              THE COURT:  That's your answer.  Okay.  Did you, sir,

4    want to say anything more?

5              MR. CANNON:  I just wanted to point out, I think it's

6    correct, Judge, that a juror expressing difficulty, in and of

7    itself, has not so far been dispositive in other jurors that

8    we've considered.  When it came down to it --

9              THE COURT:  I've excused some where they've been

10   equivocating all over the ballpark.  I haven't excused others

11   where they have indicated that they could separate them out.

12             The ones that have been excused have had a series of

13   different connections.  But let's discuss this particular

14   individual in terms of his answers.

15             MR. CANNON:  In this case, after expressing

16   difficulty, he was pressed on a couple of occasions, and he did

17   say he could do it.  He could do it.

18             And, interestingly enough, he also said, reflecting

19   some level of evenhandedness -- if I understood him right -- he

20   didn't think it was the correct approach where people who don't

21   like abortion are taking things into their own hands or

22   something like that.

23             So it seems like he's not really in the tank.  He's a

24   guy who might be kind of going down the middle in some ways.

25             THE COURT:  Well, I guess the question -- he was

1    doing fine until he answered at the end about being half sure.

2          MR. CANNON:  I didn't --

3          THE COURT:  That is his words.  That's not what I

4    asked him or Mr. Crabb in terms of expressing it that way.

5    Obviously, he's -- you know, we've had people who have had just

6    the opposite view.  But he believes that -- he does not believe

7    in abortions.  He doesn't believe there should be access to

8    abortions since he's not in favor of abortion.

9          We had a question about the statute.  However, he did

10   answer that he thought, in terms of being asked it, ultimately,

11   although having some hesitations originally, but these are --

12   these are not easy questions to answer.  He did say that he

13   thought that he would be able to do it.  However -- which would

14   not be simple.  But there was some hesitation, et cetera, in

15   terms of doing it.

16         But I am concerned about, frankly, his last answer

17   which when I asked about how sure he was, he's half sure that

18   he could do it.  Half sure is not enough.

19         MR. CANNON:  Okay.  I guess I didn't hear --

20         THE COURT:  If he hadn't said that, I would have left

21   him on.  That, to my mind, means that, although he'd make an

22   effort, he's -- he's not sufficiently certain to be half sure.

23   That's his own answer.  That's not somebody feeding him

24   something.

25         MR. CANNON:  I didn't hear it that way.  I thought he

1    said I am sure, but I'm not going to argue --

2              THE COURT:  Okay.  Let me make sure.  Let me make

3    sure.  I won't go through the question that Mr. Crabb asked.

4    I'm not positive.  I'm half certain.

5              MR. CANNON:  Okay.

6              THE COURT:  Okay.

7              (Quoting):

8              "MR. CRABB:  About half certain?

9              "PROSPECTIVE JUROR:  Yes."

10             If he hadn't said that, I would have left him on.

11   That, I think -- yeah, that's not good enough.

12             MR. KIYONAGA:  May I be heard briefly?  This was a

13   notably --

14             THE COURT:  Okay.  Excuse me.  We're having some

15   problems with those that are in here as observers.  They seem

16   to be drawing pictures of everybody, including the juror.

17   We've asked you not to do it.  It's not a photograph, but

18   you're not -- if you're not media -- where they do have a

19   separate right to do drawings -- you're not allowed to do it.

20             There are privacy concerns and, certainly, security

21   concerns.  So we're asking that you not do that.  We're not

22   going to destroy the drawings, but we are going to take them.

23   So I would suggest that you sit there and listen and not

24   intrude on people that are participating as part of this.  All

25   right?

1        Now -- so I've advised the jury.  If you want to tell

2   me why half certain is not sufficient to have him excused --

3   that doesn't seem to indicate that he is sufficiently sure that

4   he can actually separate the two things out.

5        What do you have to say?

6        MR. KIYONAGA:  Your Honor, I would point out only

7   that almost all of his answers were very slow in coming.  He

8   was a very definite, reticent prospective juror.

9        The one question that I perceived as being answered

10  quickly and without hesitation was whether he would honor his

11  oath.

12       THE COURT:  He has an oath now, and he's honoring the

13  oath, presumably, by telling us the truth.  And I'm sure that

14  he would not deliberately dishonor the oath.  I'm assuming when

15  everybody is given the oath, unless there's something else,

16  that he would not do that deliberately.

17       That's not the issue.  The issue is whether he's

18  capable of it.  He's indicated he's half certain that he could

19  make a decision in this case and not be influenced by his

20  views.  If he had not said that answer, I would have left him

21  on.

22       That is a sufficient answer to indicate that he's not

23  sufficiently certain that he can separate out his views --

24  which he's entitled to -- from deciding on this particular

25  case.

1          End of story.  Let's move on.  Yes, he's excused.

2          (Prospective juror entered the courtroom.)

3          THE COURT:  If you could step over here.  Just come

4     over to my left.  If you could remain standing for a second,

5     we're going to swear you in.

6          (Prospective juror was sworn.)

7          THE COURT:  All right.  This is Juror No. -- you can

8     take the mask off.  If not, we can't get a record.  You need to

9     move your chair up, if you can.  You need to speak in a loud,

10    clear voice.  Talk as if you're talking to somebody at the back

11    door.  I know everybody is tired, but we need to be able to

12    hear you to get a record.

13          So this is Juror 0659.  She's indicated 5, 6B, 9, 14,

14    21, 28, and 34.  So 5 relates to the address of the clinic,

15    which is 2112 F Street, Northwest in D.C.  Do you work or live

16    near there?

17          THE PROSPECTIVE JUROR:  Yes, I do.

18          THE COURT:  Which one; work or live?

19          THE PROSPECTIVE JUROR:  I work near there.

20          THE COURT:  Okay.  Well, you don't have to give an

21    address.  But, roughly, how far away is it?

22          THE PROSPECTIVE JUROR:  About, maybe, five to ten

23    minutes walking from there.

24          THE COURT:  Okay.  Are you familiar with the building

25    at all?

1              THE PROSPECTIVE JUROR:  No, not really.

2              THE COURT:  So there's nothing about the building

3     itself or what happens in the building that you have any

4     knowledge of; is that correct?

5              THE PROSPECTIVE JUROR:  Yes, that's correct.

6              THE COURT:  All right.  The next one is 6B.  This

7     is -- we have an Assistant United States Attorney and an

8     attorney from the Department of Justice Civil Rights Division.

9     You've indicated that you either work for, dealt with either

10    the U.S. Attorney's Office or the Department of Justice Civil

11    Rights Division or maybe both.

12             So is it -- have you worked with them or had some

13    dealings with them or what?

14             THE PROSPECTIVE JUROR:  Yes.  I have -- I believe --

15    I don't remember the exact details, but I believe in 2020 I did

16    work with them in my capacity working in the U.S. government.

17             THE COURT:  And what was -- what would have been the

18    capacity that you worked with them?

19             THE PROSPECTIVE JUROR:  I work at the U.S. Department

20    of State.  And at the time I was working at the secretary's

21    office for global women's issues, and the Department of Justice

22    and my department had -- had been working on a task force

23    related to gender-based violence.

24             MR. CANNON:  Related to what?

25             THE PROSPECTIVE JUROR:  To gender-based violence.

 1           THE COURT:  So you had been talking to the

 2    U.S. Attorney's Office here in D.C.?

 3           THE PROSPECTIVE JUROR:  Yes, correct.

 4           THE COURT:  Anybody in particular?

 5           THE PROSPECTIVE JUROR:  That was in 2020, so I don't

 6    recall all the names, and it was most --

 7           THE COURT:  You would have done this by Zoom or in

 8    person?

 9           THE PROSPECTIVE JUROR:  Yes.  Mostly it was virtual

10    because it was during the pandemic.

11           THE COURT:  So what was the intent of the discussion?

12    Was it just to get their assistance, or they're to provide you

13    with information, or what was the actual contact itself?

14           THE PROSPECTIVE JUROR:  My -- my office at the time

15    at the Department of State, as I mentioned, is the secretary's

16    office for global women's issues.  We dealt -- we worked on

17    issues related to women's rights all around the world.

18           And some of the -- our partners, you know, in the

19    U.S. government, either provided, sort of, like support on --

20    in terms of, like, best practices or things that the U.S.

21    government does so we can share them with our counterparts

22    around the world, but also to tackle issues related to

23    gender-based violence just generally and how to deal with them.

24           THE COURT:  So if we're going to summarize it, they

25    have domestic violence cases in the U.S. Attorney's Office.

1    Were you discussing with them how they handled their cases or

2    how they've set it up so that that can be used as a model when

3    you discuss it more globally; would that be accurate?

4              THE PROSPECTIVE JUROR:  Yes, correct.  Correct.  It

5    was a continuous effort.  It wasn't just one meeting.

6              THE COURT:  So it was -- it's to get information from

7    them in terms of their programs; is that accurate?

8              THE PROSPECTIVE JUROR:  Exactly, yes.

9              THE COURT:  Anything about that contact with the U.S.

10   Attorney's Office -- because we do have somebody from the

11   U.S. Attorney's Office here.  We want to make sure that you

12   would not be more favorably inclined or less inclined because

13   they're the counsel representing the government.

14             Would you -- is there any concern on your part about

15   being more sympathetic or less sympathetic to them in terms of

16   their presentation of the case based on this relationship that

17   you had with them?

18             THE PROSPECTIVE JUROR:  Yes.  Based on that

19   relationship, I kind of think it would be -- I think I would be

20   doubtful about my ability to not have any sort of subconscious

21   bias related to the attorneys -- the general attorney's office.

22   So I just -- just based on the work that I've done.

23             THE COURT:  So based on the fact that you've had this

24   contact with the U.S. Attorney's Office around the domestic

25   violence program and getting information from them, which you

1    would then potentially use as a model for some of these global

2    things, you feel you'd be, what, more inclined to favor what

3    they did and less inclined to favor the defense?

4            THE PROSPECTIVE JUROR:  Yes.  And I should clarify.

5    It wasn't just domestic violence.  Domestic violence was one of

6    the issues we were dealing with.

7            THE COURT:  What were the other issues

8            THE PROSPECTIVE JUROR:  It could be anything related

9    to violence against women.

10           THE COURT:  Well, I'm just asking about your

11    relationship in terms of discussions with the U.S. Attorney's

12    Office.

13           THE PROSPECTIVE JUROR:  As I mentioned, it included a

14    wide host of topics, domestic violence --

15           THE COURT:  What are the other topics?

16           THE PROSPECTIVE JUROR:  Well, reproductive health did

17    come up a lot in our conversations.  But at the time I

18    wouldn't -- I can't recall from 2020 what exactly we discussed,

19    but I remember that these topics did come up a lot in our

20    conversations during the time I worked in that office.

21           THE COURT:  So let me see what discussions you would

22    have had about reproductive health in terms of who you would

23    have spoken to in the U.S. Attorney's Office relating to that.

24    What was the nature of your discussions?

25           THE PROSPECTIVE JUROR:  I kind of feel like I'm not

1    in the right space to talk about these things because it was

2    related to my work for the U.S. federal government, and I

3    don't know that --

4          THE COURT:  You're here as a prospective juror for a

5    very -- for a serious offense, and you're under oath, and

6    you're required to give an answer.  This is not like you have a

7    security clearance that you're talking about classified

8    material, I'm assuming, based on what you've said.

9          I would put it in -- I'm trying to get a better sense

10   of the relationship such that the relationship creates concerns

11   for your part in terms of your being fair to the defense side,

12   if I understand what you're saying.  If I'm incorrect, please

13   correct me.

14         THE PROSPECTIVE JUROR:  No.  I mean, I agree with you

15   this is not classified information.  But at the same time, I

16   was working in my capacity representing the U.S. government,

17   and I would be disclosing things related to the U.S. federal

18   government that I feel like I'm not in the -- I don't have the

19   capacity to talk about.

20         THE COURT:  Okay.  Well, let me ask it this way.

21   Were you getting advice or giving advice in terms of their

22   making decisions relating to this, or were you just getting

23   information?

24         THE PROSPECTIVE JUROR:  It was -- it was neither

25   getting advice nor information in the sense that I am getting

1      advice on what I should do or getting information just to pass

2      along.  It was part of policy discussions related to best

3      practices.

4              THE COURT:  So it would be policy discussion.  So,

5      potentially, we could consider this part of the deliberative

6      privilege; is that what you're, in essence, saying?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Okay.  So let me get back to not getting

9      into further discussions, but you've discussed these,

10     presumably, domestic violence and some issue about reproductive

11     rights, in terms -- reproductive care rights.

12             But the concern that I have and what I'm focusing in

13     on is, is it correct that, based on your discussions and

14     relationship in this context with the U.S. Attorney's Office,

15     that you feel that you would be less favorably inclined to the

16     defense based on this relationship with somebody in the

17     U.S. Attorney's Office?

18             If I'm summarizing this correctly, let me know.  If

19     I'm not, please correct me.

20             THE PROSPECTIVE JUROR:  I don't consciously think

21     that I will try to be favorable to one party or the other.  But

22     based on the information and general kind of work that I did

23     and sort of, like, knowledge and experience that I have, I feel

24     like it would be unrealistic of me to expect that I would not

25     have any subconscious bias towards one party or the other.

1        THE COURT:  Okay.  And this unconscious bias would go

2   which way?

3        THE PROSPECTIVE JUROR:  I think, if I'm being

4   realistic, I think I would be more in favor of the -- of DOJ on

5   most matters because I've worked closely with colleagues there.

6        THE COURT:  Okay.  Let me run through a couple of

7   other things.  No. 9 is whether you know somebody else on the

8   panel.

9        THE PROSPECTIVE JUROR:  Yes.  Not on the panel.  On

10   the jury, yes.

11        THE COURT:  I meant the larger jury.

12        THE PROSPECTIVE JUROR:  Yes.

13        THE COURT:  How do you know this other person?

14        THE PROSPECTIVE JUROR:  We work together.

15        THE COURT:  And this is -- if -- one of the questions

16   we ask is that if you were both part of the group that's

17   deliberating and you, obviously, know this other person as a

18   colleague, as to whether you would feel uncomfortable in any

19   way expressing your views or potentially taking a contrary view

20   than that person and then having to see them at a later point;

21   do you have any concerns of that nature?

22        We would want you to each be willing to speak and not

23   be concerned what this other person, you know, thought or be

24   convinced one way or the other based on this prior

25   relationship.

```
 1          THE PROSPECTIVE JUROR:  I don't think that being with
 2    a colleague on a panel would impact my ability to be -- to
 3    express my opinions freely.
 4          THE COURT:  Okay.  Have you or members of your family
 5    been employed by the courts?
 6          THE PROSPECTIVE JUROR:  I'm currently registered as
 7    an interpreter in the North Carolina court system.
 8          THE COURT:  I'm sorry.  I missed this.  Okay.  What
 9    language are you interpreting?
10          THE PROSPECTIVE JUROR:  Actually, several languages.
11          THE COURT:  So in court cases, you're the
12    interpreter; you're the certified interpreter that would come
13    in?
14          THE PROSPECTIVE JUROR:  Excuse me?  I didn't hear
15    that question.
16          THE COURT:  In court cases, you would be the
17    certified interpreter for either witnesses or --
18          THE PROSPECTIVE JUROR:  Correct.
19          THE COURT:  -- the parties?
20          THE PROSPECTIVE JUROR:  Correct, yes.
21          THE COURT:  And 21 is whether you or somebody close
22    to you contributed to any group or organization that advocates
23    for or against an aspect of reproductive health care, including
24    but not limited to abortion.
25          So is that you or somebody else?
```

1          THE PROSPECTIVE JUROR:  I don't believe that's

2     exactly the question.  I remember the question being, does

3     anyone in my family or someone I know work in -- to provide any

4     types of -- type of reproductive health.  If that's the

5     question that I remember correctly --

6          THE COURT:  21 is as I read it:  Do you, family

7     members, or close friends belong to any group or organization

8     or contribute to any group or organization that advocates for

9     or against any aspect of reproductive health care, including

10    but not limited to abortion.

11         So it would be an organization that you're involved

12    with that has a mission either way or contributions you would

13    have made.  And then the next question talks about

14    participating in protests or other kinds of things.

15         THE PROSPECTIVE JUROR:  Oh, okay.  I might have

16    misheard the question.  I put the note there because my father

17    is an OB/GYN.

18         THE COURT:  I'm sorry?

19         THE PROSPECTIVE JUROR:  My father is an OB/GYN.

20         THE COURT:  Well, let me just ask in terms of your

21    father being an OB/GYN, you viewed that significant in what

22    way?

23         THE PROSPECTIVE JUROR:  His job, by nature, includes

24    taking care of women's health, including reproductive health.

25         THE COURT:  All right.  And is there anything about

```
 1    his view of reproductive health that you think would affect --
 2    or his practice, without getting into it, that you think would
 3    affect your consideration of the evidence in this case?
 4              THE PROSPECTIVE JUROR:  Obviously, I don't know the
 5    details of his practice because of patients' privacy.  But,
 6    again, you know, I'm -- you know, I would anticipate that I
 7    might have unconscious bias just based on having heard from him
 8    about his job.
 9              THE COURT:  Okay.  And what is this bias?  The bias
10    would be in favor of what?
11              THE PROSPECTIVE JUROR:  Just views on women's rights
12    to get reproductive health.
13              THE COURT:  How would that translate if you were
14    looking at it in the context of abortion?
15              THE PROSPECTIVE JUROR:  So are you asking me about my
16    beliefs related to abortion?
17              THE COURT:  Well, you've talked about reproductive
18    health, which is fine.  It is the broad thing that's involved
19    here.  I'm not getting into your father's practice.
20              I'm just simply asking whether there was anything
21    about -- that you knew about his practice that you think would
22    affect any conversation you would have had with him or
23    anything, or whatever his practice is without specifying, that
24    would influence you in this particular case.  I want to make
25    sure, since you thought it significant enough to write it down,
```

1     that there's nothing about his practice that would influence

2     you in this particular case in making these decisions.

3              You need to separate your personal views from

4     whatever is presented in the case.  So that's why I was asking

5     it that way.

6              THE PROSPECTIVE JUROR:  As I mentioned, I just noted

7     it down because I think the conversation, as I understood

8     yesterday, was about women's rights to reproductive health, the

9     broad concept of reproductive health.  And I think -- again, I

10    think I have views related to that, that might, again,

11    unconsciously impact my views about people's behavior related

12    to this topic.

13             THE COURT:  You indicate views related to

14    reproductive health might again unconsciously impact my views

15    about people's behavior related to this topic.

16             So could you tell us what your views are.  Maybe that

17    would help us figure this out.

18             THE PROSPECTIVE JUROR:  I view reproductive health as

19    any type of health-related topic.  So I think it's -- everyone

20    is entitled to have, you know, health care as they need it.

21             THE COURT:  So from your perspective, they should

22    have access to all types of reproductive health care, if I

23    understood you correctly, or not?

24             THE PROSPECTIVE JUROR:  I think also that is a

25    question -- I'm not really sure what the question is, but I

1    think health care is health care.  That's my view.  People are

2    entitled to what they believe their health care is, for what

3    kind of care they'd like to receive.

4            THE COURT:  All I'm doing is trying to find out your

5    view.  There's no right or wrong answers to any of these.  This

6    is only to get -- have you be honest in what your views are so

7    we make decisions about it.

8            There's no -- you know, there's no yes -- incorrect

9    answer, no correct answer, nothing.  I'm just trying to --

10   you've discussed it as health care -- reproductive health care,

11   which is correct.  That is what's involved in this case.

12           But you indicated that your views of reproductive

13   health care might impact your consideration of the evidence.

14   I'm asking whether there's any particular kind of reproductive

15   care that would impact it, or just in general it would impact

16   your consideration of the evidence?

17           THE PROSPECTIVE JUROR:  No.  Generally, I view

18   reproductive health care just as, like, dental care.  It's --

19   health care all to me is the same.  People are entitled to get

20   the care they -- they deem appropriate for themselves.

21           THE COURT:  Okay.  I think in terms of -- 28 is the

22   issue of pressing commitment.  Any -- what is the particular

23   pressing commitment?

24           THE PROSPECTIVE JUROR:  I will be traveling to New

25   York City for work on the 23rd and, potentially, next week as

```
 1    well.
 2            THE COURT:  I'm sorry.  The 23rd and what?
 3            THE PROSPECTIVE JUROR:  Potentially, next week.  I
 4    don't have the exact date for next week yet.
 5            THE COURT:  Next week you would have been part of the
 6    two-week jury, I think.
 7            Are these trips that can be rescheduled or changed or
 8    anything?
 9            THE PROSPECTIVE JUROR:  No, unfortunately.
10            THE COURT:  What's the travel to New York, for what?
11            THE PROSPECTIVE JUROR:  For work.
12            THE COURT:  And nobody else can go but you?
13            THE PROSPECTIVE JUROR:  I don't believe anyone else
14    can go but me.
15            THE COURT:  Any questions?  I'm waiting to see if the
16    government wants anything.
17            MR. PATEL:  Good afternoon.  I just have a couple of
18    questions.  I want to make sure I understood you correctly.
19            I understand that you have some strong beliefs with
20    respect to accessing reproductive health care; is that right?
21            THE PROSPECTIVE JUROR:  That's correct.
22            MR. PATEL:  But you did mention that you could
23    consciously set your beliefs aside and be impartial in this
24    case?
25            THE PROSPECTIVE JUROR:  No.  I said I can try to.  I
```

1    just don't know if I am, to be realistic, capable of.

2            THE COURT:  Right.  I mean, I think all we can ask of

3    anybody is that they make an effort to.  Do you agree with

4    that?

5            THE PROSPECTIVE JUROR:  I do.

6            MR. PATEL:  I understand that you think that

7    subconsciously your beliefs may impact your ability to be fair

8    and impartial.  But that's probably something that everybody

9    faces, right?  It's, like, your subconscious beliefs may have

10   an impact on how you assess or perceive evidence.

11           THE COURT:  You're asking her several questions.  You

12   need to break it down.

13           MR. PATEL:  I'm sorry.  You understand that

14   subconscious -- your subconscious beliefs could have an impact

15   on the way you perceive anything; is that right?

16           THE PROSPECTIVE JUROR:  Correct.

17           MR. PATEL:  But you would be able to make an effort

18   to try to set your personal beliefs aside and consciously be an

19   impartial -- be impartial in this case and fair, if you were to

20   assess the evidence?

21           THE PROSPECTIVE JUROR:  I can only hope to do my

22   best, yes.

23           MR. PATEL:  Okay.  Do you currently still work for

24   the Department of State?

25           THE PROSPECTIVE JUROR:  Yes, correct.

```
 1                    MR. PATEL:  And are you still working on those global

 2      women's issues?

 3                    THE PROSPECTIVE JUROR:  No.

 4                    MR. PATEL:  How long did you work on those issues?

 5                    THE PROSPECTIVE JUROR:  I'll have to calculate it.

 6      For at least -- at least a year and a half.

 7                    MR. PATEL:  And with respect to the travel, is

 8      there -- you said you're going for work; is that right?

 9                    THE PROSPECTIVE JUROR:  Correct.

10                    MR. PATEL:  Next week's trip is to New York?

11                    THE PROSPECTIVE JUROR:  Correct.

12                    MR. PATEL:  And is the trip on the 23rd also to New

13      York?

14                    THE PROSPECTIVE JUROR:  Correct.

15                    MR. PATEL:  Next week's trip is not scheduled yet?

16                    THE PROSPECTIVE JUROR:  It's not scheduled yet.

17                    MR. PATEL:  And you're saying that you're the only

18      person who would be able to travel for this trip?

19                    THE PROSPECTIVE JUROR:  I believe so.

20                    MR. PATEL:  Is it possible to reschedule it?

21                    THE PROSPECTIVE JUROR:  The one next week, possibly.

22      But the week after, it's not possible.

23                    MR. PATEL:  Okay.  Thank you.

24                    THE COURT:  Any questions?

25                    MR. CANNON:  A few.  Good afternoon.  Thank you for
```

1    being here, ma'am.

2            You've indicated that you worked in 2020 on global

3    women's issues, some relating to gender-based violence?

4            THE PROSPECTIVE JUROR:  Correct.

5            MR. CANNON:  You've also indicated a belief that

6    people are entitled to health care, and that includes women

7    having entitlement to reproductive health care?

8            THE PROSPECTIVE JUROR:  Correct.

9            MR. CANNON:  Is it at all fair to say that you would

10   consider -- if our clients are accused of interfering with

11   access to health care of that type, would you consider that

12   gender-based violence?

13           THE PROSPECTIVE JUROR:  So I should clarify.  It

14   wasn't just gender-based violence.  I worked on what we call

15   also violence against women.  So if women are the subject of

16   the group of people who are being deprived of their ability to

17   seek and receive health care, then that would fall into --

18   under the work that I was doing as well.  That was globally,

19   not just in the United States.

20           Actually, my work wasn't related specifically to the

21   United States but global, sort of like the global policies

22   around the world, related to violence against women and

23   gender-based violence.

24           MR. CANNON:  So if our clients are accused of

25   interfering with women's access, that does come under what you

1    worked on?

2          THE PROSPECTIVE JUROR:  It does come under the type

3    of work I worked on, yes, correct.

4          MR. CANNON:  Maybe more importantly, does it strike

5    you to the heart as being something that you care deeply about

6    that would make you have some animosity towards our clients?

7          THE PROSPECTIVE JUROR:  I feel like animosity is a

8    big word.  But it would definitely taint my views a bit in

9    terms of how I view the subject because, again, some of my work

10   related to policies around the world and other actors in other

11   countries that would commit some of the things that your

12   clients are accused of.

13          So I believe in working on policies to try to

14   mitigate such behavior.  So I would believe it would have some

15   impact on my ability to, I don't know, maybe, again,

16   unconsciously deal with the subject.

17          MR. CANNON:  This trip next week that can't be

18   rescheduled, if you were sitting on the jury and the case

19   spilled over into next week, which it easily could, would that

20   impair your -- would you have difficulty being patient with the

21   case?

22          THE PROSPECTIVE JUROR:  To be honest, I feel I

23   would -- I would be having difficulties just simply because

24   it's just the work that I'm working on currently is very

25   time-sensitive.  So it would -- my mind would probably be

1    somewhere else, and I would not want to be in that position.

2              MR. CANNON:  Thank you.

3              THE COURT:  All right.  You can step down, and we'll

4    give you further instructions.

5              (Prospective juror exited the courtroom.)

6              MR. CANNON:  Judge, I think we'd move to strike.

7              THE COURT:  Any objections?

8              MR. PATEL:  No, Your Honor.

9              THE COURT:  All right.  She's stricken.

10             (Prospective juror entered the courtroom.)

11             THE COURT:  If you could step up.

12             (Prospective juror was sworn.)

13             THE COURT:  All right.  You can move up, fix the

14   microphone so you can speak into it.  And if you -- you can

15   take your mask off so we can actually hear you.

16             THE PROSPECTIVE JUROR:  You want to be able to hear

17   me?

18             THE COURT:  Yes.  This is Juror No. 1581.  It's 17,

19   20, 22, and 28.  So 17 is whether you or somebody close to you

20   ever worked for a lawyer or studied law.  Is that you or

21   somebody else?

22             THE PROSPECTIVE JUROR:  It's probably an easy one.  I

23   studied --

24             THE COURT:  You need to --

25             THE PROSPECTIVE JUROR:  I studied the law.  I'm not a

 1     lawyer.  When I was getting my doctorate degree, I

 2     simultaneously got a master's degree, which included the entire

 3     first year of law school curriculum, plus a few more courses.

 4              THE COURT:  Okay.  And as part of that, did you take

 5     criminal law; do you recall?

 6              THE PROSPECTIVE JUROR:  Yes, I did.

 7              THE COURT:  And do you do any legal work or have you

 8     done any legal work in the past?

 9              THE PROSPECTIVE JUROR:  I don't do legal work,

10     per se.  I've done expert witnessing.

11              MR. CANNON:  I didn't hear that.

12              THE PROSPECTIVE JUROR:  I've done expert witnessing.

13     I've never had any association with criminal law.

14              THE COURT:  Okay.  What would be the subject of your

15     expert testimony?

16              THE PROSPECTIVE JUROR:  Economics.

17              THE COURT:  Okay.  In terms of 20, which is:

18     Although the case will mention abortion, I want to be clear the

19     case is not about whether abortion is right, wrong, morally

20     justified or unjustified.  It's about two laws that permit

21     clinics that do provide, among other things, abortion services

22     to do so without physical obstruction.

23              I'll ask you whether you have any personal,

24     political, moral, or religious opinions or beliefs regarding

25     the issue of reproductive health care, including abortion, that

1   are so deeply held that they would interfere with your ability

2   to be fair and impartial in this case.

3           So there's two aspects of it.  One is whether you

4   have strong feelings, personal or otherwise, and what those

5   feelings are; and I guess whether the outcome of that is that

6   you think you would not be able to be fair and impartial.

7           So let's start, do you have strong feelings about

8   this issue of reproductive health care?

9           THE PROSPECTIVE JUROR:  Yes.  I have deeply held

10  beliefs in relation to the forced birth movement.  And to give

11  an example of it, I run a small company, and approximately two

12  weeks, couple weeks after the *Dobbs* decision, I personally

13  instituted a policy that we would reimburse employees who live

14  in states that don't allow abortion and who need one.

15          THE COURT:  All right.  So you've indicated you have

16  deeply strong feelings.  You've indicated what they are.

17          Are they such that it would interfere with your being

18  able to be fair and impartial?  In other words, can you

19  separate those personal deeply held feelings from the evidence

20  in this case, not have it inform your decisions or in any way

21  be involved in your decisions?  We need to have you make a

22  totally independent decision.  So can you do that?

23          THE PROSPECTIVE JUROR:  I think the answer is I don't

24  know.

25          THE COURT:  Okay.  Do you have concerns about it?  I

1    mean, are you concerned whether you could be fair and impartial

2    based on your deeply held beliefs?

3            THE PROSPECTIVE JUROR:  Yes.  That's why I marked off

4    that question.

5            THE COURT:  Okay.  Well, that's why I'm making sure I

6    answer it.  22 -- I'll get back to that one in a minute.

7            Have you or somebody close to you participated in any

8    protest, march, rally regarding reproductive health care; that

9    you or somebody else?

10           THE PROSPECTIVE JUROR:  Me.  And I would probably

11   state it stronger than I've participated in, what was it, a

12   protest, march, or rally.  These were never single-issue

13   protests.  They were multiple issues.  But I organized them, as

14   well as participated in them.

15           THE COURT:  And although you said they covered

16   several issues, would it have included reproductive health

17   care?

18           THE PROSPECTIVE JUROR:  Definitely it would have

19   included pro-choice, rights for women, rights for gays,

20   lesbians, so forth.

21           THE COURT:  In terms of your pressing commitment that

22   would make it difficult for you to be -- participate as a

23   juror, what is it?

24           THE PROSPECTIVE JUROR:  I have a commitment to run

25   something for the government on, I believe, August 29th.

```
 1              THE COURT:  To run a program or what?

 2              THE PROSPECTIVE JUROR:  I'd rather not say it on

 3    record because it would identify me.

 4              THE COURT:  Okay.  Then, that's fine.  You're doing

 5    something for the government.

 6              I take it that it's something that is scheduled, and

 7    can it be rescheduled or not?

 8              THE PROSPECTIVE JUROR:  It cannot be rescheduled.

 9    It's one of these things that is set by regulation.

10              THE COURT:  Okay.  And is it something that is all

11    day and just that one day or more than that?

12              THE PROSPECTIVE JUROR:  It is, potentially, a couple

13    of days.  It begins on August 29th.

14              THE COURT:  Any questions?

15              MR. CRABB:  Yes, Your Honor.  Good afternoon, sir.  I

16    understand from the questions yesterday and what you've

17    discussed with Judge Kotelly that you have strong views about

18    people's right to abortion and access to abortion; is that

19    fair?

20              THE PROSPECTIVE JUROR:  Yes.

21              MR. CRABB:  I want to make sure you understand in

22    this case the question would be, if you were to sit in the

23    jury -- sit as a juror, to assess the evidence and decide

24    whether or not any of the accused in this case had violated a

25    particular law regarding access to abortion.
```

1           Do you understand that?

2           THE PROSPECTIVE JUROR:  I understand that.

3           MR. CRABB:  So despite whatever views you have about

4     abortion, would you be able to make the decision about whether

5     a particular statute had been violated based solely on the

6     evidence that was presented to you here in court?

7           THE PROSPECTIVE JUROR:  I think I already answered

8     that, and I said I don't know.

9           MR. CRABB:  I'm asking you, I believe, a different

10    question.

11          THE PROSPECTIVE JUROR:  Explain the difference,

12    please.

13          MR. CRABB:  Okay.  My question to you is, if you were

14    picked as a juror in this case, would you be able to make your

15    decision as to whether or not particular statutes had been

16    violated based on the evidence and the evidence alone that was

17    presented to you in court?

18          THE PROSPECTIVE JUROR:  I think my answer is I don't

19    know.

20          MR. CRABB:  Okay.  Thank you.

21          THE COURT:  Any questions?

22          MR. CANNON:  No.

23          THE COURT:  You can step down, sir.  We'll give you

24    further instructions.

25          THE PROSPECTIVE JUROR:  Thank you.

```
 1                  (Prospective juror exited the courtroom.)

 2              THE COURT:  Somebody say something.  Let's move.

 3              MR. CANNON:  Waiting for the door to shut.  We'd move

 4      to strike him, Judge.

 5              THE COURT:  Any objection?

 6              MR. CRABB:  No, Your Honor.

 7              THE COURT:  Then 1581 is stricken.

 8                  (Prospective juror entered the courtroom.)

 9              THE COURT:  If you could step here and come over to

10      my left, please.  You can put things down.  If you could stand

11      up, we need to swear you in.

12                  (Prospective juror was sworn.)

13              THE COURT:  All right.  You can move the chair up and

14      down.  You need to speak into the microphone.  You can adjust

15      that.  You can take your mask off so we can actually hear you.

16                  This is Juror No. 1939.  4, 7A, 16, 17, 20, 21, 22,

17      and 28.  Starting with 4, are you familiar with the facts of

18      this case and in what way?

19              THE PROSPECTIVE JUROR:  I am aware -- I saw news

20      reports of -- surrounding the case.

21              THE COURT:  Okay.  You need to speak into the

22      microphone.

23              THE PROSPECTIVE JUROR:  Okay.  Sorry.  I saw news

24      reports regarding this -- the incident that resulted in this

25      case.  I am also aware of other allegations against one of the
```

1    defendants involving theft of fetal remains and saw, at the

2    time of the reporting on both incidents, social media reports

3    around one of the defendant's pattern of harassing clinic staff

4    and patients.

5              THE COURT:  Okay.  So in terms of -- did you see or

6    hear these reports?

7              THE PROSPECTIVE JUROR:  I saw them.  I read the news

8    reports.

9              THE COURT:  Okay.  Was it a social media thing or

10   something else?

11             THE PROSPECTIVE JUROR:  I read the articles online.

12   The social media reports were on Reddit and Twitter.

13             THE COURT:  Okay.  So let's break it down.  One was

14   the incident that resulted in the case.  What do you remember

15   about what they said about the incident itself?

16             THE PROSPECTIVE JUROR:  I remember seeing a report

17   that an arrest had been made regarding an incident at a health

18   clinic in Washington, D.C.  There was some sort of altercation,

19   patients were not able to get into the clinic.

20             That's kind of the details that I remember in that

21   case.

22             THE COURT:  Okay.  And then the -- you said there was

23   another article relating to what appeared to be some sort of --

24   some illegal activity, I think, is the way you put it.  What do

25   you remember in terms of this illegal activity?

1          THE PROSPECTIVE JUROR:  I saw in these reports that

2     Ms. Handy had been arrested, or there was some sort of -- I

3     don't think the news reports were terribly -- completely clear.

4     There was some sort of incident involving the theft or improper

5     handling of fetal remains that had somehow come into her

6     possession through improper means and that were being stored in

7     a row house somewhere in D.C.

8          THE COURT:  All right.  And then you said something

9     about -- something about harassing of the patients or staff.

10    Was that in the same article or a different article?

11         THE PROSPECTIVE JUROR:  Yes.  So in the -- these

12    articles were popping up on social media platforms that I

13    participate in, and other people were commenting, pointing out

14    that they had -- that they had had personal encounters, as

15    clinic staff, with one of the individuals involved in the case.

16         THE COURT:  Okay.  Let me see if I understand.  In

17    terms of the social media that you had looked at, there were

18    people -- are these people -- do you know them or not?

19         THE PROSPECTIVE JUROR:  I don't know them personally.

20         THE COURT:  Okay.  And they appeared to be or

21    presented themselves as clinic staff and that they had had some

22    personal encounters, I believe you said earlier, harassment

23    with individuals.

24         Was this something separate, or was this part of the

25    original article about the case?

1          THE PROSPECTIVE JUROR:  It was not clear to me if the

2     individuals were working at the health clinic at issue in this

3     case or if these were separate incidents.

4          THE COURT:  Okay.  We asked this question because,

5     obviously, you're getting information outside of the courtroom

6     relating to the case, and we want you to make decisions based

7     on the evidence in the case -- presented in the courtroom.  So

8     you've, obviously, read several things about at least three

9     different, I'll say, issues.

10          Can you separate those out?  Can you put them aside

11     and -- that's what the news media said, social media,

12     et cetera, about what happened -- and make a decision about

13     what happened as presented in the court; and make a decision

14     based on that, not based on what you read or what you heard

15     that is third-hand, but that you would hear in the courtroom

16     yourself and make a decision?  Can you do that?

17          THE PROSPECTIVE JUROR:  I would say I would take very

18     seriously the instructions that would be given to the jury to

19     only consider evidence presented in the courtroom.  I might

20     find it difficult to not -- I can't unknow what I already know,

21     if that makes sense.

22          THE COURT:  Can you separate it out in terms of it

23     not having -- what we want to do is make sure it doesn't inform

24     your decision or have you look through this lens of what you've

25     already heard in making a decision.

```
 1                    THE PROSPECTIVE JUROR:  Yes.

 2                    THE COURT:  Can you do that?

 3                    THE PROSPECTIVE JUROR:  Yes.

 4                    THE COURT:  So you think that you would be able to --

 5           although you, obviously, have heard all of this, not assume

 6           that that's accurate, but make a decision based on what you get

 7           in the courtroom and make your own decision about what you're

 8           going to credit or not?

 9                    THE PROSPECTIVE JUROR:  Yes.

10                    THE COURT:  You can do that?

11                    THE PROSPECTIVE JUROR:  Yes.

12                    THE COURT:  7A is the -- it mentioned various

13           individuals, and the one -- 7A is Ms. Handy.  Is this the

14           article that you read or is this -- do you have some contact

15           with her or know her in some other way?

16                    THE PROSPECTIVE JUROR:  No, I don't know her

17           personally.  I had -- was aware of enough of the media reports

18           to recognize her when she stood up in the courtroom.

19                    THE COURT:  Okay.  So this is based on the media

20           report that you talked about --

21                    THE PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  -- relating to the fetal remains as

23           you've described it?

24                    THE PROSPECTIVE JUROR:  Yes.

25                    THE COURT:  So there's not going to be anything about
```

1    fetal remains in this case.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  So have you got a negative view of

4    Ms. Handy already based on that article or no view one way or

5    the other such that it would make a difference in terms of your

6    being a juror?

7              We want to make sure that, having read that article,

8    that that doesn't already start you with a negative view of her

9    that she'd have to overcome as opposed to putting that aside

10   and making a decision on what's in the courtroom, not what

11   people wrote about.  So the question is whether you can

12   separate them out.

13             THE PROSPECTIVE JUROR:  I do think it would be

14   difficult to not enter the discussions with a negative view of

15   the defendant based on my prior knowledge.  But, again, I would

16   take my obligation to only consider information presented in

17   the court very seriously.

18             THE COURT:  Okay.  But you think it would be

19   difficult?

20             THE PROSPECTIVE JUROR:  I think it would be

21   difficult.

22             THE COURT:  Let me just ask one additional question.

23   20 is -- that you've marked:  Although the case will mention

24   abortion, it's not about whether abortion is right or wrong,

25   morally justified or unjustified.  It's about laws that permit

1    clinics that do provide, among other things, abortion services

2    to do so without physical obstruction.

3              I'm asking you whether you have any personal,

4    political, moral, or religious opinions or beliefs regarding

5    the issue of reproductive health care, including abortion,

6    that's so deeply held that it would interfere with your ability

7    to be fair and impartial?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  So you have very strong feelings is what

10   you're indicating?

11             THE PROSPECTIVE JUROR:  Yes, I have very strong

12   personal beliefs about the right to an abortion.

13             THE COURT:  And do you feel that that would interfere

14   with your being able to be fair and impartial?

15             THE PROSPECTIVE JUROR:  Again, I would take my

16   obligation very seriously, but I would find it difficult to

17   remain impartial.

18             THE COURT:  All right.  Do -- let me -- I've skipped

19   a couple of questions.

20             Let me ask the one -- next one that -- have you

21   participated in protests, march, rallies relating to this?

22             THE PROSPECTIVE JUROR:  Yes.  I have frequently

23   participated in pro-reproductive rights, events, and

24   activities.  I was a volunteer ambassador for the local Planned

25   Parenthood affiliate in 2019 and participated in many of their

1    events.  I've been fairly active in the reproductive rights

2    community.

3            THE COURT:  Okay.  28 is whether you have a pressing

4    commitment that would make it difficult for you to sit to be a

5    juror.

6            THE PROSPECTIVE JUROR:  Yes.  I have work travel

7    planned in California for the last week of August.  I will be

8    out of D.C. August 27th through 30th.

9            THE COURT:  And is this work travel something that

10   somebody else can do or only you can do?

11           THE PROSPECTIVE JUROR:  That's a difficult question.

12   I am not presenting at this conference, but arrangements have

13   been made and paid for and are not refundable.

14           THE COURT:  Could somebody else go in your place?

15           THE PROSPECTIVE JUROR:  I'm not sure if my

16   registration is transferable.  I don't believe my plane tickets

17   would be.

18           THE COURT:  All right.  Government?

19           MR. PATEL:  Good afternoon.  You mentioned that you

20   have some familiarity with this case based upon your review of

21   news reports and social media -- I guess, social media exposure

22   to this case; is that right?

23           THE PROSPECTIVE JUROR:  That's correct.

24           MR. PATEL:  And I know the judge did explain this.

25   But you understand that this case is not about -- has nothing

1    to do with Ms. Handy being in possession of any of the fetal

2    remains as you mentioned?

3              THE PROSPECTIVE JUROR:  Yes.

4              MR. PATEL:  You understand that this case is strictly

5    about access or obstructing access to a reproductive health

6    care clinic?

7              THE PROSPECTIVE JUROR:  Yes.

8              MR. PATEL:  And I understand that you have strongly

9    held beliefs, and those are often -- they can be very difficult

10   to set aside, but you did mention that on a couple of occasions

11   that you would take very seriously your obligation to consider

12   the instructions that the Court gives you; correct?

13             THE PROSPECTIVE JUROR:  That's correct.

14             MR. PATEL:  You would take your obligations very

15   seriously and being -- in being very impartial and fairly

16   assessing the evidence; is that right?

17             THE PROSPECTIVE JUROR:  I would do my best.

18             MR. PATEL:  Would you make every effort and could you

19   say with certainty that you would make every effort to be

20   impartial and fair as you assess the evidence in this case?

21             THE PROSPECTIVE JUROR:  I would make every effort.

22             MR. PATEL:  Is there anything about your strongly

23   held beliefs regarding rights to access reproductive health

24   care that would prohibit you from being able to make every

25   effort to apply the law and be very fair in your assessment of

1    the evidence that's presented in this case?

2              THE PROSPECTIVE JUROR:  Again, I would make every

3    effort.  I might find it very difficult to do so.  But I,

4    again, take the obligation very seriously.

5              MR. PATEL:  Okay.  You can set your biases aside when

6    you take this obligation seriously and assess the evidence?

7              THE PROSPECTIVE JUROR:  I would try to set my biases

8    aside.

9              MR. PATEL:  Okay.  Thank you.

10             THE COURT:  Defense?

11             MR. CANNON:  Ma'am, you indicated that when you saw

12   the news, it apparently included a story about Ms. Handy and

13   being in the possession of fetal remains that were somehow

14   obtained illegally; is that your understanding?

15             THE PROSPECTIVE JUROR:  That's my understanding.

16             MR. CANNON:  Is that the understanding you hold as we

17   speak right now?

18             THE PROSPECTIVE JUROR:  Yes.

19             MR. CANNON:  You also indicated that one of the

20   defendants -- you became aware somehow; maybe one of the news

21   stories -- was harassing clinic patients.

22             Do you know what this harassment was supposed to have

23   been?

24             THE PROSPECTIVE JUROR:  The comments that I remember

25   seeing were not specific in terms of what was said or done.

1          MR. CANNON:  Okay.  When you indicated that --

2     referring to the fetal remains, that they had somehow come into

3     her possession by improper means, it seemed like you were a

4     little bit skeptical about how they came to be; is that

5     correct?

6          THE PROSPECTIVE JUROR:  I'm not entirely sure of the

7     sequence of events that resulted in the fetal remains ending up

8     in her possession --

9          MR. CANNON:  Are you --

10         THE PROSPECTIVE JUROR:  -- so I didn't want to

11    misstate facts.

12         MR. CANNON:  Are you skeptical about whether those

13    came into her possession legally?

14         THE PROSPECTIVE JUROR:  I would struggle to imagine a

15    scenario where they could come into her possession legally.

16         MR. CANNON:  Okay.  You mentioned that you saw --

17    sounds like a lot of this stuff -- a fair amount of information

18    about this case and the fetal remains and stuff like that and

19    harassment on social media platforms that you participate in.

20    Are those pro-choice, kind of, related platforms?

21         THE PROSPECTIVE JUROR:  No.  I believe I saw most of

22    the commentary in discussion around local Washington, D.C.,

23    news.

24         MR. CANNON:  Okay.  Do you participate in social

25    media that revolves around the abortion issue?

1           THE PROSPECTIVE JUROR:  I do.

2           MR. CANNON:  You read and write back and forth on

3      that stuff?

4           THE PROSPECTIVE JUROR:  Yes.

5           MR. CANNON:  Okay.  Now, you said at some point you

6      can't unknow; I can't unknow what I already know.

7           Is it your belief that you know things about this

8      case already?

9           THE PROSPECTIVE JUROR:  Yes.

10          MR. CANNON:  Is it your belief that you know things

11     about the fetal remains that we're discussing?

12          THE PROSPECTIVE JUROR:  Yes.

13          MR. CANNON:  Is it your belief that you know things

14     about the alleged harassment of clinic people by Lauren Handy?

15          THE PROSPECTIVE JUROR:  Yes.  But I would give them

16     lesser weight given that they were unverified social media

17     claims rather than a news report.

18          MR. CANNON:  But the first two you feel like you know

19     things?

20          THE PROSPECTIVE JUROR:  Yes.

21          MR. CANNON:  And you can't unknow them?

22          THE PROSPECTIVE JUROR:  That's correct.

23          MR. CANNON:  All right.  And do I understand what you

24     said earlier that you were aware enough of Ms. Handy through

25     the news and stuff that when you saw her yesterday, you

1    recognized her?

2              THE PROSPECTIVE JUROR:  That's correct.

3              MR. CANNON:  Okay.  Does that mean you've looked at

4    websites that have her picture on them?

5              THE PROSPECTIVE JUROR:  Her picture accompanied some

6    of the articles that I read.

7              MR. CANNON:  Have you also seen her picture on the

8    websites that you go to?

9              THE PROSPECTIVE JUROR:  The websites were reposting

10   the article, so yes, her picture was there as well.

11             MR. CANNON:  Okay.  Is it fair that you come in here

12   with a negative view of Ms. Handy?

13             THE PROSPECTIVE JUROR:  Yes.

14             MR. CANNON:  Thank you, ma'am.

15             THE PROSPECTIVE JUROR:  Thank you.

16             THE COURT:  All right.  Let me ask you to step down,

17   and we'll give you further instructions.

18             (Prospective juror exited the courtroom.)

19             MR. CANNON:  We'd move to strike her.

20             THE COURT:  Any objection?

21             MR. PATEL:  No objection.

22             THE COURT:  She's stricken.

23             We're going to stop here.  I do have another matter,

24   another criminal matter in another case.  The person is locked

25   up.  So I need to have you leave because we need to bring

1    people in from the cell block.

2            So if you would please take all of your -- we have

3    envelopes for you.  If the attorneys would put it in the

4    envelopes, along with their clients, I'd very much appreciate

5    it.  We will collect them and put them in the safe.

6            And don't disappear yet.  I have a few more things I

7    need to talk to you about.  We're still in session.  Thank you.

8    So we're still in session to the extent that I'm giving you

9    instructions about what's to happen.

10           I don't want to have you come back and then proceed

11   because I think it's not going to be quick enough to get the

12   next one up, in/out, whatever we have to say.  So we'll start

13   tomorrow.

14           I would like us to get into the courtroom by 8:45 and

15   be ready to go.  So everybody has to be here.  If you have

16   problems -- come up early enough.  If you have problems in the

17   line, give a call to chambers.  Ms. Patterson will give you the

18   phone number.  We'll come down to the line and pull you out, as

19   we've indicated.

20           Also, frankly, I believe that -- it was only when

21   former President Trump was here that they were not accepting

22   the bar card to move you to front, but they do usually.  You

23   can show that, and that should move you to the front.  If your

24   client is with you, you can probably get both together.

25           At any rate, I want to make sure that you come in

1    early enough.  I mean, I got here at 7:45, and nobody was in

2    line; nobody was in the courthouse.  There are times we can get

3    in without any trouble.

4          I would just simply ask that at 8:45, I'm going to

5    come out, and we need to be here and we need to go.  We're

6    taking far too much time in terms of getting through -- you

7    know, the questions, there's nothing we can do; they have their

8    answers.  We need to go through them.

9          I want to make sure at least the logistics and the

10   mechanics move a little faster than they have been.  So 8:45

11   we'll start, and we'll start bringing the jury in at 9:00.  All

12   right.  Any questions?

13         MR. CANNON:  Will they recognize an Iowa bar card?

14         THE COURT:  I assume so.  I don't know, frankly.  I

15   assume so.  If you have a problem, just call chambers.

16         Does anybody have any questions?  Everybody

17   understand what we're supposed to be doing?  Sure.  Move to the

18   microphone so we get a record.

19         MR. WALSH:  It's probably silly.  Earlier when we

20   started the day, you had talked about electronics and phones

21   and things; then you said even the people involved in the case.

22   So I was afraid to touch my computer all day.

23         I just want to clarify that the attorneys, we can be

24   working on the computer and so forth during the course of the

25   day or no?

```
 1              THE COURT:  You mean while we're doing the jury
 2      selection?
 3              MR. WALSH:   Yeah.
 4              THE COURT:  I hope you're paying attention.
 5              MR. WALSH:   I am.
 6              THE COURT:  If you can do both things at the same
 7      time, that's fine.
 8              MR. WALSH:   I can.
 9              THE COURT:  Are you doing other work or are you
10      writing stuff up --
11              MR. WALSH:   I'm doing work related to this case.  My
12      opening --
13              THE COURT:  That's fine.  I don't have a problem.
14              MR. WALSH:   Okay.
15              THE COURT:  As long as you're paying enough attention
16      so that when we make decisions about excusing people or not
17      excusing them, you've heard enough so that you can do it.
18              MR. WALSH:   I just want to make sure I'm okay.
19      Thank you.
20              THE COURT:  Are there any other questions?
21              MR. CRAMPTON:  One other question, Your Honor.  I
22      assume we'll go to 5:00 tomorrow as well, correct?
23              THE COURT:  Tomorrow, I believe that I have
24      another -- don't we have -- unfortunately, what I have is the
25      five of you before the next; I then have another ten
```

1    co-defendant case, fentanyl and guns, and it's ten

2    co-defendants put into five and five.

3              What I have -- in terms of trying to find time to do

4    it, I'm doing it at the end of the day.  So it will be around

5    4:00 or 4:30, but I'll let you know.  These things get

6    rescheduled for various reasons.  If not, we'll go to 5:00.

7              MR. CRAMPTON:  Understood.

8              THE COURT:  I'll let you know in the morning as to

9    whether there's any changes.

10             Anything else?  Everybody know everything?  Okay.

11   Then let me excuse you at this time.

12                   (The trial adjourned at 4:00 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, TAMARA M. SEFRANEK, do hereby certify that the

4     above and foregoing constitutes a true and accurate transcript

5     of my stenographic notes and is a full, true, and complete

6     transcript of the proceedings to the best of my ability.

7                Dated this 10th day of August, 2023.

8

9                      /s/ Tamara M. Sefranek_____
                       Tamara M. Sefranek, RMR, CRR, CRC
10                     Official Court Reporter
                       Room 6714
11                     333 Constitution Avenue, N.W.
                       Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## /

**/s** [1] - 76:9

## 0

**0239** [1] - 3:5
**0659** [1] - 35:13
**0876** [3] - 3:22, 4:4, 4:18

## 1

**10** [1] - 1:6
**1050** [1] - 1:24
**10th** [1] - 76:7
**13** [3] - 4:18, 12:16
**1350** [1] - 2:3
**14** [2] - 4:18, 35:13
**1413** [1] - 2:6
**1581** [2] - 53:18, 59:7
**16** [1] - 59:16
**16983** [1] - 1:18
**17** [6] - 4:18, 12:16, 15:1, 53:18, 53:19, 59:16
**1706** [1] - 12:15
**1939** [1] - 59:16
**1:22-CR-096** [1] - 1:3

## 2

**2** [1] - 4:4
**20** [9] - 4:19, 12:16, 17:2, 19:10, 30:3, 53:19, 54:17, 59:16, 64:23
**20001** [2] - 2:23, 76:11
**20004** [1] - 1:16
**20036** [2] - 1:25, 2:4
**2019** [1] - 65:25
**202-354-3246** [1] - 2:23
**2020** [4] - 36:15, 37:5, 39:18, 51:2
**2023** [2] - 1:6, 76:7
**20530** [1] - 1:13
**20815** [1] - 2:9
**21** [5] - 4:19, 35:14, 43:21, 44:6, 59:16
**2112** [2] - 4:21, 35:15
**21st** [1] - 22:10
**22** [3] - 53:19, 56:6, 59:16
**22314** [1] - 2:11
**23rd** [3] - 47:25, 48:2, 50:12
**24** [1] - 9:24
**27th** [1] - 66:8
**28** [9] - 4:19, 9:21,

12:16, 22:1, 35:14, 47:21, 53:19, 59:17, 66:3
**29th** [2] - 56:25, 57:13
**2:12** [1] - 1:6

## 3

**30** [1] - 9:24
**308** [1] - 2:4
**30th** [1] - 66:8
**333** [2] - 2:22, 76:11
**34** [2] - 4:19, 35:14
**370th** [1] - 1:18
**3712** [1] - 2:8
**38803** [1] - 1:21

## 4

**4** [2] - 59:16, 59:17
**4506** [1] - 1:21
**48708** [1] - 2:7
**4:00** [2] - 75:5, 75:12
**4:30** [1] - 75:5

## 5

**5** [4] - 4:18, 4:20, 35:13, 35:14
**500** [1] - 1:24
**51525** [1] - 1:19
**5:00** [2] - 74:22, 75:6

## 6

**600** [1] - 2:10
**601** [1] - 1:13
**6714** [2] - 2:22, 76:10
**6B** [4] - 4:18, 6:1, 35:13, 36:6
**6th** [2] - 7:7, 7:10

## 7

**7:45** [1] - 73:1
**7A** [3] - 59:16, 63:12, 63:13

## 8

**8:45** [3] - 72:14, 73:4, 73:10

## 9

**9** [4] - 4:18, 7:20, 35:13, 42:7
**950** [1] - 1:16
**9:00** [1] - 73:11

## A

**ability** [11] - 17:11, 29:25, 30:5, 38:20, 43:2, 49:7, 51:16, 52:15, 55:1, 65:6, 76:6
**able** [22] - 15:23, 19:20, 22:2, 25:16, 25:19, 26:16, 26:25, 27:3, 30:9, 32:13, 35:11, 49:17, 50:18, 53:16, 55:6, 55:18, 58:4, 58:14, 60:19, 63:4, 65:14, 67:24
**abortion** [55] - 17:3, 17:4, 17:6, 17:10, 17:13, 17:15, 17:18, 17:21, 17:23, 18:2, 18:7, 18:23, 18:25, 19:16, 20:10, 20:12, 21:22, 23:5, 23:9, 23:10, 23:17, 23:18, 24:3, 24:8, 24:21, 24:24, 25:11, 25:18, 25:22, 26:24, 26:25, 27:2, 30:25, 31:21, 32:8, 43:24, 44:10, 45:14, 45:16, 54:18, 54:19, 54:21, 54:25, 55:14, 57:18, 57:25, 58:4, 64:24, 65:1, 65:5, 65:12, 69:25
**abortions** [4] - 18:12, 19:19, 32:7, 32:8
**absolute** [1] - 30:24
**accepting** [1] - 72:21
**access** [26] - 17:16, 18:1, 18:6, 19:19, 20:11, 23:9, 23:17, 23:22, 23:24, 24:3, 24:7, 24:11, 25:11, 25:18, 26:25, 27:2, 30:24, 32:7, 46:22, 51:11, 51:25, 57:18, 57:25, 67:5, 67:23
**accessing** [1] - 48:20
**accompanied** [1] - 71:5
**accurate** [5] - 5:20, 38:3, 38:7, 63:6, 76:4
**accused** [7] - 20:3, 20:16, 24:2, 51:10, 51:24, 52:12, 57:24
**acted** [1] - 17:16
**Action** [1] - 1:2
**actions** [1] - 21:2
**active** [2] - 28:19, 66:1
**activities** [1] - 65:24

**activity** [2] - 60:24, 60:25
**actors** [1] - 52:10
**actual** [1] - 37:13
**additional** [1] - 64:22
**address** [2] - 35:14, 35:21
**addresses** [1] - 5:14
**adjourned** [1] - 75:12
**adjust** [1] - 59:14
**administered** [1] - 28:25
**advice** [4] - 40:21, 40:25, 41:1
**advised** [1] - 34:1
**advisement** [1] - 3:5
**advisor** [1] - 10:14
**advocates** [2] - 43:22, 44:8
**affect** [8] - 7:17, 8:20, 11:15, 13:18, 16:19, 45:1, 45:3, 45:22
**affected** [1] - 25:21
**affiliate** [1] - 65:25
**afford** [1] - 15:23
**afraid** [1] - 73:22
**afternoon** [8] - 3:2, 3:3, 23:3, 25:16, 48:17, 50:25, 57:15, 66:19
**AFTERNOON** [2] - 1:7, 1:8
**afterwards** [1] - 9:14
**agency** [5] - 8:5, 12:17, 15:20, 15:22, 16:3
**agree** [3] - 24:23, 40:14, 49:3
**ahead** [4] - 7:2, 12:10, 27:22, 28:8
**Alexandria** [1] - 2:11
**ALFRED** [1] - 2:2
**Alfred** [1] - 2:3
**allegation** [2] - 24:1, 24:2
**allegations** [1] - 59:25
**alleged** [1] - 70:14
**allow** [1] - 55:14
**allowed** [4] - 18:12, 23:10, 23:17, 33:19
**allows** [1] - 27:2
**almost** [1] - 34:7
**alone** [2] - 25:21, 58:16
**altercation** [1] - 60:18
**ambassador** [1] - 65:24
**ambiguous** [1] - 23:12
**AMERICA** [1] - 1:2

**amount** [1] - 69:17
**animosity** [2] - 52:6, 52:7
**answer** [21] - 19:12, 19:13, 23:16, 24:18, 24:19, 25:3, 30:17, 30:19, 31:3, 32:10, 32:12, 32:16, 32:23, 34:20, 34:22, 40:6, 47:9, 55:23, 56:6, 58:18
**answered** [6] - 19:10, 23:18, 30:3, 32:1, 34:9, 58:7
**answers** [4] - 31:14, 34:7, 47:5, 73:8
**anticipate** [1] - 45:6
**apologize** [2] - 24:15, 44:8
**appear** [3] - 3:17, 3:20, 21:11
**appeared** [2] - 60:23, 61:20
**apply** [5] - 18:18, 20:17, 26:10, 30:2, 67:25
**applying** [1] - 19:2
**appreciate** [1] - 72:4
**approach** [1] - 31:20
**appropriate** [1] - 47:20
**area** [1] - 4:22
**argue** [1] - 33:1
**arrangements** [1] - 66:12
**arrest** [1] - 60:17
**arrested** [1] - 61:2
**arrests** [3] - 13:25, 14:7, 14:17
**article** [8] - 60:23, 61:10, 61:25, 63:14, 64:4, 64:7, 71:10
**articles** [3] - 60:11, 61:12, 71:6
**aside** [8] - 27:4, 48:23, 49:18, 62:10, 64:9, 67:10, 68:5, 68:8
**aspect** [2] - 43:23, 44:9
**aspects** [2] - 14:1, 55:3
**assess** [5] - 49:10, 49:20, 57:23, 67:20, 68:6
**assessing** [1] - 67:16
**assessment** [2] - 26:3, 67:25
**assist** [1] - 22:5
**assistance** [1] - 37:12
**assistant** [1] - 6:9
**Assistant** [1] - 36:7

**association** [1] - 54:13
**assume** [4] - 63:5, 73:14, 73:15, 74:22
**assuming** [7] - 8:17, 20:18, 27:4, 28:18, 29:19, 34:14, 40:8
**attempted** [1] - 30:13
**attention** [2] - 74:4, 74:15
**attorney** [3] - 6:9, 7:16, 36:8
**Attorney** [1] - 36:7
**Attorney's** [19] - 1:12, 6:2, 6:4, 6:11, 6:14, 6:24, 7:3, 7:15, 7:16, 36:10, 37:2, 37:25, 38:10, 38:11, 38:24, 39:11, 39:23, 41:14, 41:17
**attorney's** [1] - 38:21
**attorneys** [5] - 13:3, 15:6, 38:21, 72:3, 73:23
**August** [9] - 1:6, 9:24, 22:10, 56:25, 57:13, 66:7, 66:8, 76:7
**available** [2] - 12:3, 22:3
**Avenue** [6] - 1:16, 1:24, 2:3, 2:6, 2:22, 76:11
**aware** [5] - 59:19, 59:25, 63:17, 68:20, 70:24

**B**

**back-and-forth** [1] - 30:10
**ballpark** [1] - 31:10
**bar** [2] - 72:22, 73:13
**based** [38] - 5:14, 9:4, 11:22, 12:2, 18:2, 21:1, 24:24, 25:2, 25:20, 26:3, 36:23, 36:25, 37:23, 38:16, 38:18, 38:22, 38:23, 40:8, 41:13, 41:16, 41:22, 42:24, 45:7, 51:3, 51:12, 51:14, 51:23, 56:2, 58:5, 58:16, 62:6, 62:14, 63:6, 63:19, 64:4, 64:15, 66:20
**basis** [1] - 8:5
**Bay** [1] - 2:7
**became** [1] - 68:20
**become** [1] - 3:8
**BEFORE** [1] - 1:9

**begin** [1] - 28:13
**begins** [1] - 57:13
**behavior** [3] - 46:11, 46:15, 52:14
**belief** [4] - 51:5, 70:7, 70:10, 70:13
**beliefs** [16] - 17:9, 18:3, 45:16, 48:19, 48:23, 49:7, 49:9, 49:14, 49:18, 54:24, 55:10, 56:2, 65:4, 65:12, 67:9, 67:23
**believes** [1] - 32:6
**belong** [1] - 44:7
**best** [7] - 21:12, 30:20, 37:20, 41:2, 49:22, 67:17, 76:6
**better** [1] - 40:9
**beyond** [6] - 11:16, 20:20, 21:4, 21:8, 27:5, 27:9
**bias** [7] - 31:1, 38:21, 41:25, 42:1, 45:7, 45:9
**biases** [2] - 68:5, 68:7
**big** [1] - 52:8
**birth** [1] - 55:10
**bit** [3] - 13:3, 52:8, 69:4
**blank** [1] - 3:21
**BLERINA** [1] - 1:23
**block** [3] - 5:20, 24:7, 72:1
**blocked** [1] - 24:3
**blocking** [2] - 25:11, 25:17
**blocks** [2] - 5:7, 5:10
**bono** [3] - 15:9, 15:21, 16:10
**bottom** [1] - 19:10
**Box** [1] - 1:21
**BOYLE** [1] - 1:22
**Boyle** [1] - 1:23
**break** [2] - 49:12, 60:13
**briefly** [1] - 33:12
**bring** [1] - 71:25
**bringing** [1] - 73:11
**broad** [3] - 17:17, 45:18, 46:9
**broader** [2] - 18:7, 18:23
**building** [7] - 5:13, 5:17, 5:19, 5:23, 35:24, 36:2, 36:3
**bunch** [1] - 12:18

**C**

**calculate** [1] - 50:5

**California** [1] - 66:7
**Cameron** [1] - 2:10
**CANNON** [48] - 1:17, 7:8, 10:25, 11:6, 11:13, 19:25, 26:21, 27:21, 29:23, 31:5, 31:15, 32:2, 32:19, 32:25, 33:5, 36:24, 50:25, 51:5, 51:9, 51:24, 52:4, 52:17, 53:2, 53:6, 54:11, 58:22, 59:3, 68:11, 68:16, 68:19, 69:1, 69:9, 69:12, 69:16, 69:24, 70:2, 70:5, 70:10, 70:13, 70:18, 70:21, 70:23, 71:3, 71:7, 71:11, 71:14, 71:19, 73:13
**cannot** [4] - 10:2, 10:5, 11:23, 57:8
**capable** [2] - 34:18, 49:1
**capacity** [5] - 6:14, 36:16, 36:18, 40:16, 40:19
**Capitol** [2] - 13:1, 13:5
**card** [2] - 72:22, 73:13
**Cardiff** [1] - 2:8
**care** [35] - 17:10, 18:6, 18:22, 18:24, 41:11, 43:23, 44:9, 44:24, 46:20, 46:22, 47:1, 47:2, 47:3, 47:10, 47:13, 47:15, 47:18, 47:19, 47:20, 48:20, 51:6, 51:7, 51:11, 51:17, 52:5, 54:25, 55:8, 56:8, 56:17, 65:5, 67:6, 67:24
**Carolina** [1] - 43:7
**Carson** [1] - 1:19
**case** [76] - 7:16, 7:18, 13:19, 13:21, 13:23, 14:14, 14:15, 16:20, 17:2, 17:3, 17:5, 17:14, 17:25, 18:4, 19:3, 20:25, 21:4, 22:19, 24:2, 24:25, 25:3, 25:9, 25:24, 26:7, 26:11, 27:5, 29:1, 29:7, 30:2, 30:3, 30:5, 30:16, 31:15, 34:19, 34:25, 38:16, 45:3, 45:24, 46:2, 46:4, 47:11, 48:24, 49:19, 52:18, 52:21, 54:18, 54:19, 55:2, 55:20, 57:22, 57:24, 58:14, 59:18,

59:20, 59:25, 60:14, 60:21, 61:15, 61:25, 62:3, 62:6, 62:7, 64:1, 64:23, 66:20, 66:22, 66:25, 67:4, 67:20, 68:1, 69:18, 70:8, 71:24, 73:21, 74:11, 75:1
**cases** [9] - 7:11, 14:6, 14:10, 16:11, 16:15, 37:25, 38:1, 43:11, 43:16
**cell** [1] - 72:1
**Center** [1] - 2:6
**certain** [10] - 9:5, 28:4, 28:5, 30:1, 32:22, 33:4, 33:8, 34:2, 34:18, 34:23
**certainly** [2] - 18:24, 33:20
**certainty** [1] - 67:19
**CERTIFICATE** [1] - 76:1
**certified** [2] - 43:12, 43:17
**certify** [1] - 76:3
**cetera** [2] - 32:14, 62:12
**chair** [3] - 12:11, 35:9, 59:13
**chambers** [2] - 72:17, 73:15
**changed** [1] - 48:7
**changes** [1] - 75:9
**charged** [3] - 18:20, 21:2, 21:3
**charges** [2] - 14:14, 21:8
**Chase** [1] - 2:9
**Chevy** [1] - 2:9
**chief** [1] - 10:13
**choice** [2] - 56:19, 69:20
**chosen** [2] - 21:24, 22:23
**church** [1] - 13:6
**circumstances** [2] - 24:25, 25:2
**City** [2] - 2:7, 47:25
**Civil** [6] - 1:15, 6:3, 6:5, 6:17, 36:8, 36:10
**civilian** [3] - 14:23, 28:15, 28:17
**claims** [1] - 70:17
**clarify** [3] - 39:4, 51:13, 73:23
**classified** [2] - 40:7, 40:15
**clear** [5] - 17:3, 35:10,

54:18, 61:3, 62:1
**clearance** [1] - 40:7
**clearly** [3] - 11:23, 30:8, 30:13
**CLERK** [1] - 3:13
**client** [1] - 72:24
**clients** [5] - 51:10, 51:24, 52:6, 52:12, 72:4
**clinic** [14] - 4:20, 17:18, 18:8, 30:25, 35:14, 60:3, 60:18, 60:19, 61:15, 61:21, 62:2, 67:6, 68:21, 70:14
**clinics** [4] - 17:5, 18:23, 54:21, 65:1
**close** [3] - 3:7, 12:16, 15:2, 43:21, 44:7, 53:19, 56:7
**closely** [1] - 42:5
**co** [2] - 75:1, 75:2
**co-defendant** [1] - 75:1
**co-defendants** [1] - 75:2
**colleague** [5] - 7:25, 9:13, 11:25, 42:18, 43:2
**colleagues** [1] - 42:5
**collect** [1] - 72:5
**COLLEEN** [1] - 1:9
**COLUMBIA** [1] - 1:1
**combination** [2] - 13:9, 13:10
**comfortable** [4] - 3:8, 3:10, 4:13, 12:12
**coming** [2] - 18:22, 34:7
**commentary** [1] - 69:22
**commenting** [1] - 61:13
**comments** [1] - 68:24
**commit** [1] - 52:11
**commitment** [8] - 9:21, 22:2, 22:3, 47:22, 47:23, 56:21, 56:24, 66:4
**community** [1] - 66:2
**company** [1] - 55:11
**complete** [1] - 76:5
**completely** [5] - 19:24, 20:2, 20:8, 20:15, 61:3
**comport** [1] - 8:20
**computer** [2] - 73:22, 73:24
**concept** [1] - 46:9
**concern** [8] - 3:7,

3:11, 5:23, 7:17, 8:17, 9:1, 38:14, 41:12
**concerned** [4] - 9:8, 32:16, 42:23, 56:1
**concerns** [5] - 33:20, 33:21, 40:10, 42:21, 55:25
**conference** [1] - 66:12
**connected** [1] - 21:7
**Connecticut** [2] - 1:24, 2:3
**connections** [1] - 31:13
**consciously** [3] - 41:20, 48:23, 49:18
**consider** [7] - 30:11, 41:5, 51:10, 51:11, 62:19, 64:16, 67:11
**consideration** [12] - 7:17, 13:18, 16:19, 19:21, 20:2, 20:9, 20:15, 20:24, 22:22, 45:3, 47:13, 47:16
**considered** [1] - 31:8
**consistent** [1] - 30:6
**constitutes** [1] - 76:4
**Constitution** [2] - 2:22, 76:11
**Cont** [1] - 2:1
**contact** [4] - 37:13, 38:9, 38:24, 63:14
**content** [1] - 14:1
**context** [2] - 41:14, 45:14
**continuous** [1] - 38:5
**contrary** [1] - 42:19
**contravention** [1] - 11:4
**contribute** [1] - 44:8
**contributed** [1] - 43:22
**contributions** [1] - 44:12
**conversation** [2] - 45:22, 46:7
**conversations** [2] - 39:17, 39:20
**convicted** [1] - 27:10
**convinced** [1] - 42:24
**correct** [41] - 6:11, 10:17, 18:12, 18:16, 18:17, 19:12, 20:12, 21:24, 24:23, 27:13, 27:14, 31:6, 31:20, 36:4, 36:5, 37:3, 38:4, 40:13, 41:13, 41:19, 43:18, 43:20, 47:9, 47:11, 48:21, 49:16, 49:25, 50:9,

50:11, 50:14, 51:4, 51:8, 52:3, 66:23, 67:12, 67:13, 69:5, 70:22, 71:2, 74:22
**correctly** [5] - 26:23, 41:18, 44:5, 46:23, 48:18
**counsel** [5] - 15:23, 16:23, 26:20, 30:8, 38:13
**counterparts** [1] - 37:21
**countries** [1] - 52:11
**country** [1] - 28:11
**couple** [8] - 23:4, 31:16, 42:6, 48:17, 55:12, 57:12, 65:19, 67:10
**course** [1] - 73:24
**courses** [1] - 54:3
**Court** [10] - 2:8, 2:20, 2:21, 29:1, 30:1, 30:7, 30:11, 30:12, 67:12, 76:10
**COURT** [242] - 1:1, 3:2, 3:4, 3:15, 3:18, 3:21, 3:23, 4:3, 4:8, 4:11, 4:15, 4:24, 5:1, 5:4, 5:8, 5:12, 5:15, 5:22, 6:1, 6:10, 6:13, 6:16, 6:21, 7:1, 7:11, 7:14, 7:20, 7:24, 8:1, 8:8, 8:10, 8:24, 9:6, 9:15, 9:21, 9:25, 10:4, 10:7, 10:10, 10:15, 10:18, 11:1, 11:8, 11:10, 11:19, 11:21, 12:5, 12:10, 12:20, 12:23, 13:2, 13:8, 13:11, 13:17, 13:22, 13:24, 14:4, 14:6, 14:12, 14:17, 14:19, 15:1, 15:5, 15:10, 15:14, 15:17, 15:19, 15:25, 16:2, 16:6, 16:10, 16:13, 16:18, 16:22, 17:2, 17:22, 18:5, 18:15, 18:18, 19:6, 19:9, 20:5, 20:14, 20:24, 21:17, 21:20, 22:1, 22:6, 22:9, 22:11, 22:15, 22:21, 22:23, 23:1, 23:12, 23:15, 24:14, 24:16, 25:1, 25:6, 26:20, 26:22, 27:15, 27:19, 27:22, 28:8, 28:18, 29:11, 29:19, 29:24, 31:3, 31:9, 31:25, 32:3,

32:20, 33:2, 33:6, 33:14, 34:12, 35:3, 35:7, 35:18, 35:20, 35:24, 36:2, 36:6, 36:17, 37:1, 37:4, 37:7, 37:11, 37:24, 38:6, 38:9, 38:23, 39:7, 39:10, 39:15, 39:21, 40:4, 40:20, 41:4, 41:8, 42:1, 42:6, 42:11, 42:13, 42:15, 43:4, 43:8, 43:11, 43:16, 43:19, 43:21, 44:6, 44:18, 44:20, 44:25, 45:9, 45:13, 45:17, 46:13, 46:21, 47:4, 47:21, 48:2, 48:5, 48:10, 48:12, 48:15, 49:2, 49:11, 50:24, 53:3, 53:7, 53:9, 53:11, 53:13, 53:18, 53:24, 54:4, 54:7, 54:14, 54:17, 55:15, 55:25, 56:5, 56:15, 56:21, 57:1, 57:4, 57:10, 57:14, 58:21, 58:23, 59:2, 59:5, 59:7, 59:9, 59:13, 59:21, 60:5, 60:9, 60:13, 60:22, 61:8, 61:16, 61:20, 62:4, 62:22, 63:2, 63:4, 63:10, 63:12, 63:19, 63:22, 63:25, 64:3, 64:18, 64:22, 65:9, 65:13, 65:18, 66:3, 66:9, 66:14, 66:18, 68:10, 71:16, 71:20, 71:22, 73:14, 74:1, 74:4, 74:6, 74:9, 74:13, 74:15, 74:20, 74:23, 75:8, 76:1
**court** [8] - 16:15, 43:7, 43:11, 43:16, 58:6, 58:17, 62:13, 64:17
**Court's** [2] - 30:15, 30:21
**Courthouse** [1] - 2:22
**courthouse** [1] - 73:2
**courtroom** [18] - 4:10, 11:12, 12:4, 29:18, 35:2, 53:5, 53:10, 59:1, 59:8, 62:5, 62:7, 62:15, 62:19, 63:7, 63:18, 64:10, 71:18, 72:14
**courts** [1] - 43:5
**cousin** [7] - 12:25, 13:4, 15:7, 15:11,

15:14, 16:14
**covered** [2] - 23:1, 56:15
**Crabb** [3] - 29:24, 32:4, 33:3
**CRABB** [28] - 1:12, 23:3, 23:8, 23:23, 24:1, 24:6, 25:4, 25:7, 25:15, 25:25, 26:5, 26:8, 26:16, 26:19, 27:23, 28:2, 28:5, 28:7, 29:21, 29:25, 33:8, 57:15, 57:21, 58:3, 58:9, 58:13, 58:20, 59:6
**CRAMPTON** [3] - 1:20, 74:21, 75:7
**CRC** [2] - 2:21, 76:9
**creates** [1] - 40:10
**credit** [1] - 63:8
**Criminal** [2] - 1:2, 1:15
**criminal** [5] - 15:15, 16:11, 54:5, 54:13, 71:24
**CRR** [2] - 2:21, 76:9
**CRT** [1] - 1:15
**curriculum** [1] - 54:3

# D

**D.C** [11] - 1:5, 4:21, 13:5, 13:6, 35:15, 37:2, 60:18, 61:7, 66:8, 69:22, 76:11
**daily** [1] - 8:5
**date** [2] - 22:9, 48:4
**Dated** [1] - 76:7
**days** [1] - 57:13
**DC** [5] - 1:13, 1:16, 1:25, 2:4, 2:23
**deal** [3] - 9:18, 37:23, 52:16
**dealing** [1] - 39:6
**dealings** [2] - 8:19, 36:13
**dealt** [5] - 6:4, 6:6, 6:13, 36:9, 37:16
**decide** [2] - 31:1, 57:23
**deciding** [1] - 34:24
**decision** [18] - 20:19, 21:1, 21:23, 25:17, 27:6, 34:19, 55:12, 55:22, 58:4, 58:15, 62:12, 62:13, 62:16, 62:24, 62:25, 63:6, 63:7, 64:10
**decisions** [8] - 19:14, 40:22, 46:2, 47:7, 55:20, 55:21, 62:6,

74:16
**deem** [1] - 47:20
**deeply** [8] - 17:11, 52:5, 55:1, 55:9, 55:16, 55:19, 56:2, 65:6
**defendant** [2] - 64:15, 75:1
**Defendant** [5] - 1:17, 2:2, 2:5, 2:8, 2:10
**defendant's** [1] - 60:3
**Defendants** [1] - 1:7
**defendants** [5] - 17:16, 21:2, 60:1, 68:20, 75:2
**defender** [1] - 16:7
**defense** [6] - 16:23, 30:18, 39:3, 40:11, 41:16, 68:10
**defined** [1] - 12:17
**definite** [1] - 34:8
**definitely** [2] - 52:8, 56:18
**degree** [2] - 54:1, 54:2
**delegation** [1] - 10:14
**deliberately** [2] - 34:14, 34:16
**deliberating** [2] - 8:18, 42:17
**deliberations** [2] - 8:21, 11:25
**deliberative** [1] - 41:5
**DENNIS** [1] - 1:22
**dental** [1] - 47:18
**deny** [1] - 18:1
**department** [1] - 36:22
**Department** [10] - 6:3, 6:5, 6:16, 6:20, 36:8, 36:10, 36:19, 36:21, 37:15, 49:24
**deprived** [1] - 51:16
**described** [2] - 7:6, 63:23
**description** [1] - 18:2
**despite** [1] - 58:3
**destroy** [1] - 33:22
**detail** [1] - 14:10
**details** [3] - 36:15, 45:5, 60:20
**determination** [1] - 25:19
**determine** [2] - 25:9, 26:11
**determined** [1] - 27:10
**difference** [2] - 58:11, 64:5
**different** [13] - 8:4, 8:13, 8:24, 9:4, 9:11, 9:17, 11:14, 26:8, 31:13, 58:9, 61:10,

62:9
**difficult** [21] - 8:23,
9:3, 9:7, 9:10, 9:16,
9:19, 11:14, 11:15,
19:4, 19:7, 30:4,
56:22, 62:20, 64:14,
64:19, 64:21, 65:16,
66:4, 66:11, 67:9,
68:3
**difficulties** [1] - 52:23
**difficulty** [3] - 31:6,
31:16, 52:20
**directly** [2] - 8:1,
17:14
**disagree** [1] - 23:19
**disappear** [1] - 72:6
**disclosing** [1] - 40:17
**discuss** [2] - 31:13,
38:3
**discussed** [8] - 7:11,
14:7, 16:23, 30:12,
39:18, 41:9, 47:10,
57:17
**discussing** [3] -
18:20, 38:1, 70:11
**discussion** [3] -
37:11, 41:4, 69:22
**discussions** [17] - 3:9,
13:12, 13:14, 13:16,
13:17, 13:24, 14:2,
16:13, 16:18, 16:25,
39:11, 39:21, 39:24,
41:2, 41:9, 41:13,
64:14
**dishonor** [1] - 34:14
**dispositive** [1] - 31:7
**DISTRICT** [3] - 1:1,
1:1, 1:9
**division** [1] - 7:4
**Division** [5] - 1:15,
6:3, 6:5, 36:8, 36:11
**divisive** [1] - 3:9
**Dobbs** [1] - 55:12
**doctorate** [1] - 54:1
**DOJ** [2] - 1:15, 42:4
**DOJ-CRT** [1] - 1:15
**domestic** [6] - 37:25,
38:24, 39:5, 39:14,
41:10
**done** [8] - 11:23,
30:19, 37:7, 38:22,
54:8, 54:10, 54:12,
68:25
**door** [2] - 35:11, 59:13
**doubt** [5] - 20:20,
21:5, 21:9, 27:5,
27:9
**doubtful** [1] - 38:20
**down** [21] - 4:12, 4:16,
11:10, 12:7, 12:11,

14:19, 29:1, 29:16,
31:8, 31:24, 45:25,
46:7, 49:12, 53:3,
58:23, 59:10, 59:14,
60:13, 71:16, 72:18
**drawing** [1] - 33:16
**drawings** [2] - 33:19,
33:22
**DUNN** [18] - 2:5, 3:16,
3:19, 3:22, 4:1, 4:6,
4:9, 28:9, 28:11,
28:13, 28:16, 28:20,
28:23, 28:25, 29:4,
29:6, 29:10, 30:23
**Dunn** [1] - 2:6
**during** [6] - 8:16, 8:21,
30:7, 37:10, 39:20,
73:24
**duty** [3] - 11:5, 28:19,
29:8

# E

**early** [2] - 72:16, 73:1
**easily** [1] - 52:19
**easy** [2] - 32:12, 53:22
**economics** [1] - 54:16
**effort** [9] - 32:22, 38:5,
49:3, 49:17, 67:18,
67:19, 67:21, 67:25,
68:3
**either** [9] - 6:4, 7:21,
15:2, 16:14, 36:9,
37:19, 43:17, 44:12
**electronics** [1] - 73:20
**elements** [1] - 21:7
**employed** [2] - 12:17,
43:5
**employees** [1] - 55:13
**employment** [3] -
3:24, 28:13, 28:22
**encounters** [2] -
61:14, 61:22
**end** [4] - 30:12, 32:1,
35:1, 75:4
**ending** [1] - 69:7
**enforce** [2] - 21:10,
27:4
**enforced** [1] - 21:1
**enforcement** [4] -
12:17, 13:11, 14:21
**enforcing** [5] - 20:18,
20:21, 21:6, 21:14,
21:18
**engagements** [1] - 9:3
**enter** [1] - 64:14
**entered** [5] - 4:10,
12:4, 35:2, 53:10,
59:8
**entire** [1] - 54:2

**entirely** [1] - 69:6
**entitled** [7] - 19:11,
24:20, 34:24, 46:20,
47:2, 47:19, 51:6
**entitlement** [1] - 51:7
**envelopes** [2] - 72:3,
72:4
**equivocating** [1] -
31:10
**essence** [1] - 41:6
**established** [1] -
25:10
**et** [2] - 32:14, 62:12
**evenhandedness** [1] -
31:19
**events** [3] - 65:23,
66:1, 69:7
**evidence** [21] - 7:18,
13:19, 16:19, 19:22,
20:19, 45:3, 47:13,
47:16, 49:10, 49:20,
55:19, 57:23, 58:6,
58:16, 62:7, 62:19,
67:16, 67:20, 68:1,
68:6
**evidently** [2] - 9:16,
11:22
**exact** [2] - 36:15, 48:4
**exactly** [4] - 5:16,
38:8, 39:18, 44:2
**example** [1] - 55:11
**excuse** [7] - 3:6, 3:12,
11:22, 12:2, 33:14,
43:14, 75:11
**excused** [5] - 31:9,
31:10, 31:12, 34:2,
35:1
**excusing** [2] - 74:16,
74:17
**exited** [5] - 11:12,
29:18, 53:5, 59:1,
71:18
**expect** [2] - 29:13,
41:24
**expected** [1] - 10:20
**experience** [1] - 41:23
**expert** [3] - 54:10,
54:12, 54:15
**explain** [3] - 25:25,
58:11, 66:24
**explaining** [1] - 27:15
**exposure** [1] - 66:21
**express** [1] - 43:3
**expressing** [4] - 31:6,
31:15, 32:4, 42:19
**extent** [1] - 72:8

# F

**faces** [1] - 49:9

**fact** [6] - 8:19, 11:24,
19:18, 20:10, 31:2,
38:23
**facts** [8] - 18:3, 25:9,
25:10, 25:19, 25:21,
59:17, 69:11
**fair** [19] - 17:12, 19:20,
20:21, 30:5, 40:11,
49:7, 49:19, 51:9,
55:2, 55:6, 55:18,
56:1, 57:19, 65:7,
65:14, 67:20, 67:25,
69:17, 71:11
**fairly** [3] - 29:6, 66:1,
67:15
**fall** [1] - 51:17
**familiar** [3] - 5:12,
35:24, 59:17
**familiarity** [1] - 66:20
**family** [8] - 12:19,
12:22, 12:23, 15:4,
15:6, 43:4, 44:3,
44:6
**far** [5] - 5:2, 20:12,
31:7, 35:21, 73:6
**faster** [1] - 73:10
**father** [3] - 44:16,
44:19, 44:21
**father's** [1] - 45:19
**favor** [5] - 32:8, 39:2,
39:3, 42:4, 45:10
**favorable** [1] - 41:21
**favorably** [2] - 38:12,
41:15
**federal** [6] - 13:7,
18:8, 24:4, 28:21,
40:2, 40:17
**feeding** [1] - 32:23
**feelings** [7] - 19:11,
55:4, 55:5, 55:7,
55:16, 55:19, 65:9
**fentanyl** [1] - 75:1
**fetal** [10] - 60:1, 61:5,
63:22, 64:1, 67:1,
68:13, 69:2, 69:7,
69:18, 70:11
**few** [3] - 50:25, 54:3,
72:6
**figure** [3] - 9:11,
23:15, 46:17
**fine** [6] - 6:21, 29:14,
32:1, 45:18, 57:4,
74:7, 74:13
**firm** [3] - 15:11, 15:13,
15:20
**first** [3] - 4:7, 54:3,
70:18
**five** [4] - 35:22, 74:25,
75:2
**fix** [1] - 53:13

**focusing** [1] - 41:12
**follow** [7] - 26:16,
29:12, 29:14, 30:1,
30:9, 30:15, 30:21
**FOR** [1] - 1:1
**force** [1] - 36:22
**forced** [1] - 55:10
**foregoing** [1] - 76:4
**form** [1] - 14:2
**former** [1] - 72:21
**forth** [5] - 12:11,
30:10, 56:20, 70:2,
73:24
**forward** [1] - 9:5
**France** [2] - 8:6, 8:8
**frankly** [4] - 13:12,
32:16, 72:20, 73:14
**freely** [1] - 43:3
**frequently** [1] - 65:22
**friend** [2] - 6:8, 6:24
**friends** [6] - 12:19,
12:22, 13:6, 13:9,
14:21, 44:7
**front** [3] - 5:17, 72:22,
72:23
**full** [1] - 76:5
**fundamentally** [1] -
17:24

# G

**G20** [3] - 10:12, 10:15,
11:23
**gates** [1] - 12:6
**gays** [1] - 56:19
**gender** [7] - 36:23,
36:25, 37:23, 51:3,
51:12, 51:14, 51:23
**gender-based** [7] -
36:23, 36:25, 37:23,
51:3, 51:12, 51:14,
51:23
**general** [6] - 13:14,
13:15, 17:1, 38:21,
41:22, 47:15
**generalized** [1] -
16:25
**generally** [4] - 8:2,
14:7, 37:23, 47:17
**GERAGHTY** [2] - 1:6,
2:10
**given** [4] - 30:19,
34:15, 62:18, 70:16
**global** [7] - 36:21,
37:16, 39:1, 50:1,
51:2, 51:21
**globally** [2] - 38:3,
51:18
**GOODMAN** [2] - 1:6,
2:8

**government** [23] - 7:16, 11:8, 15:12, 15:20, 15:22, 16:2, 20:20, 21:4, 21:9, 23:2, 27:5, 27:10, 36:16, 37:19, 37:21, 38:13, 40:2, 40:16, 40:18, 48:16, 56:25, 57:5, 66:18
**government's** [1] - 6:2
**great** [1] - 14:10
**greater** [1] - 14:23
**grounds** [1] - 3:12
**group** [5] - 42:16, 43:22, 44:7, 44:8, 51:16
**guess** [11] - 5:3, 15:23, 19:5, 20:4, 21:12, 24:10, 24:24, 31:25, 32:19, 55:5, 66:21
**GUILLAUME** [1] - 2:2
**Guillaume** [1] - 2:3
**guilty** [2] - 21:10, 27:11
**guns** [1] - 75:1
**guy** [1] - 31:24

## H

**half** [15] - 28:3, 28:5, 30:14, 30:15, 30:17, 30:20, 32:1, 32:17, 32:18, 32:22, 33:4, 33:8, 34:2, 34:18, 50:6
**hand** [1] - 62:15
**handle** [1] - 10:8
**handled** [1] - 38:1
**handling** [1] - 61:5
**hands** [3] - 24:12, 24:22, 31:21
**HANDY** [2] - 1:5, 1:18
**Handy** [8] - 61:2, 63:13, 64:4, 67:1, 68:12, 70:14, 70:24, 71:12
**harassing** [3] - 60:3, 61:9, 68:21
**harassment** [4] - 61:22, 68:22, 69:19, 70:14
**hard** [2] - 18:3, 24:17
**HARIVADAN** [1] - 1:14
**head** [1] - 10:14
**health** [43] - 17:10, 17:17, 18:22, 18:24, 39:16, 39:22, 43:23, 44:4, 44:9, 44:24, 45:1, 45:12, 45:18,

46:8, 46:9, 46:14, 46:18, 46:19, 46:20, 46:22, 47:1, 47:2, 47:10, 47:13, 47:18, 47:19, 48:20, 51:6, 51:7, 51:11, 51:17, 54:25, 55:8, 56:8, 56:16, 60:17, 62:2, 65:5, 67:5, 67:23
**health-related** [1] - 46:19
**hear** [16] - 4:16, 5:4, 13:3, 21:16, 24:17, 29:24, 32:19, 32:25, 35:12, 43:14, 53:15, 53:16, 54:11, 59:15, 60:6, 62:15
**heard** [7] - 25:5, 33:12, 45:7, 62:14, 62:25, 63:5, 74:17
**heart** [1] - 52:5
**HEATHER** [2] - 1:6, 2:6
**held** [10] - 17:11, 17:19, 19:17, 55:1, 55:9, 55:19, 56:2, 65:6, 67:9, 67:23
**help** [4] - 7:6, 22:18, 22:24, 46:17
**HERB** [2] - 1:6, 2:10
**hereby** [1] - 76:3
**hesitation** [2] - 32:14, 34:10
**hesitations** [1] - 32:11
**HINSHAW** [2] - 1:5, 2:3
**histrionics** [1] - 30:18
**hold** [2] - 4:3, 68:16
**honest** [2] - 47:6, 52:22
**honestly** [1] - 19:13
**honor** [2] - 29:4, 34:10
**Honor** [11] - 3:3, 3:14, 25:4, 26:19, 29:21, 29:25, 34:6, 53:8, 57:15, 59:6, 74:21
**HONORABLE** [1] - 1:9
**honoring** [1] - 34:12
**hope** [3] - 29:13, 49:21, 74:4
**host** [1] - 39:14
**house** [1] - 61:7
**houses** [1] - 5:23
**HOWARD** [1] - 2:8
**Human** [1] - 6:16

## I

**IA** [1] - 1:19
**identify** [1] - 57:3

**IDONI** [2] - 1:6, 2:6
**III** [3] - 2:2, 2:3, 2:8
**illegal** [2] - 60:24, 60:25
**illegally** [1] - 68:14
**imagine** [1] - 69:14
**immovable** [1] - 11:17
**impact** [10] - 43:2, 46:11, 46:14, 47:13, 47:15, 49:7, 49:10, 49:14, 52:15
**impacts** [1] - 9:14
**impair** [1] - 52:20
**impartial** [16] - 17:12, 19:20, 30:5, 48:23, 49:8, 49:19, 55:2, 55:6, 55:18, 56:1, 65:7, 65:14, 65:17, 67:15, 67:20
**impartially** [1] - 29:7
**importantly** [2] - 30:11, 52:4
**improper** [3] - 61:4, 61:6, 69:3
**IN** [1] - 1:1
**in/out** [1] - 72:12
**incident** [5] - 59:24, 60:14, 60:15, 60:17, 61:4
**incidents** [2] - 60:2, 62:3
**inclined** [5] - 38:12, 39:2, 39:3, 41:15
**included** [6] - 29:6, 39:13, 54:2, 56:16, 56:19, 68:12
**includes** [2] - 44:23, 51:6
**including** [8] - 8:19, 17:10, 33:16, 43:23, 44:9, 44:24, 54:25, 65:5
**incorrect** [4] - 18:13, 18:15, 40:12, 47:8
**incorrectly** [1] - 6:8
**independent** [1] - 55:22
**India** [2] - 9:23, 11:17
**India's** [1] - 10:13
**indicate** [6] - 3:24, 20:8, 20:14, 34:3, 34:22, 46:13
**indicated** [17] - 17:15, 19:15, 19:16, 26:24, 31:11, 34:18, 35:13, 36:9, 47:12, 51:2, 51:5, 55:15, 55:16, 68:11, 68:19, 69:1, 72:19
**indicating** [5] - 3:24,

18:10, 20:17, 23:20, 65:10
**individual** [1] - 31:14
**individuals** [5] - 7:9, 61:15, 61:23, 62:2, 63:13
**influence** [2] - 45:24, 46:1
**influenced** [3] - 8:15, 8:25, 34:19
**inform** [3] - 21:23, 55:20, 62:23
**information** [12] - 11:11, 37:13, 38:6, 38:25, 40:15, 40:23, 40:25, 41:1, 41:22, 62:5, 64:16, 69:17
**informed** [2] - 27:7
**instituted** [1] - 55:13
**instruction** [1] - 26:16
**instructions** [11] - 29:16, 30:1, 30:9, 30:15, 30:21, 53:4, 58:24, 62:18, 67:12, 71:17, 72:9
**intent** [4] - 17:16, 20:3, 20:16, 37:11
**interestingly** [1] - 31:18
**interfere** [8] - 17:11, 17:14, 19:21, 30:4, 55:1, 55:17, 65:6, 65:13
**interfering** [2] - 51:10, 51:25
**interpreter** [4] - 43:7, 43:12, 43:17
**interpreting** [1] - 43:9
**interrupt** [1] - 25:4
**intrude** [1] - 33:24
**involved** [8] - 7:10, 13:25, 44:11, 45:18, 47:11, 55:21, 61:15, 73:21
**involving** [2] - 60:1, 61:4
**Iowa** [1] - 73:13
**issue** [16] - 4:20, 9:6, 17:9, 18:20, 30:12, 30:25, 34:17, 41:10, 47:22, 54:25, 55:8, 56:12, 62:2, 65:5, 69:25
**issued** [1] - 10:12
**issues** [14] - 9:5, 16:15, 36:21, 37:16, 37:17, 37:22, 39:6, 39:7, 50:2, 50:4, 51:3, 56:13, 56:16, 62:9

**itself** [7] - 5:23, 23:10, 23:18, 31:7, 36:3, 37:13, 60:15

## J

**January** [2] - 7:7, 7:10
**JASARI** [1] - 1:23
**Jasari** [1] - 1:23
**Jersey** [2] - 13:5, 22:13
**job** [4] - 14:11, 25:8, 44:23, 45:8
**JOHN** [4] - 1:5, 1:12, 2:3, 2:10
**joint** [1] - 10:12
**JR** [1] - 1:12
**Judge** [10] - 3:16, 11:7, 11:13, 26:9, 26:21, 27:24, 30:23, 31:6, 57:17, 59:4
**JUDGE** [1] - 1:9
**judge** [3] - 16:24, 53:6, 66:24
**judging** [1] - 24:18
**June** [1] - 8:9
**JUROR** [256] - 4:23, 4:25, 5:3, 5:6, 5:9, 5:14, 5:21, 5:25, 6:7, 6:12, 6:15, 6:18, 6:25, 7:5, 7:9, 7:13, 7:19, 7:23, 7:25, 8:4, 8:9, 8:22, 9:2, 9:12, 9:20, 9:23, 10:2, 10:5, 10:9, 10:11, 10:17, 12:19, 12:22, 12:25, 13:4, 13:10, 13:15, 13:20, 13:23, 14:3, 14:5, 14:9, 14:15, 14:18, 14:25, 15:4, 15:7, 15:13, 15:16, 15:18, 15:22, 16:1, 16:4, 16:8, 16:12, 16:17, 16:21, 17:1, 17:21, 17:23, 18:14, 18:17, 19:4, 19:7, 19:23, 20:1, 20:13, 20:22, 21:13, 21:19, 21:25, 22:4, 22:7, 22:10, 22:13, 22:17, 22:22, 22:25, 23:7, 23:11, 23:14, 23:21, 23:25, 24:5, 24:9, 24:15, 24:21, 25:2, 25:13, 25:23, 26:2, 26:6, 26:14, 26:18, 27:13, 27:18, 28:1, 28:3, 28:6, 28:10, 28:12, 28:15, 28:17, 28:19, 28:21,

82

28:24, 29:3, 29:5,
29:8, 33:9, 35:17,
35:19, 35:22, 36:1,
36:5, 36:14, 36:19,
36:25, 37:3, 37:5,
37:9, 37:14, 38:4,
38:8, 38:18, 39:4,
39:8, 39:13, 39:16,
39:25, 40:14, 40:24,
41:7, 41:20, 42:3,
42:9, 42:12, 42:14,
43:1, 43:6, 43:10,
43:14, 43:18, 43:20,
44:1, 44:15, 44:19,
44:23, 45:4, 45:11,
45:15, 46:6, 46:18,
46:24, 47:17, 47:24,
48:3, 48:9, 48:11,
48:13, 48:21, 48:25,
49:5, 49:16, 49:21,
49:25, 50:3, 50:5,
50:9, 50:11, 50:14,
50:16, 50:19, 50:21,
51:4, 51:8, 51:13,
52:2, 52:7, 52:22,
53:16, 53:22, 53:25,
54:6, 54:9, 54:12,
54:16, 55:9, 55:23,
56:3, 56:10, 56:18,
56:24, 57:2, 57:8,
57:12, 57:20, 58:2,
58:7, 58:11, 58:18,
58:25, 59:19, 59:23,
60:7, 60:11, 60:16,
61:1, 61:11, 61:19,
62:1, 62:17, 63:1,
63:3, 63:9, 63:11,
63:16, 63:21, 63:24,
64:2, 64:13, 64:20,
65:8, 65:11, 65:15,
65:22, 66:6, 66:11,
66:15, 66:23, 67:3,
67:7, 67:13, 67:17,
67:21, 68:2, 68:7,
68:15, 68:18, 68:24,
69:6, 69:10, 69:14,
69:21, 70:1, 70:4,
70:9, 70:12, 70:15,
70:20, 70:22, 71:2,
71:5, 71:9, 71:13,
71:15

**juror** [37] - 3:4, 3:13,
3:16, 3:19, 4:10,
4:14, 9:7, 11:12,
12:4, 12:9, 21:24,
25:8, 29:1, 29:7,
29:18, 29:21, 30:12,
30:16, 30:19, 31:6,
33:16, 34:8, 35:2,
35:6, 40:4, 53:5,
53:10, 53:12, 56:23,

57:23, 58:14, 59:1,
59:8, 59:12, 64:6,
66:5, 71:18
**Juror** [8] - 3:5, 4:15,
4:18, 12:15, 35:7,
35:13, 53:18, 59:16
**juror's** [1] - 29:25
**jurors** [5] - 3:9, 8:16,
8:18, 30:23, 31:7
**JURY** [2] - 1:4, 1:8
**jury** [16] - 3:10, 8:12,
9:13, 9:17, 11:5,
26:9, 26:15, 34:1,
42:10, 42:11, 48:6,
52:18, 57:23, 62:18,
73:11, 74:1
**Justice** [6] - 6:3, 6:5,
6:20, 36:8, 36:10,
36:21
**justified** [3] - 17:4,
54:20, 64:25

## K

**keep** [9] - 10:21, 11:2,
13:2, 15:25, 17:22,
19:6, 24:14, 24:16,
25:1
**kind** [11] - 15:8, 16:24,
21:23, 31:24, 38:19,
39:25, 41:22, 47:3,
47:14, 60:20, 69:20
**kinds** [1] - 44:14
**KIYONAGA** [4] - 2:10,
21:16, 33:12, 34:6
**knowing** [3] - 20:2,
20:3, 20:16
**knowledge** [5] -
16:11, 16:12, 36:4,
41:23, 64:15
**KOLLAR** [1] - 1:9
**KOLLAR-KOTELLY**
[1] - 1:9
**Kotelly** [3] - 26:9,
27:24, 57:17
**KOTELLY** [1] - 1:9

## L

**lady** [1] - 11:14
**language** [1] - 43:9
**languages** [1] - 43:10
**larger** [2] - 25:21,
42:11
**last** [5] - 10:23, 12:2,
26:23, 32:16, 66:7
**Lauren** [1] - 70:14
**LAUREN** [2] - 1:5,
1:18
**Law** [1] - 2:3

**law** [32] - 12:17, 13:11,
14:21, 15:2, 15:8,
15:9, 15:11, 15:13,
15:19, 16:14, 20:18,
22:4, 22:24, 24:4,
25:10, 25:17, 25:18,
25:20, 26:4, 26:10,
26:11, 27:7, 30:2,
53:20, 53:25, 54:3,
54:5, 54:13, 57:25,
67:25
**LAW** [1] - 3:13
**laws** [3] - 17:5, 54:20,
64:25
**lawyer** [4] - 6:19, 15:2,
53:20, 54:1
**least** [6] - 10:23, 11:3,
50:6, 62:8, 73:9
**leave** [2] - 9:8, 71:25
**left** [7] - 4:12, 12:6,
32:20, 33:10, 34:20,
35:4, 59:10
**legal** [6] - 15:24,
16:15, 20:25, 54:7,
54:8, 54:9
**legally** [2] - 69:13,
69:15
**lens** [1] - 62:24
**lesbians** [1] - 56:20
**less** [5] - 31:2, 38:12,
38:15, 39:3, 41:15
**lesser** [2] - 14:24,
70:16
**level** [1] - 31:19
**life** [1] - 8:11
**light** [1] - 25:15
**likely** [1] - 13:20
**limited** [2] - 43:24,
44:10
**line** [4] - 19:11, 72:17,
72:18, 73:2
**list** [4] - 3:16, 3:19,
4:2, 4:8
**listed** [1] - 4:5
**listen** [1] - 33:23
**live** [4] - 4:21, 35:15,
35:18, 55:13
**LLC** [1] - 2:3
**LLP** [1] - 1:23
**local** [2] - 65:24, 69:22
**location** [3] - 5:2, 5:7,
5:11
**locked** [1] - 71:24
**logistics** [1] - 73:9
**look** [5] - 4:4, 25:9,
25:19, 25:24, 62:24
**looked** [3] - 4:7,
61:17, 71:3
**looking** [2] - 25:6,
45:14

**looks** [1] - 5:13
**loud** [1] - 35:9
**louder** [1] - 12:20

## M

**ma'am** [3] - 51:1,
68:11, 71:14
**march** [3] - 56:8,
56:12, 65:21
**marked** [3] - 6:7, 56:3,
64:23
**MARTIN** [1] - 1:17
**mask** [5] - 4:16, 12:13,
35:8, 53:15, 59:15
**master's** [1] - 54:2
**material** [1] - 40:8
**matter** [2] - 71:23,
71:24
**matters** [1] - 42:5
**MD** [1] - 2:9
**mean** [12] - 11:1, 14:9,
19:23, 22:14, 26:1,
26:2, 40:14, 49:2,
56:1, 71:3, 73:1,
74:1
**means** [3] - 32:21,
61:6, 69:3
**meant** [1] - 42:11
**mechanics** [1] - 73:10
**media** [15] - 33:18,
60:2, 60:9, 60:12,
61:12, 61:17, 62:11,
63:17, 63:19, 66:21,
69:19, 69:25, 70:16
**meeting** [1] - 38:5
**members** [2] - 43:4,
44:7
**mention** [5] - 17:3,
48:22, 54:18, 64:23,
67:10
**mentioned** [7] - 37:15,
39:13, 46:6, 63:12,
66:19, 67:2, 69:16
**met** [1] - 8:16
**method** [1] - 24:23
**Metro** [1] - 13:7
**MI** [1] - 2:7
**Michigan** [3] - 22:5,
22:12, 22:13
**microphone** [7] -
4:17, 12:12, 12:21,
53:14, 59:14, 59:22,
73:18
**middle** [1] - 31:24
**might** [12] - 6:18, 9:10,
9:18, 30:18, 31:24,
44:15, 45:7, 46:10,
46:14, 47:13, 62:19,
68:3

**mind** [2] - 32:21,
52:25
**minute** [1] - 56:6
**minutes** [1] - 35:23
**misheard** [1] - 44:16
**missed** [2] - 22:15,
43:8
**mission** [1] - 44:12
**misstate** [1] - 69:11
**mitigate** [1] - 52:14
**model** [2] - 38:2, 39:1
**moment** [1] - 22:25
**moral** [3] - 17:9,
54:24, 65:4
**morally** [4] - 17:4,
17:24, 54:19, 64:25
**morning** [1] - 75:8
**most** [4] - 30:11, 37:6,
42:5, 69:21
**mostly** [1] - 37:9
**mother** [2] - 22:4,
22:24
**mother-in-law** [2] -
22:4, 22:24
**mouth** [1] - 20:6
**move** [18] - 7:20, 9:5,
11:13, 12:3, 22:23,
29:21, 35:1, 35:9,
53:6, 53:13, 59:2,
59:3, 59:13, 71:19,
72:22, 72:23, 73:10,
73:17
**movement** [1] - 55:10
**moves** [1] - 12:11
**moving** [2] - 22:4,
22:11
**MR** [131] - 3:16, 3:19,
3:22, 4:1, 4:6, 4:9,
7:8, 10:25, 11:6,
11:9, 11:13, 11:20,
19:25, 21:16, 23:3,
23:8, 23:23, 24:1,
24:6, 25:4, 25:7,
25:15, 25:25, 26:5,
26:8, 26:16, 26:19,
26:21, 27:21, 27:23,
28:2, 28:5, 28:7,
28:9, 28:11, 28:13,
28:16, 28:20, 28:23,
28:25, 29:4, 29:6,
29:10, 29:21, 29:23,
29:25, 30:23, 31:5,
31:15, 32:2, 32:19,
32:25, 33:5, 33:8,
33:12, 34:6, 36:24,
48:17, 48:22, 49:6,
49:13, 49:17, 49:23,
50:1, 50:4, 50:7,
50:10, 50:12, 50:15,
50:17, 50:20, 50:23,

83

50:25, 51:5, 51:9,
51:24, 52:4, 52:17,
53:2, 53:6, 53:8,
54:11, 57:15, 57:21,
58:3, 58:9, 58:13,
58:20, 58:22, 59:3,
59:6, 66:19, 66:24,
67:4, 67:8, 67:14,
67:18, 67:22, 68:5,
68:9, 68:11, 68:16,
68:19, 69:1, 69:9,
69:12, 69:16, 69:24,
70:2, 70:5, 70:10,
70:13, 70:18, 70:21,
70:23, 71:3, 71:7,
71:11, 71:14, 71:19,
71:21, 73:13, 73:19,
74:3, 74:5, 74:8,
74:11, 74:14, 74:18,
74:21, 75:7
**MS** [1] - 1:21
**multiple** [1] - 56:13
**must** [1] - 26:10

## N

**N.W** [1] - 76:11
**names** [1] - 37:6
**nature** [4] - 30:3,
39:24, 42:21, 44:23
**Navy** [2] - 28:9, 28:14
**near** [4] - 4:22, 4:25,
35:16, 35:19
**necessarily** [3] -
17:18, 24:13, 24:23
**necessary** [1] - 30:16
**need** [30] - 4:13, 5:4,
11:21, 12:7, 13:3,
22:5, 23:14, 24:14,
24:17, 24:19, 35:8,
35:9, 35:11, 46:3,
46:20, 49:12, 53:24,
55:14, 55:21, 59:11,
59:14, 59:21, 71:25,
72:7, 73:5, 73:8
**negative** [4] - 64:3,
64:8, 64:14, 71:12
**negotiator** [1] - 10:11
**never** [2] - 54:13,
56:12
**New** [6] - 13:5, 22:13,
47:24, 48:10, 50:10,
50:12
**news** [11] - 59:19,
59:23, 60:7, 61:3,
62:11, 66:21, 68:12,
68:20, 69:23, 70:17,
70:25
**next** [17] - 3:13, 3:16,
3:19, 36:6, 44:13,

47:25, 48:3, 48:4,
48:5, 50:10, 50:15,
50:21, 52:17, 52:19,
65:20, 72:12, 74:25
**nobody** [5] - 24:18,
29:13, 48:12, 73:1,
73:2
**North** [1] - 43:7
**Northwest** [2] - 4:21,
35:15
**notably** [1] - 33:13
**note** [1] - 44:16
**noted** [1] - 46:6
**notes** [1] - 76:5
**nothing** [7] - 13:20,
14:15, 36:2, 46:1,
47:9, 66:25, 73:7
**notwithstanding** [1] -
30:17
**number** [2] - 30:20,
72:18
**NW** [4] - 1:13, 1:16,
2:3, 2:22

## O

**oath** [19] - 26:17,
28:14, 28:20, 28:21,
28:22, 28:23, 28:25,
29:2, 29:4, 29:6,
29:12, 29:13, 29:19,
34:11, 34:12, 34:13,
34:14, 34:15, 40:5
**OB/GYN** [3] - 44:17,
44:19, 44:21
**obey** [1] - 29:2
**object** [1] - 29:23
**objection** [4] - 11:19,
59:5, 71:20, 71:21
**objections** [1] - 53:7
**obligation** [5] - 64:16,
65:16, 67:11, 68:4,
68:6
**obligations** [1] - 67:14
**observers** [1] - 33:15
**obstruct** [1] - 17:16
**obstructed** [1] - 19:8
**obstructing** [2] -
18:21, 67:5
**obstruction** [3] - 17:7,
54:22, 65:2
**obtained** [1] - 68:14
**obviously** [6] - 32:5,
42:17, 45:4, 62:5,
62:8, 63:5
**occasions** [2] - 31:16,
67:10
**occupation** [3] - 3:17,
3:20, 4:1
**occurring** [1] - 22:6

**OF** [4] - 1:1, 1:2, 1:8,
76:1
**offense** [1] - 40:5
**office** [8] - 5:9, 8:2,
16:7, 36:21, 37:14,
37:16, 38:21, 39:20
**Office** [19] - 1:12, 6:2,
6:5, 6:11, 6:14, 6:24,
7:3, 7:15, 7:16,
36:10, 37:2, 37:25,
38:10, 38:11, 38:24,
39:12, 39:23, 41:14,
41:17
**officers** [2] - 13:7,
14:22
**Offices** [1] - 2:3
**OFFICIAL** [1] - 76:1
**Official** [2] - 2:21,
76:10
**often** [1] - 67:9
**one** [38] - 4:24, 6:6,
6:7, 7:2, 8:18, 10:3,
10:6, 14:20, 15:15,
34:9, 35:18, 36:6,
38:5, 39:5, 41:21,
41:25, 42:15, 42:24,
50:21, 53:22, 55:3,
55:14, 56:6, 57:9,
57:11, 59:25, 60:3,
60:13, 61:15, 63:13,
64:4, 64:22, 65:20,
68:19, 68:20, 72:12
**One** [1] - 74:21
**ones** [2] - 10:24, 31:12
**online** [1] - 60:11
**open** [2] - 10:21, 11:3
**opening** [1] - 74:12
**opinions** [8] - 8:25,
9:5, 17:9, 19:12,
19:15, 43:3, 54:24,
65:4
**opposed** [4] - 8:15,
26:24, 26:25, 64:9
**opposite** [2] - 8:14,
32:6
**order** [1] - 27:9
**organization** [4] -
43:22, 44:7, 44:8,
44:11
**organized** [1] - 56:13
**original** [1] - 61:25
**originally** [1] - 32:11
**otherwise** [1] - 55:5
**outcome** [1] - 55:5
**outside** [4] - 10:19,
10:25, 11:1, 62:5
**overcome** [1] - 64:9
**overly** [2] - 8:14, 8:25
**own** [6] - 24:12, 24:22,
27:7, 31:21, 32:23,

63:7

## P

**P.M** [1] - 1:6
**p.m** [1] - 75:12
**P.O** [1] - 1:21
**page** [1] - 4:4
**paid** [1] - 66:13
**pandemic** [1] - 37:10
**panel** [4] - 7:21, 42:8,
42:9, 43:2
**pardon** [1] - 28:16
**Parenthood** [1] -
65:25
**part** [14] - 10:12,
16:22, 18:24, 20:24,
21:23, 33:24, 38:14,
40:11, 41:2, 41:5,
42:16, 48:5, 54:4,
61:24
**participate** [6] - 3:11,
19:2, 56:22, 61:13,
69:19, 69:24
**participated** [6] - 56:7,
56:11, 56:14, 65:21,
65:23, 65:25
**participating** [3] -
21:21, 33:24, 44:14
**particular** [13] - 13:25,
17:18, 20:21, 31:13,
34:24, 37:4, 45:24,
46:2, 47:14, 47:22,
57:25, 58:5, 58:15
**particularly** [1] - 5:2
**parties** [1] - 43:19
**partners** [1] - 37:18
**party** [2] - 41:21,
41:25
**pass** [1] - 41:1
**passed** [1] - 30:23
**past** [1] - 54:8
**PATEL** [29] - 1:14,
11:9, 11:20, 48:17,
48:22, 49:6, 49:13,
49:17, 49:23, 50:1,
50:4, 50:7, 50:10,
50:12, 50:15, 50:17,
50:20, 50:23, 53:8,
66:19, 66:24, 67:4,
67:8, 67:14, 67:18,
67:22, 68:5, 68:9,
71:21
**patient** [1] - 52:20
**patients** [4] - 60:4,
60:19, 61:9, 68:21
**patients'** [1] - 45:5
**pattern** [1] - 60:3
**Patterson** [1] - 72:17
**pauses** [1] - 30:10

**paying** [2] - 74:4,
74:15
**PC** [1] - 2:6
**Pennsylvania** [1] -
1:16
**people** [28] - 5:17,
8:11, 11:2, 13:12,
15:23, 18:6, 18:21,
24:12, 24:17, 24:22,
25:11, 27:2, 31:20,
32:5, 33:24, 47:1,
47:19, 51:6, 51:16,
61:13, 61:18, 64:11,
70:14, 72:1, 73:21,
74:16
**people's** [3] - 46:11,
46:15, 57:18
**per** [1] - 54:10
**perceive** [2] - 49:10,
49:15
**perceived** [1] - 34:9
**period** [1] - 10:15
**permit** [3] - 17:5,
54:20, 64:25
**person** [12] - 7:24,
8:13, 8:18, 10:7,
27:10, 37:8, 42:13,
42:17, 42:20, 42:23,
50:18, 71:24
**personal** [10] - 17:8,
46:3, 49:18, 54:23,
55:4, 55:19, 61:14,
61:22, 65:3, 65:12
**personally** [3] - 55:12,
61:19, 63:17
**perspective** [5] - 9:8,
9:10, 14:13, 21:20,
46:21
**phone** [1] - 72:18
**phones** [1] - 73:20
**photograph** [1] -
33:17
**physical** [3] - 17:7,
54:22, 65:2
**picked** [2] - 7:1, 58:14
**picture** [4] - 71:4,
71:5, 71:7, 71:10
**pictures** [1] - 33:16
**place** [2] - 10:16,
66:14
**Plaintiff** [2] - 1:3, 1:12
**plane** [1] - 66:16
**Planned** [1] - 65:24
**planned** [1] - 66:7
**planning** [1] - 22:18
**platforms** [3] - 61:12,
69:19, 69:20
**plus** [1] - 54:3
**podium** [1] - 30:18
**point** [8] - 8:14, 10:19,

11:5, 21:3, 31:5,
34:6, 42:20, 70:5
**pointing** [1] - 61:13
**Police** [4] - 13:1, 13:5,
13:7
**policies** [3] - 51:21,
52:10, 52:13
**policy** [3] - 41:2, 41:4,
55:13
**political** [3] - 17:8,
54:24, 65:4
**pool** [1] - 3:10
**popping** [1] - 61:12
**position** [6] - 9:11,
9:17, 10:10, 24:19,
24:20, 53:1
**positions** [2] - 8:13,
8:25
**positive** [3] - 28:1,
28:3, 33:4
**possession** [7] - 61:6,
67:1, 68:13, 69:3,
69:8, 69:13, 69:15
**possible** [6] - 9:14,
25:23, 25:24, 26:1,
50:20, 50:22
**possibly** [4] - 21:13,
21:17, 21:25, 50:21
**potential** [1] - 30:19
**potentially** [6] - 39:1,
41:5, 42:19, 47:25,
48:3, 57:12
**practice** [6] - 45:2,
45:5, 45:19, 45:21,
45:23, 46:1
**practices** [2] - 37:20,
41:3
**presentation** [1] -
38:16
**presented** [9] - 46:4,
58:6, 58:17, 61:21,
62:7, 62:13, 62:19,
64:16, 68:1
**presenting** [1] - 66:12
**presidency** [1] - 10:13
**President** [1] - 72:21
**pressed** [1] - 31:16
**pressing** [9] - 9:21,
22:2, 22:3, 47:22,
47:23, 56:21, 66:3
**presumably** [2] -
34:13, 41:10
**presumption** [1] -
29:11
**pretty** [1] - 11:17
**privacy** [2] - 33:20,
45:5
**privilege** [1] - 41:6
**pro** [6] - 15:9, 15:21,
16:10, 56:19, 65:23,

69:20
**pro-choice** [2] - 56:19,
69:20
**pro-reproductive** [1] -
65:23
**probation** [1] - 13:7
**problem** [2] - 73:15,
74:13
**problems** [3] - 33:15,
72:16
**proceed** [1] - 72:10
**proceedings** [1] - 76:6
**program** [2] - 38:25,
57:1
**programs** [1] - 38:7
**prohibit** [1] - 67:24
**prohibits** [2] - 25:10,
25:17
**propriety** [1] - 25:22
**prosecute** [2] - 7:6,
7:8
**prosecutors** [1] -
16:23
**Prospective** [7] -
11:12, 12:9, 29:18,
35:2, 53:5, 59:1,
71:18
**prospective** [10] -
4:10, 4:14, 12:4,
34:8, 35:6, 40:4,
53:10, 53:12, 59:8,
59:12
**PROSPECTIVE** [256] -
4:23, 4:25, 5:3, 5:6,
5:9, 5:14, 5:21, 5:25,
6:7, 6:12, 6:15, 6:18,
6:25, 7:5, 7:9, 7:13,
7:19, 7:23, 7:25, 8:4,
8:9, 8:22, 9:2, 9:12,
9:20, 9:23, 10:2,
10:5, 10:9, 10:11,
10:17, 12:19, 12:22,
12:25, 13:4, 13:10,
13:15, 13:20, 13:23,
14:3, 14:5, 14:9,
14:15, 14:18, 14:25,
15:4, 15:7, 15:13,
15:16, 15:18, 15:22,
16:1, 16:4, 16:8,
16:12, 16:17, 16:21,
17:1, 17:21, 17:23,
18:14, 18:17, 19:4,
19:7, 19:23, 20:1,
20:13, 20:22, 21:13,
21:19, 21:25, 22:4,
22:7, 22:10, 22:13,
22:17, 22:22, 22:25,
23:7, 23:11, 23:14,
23:21, 23:25, 24:5,
24:9, 24:15, 24:21,

25:2, 25:13, 25:23,
26:2, 26:6, 26:14,
26:18, 27:13, 27:18,
28:1, 28:3, 28:6,
28:10, 28:12, 28:15,
28:17, 28:19, 28:21,
28:24, 29:3, 29:5,
29:8, 33:9, 35:17,
35:19, 35:22, 36:1,
36:5, 36:14, 36:19,
36:25, 37:3, 37:5,
37:9, 37:14, 38:4,
38:8, 38:18, 39:4,
39:8, 39:13, 39:16,
39:25, 40:14, 40:24,
41:7, 41:20, 42:3,
42:9, 42:12, 42:14,
43:1, 43:6, 43:10,
43:14, 43:18, 43:20,
44:1, 44:15, 44:19,
44:23, 45:4, 45:11,
45:15, 46:6, 46:18,
46:24, 47:17, 47:24,
48:3, 48:9, 48:11,
48:13, 48:21, 48:25,
49:5, 49:16, 49:21,
49:25, 50:3, 50:5,
50:9, 50:11, 50:14,
50:16, 50:19, 50:21,
51:4, 51:8, 51:13,
52:2, 52:7, 52:22,
53:16, 53:22, 53:25,
54:6, 54:9, 54:12,
54:16, 55:9, 55:23,
56:3, 56:10, 56:18,
56:24, 57:2, 57:8,
57:12, 57:20, 58:2,
58:7, 58:11, 58:18,
58:25, 59:19, 59:23,
60:7, 60:11, 60:16,
61:1, 61:11, 61:19,
62:1, 62:17, 63:1,
63:3, 63:9, 63:11,
63:16, 63:21, 63:24,
64:2, 64:13, 64:20,
65:8, 65:11, 65:15,
65:22, 66:6, 66:11,
66:15, 66:23, 67:3,
67:7, 67:13, 67:17,
67:21, 68:2, 68:7,
68:15, 68:18, 68:24,
69:6, 69:10, 69:14,
69:21, 70:1, 70:4,
70:9, 70:12, 70:15,
70:20, 70:22, 71:2,
71:5, 71:9, 71:13,
71:15
**protect** [2] - 19:19,
20:11
**protected** [2] - 18:11,
19:2

**protection** [1] - 18:7
**protects** [2] - 18:5,
18:21
**protest** [2] - 56:8,
56:12
**protests** [3] - 44:14,
56:13, 65:21
**prove** [1] - 21:4
**proved** [1] - 27:5
**proven** [3] - 20:20,
21:8, 27:11
**provide** [5] - 17:6,
37:12, 44:3, 54:21,
65:1
**provided** [4] - 24:10,
24:11, 24:22, 37:19
**providing** [1] - 18:9
**public** [1] - 16:6
**pull** [1] - 72:18
**put** [14] - 4:12, 12:6,
14:19, 20:5, 26:14,
27:3, 40:9, 44:16,
59:10, 60:24, 62:10,
72:3, 72:5, 75:2
**putting** [2] - 21:12,
64:9

**Q**

**questions** [27] - 10:19,
10:22, 11:7, 11:9,
12:15, 14:20, 23:1,
26:21, 27:20, 27:21,
29:15, 30:14, 30:20,
32:12, 42:15, 48:15,
48:18, 49:11, 50:24,
57:14, 57:16, 58:21,
65:19, 73:7, 73:12,
73:16, 74:20
**quick** [1] - 72:11
**quickly** [1] - 34:10
**quite** [1] - 30:13
**Quoting** [1] - 33:7

**R**

**raise** [1] - 7:17
**rallies** [1] - 65:21
**rally** [2] - 56:8, 56:12
**rate** [2] - 29:14, 72:25
**rather** [2] - 57:2, 70:17
**read** [9] - 44:6, 60:7,
60:11, 62:8, 62:14,
63:14, 64:7, 70:2,
71:6
**ready** [1] - 72:15
**realistic** [2] - 42:4,
49:1
**really** [3] - 31:23, 36:1,
46:25

**reason** [3] - 8:10,
20:3, 20:16
**reasonable** [5] -
20:20, 21:4, 21:9,
27:5, 27:9
**reasons** [1] - 75:6
**receive** [2] - 47:3,
51:17
**recently** [1] - 8:8
**recognize** [4] - 7:21,
7:22, 63:18, 73:13
**recognized** [1] - 71:1
**record** [6] - 12:13,
20:6, 35:8, 35:12,
57:3, 73:18
**Reddit** [1] - 60:12
**referring** [1] - 69:2
**reflecting** [1] - 31:18
**refundable** [1] - 66:13
**regarding** [8] - 17:9,
54:24, 56:8, 57:25,
59:24, 60:17, 65:4,
67:23
**regardless** [1] - 26:10
**registered** [1] - 43:6
**registration** [1] -
66:16
**regulation** [1] - 57:9
**reimburse** [1] - 55:13
**related** [21] - 9:3,
36:23, 36:24, 37:17,
37:22, 38:21, 39:8,
40:2, 40:17, 41:2,
45:16, 46:10, 46:11,
46:13, 46:15, 46:19,
51:20, 51:22, 52:10,
69:20, 74:11
**relates** [3] - 13:20,
20:18, 35:14
**relating** [8] - 19:16,
39:23, 40:22, 51:3,
60:23, 62:6, 63:22,
65:21
**relation** [1] - 55:10
**relationship** [13] -
9:14, 11:16, 11:25,
12:24, 15:5, 38:16,
38:19, 39:11, 40:10,
41:14, 41:16, 42:25
**relatives** [3] - 13:8,
13:9, 14:20
**religious** [3] - 17:9,
54:24, 65:4
**reluctance** [1] - 8:12
**reluctant** [1] - 30:8
**remain** [4] - 4:13,
12:7, 35:4, 65:17
**remains** [10] - 60:1,
61:5, 63:22, 64:1,
67:2, 68:13, 69:2,

69:7, 69:18, 70:11
**remember** [9] - 36:15, 39:19, 44:2, 44:5, 60:14, 60:16, 60:20, 60:25, 68:24
**remove** [4] - 19:24, 20:2, 20:9, 20:15
**report** [6] - 3:17, 3:20, 4:1, 60:16, 63:20, 70:17
**REPORTER** [1] - 76:1
**Reporter** [3] - 2:20, 2:21, 76:10
**reporting** [1] - 60:2
**reports** [10] - 59:20, 59:24, 60:2, 60:6, 60:8, 60:12, 61:1, 61:3, 63:17, 66:21
**reposting** [1] - 71:9
**representative** [1] - 7:15
**represented** [1] - 6:2
**representing** [2] - 38:13, 40:16
**reproductive** [36] - 17:10, 17:17, 18:16, 18:22, 18:24, 39:16, 39:22, 41:10, 41:11, 43:23, 44:4, 44:9, 44:24, 45:1, 45:12, 45:17, 46:8, 46:9, 46:14, 46:18, 46:22, 47:10, 47:12, 47:14, 47:18, 48:20, 51:7, 54:25, 55:8, 56:8, 56:16, 65:5, 65:23, 66:1, 67:5, 67:23
**required** [2] - 29:9, 40:6
**reschedule** [1] - 50:20
**rescheduled** [10] - 10:1, 10:2, 10:5, 11:24, 22:19, 48:7, 52:18, 57:7, 57:8, 75:6
**reservations** [2] - 21:14, 21:17
**respect** [2] - 48:20, 50:7
**rest** [1] - 3:8
**restate** [1] - 20:22
**restricting** [1] - 24:10
**resulted** [3] - 59:24, 60:14, 69:7
**reticent** [1] - 34:8
**review** [1] - 66:20
**revolves** [1] - 69:25
**rights** [10] - 37:17, 41:11, 45:11, 46:8, 56:19, 65:23, 66:1,

67:23
**Rights** [7] - 1:15, 6:3, 6:5, 6:16, 6:17, 36:8, 36:11
**RMR** [2] - 2:21, 76:9
**ROBERT** [1] - 2:5
**Robert** [1] - 2:6
**Room** [2] - 2:22, 76:10
**roughly** [2] - 5:2, 35:21
**routine** [1] - 14:1
**row** [1] - 61:7
**run** [4] - 42:6, 55:11, 56:24, 57:1

## S

**safe** [1] - 72:5
**SANJAY** [1] - 1:14
**saw** [9] - 59:19, 59:23, 60:1, 60:7, 61:1, 68:11, 69:16, 69:21, 70:25
**scenario** [2] - 22:19, 69:15
**schedule** [1] - 11:2
**scheduled** [5] - 9:24, 11:4, 50:15, 50:16, 57:6
**school** [2] - 7:22, 54:3
**science** [1] - 10:14
**se** [1] - 54:10
**second** [1] - 35:4
**Secret** [1] - 13:6
**secretary's** [2] - 36:20, 37:15
**Section** [1] - 1:15
**security** [2] - 33:20, 40:7
**see** [7] - 4:6, 8:14, 39:21, 42:20, 48:15, 60:5, 61:16
**seeing** [2] - 60:16, 68:25
**seek** [1] - 51:17
**seeking** [1] - 18:6
**seem** [2] - 33:15, 34:3
**SEFRANEK** [1] - 76:3
**Sefranek** [3] - 2:21, 76:9, 76:9
**selection** [1] - 74:2
**sense** [7] - 17:17, 24:4, 25:12, 25:14, 40:9, 40:25, 62:21
**sensitive** [1] - 52:25
**separate** [12] - 18:3, 31:11, 33:19, 34:4, 34:23, 46:3, 55:19, 61:24, 62:3, 62:10, 62:22, 64:12

**separately** [1] - 11:23
**sequence** [1] - 69:7
**series** [1] - 31:12
**serious** [1] - 40:5
**seriously** [8] - 28:23, 62:18, 64:17, 65:16, 67:11, 67:15, 68:4, 68:6
**Service** [1] - 13:6
**service** [1] - 16:7
**services** [6] - 15:24, 17:6, 17:17, 18:9, 54:21, 65:1
**serving** [1] - 28:11
**session** [2] - 72:7, 72:8
**SESSION** [2] - 1:7, 1:8
**set** [8] - 12:12, 38:2, 48:23, 49:18, 57:9, 67:10, 68:5, 68:7
**several** [5] - 30:13, 43:10, 49:11, 56:16, 62:8
**share** [1] - 37:21
**short** [1] - 30:16
**show** [2] - 31:1, 72:23
**shown** [1] - 27:9
**shut** [1] - 59:3
**side** [1] - 40:11
**sides** [1] - 19:21
**significant** [2] - 44:21, 45:25
**silly** [1] - 73:19
**similar** [1] - 14:15
**simple** [1] - 32:14
**simply** [4] - 9:7, 45:20, 52:23, 73:4
**simultaneously** [1] - 54:2
**single** [1] - 56:12
**single-issue** [1] - 56:12
**sister** [4] - 6:19, 15:9, 15:19, 16:14
**sister-in-law** [2] - 15:9, 15:19, 16:14
**sit** [5] - 12:10, 33:23, 57:22, 57:23, 66:4
**sitting** [3] - 29:1, 29:6, 52:18
**six** [1] - 5:10
**skeptical** [4] - 12:1, 12:2, 69:4, 69:12
**skipped** [1] - 65:18
**slamming** [1] - 30:18
**slow** [1] - 34:7
**small** [1] - 55:11
**social** [11] - 60:2, 60:9, 60:12, 61:12, 61:17, 62:11, 66:21,

69:19, 69:24, 70:16
**Society** [2] - 1:18, 1:20
**solely** [1] - 58:5
**someone** [1] - 44:3
**sometimes** [4] - 8:6, 8:11, 9:3, 9:4
**somewhere** [2] - 53:1, 61:7
**sorry** [19] - 3:18, 4:9, 10:4, 13:22, 14:4, 16:1, 17:22, 20:22, 22:15, 23:23, 24:16, 25:3, 25:4, 28:2, 43:8, 44:18, 48:2, 49:13, 59:23
**sort** [10] - 14:7, 22:9, 37:19, 38:20, 41:23, 51:21, 60:18, 60:23, 61:2, 61:4
**sounds** [7] - 11:17, 14:13, 21:21, 27:13, 27:14, 27:15, 69:17
**space** [1] - 40:1
**specific** [9] - 6:22, 13:15, 14:6, 14:10, 14:11, 16:24, 17:13, 26:3, 68:25
**specifically** [2] - 5:16, 51:20
**specifics** [5] - 13:13, 25:24, 26:3, 26:7, 27:8
**specifying** [1] - 45:23
**spilled** [1] - 52:19
**spoken** [1] - 39:23
**spouse** [3] - 22:14, 22:15, 22:18
**staff** [4] - 60:3, 61:9, 61:15, 61:21
**staffing** [1] - 10:13
**stand** [1] - 59:10
**standing** [3] - 4:13, 12:7, 35:4
**start** [7] - 4:20, 12:23, 55:7, 64:8, 72:12, 73:11
**started** [2] - 30:2, 73:20
**starting** [1] - 59:17
**state** [1] - 56:11
**State** [5] - 13:5, 16:5, 36:20, 37:15, 49:24
**statement** [3] - 10:12, 18:12, 23:19
**STATES** [3] - 1:1, 1:2, 1:9
**states** [1] - 55:14
**States** [4] - 2:22, 36:7, 51:19, 51:21

**statute** [26] - 18:5, 18:8, 18:10, 18:19, 18:21, 19:1, 19:3, 19:18, 20:11, 20:21, 20:25, 21:6, 21:7, 21:10, 21:12, 21:14, 21:18, 21:22, 21:23, 27:1, 27:4, 27:8, 32:9, 58:5
**statutes** [1] - 58:15
**stenographic** [1] - 76:5
**Stenographic** [1] - 2:20
**step** [11] - 4:11, 11:10, 12:7, 29:15, 29:16, 35:3, 53:3, 53:11, 58:23, 59:9, 71:16
**STEPHEN** [1] - 1:20
**still** [4] - 49:23, 50:1, 72:7, 72:8
**stood** [1] - 63:18
**stop** [1] - 71:23
**stored** [1] - 61:6
**stories** [1] - 68:21
**story** [2] - 35:1, 68:12
**Street** [5] - 1:13, 1:18, 2:10, 4:21, 35:15
**stricken** [3] - 53:9, 59:7, 71:22
**strictly** [1] - 67:4
**strike** [7] - 11:13, 29:21, 30:22, 52:4, 53:6, 59:4, 71:19
**strong** [7] - 48:19, 55:4, 55:7, 55:16, 57:17, 65:9, 65:11
**stronger** [1] - 56:11
**strongly** [5] - 17:19, 19:17, 23:5, 67:8, 67:22
**struggle** [1] - 69:14
**studied** [4] - 15:2, 53:20, 53:23, 53:25
**stuff** [5] - 69:17, 69:18, 70:3, 70:25, 74:10
**subconscious** [5] - 38:20, 41:25, 49:9, 49:14
**subconsciously** [1] - 49:7
**subject** [4] - 51:15, 52:9, 52:16, 54:14
**sufficient** [3] - 30:22, 34:2, 34:22
**sufficiently** [1] - 32:22, 34:3, 34:23
**suggest** [1] - 33:23
**Suite** [2] - 1:24, 2:4

**summarize** [1] - 37:24
**summarizing** [1] - 41:18
**summary** [3] - 14:2, 14:3, 14:5
**support** [4] - 21:15, 21:18, 26:4, 37:19
**supposed** [3] - 11:2, 68:22, 73:17
**surrounding** [1] - 59:20
**swear** [4] - 4:13, 12:8, 35:5, 59:11
**sworn** [5] - 4:14, 12:9, 35:6, 53:12, 59:12
**sympathetic** [2] - 38:15
**system** [1] - 43:7

## T

**tackle** [1] - 37:22
**taint** [1] - 52:8
**talks** [1] - 44:13
**TAMARA** [1] - 76:3
**Tamara** [3] - 2:21, 76:9, 76:9
**tank** [1] - 31:23
**task** [1] - 36:22
**ten** [3] - 35:22, 74:25, 75:1
**tend** [1] - 9:2
**terms** [45] - 3:4, 3:10, 5:3, 5:23, 12:24, 13:11, 13:13, 14:17, 15:6, 15:10, 15:19, 15:21, 16:14, 18:9, 18:18, 19:2, 20:9, 26:22, 27:8, 27:15, 31:14, 32:4, 32:10, 32:15, 37:20, 38:7, 38:15, 39:11, 39:22, 40:11, 40:21, 41:11, 44:20, 47:21, 52:9, 54:17, 56:21, 60:5, 60:25, 61:17, 62:22, 64:5, 68:25, 73:6, 75:3
**terribly** [1] - 61:3
**testifying** [1] - 14:22
**testimony** [2] - 14:23, 54:15
**THE** [499] - 1:1, 1:1, 1:9, 3:2, 3:4, 3:13, 3:15, 3:18, 3:21, 3:23, 4:3, 4:8, 4:11, 4:15, 4:23, 4:24, 4:25, 5:1, 5:3, 5:4, 5:6, 5:8, 5:9, 5:12, 5:14, 5:15, 5:21,

5:22, 5:25, 6:1, 6:7, 6:10, 6:12, 6:13, 6:15, 6:16, 6:18, 6:21, 6:25, 7:1, 7:5, 7:9, 7:11, 7:13, 7:14, 7:19, 7:20, 7:23, 7:24, 7:25, 8:1, 8:4, 8:8, 8:9, 8:10, 8:22, 8:24, 9:2, 9:6, 9:12, 9:15, 9:20, 9:21, 9:23, 9:25, 10:2, 10:4, 10:5, 10:7, 10:9, 10:10, 10:11, 10:15, 10:17, 10:18, 11:1, 11:8, 11:10, 11:19, 11:21, 12:5, 12:10, 12:19, 12:20, 12:22, 12:23, 12:25, 13:2, 13:4, 13:8, 13:10, 13:11, 13:15, 13:17, 13:20, 13:22, 13:23, 13:24, 14:3, 14:4, 14:5, 14:6, 14:9, 14:12, 14:15, 14:17, 14:18, 14:19, 14:25, 15:1, 15:4, 15:5, 15:7, 15:10, 15:13, 15:14, 15:16, 15:17, 15:18, 15:19, 15:22, 15:25, 16:1, 16:2, 16:4, 16:6, 16:8, 16:10, 16:12, 16:13, 16:17, 16:18, 16:21, 16:22, 17:1, 17:2, 17:21, 17:22, 17:23, 18:5, 18:14, 18:15, 18:17, 18:18, 19:4, 19:6, 19:7, 19:9, 19:23, 20:1, 20:5, 20:13, 20:14, 20:22, 20:24, 21:13, 21:17, 21:19, 21:20, 21:25, 22:1, 22:4, 22:6, 22:7, 22:9, 22:10, 22:11, 22:13, 22:15, 22:17, 22:21, 22:22, 22:23, 22:25, 23:1, 23:7, 23:11, 23:12, 23:14, 23:15, 23:21, 23:25, 24:5, 24:9, 24:14, 24:15, 24:16, 24:21, 25:1, 25:2, 25:6, 25:13, 25:23, 26:2, 26:6, 26:14, 26:18, 26:20, 26:22, 27:13, 27:15, 27:18, 27:19, 27:22, 28:1, 28:3, 28:6, 28:8, 28:10, 28:12, 28:15, 28:17, 28:18, 28:19, 28:21, 28:24,

29:3, 29:5, 29:8, 29:11, 29:19, 29:24, 31:3, 31:9, 31:25, 32:3, 32:20, 33:2, 33:6, 33:14, 34:12, 35:3, 35:7, 35:17, 35:18, 35:19, 35:20, 35:22, 35:24, 36:1, 36:2, 36:5, 36:6, 36:14, 36:17, 36:19, 36:25, 37:1, 37:3, 37:4, 37:5, 37:7, 37:9, 37:11, 37:14, 37:24, 38:4, 38:6, 38:8, 38:9, 38:18, 38:23, 39:4, 39:7, 39:8, 39:10, 39:13, 39:15, 39:16, 39:21, 39:25, 40:4, 40:14, 40:20, 40:24, 41:4, 41:7, 41:8, 41:20, 42:1, 42:3, 42:6, 42:9, 42:11, 42:12, 42:13, 42:14, 42:15, 43:1, 43:4, 43:6, 43:8, 43:10, 43:11, 43:14, 43:16, 43:18, 43:19, 43:20, 43:21, 44:1, 44:6, 44:15, 44:18, 44:19, 44:20, 44:23, 44:25, 45:4, 45:9, 45:11, 45:13, 45:15, 45:17, 46:6, 46:13, 46:18, 46:21, 46:24, 47:4, 47:17, 47:21, 47:24, 48:2, 48:3, 48:5, 48:9, 48:10, 48:11, 48:12, 48:13, 48:15, 48:21, 48:25, 49:2, 49:5, 49:11, 49:16, 49:21, 49:25, 50:3, 50:5, 50:9, 50:11, 50:14, 50:16, 50:19, 50:21, 50:24, 51:4, 51:8, 51:13, 52:2, 52:7, 52:22, 53:3, 53:7, 53:9, 53:11, 53:13, 53:16, 53:18, 53:22, 53:24, 53:25, 54:4, 54:6, 54:7, 54:9, 54:12, 54:14, 54:16, 54:17, 55:9, 55:15, 55:23, 55:25, 56:3, 56:5, 56:10, 56:15, 56:18, 56:21, 56:24, 57:1, 57:2, 57:4, 57:8, 57:10, 57:12, 57:14, 57:20, 58:2, 58:7, 58:11, 58:18, 58:21, 58:23, 58:25,

59:2, 59:5, 59:7, 59:9, 59:13, 59:19, 59:21, 59:23, 60:5, 60:7, 60:9, 60:11, 60:13, 60:16, 60:22, 61:1, 61:8, 61:11, 61:16, 61:19, 61:20, 62:1, 62:4, 62:17, 62:22, 63:1, 63:2, 63:3, 63:4, 63:9, 63:10, 63:11, 63:12, 63:16, 63:19, 63:21, 63:22, 63:24, 63:25, 64:2, 64:3, 64:13, 64:18, 64:20, 64:22, 65:8, 65:9, 65:11, 65:13, 65:15, 65:18, 65:22, 66:3, 66:6, 66:9, 66:11, 66:14, 66:15, 66:18, 66:23, 67:3, 67:7, 67:13, 67:17, 67:21, 68:2, 68:7, 68:10, 68:15, 68:18, 68:24, 69:6, 69:10, 69:14, 69:21, 70:1, 70:4, 70:9, 70:12, 70:15, 70:20, 70:22, 71:2, 71:5, 71:9, 71:13, 71:15, 71:16, 71:20, 71:22, 73:14, 74:1, 74:4, 74:6, 74:9, 74:13, 74:15, 74:20, 74:23, 75:8
**theft** [2] - 60:1, 61:4
**themselves** [2] - 47:20, 61:21
**thereafter** [1] - 11:16
**they've** [7] - 13:25, 14:7, 14:9, 14:12, 18:20, 31:9, 38:2
**thinking** [1] - 9:9
**third** [4] - 10:20, 11:1, 11:3, 62:15
**third-hand** [1] - 62:15
**Thomas** [1] - 1:18
**thomas** [1] - 1:20
**three** [3] - 5:7, 11:14, 62:8
**tickets** [1] - 66:16
**time-sensitive** [1] - 52:25
**tired** [1] - 35:11
**today** [2] - 29:19, 29:20
**together** [4] - 8:5, 8:7, 42:14, 72:24
**tomorrow** [3] - 72:13, 74:22, 74:23
**took** [2] - 9:17, 29:19

**topic** [3] - 46:12, 46:15, 46:19
**topics** [3] - 39:14, 39:15, 39:19
**totally** [1] - 55:22
**touch** [1] - 73:22
**towards** [3] - 6:18, 41:25, 52:6
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 76:4, 76:6
**transferable** [1] - 66:16
**translate** [1] - 45:13
**travel** [5] - 48:10, 50:7, 50:18, 66:6, 66:9
**traveling** [1] - 47:24
**treat** [1] - 14:22
**trial** [5] - 8:16, 8:20, 9:22, 11:18, 75:12
**TRIAL** [2] - 1:4, 1:8
**trip** [8] - 8:6, 8:8, 9:23, 50:10, 50:12, 50:15, 50:18, 52:17
**trips** [1] - 48:7
**trouble** [2] - 30:8, 73:3
**true** [2] - 76:4, 76:5
**Trump** [1] - 72:21
**truth** [2] - 29:20, 34:13
**try** [5] - 41:21, 48:25, 49:18, 52:13, 68:7
**trying** [10] - 9:11, 18:1, 19:9, 19:13, 22:17, 23:15, 40:9, 47:4, 47:9, 75:3
**Tupelo** [1] - 1:21
**Twitter** [1] - 60:12
**two** [11] - 10:19, 10:25, 11:3, 17:5, 22:7, 34:4, 48:6, 54:20, 55:3, 55:11, 70:18
**two-week** [1] - 48:6
**type** [4] - 44:4, 46:19, 51:11, 52:2
**types** [2] - 44:4, 46:22

## U

**U.S** [28] - 1:12, 6:2, 6:4, 6:9, 6:11, 6:14, 6:24, 7:3, 7:15, 7:16, 10:11, 36:10, 36:16, 36:19, 37:2, 37:19, 37:20, 37:25, 38:9, 38:11, 38:24, 39:11, 39:23, 40:2, 40:16, 40:17, 41:14, 41:17
**ultimately** [1] - 32:10
**uncle** [1] - 13:5

uncomfortable [1] - 42:18
unconscious [2] - 42:1, 45:7
unconsciously [3] - 46:11, 46:14, 52:16
under [6] - 3:5, 10:12, 40:5, 51:18, 51:25, 52:2
understood [5] - 31:19, 46:7, 46:23, 48:18, 75:7
unfortunately [2] - 48:9, 74:24
United [4] - 2:22, 36:7, 51:19, 51:21
UNITED [3] - 1:1, 1:2, 1:9
unjustified [3] - 17:5, 54:20, 64:25
unknow [4] - 62:20, 70:6, 70:21
unless [1] - 34:15
unrealistic [1] - 41:24
unverified [1] - 70:16
up [27] - 5:4, 7:1, 8:18, 12:7, 12:12, 13:2, 15:25, 17:22, 19:6, 19:25, 24:14, 25:1, 35:9, 38:2, 39:17, 39:19, 53:11, 53:13, 59:11, 59:13, 61:12, 63:18, 69:7, 71:25, 72:12, 72:16, 74:10

## V

VA [1] - 2:11
various [2] - 63:12, 75:6
view [13] - 32:6, 42:19, 45:1, 46:18, 47:1, 47:5, 47:17, 52:9, 64:3, 64:4, 64:8, 64:14, 71:12
viewed [1] - 44:21
views [27] - 9:4, 17:13, 17:19, 18:13, 19:10, 19:14, 19:17, 20:9, 21:21, 25:22, 27:4, 27:7, 34:20, 34:23, 42:19, 45:11, 46:3, 46:10, 46:11, 46:13, 46:14, 46:16, 47:6, 47:12, 52:8, 57:17, 58:3
violated [7] - 25:18, 25:20, 26:4, 26:12, 57:24, 58:5, 58:16
violating [1] - 18:20

violation [2] - 24:4, 25:10
violence [16] - 36:23, 36:25, 37:23, 37:25, 38:25, 39:5, 39:9, 39:14, 41:10, 51:3, 51:12, 51:14, 51:15, 51:22, 51:23
Virginia [1] - 16:5
virtual [1] - 37:9
voice [7] - 13:2, 15:25, 17:22, 19:6, 24:14, 25:1, 35:10
volunteer [1] - 65:24
vs [1] - 1:4

## W

waiting [2] - 48:15, 59:3
walk [1] - 8:11
walking [1] - 35:23
WALSH [8] - 2:8, 73:19, 74:3, 74:5, 74:8, 74:11, 74:14, 74:18
wants [1] - 48:16
Washington [9] - 1:5, 1:13, 1:16, 1:25, 2:4, 2:23, 60:18, 69:22, 76:11
ways [2] - 9:5, 31:24
websites [3] - 71:4, 71:8, 71:9
week [13] - 10:20, 11:2, 11:3, 47:25, 48:3, 48:4, 48:5, 48:6, 50:21, 50:22, 52:17, 52:19, 66:7
week's [2] - 50:10, 50:15
weeks [6] - 10:19, 10:25, 11:3, 22:7, 55:12
weight [2] - 14:24, 70:16
wide [1] - 39:14
WILLIAM [2] - 1:6, 2:8
willing [1] - 42:22
winds [1] - 8:18
witness [1] - 14:23
witnesses [1] - 43:17
witnessing [2] - 54:10, 54:12
woefully [1] - 30:16
women [7] - 30:24, 39:9, 51:6, 51:15, 51:22, 56:19
women's [9] - 36:21, 37:16, 37:17, 44:24,

45:11, 46:8, 50:2, 51:3, 51:25
wooden [1] - 12:5
word [1] - 52:8
words [4] - 20:6, 27:6, 32:3, 55:18
work-related [1] - 9:3
works [6] - 6:8, 6:24, 7:4, 8:4, 13:4, 16:15
world [4] - 37:17, 37:22, 51:22, 52:10
worst [1] - 22:19
worst-case [1] - 22:19
write [2] - 45:25, 70:2
writing [1] - 74:10
wrote [1] - 64:11

## Y

year [3] - 10:13, 50:6, 54:3
yesterday [4] - 30:2, 46:8, 57:16, 70:25
York [4] - 47:25, 48:10, 50:10, 50:13
yourself [4] - 4:12, 8:21, 12:11, 62:16

## Z

Zoom [1] - 37:7