```
1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2
     UNITED STATES OF AMERICA,        )  Criminal Action
3                                     )  No. 1:22-CR-096
                        Plaintiff,    )
4                                     )  JURY TRIAL
     vs.                              )
5                                     )  Washington, D.C.
     LAUREN HANDY, JOHN HINSHAW,      )
6    HEATHER IDONI, WILLIAM           )  August 11, 2023
     GOODMAN, HERB GERAGHTY,          )  Time:  1:35 P.M.
7                                     )  AFTERNOON SESSION
                        Defendants.   )
8
            TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
9            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                   UNITED STATES DISTRICT JUDGE
10
                      A P P E A R A N C E S
11

12   For Plaintiff:      JOHN CRABB, JR.
                         U.S. Attorney's Office
13                       601 D Street NW
                         Washington, DC 20530
14
                         SANJAY HARIVADAN PATEL
15                       DOJ-CRT
                         Civil Rights Division, Criminal Section
16                       950 Pennsylvania Avenue NW
                         Washington, DC 20004
17
     For Defendant       MARTIN A. CANNON
18   LAUREN HANDY:       Thomas More Society
                         16983 370th Street
19                       Carson, IA 51525

20                       STEPHEN M. CRAMPTON
                         Thomas More Society
21                       P.O. Box 4506
                         Tupelo, MS 38803
22
                         DENNIS E. BOYLE
23                       BLERINA JASARI
                         Boyle & Jasari, LLP
24                       1050 Connecticut Avenue
                         Suite 500
25                       Washington, DC 20036
```

```
1                        A P P E A R A N C E S - (Cont.)

2

      For Defendant         ALFRED GUILLAUME, III
3     JOHN HINSHAW:          Law Offices of Alfred Guillaume, III, LLC
                             1350 Connecticut Avenue NW
4                            Suite 308
                             Washington, DC 20036
5
      For Defendant         ROBERT J. DUNN
6     HEATHER IDONI:         Robert J. Dunn, PC
                             1413 Center Avenue
7                            Bay City, MI 48708

8     For Defendant         HOWARD J. WALSH, III
      WILLIAM GOODMAN:       3712 Cardiff Court
9                            Chevy Chase, MD 20815

10    For Defendant         JOHN C. KIYONAGA
      HERB GERAGHTY:         600 Cameron Street
11                           Alexandria, VA 22314

12

13

14

15

16

17

18

19

20    Stenographic Court Reporter:

21                           Tamara M. Sefranek, RMR, CRR, CRC
                             Official Court Reporter
22                           United States Courthouse, Room 6714
                             333 Constitution Avenue, NW
23                           Washington, DC  20001
                             202-354-3246
24

25
```

```
 1                        P R O C E E D I N G S
 2              THE COURT:  Let me just indicate that we did -- I did
 3    release the jurors that we have not excused for the rest of the
 4    afternoon and asked them just to come back on Monday.
 5              (Prospective juror entered the courtroom.)
 6              THE COURT:  If you would step up over here, please.
 7    You can put your things down; make yourself comfortable.
 8              (Prospective juror was sworn.)
 9              THE COURT:  All right.  You can move your chair up
10    and make yourself comfortable.  You need to speak into the
11    microphone so we can hear you.  You've taken the mask off --
12    good -- so we can hear you.
13              This is Juror 1686, and it's Questions 17, 21, 22,
14    28, and 34.  All right.  17 is whether you or members of your
15    close family or friends are a lawyer or studied law or employed
16    by a lawyer.
17              THE PROSPECTIVE JUROR:  My sister is a lawyer.
18              THE COURT:  I'm sorry?
19              THE PROSPECTIVE JUROR:  My sister is a lawyer.
20              THE COURT:  Okay.  And does she do any criminal work?
21              THE PROSPECTIVE JUROR:  She does not.
22              THE COURT:  All right.  Have you had any discussions
23    with her about how cases should operate or something of that
24    nature?
25              THE PROSPECTIVE JUROR:  No, not really.
```

```
 1              THE COURT:  Does she work for a private firm or a
 2      private -- the government or some other organization?
 3              THE PROSPECTIVE JUROR:  Formerly worked for a private
 4      firm and is now transitioning out of legal work.
 5              MR. CANNON:  Say again.
 6              THE COURT:  She's transitioning out of legal work.
 7              THE PROSPECTIVE JUROR:  Transitioning out of legal
 8      work.
 9              THE COURT:  Okay.  21 is whether you or somebody
10      close to you belong to any group, organization, or contribute
11      to any group or organization that advocates for or against any
12      aspect of reproductive health care, including but not limited
13      to abortions.
14              So is that you or somebody else?
15              THE PROSPECTIVE JUROR:  That is me.  I donate to
16      Planned Parenthood.
17              MR. DUNN:  I didn't get that answer.
18              THE PROSPECTIVE JUROR:  It is me.  I donate to
19      Planned Parenthood.
20              THE COURT:  All right.  How long, roughly, have you
21      been donating?
22              THE PROSPECTIVE JUROR:  Probably on and off for the
23      last ten years.
24              THE COURT:  Okay.  When was the last time you
25      donated?
```

1          THE PROSPECTIVE JUROR:  Probably about a year to two

2     years ago.

3          THE COURT:  Okay.  Do you participate in any

4     activities with them, or is it just the donation?

5          THE PROSPECTIVE JUROR:  Just donations.

6          THE COURT:  All right.  Presumably, you're donating

7     the money to them because you are sympathetic to their cause

8     and their philosophy; is that correct?

9          THE PROSPECTIVE JUROR:  Correct.

10          THE COURT:  Is there anything about that -- the fact

11     that you do identify with them that would affect the

12     consideration of the evidence in this case?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  So whatever your thoughts are in terms of

15     what Planned Parenthood stands for, you'd be able to put that

16     aside in terms of your own views and make a decision strictly

17     on the evidence; is that correct?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Okay.  Let me make sure I got the right

20     one.

21          All right.  22 is you or, again, a close family

22     member or friend participated in a protest, march, rally

23     regarding reproductive health.  Is that you or somebody else?

24          THE PROSPECTIVE JUROR:  That is myself.  It would be

25     my mother, my mother-in-law, my sister, and my sister-in-law.

```
 1              THE COURT:  Okay.  And which marches or protests have
 2     you been involved in?
 3              THE PROSPECTIVE JUROR:  The first one I was involved
 4     in was the Women's March here in D.C. in 2017, and I've
 5     participated in two other pro-choice marches.
 6              THE COURT:  Okay.  So the Women's March had broad
 7     issues, including access to reproductive care.  The more recent
 8     ones, you're talking about something more specific and more
 9     tailored towards --
10              THE PROSPECTIVE JUROR:  Yes.  All were kind of
11     tailored around the women's march -- women's marches.
12              THE COURT:  So, obviously, you're marching and
13     participating in because, again, you're sympathetic to those
14     views and to, presumably, access to reproductive care.
15              So, again, my question is, since you not only donate
16     but now actually participate in these marches or rallies, can
17     you put those feelings aside in terms of what you're supporting
18     and make a decision just on the evidence that's presented?
19              THE PROSPECTIVE JUROR:  I do believe I can.
20              THE COURT:  I'm sorry?
21              THE PROSPECTIVE JUROR:  I said, I do believe that I
22     can.
23              THE COURT:  All right.  And 28 is you have a pressing
24     commitment that would make it difficult for you to participate
25     in the trial.
```

```
1              THE PROSPECTIVE JUROR:  As we get into later in the

2     summer -- so the week of August 21st, I have a planned work

3     trip to New York City; and then August 30th I have a planned

4     family reunion, family vacation in Cape Cod.

5              MR. CANNON:  I'm sorry?

6              THE PROSPECTIVE JUROR:  Cape Cod.

7              THE COURT:  The 21st is -- the week of the 21st is a

8     work --

9              THE PROSPECTIVE JUROR:  It's work-related.

10             THE COURT:  And the August 30th is a family reunion?

11             THE PROSPECTIVE JUROR:  Correct.

12             THE COURT:  In terms of the work, is it -- what do

13    you do?

14             THE PROSPECTIVE JUROR:  I work at a technology

15    company in a broad business operations role.

16             THE COURT:  Okay.  Would it be -- if you were

17    selected, would it be possible for you not to go to the work

18    thing and have somebody else go?

19             THE PROSPECTIVE JUROR:  It would be possible, but it

20    would be challenging.  But, yes, it would be possible.

21             THE COURT:  In terms of the family vacation which is

22    starting on August 30th, how long is it going?

23             THE PROSPECTIVE JUROR:  That is going for five days.

24             THE COURT:  Okay.

25             MR. CANNON:  I'm sorry?
```

```
 1                THE PROSPECTIVE JUROR:  Five days.

 2                THE COURT:  Would it be possible to have you arrive

 3      slightly later, depending on how long the case stayed?

 4                THE PROSPECTIVE JUROR:  So I'm one of the people who

 5      booked the accommodations, so I would need to check with the

 6      owner to make sure that's okay.  It's a housing rental.  I'm

 7      one of the bookers.

 8                THE COURT:  I take it you were the one who rented the

 9      house, and the other family members are coming with you?

10                THE PROSPECTIVE JUROR:  Exactly.

11                THE COURT:  They're going to be staying there?

12                THE PROSPECTIVE JUROR:  Exactly.

13                THE COURT:  So what we would hope -- realizing it's

14      very hard to tell about how long cases are going to take, and

15      it's taking us some time to choose a jury.

16                If you were selected, can we count on you being

17      willing to reschedule or miss the work week but pay attention

18      to what's happening in the trial and perhaps go to the family

19      vacation a few days later, or if we're finished, then we don't

20      need to do it.  But if we did select you, we can't really take

21      the week of the 21st off, nor -- unless -- depending on where

22      we are in terms of the August 30th date, but we also want to,

23      if we did select you and you didn't go to these things, we want

24      to make sure you're going to pay attention.

25                So combining those two things, would you be willing
```

1    to not go to the work week, realizing that you would like to,

2    but willing to give it up, and then be a little late for the

3    family reunion?  Are you willing to do it?  And then can we

4    count on you, if we did select you and you were involved, to

5    have you actually pay attention and not rush judgment at the

6    end?

7              THE PROSPECTIVE JUROR:  Yes.  I don't believe I would

8    rush judgment.  And in terms of willingness -- to already

9    answer the question -- I would be willing on the work trip; I

10   think I can get that rescheduled in a way that I could focus.

11   On the family trip, it is 270 --

12             THE COURT:  I mean, I'm assuming that's established.

13   It would be harder for you to move that around --

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  -- other than maybe you showing up later,

16   or can you?

17             THE PROSPECTIVE JUROR:  Yes.  If I needed to, I could

18   show up later based on what I know.  I would need to confirm

19   with the owner if that's okay, since it is a rental.

20             THE COURT:  All right.  Thank you.  Government, any

21   questions?

22             MR. PATEL:  No questions, Your Honor.

23             THE COURT:  Counsel?

24             MR. CANNON:  Ma'am, thank you for being here.  You

25   indicated that you donated to Planned Parenthood off and on for

1    the last ten years.

2              And up until fairly recently, maybe -- what was the

3    last time you did it, you think?

4              THE PROSPECTIVE JUROR:  Sometime in the last one to

5    two years.

6              MR. CANNON:  Okay.  You say those are just donations.

7    But they come with mailings, don't they?  Doesn't Planned

8    Parenthood send you mailings?

9              THE COURT:  You have to say something orally.

10             THE PROSPECTIVE JUROR:  Oh, yes.  Sorry.  They will

11   send you mailings, yes.

12             MR. CANNON:  I assume you read that stuff?

13             THE PROSPECTIVE JUROR:  Mostly it comes to my email,

14   and so -- I get lots of things.  So I don't regularly read

15   them, no.

16             MR. CANNON:  Okay.  Now, you've indicated that the

17   protest rallies -- I think you went to the Women's March and

18   then two other what you called pro-choice marches.  What are

19   those pro-choice marches?

20             THE PROSPECTIVE JUROR:  Yeah.  So they were related

21   to the Women's March just -- but I will say the reason I was

22   there is around reproductive rights for women.

23             MR. CANNON:  Okay.  So even though maybe the Women's

24   March in D.C., maybe these other ones kind of touch on other

25   issues, your thing is the reproductive rights, right?

```
1              THE PROSPECTIVE JUROR:  It is something I feel
2     strongly about, yes.
3              MR. CANNON:  How strongly would you describe your
4     feelings about it?  Elaborate a little on that.
5              THE PROSPECTIVE JUROR:  Happy to.  So I tie women's
6     reproductive rights to more broadly female empowerment and
7     being successful in the workforce and independent.  So that's
8     where it's been an area of investment for me.
9              MR. CANNON:  Is it fair to say that you feel that
10    access to reproductive health care is very important?
11             THE PROSPECTIVE JUROR:  Yes.
12             MR. CANNON:  Okay.  Is it fair to say that, even
13    though you might -- you might recognize a person's right to
14    disagree or not like abortion and stuff like that, you'd draw
15    the line at those people doing something to interfere with
16    access?
17             THE PROSPECTIVE JUROR:  Do you mind repeating the
18    question.
19             MR. CANNON:  It was a bad question.  Sorry.
20             Most people would agree that people can have
21    differing opinions on abortion and express them in many
22    different ways.  Could I trust that you agree with that also?
23             THE PROSPECTIVE JUROR:  Yes, I do agree with that.
24             MR. CANNON:  And that just expressing them, in and of
25    itself, isn't a problem for you, I don't suppose?
```

```
 1                    THE PROSPECTIVE JUROR:  No.

 2                    MR. CANNON:  Is it fair to say that when the people

 3    go from talking about it when expressing them but actually

 4    acting on those and doing things that may affect a woman's

 5    access, do they cross a line for you?

 6                    THE PROSPECTIVE JUROR:  Yes.

 7                    MR. CANNON:  And what -- when they cross that line,

 8    what's it make you feel like should happen to them?

 9                    THE COURT:  You're asking a very broad question.

10                    MR. CANNON:  Yeah.  It's too broad.

11                    THE COURT:  In terms of -- you're going to have to

12    reword it.  It's not a fair question.

13                    MR. CANNON:  How do you feel about people who cross

14    that line and carry their opinions into action in things like

15    what you've heard about this case?

16                    THE COURT:  The feelings are not what she's going to

17    be -- it's her viewpoints; it's not her feelings.  So she has,

18    obviously, a viewpoint.

19                    It's certainly fair to explore whether that viewpoint

20    is going to interfere with her considering the evidence and

21    being fair to both sides, but it's not -- her feelings are not

22    going to be governing this.

23                    MR. CANNON:  Sure.  Let's just kind of zero in on the

24    facts a little closer.

25                    If you find from the evidence that -- the defendants
```

1    here, of course, they don't like abortion, and they're

2    activists.  They act on it very plainly.  And that they did go

3    into a clinic where they weren't looking for services

4    themselves and created a bit of a disturbance; let's just say

5    that.

6              Are you able then --

7              THE COURT:  You've got an objection coming.

8              MR. PATEL:  Your Honor, I'd object to that -- the

9    form of that last question, essentially, creating a

10   hypothetical.

11             THE COURT:  That's not going to work.  I mean, if you

12   want to talk about -- if you want to talk about what she's

13   going to be deciding, I'm happy to set out that -- you know,

14   whether the defendants acted with this specific intent to

15   obstruct access to the reproductive health services broadly

16   speaking, but not necessarily only abortion, at this particular

17   clinic.  Because that's what you're going to be making a

18   decision on, in very summary terms.

19             MR. CANNON:  I guess what I'm doing is acknowledging

20   what the evidence will show at the very least, leaving other

21   issues aside.

22             You did the --

23             THE COURT:  So are you admitting on behalf of your

24   client certain conduct?

25             MR. CANNON:  I am acknowledging that there's certain

1    things that are not going to be disputed here.  Certain things

2    happened, and it's very plain, but that's not what the case

3    will turn on.

4           So my feeling -- or my question to you is whether

5    these things that won't be disputed are enough to make you feel

6    like you can't be fair to my client.  You know, the fact that

7    she feels strongly also, has acted in certain ways, and that

8    these include going into the building and having their -- their

9    event.

10          THE COURT:  Is that an objection?

11          MR. PATEL:  Your Honor, again, proposing facts,

12   asking the prospective juror to make a factual determination is

13   not an appropriate question to determine whether or not she can

14   be fair or impartial.

15          THE COURT:  The problem that I have with the way

16   you're wording it is you're asking her outside of having heard

17   the evidence to, basically, indicate as a juror how she would

18   come out.

19          She has to hear the evidence, get the instructions,

20   and participate in deliberations.  You're asking her to preview

21   what her -- what her verdict would be.  That's not going to

22   work.  You can ask it another way, but not that way.

23          MR. CANNON:  Ma'am, you indicated that you --

24   somewhere here in my notes -- you participated in these marches

25   with, of course, not just yourself, but also family; mother,

1     mother-in-law, couple people like that.

2          Is the -- is the family pretty -- pretty unified on

3     this issue?

4          THE PROSPECTIVE JUROR:  Yes.  And just to be clear,

5     different times I was with different ones of them, if that

6     matters.

7          MR. CANNON:  Okay.  If you heard this case and heard

8     a lot of evidence that would bother people with your views,

9     maybe people in your family, but you actually felt like the

10    government had fallen short in some important details and you

11    felt like you had to vote not guilty, would it -- do you think

12    you'd be able to do it?

13         THE COURT:  In other words, if the government does

14    not prove their case beyond a reasonable doubt that each of the

15    elements -- which you will be told -- it's your duty to find

16    the defendant not guilty.  Can you do that?

17         THE PROSPECTIVE JUROR:  Yes.

18         MR. CANNON:  Would you feel like you had any

19    discomfort because of having to go back home and explain it to

20    your family?

21         THE PROSPECTIVE JUROR:  I think if it was based on

22    the evidence that was shown, if it was not -- if it was a fair

23    decision, then I feel like I would be fine with it.

24         MR. CANNON:  Thank you.

25         MR. DUNN:  Before I ask this question, I'm not asking

```
1    for the witness -- I'm not asking for the juror to make a

2    factual statement.  I'm asking for opinion.

3              Do you think it --

4              THE COURT:  Her opinion, you know -- I'll hear

5    what -- don't answer until I hear what it is.

6              MR. DUNN:  Do you think it's wrongful behavior for

7    people to approach women in a parking lot as they're walking

8    toward the clinic to engage them in conversation, of course,

9    for the purpose of trying to convince them not to go in?

10             THE COURT:  We don't have those facts in this

11   particular case.  That's not what the charges are.  This is

12   relating to the charges, not something else.  So it's not an

13   appropriate question.

14             MR. DUNN:  But, Judge, we haven't heard the evidence

15   yet.

16             THE COURT:  Sorry.  I've ruled.

17             MR. DUNN:  There's been no evidence presented yet.

18             THE COURT:  If you have another question -- or sit

19   down, sir.

20             MR. DUNN:  Let's say, when the case is all said and

21   done, when you've heard everything, and in your mind it's a

22   close call which way to go, do you think, based upon your

23   strong views in favor of a woman's right to an abortion, you'd

24   probably be more likely to go with the government, if it was a

25   close call?
```

1              MR. PATEL:  I'd object to that question, Your Honor.

2              MR. DUNN:  I've asked it once before, and he never

3     objected.

4              THE COURT:  Excuse me.  Let him finish his objection.

5     Can you wait a minute and let him finish what his objection is.

6              MR. PATEL:  The question is asking for an opinion on

7     the propriety of whether or not abortions are good or bad, and

8     that's not what this case is about.

9              MR. DUNN:  That's not what I asked.

10             THE COURT:  What you're asking is, is that would she

11    not follow the instructions of the Court and --

12             MR. DUNN:  I didn't ask that either, Judge.

13             THE COURT:  Excuse me.  When the case is all said and

14    done, you've heard everything, in your mind it's a close call

15    which way to go, do you -- based on your views, would you then

16    go with the government as opposed to following -- if it's a

17    close call, you still would need to make a decision one way or

18    the other as to whether they had proven the case or not; close

19    call or not.

20             Would you be able to do that, or would you be

21    influenced by anything else?

22             THE PROSPECTIVE JUROR:  I do believe I can do that.

23             MR. DUNN:  If it was a close call?

24             THE COURT:  She's answered the question with the

25    close call.

 1            MR. KIYONAGA:  Good afternoon.

 2            THE PROSPECTIVE JUROR:  Good afternoon.

 3            MR. KIYONAGA:  You've indicated that your belief of

 4      a woman's right to an abortion is a strongly held personal

 5      conviction, correct?

 6            THE PROSPECTIVE JUROR:  Correct.

 7            MR. KIYONAGA:  Would it be fair to say that you

 8      disapprove or dislike people who seek actively to end abortion

 9      in the United States?

10            THE PROSPECTIVE JUROR:  No.  I think I just have a

11      disagreement with their perspective.

12            MR. CANNON:  I didn't hear it.

13            THE PROSPECTIVE JUROR:  I have a disagreement with

14      their perspective.

15            MR. KIYONAGA:  You would not attach any personal

16      judgment to their disagreement with such a closely held value

17      of your own?

18            THE PROSPECTIVE JUROR:  I try not to.

19            MR. KIYONAGA:  You would try not to.  Would you admit

20      that you might be subconsciously affected in your evaluation of

21      that person's conduct by the fact that they are activists for a

22      point of view or a principle that is the polar opposite of your

23      own?

24            THE PROSPECTIVE JUROR:  I think it would depend on

25      how they engaged from that viewpoint.

```
 1                MR. KIYONAGA:  I'm talking about --
 2                THE COURT:  Let me -- if we can talk about -- let's
 3      put this into context of the particular case.
 4                So in terms of your -- what he's asked you is whether
 5      your potential -- your bias -- or if you had a bias, that
 6      whether, in evaluating the person, you would be making a
 7      personal decision about them as opposed to a jury decision,
 8      which is based on the facts and the law; in other words, how
 9      you viewed them personally in terms of their views.
10                Would that influence you in any way?
11                THE PROSPECTIVE JUROR:  No, I don't believe that that
12      would.
13                MR. KIYONAGA:  Your Honor, may I follow up?
14                THE COURT:  Only if it's an appropriate question.
15                MR. KIYONAGA:  I guess I'll find out shortly, ma'am.
16      The likelihood in this case is that you're going to see
17      evidence portraying conduct, physical conduct, by the various
18      defendants.
19                The judge is going to instruct on the law, and it
20      will be your duty as a juror to follow the judge's instructions
21      on the law.  It will be your duty as a juror to evaluate the
22      physical conduct that you observe or any other evidence -- but
23      I'm talking for the moment about the physical conduct -- to
24      determine whether that conduct meets the prerequisites of the
25      law as laid out by the judge.
```

1          So in that evaluative process, as you're processing

2     the images or whatever else we're talking about, and asking

3     yourself does A equate to B -- yes or no -- and B means it's a

4     step toward a conclusion of guilt and C is not, you are called

5     to make a subjective decision.  You're exercising your own

6     judgment about --

7          THE COURT:  I'm not sure it's a subjective decision.

8     She's supposed to look at the facts objectively in terms of

9     making a decision; and make a decision on whether she credits

10    the testimony, credits the evidence.  It's not her personal

11    opinion, which is a subjective way of looking at it.

12         She's supposed to look at it objectively.  So you put

13    something in that she's not supposed to do.

14         MR. KIYONAGA:  Understood, Your Honor.  I'll withdraw

15    the subjective.

16         You're called upon as a juror, as the finder of fact,

17    to conclude whether or not conduct indicates guilt or

18    insufficient evidence to conclude guilt.  In the process of

19    making that decision, or likely a series of decisions, can you

20    with confidence today assure the Court that you're going to be

21    able to make that decision without any sort of bias, conscious

22    or subconscious, borne of the fact that you're going to be --

23    you're going to be dealing with people, you're going to be

24    regarding people who hold a point of view and who act on it,

25    and that point of view is one that you hold very, very intently

 1    within your personal identity, is that -- are you confident

 2    that you would be able to do that?  Or do you have a question

 3    about your ability to put your personal convictions aside and

 4    make a dispassionate analysis of the conduct in conformity with

 5    the judge's instructions?

 6              Do you really have absolute confidence of your

 7    ability to do that, or do you have a question?

 8              THE PROSPECTIVE JUROR:  I do believe that I can do

 9    that.

10              THE COURT:  You have your answer.

11              MR. KIYONAGA:  Very well.  Thank you.

12              THE PROSPECTIVE JUROR:  Thank you.

13              THE COURT:  All right.  You can step down now.  We'll

14    give you further instructions.

15              THE PROSPECTIVE JUROR:  Thank you.

16              (Prospective juror exited the courtroom.)

17              THE COURT:  I'm assuming there's no basis to excuse

18    her?  Government?

19              MR. PATEL:  No objection, Judge.

20              THE COURT:  All right.  Then we're keeping her.  Yes,

21    we're keeping her.

22              (Prospective juror entered the courtroom.)

23              THE COURT:  Thank you, sir.  You can put your things

24    down.  If I could ask you to stand, we need to swear you in.

25    You can take your mask off, too.

```
 1                    (Prospective juror was sworn.)

 2              THE COURT:  All right.  You can move the chair up,

 3    and you need to speak into the microphone so we can make sure

 4    that we can hear you.

 5              The questions are 3, 4, 12, 13, 15, 19, 20, 23, 25,

 6    27, 28, 29, and 31.  So let me start with Question No. 3, which

 7    is -- well, actually, let me start with No. 4 for a second.

 8              No. 4 is whether you're familiar with the case in

 9    some way.  So are you familiar with the case?

10              THE PROSPECTIVE JUROR:  No, ma'am.  I'm not familiar

11    with the case at all.  I haven't had any knowledge of it.

12              THE COURT:  Okay.  You put No. 4 down which says, are

13    you familiar with the facts of this case from any source?  So

14    what were you thinking?

15              THE PROSPECTIVE JUROR:  I may have misunderstood what

16    you were saying that day because I was sitting a little too far

17    back.  I couldn't hear it.

18              THE COURT:  Okay.

19              THE PROSPECTIVE JUROR:  I apologize for that.

20              THE COURT:  No problem.  So you haven't heard about

21    the case from any source?

22              THE PROSPECTIVE JUROR:  No, ma'am.

23              THE COURT:  All right.  3 is:  After you've heard the

24    evidence, the arguments of the lawyers, my instructions on the

25    law, if you then have a reasonable doubt as to any defendant's
```

1    guilt of one or more charges of the indictment, it would be

2    your duty to vote not guilty, and that's because the government

3    would not have proven the case beyond a reasonable doubt.

4             So if they did not prove the case beyond a reasonable

5    doubt to your satisfaction, it would be your duty to vote not

6    guilty.  The question was whether you believe that you could

7    not carry out this responsibility.

8             So are you indicating if you found the government had

9    not proved the guilt beyond a reasonable doubt that you could

10   not find the person not guilty, or did you misunderstand the

11   question?

12            THE PROSPECTIVE JUROR:  No, ma'am.  I just meant that

13   I -- I would not be able to render a guilty situation.

14            THE COURT:  Okay.  What would that be based on?

15            THE PROSPECTIVE JUROR:  Based on -- based on that's

16   my religion and the way I am.  I wouldn't feel that I would be

17   a credible person to be able to give a judgment on a case like

18   that.

19            THE COURT:  Okay.  So are you indicating that you

20   have a religious belief that you would not be able to render

21   judgment in this kind of a case whether the person is proven

22   guilty or not proven guilty; is that what you're saying?

23            THE PROSPECTIVE JUROR:  Yes, ma'am.

24            THE COURT:  Do we need to go any further?

25            MR. CANNON:  No.

```
1            MR. CRABB:  No, Your Honor.

2            MR. DUNN:  Judge, I just wanted to report when I got

3    back from lunch, I believe this gentleman was sitting right

4    outside the door.  I thought he was one of the courtroom

5    observers.  I did not think he was one of the jurors -- if I'm

6    talking about the same gentleman -- and we had a brief exchange

7    about the door being locked.  That was it.

8            THE COURT:  Okay.

9            MR. DUNN:  I just want to make sure that you and the

10   government are aware of that.

11           THE COURT:  Not a problem.  Do we need to go any

12   further?

13           MR. CANNON:  No, Your Honor.

14           THE COURT:  We can ask you to step down.  If you go

15   through that door, and we'll give you further directions.

16   Okay?

17           THE PROSPECTIVE JUROR:  Yes, ma'am.

18           (Prospective juror exited the courtroom.)

19           MR. CRABB:  Your Honor, we'd ask this juror be

20   excused for cause.

21           THE COURT:  Any objection?

22           MR. CANNON:  No.

23           THE COURT:  All right.  Then he's excused for cause.

24           (Prospective juror entered the courtroom.)

25           THE COURT:  All right.  If you would step up over
```

 1    here.  If you could remain standing for a second, we need to
 2    swear you in.
 3                    (Prospective juror was sworn.)
 4              THE COURT:  Okay.  You can move the chair up, and you
 5    need to speak into the microphone so we can really hear you.
 6    Take your mask down; because, otherwise, it's hard to get a
 7    record.
 8              THE PROSPECTIVE JUROR:  Okay.
 9              THE COURT:  This is Juror 0584.  My understanding is
10    you lost your card?
11              THE PROSPECTIVE JUROR:  I did lose my card.  I wrote
12    the ones that I could remember down for you.
13              THE COURT:  Okay.  So you wrote the ones that you
14    remember.  So you have 1, but then you have familiar with the
15    case, so --
16              THE PROSPECTIVE JUROR:  I would go off of my notes,
17    not the numbers.
18              THE COURT:  I should rely on the notes?
19              THE PROSPECTIVE JUROR:  That's probably smarter.
20              THE COURT:  Okay.  So familiarity with the case would
21    be No. 4 -- we'll go through each one of these.
22              THE PROSPECTIVE JUROR:  Sure.
23              THE COURT:  Would be Question No. 4.  How are you
24    familiar with it?
25              THE PROSPECTIVE JUROR:  I remember it from the news

 1    cycle.  I'm sure I read an article about it.  I'm sure I

 2    probably heard radio about it, NPR, WTOP Local.  And there were

 3    conversations amongst our friends at the bar about this case.

 4              MR. CANNON:  Say again?

 5              THE COURT:  Conversations at the bar about this.

 6              THE PROSPECTIVE JUROR:  Conversations with friends.

 7              THE COURT:  I assume that you don't mean the legal

 8    bar, but the --

 9              THE PROSPECTIVE JUROR:  Sure.  At the social bar.

10              THE COURT:  Okay.  What do you remember about these

11    discussions?  I mean -- or what you heard?  Any facts stick in

12    your head?  I mean, what makes you think you heard about it?

13              THE PROSPECTIVE JUROR:  I remember the emotional

14    response to it, quite honestly.

15              THE COURT:  Okay.  Well, we'll get to that in a

16    minute.  Factually, what do you remember hearing them say --

17    say or read or discuss?

18              THE PROSPECTIVE JUROR:  There were multiple people

19    that came into Planned Parenthood; somebody might have been

20    injured.  That's probably all I can remember from that.

21              THE COURT:  What makes you think it's this particular

22    case?  Based on the description I gave or just something else?

23              THE PROSPECTIVE JUROR:  The description you gave

24    indicated to me that -- it struck my memory kind of

25    immediately.

1     THE COURT:  Okay.  You indicated you had an emotional

2 response to hearing this?

3     THE PROSPECTIVE JUROR:  Yeah.

4     THE COURT:  All right.  And what was your emotional

5 response, if we could ask?

6     THE PROSPECTIVE JUROR:  I'm pretty liberal about

7 these types of things and reproductive rights for women, and so

8 I was appalled that something like that had happened.

9     THE COURT:  All right.  Let me combine it with some

10 other questions that you have down here.

11     You indicated that you attended -- you've attended a

12 protest.  What was the protest about?

13     THE PROSPECTIVE JUROR:  Oh, that doesn't have

14 anything to do with this case, actually.  I was a student at

15 Georgetown University in 2013, and it overlapped with

16 eliminating Sandra -- Rush Limbaugh had spoken about an

17 individual that had been in the media talking about

18 contraceptive cases.  That's where I -- I joined a protest for

19 that.

20     THE COURT:  So from your perspective, are you or are

21 you not connecting the protests you went to with this case or

22 the issues in this case?

23     THE PROSPECTIVE JUROR:  I'm connecting the two in

24 that they are both about reproductive rights.

25     THE COURT:  Okay.  So you also indicate, looking at

1    your notes, that you have deeply held beliefs regarding the

2    case, and you question your impartiality; is that correct?

3               THE PROSPECTIVE JUROR:  Yes.

4               THE COURT:  Okay.  So let me figure out the question

5    in terms of, if you could -- there's a couple of different

6    questions that fit that.  So let me ask the one that's most

7    likely.

8               The case will mention abortion.  The case is not

9    about whether abortion is right, wrong, morally justified or

10   unjustified.  It's about two laws that permit clinics that do

11   provide, among other things, abortion services, to do so

12   without physical obstruction.

13              So I would be asking you whether you have any

14   personal, political, moral, religious opinions or belief

15   regarding the issue of reproductive health care -- which could

16   include abortion -- that are so deeply held that they would --

17   could interfere with your ability to be fair and impartial in

18   this case.

19              So the question is, if you have personal feelings,

20   whatever the basis for, and they're strong feelings, would you

21   be able to look -- listen to the evidence and make decisions

22   based on what's presented in the courtroom, applying the law

23   which I would give you, and make a decision objectively without

24   having the -- your personal views inform them or the lens by

25   which you consider the evidence?  Can you separate them out?

```
1              THE PROSPECTIVE JUROR:  Yes, I believe I can.

2              THE COURT:  So when you indicated that you had

3       concerns about your impartiality, what were you thinking of?

4              THE PROSPECTIVE JUROR:  I'm thinking that the

5       evidence that's presented is, in my mind at this point,

6       hypothetical.  And so I'm relying on my belief system in the

7       right of women to be able to choose how their health care is

8       provided to them and what they need.

9              So that's pretty deeply held for me, and so the

10      evidence would have to jump that hurdle for me.

11             THE COURT:  Well, so the question I would have, would

12      you -- from -- the government has the burden beyond a

13      reasonable doubt to prove each of the elements.  So you would

14      be looking at the evidence and deciding what you credit and

15      what you don't credit.

16             THE PROSPECTIVE JUROR:  Sure.

17             THE COURT:  So what we would not want you -- and the

18      defense doesn't have any -- they're presumed innocent, they

19      have absolutely no obligation to present any evidence, testify,

20      do anything else.  They, obviously, can question the

21      government's evidence, but they're not required to come forward

22      with anything.  So we're looking at the evidence the government

23      presents.

24             Would you be more -- already more inclined to accept

25      their evidence or to credit the evidence based on your belief,
```

1    or, again, can you wait to hear the evidence and make decisions

2    based on what's presented and not how you feel about your

3    views?

4              THE PROSPECTIVE JUROR:  I think I can probably

5    separate the two.

6              THE COURT:  Okay.  Looking at the rest of your notes,

7    you, obviously -- we had questions about if somebody is a

8    lawyer or studied law or works for a lawyer.  Is that you or

9    somebody else?

10             THE PROSPECTIVE JUROR:  My husband.

11             THE COURT:  Okay.  And is he a practicing attorney at

12   this point?

13             THE PROSPECTIVE JUROR:  He is.

14             THE COURT:  And is he in a firm or does he work for

15   the government or some other organization?

16             THE PROSPECTIVE JUROR:  He does regulatory work at a

17   private firm.  He's managing partner of a mid-sized food and

18   drug packaging firm.

19             THE COURT:  Okay.  Has he done any kind of criminal

20   work in the past, do you know?

21             THE PROSPECTIVE JUROR:  I don't believe he has.

22             THE COURT:  It sounds like his work probably doesn't

23   involve going to court.  Would that be accurate?

24             THE PROSPECTIVE JUROR:  Not entirely, but mostly.

25             THE COURT:  Okay.  I'm getting, really, at whether

1    you've had discussions with him about what courts are like or

2    judges or defense counsel, government, anything that might

3    influence you before you -- the case even started as to how

4    this is all to happen as opposed to waiting until we instruct

5    you.  So has there been any of those kinds of discussions?

6              THE PROSPECTIVE JUROR:  I'm sure there has over the

7    years.  I also was starting to study law at Georgetown.  So we

8    were exploring some of those concepts.

9              THE COURT:  Anything that sticks in your mind that

10   you think might be how you think it should go, and if it

11   doesn't, you would have concerns about it, or can you,

12   basically, wait to see what we tell you, how you're supposed

13   to -- how you're supposed to consider the evidence and not make

14   assumptions based on these discoveries?

15             THE PROSPECTIVE JUROR:  I think I would be able to

16   follow clear direction without my own preconceived knowledge.

17             THE COURT:  Okay.  You've indicated that you've been

18   a trial juror in the past; is that correct?

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  How many times?

21             THE PROSPECTIVE JUROR:  One time.

22             THE COURT:  And was that here in federal court or the

23   local court?

24             THE PROSPECTIVE JUROR:  That was in -- that was not

25   in this court.  That was in the District, though.  It was in

1    the District Superior Court.

2              THE COURT:  Okay.  How long ago would that have been?

3              THE PROSPECTIVE JUROR:  That was in 2016.

4              THE COURT:  Okay.  And were you the foreperson?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Without telling us the verdict, was the

7    jury able to reach a verdict?

8              THE PROSPECTIVE JUROR:  I don't know.  I was

9    incomplete on that jury.

10             THE COURT:  So you were an alternate and were

11   excused?

12             THE PROSPECTIVE JUROR:  No.  I was excused because my

13   dad had a medical issue that I had to attend to.

14             THE COURT:  Okay.  So you were part of the panel like

15   here today?

16             THE PROSPECTIVE JUROR:  It was nowhere near as

17   extensive, but yes.

18             THE COURT:  Okay.  But you were called to the court,

19   and you were asked questions and, ultimately, you were excused?

20             THE PROSPECTIVE JUROR:  Yeah.  I had served for about

21   three weeks before I was excused.  It was an inconvenience.

22             THE COURT:  Okay.  So you actually were selected and

23   were listening to the evidence in the trial?

24             THE PROSPECTIVE JUROR:  That is correct.

25             THE COURT:  And then something came up, and you were

1    excused; is that correct?

2              THE PROSPECTIVE JUROR:  Correct.

3              THE COURT:  Anything about that experience, as far as

4    it went, that you think would affect your consideration of the

5    evidence in this case?

6              THE PROSPECTIVE JUROR:  A little bit, in that I found

7    the -- I'm so triggered by being here because of the

8    circumstances of that case.

9              THE COURT:  What was it -- what was the case about?

10   What was the charge?

11             THE PROSPECTIVE JUROR:  Can I talk about it?

12             THE COURT:  Sure.

13             THE PROSPECTIVE JUROR:  Sure.  All right.  It was

14   multiple assault, multiple rape.

15             THE COURT:  Okay.  So part of it is to make sure that

16   your experience as a juror, with other jurors, or the

17   interactions in court or whatever, whether that would somehow

18   affect how you would look at the evidence or participate in

19   this trial.

20             So is there anything about it from that perspective,

21   not the charges, but just the experience of being a juror?

22             THE PROSPECTIVE JUROR:  Yeah.  That's the part of it.

23             THE COURT:  All right.  So what was -- what was the

24   issue that you think would influence you in this one?

25             THE PROSPECTIVE JUROR:  I think that I'm -- I think

1    I'm scared of this, to be quite honest with you.  That was a

2    complete -- that whole chapter of my life was a traumatizing

3    experience for what happened in my immediate family during the

4    trial.

5              THE COURT:  Oh, okay.

6              THE PROSPECTIVE JUROR:  And I had to really make a

7    case that I could not continue to attend and really fight that

8    battle.

9              THE COURT:  Okay.  So something came up within your

10   family that precipitated your needing to leave the jury and

11   take care of it; is that correct?

12             THE PROSPECTIVE JUROR:  Correct.

13             THE COURT:  I don't need to know what it is.  It's

14   very personal on your part.

15             Obviously, it was of great importance and a serious

16   matter or they wouldn't have let you be excused in the middle

17   of a trial.  But I take it that, whatever that experience was,

18   you associate with your family or personal experience with the

19   jury service, I take it?

20             THE PROSPECTIVE JUROR:  That's right.

21             THE COURT:  Okay.  Well, hopefully, there would be no

22   such event here.

23             But leaving aside that, can I take it that at this

24   point, those things are not going on so you would be able to

25   participate, if selected, without being concerned that

1    something else is going to come up?

2            THE PROSPECTIVE JUROR:  Rationally, yes; but

3    irrationally, no.

4            THE COURT:  So what are you -- if you got selected,

5    what would you be concerned about?

6            THE PROSPECTIVE JUROR:  Gosh, I just wish my

7    therapist were here so that he could help me talk through this

8    one.

9            THE COURT:  Okay.

10           THE PROSPECTIVE JUROR:  My concern irrationally is --

11   and I mean this; like, this keeps me up at night -- while I'm

12   sitting in a jury, something is happening outside that I can't

13   attend to.

14           THE COURT:  Okay.  Do you work during the day?

15           THE PROSPECTIVE JUROR:  I do.

16           THE COURT:  What do you do?

17           THE PROSPECTIVE JUROR:  I'm an operations manager for

18   a local nonprofit.  Local; United Negro College Fund, which is

19   much more than local.

20           THE COURT:  Do you have that concern when you go to

21   work every day?

22           THE PROSPECTIVE JUROR:  I work from home, and I tend

23   to a lot at home as well.

24           THE COURT:  Okay.

25           THE PROSPECTIVE JUROR:  That's generally not a

1     concern in my life.

2              THE COURT:  Okay.  So if you had this concern that

3     something is happening or could happen on the outside and that

4     you, evidently, associate the two things, would that keep you

5     from paying attention to the trial?

6              I mean, obviously, we want you to be focused and

7     informed, paying attention, and not concerned about outside

8     things.  I mean, everybody has issues in their life that go on.

9     The fact that you're a juror doesn't mean that the rest of your

10    life stops.

11             But we certainly want to make sure that your concern

12    or fears are not such that they would interfere with your

13    actually paying attention to what's happening in the courtroom.

14             THE PROSPECTIVE JUROR:  Right.

15             THE COURT:  So does it rise to that level, or is this

16    something that can be controlled once you get into the trial

17    and nothing happens?

18             THE PROSPECTIVE JUROR:  It does rise to that level.

19    It does rise to that level, in that I'm also a caretaker for my

20    husband at home.

21             THE COURT:  Okay.  That, I assume, was the last one

22    in terms of a problem for sitting; is that correct?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Is he completely -- we don't need to get

25    into specifics.  Is your husband completely disabled, partially

1    disabled?

2              THE PROSPECTIVE JUROR:  He's -- I would say he's on

3    the healthier side of partially disabled.  He has Parkinson's,

4    and so his -- his symptoms tend to wane and then come back, so

5    we kind of manage and monitor that.

6              But he is also a managing partner at his firm, so he

7    is still able to work at this point.

8              THE COURT:  So do you both work from home?

9              THE PROSPECTIVE JUROR:  He works from his office and

10   home; I work from home.

11             THE COURT:  So what would be the caretaking if he

12   actually goes into his office?

13             THE PROSPECTIVE JUROR:  A lot of things.  He needs

14   help sometimes with clothing, with buttons, with just kind of

15   managing the next day, and for planning.  So I do meals, I do

16   all the cleaning.  Caretaking has its own unique role in my

17   life.

18             THE COURT:  So let's assume you were selected for the

19   jury, and we would start at 9:00 and finish, the latest would

20   be 5:00, earlier -- some days I have things in the afternoon;

21   it would be 4:00 or 4:30.  You get a lunch break, a morning

22   break, and an afternoon break.  There may be others, but

23   definitely guaranteed those.

24             What is it that you would not be able to do?

25   Presumably, you could help him before you left for him to go

1    off to work.  When you came home, you'd be able to plan meals

2    or do whatever else.  I'm trying to figure out, if he goes off

3    to work, what it is that would prevent you from being a juror.

4              THE PROSPECTIVE JUROR:  Nothing would prevent me from

5    it, but it would certainly be a lot harder for me; it really

6    would.  Because I'm doing my job and managing him and the

7    household all from home.  Inserting this in would be a change

8    and a challenge.

9              THE COURT:  Okay.  Counsel, questions?

10             MR. PATEL:  Good afternoon, sir.

11             THE PROSPECTIVE JUROR:  Good afternoon.

12             MR. PATEL:  I just want to make sure I understand

13   some of the things that you said.

14             I understood that you explained it would be a

15   hardship if you were picked to serve on the jury in this case,

16   correct?

17             THE PROSPECTIVE JUROR:  Yes, sir.

18             MR. PATEL:  But if you were selected, would you be

19   able to make arrangements so that some of these hardships that

20   you would encounter at home could somehow be addressed in other

21   means?

22             THE PROSPECTIVE JUROR:  I think I would be able to

23   make arrangements; it would not be easy.

24             MR. PATEL:  Right.  No, I understand that.  But it

25   could be done, right?

```
 1              THE PROSPECTIVE JUROR:  Yes.

 2              MR. CANNON:  Okay.  What was the last question and

 3      answer?

 4              THE COURT:  I'm sorry?

 5              MR. CANNON:  What was the last question and answer?

 6              THE COURT:  "But if you were selected, would you be

 7      able to make arrangements so that some of these hardships that

 8      you would encounter at home could somehow be addressed in other

 9      means?"

10              The answer is:  "I think I would be able to make

11      arrangements; it would not be easy."

12              MR. PATEL:  Thank you for that answer.

13              THE COURT:  You need to move the microphone over so

14      that you can speak in a loud, clear voice.

15              MR. PATEL:  Another thing, sir, I'd like to ask you

16      about is what you had mentioned would be an irrational and a

17      rational belief if you were selected to be a juror.

18              THE PROSPECTIVE JUROR:  Sure.

19              MR. PATEL:  I understand that some of these things

20      might be difficult to talk about, but from a rational

21      perspective, if you were a juror, do you feel as though -- or

22      do you believe that you would be able to participate in the

23      jury process, listen to the evidence, watch the evidence, have

24      an opportunity to listen to the Court's instructions and apply

25      them if you were selected as a juror?
```

```
1                THE PROSPECTIVE JUROR:  I do, and I think it would be

2       a detriment to my mental health.

3                MR. PATEL:  It would be what?  I'm sorry?

4                THE PROSPECTIVE JUROR:  A detriment to my mental

5       health.

6                MR. PATEL:  Could you explain that?

7                THE PROSPECTIVE JUROR:  The experience I had in

8       2016 --

9                THE COURT:  You need to move back just a tad.

10                THE PROSPECTIVE JUROR:  Sorry.  The experience I had

11       in 2016 was very traumatic for me without going into the

12       details of that.  I believe -- and I have gone -- I've been

13       through therapy for this process.

14                I believe that being put back into an environment

15       that is very similar to one that set off some pretty hard

16       mental health times for me would be a detriment.

17                MR. PATEL:  Would -- do you believe -- have you had

18       any sort of similar experiences while you've been waiting here

19       in the courthouse?

20                THE PROSPECTIVE JUROR:  Absolutely.

21                MR. PATEL:  You have?  Okay.

22                THE PROSPECTIVE JUROR:  I haven't slept for two days.

23                MR. PATEL:  I understand.  If you were selected for

24       jury service, are there any sort of plans or contingencies that

25       you think you might be able to put into place if you were to
```

1    experience some hardships?

2              THE PROSPECTIVE JUROR:  I would probably ask to go

3    back on medication, and I would probably ask the Court for at

4    least an hour or two a week to go to my therapy appointments.

5              MR. PATEL:  I also want to circle back to some of

6    your -- some of the responses you had to the Court's questions

7    about your deeply held beliefs on reproductive health care

8    rights.

9              THE PROSPECTIVE JUROR:  Sure.

10             MR. PATEL:  Did I understand you correctly that you

11   did explain to the Court that you would be able to put your

12   personal feelings aside and assess the evidence and be

13   impartial and fair in this case?

14             THE PROSPECTIVE JUROR:  Depends on the evidence, but

15   yes.

16             MR. PATEL:  Okay.  But you would be able to listen to

17   the Court's instructions and apply them to the evidence that

18   was presented in this case?

19             THE PROSPECTIVE JUROR:  Yes.

20             MR. PATEL:  Would you be able to put your beliefs

21   aside as you're reviewing the evidence, as you're listening to

22   the witness testimony and assessing any of their evidence, put

23   your beliefs aside and just fairly assess the evidence as it's

24   presented in court?

25             THE PROSPECTIVE JUROR:  I don't think so in this

1    case.  If it's the case that I think it is, I don't think --

2    no.

3              MR. PATEL:  Okay.  You understand that the defendants

4    are accused of having committed a crime, and it's the

5    government's burden to prove the case beyond a reasonable

6    doubt?

7              THE PROSPECTIVE JUROR:  I do understand that.

8              MR. PATEL:  So you understand that the defendants

9    have a presumption of innocence in this case?

10             THE PROSPECTIVE JUROR:  I do understand that as well.

11             MR. PATEL:  And the burden is completely on the

12   government to prove --

13             THE COURT:  You're going way too quickly for anybody

14   to absorb it and get a record.

15             MR. PATEL:  I'm sorry.  The burden is on the

16   government to prove the defendants' guilt beyond a reasonable

17   doubt?

18             THE PROSPECTIVE JUROR:  I understand that.

19             MR. PATEL:  So those are simple principles.  Would

20   you be able to put your beliefs aside and hold the government

21   to its burden and determine whether or not -- fairly and

22   impartially whether or not the government has proven the

23   defendants' guilt beyond a reasonable doubt?

24             THE PROSPECTIVE JUROR:  Again, I don't think that I

25   would.

 1          MR. PATEL:  Why not?

 2          THE PROSPECTIVE JUROR:  Something like this feels

 3  very, very challenging for me, in that personal belief systems

 4  and moral systems and foundations that have been instilled in

 5  me as a human being by my parents and by my communities from

 6  the time that I was young is immediately being challenged by a

 7  case that is in opposition to those foundational moral beliefs.

 8          MR. PATEL:  What is the belief that you think is

 9  being challenged by the -- by whatever information you have

10  about this case thus far?

11          THE PROSPECTIVE JUROR:  I don't necessarily know what

12  this case is.  But just based off of the reading of the

13  indictment, I can already know and understand that it is

14  against my core belief system that individuals would make a

15  choice to enter a building in order to assert their own beliefs

16  on other people.  That is against my core belief system.

17          MR. PATEL:  You understand the accusation in this

18  case is that the defendants had entered into a reproductive

19  health care facility to obstruct access?

20          THE PROSPECTIVE JUROR:  Yes, I do.

21          MR. PATEL:  So, essentially, it sounds to me as

22  though your beliefs are strongly held against -- it could be

23  anybody who commits a crime; is that fair to say?

24          THE PROSPECTIVE JUROR:  Anybody who commits a crime?

25          MR. PATEL:  I'm sorry.  If somebody is accused of

```
 1    committing a crime, you would have -- your deeply held beliefs
 2    as it relates to the crime that they may have committed --
 3              THE COURT:  This question is going way off track.
 4              MR. PATEL:  You're right, Your Honor.  I apologize.
 5              Do you believe that your deeply held beliefs would
 6    affect your ability to be impartial and fair in a case where
 7    defendants have been accused of obstructing access to a
 8    reproductive health care clinic?
 9              THE PROSPECTIVE JUROR:  Yes.  I've said it.
10              MR. PATEL:  All right.  Thank you, Your Honor.
11              THE COURT:  Any questions, or are we done?
12              MR. CANNON:  No questions.
13              THE COURT:  Thank you, sir.  If you could step down,
14    and we'll give you further instructions.  All right?
15              THE PROSPECTIVE JUROR:  Thank you, Your Honor.
16              (Prospective juror exited the courtroom.)
17              MR. CANNON:  We'd move to strike.
18              THE COURT:  Any objection?
19              MR. PATEL:  No, Judge.
20              THE COURT:  Now, this is a good example on the other
21    side.  You had answers, and you made it worse in terms of
22    pursuing it.
23              We're taking a lot of time, and I'm being very
24    lenient because of the issues in this case.  But I do think
25    that when you get answers and they've been asked several times,
```

1    that constantly hoping they're going to give you a different

2    answer is a different issue.  You can go through certain things

3    that potentially can rehabilitate them -- we'll call it --

4    where on reflection or wording it slightly differently they

5    come to a conclusion.

6               But when you ask the same question over and over

7    again and you get the same answer, we're wasting time, and we

8    don't have it.  This person is excused.

9               (Prospective juror entered the courtroom.)

10              THE COURT:  Please remain standing.  We have to swear

11   you in.

12              (Prospective juror was sworn.)

13              THE COURT:  All right.  Good afternoon.  You can move

14   your chair up, and we need to make sure you speak into the

15   microphone, and you can take your mask off so we can actually

16   hear what you have to say.

17              This is Juror No. 0980; Questions 4, 6A, 6B, 9, 13,

18   16, 17, 21, 23, 28, and 32.

19              Okay.  We'll start with No. 4, which is whether

20   you're familiar with the case in some way or this sounds like a

21   familiar case.

22              THE PROSPECTIVE JUROR:  Yes, Your Honor.  I --

23              THE COURT:  You need to speak into the microphone.

24              THE PROSPECTIVE JUROR:  When I was serving as the

25   acting Deputy Attorney General and as the principal Associate

1    Deputy Attorney General, I had supervision of the Civil Rights

2    Division, and I was briefed on all pending FACE Act violation

3    cases.

4         THE COURT:  So you're familiar with this case

5    specifically because it was generated out of DOJ Civil Rights

6    Division; is that correct?

7         THE PROSPECTIVE JUROR:  Yes.  And I'm not -- I don't

8    have a specific recollection of this case, but I know I was

9    briefed and received papers on all pending FACE Act cases,

10   which is why I answered this question yes.

11        THE COURT:  So -- but you would have been, as the

12   supervisor, responsible for -- would you have approved the

13   charges in your role?

14        THE PROSPECTIVE JUROR:  They didn't go to the Deputy

15   Attorney General formally for approval because they'd be

16   approved through the U.S. Attorney in D.C. and the Assistant

17   Attorney General for civil rights.  But, ultimately, we

18   supervised both.

19        THE COURT:  Okay.  So, obviously, we have an attorney

20   from the Department of Justice, Civil Rights Division as part

21   of it, in addition to the U.S. Attorney's Office.

22        And so even though the supervisor within the Civil

23   Rights Division at DOJ would be the first line, you actually

24   supervised all of them?

25        THE PROSPECTIVE JUROR:  Correct.

```
1              THE COURT:  Do we need to go any further?

2              MR. CANNON:  No, Your Honor.

3              MR. CRABB:  No, Your Honor.

4              THE COURT:  Then let me ask you to step down, and

5      we'll give you further information.

6              (Prospective juror exited the courtroom.)

7              THE COURT:  Somebody want to say something?

8              MR. WALSH:  No, Your Honor.

9              THE COURT:  All right.  Seeing there's no objection,

10     he's excused for cause.  That was quick.

11             (Prospective juror entered the courtroom.)

12             THE COURT:  Sir, if you'd come over here.

13             (Prospective juror was sworn.)

14             THE COURT:  All right.  You can move the chair back

15     up and down, and you should fix the microphone so you're

16     speaking into it and we can hear you.  You can take the mask

17     down so we can actually hear you and get a record.

18             So this is Juror No. 1962.  And it's 13, 16, 17, 21,

19     22, and 36.  We have a 36?  You mean 34?

20             THE PROSPECTIVE JUROR:  You had asked if we thought

21     of --

22             THE COURT:  The last catchall question?

23             THE PROSPECTIVE JUROR:  Yeah.  You can cross that

24     out.  I resolved it.

25             THE COURT:  All right.  13 is whether you or somebody
```

1    close to you has been employed ever by law enforcement.  I gave

2    a bunch of examples, but there may be others.

3              Is that you or somebody else?

4              THE PROSPECTIVE JUROR:  That's -- my father-in-law

5    was a DA and my wife had worked for the court system.

6              THE COURT:  I'm sorry.  I missed what your wife --

7    for the court system?

8              THE PROSPECTIVE JUROR:  She's an attorney.  She

9    actually clerked in the --

10             THE COURT:  So let's deal with your father for a

11   second.  Your father-in-law was a district attorney where?

12             THE PROSPECTIVE JUROR:  Philadelphia.

13             THE COURT:  All right.  Is he still practicing?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Have you had discussions with him about

16   cases he might have had within -- when he was the DA?

17             THE PROSPECTIVE JUROR:  Yes.

18             THE COURT:  In terms of criminal cases or civil cases

19   or a combination?

20             THE PROSPECTIVE JUROR:  Criminal.

21             THE COURT:  Would you -- is there anything about

22   those discussions that you think would influence you in this

23   case, how judges act or attorneys or whatever else, or are

24   these things that were fairly general?

25             THE PROSPECTIVE JUROR:  No.

```
 1                 THE COURT:  No, they would not.

 2                 THE PROSPECTIVE JUROR:  No, they would not.

 3                 THE COURT:  Okay.  And in terms of your wife, she

 4      works for the court system; is that correct?

 5                 THE PROSPECTIVE JUROR:  No, she does not; not at the

 6      moment.

 7                 THE COURT:  Okay.  Has she in the past?

 8                 THE PROSPECTIVE JUROR:  Yes.

 9                 THE COURT:  And so is she on leave or she's moved on

10      to another job?

11                 THE PROSPECTIVE JUROR:  She works for an enforcement

12      organization.

13                 THE COURT:  Okay.  Did she work for an enforcement

14      organization at the court?

15                 THE PROSPECTIVE JUROR:  No.

16                 THE COURT:  I'm sorry?

17                 THE PROSPECTIVE JUROR:  No, she did not.

18                 THE COURT:  So she worked here, and then -- and she

19      then went on to another law enforcement agency; is that

20      correct?

21                 THE PROSPECTIVE JUROR:  She works for a

22      self-regulatory organization.

23                 THE COURT:  Okay.  And can you tell us the regulatory

24      agency?

25                 THE PROSPECTIVE JUROR:  The PCAOB.  They regulate
```

1    financial auditors.

2              THE COURT:  Okay.  Was there anything -- how long did

3    she work at the court, do you know?

4              THE PROSPECTIVE JUROR:  She worked in three different

5    courts; in the Philadelphia court system, for the Brooklyn -- I

6    think Brooklyn court system, and then she clerked here at this

7    court.

8              THE COURT:  Okay.  So in terms of -- she worked for

9    different court systems; in Philadelphia and Brooklyn, and were

10   they the same jobs and then here, was she a law clerk or --

11             THE PROSPECTIVE JUROR:  She was a law clerk here and

12   did similar-type jobs for the other courts.

13             THE COURT:  Okay.  Did she ever discuss her criminal

14   cases in any of these positions that she had?

15             THE PROSPECTIVE JUROR:  Yes, but not very much.

16             THE COURT:  Okay.  Was there anything about those

17   discussions that would affect your consideration of the

18   evidence in the case?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Is that the extent of the law

21   enforcement?

22             THE PROSPECTIVE JUROR:  Yes.

23             THE COURT:  16 is whether you or somebody close to

24   you has ever been employed by a criminal defense attorney or

25   involved in a criminal case.

1          Is that your wife or somebody else?

2          THE PROSPECTIVE JUROR:  That's my wife.

3          THE COURT:  Okay.  And is that -- is that when she

4    was doing her clerking, or is that more her present job or some

5    other job she had?

6          THE PROSPECTIVE JUROR:  That could probably apply to

7    her present job.  It's not criminal what she does now; it's

8    just enforcement.

9          THE COURT:  Okay.  So from -- it's criminal in the

10   sense that it's an enforcement mechanism?

11         THE PROSPECTIVE JUROR:  Right.

12         THE COURT:  Okay.  17 is whether you or anybody close

13   to you is a lawyer, worked for a lawyer, or studied law.

14         That would be still your wife; is that correct?

15         THE PROSPECTIVE JUROR:  Yeah.

16         THE COURT:  Is there anybody else, or is it just her?

17         THE PROSPECTIVE JUROR:  My father was a lawyer; other

18   family members are lawyers.

19         THE COURT:  Is that the one that was in Philadelphia,

20   or is this somebody else?

21         THE PROSPECTIVE JUROR:  No.  That's my father, not my

22   father-in-law.

23         THE COURT:  Is your father still practicing?

24         THE PROSPECTIVE JUROR:  No.  He is no longer alive.

25         THE COURT:  What kind of practice did he have?

```
 1              THE PROSPECTIVE JUROR:  Bankruptcy.

 2              THE COURT:  Okay.  Was that here in D.C. or someplace

 3      else?

 4              THE PROSPECTIVE JUROR:  No.  That was in New Mexico.

 5              THE COURT:  Okay.  21 is whether you or somebody

 6      close to you belongs to a group, organization, that contributes

 7      to any group or organization or advocates for or against any

 8      aspect of reproductive health care, including but not limited

 9      to abortion.

10              So is that you or somebody else?

11              THE PROSPECTIVE JUROR:  No.  That would be my mother.

12      She's involved in Planned Parenthood.

13              THE COURT:  Okay.  Was that simply donating money, or

14      is she more involved than that?

15              THE PROSPECTIVE JUROR:  Mostly donations and marching

16      and things like that.

17              THE COURT:  Okay.  The second question was whether

18      you or somebody close to you had been in, participated in

19      protests, marches of that sort.

20              Is that your mother as well?

21              THE PROSPECTIVE JUROR:  Yes, although I did march in

22      the 2017 Women's March --

23              THE COURT:  Okay.

24              THE PROSPECTIVE JUROR:  -- which did have other

25      aspects to it.
```

1          THE COURT:  All right.  Have you marched in any

2     others or just that one?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  None others; just that one?

5          THE PROSPECTIVE JUROR:  Just that one as pertaining

6     to -- relating to this case.

7          THE COURT:  All right.  In terms of -- presuming that

8     your mother, obviously, was sympathetic to Planned Parenthood's

9     views and their advocacy, was that -- do you -- are you

10    sympathetic to that, or was that strictly sort of what she did?

11         THE PROSPECTIVE JUROR:  I mean, that is her agenda

12    and her beliefs.  I have my own.

13         THE COURT:  All right.

14         MR. DUNN:  I didn't hear that answer; if he could

15    speak into the microphone.

16         THE PROSPECTIVE JUROR:  I said those are her beliefs.

17    I have my own, you know, positions and beliefs.

18         THE COURT:  All right.  In terms of the Women's March

19    that, obviously, covered reproductive health but other things,

20    what was the purpose for your participating; the reproductive

21    health or other things, or a combination of everything?

22         THE PROSPECTIVE JUROR:  Combination of everything.

23         MR. DUNN:  Pardon?

24         THE PROSPECTIVE JUROR:  Combination of everything.

25         THE COURT:  In terms of your beliefs, are your

1    beliefs different than your mother's?

2              THE PROSPECTIVE JUROR:  In some ways, yeah.

3              THE COURT:  Okay.  Do you have any beliefs on the

4    issue of access to reproductive health that you think would

5    interfere with your participating as a juror in this case?

6              THE PROSPECTIVE JUROR:  No, I don't think so.

7              THE COURT:  Let me make sure I've got all of these.

8    You had 36, but I don't know whether it was -- the last

9    question was whether -- was there anything you wanted to bring

10   to our attention that I may not have asked or something you

11   thought of later that you couldn't remember the number.

12             Is that the one you meant to put down?

13             THE PROSPECTIVE JUROR:  Yeah.  I had a child care

14   obligation, but I was able to find someone to cover for it.

15             THE COURT:  Okay.

16             MR. KIYONAGA:  Can you ask the witness to speak

17   clearly.

18             THE PROSPECTIVE JUROR:  I'm sorry.  I had a child

19   care obligation for the last week of August that would have

20   prevented me from serving, but I was able to find backup care.

21             THE COURT:  All right.  So there will be -- if

22   selected, you would be able to serve for as long as we have

23   estimated?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  Questions, Counsel?

1          MR. PATEL:  Sir, what type of regulatory work does

2     your wife do?

3          THE PROSPECTIVE JUROR:  She regulates the auditors

4     who audit large corporations.  She does enforcement for that

5     organization.

6          MR. PATEL:  Thank you.  I understand you're a program

7     manager?

8          THE PROSPECTIVE JUROR:  Yes.

9          MR. PATEL:  Could you tell us about the type of work

10    you do.

11         THE PROSPECTIVE JUROR:  I work on delivering updates

12    and continued service for the municipal bond market for a site

13    that is similar to, like, Yahoo Finance but for municipal

14    bonds.

15         MR. PATEL:  Sir, at any time you've been around the

16    courthouse here for jury service, have you encountered anybody

17    outside of the courthouse who talked about this case or gave

18    you any information about this case?

19         THE PROSPECTIVE JUROR:  No.

20         MR. PATEL:  Have you received any pamphlets, flyers,

21    leaflets, anything like that with information about this case?

22         THE PROSPECTIVE JUROR:  No.

23         MR. PATEL:  Thank you.

24         MR. DUNN:  Good afternoon, sir.

25         THE PROSPECTIVE JUROR:  Good afternoon.

1          MR. DUNN:  I didn't understand your answer to the

2     judge's question about why you went to the Women's March, 2017

3     I believe it was?

4          THE PROSPECTIVE JUROR:  Yes.  I didn't particularly

5     support or agree with the new President's agenda.

6          MR. DUNN:  You didn't just go because your wife

7     wanted you to go; you wanted to go yourself?

8          THE PROSPECTIVE JUROR:  Yes.

9          MR. DUNN:  Okay.  That's all.

10          MR. GUILLAUME:  If I may.  Sir, you've indicated that

11     your mother has been a supporter of Planned Parenthood; is that

12     correct?

13          THE PROSPECTIVE JUROR:  Correct.

14          MR. GUILLAUME:  Approximately how many years are you

15     aware of her being a supporter?

16          THE PROSPECTIVE JUROR:  '70s, probably.

17          MR. GUILLAUME:  Okay.  So pretty much your entire

18     life?

19          THE PROSPECTIVE JUROR:  Yes.

20          MR. GUILLAUME:  And have you ever -- because of your

21     mother -- of your mother's involvement with the organization,

22     have you ever been exposed to any of the, I want to say,

23     products, but I guess I'll say literature of the organization;

24     have you ever read any or are you familiar with any of it?

25          THE PROSPECTIVE JUROR:  I don't think so.

 1          MR. GUILLAUME:  Okay.  You've indicated that -- when

 2     the judge asked you about your mom's beliefs, whether they were

 3     your own with respect to that issue -- that was the Planned

 4     Parenthood issue -- you said that they were not.  But could you

 5     share what your beliefs are?

 6          Are you in the same camp as her, or are you in a

 7     different camp with respect to that issue?

 8          THE PROSPECTIVE JUROR:  I mean, I'm in the camp of a

 9     woman should be able to do what she wants with her body.

10     That's not specifically what she believes.

11          MR. GUILLAUME:  That's not what your mother believes?

12          THE COURT:  I don't think we need to get into what

13     his mother believes.  If you want to find out what he believes,

14     that's fine.

15          THE PROSPECTIVE JUROR:  Yeah.  I just -- I mean, I

16     think women should -- all people should be able to choose what

17     they do with their body.

18          MR. GUILLAUME:  Sir, in a -- so you believe all

19     people, men and women?

20          THE PROSPECTIVE JUROR:  Yeah.

21          MR. GUILLAUME:  But specifically focusing on women

22     and with respect to the issue of -- that you've talked about

23     earlier, reproductive health, if you were to learn that persons

24     were alleged to have -- accused of -- or alleged to have been

25     blocking someone's access to reproductive health, could you

1    still be fair and impartial in spite of your views?

2                THE PROSPECTIVE JUROR:  Yes.

3                MR. GUILLAUME:  No more questions.

4                THE COURT:  All right.

5                MR. GUILLAUME:  I'm sorry.  There is another question

6    pending.

7                MR. KIYONAGA:  Good afternoon, sir.  You support a

8    woman's right to abortion, correct?

9                THE PROSPECTIVE JUROR:  Yeah.

10               MR. KIYONAGA:  You feel pretty strongly about that?

11               THE PROSPECTIVE JUROR:  Yeah.

12               MR. KIYONAGA:  Do you disapprove of people who seek

13   to end abortion in the United States?

14               THE COURT:  What his personal opinion is about people

15   doesn't get into what this case is about.  So I think you have

16   to ask -- we've gone through this a couple of times, Counsel.

17   If you want to reword it, do so; if not, sit down.

18               MR. KIYONAGA:  Your Honor, I'm having trouble

19   understanding the Court's direction.

20               THE COURT:  I have indicated to you his personal

21   opinions about people are not what this case is about.  He's

22   not going to be pursuing his personal opinions or how he

23   approves of other people or does not in a general sense.  I've

24   told you this before.

25               You can ask the question another way, but not that

1    way.  One more try.

2              MR. KIYONAGA:  Are you certain that you can keep your

3    personal convictions, feelings about the right of a woman to

4    have an abortion entirely separate from your consideration of

5    the conduct of people who are activists to end abortion in the

6    United States?

7              THE PROSPECTIVE JUROR:  Yeah, I think so.

8              MR. KIYONAGA:  You're confident that you will not

9    even be subconsciously affected in your evaluation?

10             THE COURT:  You're now starting to argue with him.

11   He's given the answer:  "Yeah, I think so."

12             MR. KIYONAGA:  Thank you.

13             THE COURT:  You can step down, sir.

14             THE PROSPECTIVE JUROR:  Thank you.

15             THE COURT:  And we'll give you further instructions.

16             (Prospective juror exited the courtroom.)

17             THE COURT:  Counsel, when he's given you a direct

18   answer, you're starting to harass him if you keep poking at it.

19   It's one thing -- he has said the same thing at least three or

20   four times.  I don't have a problem with the question that you

21   asked, but then he gives you a direct answer, and then you

22   don't accept it and pursue.

23             There's a limit to how much you can push them.

24   You're starting to harass them.  I have to say to you, that's

25   sort of a view that the jury is starting to get in general, not

1    specifically you.  Okay?

2             So my suggestion is that you-all be careful about --

3    in terms of how -- I've given you a lot of leeway to ask your

4    questions, but once they've given you answers several times the

5    same way, asking it over and over again becomes harassment and

6    not gaining any additional information.

7             MR. KIYONAGA:  Yes, ma'am.

8             THE COURT:  So I'd be careful.  We're keeping him.

9             (Prospective juror entered the courtroom.)

10            THE COURT:  If you could step up over here, please,

11   and step up to the witness box.  If you could come around this

12   way.

13            (Prospective juror was sworn.)

14            THE COURT:  You can put your things down, make

15   yourself comfortable.  Just put it wherever you like.  Okay.

16   You can move your chair up, if you'd like.  It moves back and

17   forth.  I need to have you speak into the microphone.  We're

18   having a little problem with that.  You can take it off so we

19   can actually hear you.

20            All right.  This is Juror 1500, and it is

21   Question 17.  And Question 17 is:  Are you or those close to

22   you a lawyer, ever worked for a lawyer, or studied law?

23            Is that you or somebody else?

24            THE PROSPECTIVE JUROR:  My sister is an attorney.

25            THE COURT:  So your sister is an attorney.

```
 1                    THE PROSPECTIVE JUROR:  She's --
 2                    THE COURT:  Does she practice with a firm or with the
 3       government or an independent?
 4                    THE PROSPECTIVE JUROR:  An independent.
 5                    THE COURT:  We need to speak separately.
 6                    THE PROSPECTIVE JUROR:  She had a law firm with a
 7       friend.  She's now retired.
 8                    THE COURT:  Okay.  The law firm that she had with a
 9       friend, did she do any criminal work?  Did she do any criminal
10       work?  Was her practice with --
11                    THE PROSPECTIVE JUROR:  She was a defense attorney.
12                    THE COURT:  Okay.  So she did do criminal work as a
13       defense attorney?
14                    THE PROSPECTIVE JUROR:  Yes.
15                    THE COURT:  Okay.  Was that in D.C. or someplace
16       else?
17                    THE PROSPECTIVE JUROR:  Boston.
18                    THE COURT:  All right.  Did she specialize in
19       particular kinds of criminal cases, or did she take a broad
20       spectrum?
21                    THE PROSPECTIVE JUROR:  I couldn't answer that.
22                    THE COURT:  Okay.  How long did she practice, do you
23       know?
24                    THE PROSPECTIVE JUROR:  Her entire career.  30 years,
25       40 years.
```

```
 1              THE COURT:  Okay.  Did you have any discussions with
 2     her either about her cases or what happens in court in terms of
 3     judges, prosecutors, defense counsel, anything like that?
 4              THE PROSPECTIVE JUROR:  No.  I tended to avoid the
 5     subject.
 6              THE COURT:  I'm sorry?
 7              THE PROSPECTIVE JUROR:  I tended to avoid the
 8     subject.
 9              THE COURT:  Okay.  Any questions?  Government?
10              MR. CRABB:  Good afternoon, sir.
11              THE PROSPECTIVE JUROR:  Hi.
12              MR. CRABB:  Do I understand correctly, you're a
13     scientist at the National Institute of Standards?
14              THE PROSPECTIVE JUROR:  That's correct.
15              MR. CRABB:  What kind of science are you involved
16     with?
17              THE PROSPECTIVE JUROR:  Well, my degree is in
18     ceramics, but I make the NIST suite of standard reference
19     materials by which a commonly used analytical method applicable
20     to any crystalline material are calibrated.
21              MR. CRABB:  Got it.
22              (Laughter.)
23              MR. CRABB:  Thank you, Your Honor.
24              THE COURT:  All right.  Any questions?  Anything?
25              MR. DUNN:  Thank you for being here, sir.  Does the
```

1    fact that the same federal government that you work for

2    represented at this table here would cause you to have any

3    biased view towards the claims that will be made during this

4    trial?

5              THE PROSPECTIVE JUROR:  No.

6              MR. DUNN:  Thank you.

7              MR. GUILLAUME:  No further questions.

8              THE COURT:  Then you can step down, sir, and we'll

9    give you further instructions.

10             (Prospective juror exited the courtroom.)

11             THE COURT:  I assume there's no issues?  Doesn't

12   appear to be.  Okay.  We'll keep him.

13             (Prospective juror entered the courtroom.)

14             THE COURT:  Sir, if you'd step up over here, please.

15             (Prospective juror was sworn.)

16             THE COURT:  All right.  You can make yourself

17   comfortable, put things down.  You can move the chair back and

18   forth if you like.  You need to fix the microphone so we can

19   hear you.  And you can take your mask off so we actually can

20   get a record.

21             This is Juror No. 1412.  14, 17, 21, 22, and 25.  So

22   let me start with 14, which is you or members -- close family

23   or friends have ever been employed by the courts, with the

24   local court, or the federal court.

25             Is that you or somebody else?

```
 1                THE PROSPECTIVE JUROR:  That would be my wife.

 2                THE COURT:  And which court did she work for?

 3                THE PROSPECTIVE JUROR:  She was a clerk in the

 4     Federal District Court of Baltimore from 1983 to 1985.

 5                THE COURT:  So did she work for a specific judge or

 6     was she --

 7                THE PROSPECTIVE JUROR:  Yes, she did.  For Judge

 8     Herbert Murray.

 9                THE COURT:  Okay.  Anything about her work or

10     discussions you might have had with her about her work that you

11     think would influence you in this case?

12                THE PROSPECTIVE JUROR:  No.

13                THE COURT:  17 is you or -- are you or somebody close

14     to you a lawyer, ever worked as a lawyer, or studied law.  Is

15     that still your wife or is that somebody else?

16                THE PROSPECTIVE JUROR:  Yes, it's my wife and, in

17     addition, my sister.

18                THE COURT:  Okay.  After your wife clerked, where

19     else did she work as a lawyer?

20                THE PROSPECTIVE JUROR:  She worked subsequently at

21     Arnold & Porter, and for the last 31 years she has been at the

22     Board of Governors of the Federal Reserve Board.

23                THE COURT:  Okay.  When she worked in the law firm,

24     did she do any criminal work, to your knowledge?

25                THE PROSPECTIVE JUROR:  She did not.  It was banking,
```

1   regulatory work.

2          THE COURT:  All right.  What about your sister in

3   terms of -- where has she worked?

4          THE PROSPECTIVE JUROR:  She has mostly worked in

5   human resources.  She did not practice law after a few years

6   out of law school.  She's now retired.

7          THE COURT:  Okay.  Did your sister do any criminal

8   work, to your knowledge?

9          THE PROSPECTIVE JUROR:  She did not.

10          THE COURT:  Any discussions about legal issues or

11   court proceedings or anything else with your wife or your

12   sister that you think would influence you in this case?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  All right.  21 is whether you or somebody

15   close to you belonged to any group or organization or

16   contributed to any group or organization that advocates for or

17   against any aspect of reproductive health care, including but

18   not limited to abortion.

19          So is that you or somebody else?

20          THE PROSPECTIVE JUROR:  That would be me.

21          THE COURT:  Okay.  And what organization were you

22   either associated with or provided donations?

23          THE PROSPECTIVE JUROR:  I've been a donor to Planned

24   Parenthood for over two decades.

25          THE COURT:  And when was the last time you made a

 1     donation?

 2               THE PROSPECTIVE JUROR:  December of 2022.

 3               THE COURT:  Okay.  Besides donating, have you

 4     participated in any of their other activities?

 5               THE PROSPECTIVE JUROR:  Of Planned Parenthood?

 6               THE COURT:  Yes.

 7               THE PROSPECTIVE JUROR:  No.

 8               THE COURT:  Obviously, you're donating money to them,

 9     so you're sympathetic to their views and their advocacy.

10               What we want to make sure is that in this particular

11     case, with the issues that we have, that you would be able to

12     separate any sympathy that you would have to those positions

13     from the evidence in this case.

14               In other words, can you separate your feelings about

15     their -- what they stand for in terms of reproductive health

16     care and make a decision totally separately based just on the

17     evidence and the law in the case?

18               THE PROSPECTIVE JUROR:  I believe I can.

19               THE COURT:  And I understand from 22 that either you

20     or somebody close to you had marched or participated in

21     protests.

22               Is that you or somebody else or a combination?

23               THE PROSPECTIVE JUROR:  That is me.  I participated

24     in a protest after the *Dobbs* decision.

25               THE COURT:  Okay.  And was that here in D.C. or

1    elsewhere?

2              THE PROSPECTIVE JUROR:  Yes, here in D.C.

3              THE COURT:  All right.  So, obviously, you have

4    strongly held views relating to access to reproductive care,

5    including abortions.

6              So, again, my question is, if you have those views,

7    we want to make sure that those views don't inform, don't

8    influence in any way or provide the lens through which you look

9    at the evidence.

10              So are you confident that you can separate out your

11   views from the evidence in this case and make a decision

12   independently looking at the evidence and determining, after I

13   provide you the law, whether or not the government has proved

14   the case beyond a reasonable doubt?

15              THE PROSPECTIVE JUROR:  Yes, I am confident.

16              THE COURT:  Okay.  It appears that you've been -- on

17   25, that you've been a juror before; is that correct?

18              THE PROSPECTIVE JUROR:  Yes, I have.

19              THE COURT:  How long ago would have been the last

20   time?

21              THE PROSPECTIVE JUROR:  Last year in D.C. court.

22              THE COURT:  Okay.  And how many times have you been a

23   juror?

24              THE PROSPECTIVE JUROR:  Oh, at least five or six

25   times in D.C. court, and before that in New York City court.

1          THE COURT:  Okay.  And have you ever been a

2     foreperson of any of these juries?

3          THE PROSPECTIVE JUROR:  No, I have not.

4          THE COURT:  Without telling us the verdict, had the

5     jury reached a verdict in each of the cases that you sat as the

6     juror?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Okay.  Any of those cases -- presumably,

9     there would be criminal cases.

10          Do you remember what the charges were, generally?

11     Did they have any charges that are similar, in your mind, to

12     what we have here?

13          THE PROSPECTIVE JUROR:  They were both civil and

14     criminal, but did not -- or do not relate to the charges here.

15          THE COURT:  Okay.  In terms of the criminal cases, do

16     you remember what the charges were?

17          THE PROSPECTIVE JUROR:  Yes.  It was assault on a

18     Metro car; and in another case, property theft.

19          THE COURT:  All right.  Questions?

20          MR. PATEL:  Good afternoon, sir.  I understand you're

21     a teacher?

22          THE PROSPECTIVE JUROR:  Yes, I am.

23          MR. PATEL:  What do you teach?

24          THE PROSPECTIVE JUROR:  I teach at the International

25     Affairs School at the George Washington University.

```
 1              MR. PATEL:  Sir, at any time you've been called to

 2     this courthouse as a juror in this case, have you had any

 3     contact with anybody outside of the courthouse who has given

 4     you any information about this case?

 5              THE PROSPECTIVE JUROR:  No, not at all.

 6              MR. PATEL:  Have you received any pamphlets or

 7     leaflets that had information about this case?

 8              THE PROSPECTIVE JUROR:  No.

 9              MR. PATEL:  Thank you.

10              THE COURT:  Any questions?

11              MR. KIYONAGA:  If the Court will indulge us one

12     moment, Your Honor.

13              MR. GUILLAUME:  Thank you, Your Honor.  Good

14     afternoon, sir.

15              Sir, you mentioned your participation in the protest

16     after the Dobbs decision.  Is that the only protest with

17     respect to reproductive rights that you've been a part of?

18              THE PROSPECTIVE JUROR:  Yes.

19              MR. GUILLAUME:  Sir, as far as protesting anything

20     besides that, have you ever been a part of any other protests?

21              THE PROSPECTIVE JUROR:  Yes.

22              MR. GUILLAUME:  Approximately how many, would you

23     say, in your lifetime, if you can guesstimate?

24              THE PROSPECTIVE JUROR:  Half a dozen.

25              MR. GUILLAUME:  Were any of those around women's
```

```
1     rights other than the one you've already mentioned?

2              THE PROSPECTIVE JUROR:  Yes.

3              MR. GUILLAUME:  Sir, you believe, in spite of your

4     activism over the years, that you're able to be a fair and

5     impartial juror in a case where persons are accused of having

6     a -- accused of -- excuse me -- accused of blocking access to

7     health care, which is the opposite view of what you are --

8     apparently, the other side of what you're on?

9              THE COURT:  And your objection?

10             MR. PATEL:  The form of the question, Your Honor.

11             MR. GUILLAUME:  I can ask it in a more succinct way.

12             THE COURT:  Okay.  It has a lot of elements in it;

13    slim it down.

14             Can I ask him a question.  You indicated -- the other

15    protests, were they on other issues as well besides women's

16    issues?

17             THE PROSPECTIVE JUROR:  Yes, indeed.

18             THE COURT:  What were they?

19             THE PROSPECTIVE JUROR:  Gun control, voters' rights,

20    Black Lives Matter.

21             THE COURT:  Okay.  Go ahead.

22             MR. GUILLAUME:  Thank you.  Sir, I just want to try

23    to ask that question a little more succinctly, if I can

24    remember it.

25             You've indicated that you participated in other
```

1    protests -- excuse me -- other protests, but the protests with

2    respect to the *Dobbs* decision is the only one involving

3    reproductive rights; did I get that correct?

4          THE PROSPECTIVE JUROR:  That is correct.

5          MR. GUILLAUME:  Okay.  It's a strongly held view by

6    you that -- in -- such that you were an active participant.

7    But are you capable of being a fair and impartial juror to

8    persons who are accused of conduct -- accused of conduct of

9    which you are an activist on the other side of the spectrum?

10          I hope I phrased that correctly.  I hope you

11    understand what I'm saying.

12          MR. PATEL:  Again, form of the question, Your Honor.

13          THE COURT:  Yes.  You've also labeled him something,

14    which is not appropriate.

15          MR. GUILLAUME:  Your participation in the march,

16    there were, I'm assuming -- in the *Dobbs* protest, I'm assuming

17    there were persons on the opposite side of that issue; is that

18    correct, sir?

19          THE PROSPECTIVE JUROR:  I'm sorry.  I'm not following

20    the question.

21          MR. GUILLAUME:  When you participated in the

22    protest -- in the *Dobbs* protest, were there other people who

23    felt -- that you saw or were aware of that held a different

24    position than you did?

25          THE PROSPECTIVE JUROR:  During the course of the

1   protest?

2          MR. GUILLAUME:  Yes, sir.

3          THE PROSPECTIVE JUROR:  Not that I can recall.

4          MR. GUILLAUME:  Do you acknowledge that there are

5   people who feel differently about the decision than you do?

6          THE PROSPECTIVE JUROR:  Absolutely.

7          MR. GUILLAUME:  Are you able -- and if those

8   people -- are you able to be a fair and impartial juror in a

9   case where persons who hold that opposite view are accused of a

10  certain kind of conduct?

11         THE PROSPECTIVE JUROR:  I have worked my entire life

12  as an intelligence analyst.

13         MR. GUILLAUME:  Is that a yes, sir?

14         THE PROSPECTIVE JUROR:  I'm working on my answer, if

15  you'll permit me.

16         I can differentiate between analysis and advocacy.  I

17  know the difference.

18         MR. GUILLAUME:  Is that a yes or a no, sir?

19         THE COURT:  I would take that as a yes.  He's

20  indicating the difference between the analysis and advocacy,

21  which is the way you framed it.

22         MR. GUILLAUME:  Thank you.  Thank you, sir.

23         MR. DUNN:  Good afternoon, sir.

24         Do you understand what the presumption of innocence

25  in criminal cases means?

```
 1                    THE PROSPECTIVE JUROR:  Indeed, I do.

 2                    MR. DUNN:  Okay.  Considering that you are a

 3       long-time 20-year financial supporter of Planned Parenthood,

 4       can you at the beginning of this trial presume that each and

 5       every person over there at that table is innocent?

 6                    THE PROSPECTIVE JUROR:  Indeed, I can.

 7                    MR. DUNN:  Okay.

 8                    THE COURT:  All right.  I'm assuming there's nothing

 9       further.

10                    Thank you, sir.  You can step down.  We'll give you

11       further instructions.

12                    (Prospective juror exited the courtroom.)

13                    THE COURT:  As I said to you, some of the jurors are

14       starting to feel like they're being harassed.  They've given

15       answers, and you ask them a question, so that's why you got the

16       analysis and the advocacy answer that you got.  He, obviously,

17       took umbrage to your continuing to ask the same thing over and

18       over again.

19                    I just point this out, that you need to pay attention

20       when they do it.  I mean, if they're adamant of whatever their

21       positions are and they're not equivocating, there's a limit to

22       how many times you ask the same thing without them getting

23       annoyed, which is not in anybody's usefulness, including yours.

24                    MR. GUILLAUME:  Thank you, Your Honor.

25                    MR. CANNON:  Judge, can we take a brief break?
```

1          MR. WALSH:   Before that, Your Honor, I'd move to

2     strike.

3          THE COURT:   The last one?   Why?   Come up and tell me.

4     Let me ask the government, what's your --

5          MR. PATEL:   We oppose.

6          MR. WALSH:    Thank you, Your Honor.

7          THE COURT:   Why would you strike him?   Go ahead.

8          MR. WALSH:    Sure.   Notwithstanding his assurances

9     that he can be fair and impartial, I would move to strike him

10    because somebody who has been contributing to Planned

11    Parenthood for 20 years, protested recently at the *Dobbs*

12    decision, just cannot reasonably be expected to be fair and

13    impartial in a case with the subject matter at hand.

14         THE COURT:   Okay.   You want to respond?

15         MR. PATEL:   Your Honor, that argument fails at the

16    beginning when he said, "Notwithstanding the fact that he can

17    be fair and impartial."   That's what we're here to determine is

18    whether or not he can be.   He said he can be.

19         So we would request that you deny the defense motion

20    to strike.

21         THE COURT:   I'm not going to strike him.   He was --

22    he clearly knew the difference between advocacy and taking a

23    look at analytical things, which is evidently what he does for

24    work.

25         The fact that he contributes to certain things

1   doesn't mean that he's going to be unfair, which is the

2   conclusion you've reached.  He was quite adamant about

3   understanding the presumption of innocence.  There was no

4   hesitation, unlike some of the others, about what his answers

5   are.

6            He's been a juror before quite a number of times.

7   He knows what the process is in terms of what he's required to

8   do.

9            So I'm certainly not going to excuse him and assume

10  that he cannot be fair and impartial in terms of what he said.

11  So he remains.

12           We wanted to take a break at this point, if we could.

13  So it's quarter after.  If we could just do ten minutes,

14  because we'll have to stop at 4:00.  So 3:25.  And we'll pick

15  up at that point.

16           (Recess taken.)

17           THE COURT:  All right.  Let's get the next.  We're at

18  21.

19           (Prospective juror entered the courtroom.)

20           THE COURT:  Good afternoon, sir.  We need to swear

21  you in.

22           (Prospective juror was sworn.)

23           THE COURT:  All right.  Go ahead and sit down, sir.

24  You can move the chair up and speak into the microphone so we

25  can hear you.  Take your mask off because it's harder to hear

1   with it.

2              All right.  This is Juror No. 1986, and the question

3   is No. 25.  So I take it you've been a juror before; is that

4   correct?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Has it been in federal court, the local

7   Superior Court or someplace else?

8              THE PROSPECTIVE JUROR:  Local D.C.

9              THE COURT:  Was it one time or more than that?

10             THE PROSPECTIVE JUROR:  I think I've served six

11  times.

12             THE COURT:  When was the most recent?

13             THE PROSPECTIVE JUROR:  Three years ago.

14             THE COURT:  All right.  Were you ever the foreperson

15  in any of those cases?

16             THE PROSPECTIVE JUROR:  One of them.

17             THE COURT:  And without telling us the verdicts, was

18  the jury able to reach a verdict in all of those cases?

19             THE PROSPECTIVE JUROR:  Yes, in all.

20             THE COURT:  Do you recall what the charges were in

21  those cases, you know, generally speaking?

22             THE PROSPECTIVE JUROR:  There were a variety.  There

23  was a drug charge, involuntary manslaughter, hate, violent

24  crime.

25             THE COURT:  Okay.  Was there anything that, from your

```
 1    perspective, you view as similar to the charges in this case?

 2              THE PROSPECTIVE JUROR:  No.

 3              THE COURT:  Anything about that service in the six

 4    cases that you have served, and also as being foreperson, that

 5    you think would affect your consideration of the evidence in

 6    this case; anything that happened while you were a juror?

 7              THE PROSPECTIVE JUROR:  No.

 8              THE COURT:  Questions?

 9              MR. CRABB:  Thank you, Your Honor.  No questions.

10              THE COURT:  Counsel?

11              MR. GUILLAUME:  No questions.

12              MR. DUNN:  No questions.

13              THE COURT:  All right.  You can step down, sir, and

14    we'll give you further instructions.  You go out to the left

15    here.

16              (Prospective juror exited the courtroom.)

17              THE COURT:  Next one.  I'm assuming everybody --

18    we're keeping him.

19              (Prospective juror entered the courtroom.)

20              THE COURT:  If you could step up over here to the

21    witness box.

22              (Prospective juror was sworn.)

23              THE COURT:  All right.  You can move the chair up,

24    and you can take the mask off so we can actually hear you.  You

25    need to make sure you speak into the microphone so everybody
```

 1    can hear you.

 2                    THE PROSPECTIVE JUROR:  Okay.

 3                    THE COURT:  This is Juror No. 1393.  And it's 13, 17,

 4    and 28.

 5                    So Question 13 is:  Whether you or somebody close to

 6    you is in law enforcement?  I defined some different ones, but

 7    you could be beyond that.

 8                    Is that you or somebody else?

 9                    THE PROSPECTIVE JUROR:  My grandfather was an NYPD

10    police officer.

11                    THE COURT:  Your father was --

12                    THE PROSPECTIVE JUROR:  Sorry.  My grandfather was an

13    NYPD police officer.

14                    THE COURT:  Okay.  Do you know if he had a general

15    assignment or what he actually did where he was assigned?

16                    THE PROSPECTIVE JUROR:  He was an organized crime

17    detective.

18                    THE COURT:  Okay.  And how long was he a police

19    officer, do you know, roughly?

20                    THE PROSPECTIVE JUROR:  I believe 20 or 30 years.

21                    THE COURT:  Did you have discussions with him about

22    his cases or just sort of general discussions about his work?

23                    THE PROSPECTIVE JUROR:  Just general discussions; no

24    specifics.

25                    THE COURT:  Anything about the fact that he was with

1    the police department -- we're going to have law enforcement

2    people testify -- we want to make sure that you would treat

3    them as you would a civilian; not give them greater or lesser

4    credit simply because they're law enforcement.  Can you do

5    that?

6            THE PROSPECTIVE JUROR:  Yes.

7            THE COURT:  All right.  17 is whether you or somebody

8    close to you is a lawyer, studied law, worked for a lawyer.

9            Is that you or somebody else?

10           THE PROSPECTIVE JUROR:  I'm an attorney.

11           THE COURT:  All right.  And do you practice in the

12    government, in a private firm, or an organization?

13           THE PROSPECTIVE JUROR:  I'm a private attorney;

14    defense attorney.

15           THE COURT:  Do you do any criminal work?

16           THE PROSPECTIVE JUROR:  I do not do criminal work.

17           MR. CANNON:  Again?

18           THE PROSPECTIVE JUROR:  Do not do criminal work.

19           THE COURT:  Is there a particular subject matter of

20    specialty that you have in your work?

21           THE PROSPECTIVE JUROR:  I'm an antitrust defense

22    attorney for mergers and acquisitions.

23           THE COURT:  Have you ever done any criminal work?

24           THE PROSPECTIVE JUROR:  No.

25           THE COURT:  Will you follow my jury instructions even

1    if you might have a differing view about them?

2            THE PROSPECTIVE JUROR:  Yes.

3            THE COURT:  28 is the issue of whether you have a

4    pressing commitment that would make it difficult to sit.  If

5    you could describe it.

6            THE PROSPECTIVE JUROR:  I have a jury -- not a jury

7    trial.  I have a trial coming up in the District of

8    Massachusetts that has court -- case management order deadlines

9    over the next three weeks, and I'm an essential member of the

10   team trying to meet those deadlines.

11           THE COURT:  So when is the trial in Massachusetts?

12           THE PROSPECTIVE JUROR:  The trial is scheduled to

13   start on October 16th.

14           THE COURT:  Okay.  And is this preparing for the

15   trial or actually going up for other kinds of things associated

16   with it?

17           THE PROSPECTIVE JUROR:  Sorry.  It is preparatory for

18   the trial.  So exhibit list, confidentiality designations,

19   deposition designations, those kinds of interim orders.

20           THE COURT:  I take it, it's a civil case.

21           THE PROSPECTIVE JUROR:  It's a civil case against the

22   Department of Justice.

23           THE COURT:  Okay.  So are you the defendant or are

24   you the -- the plaintiff in the case?

25           THE PROSPECTIVE JUROR:  My client is the defendant in

```
 1        the case.
 2                 THE COURT:  All right.  I take it in terms of -- are
 3        you indicating that you're sufficiently key as part of the
 4        trial team that during the next three weeks you would not be
 5        able to -- that it would be detrimental to your client not to
 6        be able to be there and part of it?
 7                 THE PROSPECTIVE JUROR:  I believe so, yes.
 8                 THE COURT:  Any questions?
 9                 MR. PATEL:  No, Your Honor.
10                 MR. DUNN:  No, Your Honor.
11                 THE COURT:  Okay.  You can step down, sir.  We'll
12        give you further instructions.
13                 (Prospective juror exited the courtroom.)
14                 MR. PATEL:  Judge, government has a motion to strike
15        for cause, hardship.
16                 MR. CANNON:  No objection.
17                 MR. CRAMPTON:  No objection.
18                 MR. DUNN:  No objection.
19                 THE COURT:  All right.  I will strike him for cause
20        based on his needing to prepare for trial.
21                 (Prospective juror entered the courtroom.)
22                 THE COURT:  You can step up.
23                 (Prospective juror was sworn.)
24                 THE COURT:  All right.  You can move the chair up.
25        You can put things down.  You need to speak into the microphone
```

1    so we can hear you.  If you would take your mask off so that we

2    can actually hear your answers.

3              THE PROSPECTIVE JUROR:  Sure.

4              THE COURT:  This is Juror No. 293, and it's 21, 22,

5    and 28.

6              So 21 is whether you or someone close to you belongs

7    to a group or organization or contributes to a group or

8    organization that advocates either for or against reproductive

9    health care, which could include but not be limited to

10   abortion.

11             So is that you or somebody else?

12             THE PROSPECTIVE JUROR:  It is me.  I've made

13   contributions to, like, abortion rights organizations and

14   abortion funds before.  And then also just as my day job, I

15   work for a political consulting firm that also works with

16   organizations that do work in that advocacy space.

17             THE COURT:  Okay.  How long -- can you specify what

18   organizations they are?

19             THE PROSPECTIVE JUROR:  Sure.  So we work with,

20   like --

21             THE COURT:  Let me start with you personally, what

22   you donated on your personal --

23             THE PROSPECTIVE JUROR:  Sorry.  I have donated to

24   Planned Parenthood, Planned Parenthood Action, National Network

25   of Abortion Funds.  That's all I can remember off the top of my

1    head.

2              THE COURT:  Okay.  And then your -- where you work,

3    they've also contributed to --

4              THE PROSPECTIVE JUROR:  They don't contribute

5    monetarily.  But, like, we work -- we do work, consulting work

6    on behalf -- like, for the organizations.  Like, we've worked

7    with Planned Parenthood, ACLU, Women's March, organizations

8    like that.

9              THE COURT:  In terms of your role, what do you do

10   with those -- what have you done with those organizations?

11             THE PROSPECTIVE JUROR:  I do digital strategy for

12   them.  So crafting, like, social media content and running

13   those programs and running, like, fundraising text message

14   programs.

15             THE COURT:  Okay.  So, obviously, the organizations

16   that you've been involved with personally, as well as your

17   work, involve organizations that relate to access to

18   reproductive care, and specifically, as you have described it,

19   access to abortions.

20             So one of the questions that I have is, having

21   participated in terms of both work, as well as personally in

22   terms of these groups, can you separate out your views, your

23   support, and whatever strong feelings you may have relating to

24   this kind of access to reproductive care from this case?

25             In other words, what we want you to do is to look

1  independently at the evidence in the case, make a decision

2  based on what the evidence is, without being influenced or

3  having the lens within which you look at the evidence be

4  influenced in any way by your personal advocacy or the advocacy

5  you have at work.

6          Can you do that?

7          THE PROSPECTIVE JUROR:  Um, I think it would be a

8  little difficult, but, you know, if called to the jury, I

9  would, obviously, try my best.  But, obviously, that -- those

10 views are very intrinsic to me, my worldview.

11         THE COURT:  Okay.  The next one is whether you've --

12 you or somebody close to you has participated in protests,

13 march, or rallies.  You mentioned Women's March.

14         Is that something apart from your work that you

15 attended yourself?

16         THE PROSPECTIVE JUROR:  Yeah.  I attended the first

17 ones, and I didn't attend the ones after *Roe v. Wade* was

18 overturned because I was actually working them.  So I was

19 working them from, like, running the social media while it was

20 going on.  I did participate in, like, going to the Supreme

21 Court last -- what was it, June?

22         THE COURT:  Okay.  So you did not go?

23         THE PROSPECTIVE JUROR:  I didn't go to the Women's

24 March, but there was just, like -- I don't know if it was

25 planned.  But there was just, like, people outside the Supreme

1     Court, and I went.

2              THE COURT:  Well, obviously, it's going to be very

3     important in terms of -- as part of being fair and impartial is

4     to make sure that, you know, that you're not influenced in

5     considering the evidence, and there's no right or wrong answer

6     to these.  This is wanting you to give us your honest views of

7     what you're capable of, as to whether or not you could look at

8     the evidence, listen to my instructions, apply them, and

9     consider whether or not the government will have proven beyond

10    a reasonable doubt the charges against each of the defendants

11    without being influenced, without considering your separate

12    views which are contrary to what the views are of the

13    defendants in terms of their actions.

14              Can you do that or not?

15              THE PROSPECTIVE JUROR:  I think it would be hard.

16    But, like I said, like, obviously, this is an important civic

17    duty.  So, like, I would try my best, but, like, I do think it

18    would be difficult to do that.

19              THE COURT:  Okay.  You've also indicated that you

20    have a pressing commitment that would make sitting on this jury

21    difficult.  What is it?

22              THE PROSPECTIVE JUROR:  I am leaving the country for

23    two weeks on the 22nd; the evening of the 22nd.

24              THE COURT:  On August 22nd?

25              THE PROSPECTIVE JUROR:  Correct.

```
 1                    THE COURT:  Where are you going?

 2                    THE PROSPECTIVE JUROR:  I am going to Ireland and

 3      Portugal and returning on the 6th of September.

 4                    THE COURT:  Is this a vacation or work or what?

 5                    THE PROSPECTIVE JUROR:  It's a long-planned vacation.

 6                    THE COURT:  Is this something that you can push back

 7      to a later time or not?

 8                    THE PROSPECTIVE JUROR:  I do not think that I can.

 9                    THE COURT:  Is that because of the plans you've made

10      or work things, or what's the reason for not being able to?

11                    THE PROSPECTIVE JUROR:  Because of the specific

12      plans, attending an event on the 24th and the 28th, but also

13      monetarily might be difficult.

14                    THE COURT:  Okay.  In terms of airlines, the Court

15      can write to make sure that they -- even if it's nonrefundable,

16      that they don't penalize you for it.  Obviously, we can't -- we

17      wouldn't have any influence on other more private enterprises

18      within Ireland or wherever you're going.

19                    All right.  Questions?

20                    MR. CRABB:  No, Your Honor.

21                    THE COURT:  Any questions?

22                    MR. WALSH:   No, Your Honor.

23                    THE COURT:  All right.  You can step down.  Thank

24      you.

25                    THE PROSPECTIVE JUROR:  Thank you.
```

1           (Prospective juror exited the courtroom.)

2           MR. WALSH:   Move to strike.

3           THE COURT:  Any objection?

4           MR. CRABB:  No objection, Your Honor.

5           THE COURT:  All right.  Then I'm excusing this juror.

6    Do we have another one?

7           (Prospective juror entered the courtroom.)

8           THE COURT:  If you would step up over here, please.

9           (Prospective juror was sworn.)

10          THE COURT:  All right.  You can move the chair up and

11   down, so make yourself comfortable.

12          THE PROSPECTIVE JUROR:  Thank you.

13          THE COURT:  You need to move the microphone up and

14   make sure you speak into it.  If you can take your mask off;

15   otherwise, it's hard to hear.

16          This is Juror No. 0543.  It's 22, 25, 26, and 28.  So

17   22 is whether you or somebody close to you has ever

18   participated in a protest, march, rally regarding reproductive

19   health care.

20          Is that you or somebody else?

21          THE PROSPECTIVE JUROR:  That's me.

22          THE COURT:  All right.  And what march or rally or

23   protest did you attend?

24          THE PROSPECTIVE JUROR:  I participated in the Women's

25   March here in D.C. and then several smaller marches around

 1    reproductive rights.

 2              THE COURT:  You have to speak up.

 3              THE PROSPECTIVE JUROR:  Sorry.  I participated here

 4    in the Women's March here in D.C. and then have been around

 5    several of the smaller marches because I live here.

 6              THE COURT:  Okay.  Now, the Women's March has several

 7    issues, including reproductive rights.

 8              And you did specify that you attended others that

 9    were focused on reproductive rights; is that correct?

10              THE PROSPECTIVE JUROR:  Correct.

11              THE COURT:  So let me just look at something.

12    Obviously, in terms of -- if you're going to protests or

13    rallies or marches on reproductive rights, is it in the context

14    of access to reproductive rights or some other right?

15              THE PROSPECTIVE JUROR:  It's about women's access to

16    reproductive rights.

17              THE COURT:  Okay.  So, obviously, you feel strongly

18    enough that you have agreed and have participated in these

19    rallies and marches.

20              So my question is whether your views relating to

21    access to reproductive rights, whether you can separate those

22    out from the evidence in this case.  In other words, evidence

23    is going to be presented, I will provide you with the law which

24    you apply, and you will decide to credit, not credit, whatever

25    the evidence is, and determine whether or not the government

1    has proven beyond a reasonable doubt the elements of each of

2    the offenses against each of the defendants.

3            And, generally speaking, what you would be doing is

4    you'd be deciding whether each of the defendants acted with

5    requisite intent, the intent that's required, to obstruct

6    access to reproductive health services broadly, but not

7    necessarily only abortion and at this particular clinic.  So

8    that gives you, sort of, the overview of it.

9            So back to my question.  We, obviously, want you to

10   make a decision and not be influenced by your personal views on

11   this particular issue.  Can you do that or not?

12           THE PROSPECTIVE JUROR:  An honest answer is I'm not

13   sure.

14           THE COURT:  I'm sorry?

15           THE PROSPECTIVE JUROR:  I'm not sure.  I'd like to

16   think that I could, but I -- I'm not sure.  That's the honest

17   answer.

18           THE COURT:  You've been a juror before; is that

19   correct?

20           THE PROSPECTIVE JUROR:  Yes.

21           THE COURT:  And how many times?

22           THE PROSPECTIVE JUROR:  I have served on two

23   different juries.  Once I was an alternate, and once I was a

24   juror.

25           THE COURT:  So on the one that you actually

1    deliberated and made a decision, was that in federal court or

2    local court?

3            THE PROSPECTIVE JUROR:  It was in local court.

4            THE COURT:  Okay.  Were you the foreperson?

5            THE PROSPECTIVE JUROR:  I was -- I'm sorry.  Ask the

6    question.

7            THE COURT:  Were you the foreperson?

8            THE PROSPECTIVE JUROR:  No, I wasn't.

9            THE COURT:  Without telling us the verdict, was the

10   jury actually able to reach a verdict?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  And the -- do you remember what the

13   charge was?

14           THE PROSPECTIVE JUROR:  Not specifically.  This was

15   probably over ten years ago.

16           THE COURT:  Okay.  Generally speaking, what type of

17   case was it?

18           THE PROSPECTIVE JUROR:  It was about liability in a

19   car accident.

20           THE COURT:  Oh, okay.  So it was a civil suit, not a

21   criminal?

22           THE PROSPECTIVE JUROR:  Yes.

23           THE COURT:  All right.  Anything about that

24   experience as a juror that you think would affect your

25   consideration of the evidence in this case?

```
 1                   THE PROSPECTIVE JUROR:  No.

 2                   THE COURT:  So you've been a juror and you've had

 3       to -- although not in a criminal case -- had to listen to the

 4       evidence, consider the evidence and make some decisions in

 5       terms of what you credit, what you don't credit, et cetera.

 6                   So knowing that that would be your role in this case,

 7       can you be a little more specific about whether you think you

 8       can be fair and impartial to both sides, which would mean not

 9       allowing your personal views to influence you in any way?

10                   THE PROSPECTIVE JUROR:  Again, I'd like to say I

11       would be able to consider the evidence as presented and to

12       weigh that in.  I would like to think I could do that.

13                   THE COURT:  Do you think you can?

14                   THE PROSPECTIVE JUROR:  I know.  I --

15                   THE COURT:  There's no right or wrong answer.  We

16       just need an honest answer from you as to whether you think you

17       can do it or you have a question about whether you actually

18       can.

19                   THE PROSPECTIVE JUROR:  Again, it comes back to the

20       question before.  I'd like to think that I could keep my

21       personal opinions out of it, but I do have personal opinions.

22                   THE COURT:  Okay.  So can I interpret the answer that

23       you're --

24                   THE PROSPECTIVE JUROR:  Yes.

25                   THE COURT:  You're not telling us that you actually
```

1    could keep your personal views from influencing; is that --

2              THE PROSPECTIVE JUROR:  In an attempt to be honest,

3    yeah.  I don't want to say something that I'm not sure about.

4              THE COURT:  And that's what we want.  As I said,

5    there's no right or wrong.

6              THE PROSPECTIVE JUROR:  Okay.

7              THE COURT:  You also indicated that you had some

8    pressing commitment.  Can you tell us what it is.

9              THE PROSPECTIVE JUROR:  Yes.  I have a plane ticket

10   that is bought and paid for, along with the hotel, for a trip

11   from Friday, the 18th, through the 21st.  They're

12   nonrefundable.

13             THE COURT:  Through the 21st.  Okay.  Questions?

14             MR. PATEL:  Good afternoon.  So I sensed some

15   hesitation when you were asked the question about whether or

16   not you can set aside your beliefs and be fair and impartial in

17   this case.

18             I wanted to talk about that a little bit more.  You

19   understand that this case involves allegations that individuals

20   obstructed access to a reproductive health care clinic, right?

21             THE PROSPECTIVE JUROR:  Yes.

22             MR. PATEL:  You also understand that those who are

23   accused in this case are presumed innocent?

24             THE PROSPECTIVE JUROR:  Yes.

25             MR. PATEL:  And it's the government's burden to prove

1    beyond a reasonable doubt that the defendants did what they

2    were accused of?

3               THE PROSPECTIVE JUROR:  Yes.

4               MR. PATEL:  And relying, in part, upon your prior

5    service in a jury, although it was civil, you understand that

6    your job is to be impartial, set your beliefs aside, and just

7    follow the instructions that the Court gives you, correct?

8               THE PROSPECTIVE JUROR:  Yes.

9               MR. PATEL:  And that you would be fair when you're

10   assessing the evidence, right?

11              THE PROSPECTIVE JUROR:  Yes.

12              MR. PATEL:  Okay.  Do you think you could do that in

13   this case, follow the judge's instructions, be fair when you're

14   reviewing the evidence, and see whether or not the government

15   has proved their burden beyond a reasonable doubt?

16              MR. KIYONAGA:  Objection, Your Honor.  Asked and

17   answered.

18              MR. DUNN:  Twice.

19              THE COURT:  I think he asked it -- prior service and

20   he said follow -- but he didn't ask the final question.  I'll

21   allow this one.  This is the answer.

22              THE PROSPECTIVE JUROR:  My personal beliefs have

23   influenced me to take action in this area of topic before.  I

24   don't know how that would play out in this situation, and that

25   is my honest answer.

1                MR. PATEL:  Okay.  Thank you.

2                THE COURT:  Okay.  Any other questions?

3                MR. DUNN:  Thank you for your honest answers.

4                THE COURT:  You're excused.  You can step down.

5      Thank you.

6                (Prospective juror exited the courtroom.)

7                THE COURT:  I assume we're excusing this individual?

8                MR. WALSH:  Move to strike.

9                THE COURT:  Any objection?

10               MR. PATEL:  Objection.

11               THE COURT:  You're objecting?

12               MR. PATEL:  I'll withdraw it, Judge.

13               THE COURT:  Sorry.  All right.  I will excuse her.  I

14     think her answers are not sufficient to indicate she couldn't

15     separate the two things out.

16               Counsel, you know, there's no reason to hop up and

17     give your personal opinion and thanks.  I don't have a problem

18     with your congratulating somebody for serving our country.  We

19     all agree with that.

20               I do think to pop up and indicate the honesty as if

21     the rest of the jurors have not been, I would ask that you

22     restrain yourself.  It really would be helpful.

23               All right.  We're going to stop at this point because

24     I need to move on to my other four co-defendants.  I would ask

25     that you -- we're going to hand out the manila envelopes so you

```
1    can put your -- all of your jury lists in there.
2              MR. DUNN:  Judge?
3              THE COURT:  Yes.
4              MR. DUNN:  Was that last comment directed at me?
5              THE COURT:  Yes.  It's -- you popped up in terms
6    of --
7              MR. DUNN:  I was just responding to the witness that
8    said she was being honest.
9              THE COURT:  All of them, presumably, have been
10   honest.  I'm not going to assume that anybody wasn't.  But I
11   think you went out of your way to do it for your own reasons,
12   and I would suggest that we don't need to do this.  I don't
13   mind about the military, but I've suggested to you that
14   extraneous comments are not appropriate.  Okay?
15             I would ask that you not do it in the future.  It's
16   as if she's honest and nobody else was.
17             Okay.  So come back on Monday at 8:45 so we can start
18   at 9:00 a.m.
19                  (The trial adjourned at 4:00 p.m.)
20
21
22
23
24
25
```

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, TAMARA M. SEFRANEK, do hereby certify that the

4    above and foregoing constitutes a true and accurate transcript

5    of my stenographic notes and is a full, true, and complete

6    transcript of the proceedings to the best of my ability.

7               Dated this 12th day of August, 2023.

8

9                    /s/ Tamara M. Sefranek_____
                     Tamara M. Sefranek, RMR, CRR, CRC
10                   Official Court Reporter
                     Room 6714
11                   333 Constitution Avenue, N.W.
                     Washington, D.C.  20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'70s** [1] - 56:16

**/**

**/s** [1] - 96:9

**0**

**0543** [1] - 87:16
**0584** [1] - 25:9
**0980** [1] - 45:17

**1**

**1** [1] - 25:14
**1050** [1] - 1:24
**11** [1] - 1:6
**12** [1] - 22:5
**12th** [1] - 96:7
**13** [6] - 22:5, 45:17, 47:18, 47:25, 78:3, 78:5
**1350** [1] - 2:3
**1393** [1] - 78:3
**14** [2] - 63:21, 63:22
**1412** [1] - 63:21
**1413** [1] - 2:6
**15** [1] - 22:5
**1500** [1] - 60:20
**16** [3] - 45:18, 47:18, 50:23
**1686** [1] - 3:13
**16983** [1] - 1:18
**16th** [1] - 80:13
**17** [11] - 3:13, 3:14, 45:18, 47:18, 51:12, 60:21, 63:21, 64:13, 78:3, 79:7
**18th** [1] - 92:11
**19** [1] - 22:5
**1962** [1] - 47:18
**1983** [1] - 64:4
**1985** [1] - 64:4
**1986** [1] - 76:2
**1:22-CR-096** [1] - 1:3
**1:35** [1] - 1:6

**2**

**20** [3] - 22:5, 74:11, 78:20
**20-year** [1] - 73:3
**20001** [2] - 2:23, 96:11
**20004** [1] - 1:16
**20036** [2] - 1:25, 2:4
**2013** [1] - 27:15
**2016** [3] - 32:3, 40:8, 40:11

**2017** [3] - 6:4, 52:22, 56:2
**202-354-3246** [1] - 2:23
**2022** [1] - 66:2
**2023** [2] - 1:6, 96:7
**20530** [1] - 1:13
**20815** [1] - 2:9
**21** [10] - 3:13, 4:9, 45:18, 47:18, 52:5, 63:21, 65:14, 75:18, 82:4, 82:6
**21st** [6] - 7:2, 7:7, 8:21, 92:11, 92:13
**22** [8] - 3:13, 5:21, 47:19, 63:21, 66:19, 82:4, 87:16, 87:17
**22314** [1] - 2:11
**22nd** [3] - 85:23, 85:24
**23** [2] - 22:5, 45:18
**24th** [1] - 86:12
**25** [5] - 22:5, 63:21, 67:17, 76:3, 87:16
**26** [1] - 87:16
**27** [1] - 22:6
**270** [1] - 9:11
**28** [8] - 3:14, 6:23, 22:6, 45:18, 78:4, 80:3, 82:5, 87:16
**28th** [1] - 86:12
**29** [1] - 22:6
**293** [1] - 82:4

**3**

**3** [3] - 22:5, 22:6, 22:23
**30** [2] - 61:24, 78:20
**308** [1] - 2:4
**30th** [4] - 7:3, 7:10, 7:22, 8:22
**31** [2] - 22:6, 64:21
**32** [1] - 45:18
**333** [2] - 2:22, 96:11
**34** [2] - 3:14, 47:19
**36** [3] - 47:19, 54:8
**370th** [1] - 1:18
**3712** [1] - 2:8
**38803** [1] - 1:21
**3:25** [1] - 75:14

**4**

**4** [8] - 22:5, 22:7, 22:8, 22:12, 25:21, 25:23, 45:17, 45:19
**40** [1] - 61:25
**4506** [1] - 1:21
**48708** [1] - 2:7
**4:00** [3] - 37:21, 75:14,

95:19
**4:30** [1] - 37:21

**5**

**500** [1] - 1:24
**51525** [1] - 1:19
**5:00** [1] - 37:20

**6**

**600** [1] - 2:10
**601** [1] - 1:13
**6714** [2] - 2:22, 96:10
**6A** [1] - 45:17
**6B** [1] - 45:17
**6th** [1] - 86:3

**8**

**8:45** [1] - 95:17

**9**

**9** [1] - 45:17
**950** [1] - 1:16
**9:00** [2] - 37:19, 95:18

**A**

**a.m** [1] - 95:18
**ability** [5] - 21:3, 21:7, 28:17, 44:6, 96:6
**able** [42] - 5:15, 13:6, 15:12, 17:20, 20:21, 21:2, 23:13, 23:17, 23:20, 28:21, 29:7, 31:15, 32:7, 34:24, 37:7, 37:24, 38:1, 38:19, 38:22, 39:7, 39:10, 39:22, 40:25, 41:11, 41:16, 41:20, 42:20, 54:14, 54:20, 54:22, 57:9, 57:16, 66:11, 70:4, 72:7, 72:8, 76:18, 81:5, 81:6, 86:10, 90:10, 91:11
**Abortion** [1] - 82:25
**abortion** [21] - 11:14, 11:21, 13:1, 13:16, 16:23, 18:4, 18:8, 28:8, 28:9, 28:11, 28:16, 52:9, 58:8, 58:13, 59:4, 59:5, 65:18, 82:10, 82:13, 82:14, 89:7
**abortions** [4] - 4:13, 17:7, 67:5, 83:19
**absolute** [1] - 21:6

**absolutely** [3] - 29:19, 40:20, 72:6
**absorb** [1] - 42:14
**accept** [2] - 29:24, 59:22
**access** [20] - 6:7, 6:14, 11:10, 11:16, 12:5, 13:15, 43:19, 44:7, 54:4, 57:25, 67:4, 70:6, 83:17, 83:19, 83:24, 88:14, 88:15, 88:21, 89:6, 92:20
**accident** [1] - 90:19
**accommodations** [1] - 8:5
**accurate** [2] - 30:23, 96:4
**accusation** [1] - 43:17
**accused** [12] - 42:4, 43:25, 44:7, 57:24, 70:5, 70:6, 71:8, 72:9, 92:23, 93:2
**acknowledge** [1] - 72:4
**acknowledging** [2] - 13:19, 13:25
**ACLU** [1] - 83:7
**acquisitions** [1] - 79:22
**Act** [2] - 46:2, 46:9
**act** [3] - 13:2, 20:24, 48:23
**acted** [3] - 13:14, 14:7, 89:4
**acting** [2] - 12:4, 45:25
**Action** [2] - 1:2, 82:24
**action** [2] - 12:14, 93:23
**actions** [1] - 85:13
**active** [1] - 71:6
**actively** [1] - 18:8
**activism** [1] - 70:4
**activist** [1] - 71:9
**activists** [3] - 13:2, 18:21, 59:5
**activities** [2] - 5:4, 66:4
**adamant** [2] - 73:20, 75:2
**addition** [2] - 46:21, 64:17
**additional** [1] - 60:6
**addressed** [2] - 38:20, 39:8
**adjourned** [1] - 95:19
**admit** [1] - 18:19
**admitting** [1] - 13:23
**advocacy** [3] - 53:9, 66:9, 72:16, 72:20,

73:16, 74:22, 82:16, 84:4
**advocates** [4] - 4:11, 52:7, 65:16, 82:8
**Affairs** [1] - 68:25
**affect** [8] - 5:11, 12:4, 33:4, 33:18, 44:6, 50:17, 77:5, 90:24
**affected** [2] - 18:20, 59:9
**AFTERNOON** [2] - 1:7, 1:8
**afternoon** [17] - 3:4, 18:1, 18:2, 37:20, 37:22, 38:10, 38:11, 45:13, 55:24, 55:25, 58:7, 62:10, 68:20, 69:14, 72:23, 75:20, 92:14
**agency** [2] - 49:19, 49:24
**agenda** [2] - 53:11, 56:5
**ago** [5] - 5:2, 32:2, 67:19, 76:13, 90:15
**agree** [5] - 11:20, 11:22, 11:23, 56:5, 94:19
**agreed** [1] - 88:18
**ahead** [3] - 70:21, 74:7, 75:23
**airlines** [1] - 86:14
**Alexandria** [1] - 2:11
**ALFRED** [1] - 2:2
**Alfred** [1] - 2:3
**alive** [1] - 51:24
**allegations** [1] - 92:19
**alleged** [2] - 57:24
**allow** [1] - 93:21
**allowing** [1] - 91:9
**alternate** [2] - 32:10, 89:23
**AMERICA** [1] - 1:2
**analysis** [4] - 21:4, 72:16, 72:20, 73:16
**analyst** [1] - 72:12
**analytical** [2] - 62:19, 74:23
**annoyed** [1] - 73:23
**answer** [26] - 4:17, 9:9, 16:5, 21:10, 39:3, 39:5, 39:10, 39:12, 45:2, 45:7, 53:14, 56:1, 59:11, 59:18, 59:21, 61:21, 72:14, 73:16, 85:5, 89:12, 89:17, 91:15, 91:16, 91:22, 93:21, 93:25
**answered** [3] - 17:24,

46:10, 93:17
**answers** [8] - 44:21, 44:25, 60:4, 73:15, 75:4, 82:2, 94:3, 94:14
**antitrust** [1] - 79:21
**apart** [1] - 84:14
**apologize** [2] - 22:19, 44:4
**appalled** [1] - 27:8
**appear** [1] - 63:12
**applicable** [1] - 62:19
**apply** [5] - 39:24, 41:17, 51:6, 85:8, 88:24
**applying** [1] - 28:22
**appointments** [1] - 41:4
**approach** [1] - 16:7
**appropriate** [5] - 14:13, 16:13, 19:14, 71:14, 95:14
**approval** [1] - 46:15
**approved** [2] - 46:12, 46:16
**approves** [1] - 58:23
**area** [2] - 11:8, 93:23
**argue** [1] - 59:10
**argument** [1] - 74:15
**arguments** [1] - 22:24
**Arnold** [1] - 64:21
**arrangements** [4] - 38:19, 38:23, 39:7, 39:11
**arrive** [1] - 8:2
**article** [1] - 26:1
**aside** [11] - 5:16, 6:17, 13:21, 21:3, 34:23, 41:12, 41:21, 41:23, 42:20, 92:16, 93:6
**aspect** [3] - 4:12, 52:8, 65:17
**aspects** [1] - 52:25
**assault** [2] - 33:14, 68:17
**assert** [1] - 43:15
**assess** [2] - 41:12, 41:23
**assessing** [2] - 41:22, 93:10
**assigned** [1] - 78:15
**assignment** [1] - 78:15
**Assistant** [1] - 46:16
**Associate** [1] - 45:25
**associate** [2] - 34:18, 36:4
**associated** [2] - 65:22, 80:15
**assume** [8] - 10:12,

26:7, 36:21, 37:18, 63:11, 75:9, 94:7, 95:10
**assuming** [6] - 9:12, 21:17, 71:16, 73:8, 77:17
**assumptions** [1] - 31:14
**assurances** [1] - 74:8
**assure** [1] - 20:20
**attach** [1] - 18:15
**attempt** [1] - 92:2
**attend** [5] - 32:13, 34:7, 35:13, 84:17, 87:23
**attended** [5] - 27:11, 84:15, 84:16, 88:8
**attending** [1] - 86:12
**attention** [8] - 8:17, 8:24, 9:5, 36:5, 36:7, 36:13, 54:10, 73:19
**attorney** [13] - 30:11, 46:19, 48:8, 48:11, 50:24, 60:24, 60:25, 61:11, 61:13, 79:10, 79:13, 79:14, 79:22
**Attorney** [5] - 45:25, 46:1, 46:15, 46:16, 46:17
**Attorney's** [2] - 1:12, 46:21
**attorneys** [1] - 48:23
**audit** [1] - 55:4
**auditors** [2] - 50:1, 55:3
**August** [9] - 1:6, 7:2, 7:3, 7:10, 7:22, 8:22, 54:19, 85:24, 96:7
**Avenue** [6] - 1:16, 1:24, 2:3, 2:6, 2:22, 96:11
**avoid** [2] - 62:4, 62:7
**aware** [4] - 24:10, 56:15, 71:23

**B**

**backup** [1] - 54:20
**bad** [2] - 11:19, 17:7
**Baltimore** [1] - 64:4
**banking** [1] - 64:25
**bankruptcy** [1] - 52:1
**bar** [4] - 26:3, 26:5, 26:8, 26:9
**based** [9] - 9:18, 15:21, 16:22, 17:15, 19:8, 23:14, 23:15, 26:22, 28:22, 29:25, 30:2, 31:14, 43:12, 66:16, 81:20, 84:2

**basis** [2] - 21:17, 28:20
**battle** [1] - 34:8
**Bay** [1] - 2:7
**becomes** [1] - 60:5
**BEFORE** [1] - 1:9
**beginning** [2] - 73:4, 74:16
**behalf** [2] - 13:23, 83:6
**behavior** [1] - 16:6
**belief** [10] - 18:3, 23:20, 28:14, 29:6, 29:25, 39:17, 43:3, 43:8, 43:14, 43:16
**beliefs** [21] - 28:1, 41:7, 41:20, 41:23, 42:20, 43:7, 43:15, 43:22, 44:1, 44:5, 53:12, 53:16, 53:17, 53:25, 54:1, 54:3, 57:2, 57:5, 92:16, 93:6, 93:22
**believes** [4] - 57:10, 57:11, 57:13
**belong** [1] - 4:10
**belonged** [1] - 65:15
**belongs** [2] - 52:6, 82:6
**best** [3] - 84:9, 85:17, 96:6
**between** [3] - 72:16, 72:20, 74:22
**beyond** [14] - 15:14, 23:3, 23:4, 23:9, 29:12, 42:5, 42:16, 42:23, 67:14, 78:7, 85:9, 89:1, 93:1, 93:15
**bias** [2] - 19:5, 20:21
**biased** [1] - 63:3
**bit** [3] - 13:4, 33:6, 92:18
**Black** [1] - 70:20
**BLERINA** [1] - 1:23
**blocking** [2] - 57:25, 70:6
**Board** [2] - 64:22
**body** [2] - 57:9, 57:17
**bond** [1] - 55:12
**bonds** [1] - 55:14
**booked** [1] - 8:5
**bookers** [1] - 8:7
**borne** [1] - 20:22
**Boston** [1] - 61:17
**bother** [1] - 15:8
**bought** [1] - 92:10
**Box** [1] - 1:21
**box** [2] - 60:11, 77:21
**BOYLE** [1] - 1:22

**Boyle** [1] - 1:23
**break** [5] - 37:21, 37:22, 73:25, 75:12
**brief** [2] - 24:6, 73:25
**briefed** [2] - 46:2, 46:9
**bring** [1] - 54:9
**broad** [5] - 6:6, 7:15, 12:9, 12:10, 61:19
**broadly** [3] - 11:6, 13:15, 89:6
**Brooklyn** [3] - 50:5, 50:6, 50:9
**building** [2] - 14:8, 43:15
**bunch** [1] - 48:2
**burden** [7] - 29:12, 42:5, 42:11, 42:15, 42:21, 92:25, 93:15
**business** [1] - 7:15
**buttons** [1] - 37:14

**C**

**calibrated** [1] - 62:20
**Cameron** [1] - 2:10
**camp** [3] - 57:6, 57:7, 57:8
**CANNON** [38] - 1:17, 4:5, 7:5, 7:25, 9:24, 10:6, 10:12, 10:16, 10:23, 11:3, 11:9, 11:12, 11:19, 11:24, 12:2, 12:7, 12:10, 12:13, 12:23, 13:19, 13:25, 14:23, 15:7, 15:18, 15:24, 18:12, 23:25, 24:13, 24:22, 26:4, 39:2, 39:5, 44:12, 44:17, 47:2, 73:25, 79:17, 81:16
**cases** [21] - 3:23, 8:14, 27:18, 46:3, 46:9, 48:16, 48:18, 50:14, 61:19, 62:2, 68:5, 68:8, 68:9, 68:15, 72:25, 76:15, 76:18, 76:21, 77:4, 78:22
**catchall** [1] - 47:22
**Center** [1] - 2:6
**ceramics** [1] - 62:18
**certain** [8] - 13:24, 13:25, 14:1, 14:7, 45:2, 59:2, 72:10, 74:25
**certainly** [4] - 12:19, 36:11, 38:5, 75:9
**CERTIFICATE** [1] - 96:1
**certify** [1] - 96:3
**cetera** [1] - 91:5
**chair** [11] - 3:9, 22:2, 25:4, 45:14, 47:14, 60:16, 63:17, 75:24, 77:23, 81:24, 87:10
**challenge** [1] - 38:8

37:16
**carry** [2] - 12:14, 23:7
**Carson** [1] - 1:19
**case** [97] - 5:12, 8:3, 12:15, 14:2, 15:7, 15:14, 16:11, 16:20, 17:8, 17:13, 17:18, 19:3, 19:16, 22:8, 22:9, 22:11, 22:13, 22:21, 23:3, 23:4, 23:17, 23:21, 25:15, 25:20, 26:3, 26:22, 27:14, 27:21, 27:22, 28:2, 28:8, 28:18, 31:3, 33:5, 33:8, 33:9, 34:7, 38:15, 41:13, 41:18, 42:1, 42:5, 42:9, 43:7, 43:10, 43:12, 43:18, 44:6, 44:24, 45:20, 45:21, 46:4, 46:8, 48:23, 50:18, 50:25, 53:6, 54:5, 55:17, 55:18, 55:21, 58:15, 58:21, 64:11, 65:12, 66:11, 66:13, 66:17, 67:11, 67:14, 68:18, 69:2, 69:4, 69:7, 70:5, 72:9, 74:13, 77:1, 77:6, 80:8, 80:20, 80:21, 80:24, 81:1, 83:24, 84:1, 88:22, 90:17, 90:25, 91:3, 91:6, 92:17, 92:19, 92:23, 93:13
**capable** [2] - 71:7, 85:7
**Cape** [2] - 7:4, 7:6
**car** [2] - 68:18, 90:19
**card** [2] - 25:10, 25:11
**Cardiff** [1] - 2:8
**care** [23] - 4:12, 6:7, 6:14, 11:10, 28:15, 29:7, 34:11, 41:7, 43:19, 44:8, 52:8, 54:13, 54:19, 54:20, 65:17, 66:16, 67:4, 70:7, 82:9, 83:18, 83:24, 87:19, 92:20
**career** [1] - 61:24
**careful** [2] - 60:2, 60:8
**caretaker** [1] - 36:19
**caretaking** [2] - 37:11,

**challenged** [2] - 43:6, 43:9
**challenging** [2] - 7:20, 43:3
**change** [1] - 38:7
**chapter** [1] - 34:2
**charge** [3] - 33:10, 76:23, 90:13
**charges** [12] - 16:11, 16:12, 23:1, 33:21, 46:13, 68:10, 68:11, 68:14, 68:16, 76:20, 77:1, 85:10
**Chase** [1] - 2:9
**check** [1] - 8:5
**Chevy** [1] - 2:9
**child** [2] - 54:13, 54:18
**choice** [4] - 6:5, 10:18, 10:19, 43:15
**choose** [3] - 8:15, 29:7, 57:16
**circle** [1] - 41:5
**circumstances** [1] - 33:8
**City** [3] - 2:7, 7:3, 67:25
**civic** [1] - 85:16
**civil** [7] - 46:17, 48:18, 68:13, 80:20, 80:21, 90:20, 93:5
**Civil** [5] - 1:15, 46:1, 46:5, 46:20, 46:22
**civilian** [1] - 79:3
**claims** [1] - 63:3
**cleaning** [1] - 37:16
**clear** [3] - 15:4, 31:16, 39:14
**clearly** [2] - 54:17, 74:22
**clerk** [3] - 50:10, 50:11, 64:3
**clerked** [3] - 48:9, 50:6, 64:18
**clerking** [1] - 51:4
**client** [4] - 13:24, 14:6, 80:25, 81:5
**clinic** [6] - 13:3, 13:17, 16:8, 44:8, 89:7, 92:20
**clinics** [1] - 28:10
**close** [25] - 3:15, 4:10, 5:21, 16:22, 16:25, 17:14, 17:17, 17:18, 17:23, 17:25, 48:1, 50:23, 51:12, 52:6, 52:18, 60:21, 63:22, 64:13, 65:15, 66:20, 78:5, 79:8, 82:6, 84:12, 87:17
**closely** [1] - 18:16

**closer** [1] - 12:24
**clothing** [1] - 37:14
**co** [1] - 94:24
**co-defendants** [1] - 94:24
**Cod** [2] - 7:4, 7:6
**COLLEEN** [1] - 1:9
**College** [1] - 35:18
**COLUMBIA** [1] - 1:1
**combination** [5] - 48:19, 53:21, 53:22, 53:24, 66:22
**combine** [1] - 27:9
**combining** [1] - 8:25
**comfortable** [5] - 3:7, 3:10, 60:15, 63:17, 87:11
**coming** [3] - 8:9, 13:7, 80:7
**comment** [1] - 95:4
**comments** [1] - 95:14
**commitment** [4] - 6:24, 80:4, 85:20, 92:8
**commits** [2] - 43:23, 43:24
**committed** [2] - 42:4, 44:2
**committing** [1] - 44:1
**commonly** [1] - 62:19
**communities** [1] - 43:5
**company** [1] - 7:15
**complete** [2] - 34:2, 96:5
**completely** [3] - 36:24, 36:25, 42:11
**concepts** [1] - 31:8
**concern** [5] - 35:10, 35:20, 36:1, 36:2, 36:11
**concerned** [3] - 34:25, 35:5, 36:7
**concerns** [2] - 29:3, 31:11
**conclude** [2] - 20:17, 20:18
**conclusion** [3] - 20:4, 45:5, 75:2
**conduct** [13] - 13:24, 18:21, 19:17, 19:22, 19:23, 19:24, 20:17, 21:4, 59:5, 71:8, 72:10
**confidence** [2] - 20:20, 21:6
**confident** [4] - 21:1, 59:8, 67:10, 67:15
**confidentiality** [1] - 80:18

**confirm** [1] - 9:18
**conformity** [1] - 21:4
**congratulating** [1] - 94:18
**Connecticut** [2] - 1:24, 2:3
**connecting** [2] - 27:21, 27:23
**conscious** [1] - 20:21
**consider** [5] - 28:25, 31:13, 85:9, 91:4, 91:11
**consideration** [6] - 5:12, 33:4, 50:17, 59:4, 77:5, 90:25
**considering** [4] - 12:20, 73:2, 85:5, 85:11
**constantly** [1] - 45:1
**constitutes** [1] - 96:4
**Constitution** [2] - 2:22, 96:11
**consulting** [2] - 82:15, 83:5
**Cont** [1] - 2:1
**contact** [1] - 69:3
**content** [1] - 83:12
**context** [2] - 19:3, 88:13
**contingencies** [1] - 40:24
**continue** [1] - 34:7
**continued** [1] - 55:12
**continuing** [1] - 73:17
**contraceptive** [1] - 27:18
**contrary** [1] - 85:12
**contribute** [2] - 4:10, 83:4
**contributed** [2] - 65:16, 83:3
**contributes** [3] - 52:6, 74:25, 82:7
**contributing** [1] - 74:10
**contributions** [1] - 82:13
**control** [1] - 70:19
**controlled** [1] - 36:16
**conversation** [1] - 16:8
**conversations** [3] - 26:3, 26:5, 26:6
**conviction** [1] - 18:5
**convictions** [2] - 21:3, 59:3
**convince** [1] - 16:9
**core** [2] - 43:14, 43:16
**corporations** [1] - 55:4

**correct** [34] - 5:8, 5:9, 5:17, 7:11, 18:5, 18:6, 28:2, 31:18, 32:24, 33:1, 33:2, 34:11, 34:12, 36:22, 38:16, 46:6, 46:25, 49:4, 49:20, 51:14, 56:12, 56:13, 58:8, 62:14, 67:17, 71:3, 71:4, 71:18, 76:4, 85:25, 88:9, 88:10, 89:19, 93:7
**correctly** [2] - 41:10, 62:12, 71:10
**counsel** [7] - 9:23, 31:2, 38:9, 59:17, 62:3, 77:10, 94:16
**Counsel** [2] - 54:25, 58:16
**count** [2] - 8:16, 9:4
**country** [2] - 85:22, 94:18
**couple** [3] - 15:1, 28:5, 58:16
**course** [4] - 13:1, 14:25, 16:8, 71:25
**COURT** [368] - 1:1, 3:2, 3:6, 3:9, 3:18, 3:20, 3:22, 4:1, 4:6, 4:9, 4:20, 4:24, 5:3, 5:6, 5:10, 5:14, 5:19, 6:1, 6:6, 6:12, 6:20, 6:23, 7:7, 7:10, 7:12, 7:16, 7:21, 7:24, 8:2, 8:8, 8:11, 8:13, 9:12, 9:15, 9:20, 9:23, 10:9, 12:9, 12:11, 12:16, 13:7, 13:11, 13:23, 14:10, 14:15, 15:13, 16:4, 16:10, 16:16, 16:18, 17:4, 17:10, 17:13, 17:24, 19:2, 19:14, 20:7, 21:10, 21:13, 21:17, 21:20, 21:23, 22:2, 22:12, 22:18, 22:20, 22:23, 23:14, 23:19, 23:24, 24:8, 24:11, 24:14, 24:21, 24:23, 24:25, 25:4, 25:9, 25:13, 25:18, 25:20, 25:23, 26:5, 26:7, 26:10, 26:15, 26:21, 27:1, 27:4, 27:9, 27:20, 27:25, 28:4, 29:2, 29:11, 29:17, 30:6, 30:11, 30:14, 30:19, 30:22, 30:25, 31:9, 31:17, 31:20, 31:22, 32:2, 32:4,

32:6, 32:10, 32:14, 32:18, 32:22, 32:25, 33:3, 33:9, 33:12, 33:15, 33:23, 34:5, 34:9, 34:13, 34:21, 35:4, 35:9, 35:14, 35:16, 35:20, 35:24, 36:2, 36:15, 36:21, 36:24, 37:8, 37:11, 37:18, 38:9, 39:4, 39:6, 39:13, 40:9, 42:13, 44:3, 44:11, 44:13, 44:18, 44:20, 45:10, 45:13, 45:23, 46:4, 46:11, 46:19, 47:1, 47:4, 47:7, 47:9, 47:12, 47:14, 47:22, 47:25, 48:6, 48:10, 48:13, 48:15, 48:18, 48:21, 49:1, 49:3, 49:7, 49:9, 49:13, 49:16, 49:18, 49:23, 50:2, 50:8, 50:13, 50:16, 50:20, 50:23, 51:3, 51:9, 51:12, 51:16, 51:19, 51:23, 51:25, 52:2, 52:5, 52:13, 52:17, 52:23, 53:1, 53:4, 53:7, 53:13, 53:18, 53:25, 54:3, 54:7, 54:15, 54:21, 54:25, 57:12, 58:4, 58:14, 58:20, 59:10, 59:13, 59:15, 59:17, 60:8, 60:10, 60:14, 60:25, 61:2, 61:5, 61:8, 61:12, 61:15, 61:18, 61:22, 62:1, 62:6, 62:9, 62:24, 63:8, 63:11, 63:14, 63:16, 64:2, 64:5, 64:9, 64:13, 64:18, 64:23, 65:2, 65:7, 65:10, 65:14, 65:21, 65:25, 66:3, 66:6, 66:8, 66:19, 66:25, 67:3, 67:16, 67:19, 67:22, 68:1, 68:4, 68:8, 68:15, 68:19, 69:10, 70:9, 70:12, 70:18, 70:21, 71:13, 72:19, 73:8, 73:13, 74:3, 74:7, 74:14, 74:21, 75:17, 75:20, 75:23, 76:6, 76:9, 76:12, 76:14, 76:17, 76:20, 76:25, 77:3, 77:8, 77:10, 77:13, 77:17, 77:20, 77:23, 78:3, 78:11, 78:14, 78:18,

78:21, 78:25, 79:7, 79:11, 79:15, 79:19, 79:23, 79:25, 80:3, 80:11, 80:14, 80:20, 80:23, 81:2, 81:8, 81:11, 81:19, 81:22, 81:24, 82:4, 82:17, 82:21, 83:2, 83:9, 83:15, 84:11, 84:22, 85:2, 85:19, 85:24, 86:1, 86:4, 86:6, 86:9, 86:14, 86:21, 86:23, 87:3, 87:5, 87:8, 87:10, 87:13, 87:22, 88:2, 88:6, 88:11, 88:17, 89:14, 89:18, 89:21, 89:25, 90:4, 90:7, 90:9, 90:12, 90:16, 90:20, 90:23, 91:2, 91:13, 91:15, 91:22, 91:25, 92:4, 92:7, 92:13, 93:19, 94:2, 94:4, 94:7, 94:9, 94:11, 94:13, 95:3, 95:5, 95:9, 96:1
**court** [29] - 30:23, 31:22, 31:23, 31:25, 32:18, 33:17, 41:24, 48:5, 48:7, 49:4, 49:14, 50:3, 50:5, 50:6, 50:7, 50:9, 62:2, 63:24, 64:2, 65:11, 67:21, 67:25, 76:6, 80:8, 90:1, 90:2, 90:3
**Court** [16] - 2:8, 2:20, 2:21, 17:11, 20:20, 32:1, 41:3, 41:11, 64:4, 69:11, 76:7, 84:21, 85:1, 86:14, 93:7, 96:10
**Court's** [4] - 39:24, 41:6, 41:17, 58:19
**Courthouse** [1] - 2:22
**courthouse** [5] - 40:19, 55:16, 55:17, 69:2, 69:3
**courtroom** [25] - 3:5, 21:16, 21:22, 24:4, 24:18, 24:24, 28:22, 36:13, 44:16, 45:9, 47:6, 47:11, 59:16, 60:9, 63:10, 63:13, 73:12, 75:19, 77:16, 77:19, 81:13, 81:21, 87:1, 87:7, 94:6
**courts** [4] - 31:1, 50:5, 50:12, 63:23
**cover** [1] - 54:14

**covered** [1] - 53:19
**CRABB** [12] - 1:12, 24:1, 24:19, 47:3, 62:10, 62:12, 62:15, 62:21, 62:23, 77:9, 86:20, 87:4
**crafting** [1] - 83:12
**CRAMPTON** [2] - 1:20, 81:17
**CRC** [2] - 2:21, 96:9
**created** [1] - 13:4
**creating** [1] - 13:9
**credible** [1] - 23:17
**credit** [8] - 29:14, 29:15, 29:25, 79:4, 82:21, 91:5
**credits** [2] - 20:9, 20:10
**crime** [7] - 42:4, 43:23, 43:24, 44:1, 44:2, 76:24, 78:16
**criminal** [25] - 3:20, 30:19, 48:18, 48:20, 50:13, 50:24, 50:25, 51:7, 51:9, 61:9, 61:12, 61:19, 64:24, 65:7, 68:9, 68:14, 68:15, 72:25, 79:15, 79:16, 79:18, 79:23, 90:21, 91:3
**Criminal** [2] - 1:2, 1:15
**cross** [4] - 12:5, 12:7, 12:13, 47:23
**CRR** [2] - 2:21, 96:9
**CRT** [1] - 1:15
**crystalline** [1] - 62:20
**cycle** [1] - 26:1

# D

**D.C** [14] - 1:5, 6:4, 10:24, 46:16, 52:2, 61:15, 66:25, 67:2, 67:21, 67:25, 76:8, 87:25, 88:4, 96:11
**DA** [2] - 48:5, 48:16
**dad** [1] - 32:13
**date** [1] - 8:22
**Dated** [1] - 96:7
**days** [5] - 7:23, 8:1, 8:19, 37:20, 40:22
**DC** [5] - 1:13, 1:16, 1:25, 2:4, 2:23
**deadlines** [2] - 80:8, 80:10
**deal** [1] - 48:10
**dealing** [1] - 20:23
**decades** [1] - 65:24
**December** [1] - 66:2
**decide** [1] - 88:24

**deciding** [3] - 13:13, 29:14, 89:4
**decision** [24] - 5:16, 6:18, 13:18, 15:23, 17:17, 19:7, 20:5, 20:7, 20:9, 20:19, 20:21, 28:23, 66:16, 66:24, 67:11, 69:16, 71:2, 72:5, 74:12, 84:1, 89:10, 90:1
**decisions** [2] - 20:19, 28:21, 30:1, 91:4
**deeply** [6] - 28:1, 28:16, 29:9, 41:7, 44:1, 44:5
**defendant** [3] - 15:16, 80:23, 80:25
**Defendant** [1] - 1:17, 2:2, 2:5, 2:8, 2:10
**defendant's** [1] - 22:25
**Defendants** [1] - 1:7
**defendants** [13] - 12:25, 13:14, 19:18, 42:3, 42:8, 43:18, 44:7, 85:10, 85:13, 89:2, 89:4, 93:1, 94:24
**defendants'** [2] - 42:16, 42:23
**defense** [9] - 29:18, 31:2, 50:24, 61:11, 61:13, 62:3, 74:19, 79:14, 79:21
**defined** [1] - 78:6
**definitely** [1] - 37:23
**degree** [1] - 62:17
**deliberated** [1] - 90:1
**deliberations** [1] - 14:20
**delivering** [1] - 55:11
**DENNIS** [1] - 1:22
**deny** [1] - 74:19
**Department** [2] - 46:20, 80:22
**department** [1] - 79:1
**deposition** [1] - 80:19
**Deputy** [3] - 45:25, 46:1, 46:14
**describe** [2] - 11:3, 80:5
**described** [1] - 83:18
**description** [2] - 26:22, 26:23
**designations** [2] - 80:18, 80:19
**details** [2] - 15:10, 40:12
**detective** [1] - 78:17
**determination** [1] -

14:12
**determine** [5] - 14:13, 19:24, 42:21, 74:17, 88:25
**determining** [1] - 67:12
**detriment** [3] - 40:2, 40:4, 40:16
**detrimental** [1] - 81:5
**difference** [3] - 72:17, 72:20, 74:22
**different** [13] - 11:22, 15:5, 28:5, 45:1, 45:2, 50:4, 50:9, 54:1, 57:7, 71:23, 78:6, 89:23
**differentiate** [1] - 72:16
**differently** [2] - 45:4, 72:5
**differing** [2] - 11:21, 80:1
**difficult** [7] - 6:24, 39:20, 80:4, 84:8, 85:18, 85:21, 86:13
**digital** [1] - 83:11
**direct** [2] - 59:17, 59:21
**directed** [1] - 95:4
**direction** [2] - 31:16, 58:19
**directions** [1] - 24:15
**disabled** [3] - 36:25, 37:1, 37:3
**disagree** [1] - 11:14
**disagreement** [3] - 18:11, 18:13, 18:16
**disapprove** [2] - 18:8, 58:12
**discomfort** [1] - 15:19
**discoveries** [1] - 31:14
**discuss** [2] - 26:17, 50:13
**discussions** [13] - 3:22, 26:11, 31:1, 31:5, 48:15, 48:22, 50:17, 62:1, 64:10, 65:10, 78:21, 78:22, 78:23
**dislike** [1] - 18:8
**dispassionate** [1] - 21:4
**disputed** [2] - 14:1, 14:5
**district** [1] - 48:11
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [4] - 31:25, 32:1, 64:4, 80:7

**disturbance** [1] - 13:4
**Division** [5] - 1:15, 46:2, 46:6, 46:20, 46:23
**Dobbs** [6] - 66:24, 69:16, 71:2, 71:16, 71:22, 74:11
**DOJ** [3] - 1:15, 46:5, 46:23
**DOJ-CRT** [1] - 1:15
**donate** [3] - 4:15, 4:18, 6:15
**donated** [4] - 4:25, 9:25, 82:22, 82:23
**donating** [5] - 4:21, 5:6, 52:13, 66:3, 66:8
**donation** [2] - 5:4, 66:1
**donations** [4] - 5:5, 10:6, 52:15, 65:22
**done** [7] - 16:21, 17:14, 30:19, 38:25, 44:11, 79:23, 83:10
**donor** [1] - 65:23
**door** [14] - 15:14, 22:25, 23:3, 23:5, 23:9, 29:13, 42:6, 42:17, 42:23, 67:14, 85:10, 89:1, 93:1, 93:15
**doubt** [14] - 15:14, 22:25, 23:3, 23:5, 23:9, 25:6, 25:12, 27:10, 44:13, 47:4, 47:15, 47:17, 54:12, 58:17, 59:13, 60:14, 63:8, 63:17, 70:13, 73:10, 75:23, 77:13, 81:11, 81:25, 86:23, 87:11, 94:4
**dozen** [1] - 69:24
**draw** [1] - 11:14
**drug** [2] - 30:18, 76:23
**DUNN** [32] - 2:5, 4:17, 15:25, 16:6, 16:14, 16:17, 16:20, 17:2, 17:9, 17:12, 17:23, 24:2, 24:9, 53:14, 53:23, 55:24, 56:1, 56:6, 56:9, 62:25, 63:6, 72:23, 73:2, 73:7, 77:12, 81:10, 81:18, 93:18, 94:3, 95:2, 95:4, 95:7
**Dunn** [1] - 2:6
**during** [5] - 34:3, 35:14, 63:3, 71:25,

81:4
**duty** [6] - 15:15, 19:20, 19:21, 23:2, 23:5, 85:17

## E

**easy** [2] - 38:23, 39:11
**either** [5] - 17:12, 62:2, 65:22, 66:19, 82:8
**elaborate** [1] - 11:4
**elements** [4] - 15:15, 29:13, 70:12, 89:1
**eliminating** [1] - 27:16
**elsewhere** [1] - 67:1
**email** [1] - 10:13
**emotional** [3] - 26:13, 27:1, 27:4
**employed** [4] - 3:15, 48:1, 50:24, 63:23
**empowerment** [1] - 11:6
**encounter** [2] - 38:20, 39:8
**encountered** [1] - 55:16
**end** [4] - 9:6, 18:8, 58:13, 59:5
**enforcement** [11] - 48:1, 49:11, 49:13, 49:19, 50:21, 51:8, 51:10, 55:4, 78:6, 79:1, 79:4
**engage** [1] - 16:8
**engaged** [1] - 18:20
**enter** [1] - 43:15
**entered** [12] - 3:5, 21:22, 24:24, 43:18, 45:9, 47:11, 60:9, 63:13, 75:19, 77:19, 81:21, 87:7
**enterprises** [1] - 86:17
**entire** [3] - 56:17, 61:24, 72:11
**entirely** [2] - 30:24, 59:4
**envelopes** [1] - 94:25
**environment** [1] - 40:14
**equate** [1] - 20:3
**equivocating** [1] - 73:21
**essential** [1] - 80:9
**essentially** [2] - 13:9, 43:21
**established** [1] - 9:12
**estimated** [1] - 54:23
**et** [1] - 91:5
**evaluate** [1] - 19:21

evaluating [1] - 19:6
**evaluation** [2] - 18:20, 59:9
**evaluative** [1] - 20:1
**evening** [1] - 85:23
**event** [3] - 14:9, 34:22, 86:12
**evidence** [61] - 5:12, 5:17, 6:18, 12:20, 12:25, 13:20, 14:17, 14:19, 15:8, 15:22, 16:14, 16:17, 19:17, 19:22, 20:10, 20:18, 22:24, 28:21, 28:25, 29:5, 29:10, 29:14, 29:19, 29:21, 29:22, 29:25, 30:1, 31:13, 32:23, 33:5, 33:18, 39:23, 41:12, 41:14, 41:17, 41:21, 41:22, 41:23, 50:18, 66:13, 66:17, 67:9, 67:11, 67:12, 77:5, 84:1, 84:2, 84:3, 85:5, 85:8, 88:22, 88:25, 90:25, 91:4, 91:11, 93:10, 93:14
**evidently** [2] - 36:4, 74:23
**exactly** [2] - 8:10, 8:12
**example** [1] - 44:20
**examples** [1] - 48:2
**exchange** [1] - 24:6
**excuse** [7] - 17:4, 17:13, 21:17, 70:6, 71:1, 75:9, 94:13
**excused** [12] - 3:3, 24:20, 24:23, 32:11, 32:12, 32:19, 32:21, 33:1, 34:16, 45:8, 47:10, 94:4
**excusing** [2] - 87:5, 94:7
**exercising** [1] - 20:5
**exhibit** [1] - 80:18
**exited** [11] - 21:16, 24:18, 44:16, 47:6, 59:16, 63:10, 73:12, 77:16, 81:13, 87:1, 94:6
**expected** [1] - 74:12
**experience** [10] - 33:3, 33:16, 33:21, 34:3, 34:17, 34:18, 40:7, 40:10, 41:1, 90:24
**experiences** [1] - 40:18
**explain** [3] - 15:19, 40:6, 41:11
**explained** [1] - 38:14

**explore** [1] - 12:19
**exploring** [1] - 31:8
**exposed** [1] - 56:22
**express** [1] - 11:21
**expressing** [2] - 11:24, 12:3
**extensive** [1] - 32:17
**extent** [1] - 50:20
**extraneous** [1] - 95:14

## F

**FACE** [2] - 46:2, 46:9
**facility** [1] - 43:19
**fact** [10] - 5:10, 14:6, 18:21, 20:16, 20:22, 36:9, 63:1, 74:16, 74:25, 78:25
**facts** [7] - 12:24, 14:11, 16:10, 19:8, 20:8, 22:13, 26:11
**factual** [2] - 14:12, 16:2
**factually** [1] - 26:16
**fails** [1] - 74:15
**fair** [27] - 11:9, 11:12, 12:2, 12:12, 12:19, 12:21, 14:6, 14:14, 15:22, 18:7, 28:17, 41:13, 43:23, 44:6, 58:1, 70:4, 71:7, 72:8, 74:9, 74:12, 74:17, 75:10, 85:3, 91:8, 92:16, 93:9, 93:13
**fairly** [4] - 10:2, 41:23, 42:21, 48:24
**fallen** [1] - 15:10
**familiar** [10] - 22:8, 22:9, 22:10, 22:13, 25:14, 25:24, 45:20, 45:21, 46:4, 56:24
**familiarity** [1] - 25:20
**family** [19] - 3:15, 5:21, 7:4, 7:10, 7:21, 8:9, 8:18, 9:3, 9:11, 14:25, 15:2, 15:9, 15:20, 34:3, 34:10, 34:18, 51:18, 63:22
**far** [4] - 22:16, 33:3, 43:10, 69:19
**father** [8] - 48:4, 48:10, 48:11, 51:17, 51:21, 51:22, 51:23, 78:11
**father-in-law** [3] - 48:4, 48:11, 51:22
**favor** [1] - 16:23
**fears** [1] - 36:12
**federal** [5] - 31:22,

63:1, 63:24, 76:6, 90:1
**Federal** [2] - 64:4, 64:22
**feelings** [11] - 6:17, 11:4, 12:16, 12:17, 12:21, 28:19, 28:20, 41:12, 59:3, 66:14, 83:23
**felt** [3] - 15:9, 15:11, 71:23
**female** [1] - 11:6
**few** [2] - 8:19, 65:5
**fight** [1] - 34:7
**figure** [2] - 28:4, 38:2
**final** [1] - 93:20
**Finance** [1] - 55:13
**financial** [2] - 50:1, 73:3
**finder** [1] - 20:16
**fine** [2] - 15:23, 57:14
**finish** [2] - 17:4, 17:5, 37:19
**finished** [1] - 8:19
**firm** [12] - 4:1, 4:4, 30:14, 30:17, 30:18, 37:6, 61:2, 61:6, 61:8, 64:23, 79:12, 82:15
**first** [3] - 6:3, 46:23, 84:16
**fit** [1] - 28:6
**five** [3] - 7:23, 8:1, 67:24
**fix** [2] - 47:15, 63:18
**flyers** [1] - 55:20
**focus** [1] - 9:10
**focused** [2] - 36:6, 88:9
**focusing** [1] - 57:21
**follow** [8] - 17:11, 19:13, 19:20, 31:16, 79:25, 93:7, 93:13, 93:20
**following** [2] - 17:16, 71:19
**food** [1] - 30:17
**FOR** [1] - 1:1
**foregoing** [1] - 96:4
**foreperson** [6] - 32:4, 68:2, 76:14, 77:4, 90:4, 90:7
**form** [3] - 13:9, 70:10, 71:12
**formally** [1] - 46:15
**formerly** [1] - 4:3
**forth** [2] - 60:17, 63:18
**forward** [1] - 29:21
**foundational** [1] - 43:7

**foundations** [1] - 43:4
**four** [2] - 59:20, 94:24
**framed** [1] - 72:21
**Friday** [1] - 92:11
**friend** [3] - 5:22, 61:7, 61:9
**friends** [4] - 3:15, 26:3, 26:6, 63:23
**full** [1] - 96:5
**Fund** [1] - 35:18
**fundraising** [1] - 83:13
**funds** [1] - 82:14
**Funds** [1] - 82:25
**future** [1] - 95:15

## G

**gaining** [1] - 60:6
**general** [6] - 48:24, 58:23, 59:25, 78:14, 78:22, 78:23
**General** [4] - 45:25, 46:1, 46:15, 46:17
**generally** [5] - 35:25, 68:10, 76:21, 89:3, 90:16
**generated** [1] - 46:5
**gentleman** [2] - 24:3, 24:6
**George** [1] - 68:25
**Georgetown** [2] - 27:15, 31:7
**GERAGHTY** [2] - 1:6, 2:10
**given** [6] - 59:11, 59:17, 60:3, 60:4, 69:3, 73:14
**GOODMAN** [2] - 1:6, 2:8
**gosh** [1] - 35:6
**governing** [1] - 12:22
**government** [28] - 4:2, 9:20, 15:10, 15:13, 16:24, 17:16, 21:18, 23:2, 23:8, 24:10, 29:12, 29:22, 30:15, 31:2, 42:12, 42:16, 42:20, 42:22, 61:3, 62:9, 63:1, 67:13, 74:4, 79:12, 81:14, 85:9, 88:25, 93:14
**government's** [3] - 29:21, 42:5, 92:25
**Governors** [1] - 64:22
**grandfather** [2] - 78:9, 78:12
**great** [1] - 34:15
**greater** [1] - 79:3
**group** [8] - 4:10, 4:11,

52:6, 52:7, 65:15,
65:16, 82:7
**groups** [1] - 83:22
**guaranteed** [1] - 37:23
**guess** [3] - 13:19,
19:15, 56:23
**guesstimate** [1] -
69:23
**GUILLAUME** [30] -
2:2, 56:10, 56:14,
56:17, 56:20, 57:1,
57:11, 57:18, 57:21,
58:3, 58:5, 63:7,
69:13, 69:19, 69:22,
69:25, 70:3, 70:11,
70:22, 71:5, 71:15,
71:21, 72:2, 72:4,
72:7, 72:13, 72:18,
72:22, 73:24, 77:11
**Guillaume** [1] - 2:3
**guilt** [7] - 20:4, 20:17,
20:18, 23:1, 23:9,
42:16, 42:23
**guilty** [8] - 15:11,
15:16, 23:2, 23:6,
23:10, 23:13, 23:22
**gun** [1] - 70:19

## H

**half** [1] - 69:24
**hand** [2] - 74:13,
94:25
**HANDY** [2] - 1:5, 1:18
**happy** [2] - 11:5, 13:13
**harass** [2] - 59:18,
59:24
**harassed** [1] - 73:14
**harassment** [1] - 60:5
**hard** [5] - 8:14, 25:6,
40:15, 85:15, 87:15
**harder** [3] - 9:13, 38:5,
75:25
**hardship** [2] - 38:15,
81:15
**hardships** [3] - 38:19,
39:7, 41:1
**HARIVADAN** [1] - 1:14
**hate** [1] - 76:23
**head** [2] - 26:12, 83:1
**health** [25] - 4:12,
5:23, 11:10, 13:15,
28:15, 29:7, 40:2,
40:5, 40:16, 41:7,
43:19, 44:8, 52:8,
53:19, 53:21, 54:4,
57:23, 57:25, 65:17,
66:15, 70:7, 82:9,
87:19, 89:6, 92:20
**healthier** [1] - 37:3

**hear** [23] - 3:11, 3:12,
14:19, 16:4, 16:5,
18:12, 22:4, 22:17,
25:5, 30:1, 45:16,
47:16, 47:17, 53:14,
60:19, 63:19, 75:25,
77:24, 78:1, 82:1,
82:2, 87:15
**heard** [12] - 12:15,
14:16, 15:7, 16:14,
16:21, 17:14, 22:20,
22:23, 26:2, 26:11,
26:24, 26:11
**hearing** [2] - 26:16,
27:2
**HEATHER** [2] - 1:6,
2:6
**held** [12] - 18:4, 18:16,
28:1, 28:16, 29:9,
41:7, 43:22, 44:1,
44:5, 67:4, 71:5,
71:23
**help** [3] - 35:7, 37:14,
37:25
**helpful** [1] - 94:22
**HERB** [2] - 1:6, 2:10
**Herbert** [1] - 64:8
**hereby** [1] - 96:3
**hesitation** [2] - 75:4,
92:15
**hi** [1] - 62:11
**HINSHAW** [2] - 1:5,
2:3
**hold** [4] - 20:24,
20:25, 42:20, 72:9
**home** [11] - 15:19,
35:22, 35:23, 36:20,
37:8, 37:10, 38:1,
38:7, 38:20, 39:8
**honest** [11] - 34:1,
85:6, 89:12, 89:16,
91:16, 92:2, 93:25,
94:3, 95:8, 95:10,
95:16
**honestly** [1] - 26:14
**honesty** [1] - 94:20
**Honor** [33] - 9:22,
13:8, 14:11, 17:1,
19:13, 20:14, 24:1,
24:13, 24:19, 44:4,
44:10, 44:15, 45:22,
47:2, 47:3, 47:8,
58:18, 62:23, 69:12,
69:13, 70:10, 71:12,
73:24, 74:1, 74:6,
74:15, 77:9, 81:9,
81:10, 86:20, 86:22,
87:4, 93:16
**HONORABLE** [1] - 1:9
**hop** [1] - 94:16

**hope** [3] - 8:13, 71:10
**hopefully** [1] - 34:21
**hoping** [1] - 45:1
**hotel** [1] - 92:10
**hour** [1] - 41:4
**house** [1] - 8:9
**household** [1] - 38:7
**housing** [1] - 8:6
**HOWARD** [1] - 2:8
**human** [2] - 43:5, 65:5
**hurdle** [1] - 29:10
**husband** [3] - 30:10,
36:20, 36:25
**hypothetical** [2] -
13:10, 29:6

## I

**IA** [1] - 1:19
**identify** [1] - 5:11
**identity** [1] - 21:1
**IDONI** [2] - 1:6, 2:6
**III** [3] - 2:2, 2:3, 2:8
**images** [1] - 20:2
**immediate** [1] - 34:3
**immediately** [2] -
26:25, 43:6
**impartial** [16] - 14:14,
28:17, 41:13, 44:6,
58:1, 70:5, 71:7,
72:8, 74:9, 74:13,
74:17, 75:10, 85:3,
91:8, 92:16, 93:6
**impartiality** [2] - 28:2,
29:3
**impartially** [1] - 42:22
**importance** [1] - 34:15
**important** [4] - 11:10,
15:10, 85:3, 85:16
**IN** [1] - 1:1
**inclined** [1] - 29:24
**include** [3] - 14:8,
28:16, 82:9
**including** [7] - 4:12,
6:7, 52:8, 65:17,
67:5, 73:23, 88:7
**incomplete** [1] - 32:9
**inconvenience** [1] -
32:21
**indeed** [3] - 70:17,
73:1, 73:6
**independent** [3] -
11:7, 61:3, 61:4
**independently** [2] -
67:12, 84:1
**indicate** [5] - 3:2,
14:17, 27:25, 94:14,
94:20
**indicated** [16] - 9:25,
10:16, 14:23, 18:3,

26:24, 27:1, 27:11,
29:2, 31:17, 56:10,
57:1, 58:20, 70:14,
70:25, 85:19, 92:7
**indicates** [1] - 20:17
**indicating** [4] - 23:8,
23:19, 72:20, 81:3
**indictment** [2] - 23:1,
43:13
**individual** [2] - 27:17,
94:7
**individuals** [2] -
43:14, 92:19
**indulge** [1] - 69:11
**influence** [9] - 19:10,
31:3, 33:24, 48:22,
64:11, 65:12, 67:8,
86:17, 91:9
**influenced** [7] - 17:21,
84:2, 84:4, 85:4,
85:11, 89:10, 93:23
**influencing** [1] - 92:1
**inform** [1] - 28:24,
67:7
**information** [7] - 43:9,
47:5, 55:18, 55:21,
60:6, 69:4, 69:7
**informed** [1] - 36:7
**injured** [1] - 26:20
**innocence** [3] - 42:9,
72:24, 75:3
**innocent** [3] - 29:18,
73:5, 92:23
**inserting** [1] - 38:7
**instilled** [1] - 43:4
**Institute** [1] - 62:13
**instruct** [2] - 19:19,
31:4
**instructions** [18] -
14:19, 17:11, 19:20,
21:5, 21:14, 22:24,
39:24, 41:17, 44:14,
59:15, 63:9, 73:11,
77:14, 79:25, 81:12,
85:8, 93:7, 93:13
**insufficient** [1] - 20:18
**intelligence** [1] -
72:12
**intent** [3] - 13:14, 89:5
**intently** [1] - 20:25
**interactions** [1] -
33:17
**interfere** [5] - 11:15,
12:20, 28:17, 36:12,
54:5
**interim** [1] - 80:19
**International** [1] -
68:24
**interpret** [1] - 91:22
**intrinsic** [1] - 84:10

**investment** [1] - 11:8
**involuntary** [1] - 76:23
**involve** [2] - 30:23,
83:17
**involved** [8] - 6:2, 6:3,
9:4, 50:25, 52:12,
52:14, 62:15, 83:16
**involvement** [1] -
56:21
**involves** [1] - 92:19
**involving** [1] - 71:2
**Ireland** [2] - 86:2,
86:18
**irrational** [1] - 39:16
**irrationally** [2] - 35:3,
35:10
**issue** [13] - 15:3,
28:15, 32:13, 33:24,
45:2, 54:4, 57:3,
57:4, 57:7, 57:22,
71:17, 80:3, 89:11
**issues** [12] - 6:7,
10:25, 13:21, 27:22,
36:8, 44:24, 63:11,
65:10, 66:11, 70:15,
70:16, 88:7
**itself** [1] - 11:25

## J

**JASARI** [1] - 1:23
**Jasari** [1] - 1:23
**job** [7] - 38:6, 49:10,
51:4, 51:5, 51:7,
82:14, 93:6
**jobs** [2] - 50:10, 50:12
**JOHN** [4] - 1:5, 1:12,
2:3, 2:10
**joined** [1] - 27:18
**JR** [1] - 1:12
**Judge** [8] - 16:14,
17:12, 21:19, 44:19,
64:7, 73:25, 81:14,
94:12
**JUDGE** [1] - 1:9
**judge** [6] - 19:19,
19:25, 24:2, 57:2,
64:5, 95:2
**judge's** [4] - 19:20,
21:5, 56:2, 93:13
**judges** [3] - 31:2,
48:23, 62:3
**judgment** [6] - 9:5,
9:8, 18:16, 20:6,
23:17, 23:21
**jump** [1] - 29:10
**June** [1] - 84:21
**juries** [2] - 68:2, 89:23
**JUROR** [360] - 3:17,
3:19, 3:21, 3:25, 4:3,

4:7, 4:15, 4:18, 4:22,
5:1, 5:5, 5:9, 5:13,
5:18, 5:24, 6:3, 6:10,
6:19, 6:21, 7:1, 7:6,
7:9, 7:11, 7:14, 7:19,
7:23, 8:1, 8:4, 8:10,
8:12, 9:7, 9:14, 9:17,
10:4, 10:10, 10:13,
10:20, 11:1, 11:5,
11:11, 11:17, 11:23,
12:1, 12:6, 15:4,
15:17, 15:21, 17:22,
18:2, 18:6, 18:10,
18:13, 18:18, 18:24,
19:11, 21:8, 21:12,
21:15, 22:10, 22:15,
22:19, 22:22, 23:12,
23:15, 23:23, 24:17,
25:8, 25:11, 25:16,
25:19, 25:22, 25:25,
26:6, 26:9, 26:13,
26:18, 26:23, 27:3,
27:6, 27:13, 27:23,
28:3, 29:1, 29:4,
29:16, 30:4, 30:10,
30:13, 30:16, 30:21,
30:24, 31:6, 31:15,
31:19, 31:21, 31:24,
32:3, 32:5, 32:8,
32:12, 32:16, 32:20,
32:24, 33:2, 33:6,
33:11, 33:13, 33:22,
33:25, 34:6, 34:12,
34:20, 35:2, 35:6,
35:10, 35:15, 35:17,
35:22, 35:25, 36:14,
36:18, 36:23, 37:2,
37:9, 37:13, 38:4,
38:11, 38:17, 38:22,
39:1, 39:18, 40:1,
40:4, 40:7, 40:10,
40:20, 40:22, 41:2,
41:9, 41:14, 41:19,
41:25, 42:7, 42:10,
42:18, 42:24, 43:2,
43:11, 43:20, 43:24,
44:9, 44:15, 45:22,
45:24, 46:7, 46:14,
46:25, 47:20, 47:23,
48:4, 48:8, 48:12,
48:14, 48:17, 48:20,
48:25, 49:2, 49:5,
49:8, 49:11, 49:15,
49:17, 49:21, 49:25,
50:4, 50:11, 50:15,
50:19, 50:22, 51:2,
51:6, 51:11, 51:15,
51:17, 51:21, 51:24,
52:1, 52:4, 52:11,
52:15, 52:21, 52:24,
53:3, 53:5, 53:11,

53:16, 53:22, 53:24,
54:2, 54:6, 54:13,
54:18, 54:24, 55:3,
55:8, 55:11, 55:19,
55:22, 55:25, 56:4,
56:8, 56:13, 56:16,
56:19, 56:25, 57:8,
57:15, 57:20, 58:2,
58:9, 58:11, 59:7,
59:14, 60:24, 61:1,
61:4, 61:6, 61:11,
61:14, 61:17, 61:21,
61:24, 62:4, 62:7,
62:11, 62:14, 62:17,
63:5, 64:1, 64:3,
64:7, 64:12, 64:16,
64:20, 64:25, 65:4,
65:9, 65:13, 65:20,
65:23, 66:2, 66:5,
66:7, 66:18, 66:23,
67:2, 67:15, 67:18,
67:21, 67:24, 68:3,
68:7, 68:13, 68:17,
68:22, 68:24, 69:5,
69:8, 69:18, 69:21,
69:24, 70:2, 70:17,
70:19, 71:4, 71:19,
71:25, 72:3, 72:6,
72:11, 72:14, 73:1,
73:6, 76:5, 76:8,
76:10, 76:13, 76:16,
76:19, 76:22, 77:2,
77:7, 78:2, 78:9,
78:12, 78:16, 78:20,
78:23, 79:6, 79:10,
79:13, 79:16, 79:18,
79:21, 79:24, 80:2,
80:6, 80:12, 80:17,
80:21, 80:25, 81:7,
82:3, 82:12, 82:19,
82:23, 83:4, 83:11,
84:7, 84:16, 84:23,
85:15, 85:22, 85:25,
86:2, 86:5, 86:8,
86:11, 86:25, 87:12,
87:21, 87:24, 88:3,
88:10, 88:15, 89:12,
89:15, 89:20, 89:22,
90:3, 90:5, 90:8,
90:11, 90:14, 90:18,
90:22, 91:1, 91:10,
91:14, 91:19, 91:24,
92:2, 92:6, 92:9,
92:21, 92:24, 93:3,
93:8, 93:11, 93:22

**juror** [64] - 3:5, 3:8,
14:12, 14:17, 16:1,
19:20, 19:21, 20:16,
21:16, 21:22, 22:1,
24:18, 24:19, 24:24,
25:3, 31:18, 33:16,

33:21, 36:9, 38:3,
39:17, 39:21, 39:25,
44:16, 45:9, 45:12,
47:6, 47:11, 47:13,
54:5, 59:16, 60:9,
60:13, 63:10, 63:13,
63:15, 67:17, 67:23,
68:6, 69:2, 70:5,
71:7, 72:8, 73:12,
75:6, 75:19, 75:22,
76:3, 77:6, 77:16,
77:19, 77:22, 81:13,
81:21, 81:23, 87:1,
87:5, 87:7, 87:9,
89:18, 89:24, 90:24,
91:2, 94:6
**Juror** [10] - 3:13, 25:9,
45:17, 47:18, 60:20,
63:21, 76:2, 78:3,
82:4, 87:16
**jurors** [5] - 3:3, 24:5,
33:16, 73:13, 94:21
**JURY** [2] - 1:4, 1:8
**jury** [23] - 8:15, 19:7,
32:7, 32:9, 34:10,
34:19, 35:12, 37:19,
38:15, 39:23, 40:24,
55:16, 59:25, 68:5,
76:18, 79:25, 80:6,
84:8, 85:20, 90:10,
93:5, 95:1
**Justice** [2] - 46:20,
80:22
**justified** [1] - 28:9

### K

**keep** [6] - 36:4, 59:2,
59:18, 63:12, 91:20,
92:1
**keeping** [4] - 21:20,
21:21, 60:8, 77:18
**keeps** [1] - 35:11
**key** [1] - 81:3
**kind** [12] - 6:10, 10:24,
12:23, 23:21, 26:24,
30:19, 37:5, 37:14,
51:25, 62:15, 72:10,
83:24
**kinds** [4] - 31:5, 61:19,
80:15, 80:19
**KIYONAGA** [22] -
2:10, 18:1, 18:3,
18:7, 18:15, 18:19,
19:1, 19:13, 19:15,
20:14, 21:11, 54:16,
58:7, 58:10, 58:12,
58:18, 59:2, 59:8,
59:12, 60:7, 69:11,
93:16

**knowing** [1] - 91:6
**knowledge** [4] -
22:11, 31:16, 64:24,
65:8
**knows** [1] - 75:7
**KOLLAR** [1] - 1:9
**KOLLAR-KOTELLY**
[1] - 1:9
**KOTELLY** [1] - 1:9

### L

**labeled** [1] - 71:13
**laid** [1] - 19:25
**large** [1] - 55:4
**last** [19] - 4:23, 4:24,
10:1, 10:3, 10:4,
13:9, 36:21, 39:2,
39:5, 47:22, 54:8,
54:19, 64:21, 65:25,
67:19, 67:21, 74:3,
84:21, 95:4
**late** [1] - 9:2
**latest** [1] - 37:19
**Laughter** [1] - 62:22
**LAUREN** [2] - 1:5,
1:18
**Law** [1] - 2:3
**law** [35] - 3:15, 5:25,
15:1, 19:8, 19:19,
19:21, 19:25, 22:25,
28:22, 30:8, 31:7,
48:1, 48:4, 48:11,
49:19, 50:10, 50:11,
50:20, 51:13, 51:22,
60:22, 61:6, 61:8,
64:14, 64:23, 65:5,
65:6, 66:17, 67:13,
78:6, 79:1, 79:4,
79:8, 88:23
**laws** [1] - 28:10
**lawyer** [16] - 3:15,
3:16, 3:17, 3:19,
30:8, 51:13, 51:17,
60:22, 64:14, 64:19,
79:8
**lawyers** [2] - 22:24,
51:18
**leaflets** [1] - 55:21,
69:7
**learn** [1] - 57:23
**least** [4] - 13:20, 41:4,
59:19, 67:24
**leave** [2] - 34:10, 49:9
**leaving** [3] - 13:20,
34:23, 85:22
**leeway** [1] - 60:3
**left** [2] - 37:25, 77:14
**legal** [5] - 4:4, 4:6, 4:7,
26:7, 65:10

**lenient** [1] - 44:24
**lens** [3] - 28:24, 67:8,
84:3
**lesser** [1] - 79:3
**level** [3] - 36:15,
36:18, 36:19
**liability** [1] - 90:18
**liberal** [1] - 27:6
**life** [7] - 34:2, 36:1,
36:8, 36:10, 37:17,
56:18, 72:11
**lifetime** [1] - 69:23
**likelihood** [1] - 19:16
**likely** [3] - 16:24,
20:19, 28:7
**Limbaugh** [1] - 27:16
**limit** [2] - 59:23, 73:21
**limited** [4] - 4:12,
52:8, 65:18, 82:9
**line** [5] - 11:15, 12:5,
12:7, 12:14, 46:23
**list** [1] - 80:18
**listen** [6] - 28:21,
39:23, 39:24, 41:16,
85:8, 91:3
**listening** [2] - 32:23,
41:21
**lists** [1] - 95:1
**literature** [1] - 56:23
**live** [1] - 88:5
**Lives** [1] - 70:20
**LLC** [1] - 2:3
**LLP** [1] - 1:23
**local** [9] - 31:23,
35:18, 35:19, 63:24,
76:6, 76:8, 90:2,
90:3
**Local** [1] - 26:2
**locked** [1] - 24:7
**long-planned** [1] -
86:5
**long-time** [1] - 73:3
**look** [10] - 20:8, 20:12,
23:21, 33:18, 67:8,
74:23, 83:25, 84:3,
85:7, 88:11
**looking** [7] - 13:3,
20:11, 27:25, 29:14,
29:22, 30:6, 67:12
**lose** [1] - 25:11
**lost** [1] - 25:10
**loud** [1] - 39:14
**lunch** [2] - 24:3, 37:21

### M

**ma'am** [9] - 9:24,
14:23, 19:15, 22:10,
22:22, 23:12, 23:23,
24:17, 60:7

**mailings** [3] - 10:7, 10:8, 10:11
**manage** [1] - 37:5
**management** [1] - 80:8
**manager** [2] - 35:17, 55:7
**managing** [4] - 30:17, 37:6, 37:15, 38:6
**manila** [1] - 94:25
**manslaughter** [1] - 76:23
**march** [7] - 5:22, 6:11, 52:21, 71:15, 84:13, 87:18, 87:22
**March** [14] - 6:4, 6:6, 10:17, 10:21, 10:24, 52:22, 53:18, 56:2, 83:7, 84:13, 84:24, 87:25, 88:4, 88:6
**marched** [2] - 53:1, 66:20
**marches** [12] - 6:1, 6:5, 6:11, 6:16, 10:18, 10:19, 14:24, 52:19, 87:25, 88:5, 88:13, 88:19
**marching** [2] - 6:12, 52:15
**market** [1] - 55:12
**MARTIN** [1] - 1:17
**mask** [10] - 3:11, 21:25, 25:6, 45:15, 47:16, 63:19, 75:25, 77:24, 82:1, 87:14
**Massachusetts** [2] - 80:8, 80:11
**material** [1] - 62:20
**materials** [1] - 62:19
**matter** [3] - 34:16, 74:13, 79:19
**Matter** [1] - 70:20
**matters** [1] - 15:6
**MD** [1] - 2:9
**meals** [2] - 37:15, 38:1
**mean** [16] - 9:12, 13:11, 26:7, 26:11, 26:12, 35:11, 36:6, 36:8, 36:9, 47:19, 53:11, 57:8, 57:15, 73:20, 75:1, 91:8
**means** [4] - 20:3, 38:21, 39:9, 72:25
**meant** [2] - 23:12, 54:12
**mechanism** [1] - 51:10
**media** [3] - 27:17, 83:12, 84:19
**medical** [1] - 32:13

**medication** [1] - 41:3
**meet** [1] - 80:10
**meets** [1] - 19:24
**member** [2] - 5:22, 80:9
**members** [4] - 3:14, 8:9, 51:18, 63:22
**memory** [1] - 26:24
**men** [1] - 57:19
**mental** [3] - 40:2, 40:4, 40:16
**mention** [1] - 28:8
**mentioned** [4] - 39:16, 69:15, 70:1, 84:13
**mergers** [1] - 79:22
**message** [1] - 83:13
**method** [1] - 62:19
**Metro** [1] - 68:18
**Mexico** [1] - 52:4
**MI** [1] - 2:7
**microphone** [14] - 3:11, 22:3, 25:5, 39:13, 45:15, 45:23, 47:15, 53:15, 60:17, 63:18, 75:24, 77:25, 81:25, 87:13
**mid** [1] - 30:17
**mid-sized** [1] - 30:17
**middle** [1] - 34:16
**might** [12] - 11:13, 18:20, 26:19, 31:2, 31:10, 39:20, 40:25, 48:16, 64:10, 80:1, 86:13
**military** [1] - 95:13
**mind** [7] - 11:17, 16:21, 17:14, 29:5, 31:9, 68:11, 95:13
**minute** [2] - 17:5, 26:16
**minutes** [1] - 75:13
**miss** [1] - 8:17
**missed** [1] - 48:6
**misunderstand** [1] - 23:10
**misunderstood** [1] - 22:15
**mom's** [1] - 57:2
**moment** [3] - 19:23, 49:6, 69:12
**Monday** [2] - 3:4, 95:17
**monetarily** [2] - 83:5, 86:13
**money** [3] - 5:7, 52:13, 66:8
**monitor** [1] - 37:5
**moral** [3] - 28:14, 43:4, 43:7
**morally** [1] - 28:9

**morning** [1] - 37:21
**most** [3] - 11:20, 28:6, 76:12
**mostly** [4] - 10:13, 30:24, 52:15, 65:4
**mother** [11] - 5:25, 14:25, 15:1, 52:11, 52:20, 53:8, 56:11, 56:21, 57:11, 57:13
**mother's** [2] - 54:1, 56:21
**mother-in-law** [2] - 5:25, 15:1
**motion** [2] - 74:19, 81:14
**move** [21] - 3:9, 9:13, 22:2, 25:4, 39:13, 40:9, 44:17, 45:13, 47:14, 60:16, 63:17, 74:1, 74:9, 75:24, 77:23, 81:24, 87:2, 87:10, 87:13, 94:8, 94:24
**moved** [1] - 49:9
**moves** [1] - 60:16
**MR** [198] - 4:5, 4:17, 7:5, 7:25, 9:22, 9:24, 10:6, 10:12, 10:16, 10:23, 11:3, 11:9, 11:12, 11:19, 11:24, 12:2, 12:7, 12:10, 12:13, 12:23, 13:8, 13:19, 13:25, 14:11, 14:23, 15:7, 15:18, 15:24, 15:25, 16:6, 16:14, 16:17, 16:20, 17:1, 17:2, 17:6, 17:9, 17:12, 17:23, 18:1, 18:3, 18:7, 18:12, 18:15, 18:19, 19:1, 19:13, 19:15, 20:14, 21:11, 21:19, 23:25, 24:1, 24:2, 24:9, 24:13, 24:19, 24:22, 26:4, 38:10, 38:12, 38:18, 38:24, 39:2, 39:5, 39:12, 39:15, 39:19, 40:3, 40:6, 40:17, 40:21, 40:23, 41:5, 41:10, 41:16, 41:20, 42:3, 42:8, 42:11, 42:15, 42:19, 43:1, 43:8, 43:17, 43:21, 43:25, 44:4, 44:10, 44:12, 44:17, 44:19, 47:2, 47:3, 47:8, 53:14, 53:23, 54:16, 55:1, 55:6, 55:9, 55:15, 55:20, 55:23, 55:24,

56:1, 56:6, 56:9, 56:10, 56:14, 56:17, 56:20, 57:1, 57:11, 57:18, 57:21, 58:3, 58:5, 58:7, 58:10, 58:12, 58:18, 59:2, 59:8, 59:12, 60:7, 62:10, 62:12, 62:15, 62:21, 62:23, 62:25, 63:6, 63:7, 68:20, 68:23, 69:1, 69:6, 69:9, 69:11, 69:13, 69:19, 69:22, 69:25, 70:3, 70:10, 70:11, 70:22, 71:5, 71:12, 71:15, 71:21, 72:2, 72:4, 72:7, 72:13, 72:18, 72:22, 72:23, 73:2, 73:7, 73:24, 73:25, 74:1, 74:5, 74:6, 74:8, 74:15, 77:9, 77:11, 77:12, 79:17, 81:9, 81:10, 81:14, 81:16, 81:17, 81:18, 86:20, 86:22, 87:2, 87:4, 92:14, 92:22, 92:25, 93:4, 93:9, 93:12, 93:16, 93:18, 94:1, 94:3, 94:8, 94:10, 94:12, 95:2, 95:4, 95:7
**MS** [1] - 1:21
**multiple** [3] - 26:18, 33:14
**municipal** [2] - 55:12, 55:13
**Murray** [1] - 64:8

**N**

**N.W** [1] - 96:11
**National** [2] - 62:13, 82:24
**nature** [1] - 3:24
**near** [1] - 32:16
**necessarily** [3] - 13:16, 43:11, 89:7
**need** [31] - 3:10, 8:5, 8:20, 9:18, 17:17, 21:24, 22:3, 23:24, 24:11, 25:1, 25:5, 29:8, 34:13, 36:24, 39:13, 40:9, 45:14, 45:23, 47:1, 57:12, 60:17, 61:5, 63:18, 73:19, 75:20, 77:25, 81:25, 87:13, 91:16, 94:24, 95:12
**needed** [1] - 9:17
**needing** [2] - 34:10,

81:20
**needs** [1] - 37:13
**Negro** [1] - 35:18
**Network** [1] - 82:24
**never** [1] - 17:2
**new** [1] - 56:5
**New** [3] - 7:3, 52:4, 67:25
**news** [1] - 25:25
**next** [6] - 37:15, 75:17, 77:17, 80:9, 81:4, 84:11
**night** [1] - 35:11
**NIST** [1] - 62:18
**nobody** [1] - 95:16
**none** [1] - 53:4
**nonprofit** [1] - 35:18
**nonrefundable** [2] - 86:15, 92:12
**notes** [6] - 14:24, 25:16, 25:18, 28:1, 30:6, 96:5
**nothing** [3] - 36:17, 38:4, 73:8
**notwithstanding** [1] - 74:8
**Notwithstanding** [1] - 74:16
**nowhere** [1] - 32:16
**NPR** [1] - 26:2
**number** [2] - 54:11, 75:6
**numbers** [1] - 25:17
**NW** [4] - 1:13, 1:16, 2:3, 2:22
**NYPD** [2] - 78:9, 78:13

**O**

**object** [2] - 13:8, 17:1
**objected** [1] - 17:3
**objecting** [1] - 94:11
**objection** [17] - 13:7, 14:10, 17:4, 17:5, 21:19, 24:21, 44:18, 47:9, 70:9, 81:16, 81:17, 81:18, 87:3, 87:4, 93:16, 94:9, 94:10
**objectively** [3] - 20:8, 20:12, 28:23
**obligation** [3] - 29:19, 54:14, 54:19
**observe** [1] - 19:22
**observers** [1] - 24:5
**obstruct** [3] - 13:15, 43:19, 89:5
**obstructed** [1] - 92:20
**obstructing** [1] - 44:7
**obstruction** [1] -

28:12
**obviously** [21] - 6:12, 12:18, 29:20, 30:7, 34:15, 36:6, 46:19, 53:8, 53:19, 66:8, 67:3, 73:16, 83:15, 84:9, 85:2, 85:16, 86:16, 88:12, 88:17, 89:9
**October** [1] - 80:13
**OF** [4] - 1:1, 1:2, 1:8, 96:1
**offenses** [1] - 89:2
**office** [2] - 37:9, 37:12
**Office** [2] - 1:12, 46:21
**officer** [2] - 78:10, 78:13, 78:19
**Offices** [1] - 2:3
**OFFICIAL** [1] - 96:1
**Official** [2] - 2:21, 96:10
**once** [5] - 17:2, 36:16, 60:4, 89:23
**one** [37] - 5:20, 6:3, 8:4, 8:7, 8:8, 10:4, 17:17, 20:25, 23:1, 24:4, 24:5, 25:21, 28:6, 31:21, 33:24, 35:8, 36:21, 40:15, 51:19, 53:2, 53:4, 53:5, 54:12, 59:1, 59:19, 69:11, 70:1, 71:2, 74:3, 76:9, 76:16, 77:17, 83:20, 84:11, 87:6, 89:25, 93:21
**ones** [8] - 6:8, 10:24, 15:5, 25:12, 25:13, 78:6, 84:17
**operate** [1] - 3:23
**operations** [2] - 7:15, 35:17
**opinion** [6] - 16:2, 16:4, 17:6, 20:11, 58:14, 94:17
**opinions** [7] - 11:21, 12:14, 28:14, 58:21, 58:22, 91:21
**opportunity** [1] - 39:24
**oppose** [1] - 74:5
**opposed** [3] - 17:16, 19:7, 31:4
**opposite** [4] - 18:22, 70:7, 71:17, 72:9
**opposition** [1] - 43:7
**orally** [1] - 10:9
**order** [2] - 43:15, 80:8
**orders** [1] - 80:19
**organization** [18] -

4:2, 4:10, 4:11, 30:15, 49:12, 49:14, 49:22, 52:6, 52:7, 55:5, 56:21, 56:23, 65:15, 65:16, 65:21, 79:12, 82:7, 82:8
**organizations** [8] - 82:13, 82:16, 82:18, 83:6, 83:7, 83:10, 83:15, 83:17
**organized** [1] - 78:16
**otherwise** [2] - 25:6, 87:15
**outside** [8] - 14:16, 24:4, 35:12, 36:3, 36:7, 55:17, 69:3, 84:25
**overlapped** [1] - 27:15
**overturned** [1] - 84:18
**overview** [1] - 89:8
**own** [11] - 5:16, 18:17, 18:23, 20:5, 31:16, 37:16, 43:15, 53:12, 53:17, 57:3, 95:11
**owner** [2] - 8:6, 9:19

**P**

**p.m** [1] - 95:19
**P.M** [1] - 1:6
**P.O** [1] - 1:21
**packaging** [1] - 30:18
**paid** [1] - 92:10
**pamphlets** [2] - 55:20, 69:6
**panel** [1] - 32:14
**papers** [1] - 46:9
**pardon** [1] - 53:23
**Parenthood** [16] - 4:16, 4:19, 5:15, 9:25, 10:8, 26:19, 52:12, 56:11, 57:4, 65:24, 66:5, 73:3, 74:11, 82:24, 83:7
**Parenthood's** [1] - 53:8
**parents** [1] - 43:5
**parking** [1] - 16:7
**Parkinson's** [1] - 37:3
**part** [11] - 32:14, 33:15, 33:22, 34:14, 46:20, 69:17, 69:20, 81:3, 81:6, 85:3, 93:4
**partially** [2] - 36:25, 37:3
**participant** [1] - 71:6
**participate** [5] - 5:3, 6:16, 6:24, 14:20, 33:18, 34:25, 39:22,

84:20
**participated** [15] - 5:22, 6:5, 14:24, 52:18, 66:4, 66:20, 66:23, 70:25, 71:21, 83:21, 84:12, 87:18, 87:24, 88:3, 88:18
**participating** [3] - 6:13, 53:20, 54:5
**participation** [2] - 69:15, 71:15
**particular** [9] - 13:16, 16:11, 19:3, 26:21, 61:19, 66:10, 79:19, 89:7, 89:11
**particularly** [1] - 56:4
**partner** [2] - 30:17, 37:6
**past** [3] - 30:20, 31:18, 49:7
**PATEL** [62] - 1:14, 9:22, 13:8, 14:11, 17:1, 17:6, 21:19, 38:10, 38:12, 38:18, 38:24, 39:12, 39:15, 39:19, 40:3, 40:6, 40:17, 40:21, 40:23, 41:5, 41:10, 41:16, 41:20, 42:3, 42:8, 42:11, 42:15, 42:19, 43:1, 43:8, 43:17, 43:21, 43:25, 44:4, 44:10, 44:19, 55:1, 55:6, 55:9, 55:15, 55:20, 55:23, 68:20, 68:23, 69:1, 69:6, 69:9, 70:10, 71:12, 74:5, 74:15, 81:9, 81:14, 92:14, 92:22, 92:25, 93:4, 93:9, 93:12, 94:1, 94:10, 94:12
**pay** [4] - 8:17, 8:24, 9:5, 73:19
**paying** [3] - 36:5, 36:7, 36:13
**PC** [1] - 2:6
**PCAOB** [1] - 49:25
**penalize** [1] - 86:16
**pending** [3] - 46:2, 46:9, 58:6
**Pennsylvania** [1] - 1:16
**people** [27] - 8:4, 11:15, 11:20, 12:2, 12:13, 15:1, 15:8, 15:9, 16:7, 18:8, 20:23, 20:24, 26:18, 43:16, 57:16, 57:19, 58:12, 58:14, 58:21,

58:23, 59:5, 71:22, 72:5, 72:8, 79:2, 84:25
**perhaps** [1] - 8:18
**permit** [2] - 28:10, 72:15
**person** [6] - 19:6, 23:10, 23:17, 23:21, 45:8, 73:5
**person's** [2] - 11:13, 18:21
**personal** [26] - 18:4, 18:15, 19:7, 20:10, 21:1, 21:3, 28:14, 28:19, 28:24, 34:14, 34:18, 41:12, 43:3, 58:14, 58:20, 58:22, 59:3, 82:22, 84:4, 89:10, 91:9, 91:21, 92:1, 93:22, 94:17
**personally** [4] - 19:9, 82:21, 83:16, 83:21
**persons** [5] - 57:23, 70:5, 71:8, 71:17, 72:9
**perspective** [6] - 18:11, 18:14, 27:20, 33:20, 39:21, 77:1
**pertaining** [1] - 53:5
**Philadelphia** [4] - 48:12, 50:5, 50:9, 51:19
**philosophy** [1] - 5:8
**phrased** [1] - 71:10
**physical** [4] - 19:17, 19:22, 19:23, 28:12
**pick** [1] - 75:14
**picked** [1] - 38:15
**place** [1] - 40:25
**plain** [1] - 14:2
**plainly** [1] - 13:2
**Plaintiff** [2] - 1:3, 1:12
**plaintiff** [1] - 80:24
**plan** [1] - 38:1
**plane** [1] - 92:9
**planned** [4] - 7:2, 7:3, 84:25, 86:5
**Planned** [7] - 4:16, 4:19, 5:15, 9:25, 10:7, 26:19, 52:12, 53:8, 56:11, 57:3, 65:23, 66:5, 73:3, 74:10, 82:24, 83:7
**planning** [1] - 37:15
**plans** [3] - 40:24, 86:9, 86:12
**play** [1] - 93:24
**point** [11] - 18:22, 20:24, 20:25, 29:5, 30:12, 34:24, 37:7,

73:19, 75:12, 75:15, 94:23
**poking** [1] - 59:18
**polar** [1] - 18:22
**police** [4] - 78:10, 78:13, 78:18, 79:1
**political** [2] - 28:14, 82:15
**pop** [1] - 94:20
**popped** [1] - 95:5
**Porter** [1] - 64:21
**portraying** [1] - 19:17
**Portugal** [1] - 86:3
**position** [1] - 71:24
**positions** [4] - 50:14, 53:17, 66:12, 73:21
**possible** [4] - 7:17, 7:19, 7:20, 8:2
**potential** [1] - 19:5
**potentially** [1] - 45:3
**practice** [6] - 51:25, 61:2, 61:10, 61:22, 65:5, 79:11
**practicing** [3] - 30:11, 48:13, 51:23
**precipitated** [1] - 34:10
**preconceived** [1] - 31:16
**preparatory** [1] - 80:17
**prepare** [1] - 81:20
**preparing** [1] - 80:14
**prerequisites** [1] - 19:24
**present** [3] - 29:19, 51:4, 51:7
**presented** [5] - 6:18, 16:17, 28:22, 29:5, 30:2, 41:18, 41:24, 88:23, 91:11
**presents** [1] - 29:23
**President's** [1] - 56:5
**pressing** [4] - 6:23, 80:4, 85:20, 92:8
**presumably** [5] - 5:6, 6:14, 37:25, 68:8, 95:9
**presume** [1] - 73:4
**presumed** [2] - 29:18, 92:23
**presuming** [1] - 53:7
**presumption** [3] - 42:9, 72:24, 75:3
**pretty** [7] - 15:2, 27:6, 29:9, 40:15, 56:17, 58:10
**prevent** [2] - 38:3, 38:4
**prevented** [1] - 54:20

**preview** [1] - 14:20
**principal** [1] - 45:25
**principle** [1] - 18:22
**principles** [1] - 42:19
**private** [7] - 4:1, 4:2, 4:3, 30:17, 79:12, 79:13, 86:17
**pro** [3] - 6:5, 10:18, 10:19
**pro-choice** [3] - 6:5, 10:18, 10:19
**problem** [8] - 11:25, 14:15, 22:20, 24:11, 36:22, 59:20, 60:18, 94:17
**proceedings** [2] - 65:11, 96:6
**process** [5] - 20:1, 20:18, 39:23, 40:13, 75:7
**processing** [1] - 20:1
**products** [1] - 56:23
**program** [1] - 55:6
**programs** [2] - 83:13, 83:14
**property** [1] - 68:18
**proposing** [1] - 14:11
**propriety** [1] - 17:7
**prosecutors** [1] - 62:3
**Prospective** [19] - 3:5, 3:8, 21:16, 21:22, 24:18, 24:24, 44:16, 45:9, 47:6, 47:11, 59:16, 63:13, 73:12, 75:19, 77:16, 77:19, 81:21, 87:7, 94:6
**prospective** [15] - 14:12, 22:1, 25:3, 45:12, 47:13, 60:9, 60:13, 63:10, 63:15, 75:22, 77:22, 81:13, 81:23, 87:1, 87:9
**PROSPECTIVE** [360] - 3:17, 3:19, 3:21, 3:25, 4:3, 4:7, 4:15, 4:18, 4:22, 5:1, 5:5, 5:9, 5:13, 5:18, 5:24, 6:3, 6:10, 6:19, 6:21, 7:1, 7:6, 7:9, 7:11, 7:14, 7:19, 7:23, 8:1, 8:4, 8:10, 8:12, 9:7, 9:14, 9:17, 10:4, 10:10, 10:13, 10:20, 11:1, 11:5, 11:11, 11:17, 11:23, 12:1, 12:6, 15:4, 15:17, 15:21, 17:22, 18:2, 18:6, 18:10, 18:13, 18:18, 18:24, 19:11, 21:8, 21:12, 21:15,

22:10, 22:15, 22:19, 22:22, 23:12, 23:15, 23:23, 24:17, 25:8, 25:11, 25:16, 25:19, 25:22, 25:25, 26:6, 26:9, 26:13, 26:18, 26:23, 27:3, 27:6, 27:13, 27:23, 28:3, 29:1, 29:4, 29:16, 30:4, 30:10, 30:13, 30:16, 30:21, 30:24, 31:6, 31:15, 31:19, 31:21, 31:24, 32:3, 32:5, 32:8, 32:12, 32:16, 32:20, 32:24, 33:2, 33:6, 33:11, 33:13, 33:22, 33:25, 34:6, 34:12, 34:20, 35:2, 35:6, 35:10, 35:15, 35:17, 35:22, 35:25, 36:14, 36:18, 36:23, 37:2, 37:9, 37:13, 38:4, 38:11, 38:17, 38:22, 39:1, 39:18, 40:1, 40:4, 40:7, 40:10, 40:20, 40:22, 41:2, 41:9, 41:14, 41:19, 41:25, 42:7, 42:10, 42:18, 42:24, 43:2, 43:11, 43:20, 43:24, 44:9, 44:15, 45:22, 45:24, 46:7, 46:14, 46:25, 47:20, 47:23, 48:4, 48:8, 48:12, 48:14, 48:17, 48:20, 48:25, 49:2, 49:5, 49:8, 49:11, 49:15, 49:17, 49:21, 49:25, 50:4, 50:11, 50:15, 50:19, 50:22, 51:2, 51:6, 51:11, 51:15, 51:17, 51:21, 51:24, 52:1, 52:4, 52:11, 52:15, 52:21, 52:24, 53:3, 53:5, 53:11, 53:16, 53:22, 53:24, 54:2, 54:6, 54:13, 54:18, 54:24, 55:3, 55:8, 55:11, 55:19, 55:22, 55:25, 56:4, 56:8, 56:13, 56:16, 56:19, 56:25, 57:8, 57:15, 57:20, 58:2, 58:9, 58:11, 59:7, 59:14, 60:24, 61:1, 61:4, 61:6, 61:11, 61:14, 61:17, 61:21, 61:24, 62:4, 62:7, 62:11, 62:14, 62:17, 63:5, 64:1, 64:3, 64:7,

64:12, 64:16, 64:20, 64:25, 65:4, 65:9, 65:13, 65:20, 65:23, 66:2, 66:5, 66:7, 66:18, 66:23, 67:2, 67:15, 67:18, 67:21, 67:24, 68:3, 68:7, 68:13, 68:17, 68:22, 68:24, 69:5, 69:8, 69:18, 69:21, 69:24, 70:2, 70:17, 70:19, 71:4, 71:19, 71:25, 72:3, 72:6, 72:11, 72:14, 73:1, 73:6, 76:5, 76:8, 76:10, 76:13, 76:16, 76:19, 76:22, 77:2, 77:7, 78:2, 78:9, 78:12, 78:16, 78:20, 78:23, 79:6, 79:10, 79:13, 79:16, 79:18, 79:21, 79:24, 80:2, 80:6, 80:12, 80:17, 80:21, 80:25, 81:7, 82:3, 82:12, 82:19, 82:23, 83:4, 83:11, 84:7, 84:16, 84:23, 85:15, 85:22, 85:25, 86:2, 86:5, 86:8, 86:11, 86:25, 87:12, 87:21, 87:24, 88:3, 88:10, 88:15, 89:12, 89:15, 89:20, 89:22, 90:3, 90:5, 90:8, 90:11, 90:14, 90:18, 90:22, 91:1, 91:10, 91:14, 91:19, 91:24, 92:2, 92:6, 92:9, 92:21, 92:24, 93:3, 93:8, 93:11, 93:22
**protest** [14] - 5:22, 10:17, 27:12, 27:18, 66:24, 69:15, 69:16, 71:16, 71:22, 72:1, 87:18, 87:23
**protested** [1] - 74:11
**protesting** [1] - 69:19
**protests** [11] - 6:1, 27:21, 52:19, 66:21, 69:20, 70:15, 71:1, 84:12, 88:12
**prove** [7] - 15:14, 23:4, 29:13, 42:5, 42:12, 42:16, 92:25
**proved** [3] - 23:9, 67:13, 93:15
**proven** [7] - 17:18, 23:3, 23:21, 23:22, 42:22, 85:9, 89:1
**provide** [4] - 28:11,

67:8, 67:13, 88:23
**provided** [2] - 29:8, 65:22
**purpose** [2] - 16:9, 53:20
**pursue** [1] - 59:22
**pursuing** [2] - 44:22, 58:22
**push** [2] - 59:23, 86:6
**put** [20] - 3:7, 5:15, 6:17, 19:3, 20:12, 21:3, 21:23, 22:12, 40:14, 40:25, 41:11, 41:20, 41:22, 42:20, 54:12, 60:14, 60:15, 63:17, 81:25, 95:1

**Q**

**quarter** [1] - 75:13
**Questions** [2] - 3:13, 45:17
**questions** [29] - 9:21, 9:22, 22:5, 27:10, 28:6, 30:7, 32:19, 38:9, 41:6, 44:11, 44:12, 54:25, 58:3, 60:4, 62:9, 62:24, 63:7, 68:19, 69:10, 77:8, 77:9, 77:11, 77:12, 81:8, 83:20, 86:19, 86:21, 92:13, 94:2
**quick** [1] - 47:10
**quickly** [1] - 42:13
**quite** [4] - 26:14, 34:1, 75:2, 75:6

**R**

**radio** [1] - 26:2
**rallies** [5] - 6:16, 10:17, 84:13, 88:13, 88:19
**rally** [3] - 5:22, 87:18, 87:22
**rape** [1] - 33:14
**rational** [2] - 39:17, 39:20
**rationally** [1] - 35:2
**reach** [3] - 32:7, 76:18, 90:10
**reached** [2] - 68:5, 75:2
**read** [5] - 10:12, 10:14, 26:1, 26:17, 56:24
**reading** [1] - 43:12
**realizing** [2] - 8:13, 9:1

**really** [9] - 3:25, 8:20, 21:6, 25:5, 30:25, 34:6, 34:7, 38:5, 94:22
**reason** [3] - 10:21, 86:10, 94:16
**reasonable** [14] - 15:14, 22:25, 23:3, 23:4, 23:9, 29:13, 42:5, 42:16, 42:23, 67:14, 85:10, 89:1, 93:1, 93:15
**reasonably** [1] - 74:12
**reasons** [1] - 95:11
**received** [3] - 46:9, 55:20, 69:6
**recent** [2] - 6:7, 76:12
**recently** [2] - 10:2, 74:11
**Recess** [1] - 75:16
**recognize** [1] - 11:13
**recollection** [1] - 46:8
**record** [4] - 25:7, 42:14, 47:17, 63:20
**reference** [1] - 62:18
**reflection** [1] - 45:4
**regarding** [5] - 5:23, 20:24, 28:1, 28:15, 87:18
**regularly** [1] - 10:14
**regulate** [1] - 49:25
**regulates** [1] - 55:3
**regulatory** [5] - 30:16, 49:22, 49:23, 55:1, 65:1
**rehabilitate** [1] - 45:3
**relate** [2] - 68:14, 83:17
**related** [2] - 7:9, 10:20
**relates** [1] - 44:2
**relating** [5] - 16:12, 53:6, 67:4, 83:23, 88:20
**release** [1] - 3:3
**religion** [1] - 23:16
**religious** [2] - 23:20, 28:14
**rely** [1] - 25:18
**relying** [2] - 29:6, 93:4
**remain** [2] - 25:1, 45:10
**remains** [1] - 75:11
**remember** [13] - 25:12, 25:14, 25:25, 26:10, 26:13, 26:16, 26:20, 54:11, 68:10, 68:16, 70:24, 82:25, 90:12
**render** [2] - 23:13, 23:20

**rental** [2] - 8:6, 9:19
**rented** [1] - 8:8
**repeating** [1] - 11:17
**report** [1] - 24:2
**REPORTER** [1] - 96:1
**Reporter** [3] - 2:20,
2:21, 96:10
**represented** [1] - 63:2
**reproductive** [39] -
4:12, 5:23, 6:7, 6:14,
10:22, 10:25, 11:6,
11:10, 13:15, 27:7,
27:24, 28:15, 41:7,
43:18, 44:8, 52:8,
53:19, 53:20, 54:4,
57:23, 57:25, 65:17,
66:15, 67:4, 69:17,
71:3, 82:8, 83:18,
83:24, 87:18, 88:1,
88:7, 88:9, 88:13,
88:14, 88:16, 88:21,
89:6, 92:20
**request** [1] - 74:19
**required** [3] - 29:21,
75:7, 89:5
**requisite** [1] - 89:5
**reschedule** [1] - 8:17
**rescheduled** [1] - 9:10
**Reserve** [1] - 64:22
**resolved** [1] - 47:24
**resources** [1] - 65:5
**respect** [5] - 57:3,
57:7, 57:22, 69:17,
71:2
**respond** [1] - 74:14
**responding** [1] - 95:7
**response** [3] - 26:14,
27:2, 27:5
**responses** [1] - 41:6
**responsibility** [1] -
23:7
**responsible** [1] -
46:12
**rest** [4] - 3:3, 30:6,
36:9, 94:21
**restrain** [1] - 94:22
**retired** [2] - 61:7, 65:6
**returning** [1] - 86:3
**reunion** [3] - 7:4, 7:10,
9:3
**reviewing** [2] - 41:21,
93:14
**reword** [2] - 12:12,
58:17
**Rights** [5] - 1:15, 46:1,
46:5, 46:20, 46:23
**rights** [19] - 10:22,
10:25, 11:6, 27:7,
27:24, 41:8, 46:17,
69:17, 70:1, 70:19,

71:3, 82:13, 88:1,
88:7, 88:9, 88:13,
88:14, 88:16, 88:21
**rise** [3] - 36:15, 36:18,
36:19
**RMR** [2] - 2:21, 96:9
**ROBERT** [1] - 2:5
**Robert** [1] - 2:6
**Roe** [1] - 84:17
**role** [5] - 7:15, 37:16,
46:13, 83:9, 91:6
**Room** [2] - 2:22, 96:10
**roughly** [2] - 4:20,
78:19
**ruled** [1] - 16:16
**running** [3] - 83:12,
83:13, 84:19
**Rush** [1] - 27:16
**rush** [2] - 9:5, 9:8

**S**

**Sandra** [1] - 27:16
**SANJAY** [1] - 1:14
**sat** [1] - 68:5
**satisfaction** [1] - 23:5
**saw** [1] - 71:23
**scared** [1] - 34:1
**scheduled** [1] - 80:12
**school** [1] - 65:6
**School** [1] - 68:25
**science** [1] - 62:15
**scientist** [1] - 62:13
**second** [4] - 22:7,
25:1, 48:11, 52:17
**Section** [1] - 1:15
**see** [3] - 19:16, 31:12,
93:14
**seeing** [1] - 47:9
**seek** [2] - 18:8, 58:12
**SEFRANEK** [1] - 96:3
**Sefranek** [3] - 2:21,
96:9, 96:9
**select** [3] - 8:20, 8:23,
9:4
**selected** [12] - 7:17,
8:16, 32:22, 34:25,
35:4, 37:18, 38:18,
39:6, 39:17, 39:25,
40:23, 54:22
**self** [1] - 49:22
**self-regulatory** [1] -
49:22
**send** [2] - 10:8, 10:11
**sense** [2] - 51:10,
58:23
**sensed** [1] - 92:14
**separate** [10] - 28:25,
30:5, 59:4, 66:12,
66:14, 67:10, 83:22,

85:11, 88:21, 94:15
**separately** [2] - 61:5,
66:16
**September** [1] - 86:3
**series** [1] - 20:19
**serious** [1] - 34:15
**serve** [2] - 38:15,
54:22
**served** [4] - 32:20,
76:10, 77:4, 89:22
**service** [7] - 34:19,
40:24, 55:12, 55:16,
77:3, 93:5, 93:19
**services** [4] - 13:3,
13:15, 28:11, 89:6
**serving** [3] - 45:24,
54:20, 94:18
**SESSION** [2] - 1:7, 1:8
**set** [4] - 13:13, 40:15,
92:16, 93:6
**several** [5] - 44:25,
60:4, 87:25, 88:5,
88:6
**share** [1] - 57:5
**short** [1] - 15:10
**shortly** [1] - 19:15
**show** [2] - 9:18, 13:20
**showing** [1] - 11:4
**shown** [1] - 15:22
**side** [5] - 37:3, 44:21,
70:8, 71:9, 71:17
**sides** [1] - 12:21, 91:8
**similar** [6] - 40:15,
40:18, 50:12, 55:13,
68:11, 77:1
**similar-type** [1] -
50:12
**simple** [1] - 42:19
**simply** [2] - 52:13,
79:4
**sister** [10] - 3:17, 3:19,
5:25, 60:24, 60:25,
64:17, 65:2, 65:7,
65:12
**sister-in-law** [1] - 5:25
**sit** [4] - 16:18, 58:17,
75:23, 80:4
**site** [1] - 55:12
**sitting** [5] - 22:16,
24:3, 35:12, 36:22,
85:20
**situation** [2] - 23:13,
93:24
**six** [3] - 67:24, 76:10,
77:3
**sized** [1] - 30:17
**slept** [1] - 40:22
**slightly** [2] - 8:3, 45:4
**slim** [1] - 70:13
**smaller** [2] - 87:25,

88:5
**smarter** [1] - 25:19
**social** [3] - 26:9,
83:12, 84:19
**Society** [2] - 1:18,
1:20
**someone** [2] - 54:14,
82:6
**someplace** [3] - 52:2,
61:15, 76:7
**sometime** [1] - 10:4
**sometimes** [1] - 37:14
**somewhere** [1] -
14:24
**sorry** [25] - 3:18, 6:20,
7:5, 7:25, 10:10,
11:19, 16:16, 39:4,
40:3, 40:10, 42:15,
43:25, 48:6, 49:16,
54:18, 58:5, 62:6,
71:19, 78:12, 80:17,
82:23, 88:3, 89:14,
90:5, 94:13
**sort** [8] - 20:21, 40:18,
40:24, 52:19, 53:10,
59:25, 78:22, 89:8
**sounds** [1] - 30:22,
43:21, 45:20
**source** [2] - 22:13,
22:21
**space** [1] - 82:16
**speaking** [5] - 13:16,
47:16, 76:21, 89:3,
90:16
**specialize** [1] - 61:18
**specialty** [1] - 79:20
**specific** [6] - 6:8,
13:14, 46:8, 64:5,
86:11, 91:7
**specifically** [6] - 46:5,
57:10, 57:21, 60:1,
83:18, 90:14
**specifics** [2] - 36:25,
78:24
**specify** [2] - 82:17,
88:8
**spectrum** [2] - 61:20,
71:9
**spite** [2] - 58:1, 70:3
**spoken** [1] - 27:16
**stand** [2] - 21:24,
66:15
**standard** [1] - 62:18
**Standards** [1] - 62:13
**standing** [2] - 25:1,
45:10
**stands** [1] - 5:15
**start** [8] - 22:6, 22:7,
37:19, 45:19, 63:22,
80:13, 82:21, 95:17

**started** [1] - 31:3
**starting** [7] - 7:22,
31:7, 59:10, 59:18,
59:24, 59:25, 73:14
**statement** [1] - 16:2
**STATES** [3] - 1:1, 1:2,
1:9
**States** [4] - 2:22, 18:9,
58:13, 59:6
**stayed** [1] - 8:3
**staying** [1] - 8:11
**Stenographic** [1] -
2:20
**stenographic** [1] -
96:5
**step** [20] - 3:6, 20:4,
21:13, 24:14, 24:25,
44:13, 47:4, 59:13,
60:10, 60:11, 63:8,
63:14, 73:10, 77:13,
77:20, 81:11, 81:22,
86:23, 87:8, 94:4
**STEPHEN** [1] - 1:20
**stick** [1] - 26:11
**sticks** [1] - 31:9
**still** [7] - 17:17, 37:7,
48:13, 51:14, 51:23,
58:1, 64:15
**stop** [2] - 75:14, 94:23
**stops** [1] - 36:10
**strategy** [1] - 83:11
**Street** [3] - 1:13, 1:18,
2:10
**strictly** [2] - 5:16,
53:10
**strike** [10] - 44:17,
74:2, 74:7, 74:9,
74:20, 74:21, 81:14,
81:19, 87:2, 94:8
**strong** [3] - 16:23,
28:20, 83:23
**strongly** [9] - 11:2,
11:3, 14:7, 18:4,
43:22, 58:10, 67:4,
71:5, 88:17
**struck** [1] - 26:24
**student** [1] - 27:14
**studied** [6] - 3:15,
30:8, 51:13, 60:22,
64:14, 79:8
**study** [1] - 31:7
**stuff** [2] - 10:12, 11:14
**subconscious** [1] -
20:22
**subconsciously** [1] -
18:20, 59:9
**subject** [4] - 62:5,
62:8, 74:13, 79:19
**subjective** [4] - 20:5,
20:7, 20:11, 20:15

**subsequently** [1] - 64:20
**successful** [1] - 11:7
**succinct** [1] - 70:11
**succinctly** [1] - 70:23
**sufficient** [1] - 94:14
**sufficiently** [1] - 81:3
**suggest** [1] - 95:12
**suggested** [1] - 95:13
**suggestion** [1] - 60:2
**suit** [1] - 90:20
**Suite** [2] - 1:24, 2:4
**suite** [1] - 62:18
**summary** [1] - 13:18
**summer** [1] - 7:2
**Superior** [2] - 32:1, 76:7
**supervised** [2] - 46:18, 46:24
**supervision** [1] - 46:1
**supervisor** [2] - 46:12, 46:22
**support** [3] - 56:5, 58:7, 83:23
**supporter** [3] - 56:11, 56:15, 73:3
**supporting** [1] - 6:17
**suppose** [1] - 11:25
**supposed** [5] - 20:8, 20:12, 20:13, 31:12, 31:13
**Supreme** [2] - 84:20, 84:25
**swear** [4] - 21:24, 25:2, 45:10, 75:20
**sworn** [11] - 3:8, 22:1, 25:3, 45:12, 47:13, 60:13, 63:15, 75:22, 77:22, 81:23, 87:9
**sympathetic** [5] - 5:7, 6:13, 53:8, 53:10, 66:9
**sympathy** [1] - 66:12
**symptoms** [1] - 37:4
**system** [8] - 29:6, 43:14, 43:16, 48:5, 48:7, 49:4, 50:5, 50:6
**systems** [3] - 43:3, 43:4, 50:9

**T**

**table** [2] - 63:2, 73:5
**tad** [1] - 40:9
**tailored** [2] - 6:9, 6:11
**TAMARA** [1] - 96:3
**Tamara** [3] - 2:21, 96:9, 96:9
**teach** [2] - 68:23,

68:24
**teacher** [1] - 68:21
**team** [2] - 80:10, 81:4
**technology** [1] - 7:14
**ten** [4] - 4:23, 10:1, 75:13, 90:15
**tend** [2] - 35:22, 37:4
**tended** [2] - 62:4, 62:7
**terms** [38] - 5:14, 5:16, 6:17, 7:12, 7:21, 8:22, 9:8, 12:11, 13:18, 19:4, 19:9, 20:8, 28:5, 36:22, 44:21, 48:18, 49:3, 50:8, 53:7, 53:18, 53:25, 60:3, 62:2, 65:3, 66:15, 68:15, 75:7, 75:10, 81:2, 83:9, 83:21, 83:22, 85:3, 85:13, 86:14, 88:12, 91:5, 95:5
**testify** [2] - 29:19, 79:2
**testimony** [2] - 20:10, 41:22
**text** [1] - 83:13
**THE** [729] - 1:1, 1:1, 1:9, 3:2, 3:6, 3:9, 3:17, 3:18, 3:19, 3:20, 3:21, 3:22, 3:25, 4:1, 4:3, 4:6, 4:7, 4:9, 4:15, 4:18, 4:20, 4:22, 4:24, 5:1, 5:3, 5:5, 5:6, 5:9, 5:10, 5:13, 5:14, 5:18, 5:19, 5:24, 6:1, 6:3, 6:6, 6:10, 6:12, 6:19, 6:20, 6:21, 6:23, 7:1, 7:6, 7:7, 7:9, 7:10, 7:11, 7:12, 7:14, 7:16, 7:19, 7:21, 7:23, 7:24, 8:1, 8:2, 8:4, 8:8, 8:10, 8:11, 8:12, 8:13, 9:7, 9:12, 9:14, 9:15, 9:17, 9:20, 9:23, 10:4, 10:9, 10:10, 10:13, 10:20, 11:1, 11:5, 11:11, 11:17, 11:23, 12:1, 12:6, 12:9, 12:11, 12:16, 13:7, 13:11, 13:23, 14:10, 14:15, 15:4, 15:13, 15:17, 15:21, 16:4, 16:10, 16:16, 16:18, 17:4, 17:10, 17:13, 17:22, 17:24, 18:2, 18:6, 18:10, 18:13, 18:18, 18:24, 19:2, 19:11, 19:14, 20:7, 21:8, 21:10,

21:12, 21:13, 21:15, 21:17, 21:20, 21:23, 22:2, 22:10, 22:12, 22:15, 22:18, 22:19, 22:20, 22:22, 22:23, 23:12, 23:14, 23:15, 23:19, 23:23, 23:24, 24:8, 24:11, 24:14, 24:17, 24:21, 24:23, 24:25, 25:4, 25:8, 25:9, 25:11, 25:13, 25:16, 25:18, 25:19, 25:20, 25:22, 25:23, 25:25, 26:5, 26:6, 26:7, 26:9, 26:10, 26:13, 26:15, 26:18, 26:21, 26:23, 27:1, 27:3, 27:4, 27:6, 27:9, 27:13, 27:20, 27:23, 27:25, 28:3, 28:4, 29:1, 29:2, 29:4, 29:11, 29:16, 29:17, 30:4, 30:6, 30:10, 30:11, 30:13, 30:14, 30:16, 30:19, 30:21, 30:22, 30:24, 30:25, 31:6, 31:9, 31:15, 31:17, 31:19, 31:20, 31:21, 31:22, 31:24, 32:2, 32:3, 32:4, 32:5, 32:6, 32:8, 32:10, 32:12, 32:14, 32:16, 32:18, 32:20, 32:22, 32:24, 32:25, 33:2, 33:3, 33:6, 33:9, 33:11, 33:12, 33:13, 33:15, 33:22, 33:23, 33:25, 34:5, 34:6, 34:9, 34:12, 34:13, 34:20, 34:21, 35:2, 35:4, 35:6, 35:9, 35:10, 35:14, 35:15, 35:16, 35:17, 35:20, 35:22, 35:24, 35:25, 36:2, 36:14, 36:15, 36:18, 36:21, 36:23, 36:24, 37:2, 37:8, 37:9, 37:11, 37:13, 37:18, 38:4, 38:9, 38:11, 38:17, 38:22, 39:1, 39:4, 39:6, 39:13, 39:18, 40:1, 40:4, 40:7, 40:9, 40:10, 40:20, 40:22, 41:2, 41:9, 41:14, 41:19, 41:25, 42:7, 42:10, 42:13, 42:18, 42:24, 43:2, 43:11, 43:20, 43:24, 44:3, 44:9, 44:11, 44:13, 44:15,

44:18, 44:20, 45:10, 45:13, 45:22, 45:23, 45:24, 46:4, 46:7, 46:11, 46:14, 46:19, 46:25, 47:1, 47:4, 47:7, 47:9, 47:12, 47:14, 47:20, 47:22, 47:23, 47:25, 48:4, 48:6, 48:8, 48:10, 48:12, 48:13, 48:14, 48:15, 48:17, 48:18, 48:20, 48:21, 48:25, 49:1, 49:2, 49:3, 49:5, 49:7, 49:8, 49:9, 49:11, 49:13, 49:15, 49:16, 49:17, 49:18, 49:21, 49:23, 49:25, 50:2, 50:4, 50:8, 50:11, 50:13, 50:15, 50:16, 50:19, 50:20, 50:22, 50:23, 51:2, 51:3, 51:6, 51:9, 51:11, 51:12, 51:15, 51:16, 51:17, 51:19, 51:21, 51:23, 51:24, 51:25, 52:1, 52:2, 52:4, 52:5, 52:11, 52:13, 52:15, 52:17, 52:21, 52:23, 52:24, 53:1, 53:3, 53:4, 53:5, 53:7, 53:11, 53:13, 53:16, 53:18, 53:22, 53:24, 53:25, 54:2, 54:3, 54:6, 54:7, 54:13, 54:15, 54:18, 54:21, 54:24, 54:25, 55:3, 55:8, 55:11, 55:19, 55:22, 55:25, 56:4, 56:8, 56:13, 56:16, 56:19, 56:25, 57:8, 57:12, 57:15, 57:20, 58:2, 58:4, 58:9, 58:11, 58:14, 58:20, 59:7, 59:10, 59:13, 59:14, 59:15, 59:17, 60:8, 60:10, 60:14, 60:24, 60:25, 61:1, 61:2, 61:4, 61:5, 61:6, 61:8, 61:11, 61:12, 61:14, 61:15, 61:17, 61:18, 61:21, 61:22, 61:24, 62:1, 62:4, 62:6, 62:7, 62:9, 62:11, 62:14, 62:17, 62:24, 63:5, 63:8, 63:11, 63:14, 63:16, 64:1, 64:2, 64:3, 64:5, 64:7, 64:9, 64:12, 64:13, 64:16, 64:18, 64:20,

64:23, 64:25, 65:2, 65:4, 65:7, 65:9, 65:10, 65:13, 65:14, 65:20, 65:21, 65:23, 65:25, 66:2, 66:3, 66:5, 66:6, 66:7, 66:8, 66:18, 66:19, 66:23, 66:25, 67:2, 67:3, 67:15, 67:16, 67:18, 67:19, 67:21, 67:22, 67:24, 68:1, 68:3, 68:4, 68:7, 68:8, 68:13, 68:15, 68:17, 68:19, 68:22, 68:24, 69:5, 69:8, 69:10, 69:18, 69:21, 69:24, 70:2, 70:9, 70:12, 70:17, 70:18, 70:19, 70:21, 71:4, 71:13, 71:19, 71:25, 72:3, 72:6, 72:11, 72:14, 72:19, 73:1, 73:6, 73:8, 73:13, 74:3, 74:7, 74:14, 74:21, 75:17, 75:20, 75:23, 76:5, 76:6, 76:8, 76:9, 76:10, 76:12, 76:13, 76:14, 76:16, 76:17, 76:19, 76:20, 76:22, 76:25, 77:2, 77:3, 77:7, 77:8, 77:10, 77:13, 77:17, 77:20, 77:23, 78:2, 78:3, 78:9, 78:11, 78:12, 78:14, 78:16, 78:18, 78:20, 78:21, 78:23, 78:25, 79:6, 79:7, 79:10, 79:11, 79:13, 79:15, 79:16, 79:18, 79:19, 79:21, 79:23, 79:24, 79:25, 80:2, 80:3, 80:6, 80:11, 80:12, 80:14, 80:17, 80:20, 80:21, 80:23, 80:25, 81:2, 81:7, 81:8, 81:11, 81:19, 81:22, 81:24, 82:3, 82:4, 82:12, 82:17, 82:19, 82:21, 82:23, 83:2, 83:4, 83:9, 83:11, 83:15, 84:7, 84:11, 84:16, 84:22, 84:23, 85:2, 85:15, 85:19, 85:22, 85:24, 85:25, 86:1, 86:2, 86:4, 86:5, 86:6, 86:8, 86:9, 86:11, 86:14, 86:21, 86:23, 86:25, 87:3, 87:5, 87:8, 87:10, 87:12, 87:13,

36:16, 63:4, 73:4,
80:7, 80:11, 80:12,
80:15, 80:18, 81:4,
81:20, 95:19
**TRIAL** [2] - 1:4, 1:8
**triggered** [1] - 33:7
**trip** [4] - 7:3, 9:9, 9:11,
92:10
**trouble** [1] - 58:18
**true** [2] - 96:4, 96:5
**trust** [1] - 11:22
**try** [6] - 18:18, 18:19,
59:1, 70:22, 84:9,
85:17
**trying** [3] - 16:9, 38:2,
80:10
**Tupelo** [1] - 1:21
**turn** [1] - 14:3
**twice** [1] - 93:18
**two** [15] - 5:1, 6:5,
8:25, 10:5, 10:18,
27:23, 28:10, 30:5,
36:4, 40:22, 41:4,
65:24, 85:23, 89:22,
94:15
**type** [4] - 50:12, 55:1,
55:9, 90:16
**types** [1] - 27:7

## U

**U.S** [3] - 1:12, 46:16,
46:21
**ultimately** [2] - 32:19,
46:17
**umbrage** [1] - 73:17
**understood** [2] -
20:14, 38:14
**unfair** [1] - 75:1
**unified** [1] - 15:2
**unique** [1] - 37:16
**United** [5] - 2:22, 18:9,
35:18, 58:13, 59:6
**UNITED** [3] - 1:1, 1:2,
1:9
**University** [2] - 27:15,
68:25
**unjustified** [1] - 28:10
**unless** [1] - 8:21
**unlike** [1] - 75:4
**up** [36] - 3:6, 3:9, 9:2,
9:15, 9:18, 10:2,
19:13, 22:2, 24:25,
25:4, 32:25, 34:9,
35:1, 35:11, 45:14,
47:15, 60:10, 60:11,
60:16, 63:14, 74:3,
75:15, 75:24, 77:20,
77:23, 80:7, 80:15,
81:22, 81:24, 87:8,

87:21, 87:22, 87:24,
88:2, 88:3, 88:6,
88:10, 88:11, 88:15,
88:17, 89:12, 89:14,
89:15, 89:18, 89:20,
89:21, 89:22, 89:25,
90:3, 90:4, 90:5,
90:7, 90:8, 90:9,
90:11, 90:12, 90:14,
90:16, 90:18, 90:20,
90:22, 90:23, 91:1,
91:2, 91:10, 91:13,
91:14, 91:15, 91:19,
91:22, 91:24, 91:25,
92:2, 92:4, 92:6,
92:7, 92:9, 92:13,
92:21, 92:24, 93:3,
93:8, 93:11, 93:19,
93:22, 94:2, 94:4,
94:7, 94:9, 94:11,
94:13, 95:3, 95:5,
95:9
**theft** [1] - 68:18
**themselves** [1] - 13:4
**therapist** [1] - 35:7
**therapy** [2] - 40:13,
41:4
**they've** [4] - 44:25,
60:4, 73:14, 83:3
**thinking** [3] - 22:14,
29:3, 29:4
**Thomas** [1] - 1:18
**thomas** [1] - 1:20
**thoughts** [1] - 5:14
**three** [6] - 32:21, 50:4,
59:19, 76:13, 80:9,
81:4
**ticket** [1] - 92:9
**tie** [1] - 11:5
**today** [2] - 20:20,
32:15
**took** [1] - 73:17
**top** [1] - 82:25
**topic** [1] - 93:23
**totally** [1] - 66:16
**touch** [1] - 10:24
**toward** [2] - 16:8, 20:4
**towards** [2] - 6:9, 63:3
**track** [1] - 44:3
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 96:4,
96:6
**transitioning** [3] - 4:4,
4:6, 4:7
**traumatic** [1] - 40:11
**traumatizing** [1] - 34:2
**treat** [1] - 79:2
**trial** [20] - 6:25, 8:18,
31:18, 32:23, 33:19,
34:4, 34:17, 36:5,

87:10, 87:13, 88:2,
94:16, 94:20, 95:5
**updates** [1] - 55:11
**usefulness** [1] - 73:23

## V

**VA** [1] - 2:11
**vacation** [5] - 7:4,
7:21, 8:19, 86:4,
86:5
**value** [1] - 18:16
**variety** [1] - 76:22
**various** [1] - 19:17
**verdict** [8] - 14:21,
32:6, 32:7, 68:4,
68:5, 76:18, 90:9,
90:10
**verdicts** [1] - 76:17
**view** [10] - 18:22,
20:24, 20:25, 59:25,
63:3, 70:7, 71:5,
72:9, 77:1, 80:11
**viewed** [1] - 19:9
**viewpoint** [3] - 12:18,
12:19, 18:25
**viewpoints** [1] - 12:17
**views** [24] - 5:16, 6:14,
15:8, 16:23, 17:15,
19:9, 28:24, 30:3,
53:9, 58:1, 66:9,
67:4, 67:6, 67:7,
67:11, 83:22, 84:10,
85:6, 85:12, 88:20,
89:10, 91:9, 92:1
**violation** [1] - 46:2
**violent** [1] - 76:23
**voice** [1] - 39:14
**vote** [3] - 15:11, 23:2,
23:5
**voters'** [1] - 70:19
**vs** [1] - 1:4

## W

**wade** [1] - 84:17
**wait** [3] - 17:5, 30:1,
31:12
**waiting** [2] - 31:4,
40:18
**walking** [1] - 16:7
**WALSH** [8] - 2:8, 47:8,
74:1, 74:6, 74:8,
86:22, 87:2, 94:8
**wane** [1] - 37:4
**wants** [1] - 57:9
**Washington** [8] - 1:5,
1:13, 1:16, 1:25, 2:4,
2:23, 68:25, 96:11
**wasting** [1] - 45:7

**watch** [1] - 39:23
**ways** [3] - 11:22, 14:7,
54:2
**week** [7] - 7:2, 7:7,
8:17, 8:21, 9:1, 41:4,
54:19
**weeks** [4] - 32:21,
80:9, 81:4, 85:23
**weigh** [1] - 91:12
**whole** [1] - 34:2
**wife** [13] - 48:5, 48:6,
49:3, 51:1, 51:2,
51:14, 55:2, 56:6,
64:1, 64:15, 64:16,
64:18, 65:11
**WILLIAM** [2] - 1:6, 2:8
**willing** [5] - 8:17, 8:25,
9:2, 9:3, 9:9
**willingness** [1] - 9:8
**wish** [1] - 35:6
**withdraw** [2] - 20:14,
94:12
**witness** [6] - 16:1,
41:22, 54:16, 60:11,
77:21, 95:7
**woman** [2] - 57:9, 59:3
**woman's** [4] - 12:4,
16:23, 18:4, 58:8
**women** [7] - 10:22,
16:7, 27:7, 29:7,
57:16, 57:19, 57:21
**Women's** [14] - 6:4,
6:6, 10:17, 10:21,
10:23, 52:22, 53:18,
56:2, 83:7, 84:13,
84:23, 87:24, 88:4,
88:6
**women's** [6] - 6:11,
11:5, 69:25, 70:15,
88:15
**wording** [2] - 14:16,
45:4
**words** [5] - 15:13,
19:8, 66:14, 83:25,
88:22
**work-related** [1] - 7:9
**workforce** [1] - 11:7
**works** [6] - 30:8, 37:9,
49:4, 49:11, 49:21,
82:15
**worldview** [1] - 84:10
**worse** [1] - 44:21
**write** [1] - 86:15
**wrongful** [1] - 16:6
**wrote** [2] - 25:11,
25:13
**WTOP** [1] - 26:2

## Y

**Yahoo** [1] - 55:13
**year** [2] - 5:1, 67:21
**years** [15] - 4:23, 5:2,
10:1, 10:5, 31:7,
56:14, 61:24, 61:25,
64:21, 65:5, 70:4,
74:11, 76:13, 78:20,
90:15
**York** [2] - 7:3, 67:25
**you-all** [1] - 60:2
**young** [1] - 43:6
**yourself** [10] - 3:7,
3:10, 14:25, 20:3,
56:7, 60:15, 63:16,
84:15, 87:11, 94:22

## Z

**zero** [1] - 12:23