1               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

    UNITED STATES OF AMERICA,        ) Criminal Action
3                                    ) No. 1:22-CR-096
                        Plaintiff,   )
4                                    ) **JURY TRIAL**
        vs.                          )
5                                    ) Washington, D.C.
    LAUREN HANDY, JOHN HINSHAW,      )
6   HEATHER IDONI, WILLIAM           ) **August 14, 2023**
    GOODMAN, HERB GERAGHTY,          ) **Time:  9:10 A.M.**
7                                    ) **MORNING SESSION**
                        Defendants.  )
8

            **TRANSCRIPT OF JURY TRIAL - MORNING SESSION**
9           BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                  UNITED STATES DISTRICT JUDGE
10

                      A P P E A R A N C E S
11

12  For Plaintiff:      JOHN CRABB, JR.
                        U.S. Attorney's Office
13                      601 D Street NW
                        Washington, DC 20530
14
                        SANJAY HARIVADAN PATEL
15                      DOJ-CRT
                        Civil Rights Division, Criminal Section
16                      950 Pennsylvania Avenue NW
                        Washington, DC 20004
17
    For Defendant       MARTIN A. CANNON
18  LAUREN HANDY:       Thomas More Society
                        16983 370th Street
19                      Carson, IA 51525

20                      STEPHEN M. CRAMPTON
                        Thomas More Society
21                      P.O. Box 4506
                        Tupelo, MS 38803
22
                        DENNIS E. BOYLE
23                      BLERINA JASARI
                        Boyle & Jasari, LLP
24                      1050 Connecticut Avenue
                        Suite 500
25                      Washington, DC 20036

```
1                    A P P E A R A N C E S - (Cont.)

2
        For Defendant        ALFRED GUILLAUME, III
3       JOHN HINSHAW:         Law Offices of Alfred Guillaume, III, LLC
                              1350 Connecticut Avenue NW
4                             Suite 308
                              Washington, DC 20036
5
        For Defendant        ROBERT J. DUNN
6       HEATHER IDONI:        Robert J. Dunn, PC
                              1413 Center Avenue
7                             Bay City, MI 48708

8       For Defendant        HOWARD J. WALSH, III
        WILLIAM GOODMAN:      3712 Cardiff Court
9                             Chevy Chase, MD 20815

10      For Defendant        JOHN C. KIYONAGA
        HERB GERAGHTY:        600 Cameron Street
11                            Alexandria, VA 22314

12

13

14

15

16

17

18

19

20      Stenographic Court Reporter:

21                            Tamara M. Sefranek, RMR, CRR, CRC
                              Official Court Reporter
22                            United States Courthouse, Room 6714
                              333 Constitution Avenue, NW
23                            Washington, DC  20001
                              202-354-3246
24

25
```

```
 1                      P R O C E E D I N G S
 2             THE COURTROOM DEPUTY:  Criminal Case 22-096.  The
 3    United States v. Lauren Handy, John Hinshaw, Heather Idoni,
 4    William Goodman, and Herb Geraghty.
 5             Counsel, would you please identify yourself for the
 6    record, starting with the government.
 7             MR. CRABB:  Good morning, Your Honor.  John Crabb and
 8    Sanjay Patel for the United States.
 9             THE COURT:  All right.  For Ms. Handy?
10             MR. CANNON:  Martin Cannon, Steve Crampton, Dennis
11    Boyle from Blerina Jasari present with Lauren Handy.
12             THE COURT:  All right.  Good morning everyone.  John
13    Hinshaw?
14             MR. GUILLAUME:  Good morning, Your Honor.  For the
15    record, Alfred Guillaume for Mr. John Hinshaw.  He's present in
16    court.
17             THE COURT:  All right.  Good morning.  Heather Idoni?
18             MR. DUNN:  Robert Dunn appearing on behalf of Heather
19    Idoni.
20             THE COURT:  All right.  Good morning both of you.
21    William Goodman?
22             MR. WALSH:   Good morning, Your Honor.  Mr. Goodman
23    is present.  Howard Walsh on his behalf.
24             THE COURT:  All right.  Good morning.  Mr. Geraghty?
25             MR. KIYONAGA:  Good morning, Your Honor.   John
```

1    Kiyonaga for Mr. Geraghty, who is present.

2            THE COURT:  All right.  We've got everybody here.

3    We're ready to proceed.

4            Presumably, everybody saw the article in the Metro

5    Section of the post on Sunday.  So my suggestion is when we ask

6    whether they've been receiving anything or talked to, that we

7    just add that as opposed to making a general announcement,

8    having them run and go look at it, which I prefer, obviously,

9    they didn't do.

10           Over the weekend -- and probably this morning --

11   there is a minute entry that was put out to make sure everybody

12   understood what affirmative defenses could be lodged and

13   brought up.  So if you'd take a look at that.  The government

14   did an extra jury instruction that refined the issue of what is

15   a misdemeanor or a felony.

16           If we haven't, we're putting out a minute entry as to

17   what our understanding is with an opportunity for you to come

18   back and say anything by Wednesday.  So I think those are the

19   only missives that were sent out.

20           I would ask that you all make sure that you do read

21   the orders over the period of time because they do indicate

22   legal rulings I've made which will make a difference as to what

23   you get to argue at -- for openings, as well as some of the

24   questions for the jurors.

25           All right.  Then we're ready to proceed.  I think

1  we've gone through 52 jurors that we've spoken to so far.  We

2  have 22 people.  So we're a long way, because we need 42.

3          I would -- let's make sure that when we ask

4  questions, they're actually necessary, and we're not repeating

5  a lot of information that's already been brought up more than

6  once.  I don't have a problem with trying to refine people's

7  responses if they seem to be equivocating, but there is a

8  limit.

9          THE COURTROOM DEPUTY:  Judge, did you want to talk to

10  1500 first, the one that I have indicated that there was an

11  issue?

12          THE COURT:  Ms. Patterson indicated that Juror 1500,

13  who is No. 47, indicated he had travel plans -- is that it? --

14          THE COURTROOM DEPUTY:  Yes.

15          THE COURT:  -- that he didn't bring up.  So I thought

16  we should bring him back and find out what they are.  It would

17  have been nice if he had brought them up at the time, but he

18  didn't.

19          I will say to you there's a lot of other people who

20  feel they have things they want to tell us and want to be heard

21  earlier.  I have not been pulling people out of line.  I can

22  indicate to you who they are.  My inclination is not to pull

23  them out unless it's some emergency kind of thing since it

24  bumps everybody else back.  But if you feel differently, I can

25  do that.

1          And although, originally, I had something at 4:00

2     today, that has gone away, so we can go until 5:00.

3          You can look at No. 95 and see what the person does;

4     that person is quite unhappy about having to wait.  If you want

5     to look and see whether you want to take her out of line; it's

6     up to you; if you'd look at the profession.

7          I generally don't pull people out unless they

8     indicate there's some emergency, doctor thing, or something

9     else that's come up.  All of them don't want to wait.  It's

10    taking us a long time.

11         On the other hand, if you want it, I'll pull the

12    person out.  I wouldn't do it on my own.  But I wanted to bring

13    it to your attention since that one has been, evidently, quite

14    insistent; not with me, but with others.

15         MR. DUNN:  And there was an article in the *Washington*

16    *Post*.

17         THE COURT:  That's what I indicated.  Not by this

18    particular person.

19         MR. CRABB:  Your Honor, we'd ask the Court continue

20    to go in order.  It becomes very complicated if people are

21    called out of order.

22         THE COURT:  Well, once you start -- since they're all

23    sitting in the same place in the large room, once you start

24    pulling them out of order, I have found that everybody gets

25    annoyed that their issue isn't more important than somebody

```
 1    else's.  But I thought I would just let you know in case you

 2    felt differently about it.

 3             If we don't have 1500, we should just proceed with

 4    the rest.

 5             THE COURTROOM DEPUTY:  Are you ready?

 6             THE COURT:  Yes.  Is this 1500 or somebody else?

 7             THE COURTROOM DEPUTY:  No.  This is 1792, Your Honor.

 8             (Prospective juror entered the courtroom.)

 9             THE COURT:  Okay.  That's fine.  At some point we

10    should bring the other person back.

11             If you could come over here and just step up.  Thank

12    you.  Make yourself comfortable.  You can remain standing

13    because she needs to swear you in.

14             (Prospective juror was sworn.)

15             THE COURT:  All right.  You can move the chair up to

16    make yourself comfortable.  You also need to move the

17    microphone down.  That's good.  And you can take your mask off,

18    so we can actually hear what you have to say.

19             All right.  This is Juror No. 1792, and her questions

20    are 5, 14, 17, 21, and 22.

21             So starting with 5, which is:  The clinic at issue is

22    located at 2112 F Street Northwest.  Do you work or live in the

23    area?

24             You don't have to give us your address, but is it

25    work, or is it where you live?
```

```
1                    THE PROSPECTIVE JUROR:  Work.

2                    THE COURT:  How far away are you, roughly?

3                    THE PROSPECTIVE JUROR:  Less than two blocks.

4                    THE COURT:  Okay.  Are you familiar with the building

5        at all?

6                    THE PROSPECTIVE JUROR:  Yes.

7                    THE COURT:  And can you indicate how you're familiar

8        with it?  Is there something else in the building or you --

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  Is it someplace that you go frequently?

11                   THE PROSPECTIVE JUROR:  Yes.

12                   THE COURT:  Okay.  So there's some other place in the

13       building that you frequently go to?

14                   THE PROSPECTIVE JUROR:  Yes.

15                   THE COURT:  Is it on the same floor as the clinic?

16                   THE PROSPECTIVE JUROR:  Not to my knowledge; not that

17       I'm aware of.

18                   THE COURT:  And when you have gone to this -- in the

19       building, have you seen large groups of people going in or

20       anything that relates to the -- where they would -- the floors

21       where this clinic would be?

22                   THE PROSPECTIVE JUROR:  Not that I'm aware of.

23                   THE COURT:  Okay.  Were you aware before today or

24       before this case that the clinic was actually housed in the

25       building?
```

```
1                  THE PROSPECTIVE JUROR:  Yes.

2                  THE COURT:  You did know that?

3                  THE PROSPECTIVE JUROR:  Yes.

4                  THE COURT:  Have you visited the clinic?

5                  THE PROSPECTIVE JUROR:  No.

6                  THE COURT:  All right.  So there's nothing about the

7     building or the fact that you know that the clinic is there

8     that would affect your consideration of the evidence in this

9     case; is that correct or not?

10                 THE PROSPECTIVE JUROR:  That's correct.

11                 THE COURT:  14 is whether you or somebody close to

12    you have been employed by the courts, D.C. Superior Court,

13    District Court.  Is that you or somebody else?

14                 THE PROSPECTIVE JUROR:  Someone else.

15                 THE COURT:  Can you just give us the relationship, if

16    it's family?

17                 THE PROSPECTIVE JUROR:  Yes.  They're the godparent

18    of my child.

19                 THE COURT:  Okay.  And the godparent has worked or is

20    presently working, or in the past?

21                 THE PROSPECTIVE JUROR:  Presently working.

22                 THE COURT:  And is it in this federal court or the

23    local court or someplace else?

24                 THE PROSPECTIVE JUROR:  Federal court.

25                 THE COURT:  So here?
```

```
 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  Okay.  Is it a temporary job, or is it

 3       something permanent?

 4              THE PROSPECTIVE JUROR:  It's a permanent job.

 5              THE COURT:  Okay.  Is there anything about the

 6       discussions you've had with the godparent about how the court

 7       operates or the courthouse or anything else that you think

 8       would affect your consideration of the evidence in the case?

 9              THE PROSPECTIVE JUROR:  No.

10              THE COURT:  Is the person an attorney?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Is the person someone that works for

13       either one of the judges or one of the other offices that

14       provides legal advice?

15              THE PROSPECTIVE JUROR:  Yes.

16              THE COURT:  Which one?

17              THE PROSPECTIVE JUROR:  The person is a clerk.

18              THE COURT:  Oh, okay.  All right.  Is a clerk for one

19       of the judges?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  And I take it, have you had any

22       discussions with them about legal issues or how the court

23       operates or judges or anything else?

24              THE PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Anything about those discussions that you
```

1      think would affect the consideration of the evidence in this

2      case?

3                    THE PROSPECTIVE JUROR:  No.

4                    THE COURT:  17 is:  You or somebody close to you, a

5      lawyer, work for a lawyer, or studied the law.  Is that the

6      same person or somebody else?

7                    THE PROSPECTIVE JUROR:  No.  That's me.

8                    THE COURT:  Oh, you, okay.  So you're an attorney?

9                    THE PROSPECTIVE JUROR:  Yes.

10                   THE COURT:  And you practice in a firm, government,

11     or a private organization?  Where do you practice?

12                   THE PROSPECTIVE JUROR:  I am at a private

13     organization, but I am not currently practicing law.

14                   THE COURT:  Okay.  So you work for a private

15     organization.  I take it, you don't provide legal advice to

16     them?

17                   THE PROSPECTIVE JUROR:  That is correct.

18                   THE COURT:  When you were practicing as a lawyer,

19     what kind of law did you practice?

20                   THE PROSPECTIVE JUROR:  I worked for the government;

21     the D.C. government.

22                   THE COURT:  Did you -- have you ever done any

23     criminal work?

24                   THE PROSPECTIVE JUROR:  No.

25                   THE COURT:  How long ago did you work as a lawyer?

1          THE PROSPECTIVE JUROR:  12 years ago.

2          THE COURT:  And has your job always been with the

3     D.C. government as a lawyer, or did you practice in other

4     places?

5          THE PROSPECTIVE JUROR:  Always in D.C. government.

6          THE COURT:  The agency that you work for, did it have

7     anything to do, potentially or indirectly, with issues in this

8     particular case?

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  Will you follow my instructions even if

11    you disagree with them?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  21 is:  Whether you or somebody close to

14    you belongs to a group, organization, or contributes to group

15    or organization that advocates for or against any aspect of

16    reproductive health care, including but not limited to

17    abortion.

18         So is that you or somebody else?

19         THE PROSPECTIVE JUROR:  Both.

20         THE COURT:  Okay.  So let's start with you, and who

21    is -- who is the other person?  What relationship is the other

22    person?

23         THE PROSPECTIVE JUROR:  Family friend.

24         THE COURT:  Okay.  And what organization is it?  Is

25    it the same organization for both of you or different ones?

```
 1                    THE PROSPECTIVE JUROR:  They're different

 2      organizations.

 3                    THE COURT:  Okay.  Can you indicate, for you, what

 4      organization it is?

 5                    THE PROSPECTIVE JUROR:  Planned Parenthood.

 6                    THE COURT:  Okay.  And what is the organization that

 7      your friend contributes to?

 8                    THE PROSPECTIVE JUROR:  It's reproductive rights, but

 9      I can't remember the organization.

10                    THE COURT:  So are you -- let's do you.  Are you a

11      member of Planned Parenthood, you participate in their

12      activities, or you just donate?

13                    THE PROSPECTIVE JUROR:  I donate.

14                    THE COURT:  How long have you donated, approximately?

15                    THE PROSPECTIVE JUROR:  20 years.

16                    THE COURT:  So, presumably, you're sympathetic to

17      their views; their views go beyond abortion, but other issues.

18      I take it, you're sympathetic to their views or you wouldn't be

19      donating money; is that correct?

20                    THE PROSPECTIVE JUROR:  That is correct.

21                    THE COURT:  So in terms of those views -- which I'll

22      put broadly, certainly, involve reproductive health; and this

23      case, obviously, involves that as well -- would that affect

24      your consideration of the evidence in this case, your views on

25      this point?
```

1          THE PROSPECTIVE JUROR:  I'm an officer of the court,

2     so I would listen to the evidence.

3          THE COURT:  There's no right or wrong answer.  We

4     just want an honest answer so we can figure out what to do.

5          THE PROSPECTIVE JUROR:  It would be hard for me.

6          THE COURT:  Okay.  What we're getting at is,

7     obviously, trying to separate out your personal views from what

8     gets presented as evidence in the case.  As a lawyer, you

9     understand that.  And so we would want to make sure that you

10    can put those aside and just look at the evidence, make a

11    decision based on that, and not have that decision informed by

12    your own personal views.

13          Do you think you can do that?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And your friend, is that a donation that

16    your friend makes or more involved in the other organization?

17          THE PROSPECTIVE JUROR:  More involved.

18          THE COURT:  Is there anything about her involvement

19    in that organization -- which you don't seem to donate to or be

20    involved with -- that you think would affect your consideration

21    of the evidence in this case?

22          THE PROSPECTIVE JUROR:  No.

23          THE COURT:  Any discussions with her or anything

24    else?

25          THE PROSPECTIVE JUROR:  No.

```
 1                    THE COURT:  Now, 22 is:  Whether you or somebody
 2          close to you participated in a protest, march, or rally
 3          regarding reproductive health care.
 4                    Is that you or somebody else?
 5                    THE PROSPECTIVE JUROR:  Someone else.
 6                    THE COURT:  Is it a friend or family?
 7                    THE PROSPECTIVE JUROR:  Both.
 8                    THE COURT:  Okay.  In terms of the family, just give
 9          us the relationship, not names.
10                    THE PROSPECTIVE JUROR:  Cousins.
11                    THE COURT:  Okay.  And then the same friend that you
12          spoke about shortly --
13                    THE PROSPECTIVE JUROR:  Different friends.
14                    THE COURT:  Different friends, okay.  Do you know --
15          you didn't participate in these, I take it, that your cousins
16          and your friends participated in.
17                    Do you know which ones they participated in?
18                    THE PROSPECTIVE JUROR:  It was after the Supreme
19          Court decision.
20                    THE COURT:  The Supreme Court decision in *Dobbs*?
21                    THE PROSPECTIVE JUROR:  Correct.
22                    THE COURT:  Okay.  Do you know what -- where or
23          what -- or do you just know that they protested?
24                    THE PROSPECTIVE JUROR:  They were here in D.C.
25                    THE COURT:  So the protests were here in D.C.  You're
```

1    aware of it, but you weren't there, I take it?

2              THE PROSPECTIVE JUROR:  Correct.  I was sick.

3              THE COURT:  Okay.  If you had not been sick, would

4    you have participated?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Okay.  So adding that additional element

7    in terms of your feeling strongly enough that if you had been

8    well enough, you would have participated in the protests.  So

9    we're adding your donation, plus, if you could have, you would

10   have been at the protest.

11             Again, let me just ask:  Do you think you can

12   separate your feelings and your thoughts about access to

13   reproductive care from looking at the evidence, making an

14   independent decision?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  All right.  Questions?

17             MR. CRABB:  Good morning, ma'am.

18             THE PROSPECTIVE JUROR:  Good morning.

19             MR. CRABB:  Do I understand correctly you no longer

20   practice law?

21             THE PROSPECTIVE JUROR:  That is correct.

22             MR. CRABB:  What kind of work do you do currently?

23             THE PROSPECTIVE JUROR:  I am a government relations

24   specialist or lead for a university in the District of

25   Columbia.

```
 1              MR. CRABB:  Can you tell me a little bit about what

 2     that involves.  I don't understand completely.

 3              THE PROSPECTIVE JUROR:  Sure.  I lobby both the

 4     federal and the local government on behalf of the university.

 5              MR. CRABB:  Thank you.  Thank you, Your Honor.

 6              THE COURT:  All right.  Defense counsel, any

 7     questions?

 8              MR. GUILLAUME:  Just a few, Your Honor.  Good

 9     morning, ma'am.

10              THE PROSPECTIVE JUROR:  Good morning.

11              MR. GUILLAUME:  I just want to ask you a couple of

12     follow-up questions, starting first with your -- the judge

13     asked you about family members that were participants in -- in

14     the recent Dobbs decision protests.

15              Do you have any -- it was family and friends; is that

16     correct?

17              THE PROSPECTIVE JUROR:  That is correct.

18              MR. GUILLAUME:  Do you have any family or friends

19     that were on the other side of that issue?

20              THE PROSPECTIVE JUROR:  No.

21              MR. GUILLAUME:  Same question with respect to Planned

22     Parenthood.  You've been donating for 20 years; is that

23     correct?

24              THE PROSPECTIVE JUROR:  Correct.

25              MR. GUILLAUME:  Do you have any family or friends
```

 1    that donate -- I don't think you said that you did, but I just

 2    want to clarify.

 3              Do you have any family or friends that, like you,

 4    donate to Planned Parenthood that you're aware of?

 5              THE PROSPECTIVE JUROR:  Not that I'm aware of.

 6              MR. GUILLAUME:  Okay.  With respect to your friend,

 7    the one who you spoke of that was in the organization that you

 8    do not contribute to, that organization was with respect to

 9    reproductive rights; is that correct?

10              THE PROSPECTIVE JUROR:  Correct.

11              MR. GUILLAUME:  Okay.  And do you have any friends

12    that contribute to causes on the other side of that issue of

13    reproductive rights?

14              THE PROSPECTIVE JUROR:  No.

15              MR. GUILLAUME:  Thank you.  Your Honor, if I may just

16    confer with counsel?  I don't think I have any further

17    questions.

18              THE COURT:  I'm sorry?

19              MR. GUILLAUME:  If I may just confer with counsel

20    before concluding.  I don't think I have anything further.

21              THE COURT:  All right.

22              MR. GUILLAUME:  Thank you, Your Honor.  No further

23    questions.

24              THE COURT:  All right.  We'll give you further

25    instructions.  You can step down.

```
1              THE PROSPECTIVE JUROR:  Thank you.

2              (Prospective juror exited the courtroom.)

3              THE COURT:  We're bringing back -- let me finish with

4     this one.  Any issue?

5              MR. GUILLAUME:  Your Honor, we make a motion to

6     strike for cause.

7              MR. CRABB:  We oppose that, Your Honor.

8              THE COURT:  Okay.  She indicated she has views, she

9     indicated in both instances that she could separate it out.

10    She additionally said it would be hard.  She was asked the

11    question both in the context of her donations and sympathy.

12    She said yes, she could.  In the context of adding on to the

13    protests, if she could have shown up, and she said yes.

14             There's no reason to -- so I'm overruling you.  We

15    now have --

16             MR. GUILLAUME:  Your Honor, if I could just make a

17    record, please.

18             THE COURT:  What is there to say?

19             MR. GUILLAUME:  Your Honor, she did indicate that

20    this would be hard for her to sit in judgment.

21             THE COURT:  And then she indicated yes and yes.

22             MR. GUILLAUME:  She also indicated she doesn't have

23    friends on the opposite side of the spectrum, which indicate --

24    which, to me, would indicate that all of her associations and

25    friendships on that issue are on one side.
```

1          THE COURT:  That assumes that she has discussions

2     with people about this issue and knows everybody's views.

3          Do you know all your friends' views on this issue?  I

4     don't.

5          MR. GUILLAUME:  I know a lot of their views on both

6     sides, yes.

7          THE COURT:  I'm just saying to you that, I think, to

8     make an assumption based on that, it's not sufficient.  Sit

9     down.  Let's move on.

10         1500 is the one who we have kept, but he evidently

11    has an issue about some other plans.  So bring him in.

12         MR. KIYONAGA:  Your Honor, we're --

13         THE COURT:  We're keeping her.

14         MR. KIYONAGA:  Could the Court wait one moment while

15    we confer?

16         MR. CANNON:  Your Honor, if I could, I'd like to

17    address something in kind of a general fashion here.

18         THE COURT:  Okay.

19         MR. CANNON:  We're seeing, and have for some time, a

20    very clear pattern established here.  And at the rate we're

21    going, there is no question that we're going to wind up with a

22    jury with lots of people on it who have donated to Planned

23    Parenthood, share the vision, and all of that, and who have

24    also said it would be hard for them to put things aside.

25         THE COURT:  And if she had said it would be hard and

1    left it at that or equivocated beyond that, it would be one

2    thing.  Hard isn't -- we've had ones that have said I'm not

3    sure, maybe I could.  She said it would be hard, which doesn't

4    mean that she can't.  She was then asked two questions.  She's

5    a lawyer.  She would know what it means.  And she answered

6    unequivocally, yes, she could with donations, yes, she could

7    even if she wanted to protest.

8              People can separate things out.  And so I -- we may

9    have -- you have 15 total in addition to the alternates.

10   You've got 18 strikes.  We have a group of people who have

11   those -- condoning or have those views doesn't mean that

12   they're all going to be unfair.

13             MR. CANNON:  The approach I've taken to it is, if

14   they donate to Planned Parenthood but they say pretty firmly

15   they can be fair, I leave it alone.

16             My feeling is that if there is equivocation of any

17   kind, that pretty much excludes the juror, or at least should

18   open us up to -- at that point I think I prefer to have

19   attorneys question them than the Court because they feel like

20   they're on the spot then.

21             THE COURT:  Let me just indicate, Mr. Cannon, I have

22   let you ad nauseam last week -- and I will this week -- ask you

23   to -- you can ask additional questions, particularly if they've

24   been very equivocating back and forth.

25             You have spent a great deal of time, which is why

1   we're now on the fourth day of doing this, but I've let you do

2   that because I think it's appropriate.  I am not turning it

3   over to counsel to do all of the questioning.  I've asked the

4   initial questions.  You can do the follow-up if she's

5   equivocated.

6          Saying it would be hard doesn't say she can't do it,

7   one.  Two, she's indicated firmly when asked in the context of

8   the two things separating it out whether she'd be able to do

9   that; she said yes and she said yes.  You've had an opportunity

10   to ask her other questions.  I haven't stopped you from doing

11   that.

12          I have allowed you to do that, which is why we're

13   still here.  Ordinarily, frankly, if they had said firmly as

14   she had, that would have been the end of it, but I haven't done

15   that.  So you had your opportunity to ask additional questions.

16   I haven't -- I cut you off when they've been inappropriate.

17          MR. CANNON:  I don't object to you cutting us off.  I

18   don't think that's been a problem, for me anyway.  I just feel

19   like, once equivocation shows up, it --

20          THE COURT:  I don't know that saying it would be hard

21   means that the person can't do it.  We've had people who have

22   equivocated, I'm not sure I could.  That, to my mind, clearly

23   is equivocation.

24          They're not -- making a hard decision, which is what

25   it's going to be in this case, and for all jurors making

1   decisions about whether the evidence has proved the guilt of

2   somebody is hard.  So the fact that she said it's hard by

3   itself -- if she then went on and said, well, you know, I'm

4   just not sure, I would agree we're in a different posture.

5   Most of those people, if not all, have been excused because

6   they've stuck to their equivocation.

7           MR. CANNON:  Thank you.

8           THE COURT:  We now have 1500, who is a reprise of the

9   earlier one, because he didn't -- I understand he's got some

10  commitment that he didn't tell us about.

11          (Prospective juror entered the courtroom.)

12          THE COURT:  Sir, if you could step up over here,

13  please.  Make yourself comfortable; move the microphone up.

14          So this is Juror 1500.  And my understanding is you

15  indicated to staff Friday that there was some commitment or --

16  some pressing commitment that you did not bring to our

17  attention.  Is that correct?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Okay.  And what is it?

20          THE PROSPECTIVE JUROR:  It's a vacation that my

21  wife --

22          THE COURT:  You need to speak up.

23          THE PROSPECTIVE JUROR:  It's a vacation that my wife

24  set up some weeks ago in New York; involves theater tickets and

25  a hotel reservation.

1    THE COURT:  You need to speak up.  They're not going

2  to hear you with that.  I can barely.

3    THE PROSPECTIVE JUROR:  Okay.  Is this better?

4    THE COURT:  Yes.  New York, theater tickets, and

5  hotel.

6    THE PROSPECTIVE JUROR:  Hotel reservation that we

7  can't get out of without penalty.

8    THE COURT:  When?

9    THE PROSPECTIVE JUROR:  Next weekend.  We would leave

10  on Thursday.

11    THE COURT:  So you're talking about August 24th?

12    THE PROSPECTIVE JUROR:  No.  It would be the 18th.

13  It's in three days.

14    THE COURT:  August 18th, which is this coming Friday?

15    THE PROSPECTIVE JUROR:  This coming Thursday.

16    THE COURT:  We're not sitting Friday.  How long are

17  you in New York?

18    THE PROSPECTIVE JUROR:  Three days.

19    THE COURT:  So Friday, Saturday, Sunday?

20    THE PROSPECTIVE JUROR:  Well, it would be -- we leave

21  on Thursday.

22    THE COURT:  When do you leave on Thursday?  How are

23  you going on Thursday?

24    THE PROSPECTIVE JUROR:  We're driving.  I guess --

25    THE COURT:  We don't talk at the same time.  We

```
 1    cannot get a record and, frankly, we don't get the answer.
 2              If you could let me know when -- how are you going to
 3    New York, what transportation?
 4              THE PROSPECTIVE JUROR:  We're driving.
 5              THE COURT:  Okay.  So can you drive in after court on
 6    Thursday?  Friday we're not sitting anyway.  It's Friday,
 7    Saturday, and Sunday, and then we would be back on Monday.  Can
 8    we do it that way?
 9              THE PROSPECTIVE JUROR:  Okay.  What time does court
10    close?
11              THE COURT:  Well, I could -- we could -- if it would
12    be helpful, we could stop on Thursday at 4:00.
13              THE PROSPECTIVE JUROR:  Well, that would mean driving
14    for six hours at night, but I can do this.
15              THE COURT:  I don't think it takes six hours to get
16    to New York; does it?
17              THE PROSPECTIVE JUROR:  Okay.  Maybe not.  I can --
18              THE COURT:  It didn't used to in the old days.  I
19    don't know what it's like now.
20              THE PROSPECTIVE JUROR:  I can work with that.
21              THE COURT:  Can we -- it would be the 17th -- if we
22    promptly stopped -- perhaps your wife can just pick you up at
23    the courthouse.
24              Who is coughing all the time?
25              DEFENDANT IDONI:  I just get dehydrated, Your Honor.
```

```
 1              THE COURT:  Are you sure you're all right?

 2              DEFENDANT IDONI:  Yes.  I'm very well.  No sickness.

 3              THE COURT:  Okay.  So Thursday if we stopped before

 4    4:00 so you could go, when were you planning on returning to

 5    D.C.?  Were you planning on coming back on Sunday?

 6              THE PROSPECTIVE JUROR:  Yes, on Sunday.

 7              THE COURT:  Okay.  So that's not a problem.  You can

 8    come back on Sunday.

 9              What it would be is Friday we're taking off anyway.

10    That was part of the days.  If you're here to start on Monday,

11    I think -- and I appreciate your accommodation.

12              THE PROSPECTIVE JUROR:  Okay.

13              THE COURT:  -- this will work.  Any follow-up

14    questions?

15              MR. CRABB:  No, Your Honor.

16              MR. GUILLAUME:  No, Your Honor.

17              THE COURT:  All right.  Thank you, sir.  I appreciate

18    it.

19              (Prospective juror exited the courtroom.)

20              MR. WALSH:  If I might approach?

21              THE COURT:  Go ahead.

22              MR. WALSH:  Forgive me, Your Honor.  I don't want to

23    belabor the point, but we have individual defendants.  My name

24    is Howard Walsh.

25              I would reiterate Mr. Cannon's concerns and worries.
```

1    This case is about abortion.  A very, very hot topic, as we all

2    know.

3              THE COURT:  You have decided and keep talking about

4    it as abortion.

5              MR. WALSH:  Okay.

6              THE COURT:  Let me make it clear to you --

7              MR. WALSH:  Well, access to abortion.

8              THE COURT:  Sir, don't talk at the same time.  I

9    should just say to you that the court reporters have been told

10   if you talk at the same time I do, the only record is what I

11   say.

12             MR. WALSH:  Okay.

13             THE COURT:  So it's not in your interest to do that.

14   I will give you a chance to respond to it.

15             So in terms of the fact that we have quite a number

16   of people one way or the other that provided as long as they

17   indicate that they can separate it out, it seems to me that

18   I've given you opportunities to attest whether that is firmly

19   their view or not.  I haven't stopped you from doing that.

20             You keep insisting on calling it an abortion case.

21   All right?  The instructions do not make it an abortion case.

22   I have repeatedly said to you-all what the case is about.  You

23   keep making it an abortion case.

24             Let me point out again, whether the defendant acted

25   with the requisite intent -- which is key -- to obstruct access

 1    to reproductive health services broadly; that's the

 2    instruction.  Not necessarily only about abortion at this

 3    clinic.  That's what the issue is.  Making it strictly an

 4    abortion case is not accurate.

 5          Now, granted, obviously, since it can involve

 6    abortion and they do abortions there, we've gotten into

 7    questions about their views relating to that.  But do not keep

 8    saying that that's what it is when it's not.  Okay?

 9          MR. WALSH:  For the record, Your Honor, this case is

10    about access to abortion.  I believe in all fairness and

11    reality, it's unreasonable to expect that someone who is

12    admittedly actively pro-choice can suspend their beliefs and

13    judge these defendants fairly, especially somebody who

14    equivocates and you happened to rehabilitate.

15          I believe it's unfair to have them on the jury of

16    these defendants.  I want to note that for the record.

17          THE COURT:  That's fine.

18          MR. WALSH:  That's all, Your Honor.  Thank you.

19          THE COURT:  That's fine.  What you would do is

20    anybody -- if I understand you, anybody who donates to Planned

21    Parenthood, you would simply excuse?

22          MR. WALSH:  I would, Your Honor.

23          THE COURT:  Let me ask you, if they've donated to an

24    organization that was anti-abortion, would you have the same

25    view that they should automatically be excused?  I doubt it.

```
1            You certainly have worked hard for the few people we

2      have had who have indicated their views were contrary.  So I

3      don't think you can just make a decision based on where they

4      donate, that that's it.

5            MR. WALSH:  Your Honor, thank you.  I just --

6            THE COURT:  You've made your record.

7            MR. WALSH:  Okay.  I appreciate it.

8            MR. KIYONAGA:  I concur with both.

9            THE COURT:  Remember my comment.  Any objections,

10     unless you tell me otherwise, I'm assuming are objections from

11     defense counsel for all of your clients.

12            MR. KIYONAGA:  Very well, ma'am.

13            THE COURT:  You don't need to do it again.  I've said

14     that a couple times.

15            We're keeping her.  Okay.  We're waiting for the next

16     one.

17            (Prospective juror entered the courtroom.)

18            THE COURT:  All right.  Sir, if you would step up

19     over here, please.  If you would step up, and you can put your

20     things down.  You can take your mask down so we can hear you.

21            If you'd turn around, we're going to swear you in.

22            (Prospective juror was sworn.)

23            THE COURT:  All right.  Make yourself comfortable.

24     You can pull the chair up.  You can also move the microphone.

25            So this is Juror No. 0573.  He's answered question
```

1    No. 25, which is whether you've served as a juror in a criminal

2    case.

3                 THE PROSPECTIVE JUROR:  Yes.

4                 THE COURT:  Okay.  How many times?

5                 THE PROSPECTIVE JUROR:  Once.

6                 THE COURT:  Once?

7                 THE PROSPECTIVE JUROR:  I'm sorry, twice.

8                 THE COURT:  Two times, okay.  You need to talk in the

9    microphone so they can actually hear you.

10                MR. DUNN:  Judge, I lost my place.  What was that

11   number again?

12                THE COURT:  25, in terms of being a prior juror in a

13   criminal case.

14                Two times.  Were they both in federal court or local

15   court, or which courts were they?

16                THE PROSPECTIVE JUROR:  Local court.

17                THE COURT:  So both were in local court?

18                THE PROSPECTIVE JUROR:  Yes.

19                THE COURT:  Okay.  And how long ago -- let me ask it

20   this way.

21                What is the latest time that you served as a juror?

22   What's the most recent?  Approximately, how long ago?

23                THE PROSPECTIVE JUROR:  I'd say about ten years ago.

24                THE COURT:  Okay.  And then the one before that was

25   even --

1           THE PROSPECTIVE JUROR:  That's probably ten years

2     before that.

3           THE COURT:  Okay.  So 20 years ago and 10 years ago,

4     roughly?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Okay.  And did you ever serve as a

7     foreperson in either of those jury panels?

8           THE PROSPECTIVE JUROR:  No, Your Honor.

9           THE COURT:  Without telling us what the verdict was,

10    was the jury able to reach a verdict in each of those cases?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  All right.  Do you remember what the

13    charges were in each of those cases, roughly; what they

14    consisted of?

15          THE PROSPECTIVE JUROR:  The first case, the one about

16    20 years ago, was drug possession.  And the one about 10 years

17    ago was gun possession.

18          THE COURT:  One was drug possession and one was gun

19    possession?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Anything about that experience as a juror

22    that you think would affect your consideration of the evidence

23    in this case?

24          THE PROSPECTIVE JUROR:  No, I don't think so.

25          THE COURT:  All right.  Any questions?

```
 1            MR. PATEL:  Sir, could you tell us a little bit more
 2    about what you do for a living?
 3            THE PROSPECTIVE JUROR:  I work for a law firm as a
 4    researcher.
 5            MR. PATEL:  A researcher?
 6            THE PROSPECTIVE JUROR:  Yes.
 7            MR. PATEL:  What topics do you research?
 8            THE PROSPECTIVE JUROR:  Usually tax; tax matters.
 9            THE COURT:  Are you an attorney?
10            THE PROSPECTIVE JUROR:  No.  I'm a librarian; library
11    assistant.
12            THE COURT:  Okay.
13            MR. PATEL:  Sir, between last week and today during
14    the times you've been at this courthouse, have you had any
15    contact with anybody outside of the courthouse who has provided
16    you with information about this case?
17            THE PROSPECTIVE JUROR:  No.
18            MR. PATEL:  Have you received any pamphlets,
19    leaflets, any written material with information related to this
20    case?
21            THE PROSPECTIVE JUROR:  No.
22            MR. PATEL:  Over the weekend were you exposed to any
23    media reports related to this case?
24            THE PROSPECTIVE JUROR:  No.
25            MR. PATEL:  Thank you.
```

```
 1                    MR. GUILLAUME:  Court's indulgence, Your Honor.

 2                    THE COURT:  Sure.

 3                    MR. GUILLAUME:  No questions, Your Honor.

 4                    THE COURT:  All right.  Then you can step down, and

 5       we'll give you further instructions.

 6                    (Prospective juror exited the courtroom.)

 7                    (Prospective juror entered the courtroom.)

 8                    THE COURT:  If you would step up over here to my

 9       left, and if you could remain standing and turn around.

10                    (Prospective juror was sworn.)

11                    THE COURT:  All right.  You can move the chair up and

12       you can -- you need to make sure you speak into the microphone.

13       You can take the mask off so we can actually have a record.

14                    THE PROSPECTIVE JUROR:  Okay.

15                    THE COURT:  This is Juror No. 0463.  It's 12, 17, 20,

16       21, and 28.

17                    12 is the -- obviously, there are going to be federal

18       law enforcement officers and others that are going to be

19       testifying.  They've been introduced to you as part of the

20       witness list.

21                    Would any of you be inclined to give either greater

22       or lesser weight to their testimony just because of their

23       status as a law enforcement officer as opposed to treating them

24       as you would anybody else, say, another civilian witness?

25                    So you don't think you can treat them as -- would you
```

1    give them greater or lesser weight?

2              THE PROSPECTIVE JUROR:  I think that I would give

3    them lesser weight.

4              THE COURT:  Okay.  Are you indicating you don't think

5    you can treat them as you would everybody else; is that what --

6    in other words, when they come up to take the stand, you would

7    already have a view about their testimony?

8              THE PROSPECTIVE JUROR:  That's right, Your Honor.

9              THE COURT:  Okay.  Any further reason to go on?

10             MR. CRABB:  Yes, Your Honor.

11             MR. DUNN:  No.

12             THE COURT:  Then let me go on -- if somebody wants

13   it, I'm not going to stop.

14             17 is whether you or somebody close to you is a

15   lawyer, work for a lawyer, or studied law.  Is that you or

16   somebody else?

17             THE PROSPECTIVE JUROR:  I'm a lawyer, and my husband

18   is a lawyer, and my brother is a lawyer.

19             THE COURT:  Okay.  And what kind of law do you

20   practice?

21             THE PROSPECTIVE JUROR:  Technology and

22   communications; regulatory law.

23             THE COURT:  You need to speak more clearly into the

24   microphone.

25             THE PROSPECTIVE JUROR:  Sorry.  It's technology and

 1    communications; regulatory law.

 2               THE COURT:  Okay.  Is that in a private firm,

 3    government or --

 4               THE PROSPECTIVE JUROR:  I'm at a private firm.

 5               THE COURT:  And have you ever done any criminal work?

 6               THE PROSPECTIVE JUROR:  No, I have not.

 7               THE COURT:  Okay.  And your husband is an attorney.

 8    What -- does he practice in a private firm or somebody else?

 9               THE PROSPECTIVE JUROR:  He's a corporate tax

10    attorney, and he works for the government.

11               THE COURT:  And does he practice any criminal law?

12               THE PROSPECTIVE JUROR:  No.

13               THE COURT:  And then your brother is -- you indicated

14    was an attorney.  Where does he practice?

15               THE PROSPECTIVE JUROR:  Yes.  He's a transactional

16    attorney in Miami.  He doesn't do criminal law either.

17               THE COURT:  All right.  And has he done any criminal

18    work?

19               THE PROSPECTIVE JUROR:  No, Your Honor.

20               THE COURT:  Is there anything about either your job

21    or the other jobs that you think generally would affect your

22    consideration of the evidence in the case?

23               THE PROSPECTIVE JUROR:  Yes, Your Honor.  I've done

24    pro bono work for reproductive rights organizations.

25               THE COURT:  Okay.  And what kind of pro bono work

1    have you done?

2              THE PROSPECTIVE JUROR:  It was research on -- well,

3    it was -- had to do with intrauterine insemination pregnancies.

4    So it's a state law, sort of 50-state survey, on how states --

5    whether they regulated that or not.

6              THE COURT:  So in a general sense, on fertility kind

7    of issues?

8              THE PROSPECTIVE JUROR:  Exactly, yep.

9              THE COURT:  Did you deal with any issues in terms of

10   this pro bono work relating to access to reproductive health,

11   which could include abortion.

12             THE PROSPECTIVE JUROR:  Not exactly.  It was more

13   about health care providers; certain health care providers, do

14   they have to have certain licenses, or what is the regulatory

15   status of IUI in those states.

16             THE COURT:  So in terms of the pro bono work, are you

17   representing them in court, or are you providing research to

18   other organizations or what?

19             THE PROSPECTIVE JUROR:  Yes, research.

20             THE COURT:  And is it to direct individuals or to

21   other organizations?

22             THE PROSPECTIVE JUROR:  It's for an organization to

23   inform their lobbying efforts.

24             THE COURT:  Okay.  What organization is that?

25             THE PROSPECTIVE JUROR:  It's the Center for

1    Reproductive Rights.

2              THE COURT:  So the principal -- if I understood you,

3    the principal work you've done is around fertility issues and

4    legal issues related to that within the states; is that

5    correct?

6              THE PROSPECTIVE JUROR:  That's right.

7              THE COURT:  And if you could be a little more

8    specific in terms of whether you've done any work relating to

9    access to reproductive rights, which could include abortion?

10             THE PROSPECTIVE JUROR:  I guess, specifically that,

11   no, I have not.

12             THE COURT:  And has your husband or your brother done

13   any work in those areas either?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Is there anything about that work,

16   specifically your pro bono work, that you think would affect

17   your consideration of the evidence in this case?

18             THE PROSPECTIVE JUROR:  No.  Not about my work, no.

19             THE COURT:  All right.  20 is:  This case will

20   mention abortion.  I want to be clear.  It's not about whether

21   abortion is right or wrong, morally justified or unjustified.

22   It's about two laws that permit clinics that do provide, among

23   other things, abortion services, to do so without physical

24   obstruction.

25             So what I'm asking you is whether you have any

1   personal, political, moral, or religious opinions or beliefs

2   regarding the issue of reproductive health care, including

3   abortion, that are so deeply held that they could interfere

4   with your ability to be fair and impartial.

5          There's no right or wrong answer.  We want you to

6   simply be honest about what your views are.  You put it down,

7   so, obviously, you felt strongly about it.

8          THE PROSPECTIVE JUROR:  Yes, Your Honor.  One of my

9   strongest-held beliefs is that a woman's right to reproductive

10  health is key to a woman's ability to become her own person and

11  be her own person and have authority over her own life.  So

12  it's truly one of my strongest-held beliefs.

13         THE COURT:  All right.  And the question is whether

14  these beliefs which you've just expressed could or would

15  interfere with your ability to be fair and impartial.

16         In other words, would that inform your decision here

17  as opposed to putting it aside and making a decision based only

18  on the evidence in the case?

19         THE PROSPECTIVE JUROR:  Yes, Your Honor, I think that

20  it would.

21         THE COURT:  All right.  Is there any reason to go on

22  at this point?

23         MR. GUILLAUME:  No, Your Honor.

24         THE COURT:  Mr. Crabb?

25         MR. CRABB:  No, Your Honor.

```
 1                    THE COURT:  Let me ask you to step down, and we'll
 2          give you further instructions.
 3                    (Prospective juror exited the courtroom.)
 4                    MR. GUILLAUME:  Your Honor, we move to strike.
 5                    THE COURT:  Make sure she gets out the door first.
 6          Mr. Crabb?
 7                    MR. CRABB:  We don't oppose.
 8                    THE COURT:  All right.  Then 0463 is excused.
 9                    (Prospective juror entered the courtroom.)
10                    THE COURT:  If you could step up over here, please.
11          If you could step up, you can put your things down.  And then
12          if you could turn around, Ms. Patterson is going to swear you
13          in.
14                    (Prospective juror was sworn.)
15                    THE COURT:  All right.  If you could -- you can move
16          the chair up so you're a little closer, and if you'd move the
17          microphone down so that we -- yeah, the head.  You have to
18          speak directly into it.  You can take your mask off so we can
19          make sure we can hear you.  All right?
20                    This is Juror No. 0342, and she's listed 13, 21, and
21          28.  So 13 is:  Whether you or somebody close to you has been
22          employed by law enforcement.
23                    Is that you or somebody else?
24                    THE PROSPECTIVE JUROR:  It's me.
25                    THE COURT:  Okay.  And what law enforcement agency
```

1      are you associated with or have been?

2              THE PROSPECTIVE JUROR:  I was an intern -- it may

3      have been unpaid -- around 1996 for the Santa Clara, California

4      County Probation Office.

5              The internship was focused around helping a probation

6      officer process domestic violence diversion caseloads.

7              THE COURT:  Okay.  And how long were you an intern

8      there?

9              THE PROSPECTIVE JUROR:  I honestly can't recall.  It

10     was for less than a year, perhaps a summer.

11             THE COURT:  Okay.  So it was back in 1996?

12             THE PROSPECTIVE JUROR:  Around that time.  It may

13     have been the year before.

14             THE COURT:  So did you actually speak to specific

15     defendants that the probation office was developing presentence

16     reports for, or was it supervising the people in the community?

17     Which was it?

18             THE PROSPECTIVE JUROR:  It was actually a little

19     different than either one of those jobs.  It was simply helping

20     a probation officer's assistant process the paperwork regarding

21     domestic violence diversion caseloads.  In that paperwork, the

22     names of defendants -- or persons who were either accused or

23     charged of perpetrating domestic violence, they were part of

24     this diversion program where they went to classes and learned,

25     basically, socialization skills.

1          THE COURT:  Okay.  So you worked with the paperwork

2     itself, not actually the individuals in the diversion program;

3     is that correct?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  Anything about that work that you

6     think would affect your consideration of the evidence in this

7     case?

8          THE PROSPECTIVE JUROR:  No, I don't think so.

9          THE COURT:  All right.  21 is:  Whether you or

10    somebody close to you belongs to any group, organization, or

11    contributes to any group or organization that either advocates

12    for or against any aspect of reproductive health care, which

13    can include abortion.

14          So is that you or somebody else?

15          THE PROSPECTIVE JUROR:  That's me.  And I wasn't sure

16    whether or not to put down the number pertaining to that issue

17    because I don't know if the volunteer work I've done actually

18    applies.

19          I volunteer regularly to provide voter support for

20    people who are in the party that I'm registered for, for a

21    media organization that is very vocal about its opinions about

22    abortion.

23          So the work I did had -- does not -- did not -- does

24    not involve expressing any opinion about abortion, but it is to

25    provide support through the -- through this company that

```
 1      sponsors --

 2              THE COURT:  So this isn't money; this is volunteer

 3      services that we're talking about?

 4              THE PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  So if I understood, you volunteer for --

 6      there's a media organization, and that's -- that has opinions

 7      about abortion.  A particular view, or do they cover all views?

 8              THE PROSPECTIVE JUROR:  A particular view.

 9              THE COURT:  Okay.  What -- is it for or against

10      health care -- reproductive health care, abortion, what?

11              THE PROSPECTIVE JUROR:  It's for reproductive health

12      care, and some of their programming also explicitly expresses

13      opinions in support of abortion.

14              THE COURT:  Okay.  What exactly do you do as your

15      volunteer services?

16              THE PROSPECTIVE JUROR:  I am part of the voter call

17      support system, and our team, or the team that I have worked

18      with will call a listing of people who are registered as

19      Democrat and just provide them with information on the location

20      of voter -- of voting booths.  And also provide them

21      information about how to complete their mail-in ballots and

22      various other resources to ensure they are -- they understand

23      how to successfully vote.

24              THE COURT:  So do you discuss abortion or

25      reproductive health care at all with them when you're on the
```

```
 1    phone, or is it strictly to tell them how -- to get them to
 2    vote?
 3              THE PROSPECTIVE JUROR:  No.  The discussion -- well,
 4    it's to -- yeah.  It's not even really to provide them with --
 5    they're sort of -- they're a group of people who the
 6    organization feels are inclined to vote anyway, and so it's
 7    kind of just supporting them through the process.
 8              And although abortion isn't discussed explicitly, the
 9    candidates who support abortion care and reproductive health
10    care are.  So, indirectly, there's support for abortion in that
11    way, possibly.
12              THE COURT:  So are you -- then, I take it, it's more
13    than just you can do a mail-in ballot or this is where you can
14    go to actually vote in person; you're supporting particular
15    candidates?
16              THE PROSPECTIVE JUROR:  Yes.  I'm sorry.  Yes.
17              THE COURT:  No.  That's okay.  In calling, you're
18    indicating that you're supporting Candidate X, who happens to
19    be in favor of abortion?
20              THE PROSPECTIVE JUROR:  Exactly.
21              THE COURT:  Do you indicate that to them, or do you
22    just indicate that you're supporting so-and-so, and you hope
23    that they'll vote for this candidate?
24              THE PROSPECTIVE JUROR:  In my experience, no.  In my
25    experience --
```

```
 1            THE COURT:  In your experience, no, what?

 2            THE PROSPECTIVE JUROR:  In my experience, there's no

 3    explicit statement this candidate supports X, Y, and Z or

 4    this --

 5            THE COURT:  I'd ask what you do.  Do you get into a

 6    discussion with them, or do you just say you're calling on

 7    behalf of -- you're part of this organization, you're calling

 8    on behalf of Candidate X, and you want to make sure that they

 9    vote for Candidate X, and this is how they can do it?

10            THE PROSPECTIVE JUROR:  Thus far, no.  I haven't

11    been -- I haven't had that kind of a conversation.

12            THE COURT:  So the goal is to get them to go out and

13    vote for a candidate that the organization you work for

14    supports because that candidate supports abortion services;

15    would that be accurate, or is it a broader issue than just

16    abortion services?

17            THE PROSPECTIVE JUROR:  It's much broader than

18    abortion services.

19            THE COURT:  So how broad is it?

20            THE PROSPECTIVE JUROR:  It's the whole myriad of

21    issues that Democrats and progressive Democrats, in particular,

22    support.  So, yeah, it's very -- it's a very long list.

23            THE COURT:  Let me ask it this way.  Is it more than

24    reproductive health services?

25            THE PROSPECTIVE JUROR:  Yes, a lot more.
```

1          THE COURT:  Okay.  So if I were going to summarize

2     it -- and correct me if I'm wrong -- you work for an

3     organization that lobbies for a specific party, the Democratic

4     Party, and also specific candidates.  You, obviously, have a

5     list of who is registered since you can -- you can't register

6     as an -- well, you can register as an independent, but that

7     leaves you without being able to participate in any of the

8     primaries.  So people are registered either as a Democrat or a

9     Republican.

10          So you've got a list of Democrats, presumably, or a

11    broader list than that?

12          THE PROSPECTIVE JUROR:  Yes, a list of Democrats.

13          THE COURT:  Okay.  So you call them up, and you lobby

14    for them to vote for the candidate -- Candidate X, who you know

15    represents reproductive health services, including abortions,

16    but other issues as well that are of interest to the Democrats;

17    is that accurate?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Okay.  Would you add anything to it or

20    subtract?

21          THE PROSPECTIVE JUROR:  Well, yes.  Maybe we'll make

22    the distinction that the -- a couple of distinctions.  It's a

23    volunteer job I do once a year, so about -- I spend maybe about

24    three weekends a year doing this caller support.  And it is --

25    it's not so much to convince anyone to vote a certain way.

```
 1          It's already people who are in line to vote a certain way.  And

 2     then if they have questions -- if they're sort of on the fence

 3     and they have questions about what issues does a particular

 4     candidate stand for, we then explain what those issues are.  So

 5     it's a little -- it's a few degrees -- yeah.

 6              THE COURT:  So you don't volunteer necessarily; if

 7     they have questions, then you would inform them?

 8              THE PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Okay.  And so you said you do this once a

10     year?

11              THE PROSPECTIVE JUROR:  I've done it once a year for

12     about three weekends, and I've done it for two years.  Yeah.

13              THE COURT:  What was the last time you did it?

14              THE PROSPECTIVE JUROR:  About a year ago.

15              THE COURT:  Have you signed up to do it again, or do

16     you wait to a later time?

17              THE PROSPECTIVE JUROR:  I -- I have tended to wait,

18     and I have not signed up for the next session of this type of

19     work.

20              THE COURT:  Okay.  So, obviously, politically, you're

21     aligned with -- I'll put it in more generalized terms.

22     Politically, you would be aligned with reproductive health care

23     that would include abortion.

24              So with having those views to the point where you're

25     willing to participate in, basically, lobbying in its own form
```

1    for those positions, would you be able to separate those views

2    that you have from the evidence in this case and make a

3    separate decision that's not informed by your views and what

4    you've been doing as this volunteer?

5              THE PROSPECTIVE JUROR:  Yes.  I believe in the

6    importance of the law, following the law, regardless of

7    personal beliefs.  So, yes, I'd be able to make that

8    separation.

9              THE COURT:  All right.  The other question that

10   you've put down was 28, which is the -- whether you have a

11   pressing commitment that would make it difficult for you to

12   sit.  What is it?

13             THE PROSPECTIVE JUROR:  It's a work deadline, and I'm

14   sure everybody in the room, all the possible candidates, have

15   work deadlines.  But I just -- out of a sense of duty to my

16   job, I feel like I should say that.

17             THE COURT:  What kind of work do you do?

18             THE PROSPECTIVE JUROR:  I'm a federal -- federal

19   worker.  I work for the Department of Commerce.  I'm a

20   statistician.

21             THE COURT:  Okay.  We do have -- we do have --

22   depending how long the case takes, but we do have two days off

23   that you will not be sitting.  One is this Friday, the 18th,

24   and the other is the 28th.  Let me make sure I'm correct.

25             We, obviously, want to -- if you're feeling some

 1    pressure at work to get things done, we want to make sure that

 2    you still would pay attention if you got selected, would focus

 3    on the evidence in the case, and also would not rush to

 4    judgment at the end in order to get the case finished.

 5              Can we count on you, despite some pressures from

 6    work, that you will pay attention to the case and take the time

 7    to participate in deliberations, whatever is necessary?  Can

 8    you do that or not?

 9              THE PROSPECTIVE JUROR:  Yes.

10              THE COURT:  All right.  Any questions?

11              MR. PATEL:  No questions, Judge.

12              THE COURT:  Defense?

13              MR. GUILLAUME:  Just a couple of questions, Your

14    Honor.  Thank you.  Good morning, ma'am.

15              THE PROSPECTIVE JUROR:  Good morning.

16              MR. GUILLAUME:  I just have a few questions for you.

17    With respect to the questions that -- following up on the

18    questions that the judge asked you about the organization that

19    you work for.  The view of the organization --

20              THE COURT:  Are you talking about her work work or

21    volunteer work?

22              MR. GUILLAUME:  The volunteer work.

23              THE COURT:  Okay.

24              MR. GUILLAUME:  Not the federal government.  The

25    volunteer work.

1              That work, would you consider that work to be

2      activist work?

3              THE PROSPECTIVE JUROR:  It may be.  I don't know --

4      I'm sure there's a very sophisticated classification system

5      dividing activism from other things.  It may be activism.

6              MR. GUILLAUME:  And following up on that line, I know

7      there's a multitude of issues that the organization maybe

8      covers, the progressive -- I think that's the term you used,

9      progressive issues.

10             Is access -- I want to be clear that access to

11     reproductive health, including abortion, is one of those issues

12     that the organization supports; is that correct?

13             THE PROSPECTIVE JUROR:  Yes.  Although I should add

14     the caveat, I don't -- I, admittedly, don't know if there's an

15     official listing of what --

16             MR. GUILLAUME:  Right.

17             THE PROSPECTIVE JUROR:  I'm happy to share what that

18     organization is, if that facilitates anything.

19             MR. GUILLAUME:  Okay.  Sure.  Whatever you're

20     comfortable with.

21             THE PROSPECTIVE JUROR:  Sure.  It's for an

22     organization called Crooked Media.

23             MR. GUILLAUME:  Crooked?

24             THE PROSPECTIVE JUROR:  Crooked, yeah.  That must

25     sound -- so it's called Crooked Media.  It was developed by

1    staffers of a former President, the 44th President.

2              So it's -- it's very -- so it's very biased in that

3    way.  It's a Democratic progressive organization.  But I don't

4    know -- I don't know if abortion -- if they have an official

5    listing of what they stand for.

6              MR. GUILLAUME:  Okay.

7              THE PROSPECTIVE JUROR:  Yes.

8              MR. GUILLAUME:  I appreciate your answer.  So the

9    access to -- I think what I'm hearing is that access to

10   reproductive health services would be something that the

11   organization would be concerned with, would be in favor of?

12             THE PROSPECTIVE JUROR:  Yes.  I think that a blanket

13   statement like that is true.  Yes.

14             MR. GUILLAUME:  So my question for you is, is that

15   your view as well, that -- personal view, that access to

16   reproductive health care, including abortion, is important?

17             THE PROSPECTIVE JUROR:  Yes, it is my personal view.

18             MR. GUILLAUME:  Okay.  What about your feelings about

19   the denial of -- the alleged denial of access to reproductive

20   health care, including abortion?

21             THE PROSPECTIVE JUROR:  I mean, it would depend on

22   how such a denial occurred.  Again, I believe in the authority

23   of the law, so if it's within the law to deny -- I mean, I

24   think that's a complicated question.  If I -- if there was

25   no -- yeah.  I'm not sure how to answer that.

```
 1            MR. GUILLAUME:  There's no right or wrong answer.  I

 2    don't want to put words in your mouth.  Whatever you tell me,

 3    I'll accept.

 4            THE PROSPECTIVE JUROR:  Sure.  I mean, I think -- I

 5    don't think one should be -- I think, as a general rule, people

 6    who are capable of having children should have the option to

 7    get an abortion if that's what they see as appropriate.

 8            MR. GUILLAUME:  So your role as a juror in a denial

 9    of access to health care, including abortion, would you be able

10    to perform that role as a juror in the denial of -- knowing

11    that that's something that would be involved in the case, based

12    on your other answers you've given?

13            THE PROSPECTIVE JUROR:  I would have to consider all

14    the facts of the situations leading up to the possibility of

15    the denial and to see, you know, what laws were at hand,

16    what -- I'd have to see the specifics.

17            But, in general, again, my belief is that anyone who

18    can have a child should have access to abortion.

19            MR. GUILLAUME:  Your Honor, if I can confer with

20    co-counsel.  I think they may have another question.  Court's

21    brief indulgence.  Excuse me.  Sorry.

22            MR. KIYONAGA:  Good afternoon [sic].

23            THE PROSPECTIVE JUROR:  Good afternoon.

24            MR. KIYONAGA:  You stated that you are personally

25    committed to a woman's right to receive an abortion if she
```

1    feels that that's what's appropriate for her purposes.

2           Can you, as you sit here today, be certain that you

3    could be impartial in evaluating the evidence, which is to say

4    to evaluate the physical conduct of the defendants, were you to

5    draw the conclusion that they were activists for the other side

6    of the issue; in other words, activists to end the procedure of

7    abortion in this country, or at least drastically to restrict

8    it?

9           So you would be -- you would be seeing images or

10   hearing descriptions, but primarily seeing images of physical

11   conduct, and it would fall to you as a juror, as the finder of

12   fact, to determine whether or not that conduct conforms to the

13   elements of the law as they will be explained to you by the

14   judge.

15          Are you confident that knowing that these are people

16   who are diametrically opposed to your closely held -- and I

17   would presume important -- belief that you could view their

18   conduct, evaluate it, draw the necessary conclusions with

19   impartiality?

20          THE PROSPECTIVE JUROR:  Yes.

21          MR. KIYONAGA:  Let me ask you this:  Suppose, rather

22   than anti-abortion activists, we were talking about choice --

23   pro-choice activists.

24          THE PROSPECTIVE JUROR:  Uh-huh.

25          THE COURT:  If we're getting into a hypothetical that

1    isn't part of the case here, then I'm not going to allow it.

2    You've asked the question in terms of what we would have here

3    in terms of the way you have termed it, and she's given her

4    answer.

5              To go into a hypothetical that does not fit the facts

6    of this case, I'm not going to allow that.  We've gone through

7    this a couple of times.

8              Do you have anything else you want to ask?

9              MR. KIYONAGA:  Would the Court indulge me.

10             THE COURT:  Go ahead.

11             MR. KIYONAGA:  No further questions.  Thank you.

12             THE COURT:  All right.  We're going to excuse you at

13   this point.  We'll give you further instructions.  Okay?

14             THE PROSPECTIVE JUROR:  Okay.  Thank you.

15             (Prospective juror exited the courtroom.)

16             THE COURT:  So can I assume we're keeping her?

17             MR. CRAMPTON:  Yes, Your Honor.

18             THE COURT:  All right.  I haven't heard anything

19   else.

20             (Prospective juror entered the courtroom.)

21             THE COURT:  All right.  If you would step up over

22   here, please.  Just come around.  You can put your things down.

23   There's not a lot of room up here.  If you could step up.

24             If you could turn around, and Ms. Patterson is going

25   to swear you in.

```
 1                 (Prospective juror was sworn.)
 2            THE COURT:  Okay.  You can move the chair up and
 3   down, move the microphone down so you're speaking directly.
 4   And you can take off your mask so we can get a record.
 5            All right.  This is Juror 1015.  The number you have
 6   listed is 28.  What is the pressing commitment that would make
 7   it difficult for you to sit?
 8            THE PROSPECTIVE JUROR:  I have a baby that I need to
 9   be available for at a moment's notice in case she's sick or
10   hurt.  I need to be able to take care of her.
11            THE COURT:  Do you -- how old is your baby?
12            THE PROSPECTIVE JUROR:  18 months.
13            THE COURT:  And do you work?
14            THE PROSPECTIVE JUROR:  Yes.
15            THE COURT:  So do you work from home, or do you go
16   into work?
17            THE PROSPECTIVE JUROR:  Yes, I work from home.
18            THE COURT:  So like today, do you have somebody that
19   takes care of the baby while you're here?
20            THE PROSPECTIVE JUROR:  She's in daycare.  But,
21   again, if she's sick or hurt, she's not able to go to daycare,
22   so I have to be there for her.
23            MR. CANNON:  I can't hear very well.
24            THE COURT:  If she's sick or hurt, she's not able to
25   go to daycare, so I have to be there for her.
```

1    Do you have her in daycare when you're working

2    regularly?

3         THE PROSPECTIVE JUROR:  Yes.

4         THE COURT:  Okay.  What are the hours of the daycare

5    that you can have her there?

6         THE PROSPECTIVE JUROR:  Daycare opens from 6:30 to

7    6:00.

8         THE COURT:  I'm sorry?

9         THE PROSPECTIVE JUROR:  6:30 a.m. to 6:00 p.m.

10        THE COURT:  So your concern is that if something came

11   up, that the child became sick or whatever, you'd have to go to

12   the daycare to take the child out of daycare and take care of

13   the child; is that correct?

14        THE PROSPECTIVE JUROR:  Yes.

15        THE COURT:  Any questions?

16        MR. CRABB:  No, Your Honor.

17        MR. GUILLAUME:  No, Your Honor.

18        THE COURT:  All right.  You can step down.  Thank

19   you.

20        THE PROSPECTIVE JUROR:  Thanks.

21        (Prospective juror exited the courtroom.)

22        THE COURT:  We'll keep her.  She's a keeper.

23        (Prospective juror entered the courtroom.)

24        THE COURT:  If you could step up over here to my

25   left.  Go ahead and put your things down.  There's not a lot of

1    room over here.

2              All right.  If you could remain standing, we need to

3    swear you in.

4              (Prospective juror was sworn.)

5              THE COURT:  All right.  You can move the chair up.

6    And you need to make sure you speak into the microphone.  You

7    can take your mask down so we make sure we can hear you.

8              THE PROSPECTIVE JUROR:  Okay.

9              THE COURT:  So this is Juror No. 1244, and the

10   questions are 13, 17, 21, 22, and 28.

11             13 is:  Whether you or somebody close to you has been

12   involved in law enforcement.  Is that you or somebody else?

13             THE PROSPECTIVE JUROR:  That's my husband.

14             THE COURT:  And what is the law enforcement agency?

15             THE PROSPECTIVE JUROR:  He was an intern in college

16   in the DEA.

17             THE COURT:  Drug Enforcement Agency?

18             THE PROSPECTIVE JUROR:  Yeah.

19             THE COURT:  Did he do just one stint or did he do it

20   on a regular basis or what?

21             THE PROSPECTIVE JUROR:  No.  He was just a summer

22   intern for one summer.

23             THE COURT:  Okay.  Anything about that experience

24   that you think would affect your consideration of the evidence

25   in this case?

```
 1                THE PROSPECTIVE JUROR:  No.

 2                THE COURT:  All right.  17 is:  Whether you or

 3     somebody close to you is a lawyer, worked for a lawyer, studied

 4     law.  Is that you or somebody else?

 5                THE PROSPECTIVE JUROR:  Somebody else.  It's my

 6     husband.  He's a lawyer.

 7                THE COURT:  All right.  And does he practice in a

 8     firm or the government or a private agency?

 9                THE PROSPECTIVE JUROR:  He works for a nonprofit.

10     He's an internet and copyright lawyer.

11                MR. CANNON:  Say again.

12                THE PROSPECTIVE JUROR:  He's an internet and

13     copyright lawyer.

14                THE COURT:  Internet and copyright are his areas.

15     Has he ever done any kind of criminal work?

16                THE PROSPECTIVE JUROR:  No.

17                THE COURT:  Does he go to court at all, do you know,

18     for cases?

19                THE PROSPECTIVE JUROR:  He has for cases against his

20     companies.

21                THE COURT:  That involve his company?

22                THE PROSPECTIVE JUROR:  Yes.

23                THE COURT:  Okay.  Anything about those discussions,

24     about potentially judges, the lawyers, or anything else that

25     you think might affect your consideration of the evidence in
```

1     this case?

2                  THE PROSPECTIVE JUROR:  No.

3                  THE COURT:  All right.  21 is:  Whether you or

4     somebody close to you belongs to any group, organization, or

5     contributes to any group or organization that's an advocate

6     either for or against any aspect of reproductive health care,

7     including but not limited to abortion.

8                  So is that you or somebody else?

9                  THE PROSPECTIVE JUROR:  That's me.

10                 THE COURT:  And the -- do you donate or are you a

11    member of the group or both?

12                 THE PROSPECTIVE JUROR:  I donate to Planned

13    Parenthood.

14                 THE COURT:  Okay.  And how long have you been

15    donating to them?

16                 THE PROSPECTIVE JUROR:  I donate on a yearly basis,

17    like, once a year.

18                 MR. CANNON:  Say again.

19                 THE COURT:  Yearly basis.

20                 THE PROSPECTIVE JUROR:  Once a year for the last two

21    or three years.

22                 THE COURT:  So, obviously, Planned Parenthood has

23    particular issues that they're interested in, including

24    abortion and other reproductive issues.  Since you're donating

25    to them, you're obviously sympathetic, presumably, to their

 1   views; is that correct?

 2              THE PROSPECTIVE JUROR:  Correct.

 3              THE COURT:  Are you sympathetic to, sort of, their

 4   broad views or abortion or a combination of them?

 5              THE PROSPECTIVE JUROR:  In general, on their views

 6   and also in providing health care for women.

 7              THE COURT:  Okay.  So is your focus on abortion or

 8   it's not focused on that?

 9              THE PROSPECTIVE JUROR:  On abortion.

10              THE COURT:  Since you, obviously, are sympathetic to

11   their views since you're donating money to them, would you be

12   able to set aside your personal views, make a decision based on

13   the evidence that's presented in the case, as well as applying

14   my instructions of the law and not have it be informed by your

15   own personal views about reproductive care, which would include

16   abortion?

17              THE PROSPECTIVE JUROR:  I think so.

18              THE COURT:  22 is:  Whether you or somebody close to

19   you participated in any protests, march, rally regarding

20   reproductive health care.

21              So is that you or somebody else?

22              THE PROSPECTIVE JUROR:  That's me.

23              THE COURT:  And what protest or march did you get

24   involved in?

25              THE PROSPECTIVE JUROR:  I have participated in

1    protests against restricting access to abortion.  So

2    pro-choice.

3              THE COURT:  Okay.  Was it a particular march that you

4    went to or a particular protest that you attended?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Which one was it?

7              THE PROSPECTIVE JUROR:  I don't remember.  It was

8    before COVID.

9              THE COURT:  Okay.  So before COVID?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Was it here in D.C.?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  Was the march focused just on

14   abortion or on broader issues of reproductive care or other

15   issues as well?

16             THE PROSPECTIVE JUROR:  It was on abortion.

17             THE COURT:  Okay.  So adding -- you've indicated

18   you're a supporter of Planned Parenthood and what their issues

19   are about reproductive health care, and you also felt strongly

20   enough that you participated in a protest or rally concerning

21   that.

22             I'll ask the question again.  Combining those two

23   things, can you separate out your personal views, which,

24   obviously, are strongly held, from consideration of the

25   evidence in this case, which will be basing a decision on

 1    what's presented in the courtroom, applying the law, and not

 2    have it be informed by your own personal views?  Can you do

 3    that?

 4              THE PROSPECTIVE JUROR:  I think so.

 5              THE COURT:  Okay.  The last one is whether you have

 6    some pressing commitment.

 7              THE PROSPECTIVE JUROR:  I do.  I have vacation

 8    scheduled for August 25th to August 30th.

 9              THE COURT:  And what does the vacation consist of?

10    Is it something that can be pushed back or done at another time

11    or what?

12              THE PROSPECTIVE JUROR:  We rented a house in

13    West Virginia to go hiking.

14              THE COURT:  So I take it, it's for a very specific

15    time period?

16              THE PROSPECTIVE JUROR:  Uh-huh.

17              THE COURT:  You're nodding your head.  You have to

18    say yes or no.

19              THE PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Okay.

21              THE PROSPECTIVE JUROR:  Your Honor, I also wrote 34,

22    the last question.  34, the last question.

23              THE COURT:  I don't see it on the card, but that

24    doesn't mean you can't -- 34 was the, sort of, catchall

25    question or if there was something else you thought you should

```
1      bring to my attention.

2                  THE PROSPECTIVE JUROR:  Yes.  Although I think I can

3      be impartial for this case given my personal views on abortion

4      and access to medical health, I don't think I can be impartial

5      towards one of the defendants because you order us to wear a

6      mask in the courtroom where we were before, and one of the

7      defendant and his lawyer was not wearing a mask.

8                  THE COURT:  Okay.  Let me just inform you that there

9      are some individuals in the courtroom, including at least two

10     of the defendants, who have provided a report from their doctor

11     that they cannot have the mask.  We have asked them to test.

12                 THE PROSPECTIVE JUROR:  Okay.

13                 THE COURT:  So they are not ignoring my order.  They

14     have followed through by providing a medical reason why they

15     cannot sit for -- since they wear the mask unless they're

16     speaking.  They're sitting here for quite some time with a

17     mask.

18                 THE PROSPECTIVE JUROR:  Okay.  I thought they were

19     disregarding the request.

20                 THE COURT:  I would have taken other measures.  But

21     that's not the reason for it, just to make sure you understand.

22                 So does that eliminate that as an issue --

23                 THE PROSPECTIVE JUROR:  Yes.

24                 THE COURT:  -- my explanation?

25                 THE PROSPECTIVE JUROR:  Yes.
```

1          THE COURT:  Okay.  In terms of -- let me just look

2     through this.

3          The 25th is a Friday, but you have it for the whole

4     week after that, I take it, in terms of your going --

5          THE PROSPECTIVE JUROR:  I'm not sure about the date

6     because I don't have a calendar.  We're leaving on Sunday, the

7     25th, 26th, something like that, 27th, and coming --

8          THE COURT:  27th, presumably.  You're going to be

9     gone during the week, I take it, of the --

10          THE PROSPECTIVE JUROR:  Until the 30th.  Until

11    Wednesday.

12          THE COURT:  Okay.  So the 28th, 29th and 30th would

13    be during the week.

14          All right.  Any questions?

15          MR. PATEL:  Good morning.

16          THE PROSPECTIVE JUROR:  Good morning.

17          MR. PATEL:  I just have a few questions about the

18    vacation that you have planned.

19          If you were selected as a juror in this case, would

20    it be possible to reschedule or receive a refund for any of the

21    vacation plans that you've made?

22          THE PROSPECTIVE JUROR:  I don't know.  I would have

23    to contact the owners of the rental place.

24          MR. PATEL:  Okay.

25          THE PROSPECTIVE JUROR:  I tried to read the contract,

1     and it was not clear.  It didn't include court.  It includes

2     illness and other things, but it didn't include jury duty.

3                MR. PATEL:  Okay.  Is there any other information you

4     have about whether or not the vacation would be -- you could

5     reschedule it other than figuring out whether or not you'd be

6     able to obtain a refund for the rental home?

7                THE PROSPECTIVE JUROR:  I'm not sure I understand

8     your question.

9                MR. PATEL:  Is there any other hardship created by

10    the vacation that you have planned other than you don't know

11    whether or not you can get a refund?

12               THE PROSPECTIVE JUROR:  No.

13               MR. PATEL:  Okay.  Thank you.

14               THE COURT:  Well, let me just ask.  Assuming that you

15    could get a refund, would you be willing to -- if selected,

16    would you be willing to reschedule it?

17               THE PROSPECTIVE JUROR:  It will not be my preference

18    because I need vacation, but if I have to, I will.

19               THE COURT:  All right.  Any questions?

20               MR. GUILLAUME:  Court's indulgence, Your Honor?

21               THE COURT:  Sure.

22               MR. GUILLAUME:  Good morning, ma'am.

23               THE PROSPECTIVE JUROR:  Good morning.

24               MR. GUILLAUME:  I want to focus first on the issue

25    that was last raised with respect to your vacation.

1          If you were not to receive a refund for your rental,

2     is it safe to say that that would be a -- something that would

3     upset you?

4          THE PROSPECTIVE JUROR:  Yes.

5          MR. GUILLAUME:  If you had to, in fact, sit in

6     judgment as a juror in this case in spite of your -- not going

7     on your vacation, would you hold it against the Court or any of

8     the persons involved, the fact that you had to spend that --

9     lose that money?

10         THE PROSPECTIVE JUROR:  No, as long as I don't lose

11    the money.

12         MR. GUILLAUME:  But if you did lose the money?

13         THE PROSPECTIVE JUROR:  I would not be happy, but

14    that's not something to hate the Court for.

15         MR. GUILLAUME:  I'm sorry.  The last thing you said

16    was?

17         THE PROSPECTIVE JUROR:  Say that --

18         MR. GUILLAUME:  The last thing you said, I didn't

19    understand you.  The last thing you said was?

20         THE PROSPECTIVE JUROR:  I will not be happy, but I

21    will not hate the Court for that.

22         MR. GUILLAUME:  Okay.  Ma'am, I just want to also

23    focus on your comment with respect to your -- what you said,

24    you couldn't be partial because of a mask issue.  That's since

25    been explained a little bit, but I just want to ask a few more

1   questions about that, as to why you believe you couldn't

2   initially be fair because of the mask issue?

3              THE PROSPECTIVE JUROR:  Because I thought that

4   defendant was disregarding orders when we were requested to

5   wear a mask.

6              MR. GUILLAUME:  And you said that you saw the

7   defendant's lawyer as well without a mask.

8              Did you think that lawyer was also disregarding Court

9   orders?

10             THE PROSPECTIVE JUROR:  Whoever was --

11             THE COURT:  I'll just indicate -- if the people are

12  not wearing masks, it's because they've come forward with

13  something to indicate medically that they can't wear them or

14  they're talking.  If they're talking, as we have or prepared

15  to, they don't have to have the mask on.

16             THE PROSPECTIVE JUROR:  I understand.  But back then

17  it was not clear to me.  And when I see that someone is not

18  following an order, I have problems with it because here we are

19  in a case that has to do with breaking the law.  That's all I'm

20  saying.  That was my --

21             MR. GUILLAUME:  So in this case that we're talking

22  about where someone is breaking the law, if you perceive that

23  someone is breaking the law, you would have a problem being

24  impartial to that person or -- I'm confused as to why -- how

25  you couch that.

1              THE COURT:  I'll sustain the objection.  Go ahead.

2      Ask another question.

3              MR. GUILLAUME:  Ma'am, you have noted that you

4      were -- that you have been personally supportive of access to

5      abortion.

6              Now, what are your feelings about persons alleged to

7      have denied that access to abortion?

8              THE COURT:  This case is not about feelings.  This

9      case is about evidence, in terms of what evidence and whether

10     she can impartially review the evidence, apply my law, and make

11     a decision.  It's not about feelings.

12             MR. GUILLAUME:  I'll rephrase the question, Your

13     Honor.

14             As I said, you are personally supportive, you've

15     indicated in your answers, of access to abortion.  But are you

16     able to sit in judgment of persons that are accused of denying

17     access to abortion?

18             THE PROSPECTIVE JUROR:  I will have to look at the

19     evidence to understand the case and why are they being accused.

20     I don't think they're guilty until it's proven.

21             MR. GUILLAUME:  Okay.  So your personal views would

22     not affect your ability; is that what you're saying?

23             THE PROSPECTIVE JUROR:  I say that before when the

24     judge ask.

25             MR. GUILLAUME:  Court's brief indulgence, Your Honor.

1          MR. DUNN:  Judge, may I ask a scheduling question

2    related to this witness?

3          THE COURT:  Go ahead.

4          MR. DUNN:  I assume -- would I assume correctly, if I

5    assume the Court would not consider canceling trial on the 29th

6    and 30th to accommodate?

7          THE COURT:  Not at the rate we're going.  I mean, as

8    a practical matter, we have not -- however, if we finish before

9    the time that I have set, of course, it would be open.  But

10   there's no way of necessarily knowing that at this point.

11         MR. DUNN:  I would just want to object to that.  I'm

12   already going to miss the first week of classes for the classes

13   that I'm teaching in the fall and I don't really want to miss

14   the second week.

15         THE COURT:  The dates that we set was beyond --

16   excuse me.  The date that was set was beyond those dates based

17   on what everybody had indicated they thought the length of the

18   trial would be.

19         MR. DUNN:  Okay.

20         MR. GUILLAUME:  No questions.  Thank you.

21         THE COURT:  Okay.  I'm going to ask you a favor.

22   We're continuing this process.

23         Can you do two things for me.  Can you consult your

24   family in terms of seeing whether they would be willing -- if

25   you could get a refund -- to postpone the trip, pushing it back

1    further or another time period.

2              And then -- if you can then check and see whether or

3    not you could actually get a refund.  Okay?

4              THE PROSPECTIVE JUROR:  I will check.

5              THE COURT:  All right.  When you know the answers, if

6    you'd let Ms. Patterson know.

7              THE PROSPECTIVE JUROR:  So you want me to check --

8              THE COURT:  To see whether you can get a refund, so

9    we would have that information, if you did not go that time

10   period.  And also -- obviously, this is a family vacation, I

11   assume; am I correct?

12             THE PROSPECTIVE JUROR:  Correct.

13             THE COURT:  So to talk to your family about whether

14   there was another time that it could be rescheduled at the same

15   place.

16             THE PROSPECTIVE JUROR:  And you want me to check that

17   now?

18             THE COURT:  Two things.

19             THE PROSPECTIVE JUROR:  Now?

20             THE COURT:  If you could.  Believe me, we're still

21   going -- ongoing in this process, so it will be taking a while.

22   So you'll have enough time to make the two calls that you would

23   need to make.

24             The case is supposed to end -- there's no guarantees,

25   but it's -- we had estimated that it would end around

 1    September 1st.

 2              THE PROSPECTIVE JUROR:  Understood.

 3              THE COURT:  Obviously, there would be some time from

 4    your perspective after that time.

 5              THE PROSPECTIVE JUROR:  Understood.

 6              THE COURT:  Thank you.

 7              THE PROSPECTIVE JUROR:  Thank you.

 8              THE COURT:  You can step down.  We'll give you

 9    further instructions.

10              (Prospective juror exited the courtroom.)

11              THE COURT:  Might as well find out whether she can

12    get a refund or not.  If she can't, then we can consider that

13    along with the rest.  But I don't think there's any other

14    grounds to excuse her.

15              We're going to take a short break at this point.  The

16    court reporter has been going for some time.  It is now ten of

17    11:00, so five minutes after 11:00.  Okay?  We'll come back and

18    resume at that point.

19              (Recess taken.)

20              THE COURT:  I noticed that Ms. Idoni and some other

21    people have walked in and out of the courtroom.  I want you to

22    know that you have a right to be here at all times and that if

23    you walk out, you are not hearing some of what's going on.  So

24    I want to make sure -- I don't have a real problem, but you're

25    missing part of what's happening.

```
1              So I just want to make sure you understand and that
2      you're giving up your right to be present throughout the
3      proceeding.
4              DEFENDANT IDONI:  Yes, Your Honor.  I was trying to
5      get my cough under control, so I came back.  Thank you.
6              THE COURT:  Our last juror has answers, so why don't
7      we bring her back.
8              (Prospective juror re-entered the courtroom.)
9              THE COURT:  You can come on back here.  All right.
10     This is Juror No. 1244.
11             THE PROSPECTIVE JUROR:  Yes.
12             THE COURT:  We had asked you if you could make some
13     phone calls.
14             THE PROSPECTIVE JUROR:  I did.
15             THE COURT:  And the answers are?
16             THE PROSPECTIVE JUROR:  I can't change it.
17             THE COURT:  So you cannot get a refund?
18             THE PROSPECTIVE JUROR:  No.
19             THE COURT:  Any follow-up questions anyone wants to
20     ask?
21             MR. GUILLAUME:  No, Your Honor.
22             MR. PATEL:  No, Judge.
23             THE COURT:  All right.  You can step down.  Thank
24     you.
25             (Prospective juror exited the courtroom.)
```

```
 1              MR. GUILLAUME:  We'd move to strike this juror, Your
 2    Honor.
 3              THE COURT:  Any objection?
 4              MR. PATEL:  No.
 5              THE COURT:  I'll strike her.  Airlines, I can send
 6    things off, and they don't charge, but I can't do anything with
 7    private homes.  All right.
 8              (Prospective juror entered the courtroom.)
 9              THE COURT:  If you would step up over here, please.
10    If you'd come up and stand.  You can put things down.  If you
11    could raise your right hand.
12              (Prospective juror was sworn.)
13              THE COURT:  All right.  You can go ahead and sit
14    down.  You can take your mask down.  You need to speak into the
15    microphone so that everybody can hear you.  You can move the
16    chair up.
17              THE PROSPECTIVE JUROR:  Okay.
18              THE COURT:  This is Juror No. 744.  It's 14, 16, 17,
19    21, 22, and 25.
20              It's Juror No. 744.  Am I wrong?  Hold on.  747.
21    Excuse me.  747.  That's my fault.  You wrote it correctly.
22              So let me go through it.  14 is:  Whether you or
23    somebody close to you is employed by the courts, the local
24    court, federal court, or someplace else.
25              Is that you or somebody else?
```

1          THE PROSPECTIVE JUROR:  Somebody else, and it's

2     "was," in the past.

3          THE COURT:  In the past.  Is it a friend, or is it a

4     relative of some sort?

5          THE PROSPECTIVE JUROR:  My husband.

6          THE COURT:  Okay.  So is it -- would he have worked

7     for the local court, the federal court?

8          THE PROSPECTIVE JUROR:  Federal court, a number of

9     years ago.

10          THE COURT:  This one or a different one?

11          THE PROSPECTIVE JUROR:  A different one.

12          THE COURT:  Was he, like, a law clerk or did he

13     work -- he was a law clerk for a judge?

14          THE PROSPECTIVE JUROR:  Yeah.

15          THE COURT:  Anything you might have had as

16     discussions about how cases work, judges operate, or attorneys

17     or anything else that you think would affect your consideration

18     of the evidence in the case?

19          THE PROSPECTIVE JUROR:  No.

20          THE COURT:  All right.  And that's the only person;

21     is that correct?  You're nodding yes.  You have to verbalize.

22          THE PROSPECTIVE JUROR:  Sorry.  Yes.

23          THE COURT:  That's okay.  16 is:  Whether you or

24     somebody close to you has ever been employed by a criminal

25     defense attorney or been involved in any way in the defense of

1    a criminal case.

2              Is that you or your husband or somebody else?

3              THE PROSPECTIVE JUROR:  That's me.

4              THE COURT:  All right.  Are you a lawyer?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Okay.  And so have you worked for a

7    lawyer or --

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  So you've been employed for a criminal

10   defense lawyer?

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  And in what capacity?

13             THE PROSPECTIVE JUROR:  As a secretary a long time

14   ago.

15             THE COURT:  Was that in D.C. or someplace else?

16             THE PROSPECTIVE JUROR:  Fairfax County.

17             THE COURT:  And how long were you -- did you work for

18   the individual?

19             THE PROSPECTIVE JUROR:  It was for three summers when

20   I was in college.

21             THE COURT:  Okay.  And did that attorney that you

22   worked for, did he ever handle, or she ever handle, cases that

23   remind you of this case in any way?

24             THE PROSPECTIVE JUROR:  In no way.

25             THE COURT:  Okay.  Anything about that experience or

1    conversations you might have had or heard about how court

2    proceedings are handled, judges, attorneys, anything of that

3    nature?

4                   THE PROSPECTIVE JUROR:  No.  It was the 1980s.  It

5    was a very different time.

6                   THE COURT:  Okay.  17 is:  Whether you or somebody

7    close to you is an attorney, studied law, or worked for an

8    attorney.

9                   So is your husband the only one?

10                   THE PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  Okay.  And has he ever worked in the

12    criminal area?

13                   THE PROSPECTIVE JUROR:  No.

14                   THE COURT:  And is he presently with a firm or an

15    organization or the government?

16                   THE PROSPECTIVE JUROR:  He's a professor at a law

17    school.

18                   THE COURT:  Okay.

19                   MR. CANNON:  Did you say at a law school?

20                   THE COURT:  At a law school

21                   THE PROSPECTIVE JUROR:  He's a professor at a law

22    school.

23                   THE COURT:  And what's the subject matter he teaches?

24                   THE PROSPECTIVE JUROR:  Tax.

25                   THE COURT:  All right.  Tax is sufficiently removed.

1          21 is:  Whether you or somebody close to you belongs

2     to a group, organization, or contributes to a group or

3     organization that's either an advocate for or an advocate

4     against any aspect of reproductive health care, including but

5     not limited to abortion.

6               So is that you or somebody else?

7               THE PROSPECTIVE JUROR:  That's me.

8               THE COURT:  Okay.  And are you -- do you belong to

9     the group or you donate or a combination?

10              THE PROSPECTIVE JUROR:  I've given money.

11              THE COURT:  All right.  And what's the organization?

12              THE PROSPECTIVE JUROR:  Planned Parenthood.

13              THE COURT:  Okay.  And for how long?

14              THE PROSPECTIVE JUROR:  On and off for probably 30

15    years.

16              THE COURT:  Okay.  When was the most recent donation

17    you would have made?

18              THE PROSPECTIVE JUROR:  It's probably been a while.

19    Probably more than ten years, yeah.

20              THE COURT:  More than ten years ago?

21              THE PROSPECTIVE JUROR:  Probably, yeah.

22              THE COURT:  Obviously, when you were providing --

23    donating money, you were sympathetic to whatever their issues

24    are that they stood for, which can include abortion but has

25    broader issues as well.

 1              In terms of your not donating more recently, are you
 2      less sympathetic to their views or for other reasons have
 3      decided not to donate?
 4              THE PROSPECTIVE JUROR:  My priorities for giving to
 5      charity have changed, and I have other things that I care more
 6      about now.
 7              THE COURT:  Okay.  So at the time that you were
 8      donating -- we ask this because it shows some sympathy towards
 9      the views that the organization represents.  So wanted to make
10      sure that, whatever your personal views were that would be
11      associated with Planned Parenthood, which would include
12      reproductive health and abortions, that those personal beliefs
13      could be set aside, and you could make a decision on the
14      evidence presented in the courtroom applying the law and not
15      have it be informed by any personal views you might have.
16              Can you do that?
17              THE PROSPECTIVE JUROR:  Yes.
18              THE COURT:  And 22 is:  Whether you or somebody close
19      to you participated in a protest, march, rally regarding
20      reproductive health care.
21              Is that you or somebody else?
22              THE PROSPECTIVE JUROR:  That's me.
23              THE COURT:  Okay.  And how recent was this
24      participation?
25              THE PROSPECTIVE JUROR:  It would have been in the

1    late '80s, like around '89 or '90.

2                   THE COURT:  Okay.  And what was the march about?

3                   THE PROSPECTIVE JUROR:  I was trying to remember this

4    when you raised it.  I think that it was for women's

5    reproductive freedom.

6                   THE COURT:  Was that here in D.C. or someplace else?

7                   THE PROSPECTIVE JUROR:  It was in Ohio.

8                   THE COURT:  Were you also donating money to Planned

9    Parenthood when you were in Ohio or here?

10                  THE PROSPECTIVE JUROR:  No.  I've lived many -- I

11   think it was --

12                  THE COURT:  You have to speak into the mic.

13                  THE PROSPECTIVE JUROR:  Oh, sorry.  It was when I was

14   living in Texas.  So in between.

15                  THE COURT:  Okay.

16                  THE PROSPECTIVE JUROR:  So, no, not when I lived in

17   Ohio.

18                  THE COURT:  So since you've been -- because that was,

19   you said, ten years ago.  So the donations to Planned

20   Parenthood occurred when you were living in Texas, and the

21   march occurred while you were living in Ohio; is that correct?

22                  THE PROSPECTIVE JUROR:  Correct.

23                  THE COURT:  So since you've been in D.C., you have

24   not donated or participated in a march?

25                  THE PROSPECTIVE JUROR:  No.

1            THE COURT:  No, you have not, or I'm wrong?

2            THE PROSPECTIVE JUROR:  No, I have not.

3            THE COURT:  Okay.  And 25 is:  You've been a juror in

4    a criminal case.

5            Was that in local court or this court?

6            THE PROSPECTIVE JUROR:  That was in D.C. Superior

7    Court.

8            THE COURT:  Okay.  And how many times?

9            THE PROSPECTIVE JUROR:  Once on a case like that in

10   Superior Court.

11           THE COURT:  All right.  How long ago was that,

12   approximately?

13           THE PROSPECTIVE JUROR:  Maybe 2014.

14           THE COURT:  Okay.  And were you the foreperson of the

15   jury?

16           THE PROSPECTIVE JUROR:  No.

17           THE COURT:  Without telling us the verdict, did the

18   jury reach a verdict?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  And do you recall what the charge was, or

21   generally what it was about?

22           THE PROSPECTIVE JUROR:  It was a car accident, but I

23   don't remember what the charge was.

24           THE COURT:  Was it criminal or was it civil in terms

25   of damages and --

1          THE PROSPECTIVE JUROR:  I'm not sure.  Yeah.

2          THE COURT:  Okay.  Was there anything about that

3   experience as a juror that you think would affect your

4   consideration of the evidence in this case?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  All right.  Any questions?

7          MR. CRABB:  No, Your Honor.  Thank you.

8          THE COURT:  Defense?

9          MR. GUILLAUME:  Just briefly, Your Honor.  Thank you.

10  Good morning, ma'am.

11         THE PROSPECTIVE JUROR:  Good morning.

12         MR. GUILLAUME:  Ma'am, I just want to follow up with

13  you with respect to your answer about your change in priority

14  for donations.

15         It's my understanding that you haven't donated to

16  Planned Parenthood in ten years because you donate to other

17  organizations?

18         THE PROSPECTIVE JUROR:  Yes.

19         MR. GUILLAUME:  Were those other organizations

20  similar to Planned Parenthood?  Were they aligned with it, or

21  were they totally separate?

22         THE PROSPECTIVE JUROR:  They're separate.  They're on

23  a different issue.

24         MR. GUILLAUME:  Okay.  Is -- are the issues that were

25  initially important to you in Planned Parenthood, including

1    abortion, still important to you; and women's reproductive

2    rights?

3                    THE PROSPECTIVE JUROR:  Yes.

4                    MR. GUILLAUME:  Okay.  Would you say that --

5    actually, Court's indulgence.

6                    Thank you, ma'am.  I don't have any other questions.

7                    THE PROSPECTIVE JUROR:  Thank you.

8                    THE COURT:  All right.  Then you can step down.

9    Thank you.

10                   THE PROSPECTIVE JUROR:  I have a question.  I'm

11   sorry.

12                   THE COURT:  Sure.

13                   THE PROSPECTIVE JUROR:  You know how one of the

14   questions was, do you know anyone else in this pool, in the

15   selection pool?

16                   THE COURT:  Right.

17                   THE PROSPECTIVE JUROR:  I didn't recognize her at the

18   time, but in the three intervening days, I recognized a former

19   student of mine.

20                   THE COURT:  Oh, okay.  Did you see this former

21   student -- she just recognized a former student of hers.  In

22   the large ceremonial courtroom?

23                   THE PROSPECTIVE JUROR:  Yes.

24                   THE COURT:  Okay.  And did she recognize you?

25                   THE PROSPECTIVE JUROR:  Yeah.  She was my student in

1    2014, so it's been -- but then we recognized each other in the

2    days that we've been there.

3                THE COURT:  Okay.  So the reason we ask that is, if

4    you know someone from another venue, shall we say, if you're

5    both on the -- selected and are deliberating, sometimes if you

6    know somebody, you're either more influenced or less influenced

7    and you may be concerned about running into this person

8    afterwards if you took different positions.

9                Do you have any concerns of that if you were both on

10   the same jury?

11               THE PROSPECTIVE JUROR:  No.

12               THE COURT:  Okay.  Thank you.  You can step down.

13               (Prospective juror exited the courtroom.)

14               MR. GUILLAUME:  Your Honor, we'd make a motion for

15   cause; to strike her for cause.

16               THE COURT:  Any objection?

17               MR. CRABB:  Yes, Your Honor.

18               THE COURT:  Okay.  Tell me why.

19               MR. GUILLAUME:  Your Honor, briefly.  We'll just

20   point to the juror's long activism in Planned Parenthood and

21   the fact that she gave -- has given for 30 years to the

22   organization, as well as her participation in the march for the

23   specific --

24               THE COURT:  She didn't march.  She marched -- let's

25   see, 1989 in Ohio.  The earlier ones were in Texas.

```
1    Presumably, those states may have had different issues in terms

2    of what -- they certainly are not -- she indicated she still

3    has an interest.

4            She's not donating there.  That, by itself, she

5    indicated that she could separate the two things out.  There's

6    not a reason to excuse her for cause.

7            MR. GUILLAUME:  Thank you, Your Honor.

8            THE COURT:  So I'll overrule you.  So we're keeping

9    her.  We did excuse 1244, the one who came back with the

10   vacation.

11           Can I suggest that if you want to confer about

12   things, that we do this a little faster.  This is taking

13   forever.  I mean, if somebody has a question, the other person

14   can just get up.

15           (Prospective juror entered the courtroom.)

16           THE COURT:  Can you come forward, please.  I'm sorry.

17   Please come over here.  If you'd remain standing, Ms. Patterson

18   behind you is going to swear you in.

19           (Prospective juror was sworn.)

20           THE COURT:  All right.  You can move the chair

21   around, and you need to speak into the microphone.  You've

22   already taken your mask down, but do wear it otherwise.  But in

23   order to hear what you have to say, it is better to do it

24   without the mask.

25           This is Juror No. 0194.  You have listed nothing on
```

1    your card; is that correct?

2              THE PROSPECTIVE JUROR:  That is correct.

3              THE COURT:  So you had no -- were you able to hear my

4    questions?

5              THE PROSPECTIVE JUROR:  Yes, I heard your questions.

6              THE COURT:  You don't have any information to

7    provide; is that correct?

8              THE PROSPECTIVE JUROR:  Yes, that's correct.

9              THE COURT:  All right.  Any questions?

10             MR. PATEL:  Good morning -- good afternoon.  I'm not

11   sure what time it is.

12             THE COURT:  It's still morning.

13             THE PROSPECTIVE JUROR:  It's still morning.

14             MR. PATEL:  Still morning, okay.  Could you tell us a

15   little more about what you do for a living, please.

16             THE PROSPECTIVE JUROR:  Could you repeat the

17   question.

18             MR. PATEL:  Could you tell us a little more about

19   what you do for a living.

20             THE PROSPECTIVE JUROR:  Yes.  I work in financial

21   services.

22             MR. PATEL:  At any time that you've been in the

23   courthouse, whether it was last week or today, did you receive

24   any information from anybody outside of the courthouse with

25   information about this case?

```
1              THE PROSPECTIVE JUROR:  No, I did not.

2              MR. PATEL:  Did you receive any pamphlets, leaflets,

3      any written information about this case?

4              THE PROSPECTIVE JUROR:  No, I did not.

5              MR. PATEL:  Were you exposed to any media reports

6      over the weekend or last week about this case?

7              THE PROSPECTIVE JUROR:  Not.

8              MR. PATEL:  All right.  Thank you.

9              MR. GUILLAUME:  No questions.

10             THE COURT:  All right.  You can step down, and we'll

11     give you further instructions.  All right.

12             THE PROSPECTIVE JUROR:  Okay.

13             (Prospective juror exited the courtroom.)

14             (Prospective juror entered the courtroom.)

15             THE COURT:  You can step up over here.  Good morning.

16     You can put things down.  Just make yourself comfortable.  You

17     can put things on the top there or whatever.

18             It's a little cold in here, I know.  Let's keep

19     everybody awake.  If you could remain standing, we need to

20     swear you in.

21             (Prospective juror was sworn.)

22             THE COURT:  All right.  You can move the chair up,

23     and you need to speak into the microphone.

24             THE PROSPECTIVE JUROR:  Hello.

25             THE COURT:  Good.  This is Juror 0674.  21, 28, and
```

31.

So let me ask -- 21 is:  Whether you or somebody close to you belongs to a group, organization, or contributed to a group or organization that was either an advocate for or against reproductive health care, which would include abortion.

So is that you or somebody else?

THE PROSPECTIVE JUROR:  My daughter and myself.

THE COURT:  Okay.  And is it that you were involved in the organizations or that you and your daughter donated, or both?

THE PROSPECTIVE JUROR:  Both.

THE COURT:  Okay.  What is the organization that you and -- is it the same organization for you and your daughter?

THE PROSPECTIVE JUROR:  My daughter and I both marched for reproductive rights, and then I'm also a Catholic, and I go to church.

MR. CANNON:  You're what?

THE PROSPECTIVE JUROR:  A Catholic.

THE COURT:  A Catholic and she goes to church.

So if I could ask in terms of the organization that you -- does the organization, is it in favor or not in favor of -- I should not say favor -- but as an advocate for or against any aspect of reproductive health care, including abortion, the organization that you're involved in?  Is that the church or is it something -- other organization?

1          THE PROSPECTIVE JUROR:  So we're pro-choice, and we

2     marched for reproductive rights.  And then I am a Roman

3     Catholic.

4          MR. KIYONAGA:  I'm sorry?

5          THE COURT:  And I'm Roman Catholic.  So in terms of

6     the marching, do you also -- you said you were pro-choice --

7     let's deal with that -- you and your daughter.

8          Do you belong to another organization -- leaving the

9     church out for a second -- another organization that you either

10    belong to or that you donate money to that's pro-choice?  Is

11    there an organization?

12         THE PROSPECTIVE JUROR:  No.  We marched for

13    reproductive rights for women.

14         THE COURT:  Okay.  But it's not connected to any

15    organization that's sponsoring the march; is that correct?

16         THE PROSPECTIVE JUROR:  No.  My daughter is a member

17    at her college for an organization that's pro-choice.

18         THE COURT:  Okay.  What organization at her college?

19    Do you know the name of the organization?

20         THE PROSPECTIVE JUROR:  No, I don't know the name.

21         THE COURT:  What about you, are you a member of some

22    organization relating to this?

23         THE PROSPECTIVE JUROR:  No.  We just marched for

24    reproductive rights when it started in --

25         THE COURT:  When would be the last time that you have

1    marched for reproductive rights; when would the last time have

2    been?

3              THE PROSPECTIVE JUROR:  Before the -- in 2020.

4    Remember when they first had that women's rights movement?  Not

5    recently since *Roe vs. Wade*.

6              THE COURT:  Okay.  You've also indicated that you're

7    Catholic.  How does that inform this position of yours that

8    you're pro-choice?

9              THE PROSPECTIVE JUROR:  Well, I'm originally from

10   Jamaica, and I do believe that this country, America, has

11   certain rights, and I don't believe it is my role to inflict my

12   religious beliefs on others.  Because this country has a

13   variety of religions, and I believe everyone should make their

14   own choice.

15             THE COURT:  Okay.  So in terms of your own views

16   about pro-choice, would you be able to put those views aside if

17   you were selected as a juror and you were required to consider

18   the evidence only that's presented in the courtroom, apply the

19   law that I would instruct you, and make a decision based on

20   what the evidence shows and the law applied to it and not based

21   on your personal beliefs?  Can you do that?

22             THE PROSPECTIVE JUROR:  I would try my best.

23             THE COURT:  You wrote down 31, which is:  Do you have

24   religious, moral beliefs, social, political, philosophical, or

25   other beliefs that would interfere with your being a member of

1    this jury and returning a fair and impartial verdict solely on

2    the evidence?  So is it different beliefs or is it these

3    beliefs, these pro-choice beliefs?

4              THE PROSPECTIVE JUROR:  I think I meant these

5    pro-choice beliefs.  And I think, was there a 34, the catchall

6    one?

7              THE COURT:  Yes, there is a 34 as well.

8              THE PROSPECTIVE JUROR:  Did I write down 34?

9              THE COURT:  You didn't put it down, but you can tell

10   me what it is at this point if you wish.  You also had one

11   about the pressing commitment, but I'll get to that in a

12   minute.

13             THE PROSPECTIVE JUROR:  Okay.  It was just a pressing

14   commitment.

15             THE COURT:  All right.  So if I could just clarify,

16   since you put 31 down, which indicates you have strong beliefs,

17   and you indicated that you thought it would interfere with your

18   being able to be fair and impartial -- in other words, looking

19   at the evidence -- so are you indicating that you believe that

20   you cannot separate out your personal beliefs from the role of

21   the juror, which would be to be fair and impartial, and make a

22   decision based only on the evidence?

23             THE PROSPECTIVE JUROR:  I would hope I would be able

24   to separate it.  I've never been a juror before.  And I would

25   hope that, presented with the evidence, I would -- as I was

1    sworn in -- do my best to listen to the evidence, but --

2            THE COURT:  Okay.  In terms of from your own

3    perspective, have there been other decisions in your life where

4    you've had to put aside your personal beliefs and make

5    decisions going forward that would not be informed by those

6    personal beliefs?

7            In other words, have you had to do what we would

8    require you to do as a juror, or would this be the first time

9    you'd have to do that, if that makes sense?

10           THE PROSPECTIVE JUROR:  I'm not sure I understand.  I

11   am a parent.

12           THE COURT:  I made it too complicated.  You indicated

13   you hope so.  I was trying to see whether you had -- in other

14   experiences in life had to separate these things out.

15           I take it in saying you hope so, you're uncertain

16   whether you could do so; is that what you're saying?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  You've also indicated 28, which is the

19   one about a pressing commitment.  Is there a problem with

20   your -- if you were selected?

21           THE PROSPECTIVE JUROR:  I'm a single parent, and both

22   kids go to college this week.  So I move my daughter in on

23   Thursday, my son in on Friday.  And then my niece is coming up

24   from Jamaica, and I move her in on the 24th to Boston.  My two

25   kids are going to Upstate New York, and my niece is going to

1    university in Boston on the 24th.

2            THE COURT:  So you've, basically, then got this

3    Thursday -- Friday we do have off.  You will not be -- but

4    Thursday you would be taking your daughter to college; is that

5    correct?

6            THE PROSPECTIVE JUROR:  Yes, in Ithaca.

7            THE COURT:  And then your niece is on the 24th, when

8    we would be sitting.  You would be taking her to Boston; is

9    that correct?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  I take it, since you're a single parent,

12   there isn't somebody else to take them; is that correct?

13           THE PROSPECTIVE JUROR:  No, that is correct.  That is

14   correct.  There's no one else to take them.

15           THE COURT:  All right.  Any questions?

16           MR. CRABB:  No, Your Honor.  Thank you.

17           MR. GUILLAUME:  No.

18           THE COURT:  All right.  You can step down.  Thank

19   you.

20           THE PROSPECTIVE JUROR:  Thank you.

21           (Prospective juror exited the courtroom.)

22           MR. CRABB:  Your Honor, we ask her to be released due

23   to hardship.

24           MR. GUILLAUME:  No objection.

25           THE COURT:  All right.  Then we'll excuse her.  She's

1      excused.

2                  (Prospective juror entered the courtroom.)

3                  THE COURT:  All right.  If you could step up over

4      here, please.  You can come and step up.  Just be careful.  I

5      want to make sure you're okay.  Let me swear you in.  If you

6      could put your hand up.

7                  Ms. Patterson is going to do this.  You can turn

8      around, and she's going to swear you in.  I haven't sworn her

9      in.  Go ahead and put your things down.  That's okay.

10                 I think you're having a hearing problem.  You want to

11     give her -- there we go.  Let's see if this helps.

12                 (Tendering headphones to prospective juror.)

13                 THE COURT:  Can you hear better now?

14                 THE PROSPECTIVE JUROR:  Yes.

15                 THE COURT:  She's going to swear you in then.

16                 (Prospective juror was sworn.)

17                 THE COURT:  You can leave them in.  You need to turn

18     around.  That's it.  And you can move the chair up.  You need

19     to speak into the microphone.  You've already pulled down the

20     mask.

21                 This is Juror No. 0842.  You, obviously, have

22     somewhat of a hearing problem.  Were you able to hear my

23     questions when I discussed them last Wednesday, you know, I

24     read them to you?  Were you able to hear them?

25                 THE PROSPECTIVE JUROR:  (Shaking head).

```
 1                    THE COURT:  No?  You need to speak in the microphone.
 2                    THE PROSPECTIVE JUROR:  No.
 3                    THE COURT:  Did you bring it to our attention that
 4          you weren't able to hear?  Because we could have given you the
 5          earphones.
 6                    THE PROSPECTIVE JUROR:  I did not.
 7                    THE COURT:  I'm sorry?
 8                    THE PROSPECTIVE JUROR:  No.
 9                    THE COURT:  Okay.  There's nothing listed on the
10          card.  Can I take it that you didn't list anything because you
11          couldn't hear it?
12                    THE PROSPECTIVE JUROR:  Yes.
13                    THE COURT:  Okay.  All right.  Let me have you step
14          down for a few minutes, and we'll give you further
15          instructions.
16                    (Prospective juror exited the courtroom.)
17                    THE COURT:  Obviously, we don't want to go through
18          all of the questions.  We could probably ask some questions,
19          but you're not going to get all of them.  So rather than doing,
20          sort of, a selective questioning, I think my inclination would
21          be to simply excuse her.
22                    MR. DUNN:  No objection.
23                    MR. PATEL:  No objection, Your Honor.
24                    THE COURT:  Any objection?
25                    MR. DUNN:  No objection.
```

1           THE COURT:  I hope people would say something.  We'll

2      excuse her.

3           (Prospective juror entered the courtroom.)

4           THE COURT:  If you could step up over here, please.

5      You can put things down so you're comfortable.  If you could

6      step up, I need to swear you in.  You need to raise your right

7      hand.

8           (Prospective juror was sworn.)

9           THE COURT:  All right.  Please sit down.  You can

10     move the chair.  You can fix the microphone.  And you can take

11     your mask down because we need to be sure we have a record.

12          THE PROSPECTIVE JUROR:  Okay.

13          THE COURT:  This is Juror No. 0459.  I'm not sure

14     whether -- is that Question 1 and 5?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  So it's Question 1 and Question 5.

17     Question 1 is to find out whether you would follow what you're

18     required to do, which is that presume that each of the

19     defendants is innocent and that remains throughout the trial

20     unless the government has proven beyond a reasonable doubt each

21     element of each charge against each defendant.

22          As I said, the burden is on the government.  They

23     have to prove beyond a reasonable doubt that the -- each of the

24     elements of the charge beyond a reasonable doubt.  The burden

25     never shifts.

1          Also, the fact that they have just been charged just

2     means that -- doesn't mean that they're guilty.  It just means

3     that they're informed of what the charges are.

4          We wanted to set those principles, which is that the

5     fact that they're charged doesn't mean they're guilty, and you

6     shouldn't infer or decide they are based on that; the fact that

7     they're presumed innocent, the fact that the government has the

8     burden at all times to prove them guilty beyond a reasonable

9     doubt.

10          So I asked if you could follow the law and you put

11     that down.  Are you not able to follow those principles?

12          THE PROSPECTIVE JUROR:  I don't think so.

13          THE COURT:  You don't think so?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  Is there a particular reason why

16     you would not be able to follow them?  You need to speak into

17     the microphone.

18          THE PROSPECTIVE JUROR:  Mainly because it was -- it's

19     a charge, so it was like somebody think you did it, so I don't

20     know if I can be really --

21          THE COURT:  Well, the indictment is just -- all they

22     have to find is by probable cause, which is a much lower

23     standard --

24          THE PROSPECTIVE JUROR:  Right.  Uh-huh.

25          THE COURT:  -- than what the government has.  You're

1   not supposed to decide just because they've been charged that

2   they're guilty.

3           But it's your view that if they're charged, they must

4   be guilty?

5           THE PROSPECTIVE JUROR:  It's not absolutely, but

6   it's -- I don't know if I can say definitely they -- either

7   way.

8           THE COURT:  Okay.  But the question we had is whether

9   you could decide not to infer or be influenced by the fact that

10  the charges have been brought against them.

11          THE PROSPECTIVE JUROR:  Right.

12          THE COURT:  But to wait to see if the government, who

13  has the burden, whether they can prove the charge.

14          THE PROSPECTIVE JUROR:  I don't think I can.  Not

15  100 percent sure.  No, I can't say that I can.

16          THE COURT:  Okay.  Do we need to go any further?

17          MR. CRABB:  No, Your Honor.

18          MR. GUILLAUME:  No questions, Your Honor.

19          THE COURT:  Then let me ask you to step down.  Thank

20  you.

21          (Prospective juror exited the courtroom.)

22          MR. GUILLAUME:  Motion to strike, Your Honor.

23          THE COURT:  I assume there's no objection?

24          MR. CRABB:  No, Your Honor.

25          THE COURT:  All right.  So she's stricken.  She's

```
 1    excused.
 2               (Prospective juror entered the courtroom.)
 3               THE COURT:  If you could step up over here.  You can
 4    put your things down so you can be comfortable.
 5               THE PROSPECTIVE JUROR:  Thank you, Judge.
 6               THE COURT:  I need to have you remain standing to be
 7    sworn in.
 8               (Prospective juror was sworn.)
 9               THE COURT:  All right.  This is Juror No. 1250.  This
10    is 7E, 13, 16, 17, 21, 22, 28.
11               So let me start with 7E, which is -- you were
12    introduced to the different defendants, one of whom is
13    Mr. Geraghty.  Do you know him or have you -- why did you put
14    it down?
15               THE PROSPECTIVE JUROR:  I took a very small
16    conservative approach here per your instructions.  I met him in
17    the elevator and had a pleasant conversation, but that's the
18    extent of our interaction.
19               THE COURT:  Okay.  Did you discuss anything about the
20    case?
21               THE PROSPECTIVE JUROR:  Only sandwiches.
22               MR. CANNON:  Only what?
23               THE COURT:  Only sandwiches.  Were you aware he was
24    one of the defendants at the time or not?
25               THE PROSPECTIVE JUROR:  I was not.
```

1              THE COURT:  Okay.  Anything about that interchange

2       that would affect your consideration of the evidence as to him?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  13 is:  Whether you or somebody

5       close to you is involved in law enforcement.

6              Is that you or somebody else?

7              THE PROSPECTIVE JUROR:  A mix.  So one of the

8       entities that you described as being included was "certain

9       elements of the Internal Revenue Service."  I used to work for

10      the Internal Revenue Service for five years and, thus, have

11      many contacts at the Internal Revenue Service.

12             I assumed you were thinking of the criminal

13      investigations division.

14             THE COURT:  Right.

15             THE PROSPECTIVE JUROR:  I have some ongoing

16      interactions with them and -- through professional

17      relationships and some minor personal relationships with folks

18      at CI.  But generally, nothing that I would consider close

19      friends or very regular.

20             THE COURT:  Okay.  So can I assume that the -- in

21      terms of the -- did you work there at some point?

22             THE PROSPECTIVE JUROR:  I worked at the IRS Office of

23      Chief Counsel.  So I primarily wrote guidance and sometimes

24      would assist the IRS in enforcement matters.

25             I have never worked directly with IRS CI, though I

 1     have worked with DOJ on certain criminal enforcement matters.

 2              THE COURT:  Okay.  Is that your present job or the

 3     past job or you're still working for IRS?

 4              THE PROSPECTIVE JUROR:  I now work for the NYU

 5     University School of Law.

 6              THE COURT:  So are you a professor; are you teaching?

 7              THE PROSPECTIVE JUROR:  I run part of a -- sort of an

 8     academic center.  So we are a public interest initiative who

 9     engages on tax policy.

10              I do some teaching.  I am not on, like, a faculty --

11     I'm not on faculty.  I am not on a tenure track position.  I

12     expect to teach a class at NYU likely in the fall.

13              THE COURT:  Would it be around tax issues or other

14     things?

15              THE PROSPECTIVE JUROR:  It would be just around tax

16     credits and other rules relating to tax credits affecting

17     energy, specifically clean energy, like climate tax.

18              THE COURT:  Okay.  In terms of the contacts that you

19     have had relating -- while you were at the IRS, anything that

20     you think would affect your consideration of the evidence in

21     this case?  Obviously, the subject matter would be different.

22              But anything in terms of any discussions about

23     criminal cases or how things work or anything else that you

24     think would affect your consideration of the evidence?

25              THE PROSPECTIVE JUROR:  No.

1      THE COURT:  Okay.  You indicated you had some contact

2  with DOJ.  Was that the tax division or other parts of it?

3      THE PROSPECTIVE JUROR:  Tax division.  And appellate

4  in one case, because a case --

5      THE COURT:  Right.  Was that a case that you were

6  dealing -- that you were involved in?

7      THE PROSPECTIVE JUROR:  What do you mean by involved?

8      THE COURT:  Well, you can define it.  Was it a case

9  you were just interested in or something to do with your work

10  that involved a lawsuit that went up to the Court of Appeals?

11      THE PROSPECTIVE JUROR:  It was part of my

12  professional responsibilities.  I wasn't just, like, there for

13  fun.

14      THE COURT:  Okay.  We do have someone from the

15  Department of Justice, though a totally different division,

16  Civil Rights.

17      So is there anything about the fact that you have

18  dealt with DOJ around a case that you had that went up to the

19  Court of Appeals that would make you more inclined to --

20  towards the government based on that relationship?

21      THE PROSPECTIVE JUROR:  No.

22      THE COURT:  Okay.  16 is:  Whether you or somebody

23  close to you have been employed by a criminal defense attorney

24  or a criminal case?  Again, is that the tax or something else?

25      THE PROSPECTIVE JUROR:  No.  I mean, I've worked for

1    WilmerHale.  They, obviously, have some criminal defense

2    practice.  And the first job I had in law was specifically

3    working for a firm that did about 50 percent family law and

4    50 percent criminal defense.  That was for maybe three months

5    the summer before law school.  It was a law firm in Syracuse,

6    New York.

7            THE COURT:  Okay.  In terms of when you were with

8    Wilmer, did you do any criminal work yourself?

9            THE PROSPECTIVE JUROR:  The closest thing to criminal

10   work was work on a Senate investigation related to tax matters.

11           MR. CANNON:  Related to what?

12           THE COURT:  Tax matters.  And the other small firm,

13   did you work on any of the criminal cases?

14           THE PROSPECTIVE JUROR:  No.

15           THE COURT:  Okay.  Anything about either of those

16   experiences that you think would affect your consideration of

17   the evidence in this case?

18           THE PROSPECTIVE JUROR:  No.

19           THE COURT:  All right.  17 is, obviously -- whether

20   you or somebody close to you is a lawyer.  Obviously, you're an

21   attorney.  Anybody else that --

22           THE PROSPECTIVE JUROR:  Oh, my gosh.  The list just

23   goes on and on.

24           THE COURT:  Lot of friends?

25           THE PROSPECTIVE JUROR:  Yes, yes.

1          THE COURT:  How about family?

2          THE PROSPECTIVE JUROR:  No, no family.

3          THE COURT:  Are there close friends that are doing

4     criminal work or have done criminal work?

5          THE PROSPECTIVE JUROR:  I don't know the scope of DOJ

6     antitrust's jurisdiction; if they do criminal work, then maybe.

7     That would be one person.  He sometimes stays with us when he's

8     in D.C., but we never talk -- I never talk with him about

9     anything criminal.  I'm trying to think if -- nobody else that

10    I can think of off the top of my head.

11         THE COURT:  Okay.  So anything about yourself being

12    an attorney that you think would affect your consideration of

13    the evidence in this case; any of the work you've done or

14    anything else?

15         THE PROSPECTIVE JUROR:  No.  I do tax work.

16         THE COURT:  Will you follow my instructions even if

17    you don't agree with them?

18         THE PROSPECTIVE JUROR:  Of course.

19         THE COURT:  That's a great answer.

20         21 is:  Whether you or somebody close to you has

21    belonged to any group, organization, or contributed to any

22    group or organization that's an advocate for or against any

23    aspect of reproductive health care, including but not limited

24    to abortion.

25         So is that you or somebody else?

```
 1                THE PROSPECTIVE JUROR:  Somebody else.
 2                THE COURT:  Is it a close friend, family?
 3                THE PROSPECTIVE JUROR:  I have many friends who are
 4       close who care a lot about this space is, like, the easiest way
 5       to quickly describe it.
 6                THE COURT:  Okay.
 7                MR. KIYONAGA:  We cannot understand the witness.
 8                MR. CANNON:  You've got to speak into the microphone.
 9                THE PROSPECTIVE JUROR:  Understood.  Sorry about
10       that.
11                I was just saying that I have, like, many friends who
12       care personally, deeply about, like, these matters and have
13       donated and participated in organizations that would be
14       relevant.  But I'm not really sure how to more, like, precisely
15       describe the relationships or what exactly it is that you're
16       looking for.
17                THE COURT:  So let me ask it this way:  I take it
18       that you are not members -- a member of an organization that
19       advocates these views; is that correct?
20                THE PROSPECTIVE JUROR:  No.  The closest that I would
21       say is that through the work that I do in tax, we do a lot
22       of -- we do a lot of analysis and other policy-related work
23       related to the Affordable Care Act, and only in that, like,
24       two-step way in the sense that the Affordable Care Act requires
25       health plans to cover certain reproductive rights, health
```

1      stuff.  That's, like, the closest that my work gets to that

2      world.

3                  THE COURT:  Okay.  So you work on certain issues in

4      the Affordable Care Act, which relates to what coverage is

5      provided for health plans.  And so it would be advocating for a

6      broad coverage of health care, reproductive health care, or

7      not?

8                  THE PROSPECTIVE JUROR:  Nothing that I do ever

9      specifically would call out reproductive health care.  It would

10     specifically relate to access to credits generally for

11     Affordable Care Act coverage purchased by individuals or by

12     employers on behalf of individuals.

13                 THE COURT:  So from -- would it be fair to say then,

14     from your perspective, either workwise or personally, that you

15     have not belonged specifically to a group or donated to a group

16     that either is an advocate for or against reproductive health

17     care, including abortion?  Would that be accurate?

18                 THE PROSPECTIVE JUROR:  Yeah, I think that's right.

19     Was this the protest question?  I know that you asked --

20                 THE COURT:  I'm about to get to that.

21                 THE PROSPECTIVE JUROR:  Got it.  Okay.

22                 THE COURT:  So in terms of your membership, you've

23     given us in terms of your work.  But in terms of belonging in

24     terms of yourself, you've talked about friends having -- being

25     more active.

1          But from yourself, other than what you've talked

2     about, the Affordable Care Act, et cetera, that you don't

3     belong to any -- formally belong to any group or organization

4     or donate to any group or organization that is an advocate

5     either against or for reproductive health care, which could

6     include abortion; is that correct?

7          THE PROSPECTIVE JUROR:  That's correct.

8          THE COURT:  Okay.  Now, 22 is the one about whether

9     you or somebody close to you ever participated in a protest,

10    march, or rally regarding reproductive health care.

11         So is that you or somebody else?

12         THE PROSPECTIVE JUROR:  Both.  My personal

13    involvement closest to this would probably be, like, women's

14    rights march, that kind of thing; never anything that was

15    specifically solely targeted at reproductive health.

16         THE COURT:  Okay.  The women's march, the one you're

17    talking about is the -- had a series of different issues, which

18    could include reproductive health, but that wasn't the only

19    issue; is that what you're saying?

20         THE PROSPECTIVE JUROR:  That's correct.

21         THE COURT:  And you participated in that not

22    specifically for reproductive health, but generally; would that

23    be accurate or not?

24         THE PROSPECTIVE JUROR:  That's correct.

25         THE COURT:  28 is the last question, and that's

 1    whether you have a pressing commitment.

 2              THE PROSPECTIVE JUROR:  So I have the opportunity to

 3    testify in front of the IRS on a matter next Monday and

 4    Wednesday, the -- whatever those days are.

 5              THE COURT:  It would be the 21st and 24th?

 6              THE PROSPECTIVE JUROR:  21st and 23rd, I believe.

 7              THE COURT:  23rd, okay.

 8              THE PROSPECTIVE JUROR:  I think I can have a staffer

 9    of mine probably do that instead, if needed.

10              THE COURT:  Okay.

11              THE PROSPECTIVE JUROR:  Depending on how far into

12    September we go, I may have an opportunity to testify in

13    Congress, but I don't know what exactly the timing is because

14    the timing for that potential hearing isn't yet set.

15              THE COURT:  Okay.  We've indicated through

16    September 1st, and we've left the two dates of the 18th, this

17    Friday and the 28th.  If it goes beyond then, obviously, we may

18    need to make other accommodations.

19              If a staffer did do this, can we count on you, if you

20    were selected, to pay attention and not be distracted about the

21    fact that you're not the one testifying?  Can we count on you

22    to do that?

23              THE PROSPECTIVE JUROR:  Yeah, sure.  Absolutely.

24              THE COURT:  All right.  Any questions?

25              MR. PATEL:  Sir, at any time that you've been at the

1    courthouse, whether last week or today, have you encountered

2    anybody outside of the building who has talked about this case

3    with you?

4              THE PROSPECTIVE JUROR:  With me?  No.  I mean, there

5    were people outside, obviously, engaging on the case, but I

6    didn't talk to any of them.

7              MR. PATEL:  Did you collect or receive any paper or

8    pamphlet, leaflet that had information about this case?

9              THE PROSPECTIVE JUROR:  No.

10             MR. PATEL:  Did you read any media reports over the

11   weekend or last week about this case.

12             THE PROSPECTIVE JUROR:  No.

13             MR. PATEL:  Thank you.

14             MR. GUILLAUME:  No questions.  Thank you.

15             THE COURT:  All right.  You can step down, sir.

16             THE PROSPECTIVE JUROR:  Thank you.

17             THE COURT:  And we'll give you further instructions.

18             (Prospective juror exited the courtroom.)

19             THE COURT:  All right.  I'm assuming we're keeping

20   him.

21             (Prospective juror entered the courtroom.)

22             THE COURT:  If you could step up over here, please.

23   All right.  Make yourself comfortable.  You do need to -- so

24   you need to stand.  Ms. Patterson needs to swear you in.

25             (Prospective juror was sworn.)

1            THE COURT:  Okay.  You can move the chair up, make

2    yourself comfortable.  You need to speak into the microphone,

3    and you need to take your mask down; otherwise, we can't really

4    hear you.

5            This is Juror No. 1437.  I have Question 20.  Is 28

6    still an issue or not?

7            THE PROSPECTIVE JUROR:  28?

8            THE COURT:  This is the one about the pressing

9    commitment.

10            THE PROSPECTIVE JUROR:  Yes.

11            THE COURT:  Okay.  And then 34 is the other question.

12    So let me start with No. 28, which is the pressing commitment.

13            What is the issue for that in terms of your not being

14    able to sit?

15            THE PROSPECTIVE JUROR:  I'm supposed to leave for my

16    honeymoon next Sunday.

17            THE COURT:  Okay.  Her honeymoon.  When are you

18    going?

19            THE PROSPECTIVE JUROR:  Sunday, the 20th, 21st.  Next

20    Sunday.

21            THE COURT:  The 20th.  How long are you gone?

22            THE PROSPECTIVE JUROR:  For that whole week.  We come

23    back the 26th.

24            THE COURT:  Be the 21st through the 25th.  All right.

25    Any questions?

```
 1                    MR. CRABB:  No, Your Honor.

 2                    THE COURT:  Any questions?

 3                    MR. GUILLAUME:  No, Your Honor.

 4                    THE COURT:  All right.  You can step down.  Thank

 5       you.

 6                    (Prospective juror exited the courtroom.)

 7                    MR. GUILLAUME:  Move to strike the witness for cause.

 8                    THE COURT:  I don't think we'll ruin her honeymoon.

 9       That isn't one you're going to be shifting around.  She's

10       excused.

11                    (Prospective juror entered the courtroom.)

12                    THE COURT:  If you could step up over here.  Make

13       yourself comfortable.  We need to swear you in.

14                    (Prospective juror was sworn.)

15                    THE COURT:  All right.  You can move your chair up.

16       You need to speak into the microphone so we can hear you.  You

17       need to take your mask down so we, actually, can hear you and

18       have a record.

19                    THE PROSPECTIVE JUROR:  Okay.

20                    THE COURT:  This is Juror No. 0740.  It's

21       Questions 13, 17, 20, and 22.

22                    13 is:  Whether you or somebody close to you has

23       worked or is in the past or presently with law enforcement.

24                    Is that you or somebody else?

25                    THE PROSPECTIVE JUROR:  It's somebody else.
```

```
 1              THE COURT:  Is it a family member or a friend?

 2              THE PROSPECTIVE JUROR:  Two friends.

 3              THE COURT:  Okay.  And what law enforcement agencies

 4     do they work for?

 5              THE PROSPECTIVE JUROR:  One just recently retired

 6     from the Diplomatic Security Service.  He was a federal agent.

 7     And then the other was a federal prosecutor in New York, as

 8     well as overseas.

 9              THE COURT:  Was a federal prosecutor in New York and

10     overseas?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  The federal prosecutor, do you know what

13     office they worked for?  Did they work justice or something

14     with the State?

15              THE PROSPECTIVE JUROR:  She worked for the justice

16     department.  She was a federal prosecutor.

17              THE COURT:  Okay.  Do you know what area of subject

18     matter or division that she worked with?

19              THE PROSPECTIVE JUROR:  International terrorism,

20     fraud, deportation-type work.

21              THE COURT:  Okay.

22              THE PROSPECTIVE JUROR:  It varied depending on her

23     cases.

24              THE COURT:  It varied depending on her cases.  I take

25     it she didn't do anything that's sounding like these kinds of
```

 1    charges that we have here -- is that correct? -- to your

 2    knowledge?

 3              THE PROSPECTIVE JUROR:  Not to my knowledge.

 4              THE COURT:  Okay.  Any discussions that you might

 5    have had with her about her work on cases, judges, lawyers, or

 6    anything else that you think would affect your consideration of

 7    the evidence in the case?

 8              THE PROSPECTIVE JUROR:  No.

 9              THE COURT:  All right.  The other one was with the

10    diplomatic -- security with diplomatic services.

11              THE PROSPECTIVE JUROR:  Uh-huh.

12              THE COURT:  Anything about that person's work or

13    conversations you've had with them that you think would affect

14    your consideration of the evidence in the case?

15              THE PROSPECTIVE JUROR:  No.  He worked mostly as a

16    regional security officer, so I have no idea.

17              THE COURT:  I'm sorry.  I missed that.

18              THE PROSPECTIVE JUROR:  He worked mostly as a

19    regional security officer, so I don't actually know what he

20    worked on.

21              THE COURT:  17 is:  Whether you or somebody close to

22    you was a lawyer, worked as a lawyer, or studied law.

23              So is that you or somebody else?

24              THE PROSPECTIVE JUROR:  My uncle is a criminal

25    defense attorney in the state of California and then the

 1   previously mentioned prosecutor.

 2          THE COURT:  Right.  The two -- the other -- well, the

 3   prosecutor that you talked about, and then your uncle does

 4   criminal defense work in California?

 5          THE PROSPECTIVE JUROR:  Correct.

 6          THE COURT:  Okay.  Do you know what kind of cases he

 7   takes with criminal?

 8          THE PROSPECTIVE JUROR:  He does mostly marijuana

 9   defense, DUI.  He's a small single-shingle attorney.

10          THE COURT:  Anything about his work or discussions

11   you might have had with him about legal matters or cases or

12   anything else that you think would affect your consideration of

13   the evidence in the case?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  All right.  No. 20 is:  Although this

16   case will mention abortion, I want to be clear that this case

17   is not about whether abortion is right or wrong, morally

18   justified or unjustified.  It's about two laws that permit

19   clinics that do provide, among other things, abortion services,

20   for them to do so without physical obstruction.

21          So I'm going to ask whether you have a personal,

22   political, moral, religious opinions, or beliefs regarding the

23   issue of reproductive health care, which would include

24   abortion, that is so deeply held that they could or would

25   interfere with your ability to be fair and impartial in this

1    case.

2             There's no right or wrong answer to this.  This is a

3    matter of your being honest with us about what your views are

4    and whether they're so strongly held that it would be difficult

5    or you could not separate out your views from the evidence in

6    this case which you'd have to consider without being informed

7    by your personal views.

8             So do you think you can separate your personal views

9    from looking at the evidence, applying the law, and making a

10    decision, or do you think you cannot do that?

11             THE PROSPECTIVE JUROR:  I don't believe that I could.

12             THE COURT:  All right.  And 22 talks about marches.

13    Is that you or somebody else?

14             THE PROSPECTIVE JUROR:  Like, protests?

15             THE COURT:  Ever participate in a protest, march,

16    rally regarding reproductive health care?

17             THE PROSPECTIVE JUROR:  Yes.  My sister attended the

18    march on Washington while she was in college, and then my

19    father was going to meet her down there and was going to take

20    me to it.  We just didn't have time to go.

21             THE COURT:  So did you go, or you didn't go?

22             THE PROSPECTIVE JUROR:  I did not attend, but the

23    intention was to attend.  I have also attended marches downtown

24    in Washington, D.C., that were pro women's rights and

25    pro-choice.

1      MR. CANNON:  Pro what?

2      THE PROSPECTIVE JUROR:  Pro-choice.

3      THE COURT:  Okay.  Obviously, with the marches that

4  you're participating in, in terms of the marches, as well as

5  your beliefs that you've indicated, you answered that I don't

6  believe that I could separate the two things out.

7      Is that still your position?

8      THE PROSPECTIVE JUROR:  Yes.

9      THE COURT:  Okay.  Any questions?

10      MR. CRABB:  Good afternoon, ma'am.

11      THE PROSPECTIVE JUROR:  Good afternoon.

12      MR. CRABB:  Why is it that you think you wouldn't be

13  able to keep your personal views about abortion to the side and

14  judging the facts in this case?

15      THE PROSPECTIVE JUROR:  From my point of view -- I've

16  had friends who have worked as escorts to take patients into

17  clinics and whatnot.  And I used to live near the new Planned

18  Parenthood clinic here in Washington, D.C., and I'm just

19  walking by to go home, and people harass me anyway, and I'm not

20  even going into the clinic.

21      So I just feel predisposed not to think highly of --

22  of people who do disruptive things at clinics.

23      MR. CRABB:  Do you understand if you sat on this

24  jury, it would be your job to figure out whether or not the

25  people here accused were doing that; that would be your job to

1    figure out whether they were doing it?  Not to decide whether

2    or not doing that is right or wrong, but to decide whether or

3    not, based on the evidence presented to you, you thought the

4    accused had done that type of activity?

5              THE PROSPECTIVE JUROR:  Okay.

6              MR. CRABB:  Would you be able to make that decision

7    based on the evidence that was presented to you?

8              THE PROSPECTIVE JUROR:  I guess so.

9              MR. CRABB:  What do you mean you guess so?

10             THE PROSPECTIVE JUROR:  I guess you're asking me

11   whether or not the people who are protesting in front of

12   clinics are the kind of people -- whether or not these people,

13   the criminal defendants, are the same kinds of people and

14   whether or not I want them into the category; I don't know.

15             MR. CRABB:  Let me try to ask it more clearly.

16             THE PROSPECTIVE JUROR:  Okay.

17             MR. CRABB:  Whatever you may think about people who

18   protest or block clinics, whatever you may think about that, if

19   you were on this jury, your job would be to look at the

20   evidence and decide whether that happened here.  Whether or not

21   you approve of it, the question for you would be to determine

22   whether or not the people accused in this case had engaged in

23   that type of behavior.

24             Could you make that decision?

25             THE COURT:  Without having your own views inform it.

```
 1                    THE PROSPECTIVE JUROR:  Yes --

 2                    MR. KIYONAGA:  I object.

 3                    THE PROSPECTIVE JUROR:  Yes, I could.

 4                    THE COURT:  I'm sorry.  Without having her own views

 5        inform it is what I added.

 6                    MR. KIYONAGA:  Your Honor, I believe the question has

 7        been asked and answered.

 8                    THE COURT:  Well, he's already asked it, so I'll let

 9        her answer it.

10                    THE PROSPECTIVE JUROR:  Yes, I believe that I could.

11                    MR. CRABB:  Thank you.  Thank you, Your Honor.

12                    THE COURT:  Any questions?

13                    MR. GUILLAUME:  Court's brief indulgence?

14                    THE COURT:  Sure.

15                    MR. CANNON:  Good afternoon, ma'am.  Thank you for

16        being here.

17                    You've indicated you have some friends that are

18        clinic escorts?

19                    THE PROSPECTIVE JUROR:  Yes, sir.

20                    MR. CANNON:  Are these close friends?

21                    THE PROSPECTIVE JUROR:  They're former work

22        colleagues.

23                    MR. CANNON:  Do you talk to them frequently about

24        their experiences on the sidewalk?

25                    THE PROSPECTIVE JUROR:  I have not.
```

 1          MR. CANNON:  Okay.  You've indicated that sometimes

 2     when you're walking past a clinic, people harass you?

 3          THE PROSPECTIVE JUROR:  Yes.  I'm just walking past

 4     to go home.

 5          MR. CANNON:  Are those people who are what I would

 6     call pro-life, maybe anti-abortion activists?

 7          THE PROSPECTIVE JUROR:  I would assume that they are.

 8          MR. CANNON:  What exactly do they do that you

 9     consider to be harassment?

10          THE PROSPECTIVE JUROR:  They yell at me, and all I'm

11     doing is walking past.  I don't even look like I'm going to go

12     into the building.

13          MR. CANNON:  Now, you also indicated when Mr. Crabb

14     asked you why -- why you don't think you could put your beliefs

15     or your feelings aside, as you said you'd have that problem,

16     Mr. Crabb asked you why, and you mentioned the escorts and the

17     harassing.

18          You also said something about people who do -- I

19     couldn't hear it -- destructive or obstructive things?

20          THE PROSPECTIVE JUROR:  I don't recall.

21          MR. CANNON:  What were you referring to, or what did

22     you have in mind?

23          THE PROSPECTIVE JUROR:  So I come from a culture

24     where people don't really evangelize, and so I'm not accustomed

25     to being spoken to by strangers on the street.  Normally, I

1    just walk down the street.

2          MR. CANNON:  I guess the culture and the

3    evangelization -- did you say evangelize?

4          THE PROSPECTIVE JUROR:  Yes.

5          MR. CANNON:  Okay.  That seems something different

6    from what you had said which I thought referenced people doing

7    destructive things.  Did I just not hear that right?

8          THE PROSPECTIVE JUROR:  I'm not even sure what I

9    said.  I don't know.

10          MR. CANNON:  Okay.  Now, you heard about the

11    presumption of innocence and the duty to respect that?

12          THE PROSPECTIVE JUROR:  Yes.

13          MR. CANNON:  But if the evidence here -- and this is

14    not a hypothetical.  It's going to be very, very clear that

15    some of our clients absolutely do not like abortion; do want it

16    to end; and did go into that clinic to serve those purposes.

17          There's going to be some dispute about other things

18    they did or didn't do that may bear on innocence or guilt, but

19    it will be real clear that they're not just, hypothetically,

20    accused of doing something.  They did a lot that you might find

21    bothersome in view of your friendship with escorts and your

22    sense of harassment when people call out to you on the

23    sidewalk.

24          If you -- if you know that, among things you're going

25    to hear, what you're going to hear about these clients is that

1      they really want --

2             THE COURT:  Sir, sir -- can I -- I would not make it

3      they.

4             MR. CANNON:  Okay.  Not they.  Of my, of my client.

5      I'm sorry.

6             You're going to hear that my client doesn't like

7      abortion and went into a clinic -- not on the sidewalk, into

8      the clinic, into the waiting area, and did some things that

9      we're going to wind up talking about.

10            Does that alone give you any sense that she's gone

11     too far and that you're not really interested in hearing about

12     the smaller details that are in dispute?

13            MR. CRABB:  Objection, Your Honor.  That's --

14     [inaudible/off mic] something that's illegal.

15            MR. CANNON:  No, it's not.

16            THE COURT:  I think the way you've asked it isn't

17     going to work.  I think Mr. Crabb has touched on something.

18     You need to reword it.

19            I know what you're getting at, but not that way.  You

20     have to be careful that you don't describe something that

21     actually would be considered illegal.

22            MR. CANNON:  Right.  I'm not sure I want to get into

23     it with the juror as to what's legal or illegal.  I would

24     submit to you that there are ways that pro-life people can go

25     into a clinic and make their feelings known or talk to women or

1    whatever in ways that are not illegal.  But that many people --

2    perhaps yourself included -- would find offensive.

3              If my client went into a clinic to make her feelings

4    known, but denies doing things that violate the statute in

5    question here, would the mere fact that she had gone into that

6    clinic give you difficulty in assessing the rest of the case

7    objectively?

8              THE PROSPECTIVE JUROR:  Probably not.  I have friends

9    who are pro-life and pro-choice.  So just merely entering the

10   building would probably not.

11             MR. CANNON:  What about if they go beyond the

12   building itself and actually into the doctor's specific part

13   of -- his part of the building?

14             THE COURT:  The problem with this is that -- you

15   know, you're not saying how you're going in.  Are you going in

16   as a patient; are you going in some other way?  I mean, the way

17   you've worded it, we're not going to get an answer that fits

18   this.  I think you have to word it differently.

19             MR. CANNON:  Okay.  I want to make sure --

20             THE PROSPECTIVE JUROR:  As a patient -- a doctor

21   seeing a patient?

22             MR. CANNON:  Say it again?

23             THE PROSPECTIVE JUROR:  Is the doctor seeing a

24   patient, i.e., are they barging into somebody else's clinic

25   appointment?

1          MR. CANNON:  No.  Okay.  Let me clarify that.

2          THE COURT:  That's why -- I would stay away from

3     asking it this way.  You're going to get into difficulties in

4     terms of how you're presenting this.

5          MR. CANNON:  I'm only concerned with going into the

6     doctor's front room, you know, where people wait their turn to

7     get in to see the doctor.

8          THE PROSPECTIVE JUROR:  Okay.

9          MR. CANNON:  So if the evidence is clear -- which it

10     will be -- that my client went into the building and then into

11     the clinic waiting room, serving her interest to express

12     herself and to talk to women or whatever, but that she denies

13     certain aspects of the statute in question here, would the fact

14     that she had gone into the clinic give you difficulty in

15     remaining objective?

16          THE COURT:  You're going to have a problem with this

17     one as well.  It's a different -- it's a different crime, but

18     it still is depending on what her purpose is in terms of

19     whether or not it's criminal trespass.  I wouldn't describe it

20     that way.

21          You need to describe something that's -- I know what

22     you're trying to get at, but this isn't -- there's a way of

23     doing this, but I'm not doing your questions for you, that you

24     can set it out that it isn't going to be any kind of crime.

25     That's the point that you're asking.

1          MR. CANNON:  Can we perhaps excuse the juror briefly,

2     Judge?

3          THE COURT:  Ask the question correctly.  We're taking

4     a lot of time here.  Okay?

5          MR. CANNON:  Well, I don't --

6          THE COURT:  Ask the question in such a way if what

7     you want to ask her is something that would not be criminal

8     conduct -- which, I assume, is what you're getting at --

9     whether she would conclude, because they went into the clinic

10    office, that it somehow was criminal.  If that's what you're

11    asking, then ask it --

12         MR. CANNON:  That actually is my question.  I thought

13    I had asked it that way.

14         THE COURT:  No.

15         MR. CANNON:  If they go into the clinic, they're

16    probably not --

17         THE COURT:  Your client goes into the clinic.

18         MR. CANNON:  My client goes into the clinic, but

19    doesn't engage -- isn't breaking the law just by going in and

20    doesn't engage in things that are illegal, would the fact that

21    she just did that irritate you and make you unwilling to be

22    objective on the case?

23         THE PROSPECTIVE JUROR:  I think I'm confused.

24         THE COURT:  Irritate her is not the standard.

25         MR. CANNON:  The question is whether --

```
1              THE COURT:  This is not the standard.  If you want to
2     ask the question -- which I assume you're trying to get at --
3     as to whether her feelings are such if your client went into
4     the clinic, and just going into the clinic with nothing else --
5     which is I assume what you're saying, because then you're
6     getting into trouble -- whether she'd make an assumption --
7     some assumptions about her guilt that would be -- would not be
8     what you should be doing as a juror.
9              Does that make sense?  Can you understand that?
10             THE PROSPECTIVE JUROR:  I think I understand what
11    you're saying.
12             THE COURT:  What we're trying to do is -- he's trying
13    to get at whether you make presumptions about his client based
14    on the fact that she went into the clinic.
15             THE PROSPECTIVE JUROR:  Anybody can go in anywhere,
16    but it's a question of --
17             THE COURT:  I'm sorry?
18             THE PROSPECTIVE JUROR:  Anyone can go in anywhere if
19    they have a purpose for being there.  I just don't really
20    understand what he's driving at.
21             THE COURT:  Okay.  That's your answer.
22             MR. CANNON:  So let me clear that up.  Many people
23    can go into that clinic because they have an appointment or the
24    purposes that are what the clinic does.
25             THE PROSPECTIVE JUROR:  Sure.
```

1        MR. CANNON:  But if my client went into the clinic

2    for a purpose other than what the clinic -- not as a patient or

3    whatever, but in order to make her feelings known about

4    abortion or talk to women, maybe try to talk them out of it and

5    stuff like that --

6        THE COURT:  You've just described something that's a

7    problem for your client, so do not phrase it that way.

8        MR. CANNON:  I guess I don't understand the Court's

9    problem here.

10        THE COURT:  You've just described close to being

11    illegal conduct.  I suggest you word it differently.  What

12    you're trying to get at, I assume, is a presumption.  If

13    she goes -- a presumption that she would have going in beyond

14    what you have.

15        MR. CANNON:  I'm concerned about a presumption but

16    also just a difficulty with objectivity, which isn't

17    necessarily a presumption.

18        THE COURT:  Okay.

19        MR. CANNON:  If the evidence indicates that my client

20    went into the clinic not to have their services but because she

21    wants to express herself and engage with women --

22        THE COURT:  Counsel, let's do this.  Can I ask you to

23    step down for a second.

24        THE PROSPECTIVE JUROR:  Sure.

25        (Prospective juror exited the courtroom.)

```
1            THE COURT:  Whether or not it fits exactly this

2     crime, if you go into a thing and you harass the people or

3     patients that are there, that's criminal conduct.  If you go

4     into --

5            MR. CANNON:  Nobody said harass, Judge.

6            THE COURT:  Of course it is.  If she's talking to

7     patients there, trying to talk them out of something, you don't

8     think that that's harassment?

9            MR. CANNON:  That is very likely not harassment.  I

10    know the statutes well, Judge.

11           THE COURT:  I'm not talking about necessarily this

12    one, but just in general, in terms of what the purpose is.  You

13    need to not -- you're doing a hypothetical.

14           MR. CANNON:  I am not.

15           THE COURT:  You are.  Because that's not just what

16    she did, number one.  But number two, you're presenting it in

17    terms of conduct that borders on, frankly, from my perspective,

18    other criminal conduct, criminal trespass, a bunch of other

19    things.  This is still a private clinic.

20           MR. CANNON:  Well, okay.

21           THE COURT:  My point is, if you want to get into

22    objectivity, then ask the question in a way that gets to that,

23    not the way you've been doing it.  If you can't do it next

24    time, then you need to sit down.

25           MR. CANNON:  There are two things I need to address
```

1   on that, Judge.  First of all -- and this isn't a hard

2   question.

3          There are many ways to go into a clinic as a

4   pro-lifer to talk to women that do not commit a crime.  The

5   idea that it's just harassment automatically because you go in

6   there and you want to hand a lady a pamphlet --

7          THE COURT:  You're assuming the way you're doing it

8   that there are not issues.  I'm not prepared to say that going

9   in, handing out pamphlets that they're not interested in

10  getting or they're contrary to it or talking to women in terms

11  of proselytizing, which is what you're doing, in a private

12  clinic does not create some issues.

13         So I'm not prepared to say that what you're

14  describing is legal, which is the way you'd have to present it.

15  You're trying to present that she did something legal, and this

16  juror is not sufficiently objective.  You have to ask it

17  another way.  And I'm not going to go through this with several

18  questions.  You've got one more chance.

19         MR. CANNON:  I guess what I would --

20         THE COURT:  Hold on.  Mr. Crabb?

21         MR. CRABB:  Your Honor, if I may add another thing.

22  It would be totally appropriate for this woman, if she sat on

23  the jury, to factor in the fact that Ms. Handy went in the

24  clinic.  That would be something she absolutely could consider

25  in determining whether she was guilty or not.

1        MR. CANNON:  No question.

2        MR. CRABB:  To try to separate that and say if you'd

3    consider that, that makes you biased is an improper question.

4        MR. CANNON:  I wouldn't ask that, Judge.

5        MR. CRABB:  That's what's been asked several times,

6    Your Honor.

7        THE COURT:  That's what you're getting at.  You're

8    putting a bunch of different things.  You need to ask it

9    differently.  You have one more chance to ask it without doing

10   these things that create problems.

11       MR. CANNON:  Let me do it this way then; see if this

12   makes you more comfortable.

13        Let's assume for the sake of discussion -- and I

14   would assume it with the juror -- that Ms. Handy is doing

15   something that may be a trespass or some other law violation,

16   but that is, arguably, yes or no, but may not be a violation of

17   the FACE Act.  Is the fact that she --

18       THE COURT:  Then you're getting into hypotheticals.

19   I'm not doing that.  I'm not doing a bunch of hypotheticals

20   that then are left in their head that somehow this is what the

21   case is about.  You're not going to relabel this case.

22        I've indicated a couple times what it's about, and

23   that's what's going to stick.  So if you want to get at how

24   objective she would be or whether she would come to different

25   conclusions about it, then ask it differently.  There are ways

 1    to do that.

 2           MR. CANNON:  I'd just like to make a comment for the

 3    record then, and I'll sit down; I won't ask any further

 4    questions.

 5           It is not really accurate to say -- how do I want to

 6    put it?  It's not really accurate to say this is just a case

 7    about people who have been accused of things and it's a

 8    presumption of innocence.  Maybe they had nothing to do with

 9    anything, and the presumption just gets them off scot-free.

10           The harder question here is that the evidence is

11    going to show that they did a lot of things that will be

12    disturbing to most of these jurors, and that raises a different

13    question.  Technically, it's not about abortion, but when

14    people who donate to Planned Parenthood and go to the marches

15    say they'd have a hard time and stuff, it's because of their

16    beliefs about abortion that they're having a hard time.  So it

17    kind of becomes about abortion.

18           But more importantly, the question is if my client

19    did nine things that are going to irritate the person, may or

20    may not have violated other laws, but we're going to argue

21    about the tenth thing that does or doesn't get her on the hook

22    on FACE, I think the juror's response to those other things

23    that did happen plainly and that would be disturbing, as they

24    seem to be to the Court, that's fair inquiry.

25           THE COURT:  It's not disturbing to me.  It's just

1    that they're not accurate.  I mean, part of the problem that

2    you're doing here is you're doing sort of a half-baked thing.

3            This case is about where they acted with the

4    requisite intent to obstruct access -- okay? -- for

5    reproductive care, which can include abortions at this

6    particular clinic.  That's what this case is about.

7            If you want to indicate a whole series of things that

8    they would find disturbing, that is not the issue.  The

9    question is, what actions did they take and what was the intent

10   when they took them.

11           You're saying they did a bunch of bad things that

12   people aren't going to like; that's not going to go anywhere --

13   okay? -- in terms of the question.  Unless you admit your

14   client -- you're admitting through you that she's agreeing she

15   did all of these things, but didn't have the requisite intent

16   or something.  That's getting into a defense.  That's not going

17   to work either.

18           The point is, in terms of going in, whether they

19   obstructed by force or various other things and what was their

20   intent in going in -- okay? -- the problem with the way you've

21   added it, you're sort of confusing issues as to, well, what was

22   her intent going in or not.  You're giving them a hypothetical

23   that may or may not match the evidence.

24           I agree with you, you want to find out whether she

25   can be objective with the views that she has.

```
1              MR. CANNON:  As to a person who went into the clinic.

2              THE COURT:  Right.

3              MR. CANNON:  Which may or may not be --

4              THE COURT:  The point is, she indicated just going

5    into the clinic, she answered that.  Anybody can go --

6              MR. CANNON:  Referring to a patient.  She said anyone

7    can go in.  I think she's referring to a patient.

8              THE COURT:  She may be referring to patients.  The

9    point is that you asked her one question, just going into the

10   clinic.  Well, just going into the clinic, I'm not sure what

11   that does.  But she answered in terms of that anybody can go

12   into the thing, I think she was thinking about.  She then asked

13   were they there for the doctor or whatever.

14             MR. CANNON:  Right.

15             THE COURT:  Then you're getting into a discussion

16   about what the facts would be that would come out.  You're not

17   going to get to answer it that way.

18             You're, basically, providing her with a bunch of

19   information that's not accurate the way the case is going to

20   come out.

21             MR. CANNON:  That's not true, Judge.

22             THE COURT:  Or the decisions she's going to make,

23   other than her going in.

24             MR. CANNON:  I am not using hypotheticals.  I'm not

25   stating things that the evidence won't show.
```

1          THE COURT:  You're stating things -- to some degree

2     you're stating things that are hypothetical when you add

3     things.

4          The other part of it is you're discussing matters in

5     terms of trying to break it down as to what point she would

6     decide there was a problem.  That's not the way the case gets

7     presented, nor is it the way that they make decisions.  All

8     right?

9          In terms of what I said, it's the requisite intent,

10    what was obstructive, what was not.  If you asked her what you

11    did in terms of going in, she talked about anybody can go in,

12    then discussed, when you asked about handing leaflets, whether

13    they were there for a doctor.  I mean, she's asking you

14    questions back to fill in the rest of it in order to answer it.

15         That's not going to work for a question for you.

16    Okay?  You've put on what you want.  I don't have a problem if

17    you want to make one last effort to it.

18         MR. CANNON:  I don't want to waste the Court's time.

19    I want to get that last effort correct.

20         I feel like when we talk about how the people are

21    entitled to presumption of innocence and all of that, the

22    jurors who acknowledge that have maybe in their mind that a

23    person who is accused of doing these things actually didn't

24    participate at all, didn't go in or anything.  But the real --

25         THE COURT:  I don't know that you necessarily have to

1   do that.  I mean, what you'd have to -- I think the answer

2   still is the question that I asked, which is has she ordered --

3   if somebody goes into the clinic, can she make a decision,

4   decide what the intent was in terms of if they went in and you

5   listened to the government, and she'd have to decide what her

6   intent in going in and did she or did she not obstruct access.

7   That's what the --

8           MR. CANNON:  Well, that's a good question.  I like

9   that question.

10          THE COURT:  Well, ask that.

11          MR. CANNON:  Okay.  As long as it's predicated on

12  knowing that she actually went into the clinic unwelcome.

13          THE COURT:  Well, you want to admit that she went in

14  and obstructed it?

15          MR. CANNON:  Of course not.  I'll admit she went in.

16          THE COURT:  Well, then you just did.

17          MR. CANNON:  I'll admit she went in.  That's going to

18  be undisputed.  The question is going to be the obstruction.

19          THE COURT:  What intent did she have when she went

20  in?

21          MR. CANNON:  I'm not going to address that with the

22  juror.

23          THE COURT:  Whether she acted with a specific intent

24  to obstruct access to reproductive health services broadly.

25  That doesn't just include abortion at this particular clinic.

1      That's the question she's going to have to answer.  Can she do

2      it or is it going to be her -- you could say, does she have the

3      requisite intent on going in and deciding whether her actions

4      in the clinic were obstructive without getting into what they

5      are.

6                  MR. CANNON:  Okay.  So given the fact that she went

7      in, would she have difficulty addressing the remaining question

8      as to her requisite intent?

9                  THE COURT:  She didn't have difficulty.  She

10     indicated it depended on what the reason was for her going in.

11                 MR. CANNON:  That's my question.  I didn't say she

12     said it.  I said that will be my question.

13                 THE COURT:  What are you going to ask?  We're wasting

14     an extraordinary amount of time.

15                 MR. CANNON:  If she -- I don't think we're wasting

16     it.  If she --

17                 THE COURT:  Just ask the question you're going to ask

18     her.

19                 MR. CANNON:  My question will be, if you see from the

20     evidence that my client went into the clinic, would that alone

21     give you difficulty being objective as to the remaining

22     questions around her intent?  I think that's a fair question.

23                 THE COURT:  Okay.  But it has to be -- it's not see;

24     it's credit.

25                 MR. CANNON:  Say it again.

1          THE COURT:  Instead of seeing that she goes in -- she

2     doesn't see the evidence.  It's crediting the evidence.

3          MR. CANNON:  If you determine from the evidence that

4     she went in, how's that?  Let's do that.

5          THE COURT:  All right.  Let's try that one.

6          (Prospective juror re-entered the courtroom.)

7          THE COURT:  Go ahead and sit down.  As I said,

8     there's no right or -- you can take the mask off.  There's no

9     right or wrong answer.  We're just trying to get an answer --

10    an honest answer from you.  Okay?

11         THE PROSPECTIVE JUROR:  Okay.

12         THE COURT:  Mr. Cannon?

13         MR. CANNON:  Just writing this down so I get it

14    right, Judge.

15         Okay.  Ma'am, I appreciate your patience.  If you

16    determine from the evidence that you hear in this case that my

17    client did go into the clinic, not as a patient but for her own

18    purposes, would you be able to maybe set that aside and remain

19    objective as to the remaining issues in the case that depend

20    upon determining my client's intent?

21         THE COURT:  Well, you can't set it aside.  One of the

22    elements is they have to go into the clinic.

23         MR. CANNON:  I mean, for the purpose of --

24         THE COURT:  No.  I mean, it's -- you have to --

25    they'd have to show that they went -- your client went into the

1    clinic.

2              MR. CANNON:  Don't set it aside.

3              MR. CRABB:  Objection to whether that and that fact

4    alone --

5              THE COURT:  You need to take your mask down so I can

6    hear you.

7              MR. CRABB:  I apologize, Your Honor.

8         What the Court had discussed was whether that fact,

9    entering the clinic, and that fact alone would be all the juror

10   would consider.

11             THE COURT:  All right.  Maybe you could ask it that

12   way.  That gets to the issue you want as to whether she would

13   be objective.

14             MR. CANNON:  Do you want her to try and answer that?

15             THE COURT:  You want to -- in terms of asking --

16             MR. CANNON:  Let me rephrase my question.  I wouldn't

17   expect you to set that aside entirely.

18        But determining that my client went into the clinic,

19   not as a patient, would you be able to objectively view the

20   other issues in the case that depend upon my client's intent?

21             THE PROSPECTIVE JUROR:  Yes.

22             MR. CANNON:  Okay.  Thank you.

23             MR. KIYONAGA:  Could the Court give us a moment,

24   please, Your Honor.

25             THE COURT:  A true moment.  We have spent an

1    extraordinary amount of time.

2           MR. KIYONAGA:  Your Honor, there are five of us.  We

3    need a moment.

4           THE COURT:  Are we done?

5           MR. GUILLAUME:  Nothing further.

6           THE COURT:  You can step down.  Thank you.

7           THE PROSPECTIVE JUROR:  Thank you.

8           (Prospective juror exited the courtroom.)

9           MR. GUILLAUME:  Your Honor, move to strike.

10          MR. CRABB:  We oppose, Your Honor.

11          THE COURT:  Okay.  What are you relying on?  She gave

12   the answer that -- in terms of being objective.  Tell me what

13   it is that you have a problem with.

14          MR. GUILLAUME:  Your Honor, she initially said --

15   respectfully, Your Honor, we submit this juror could not be

16   fair and impartial.

17          THE COURT:  Why?

18          MR. GUILLAUME:  Based on her testimony -- her

19   statement that her interactions with -- her initial answer with

20   her interactions with persons outside of clinics, the fact that

21   she has friends who have been, I think she used the word

22   harassed, by persons on the street, including herself.

23          In this case, I would submit one could determine

24   there's similar conduct, and I think her first answer was --

25   before we went down that rabbit hole, I think her first answer

1    was the honest answer, and she said, quote, I don't believe

2    that I could, in response to the Court's questions, put those

3    feelings aside based on prior experiences.

4              For those reasons, we submit she should be stricken

5    for cause.  Thank you.

6              THE COURT:  Mr. Crabb, why don't you respond.

7              MR. CRABB:  Your Honor, we did not go down a rabbit

8    hole.  Where we went was where we should be.  Where we went was

9    presenting to this potential juror what the rules would be and

10   what her role would be if she were chosen to sit on this jury.

11             When that was made clear to her, when the Court added

12   explanation over Mr. Kiyonaga's interruption, the juror was

13   quite clear that she could judge this case on the evidence

14   presented to her and not be improperly influenced by views she

15   has.

16             She said it then, she said it repeatedly later when

17   she was asked other questions which were quite convoluted.

18   There's no basis to strike this juror for cause.

19             THE COURT:  I'm not going to excuse her.

20             MR. KIYONAGA:  Your Honor, objection.

21             THE COURT:  You'll note an objection for the record.

22             MR. KIYONAGA:  Your Honor, could I be heard very

23   briefly?

24             THE COURT:  I'm not going to hear -- we've already

25   heard once, unless you have something additional to add.

1          MR. KIYONAGA:  I do, ma'am.

2          THE COURT:  I'm not going to have anything else.  Go

3     ahead.

4          MR. KIYONAGA:  First of all, it was an objection, not

5     an interruption.

6          Secondly, I would object to the Court's continuing to

7     question any witness who answers the Court's plenary question

8     as to whether or not --

9          THE COURT:  You have been -- may I point something

10    out, sir.  When you have gotten the answer you didn't like or

11    she's come up with the different answer, you-all have asked

12    questions too.  I have no problem with your pursuing it as long

13    as it's a fair question in terms of asking additional ones to

14    make sure that they understand.  Both the government has done

15    that and you have done that.  I've allowed it as long as you do

16    it fairly, and different -- as they've come through.

17         As far as I'm concerned, I'm not going to say you can

18    only get the first answer.  You-all have not been happy with

19    the first answer either on a number of these.  I'm not doing

20    that.  That's not the way you do this.

21         I understand your objection.  Please sit down and

22    let's move on.

23         MR. KIYONAGA:  Your Honor, I'm not confident you

24    understand my objection.

25         THE COURT:  I do understand your objection.

```
1            MR. KIYONAGA:  I'm trying to make a record.

2            THE COURT:  The answer is suitable to you, you want

3     everything to stop.  And if it's not, then you-all ask

4     additional questions to clarify it.

5            MR. KIYONAGA:  That is not what I'm saying, ma'am.

6            THE COURT:  Then what is it?

7            MR. KIYONAGA:  I'm saying that when the Court asks a

8     question about whether the juror can be impartial and receives

9     a response that is either a no or an equivocation, that at that

10    point the voir dire should end and that --

11           THE COURT:  Absolutely not.

12           MR. KIYONAGA:  -- regardless of what side of the

13    spectrum the person is on.  That's simply my objection.

14           THE COURT:  You can ask for an additional

15    explanation.  There are additional questions that are included

16    in terms of getting -- I'm not doing it that way.  Judges don't

17    do that.  You can sit down.

18               (Prospective juror entered the courtroom.)

19           THE COURT:  If you could step up over here, please.

20    All right.  If you could step up, and then we'll swear you in.

21               (Prospective juror was sworn.)

22           THE COURT:  All right.  If you can move your chair

23    up, you need to speak into the microphone.

24           THE PROSPECTIVE JUROR:  Okay.

25           THE COURT:  This is Juror No. 0343.  It's Questions
```

1    17, 21, 22, 25, 28, and 34.

2            So let me start with 17, which is:  Whether you or

3    somebody close to you is a lawyer, worked for a lawyer, or

4    studied law.

5            Is that you or somebody else?

6            THE PROSPECTIVE JUROR:  It would be somebody else.

7            THE COURT:  A family member or a friend?

8            THE PROSPECTIVE JUROR:  A family member and then

9    my -- I lived with someone while they went to law school.

10           THE COURT:  In terms of family, what relationship?

11           THE PROSPECTIVE JUROR:  My cousin's husband, but

12   we're very close.  We're more like sisters.  I'm the godparent

13   to their children.

14           THE COURT:  So your cousin's husband is an attorney.

15   Does he practice in the criminal area, to your knowledge?

16           THE PROSPECTIVE JUROR:  Well, he's now a JAG in the

17   National Guard, so I don't know if that's criminal or not.

18   It's special.

19           THE COURT:  All right.  Has he done other -- he works

20   for JAG now.  Did he do other things before that?

21           THE PROSPECTIVE JUROR:  Yes.  He worked in -- for a

22   firm, and they were -- if their clients had broken laws in

23   other countries, he did research to try and prove that they

24   didn't know they were breaking the law.

25           THE COURT:  Okay.  So those have been the two types

1      of law that he's practiced, to your knowledge?

2                 THE PROSPECTIVE JUROR:  Yes.

3                 THE COURT:  Anything about your discussions you might

4      have had with him, about the law, cases, or anything else that

5      you think would influence you in this case?

6                 THE PROSPECTIVE JUROR:  In this case, no.

7                 THE COURT:  All right.  In terms of your roommate, I

8      take it, any discussions about what they were studying about

9      criminal law or anything else?

10                THE PROSPECTIVE JUROR:  No.

11                THE COURT:  All right.  21 is:  Whether you or

12     somebody close to you belongs to any group or organization or

13     contributed to any group or organization that either is an

14     advocate for or an advocate against any aspect of reproductive

15     health care, which would include abortions as well.

16                Is that you or somebody else?

17                THE PROSPECTIVE JUROR:  Someone else.  Maybe I was

18     misremembering that question.  I thought that was, have you

19     given financial donations to them.

20                THE COURT:  It includes that.

21                THE PROSPECTIVE JUROR:  Okay.

22                THE COURT:  So is it a family member or close friend

23     that has done donations?

24                THE PROSPECTIVE JUROR:  I think from time to time, I

25     have probably donated to causes.  I don't have a standing

1    donation.  You can see I wrote that in a different ink, because

2    I was remembering one time I was supposed to do a donation when

3    somebody died, and I forgot, and that was just clouding my

4    mind.  Then I was thinking, probably from time to time I have

5    given money here or there.

6              THE COURT:  Okay.  So is it a specific group that you

7    would have donated through that would have covered

8    reproductive --

9              THE PROSPECTIVE JUROR:  Yes.  It would probably be

10   Planned Parenthood.

11             THE COURT:  Okay.  When would the last time have been

12   that you donated, do you recall?

13             THE PROSPECTIVE JUROR:  I -- probably around when

14   Trump was elected.  Probably around when Trump was elected;

15   probably.

16             THE COURT:  Okay.  Is it a one-time donation or you

17   gave more?

18             THE PROSPECTIVE JUROR:  I've never done anything on a

19   series schedule thing.  But if people are raising money for

20   this and that, that is something I would contribute to.

21             THE COURT:  So, obviously, if donating the money, you

22   would have been sympathetic to their views about reproductive

23   care, which would include abortion; is that correct?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  We ask this question to make sure that

1    you can put aside your views of -- since you're donating,

2    you're sympathetic to those issues of reproductive care,

3    including abortion, to make sure that that -- your views don't

4    inform how you examine the evidence, because you're expected to

5    examine the evidence only that's presented in the courtroom,

6    apply the law as I instruct you, and make a decision as to

7    whether the government has proved the case beyond a reasonable

8    doubt.

9            What we don't want you to do is to include the --

10   your views and have that color your view of the evidence when

11   you're determining it.

12           So do you believe that you can separate out your

13   personal views, as represented by Planned Parenthood, from the

14   evidence and make an independent decision?

15           THE PROSPECTIVE JUROR:  So as we've been sitting for

16   the past few days --

17           THE COURT:  Right.

18           THE PROSPECTIVE JUROR:  -- with this always in the

19   back of my mind, I think on Wednesday I would say absolutely,

20   yes, I could separate my views.

21           As you can see, I answered I've been on other juries

22   before, and we've reached verdicts.  But something in my mind

23   feels more personal about this, and I would hope that I could

24   be impartial.

25           I try to be impartial with my job, which I'll bring

1  up when we get to No. 28.  I try to hear both sides of things

2  and be impartial.  I consider myself an impartial person, but I

3  will say I am questioning my impartiality now.

4          THE COURT:  Okay.  In terms of making a decision in

5  this particular case?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  We'll add into -- evidently, you put 22

8  down, which is either you or somebody close to you participated

9  in a protest, march, rally.  Is that you?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  And what protest or rally was that?

12          THE PROSPECTIVE JUROR:  That was after -- the large

13  women's march after Trump was elected.

14          THE COURT:  And was your purpose in marching, did it

15  relate to reproductive care?

16          THE PROSPECTIVE JUROR:  It didn't relate, but it

17  wasn't unrelated.

18          I'm sorry.  That's a vague answer.  I didn't go with

19  that particular issue in mind, but I was concerned at that time

20  about how the laws might change.

21          THE COURT:  Okay.  In terms of 28, which is the issue

22  relating to whether you're available to participate as a juror,

23  what is the issue?

24          THE PROSPECTIVE JUROR:  Well, I'm a third-grade

25  teacher, and I would have to miss the first week of school.

1    That's a window of time that you can't get back with your

2    students in terms of forming relationships and setting up rules

3    and routines for the whole year.

4              THE COURT:  What is the -- what week do you start

5    school?

6              THE PROSPECTIVE JUROR:  I start on the 28th.

7              MR. CANNON:  28th?

8              THE PROSPECTIVE JUROR:  The 28th is the first day of

9    school for children.

10             THE COURT:  Actually, that's a day that's off,

11   August 28th.  But we would probably be -- at the rate we're

12   going, we'll probably sit for the rest of the week.  So you're

13   talking about the week of the 28th, not just the 28th?

14             THE PROSPECTIVE JUROR:  Correct.  I have to work the

15   week before because I have to set up and unpack the classroom.

16             THE COURT:  Okay.  Any questions?

17             MR. GUILLAUME:  No, Your Honor.

18             MR. PATEL:  No, Your Honor.

19             THE COURT:  All right.  You can step down.

20             THE PROSPECTIVE JUROR:  Thank you very much,

21   everyone.

22             (Prospective juror exited the courtroom.)

23             MR. GUILLAUME:  I'd make a motion to strike this

24   juror, Your Honor.

25             THE COURT:  Any objection?

1          MR. PATEL:  No objection.

2          THE COURT:  All right.  She's needed for the third

3     grade.

4          We're going to stop at this point for lunch because

5     it's close enough.  We're excusing her.

6          What I am going to be doing is taking a look at -- to

7     see whether we actually need more jurors, which I may ask them

8     to do since we're whipping through the ones that we've got.  At

9     this point we have 30 out of 42.

10          MR. CANNON:  We have?

11          THE COURT:  We have 30 out of 42 that we need.  I'm

12     going to try and figure out whether we need to ask them.  They

13     will have started their new two weeks, so it would put it --

14     would work, actually, in terms of being able to potentially do

15     this.

16          I'll let you know if I'm going to ask them to get

17     some additional jurors from the pool that starts now.  I hope

18     we don't have to because we'd have to do all of the questions

19     all over again.  I'll see where we are.

20          See you back after lunch, And we're coming back at

21     2:00.

22               (The trial adjourned at 12:55 p.m.)

23

24

25

1                      CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, TAMARA M. SEFRANEK, do hereby certify that the

4       above and foregoing constitutes a true and accurate transcript

5       of my stenographic notes and is a full, true, and complete

6       transcript of the proceedings to the best of my ability.

7                      Dated this 15th day of August, 2023.

8

9                           /s/ Tamara M. Sefranek_____
                            Tamara M. Sefranek, RMR, CRR, CRC
10                          Official Court Reporter
                            Room 6714
11                          333 Constitution Avenue, N.W.
                            Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'80s** [1] - 78:1
**'89** [1] - 78:1
**'90** [1] - 78:1

**/**

**/s** [1] - 147:9

**0**

**0194** [1] - 83:25
**0342** [1] - 39:20
**0343** [1] - 139:25
**0459** [1] - 94:13
**0463** [2] - 33:15, 39:8
**0573** [1] - 29:25
**0674** [1] - 85:25
**0740** [1] - 109:20
**0842** [1] - 92:21

**1**

**1** [3] - 94:14, 94:16, 94:17
**10** [2] - 31:3, 31:16
**100** [1] - 96:15
**1015** [1] - 54:5
**1050** [1] - 1:24
**11:00** [2] - 70:17
**12** [3] - 12:1, 33:15, 33:17
**1244** [3] - 56:9, 71:10, 83:9
**1250** [1] - 97:9
**12:55** [1] - 146:22
**13** [8] - 39:20, 39:21, 56:10, 56:11, 97:10, 98:4, 109:21, 109:22
**1350** [1] - 2:3
**14** [5] - 1:6, 7:20, 9:11, 72:18, 72:22
**1413** [1] - 2:6
**1437** [1] - 108:5
**15** [1] - 21:9
**1500** [7] - 5:10, 5:12, 7:3, 7:6, 20:10, 23:8, 23:14
**15th** [1] - 147:7
**16** [4] - 72:18, 73:23, 97:10, 100:22
**16983** [1] - 1:18
**17** [14] - 7:20, 11:4, 33:15, 34:14, 56:10, 57:2, 72:18, 75:6, 97:10, 101:19, 109:21, 111:21, 140:1, 140:2
**1792** [2] - 7:7, 7:19

**17th** [1] - 25:21
**18** [2] - 21:10, 54:12
**18th** [4] - 24:12, 24:14, 47:23, 106:16
**1980s** [1] - 75:4
**1989** [1] - 82:25
**1996** [2] - 40:3, 40:11
**1:22-CR-096** [1] - 1:3
**1st** [2] - 70:1, 106:16

**2**

**20** [2] - 13:15, 17:22, 31:3, 31:16, 33:15, 37:19, 108:5, 109:21, 112:15
**20001** [2] - 2:23, 147:11
**20004** [1] - 1:16
**20036** [2] - 1:25, 2:4
**2014** [2] - 79:13, 82:1
**202-354-3246** [1] - 2:23
**2020** [1] - 88:3
**2023** [2] - 1:6, 147:7
**20530** [1] - 1:13
**20815** [1] - 2:9
**20th** [2] - 108:19, 108:21
**21** [15] - 7:20, 12:13, 33:16, 39:20, 41:9, 56:10, 58:3, 72:19, 76:1, 85:25, 86:2, 97:10, 102:20, 140:1, 141:11
**2112** [1] - 7:22
**21st** [4] - 106:5, 106:6, 108:19, 108:24
**22** [13] - 5:2, 7:20, 15:1, 56:10, 59:18, 72:19, 77:18, 97:10, 105:8, 109:21, 113:12, 140:1, 144:7
**22-096** [1] - 3:2
**22314** [1] - 2:11
**23rd** [2] - 106:6, 106:7
**24th** [5] - 24:11, 90:24, 91:1, 91:7, 106:5
**25** [5] - 30:1, 30:12, 72:19, 79:3, 140:1
**25th** [4] - 61:8, 63:3, 63:7, 108:24
**26th** [2] - 63:7, 108:23
**27th** [2] - 63:7, 63:8
**28** [15] - 33:16, 39:21, 47:10, 54:6, 56:10, 85:25, 90:18, 97:10, 105:25, 108:5, 108:7, 108:12, 140:1, 144:1, 144:21

**28th** [9] - 47:24, 63:12, 106:17, 145:6, 145:7, 145:8, 145:11, 145:13
**29th** [2] - 63:12, 68:5
**2:00** [1] - 146:21

**3**

**30** [4] - 76:14, 82:21, 146:9, 146:11
**308** [1] - 2:4
**30th** [4] - 61:8, 63:10, 63:12, 68:6
**31** [3] - 86:1, 88:23, 89:16
**333** [2] - 2:22, 147:11
**34** [8] - 61:21, 61:22, 61:24, 89:5, 89:7, 89:8, 108:11, 140:1
**370th** [1] - 1:18
**3712** [1] - 2:8
**38803** [1] - 1:21

**4**

**42** [3] - 5:2, 146:9, 146:11
**44th** [1] - 50:1
**4506** [1] - 1:21
**47** [1] - 5:13
**48708** [1] - 2:7
**4:00** [3] - 6:1, 25:12, 26:4

**5**

**5** [4] - 7:20, 7:21, 94:14, 94:16
**50** [2] - 101:3, 101:4
**50-state** [1] - 36:4
**500** [1] - 1:24
**51525** [1] - 1:19
**52** [1] - 5:1
**5:00** [1] - 6:2

**6**

**600** [1] - 2:10
**601** [1] - 1:13
**6714** [2] - 2:22, 147:10
**6:00** [2] - 55:7, 55:9
**6:30** [2] - 55:6, 55:9

**7**

**744** [2] - 72:18, 72:20
**747** [2] - 72:20, 72:21
**7E** [2] - 97:10, 97:11

**9**

**95** [1] - 6:3
**950** [1] - 1:16
**9:10** [1] - 1:6

**A**

**a.m** [1] - 55:9
**A.M** [1] - 1:6
**ability** [6] - 38:4, 38:10, 38:15, 67:22, 112:25, 147:6
**able** [27] - 22:8, 31:10, 45:7, 47:1, 47:7, 51:9, 54:10, 54:21, 54:24, 59:12, 64:6, 67:16, 84:3, 88:16, 89:18, 89:23, 92:22, 92:24, 93:4, 95:11, 95:16, 108:14, 114:13, 115:6, 134:18, 135:19, 146:14
**abortion** [81] - 12:17, 13:17, 27:1, 27:4, 27:7, 27:20, 27:21, 27:23, 28:2, 28:4, 28:6, 28:10, 28:24, 36:11, 37:9, 37:20, 37:21, 37:23, 38:3, 41:13, 41:22, 41:24, 42:7, 42:10, 42:13, 42:24, 43:8, 43:9, 43:10, 43:19, 44:14, 44:16, 44:18, 46:23, 49:11, 50:4, 50:16, 50:20, 51:7, 51:9, 51:18, 51:25, 52:7, 52:22, 58:7, 58:24, 59:4, 59:7, 59:9, 59:16, 60:1, 60:14, 60:16, 62:3, 67:5, 67:7, 67:15, 67:17, 76:5, 76:24, 81:1, 86:5, 86:24, 102:24, 104:17, 105:6, 112:16, 112:17, 112:19, 112:24, 114:13, 117:6, 118:15, 119:7, 124:4, 128:13, 128:16, 128:17, 132:25, 142:23, 143:3
**abortions** [5] - 28:6, 45:15, 77:12, 129:5, 141:15
**absolutely** [6] - 96:5, 106:23, 118:15,

126:24, 139:11, 143:19
**academic** [1] - 99:8
**accept** [1] - 51:3
**access** [24] - 16:12, 27:7, 27:25, 28:10, 36:10, 37:9, 49:10, 50:9, 50:15, 50:19, 51:9, 51:18, 60:1, 62:4, 67:4, 67:7, 67:15, 67:17, 104:10, 129:4, 132:6, 132:24
**accident** [1] - 79:22
**accommodate** [1] - 68:6
**accommodation** [1] - 26:11
**accommodations** [1] - 106:16
**accurate** [10] - 28:4, 44:15, 45:17, 104:17, 105:23, 128:5, 128:6, 129:1, 130:19, 147:4
**accused** [9] - 40:22, 67:16, 67:19, 114:25, 115:4, 115:22, 118:20, 128:7, 131:23
**accustomed** [1] - 117:24
**acknowledge** [1] - 131:22
**Act** [6] - 103:23, 103:24, 104:4, 104:11, 105:2, 127:17
**acted** [3] - 27:24, 129:3, 132:23
**Action** [1] - 1:2
**actions** [2] - 129:9, 133:3
**active** [1] - 104:25
**actively** [1] - 28:12
**activism** [3] - 49:5, 82:20
**activist** [1] - 49:2
**activists** [5] - 52:5, 52:6, 52:22, 52:23, 117:6
**activities** [1] - 13:12
**activity** [1] - 115:4
**ad** [1] - 21:22
**add** [7] - 4:7, 45:19, 49:13, 126:21, 131:2, 137:25, 144:7
**added** [3] - 116:5, 129:21, 137:11
**adding** [4] - 16:6,

16:9, 19:12, 60:17
**addition** [1] - 21:9
**additional** [9] - 16:6, 21:23, 22:15, 137:25, 138:13, 139:4, 139:14, 139:15, 146:17
**additionally** [1] - 19:10
**address** [4] - 7:24, 20:17, 125:25, 132:21
**addressing** [1] - 133:7
**adjourned** [1] - 146:22
**admit** [4] - 129:13, 132:13, 132:15, 132:17
**admittedly** [2] - 28:12, 49:14
**admitting** [1] - 129:14
**advice** [2] - 10:14, 11:15
**advocate** [10] - 58:5, 76:3, 86:4, 86:22, 102:22, 104:16, 105:4, 141:14
**advocates** [3] - 12:15, 41:11, 103:19
**advocating** [1] - 104:5
**affect** [22] - 9:8, 10:8, 11:1, 13:23, 14:20, 31:22, 35:21, 37:16, 41:6, 56:24, 57:25, 67:22, 73:17, 80:3, 98:2, 99:20, 99:24, 101:16, 102:12, 111:6, 111:13, 112:12
**affecting** [1] - 99:16
**Affordable** [5] - 103:23, 103:24, 104:4, 104:11, 105:2
**afternoon** [6] - 51:22, 51:23, 84:10, 114:10, 114:11, 116:15
**afterwards** [1] - 82:8
**agencies** [1] - 110:3
**Agency** [1] - 56:17
**agency** [4] - 12:6, 39:25, 56:14, 57:8
**agent** [1] - 110:6
**ago** [16] - 11:25, 12:1, 23:24, 30:19, 30:22, 30:23, 31:3, 31:16, 31:17, 46:14, 73:9, 74:14, 76:20, 78:19, 79:11
**agree** [3] - 23:4, 102:17, 129:24

**agreeing** [1] - 129:14
**ahead** [9] - 26:21, 53:10, 55:25, 67:1, 68:3, 72:13, 92:9, 134:7, 138:3
**airlines** [1] - 72:5
**Alexandria** [1] - 2:11
**ALFRED** [1] - 2:2
**Alfred** [2] - 2:3, 3:15
**aligned** [3] - 46:21, 46:22, 80:20
**alleged** [2] - 50:19, 67:6
**allow** [2] - 53:1, 53:6
**allowed** [2] - 22:12, 138:15
**alone** [5] - 21:15, 119:10, 133:20, 135:4, 135:9
**alternates** [1] - 21:9
**America** [1] - 88:10
**AMERICA** [1] - 1:2
**amount** [2] - 133:14, 136:1
**analysis** [1] - 103:22
**announcement** [1] - 4:7
**annoyed** [1] - 6:25
**answer** [33] - 14:3, 14:4, 25:1, 38:5, 50:8, 50:25, 51:1, 53:4, 80:13, 102:19, 113:2, 116:9, 120:17, 123:21, 130:17, 131:14, 132:1, 133:1, 134:9, 134:10, 135:14, 136:12, 136:19, 136:24, 136:25, 137:1, 138:10, 138:11, 138:18, 138:19, 139:2, 144:18
**answered** [7] - 21:5, 29:25, 114:5, 116:7, 130:5, 130:11, 143:21
**answers** [6] - 51:12, 67:15, 69:5, 71:6, 71:15, 138:7
**anti** [3] - 28:24, 52:22, 117:6
**anti-abortion** [3] - 28:24, 52:22, 117:6
**antitrust's** [1] - 102:6
**anyway** [5] - 22:18, 25:6, 26:9, 43:6, 114:19
**apologize** [1] - 135:7
**Appeals** [2] - 100:10,

100:19
**appearing** [1] - 3:18
**appellate** [1] - 100:3
**applied** [1] - 88:20
**applies** [1] - 41:18
**apply** [3] - 67:10, 88:18, 143:6
**applying** [4] - 59:13, 61:1, 77:14, 113:9
**appointment** [2] - 120:25, 123:23
**appreciate** [5] - 26:11, 26:17, 29:7, 50:8, 134:15
**approach** [3] - 21:13, 26:20, 97:16
**appropriate** [4] - 22:2, 51:7, 52:1, 126:22
**approve** [1] - 115:21
**area** [5] - 7:23, 75:12, 110:17, 119:8, 140:15
**areas** [2] - 37:13, 57:14
**arguably** [1] - 127:16
**argue** [2] - 4:23, 128:20
**article** [2] - 4:4, 6:15
**aside** [14] - 14:10, 20:24, 38:17, 59:12, 77:13, 88:16, 90:4, 117:15, 134:18, 134:21, 135:2, 135:17, 137:3, 143:1
**aspect** [7] - 12:15, 41:12, 58:6, 76:4, 86:23, 102:23, 141:14
**aspects** [1] - 121:13
**assessing** [1] - 120:6
**assist** [1] - 98:24
**assistant** [2] - 32:11, 40:20
**associated** [2] - 40:1, 77:11
**associations** [1] - 19:24
**assume** [14] - 53:16, 68:4, 68:5, 69:11, 96:23, 98:20, 117:7, 122:8, 123:2, 123:5, 124:12, 127:13, 127:14
**assumed** [1] - 98:12
**assumes** [1] - 20:1
**assuming** [4] - 29:10, 64:14, 107:19, 126:7
**assumption** [2] - 20:8, 123:6
**assumptions** [1] -

123:7
**attend** [2] - 113:22, 113:23
**attended** [3] - 60:4, 113:17, 113:23
**attention** [7] - 6:13, 23:17, 48:2, 48:6, 62:1, 93:3, 106:20
**attest** [1] - 27:18
**attorney** [17] - 10:10, 11:8, 32:9, 35:7, 35:10, 35:14, 35:16, 73:25, 74:21, 75:7, 75:8, 100:23, 101:21, 102:12, 111:25, 112:9, 140:14
**Attorney's** [1] - 1:12
**attorneys** [3] - 21:19, 73:16, 75:2
**August** [5] - 1:6, 24:11, 24:14, 61:8, 145:11, 147:7
**authority** [2] - 38:11, 50:22
**automatically** [2] - 28:25, 126:5
**available** [2] - 54:9, 144:22
**Avenue** [6] - 1:16, 1:24, 2:3, 2:6, 2:22, 147:11
**awake** [1] - 85:19
**aware** [7] - 8:17, 8:22, 8:23, 16:1, 18:4, 18:5, 97:23

**B**

**baby** [3] - 54:8, 54:11, 54:19
**bad** [1] - 129:11
**baked** [1] - 129:2
**ballot** [1] - 43:13
**ballots** [1] - 42:21
**barely** [1] - 24:2
**barging** [1] - 120:24
**based** [24] - 14:11, 20:8, 29:3, 38:17, 51:11, 59:12, 68:16, 88:19, 88:20, 89:22, 95:6, 100:20, 115:3, 115:7, 123:13, 136:18, 137:3
**basing** [1] - 60:25
**basis** [4] - 56:20, 58:16, 58:19, 137:18
**Bay** [1] - 2:7
**bear** [1] - 118:18
**became** [1] - 55:11

**become** [1] - 38:10
**becomes** [2] - 6:20, 128:17
**BEFORE** [1] - 1:9
**behalf** [6] - 3:18, 3:23, 17:4, 44:7, 44:8, 104:12
**behavior** [1] - 115:23
**behind** [1] - 83:18
**belabor** [1] - 26:23
**belief** [2] - 51:17, 52:17
**beliefs** [25] - 28:12, 38:1, 38:9, 38:12, 38:14, 47:7, 77:12, 88:12, 88:21, 88:24, 88:25, 89:2, 89:3, 89:5, 89:16, 89:20, 90:4, 90:6, 112:22, 114:5, 117:14, 128:16
**belong** [5] - 76:8, 87:8, 87:10, 105:3
**belonged** [2] - 102:21, 104:15
**belonging** [1] - 104:23
**belongs** [6] - 12:14, 41:10, 58:4, 76:1, 86:3, 141:12
**best** [3] - 88:22, 90:1, 147:6
**better** [3] - 24:3, 83:23, 92:13
**between** [2] - 32:13, 78:14
**beyond** [12] - 13:17, 21:1, 68:15, 68:16, 94:20, 94:23, 94:24, 95:8, 106:17, 120:11, 124:13, 143:7
**biased** [2] - 50:2, 127:3
**bit** [3] - 17:1, 32:1, 65:25
**blanket** [1] - 50:12
**BLERINA** [1] - 1:23
**Blerina** [1] - 3:11
**block** [1] - 115:18
**blocks** [1] - 8:3
**bono** [5] - 35:24, 35:25, 36:10, 36:16, 37:16
**booths** [1] - 42:20
**borders** [1] - 125:17
**Boston** [3] - 90:24, 91:1, 91:8
**bothersome** [1] - 118:21
**Box** [1] - 1:21

**BOYLE** [1] - 1:22
**Boyle** [2] - 1:23, 3:11
**break** [2] - 70:15, 131:5
**breaking** [5] - 66:19, 66:22, 66:23, 122:19, 140:24
**brief** [3] - 51:21, 67:25, 116:13
**briefly** [4] - 80:9, 82:19, 122:1, 137:23
**bring** [10] - 5:15, 5:16, 6:12, 7:10, 20:11, 23:16, 62:1, 71:7, 93:3, 143:25
**bringing** [1] - 19:3
**broad** [3] - 44:19, 59:4, 104:6
**broader** [5] - 44:15, 44:17, 45:11, 60:14, 76:25
**broadly** [3] - 13:22, 28:1, 132:24
**broken** [1] - 140:22
**brother** [3] - 34:18, 35:13, 37:12
**brought** [4] - 4:13, 5:5, 5:17, 96:10
**building** [12] - 8:4, 8:8, 8:13, 8:19, 8:25, 9:7, 107:2, 117:12, 120:10, 120:12, 120:13, 121:10
**bumps** [1] - 5:24
**bunch** [5] - 125:18, 127:8, 127:19, 129:11, 130:18
**burden** [4] - 94:22, 94:24, 95:8, 96:13

**C**

**calendar** [1] - 63:6
**California** [3] - 40:3, 111:25, 112:4
**caller** [1] - 45:24
**Cameron** [1] - 2:10
**canceling** [1] - 68:5
**Candidate** [4] - 43:18, 44:8, 44:9, 45:14
**candidate** [6] - 43:23, 44:3, 44:13, 44:14, 45:14, 46:4
**candidates** [4] - 43:9, 43:15, 45:4, 47:14
**Cannon** [3] - 3:10, 21:21, 134:12
**CANNON** [84] - 1:17, 3:10, 20:16, 20:19, 21:13, 22:17, 23:7,

54:23, 57:11, 58:18, 75:19, 86:17, 97:22, 101:11, 103:8, 114:1, 116:15, 116:20, 116:23, 117:1, 117:5, 117:8, 117:13, 117:21, 118:2, 118:5, 118:10, 118:13, 119:4, 119:15, 119:22, 120:11, 120:19, 120:22, 121:1, 121:5, 121:9, 122:1, 122:5, 122:12, 122:15, 122:18, 122:25, 123:22, 124:1, 124:8, 124:15, 124:19, 125:5, 125:9, 125:14, 125:20, 125:25, 126:19, 127:1, 127:4, 127:11, 128:2, 130:1, 130:3, 130:6, 130:14, 130:21, 130:24, 131:18, 132:8, 132:11, 132:15, 132:17, 132:21, 133:6, 133:11, 133:15, 133:19, 133:25, 134:3, 134:13, 134:23, 135:2, 135:14, 135:16, 135:22, 145:7, 146:10
**Cannon's** [1] - 26:25
**cannot** [7] - 25:1, 62:11, 62:15, 71:17, 89:20, 103:7, 113:10
**capable** [1] - 51:6
**capacity** [1] - 74:12
**car** [1] - 79:22
**card** [3] - 61:23, 84:1, 93:10
**Cardiff** [1] - 2:8
**care** [47] - 12:16, 15:3, 16:13, 36:13, 38:2, 41:12, 42:10, 42:12, 42:25, 43:9, 43:10, 46:22, 50:16, 50:20, 51:9, 54:10, 54:19, 55:12, 58:6, 59:6, 59:15, 59:20, 60:14, 60:19, 76:4, 77:5, 77:20, 86:5, 86:23, 102:23, 103:4, 103:12, 104:6, 104:9, 104:17, 105:5, 105:10,

112:23, 113:16, 129:5, 141:15, 142:23, 143:2, 144:15
**Care** [5] - 103:23, 103:24, 104:4, 104:11, 105:2
**careful** [2] - 92:4, 119:20
**Carson** [1] - 1:19
**case** [102] - 7:1, 8:24, 9:9, 10:8, 11:2, 12:8, 13:23, 13:24, 14:8, 14:21, 22:25, 27:1, 27:20, 27:21, 27:22, 27:23, 28:4, 28:9, 30:2, 30:13, 31:15, 31:23, 32:16, 32:20, 32:23, 35:22, 37:17, 37:19, 38:18, 41:7, 47:2, 47:22, 48:3, 48:4, 48:6, 51:11, 53:1, 53:6, 54:9, 56:25, 58:1, 59:13, 60:25, 62:3, 63:19, 65:6, 66:19, 66:21, 67:8, 67:9, 67:19, 69:24, 73:18, 74:1, 74:23, 79:4, 79:9, 80:4, 84:25, 85:3, 85:6, 97:20, 99:21, 100:4, 100:5, 100:8, 100:18, 100:24, 101:17, 102:13, 107:2, 107:5, 107:8, 107:11, 111:7, 111:14, 112:13, 112:16, 113:1, 113:6, 114:14, 115:22, 120:6, 122:22, 127:21, 128:6, 129:3, 129:6, 130:19, 131:6, 134:16, 134:19, 135:20, 136:23, 137:13, 141:5, 141:6, 143:7, 144:5
**Case** [1] - 3:2
**caseloads** [2] - 40:6, 40:21
**cases** [14] - 31:10, 31:13, 57:18, 57:19, 73:16, 74:22, 99:23, 101:13, 110:23, 110:24, 111:5, 112:6, 112:11, 141:4
**catchall** [2] - 61:24, 89:5
**category** [1] - 115:14
**Catholic** [6] - 86:15,

86:18, 86:19, 87:3, 87:5, 88:7
**causes** [2] - 18:12, 141:25
**caveat** [1] - 49:14
**center** [1] - 99:8
**Center** [2] - 2:6, 36:25
**ceremonial** [1] - 81:22
**certain** [11] - 36:13, 36:14, 45:25, 46:1, 52:2, 88:11, 98:8, 99:1, 103:25, 104:3, 121:13
**certainly** [3] - 13:22, 29:1, 83:2
**CERTIFICATE** [1] - 147:1
**certify** [1] - 147:3
**cetera** [1] - 105:2
**chair** [14] - 7:15, 29:24, 33:11, 39:16, 54:2, 56:5, 72:16, 83:20, 85:22, 92:18, 94:10, 108:1, 109:15, 139:22
**chance** [3] - 27:14, 126:18, 127:9
**change** [3] - 71:16, 80:13, 144:20
**changed** [1] - 77:5
**charge** [7] - 72:6, 79:20, 79:23, 94:21, 94:24, 95:19, 96:13
**charged** [5] - 40:23, 95:1, 95:5, 96:1, 96:3
**charges** [4] - 31:13, 95:3, 96:10, 111:1
**charity** [1] - 77:5
**Chase** [1] - 2:9
**check** [4] - 69:2, 69:4, 69:7, 69:16
**Chevy** [1] - 2:9
**Chief** [1] - 98:23
**child** [5] - 9:18, 51:18, 55:11, 55:12, 55:13
**children** [3] - 51:6, 140:13, 145:9
**choice** [16] - 28:12, 52:22, 52:23, 60:2, 87:1, 87:6, 87:10, 87:17, 88:8, 88:14, 88:16, 89:3, 89:5, 113:25, 114:2, 120:9
**chosen** [1] - 137:10
**church** [4] - 86:16, 86:19, 86:25, 87:9
**CI** [2] - 98:18, 98:25
**City** [1] - 2:7
**Civil** [2] - 1:15, 100:16

**civil** [1] - 79:24
**civilian** [1] - 33:24
**Clara** [1] - 40:3
**clarify** [4] - 18:2, 89:15, 121:1, 139:4
**class** [1] - 99:12
**classes** [3] - 40:24, 68:12
**classification** [1] - 49:4
**classroom** [1] - 145:15
**clean** [1] - 99:17
**clear** [13] - 20:20, 27:6, 37:20, 49:10, 64:1, 66:17, 112:16, 118:14, 118:19, 121:9, 123:22, 137:11, 137:13
**clearly** [3] - 22:22, 34:23, 115:15
**clerk** [4] - 10:17, 10:18, 73:12, 73:13
**client** [17] - 119:4, 119:6, 120:3, 121:10, 122:17, 122:18, 123:3, 123:13, 124:1, 124:7, 124:19, 128:18, 129:14, 133:20, 134:17, 134:25, 135:18
**client's** [2] - 134:20, 135:20
**clients** [4] - 29:11, 118:15, 118:25, 140:22
**climate** [1] - 99:17
**clinic** [51] - 7:21, 8:15, 8:21, 8:24, 9:4, 9:7, 28:3, 114:18, 114:20, 116:18, 117:2, 118:16, 119:7, 119:8, 119:25, 120:3, 120:6, 120:24, 121:11, 121:14, 122:9, 122:15, 122:17, 122:18, 123:4, 123:14, 123:23, 123:24, 124:1, 124:2, 124:20, 125:19, 126:3, 126:12, 126:24, 129:6, 130:1, 130:5, 130:10, 132:3, 132:12, 132:25, 133:4, 133:20, 134:17, 134:22,

135:1, 135:9, 135:18
**clinics** [7] - 37:22,
112:19, 114:17,
114:22, 115:12,
115:18, 136:20
**close** [37] - 9:11, 11:4,
12:13, 15:2, 25:10,
34:14, 39:21, 41:10,
56:11, 57:3, 58:4,
59:18, 72:23, 73:24,
75:7, 76:1, 77:18,
86:3, 98:5, 98:18,
100:23, 101:20,
102:3, 102:20,
103:2, 103:4, 105:9,
109:22, 111:21,
116:20, 124:10,
140:3, 140:12,
141:12, 141:22,
144:8, 146:5
**closely** [1] - 52:16
**closer** [1] - 39:16
**closest** [4] - 101:9,
103:20, 104:1,
105:13
**clouding** [1] - 142:3
**co** [1] - 51:20
**co-counsel** [1] - 51:20
**cold** [1] - 85:18
**colleagues** [1] -
116:22
**collect** [1] - 107:7
**COLLEEN** [1] - 1:9
**college** [7] - 56:15,
74:20, 87:17, 87:18,
90:22, 91:4, 113:18
**color** [1] - 143:10
**Columbia** [1] - 16:25
**COLUMBIA** [1] - 1:1
**combination** [2] -
59:4, 76:9
**combining** [1] - 60:22
**comfortable** [12] -
7:12, 7:16, 23:13,
29:23, 49:20, 85:16,
94:5, 97:4, 107:23,
108:2, 109:13,
127:12
**coming** [6] - 24:14,
24:15, 26:5, 63:7,
90:23, 146:20
**comment** [3] - 29:9,
65:23, 128:2
**Commerce** [1] - 47:19
**commit** [1] - 126:4
**commitment** [12] -
23:10, 23:15, 23:16,
47:11, 54:6, 61:6,
89:11, 89:14, 90:19,
106:1, 108:9, 108:12

**committed** [1] - 51:25
**communications** [2] -
34:22, 35:1
**community** [1] - 40:16
**companies** [1] - 57:20
**company** [2] - 41:25,
57:21
**complete** [2] - 42:21,
147:5
**completely** [1] - 17:2
**complicated** [3] -
6:20, 50:24, 90:12
**concern** [1] - 55:10
**concerned** [6] - 50:11,
82:7, 121:5, 124:15,
138:17, 144:19
**concerning** [1] - 60:20
**concerns** [2] - 26:25,
82:9
**conclude** [1] - 122:9
**concluding** [1] - 18:20
**conclusion** [1] - 52:5
**conclusions** [2] -
52:18, 127:25
**concur** [1] - 29:8
**condoning** [1] - 21:11
**conduct** [10] - 52:4,
52:11, 52:12, 52:18,
122:8, 124:11,
125:3, 125:17,
125:18, 136:24
**confer** [5] - 18:16,
18:19, 20:15, 51:19,
83:11
**confident** [2] - 52:15,
138:23
**conforms** [1] - 52:12
**confused** [2] - 66:24,
122:23
**confusing** [1] - 129:21
**Congress** [1] - 106:13
**connected** [1] - 87:14
**Connecticut** [2] -
1:24, 2:3
**conservative** [1] -
97:16
**consider** [12] - 49:1,
51:13, 68:5, 70:12,
88:17, 98:18, 113:6,
117:9, 126:24,
127:3, 135:10, 144:2
**consideration** [22] -
9:8, 10:8, 11:1,
13:24, 14:20, 31:22,
35:22, 37:17, 41:6,
56:24, 57:25, 60:24,
73:17, 80:4, 98:2,
99:20, 99:24,
101:16, 102:12,
111:6, 111:14,

112:12
**considered** [1] -
119:21
**consist** [1] - 61:9
**consisted** [1] - 31:14
**constitutes** [1] - 147:4
**Constitution** [2] -
2:22, 147:11
**consult** [1] - 68:23
**Cont** [1] - 2:1
**contact** [3] - 32:15,
63:23, 100:1
**contacts** [2] - 98:11,
99:18
**context** [3] - 19:11,
19:12, 22:7
**continue** [1] - 6:19
**continuing** [2] - 68:22,
138:6
**contract** [1] - 63:25
**contrary** [2] - 29:2,
126:10
**contribute** [3] - 18:8,
18:12, 142:20
**contributed** [3] - 86:3,
102:21, 141:13
**contributes** [5] -
12:14, 13:7, 41:11,
58:5, 76:2
**control** [1] - 71:5
**conversation** [2] -
44:11, 97:17
**conversations** [2] -
75:1, 111:13
**convince** [1] - 45:25
**convoluted** [1] -
137:17
**copyright** [3] - 57:10,
57:13, 57:14
**corporate** [1] - 35:9
**correct** [48] - 9:9,
9:10, 11:17, 13:19,
13:20, 15:21, 16:2,
16:21, 17:16, 17:17,
17:23, 17:24, 18:9,
18:10, 23:17, 37:5,
41:3, 45:2, 47:24,
49:12, 55:13, 59:1,
59:2, 69:11, 69:12,
73:21, 78:21, 78:22,
84:1, 84:2, 84:7,
84:8, 87:15, 91:5,
91:9, 91:12, 91:13,
91:14, 103:19,
105:6, 105:7,
105:20, 105:24,
111:1, 112:5,
131:19, 142:23,
145:14
**correctly** [4] - 16:19,

68:4, 72:21, 122:3
**couch** [1] - 66:25
**cough** [1] - 71:5
**coughing** [1] - 25:24
**Counsel** [1] - 98:23
**counsel** [8] - 3:5,
17:6, 18:16, 18:19,
22:3, 29:11, 51:20,
124:22
**count** [3] - 48:5,
106:19, 106:21
**countries** [1] - 140:23
**country** [3] - 52:7,
88:10, 88:12
**County** [2] - 40:4,
74:16
**couple** [6] - 17:11,
29:14, 45:22, 48:13,
53:7, 127:22
**course** [4] - 68:9,
102:18, 125:6,
132:15
**COURT** [609] - 1:1,
3:9, 3:12, 3:17, 3:20,
3:24, 4:2, 5:12, 5:15,
6:17, 6:22, 7:6, 7:9,
7:15, 8:2, 8:4, 8:7,
8:10, 8:12, 8:15,
8:18, 8:23, 9:2, 9:4,
9:6, 9:11, 9:15, 9:19,
9:22, 9:25, 10:2,
10:5, 10:10, 10:12,
10:16, 10:18, 10:21,
10:25, 11:4, 11:8,
11:10, 11:14, 11:18,
11:22, 11:25, 12:2,
12:6, 12:10, 12:13,
12:20, 12:24, 13:3,
13:6, 13:10, 13:14,
13:16, 13:21, 14:3,
14:6, 14:15, 14:18,
14:23, 15:1, 15:6,
15:8, 15:11, 15:14,
15:20, 15:22, 15:25,
16:3, 16:6, 16:16,
17:6, 18:18, 18:21,
18:24, 19:3, 19:8,
19:18, 19:21, 20:1,
20:7, 20:13, 20:18,
20:25, 21:21, 22:20,
23:8, 23:12, 23:19,
23:22, 24:1, 24:4,
24:8, 24:11, 24:14,
24:16, 24:19, 24:22,
24:25, 25:5, 25:11,
25:15, 25:18, 25:21,
26:1, 26:3, 26:7,
26:13, 26:17, 26:21,
27:3, 27:6, 27:8,
27:13, 28:17, 28:19,

28:23, 29:6, 29:9,
29:13, 29:18, 29:23,
30:4, 30:6, 30:8,
30:12, 30:17, 30:19,
30:24, 31:3, 31:6,
31:9, 31:12, 31:18,
31:21, 31:25, 32:9,
32:12, 33:2, 33:4,
33:8, 33:11, 33:15,
34:4, 34:9, 34:12,
34:14, 34:23, 35:2,
35:5, 35:7, 35:11,
35:13, 35:17, 35:20,
35:25, 36:6, 36:9,
36:16, 36:20, 36:24,
37:2, 37:7, 37:12,
37:15, 37:19, 38:13,
38:21, 38:24, 39:1,
39:5, 39:8, 39:10,
39:15, 39:25, 40:7,
40:11, 40:14, 41:1,
41:5, 41:9, 42:2,
42:5, 42:9, 42:14,
42:24, 43:12, 43:17,
43:21, 44:1, 44:5,
44:12, 44:19, 44:23,
45:1, 45:13, 45:19,
46:6, 46:9, 46:13,
46:15, 46:20, 47:9,
47:17, 47:21, 48:10,
48:12, 48:20, 48:23,
52:25, 53:10, 53:12,
53:16, 53:18, 53:21,
54:2, 54:11, 54:13,
54:15, 54:18, 54:24,
55:4, 55:8, 55:10,
55:15, 55:18, 55:22,
55:24, 56:5, 56:9,
56:14, 56:17, 56:19,
56:23, 57:2, 57:7,
57:14, 57:17, 57:21,
57:23, 58:3, 58:10,
58:14, 58:19, 58:22,
59:3, 59:7, 59:10,
59:18, 59:23, 60:3,
60:6, 60:9, 60:11,
60:13, 60:17, 61:5,
61:9, 61:14, 61:17,
61:20, 61:23, 62:8,
62:13, 62:20, 62:24,
63:1, 63:8, 63:12,
64:14, 64:19, 64:21,
66:11, 67:1, 67:8,
68:3, 68:7, 68:15,
68:21, 69:5, 69:8,
69:13, 69:18, 69:20,
70:3, 70:6, 70:8,
70:11, 70:20, 71:6,
71:9, 71:12, 71:15,
71:17, 71:19, 71:23,
72:3, 72:5, 72:9,

72:13, 72:18, 73:3, 73:6, 73:10, 73:12, 73:15, 73:20, 73:23, 74:4, 74:6, 74:9, 74:12, 74:15, 74:17, 74:21, 74:25, 75:6, 75:11, 75:14, 75:18, 75:20, 75:23, 75:25, 76:8, 76:11, 76:13, 76:16, 76:20, 76:22, 77:7, 77:18, 77:23, 78:2, 78:6, 78:8, 78:12, 78:15, 78:18, 78:23, 79:1, 79:3, 79:8, 79:11, 79:14, 79:17, 79:20, 79:24, 80:2, 80:6, 80:8, 81:8, 81:12, 81:16, 81:20, 81:24, 82:3, 82:12, 82:16, 82:18, 82:24, 83:8, 83:16, 83:20, 84:3, 84:6, 84:9, 84:12, 85:10, 85:15, 85:22, 85:25, 86:8, 86:12, 86:19, 87:5, 87:14, 87:18, 87:21, 87:25, 88:6, 88:15, 88:23, 89:7, 89:9, 89:15, 90:2, 90:12, 90:18, 91:2, 91:7, 91:11, 91:15, 91:18, 91:25, 92:3, 92:13, 92:15, 92:17, 93:1, 93:3, 93:7, 93:9, 93:13, 93:17, 93:24, 94:1, 94:4, 94:9, 94:13, 94:16, 95:13, 95:15, 95:21, 95:25, 96:8, 96:12, 96:16, 96:19, 96:23, 96:25, 97:3, 97:6, 97:9, 97:19, 97:23, 98:1, 98:4, 98:14, 98:20, 99:2, 99:6, 99:13, 99:18, 100:1, 100:5, 100:8, 100:14, 100:22, 101:7, 101:12, 101:15, 101:19, 101:24, 102:1, 102:3, 102:11, 102:16, 102:19, 103:2, 103:6, 103:17, 104:3, 104:13, 104:20, 104:22, 105:8, 105:16, 105:21, 105:25, 106:5, 106:7, 106:10, 106:15, 106:24, 107:15, 107:17,

107:19, 107:22, 108:1, 108:8, 108:11, 108:17, 108:21, 108:24, 109:2, 109:4, 109:8, 109:12, 109:15, 109:20, 110:1, 110:3, 110:9, 110:12, 110:17, 110:21, 110:24, 111:4, 111:9, 111:12, 111:17, 111:21, 112:2, 112:6, 112:10, 112:15, 113:12, 113:15, 113:21, 114:3, 114:9, 115:25, 116:4, 116:8, 116:12, 116:14, 119:2, 119:16, 120:14, 121:2, 121:16, 122:3, 122:6, 122:14, 122:17, 122:24, 123:1, 123:12, 123:17, 123:21, 124:6, 124:10, 124:18, 124:22, 125:1, 125:6, 125:11, 125:15, 125:21, 126:7, 126:20, 127:7, 127:18, 128:25, 130:2, 130:4, 130:8, 130:15, 130:22, 131:1, 131:25, 132:10, 132:13, 132:16, 132:19, 132:23, 133:9, 133:13, 133:17, 133:23, 134:1, 134:5, 134:7, 134:12, 134:21, 134:24, 135:5, 135:11, 135:15, 135:25, 136:4, 136:6, 136:11, 136:17, 137:6, 137:19, 137:21, 137:24, 138:2, 138:9, 138:25, 139:2, 139:6, 139:11, 139:14, 139:19, 139:22, 139:25, 140:7, 140:10, 140:14, 140:19, 140:25, 141:3, 141:7, 141:11, 141:20, 141:22, 142:6,

142:11, 142:16, 142:21, 142:25, 143:17, 144:4, 144:7, 144:11, 144:14, 144:21, 145:4, 145:10, 145:16, 145:19, 145:25, 146:2, 146:11, 147:1
**court** [26] - 3:16, 9:22, 9:23, 9:24, 10:6, 10:22, 14:1, 25:5, 25:9, 27:9, 30:14, 30:15, 30:16, 30:17, 36:17, 57:17, 64:1, 70:16, 72:24, 73:7, 73:8, 75:1, 79:5
**Court** [26] - 2:8, 2:20, 2:21, 6:19, 9:12, 9:13, 15:19, 15:20, 20:14, 21:19, 53:9, 65:7, 65:14, 65:21, 66:8, 68:5, 79:7, 79:10, 100:10, 100:19, 128:24, 135:8, 135:23, 137:11, 139:7, 147:10
**Court's** [6] - 81:5, 124:8, 131:18, 137:2, 138:6, 138:7
**court's** [5] - 33:1, 51:20, 64:20, 67:25, 116:13
**courthouse** [7] - 10:7, 25:23, 32:14, 32:15, 84:23, 84:24, 107:1
**Courthouse** [1] - 2:22
**courtroom** [44] - 7:8, 19:2, 23:11, 26:19, 29:17, 33:6, 33:7, 39:3, 39:9, 53:15, 53:20, 55:21, 55:23, 61:1, 62:6, 62:9, 70:10, 70:21, 71:8, 71:25, 72:8, 77:14, 81:22, 82:13, 83:15, 85:13, 85:14, 88:18, 91:21, 92:2, 93:16, 94:3, 96:21, 97:2, 107:18, 107:21, 109:6, 109:11, 124:25, 134:6, 136:8, 139:18, 143:5, 145:22
**COURTROOM** [5] - 3:2, 5:9, 5:14, 7:5, 7:7
**courts** [3] - 9:12, 30:15, 72:23

**cousin's** [2] - 140:11, 140:14
**cousins** [2] - 15:10, 15:15
**cover** [2] - 42:7, 103:25
**coverage** [3] - 104:4, 104:6, 104:11
**covered** [1] - 142:7
**covers** [1] - 49:8
**COVID** [2] - 60:8, 60:9
**Crabb** [8] - 3:7, 38:24, 39:6, 117:13, 117:16, 119:17, 126:20, 137:6
**CRABB** [37] - 1:12, 3:7, 6:19, 16:17, 16:19, 16:22, 17:1, 17:5, 19:7, 26:15, 34:10, 38:25, 39:7, 55:16, 80:7, 82:17, 91:16, 91:22, 96:17, 96:24, 109:1, 114:10, 114:12, 114:23, 115:6, 115:9, 115:15, 115:17, 116:11, 119:13, 126:21, 127:2, 127:5, 135:3, 135:7, 136:10, 137:7
**CRAMPTON** [2] - 1:20, 53:17
**Crampton** [1] - 3:10
**CRC** [2] - 2:21, 147:9
**create** [2] - 126:12, 127:10
**created** [1] - 64:9
**credit** [1] - 133:24
**crediting** [1] - 134:2
**credits** [3] - 99:16, 104:10
**crime** [4] - 121:17, 121:24, 125:2, 126:4
**Criminal** [2] - 1:2, 1:15
**criminal** [42] - 3:2, 11:23, 30:1, 30:13, 35:5, 35:11, 35:16, 35:17, 57:15, 73:24, 74:1, 74:9, 75:12, 79:4, 79:24, 98:12, 99:1, 99:23, 100:23, 100:24, 101:1, 101:4, 101:8, 101:9, 101:13, 102:4, 102:6, 102:9, 111:24, 112:4, 112:7, 115:13, 121:19, 122:7, 122:10, 125:3, 125:18, 140:15,

140:17, 141:9
**Crooked** [2] - 49:22, 49:25
**crooked** [2] - 49:23, 49:24
**CRR** [2] - 2:21, 147:9
**CRT** [1] - 1:15
**culture** [2] - 117:23, 118:2
**cut** [1] - 22:16
**cutting** [1] - 22:17

## D

**D.C** [17] - 1:5, 9:12, 11:21, 12:3, 12:5, 15:24, 15:25, 26:5, 60:11, 74:15, 78:6, 78:23, 79:6, 102:8, 113:24, 114:18, 147:11
**damages** [1] - 79:25
**date** [2] - 63:5, 68:16
**Dated** [1] - 147:7
**dates** [3] - 68:15, 68:16, 106:16
**daughter** [8] - 86:7, 86:9, 86:13, 86:14, 87:7, 87:16, 90:22, 91:4
**daycare** [8] - 54:20, 54:21, 54:25, 55:1, 55:4, 55:6, 55:12
**days** [9] - 24:13, 24:18, 25:18, 26:10, 47:22, 81:18, 82:2, 106:4, 143:16
**DC** [5] - 1:13, 1:16, 1:25, 2:4, 2:23
**DEA** [1] - 56:16
**deadline** [1] - 47:13
**deadlines** [1] - 47:15
**deal** [3] - 21:25, 36:9, 87:7
**dealing** [1] - 100:6
**dealt** [1] - 100:18
**decide** [9] - 95:6, 96:1, 96:9, 115:1, 115:2, 115:20, 131:6, 132:4, 132:5
**decided** [2] - 27:3, 77:3
**deciding** [1] - 133:3
**decision** [24] - 14:11, 15:19, 15:20, 16:14, 17:14, 22:24, 29:3, 38:16, 38:17, 47:3, 59:12, 60:25, 67:11, 77:13, 88:19, 89:22, 113:10, 115:6,

115:24, 132:3, 143:6, 143:14, 144:4
**decisions** [5] - 23:1, 90:3, 90:5, 130:22, 131:7
**deeply** [3] - 38:3, 103:12, 112:24
**defendant** [4] - 27:24, 62:7, 66:4, 94:21
**DEFENDANT** [3] - 25:25, 26:2, 71:4
**Defendant** [5] - 1:17, 2:2, 2:5, 2:8, 2:10
**defendant's** [1] - 66:7
**Defendants** [1] - 1:7
**defendants** [12] - 26:23, 28:13, 28:16, 40:15, 40:22, 52:4, 62:5, 62:10, 94:19, 97:12, 97:24, 115:13
**defense** [14] - 17:6, 29:11, 48:12, 73:25, 74:10, 80:8, 100:23, 101:1, 101:4, 111:25, 112:4, 112:9, 129:16
**defenses** [1] - 4:12
**define** [1] - 100:8
**definitely** [1] - 96:6
**degree** [1] - 131:1
**degrees** [1] - 46:5
**dehydrated** [1] - 25:25
**deliberating** [1] - 82:5
**deliberations** [1] - 48:7
**Democrat** [2] - 42:19, 45:8
**Democratic** [2] - 45:3, 50:3
**Democrats** [5] - 44:21, 45:10, 45:12, 45:16
**denial** [6] - 50:19, 50:22, 51:8, 51:10, 51:15
**denied** [1] - 67:7
**denies** [2] - 120:4, 121:12
**DENNIS** [1] - 1:22
**Dennis** [1] - 3:10
**deny** [1] - 50:23
**denying** [1] - 67:16
**Department** [2] - 47:19, 100:15
**department** [1] - 110:16
**depended** [1] - 133:10
**deportation** [1] - 110:20
**deportation-type** [1] - 110:20

**DEPUTY** [5] - 3:2, 5:9, 5:14, 7:5, 7:7
**describe** [5] - 103:5, 103:15, 119:20, 121:19, 121:21
**described** [3] - 98:8, 124:6, 124:10
**describing** [1] - 126:14
**descriptions** [1] - 52:10
**despite** [1] - 48:5
**destructive** [2] - 117:19, 118:7
**details** [1] - 119:12
**determine** [5] - 52:12, 115:21, 134:3, 134:16, 136:23
**determining** [4] - 126:25, 134:20, 135:18, 143:11
**developed** [1] - 49:25
**developing** [1] - 40:15
**diametrically** [1] - 52:16
**died** [1] - 142:3
**difference** [1] - 4:22
**different** [26] - 12:25, 13:1, 15:13, 15:14, 23:4, 40:19, 73:10, 73:11, 75:5, 80:23, 82:8, 83:1, 89:2, 97:12, 99:21, 100:15, 105:17, 118:5, 121:17, 127:8, 127:24, 128:12, 138:11, 138:16, 142:1
**differently** [6] - 5:24, 7:2, 120:18, 124:11, 127:9, 127:25
**difficult** [3] - 47:11, 54:7, 113:4
**difficulties** [1] - 121:3
**difficulty** [6] - 120:6, 121:14, 124:16, 133:7, 133:9, 133:21
**Diplomatic** [1] - 110:6
**diplomatic** [2] - 111:10
**dire** [1] - 139:10
**direct** [1] - 36:20
**directly** [3] - 39:18, 54:3, 98:25
**disagree** [1] - 12:11
**discuss** [2] - 42:24, 97:19
**discussed** [4] - 43:8, 92:23, 131:12, 135:8
**discussing** [1] - 131:4

**discussion** [4] - 43:3, 44:6, 127:13, 130:15
**discussions** [12] - 10:6, 10:22, 10:25, 14:23, 20:1, 57:23, 73:16, 99:22, 111:4, 112:10, 141:3, 141:8
**dispute** [2] - 118:17, 119:12
**disregarding** [3] - 62:19, 66:4, 66:8
**disruptive** [1] - 114:22
**distinction** [1] - 45:22
**distinctions** [1] - 45:22
**distracted** [1] - 106:20
**District** [2] - 9:13, 16:24
**DISTRICT** [3] - 1:1, 1:1, 1:9
**disturbing** [4] - 128:12, 128:23, 128:25, 129:8
**diversion** [4] - 40:6, 40:21, 40:24, 41:2
**dividing** [1] - 49:5
**division** [5] - 98:13, 100:2, 100:3, 100:15, 110:18
**Division** [1] - 1:15
**Dobbs** [2] - 15:20, 17:14
**doctor** [7] - 6:8, 62:10, 120:20, 120:23, 121:7, 130:13, 131:13
**doctor's** [2] - 120:12, 121:6
**DOJ** [5] - 1:15, 99:1, 100:2, 100:18, 102:5
**DOJ-CRT** [1] - 1:15
**domestic** [3] - 40:6, 40:21, 40:23
**donate** [16] - 13:12, 13:13, 14:19, 18:1, 18:4, 21:14, 29:4, 58:10, 58:12, 58:16, 76:9, 77:3, 80:16, 87:10, 105:4, 128:14
**donated** [11] - 13:14, 20:22, 28:23, 78:24, 80:15, 86:9, 103:13, 104:15, 141:25, 142:7, 142:12
**donates** [1] - 28:20
**donating** [12] - 13:19, 17:22, 58:15, 58:24, 59:11, 76:23, 77:1, 77:8, 78:8, 83:4, 142:21, 143:1

**donation** [6] - 14:15, 16:9, 76:16, 142:1, 142:2, 142:16
**donations** [6] - 19:11, 21:6, 78:19, 80:14, 141:19, 141:23
**done** [24] - 11:22, 22:14, 35:5, 35:17, 35:23, 36:1, 37:3, 37:8, 37:12, 41:17, 46:11, 46:12, 48:1, 57:15, 61:10, 102:4, 102:13, 115:4, 136:4, 138:14, 138:15, 140:19, 141:23, 142:18
**door** [1] - 39:5
**doubt** [6] - 28:25, 94:20, 94:23, 94:24, 95:9, 143:8
**down** [63] - 7:17, 18:25, 20:9, 29:20, 33:4, 38:6, 39:1, 39:11, 39:17, 41:16, 47:10, 53:22, 54:3, 55:18, 55:25, 56:7, 70:8, 71:23, 72:10, 72:14, 81:8, 82:12, 83:22, 85:10, 85:16, 88:23, 89:8, 89:9, 89:16, 91:18, 92:9, 92:19, 93:14, 94:5, 94:9, 94:11, 95:11, 96:19, 97:4, 97:14, 107:15, 108:3, 109:4, 109:17, 113:19, 118:1, 124:23, 125:24, 128:3, 131:5, 134:7, 134:13, 135:5, 136:6, 136:25, 137:7, 138:21, 139:17, 144:8, 145:19
**downtown** [1] - 113:23
**drastically** [1] - 52:7
**draw** [2] - 52:5, 52:18
**drive** [1] - 25:5
**driving** [4] - 24:24, 25:4, 25:13, 123:20
**drug** [2] - 31:16, 31:18
**Drug** [1] - 56:17
**due** [1] - 91:22
**DUI** [1] - 112:9
**DUNN** [11] - 2:5, 3:18, 6:15, 30:10, 34:11, 68:1, 68:4, 68:11, 68:19, 93:22, 93:25
**Dunn** [2] - 2:6, 3:18

**during** [3] - 32:13, 63:9, 63:13
**duty** [3] - 47:15, 64:2, 118:11

**E**

**earphones** [1] - 93:5
**easiest** [1] - 103:4
**effort** [2] - 131:17, 131:19
**efforts** [1] - 36:23
**either** [25] - 10:13, 31:7, 33:21, 35:16, 35:20, 37:13, 40:19, 40:22, 41:11, 45:8, 58:6, 76:3, 82:6, 86:4, 87:9, 96:6, 101:15, 104:14, 104:16, 105:5, 129:17, 138:19, 139:9, 141:13, 144:8
**elected** [2] - 142:14, 144:13
**element** [2] - 16:6, 94:21
**elements** [4] - 52:13, 94:24, 98:9, 134:22
**elevator** [1] - 97:17
**eliminate** [1] - 62:22
**emergency** [2] - 5:23, 6:8
**employed** [6] - 9:12, 39:22, 72:23, 73:24, 74:9, 100:23
**employers** [1] - 104:12
**encountered** [1] - 107:1
**end** [7] - 22:14, 48:4, 52:6, 69:24, 69:25, 118:16, 139:10
**energy** [2] - 99:17
**enforcement** [11] - 33:18, 33:23, 39:22, 39:25, 56:12, 56:14, 98:5, 98:24, 99:1, 109:23, 110:3
**Enforcement** [1] - 56:17
**engage** [3] - 122:19, 122:20, 124:21
**engaged** [1] - 115:22
**engages** [1] - 99:9
**engaging** [1] - 107:5
**ensure** [1] - 42:22
**entered** [18] - 7:8, 23:11, 29:17, 33:7, 39:9, 53:20, 55:23, 71:8, 72:8, 83:15,

85:14, 92:2, 94:3, 97:2, 107:21, 109:11, 134:6, 139:18
**entering** [2] - 120:9, 135:9
**entirely** [1] - 135:17
**entities** [1] - 98:8
**entitled** [1] - 131:21
**entry** [2] - 4:11, 4:16
**equivocated** [3] - 21:1, 22:5, 22:22
**equivocates** [1] - 28:14
**equivocating** [2] - 5:7, 21:24
**equivocation** [5] - 21:16, 22:19, 22:23, 23:6, 139:9
**escorts** [4] - 114:16, 116:18, 117:16, 118:21
**especially** [2] - 28:13
**established** [1] - 20:20
**estimated** [1] - 69:25
**et** [1] - 105:2
**evaluate** [2] - 52:4, 52:18
**evaluating** [1] - 52:3
**evangelization** [1] - 118:3
**evangelize** [2] - 117:24, 118:3
**evidence** [65] - 9:8, 10:8, 11:1, 13:24, 14:2, 14:8, 14:10, 14:21, 16:13, 23:1, 31:22, 35:22, 37:17, 38:18, 41:6, 47:2, 48:3, 52:3, 56:24, 57:25, 59:13, 60:25, 67:9, 67:10, 67:19, 73:18, 77:14, 80:4, 88:18, 88:20, 89:2, 89:19, 89:22, 89:25, 90:1, 98:2, 99:20, 99:24, 101:17, 102:13, 111:7, 111:14, 112:13, 113:5, 113:9, 115:3, 115:7, 115:20, 118:13, 121:9, 124:19, 128:10, 129:23, 130:25, 133:20, 134:2, 134:3, 134:16, 137:13, 143:4, 143:5, 143:10, 143:14

**evidently** [3] - 6:13, 20:10, 144:7
**exactly** [8] - 36:8, 36:12, 42:14, 43:20, 103:15, 106:13, 117:8, 125:1
**examine** [2] - 143:4, 143:5
**excludes** [1] - 21:17
**excuse** [13] - 28:21, 51:21, 53:12, 68:16, 70:14, 72:21, 83:6, 83:9, 91:25, 93:21, 94:2, 122:1, 137:19
**excused** [6] - 23:5, 28:25, 39:8, 92:1, 97:1, 109:10
**excusing** [1] - 146:5
**exited** [18] - 19:2, 26:19, 33:6, 39:3, 53:15, 55:21, 70:10, 71:25, 82:13, 85:13, 91:21, 93:16, 96:21, 107:18, 109:6, 124:25, 136:8, 145:22
**expect** [3] - 28:11, 99:12, 135:17
**expected** [1] - 143:4
**experience** [8] - 31:21, 43:24, 43:25, 44:1, 44:2, 56:23, 74:25, 80:3
**experiences** [4] - 90:14, 101:16, 116:24, 137:3
**explain** [1] - 46:4
**explained** [2] - 52:13, 65:25
**explanation** [3] - 62:24, 137:12, 139:15
**explicit** [1] - 44:3
**explicitly** [2] - 42:12, 43:8
**exposed** [2] - 32:22, 85:5
**express** [2] - 121:11, 124:21
**expressed** [1] - 38:14
**expresses** [1] - 42:12
**expressing** [1] - 41:24
**extent** [1] - 97:18
**extra** [1] - 4:14
**extraordinary** [2] - 133:14, 136:1

**F**

**FACE** [2] - 127:17,

128:22
**facilitates** [1] - 49:18
**fact** [25] - 9:7, 23:2, 27:15, 52:12, 65:5, 65:8, 82:21, 95:1, 95:5, 95:6, 95:7, 96:9, 100:17, 106:21, 120:5, 121:13, 122:20, 123:14, 126:23, 127:17, 133:6, 135:3, 135:8, 135:9, 136:20
**factor** [1] - 126:23
**facts** [4] - 51:14, 53:5, 114:14, 130:16
**faculty** [2] - 99:10, 99:11
**fair** [13] - 21:15, 38:4, 38:15, 66:2, 89:1, 89:18, 89:21, 104:13, 112:25, 128:24, 133:22, 136:16, 138:13
**Fairfax** [1] - 74:16
**fairly** [2] - 28:13, 138:16
**fairness** [1] - 28:10
**fall** [3] - 52:11, 68:13, 99:12
**familiar** [2] - 8:4, 8:7
**family** [21] - 9:16, 12:23, 15:6, 15:8, 17:13, 17:15, 17:18, 17:25, 18:3, 68:24, 69:10, 69:13, 101:3, 102:1, 102:2, 103:2, 110:1, 140:7, 140:8, 140:10, 141:22
**far** [6] - 5:1, 8:2, 44:10, 106:11, 119:11, 138:17
**fashion** [1] - 20:17
**faster** [1] - 83:12
**father** [1] - 113:19
**fault** [1] - 72:21
**favor** [6] - 43:19, 50:11, 68:21, 86:21, 86:22
**federal** [16] - 9:22, 9:24, 17:4, 30:14, 33:17, 47:18, 48:24, 72:24, 73:7, 73:8, 110:6, 110:7, 110:9, 110:12, 110:16
**feelings** [11] - 16:12, 50:18, 67:6, 67:8, 67:11, 117:15, 119:25, 120:3, 123:3, 124:3, 137:3

**felony** [1] - 4:15
**felt** [3] - 7:2, 38:7, 60:19
**fence** [1] - 46:2
**fertility** [2] - 36:6, 37:3
**few** [8] - 17:8, 29:1, 46:5, 48:16, 63:17, 65:25, 93:14, 143:16
**figure** [4] - 14:4, 114:24, 115:1, 146:12
**figuring** [1] - 64:5
**fill** [1] - 131:14
**financial** [2] - 84:20, 141:19
**finder** [1] - 52:11
**fine** [3] - 7:9, 28:17, 28:19
**finish** [2] - 19:3, 68:8
**finished** [1] - 48:4
**firm** [1] - 11:10, 32:13, 35:2, 35:4, 35:8, 57:8, 75:14, 101:3, 101:5, 101:12, 140:22
**firmly** [4] - 21:14, 22:7, 22:13, 27:18
**first** [17] - 5:10, 17:12, 31:15, 39:5, 64:24, 68:12, 88:4, 90:8, 101:2, 126:1, 136:24, 136:25, 138:4, 138:18, 138:19, 144:25, 145:8
**fit** [1] - 53:5
**fits** [2] - 120:17, 125:1
**five** [2] - 70:17, 98:10, 136:2
**fix** [1] - 94:10
**floor** [1] - 8:15
**floors** [1] - 8:20
**focus** [4] - 48:2, 59:7, 64:24, 65:23
**focused** [3] - 40:5, 59:8, 60:13
**folks** [1] - 98:17
**follow** [11] - 12:10, 17:12, 22:4, 26:13, 71:19, 80:12, 94:17, 95:10, 95:11, 95:16, 102:16
**follow-up** [4] - 17:12, 22:4, 26:13, 71:19
**followed** [1] - 62:14
**following** [4] - 47:6, 48:17, 49:6, 66:18
**FOR** [1] - 1:17
**force** [1] - 129:19
**foregoing** [1] - 147:4

**foreperson** [2] - 31:7, 79:14
**forever** [1] - 83:13
**forgive** [1] - 26:22
**forgot** [1] - 142:3
**form** [1] - 46:25
**formally** [1] - 105:3
**former** [5] - 50:1, 81:18, 81:20, 81:21, 116:21
**forming** [1] - 145:2
**forth** [1] - 21:24
**forward** [3] - 66:12, 83:16, 90:5
**fourth** [1] - 22:1
**frankly** [3] - 22:13, 25:1, 125:17
**fraud** [1] - 110:20
**free** [1] - 128:9
**freedom** [1] - 78:5
**frequently** [3] - 8:10, 8:13, 116:23
**Friday** [12] - 23:15, 24:14, 24:16, 24:19, 25:6, 26:9, 47:23, 63:3, 90:23, 91:3, 106:17
**friend** [12] - 12:23, 13:7, 14:15, 14:16, 15:6, 15:11, 18:6, 73:3, 103:2, 110:1, 140:7, 141:22
**friends** [21] - 15:13, 15:14, 15:16, 17:15, 17:18, 17:25, 18:3, 18:11, 19:23, 98:19, 101:24, 102:3, 103:3, 103:11, 104:24, 110:2, 114:16, 116:17, 116:20, 120:8, 136:21
**friends'** [1] - 20:3
**friendship** [1] - 118:21
**friendships** [1] - 19:25
**front** [3] - 106:3, 115:11, 121:6
**full** [1] - 147:5
**fun** [1] - 100:13

**G**

**general** [7] - 4:7, 20:17, 36:6, 51:5, 51:17, 59:5, 125:12
**generalized** [1] - 46:21
**generally** [6] - 6:7, 35:21, 79:21, 98:18, 104:10, 105:22

**Geraghty** [4] - 3:4, 3:24, 4:1, 97:13
**GERAGHTY** [2] - 1:6, 2:10
**given** [11] - 27:18, 51:12, 53:3, 62:3, 76:10, 82:21, 93:4, 104:23, 133:6, 141:19, 142:5
**goal** [1] - 44:12
**godparent** [4] - 9:17, 9:19, 10:6, 140:12
**Goodman** [2] - 3:4, 3:21
**GOODMAN** [2] - 1:6, 2:8
**goodman** [1] - 3:22
**gosh** [1] - 101:22
**government** [23] - 3:6, 4:13, 11:10, 11:20, 11:21, 12:3, 12:5, 16:23, 17:4, 35:3, 35:10, 48:24, 57:8, 75:15, 94:20, 94:22, 95:7, 95:25, 96:12, 100:20, 132:5, 138:14, 143:7
**grade** [2] - 144:24, 146:3
**granted** [1] - 28:5
**great** [2] - 21:25, 102:19
**greater** [2] - 33:21, 34:1
**grounds** [1] - 70:14
**group** [23] - 12:14, 21:10, 41:10, 41:11, 43:5, 58:4, 58:5, 58:11, 76:2, 76:9, 86:3, 86:4, 102:21, 102:22, 104:15, 105:3, 105:4, 141:12, 141:13, 142:6
**groups** [1] - 8:19
**guarantees** [1] - 69:24
**Guard** [1] - 140:17
**guess** [8] - 24:24, 37:10, 115:8, 115:9, 115:10, 118:2, 124:8, 126:19
**guidance** [1] - 98:23
**GUILLAUME** [78] - 2:2, 3:14, 17:8, 17:11, 17:18, 17:21, 17:25, 18:6, 18:11, 18:15, 18:19, 18:22, 19:5, 19:16, 19:19, 19:22, 20:5, 26:16, 33:1, 33:3, 38:23,

39:4, 48:13, 48:16, 48:22, 48:24, 49:6, 49:16, 49:19, 49:23, 50:6, 50:8, 50:14, 50:18, 51:1, 51:8, 51:19, 55:17, 64:20, 64:22, 64:24, 65:5, 65:12, 65:15, 65:18, 65:22, 66:6, 66:21, 67:3, 67:12, 67:21, 67:25, 68:20, 71:21, 72:1, 80:9, 80:12, 80:19, 80:24, 81:4, 82:14, 82:19, 83:7, 85:9, 91:17, 91:24, 96:18, 96:22, 107:14, 109:3, 109:7, 116:13, 136:5, 136:9, 136:14, 136:18, 145:17, 145:23
**Guillaume** [2] - 2:3, 3:15
**guilt** [3] - 23:1, 118:18, 123:7
**guilty** [7] - 67:20, 95:2, 95:5, 95:8, 96:2, 96:4, 126:25
**gun** [2] - 31:17, 31:18

## H

**half** [1] - 129:2
**half-baked** [1] - 129:2
**hand** [6] - 6:11, 51:15, 72:11, 92:6, 94:7, 126:6
**handing** [2] - 126:9, 131:12
**handle** [2] - 74:22
**handled** [1] - 75:2
**Handy** [5] - 3:3, 3:9, 3:11, 126:23, 127:14
**HANDY** [2] - 1:5, 1:18
**happy** [4] - 49:17, 65:13, 65:20, 138:18
**harass** [4] - 114:19, 117:2, 125:2, 125:5
**harassed** [1] - 136:22
**harassing** [1] - 117:17
**harassment** [5] - 117:9, 118:22, 125:8, 125:9, 126:5
**hard** [16] - 14:5, 9:10, 19:20, 20:24, 20:25, 21:2, 21:3, 22:6, 22:20, 22:24, 23:2, 29:1, 126:1, 128:15, 128:16
**harder** [1] - 128:10

**hardship** [2] - 64:9, 91:23
**HARIVADAN** [1] - 1:14
**hate** [2] - 65:14, 65:21
**head** [4] - 39:17, 61:17, 102:10, 127:20
**head)** [1] - 92:25
**headphones** [1] - 92:12
**health** [50] - 12:16, 13:22, 15:3, 28:1, 36:10, 36:13, 38:2, 38:10, 41:12, 42:10, 42:11, 42:25, 43:9, 44:24, 45:15, 46:22, 49:11, 50:10, 50:16, 50:20, 51:9, 58:6, 59:6, 59:20, 60:19, 62:4, 76:4, 77:12, 77:20, 86:5, 86:23, 102:23, 103:25, 104:5, 104:16, 104:9, 104:16, 105:5, 105:10, 105:15, 105:18, 105:22, 112:23, 113:16, 132:24, 141:15
**hear** [27] - 7:18, 24:2, 29:20, 30:9, 39:19, 54:23, 56:7, 72:15, 83:23, 84:3, 92:13, 92:22, 92:24, 93:4, 93:11, 108:4, 109:16, 109:17, 117:19, 118:7, 118:25, 119:6, 134:16, 135:6, 137:24, 144:1
**heard** [7] - 5:20, 53:18, 75:1, 84:5, 118:10, 137:22, 137:25
**hearing** [7] - 50:9, 52:10, 70:23, 92:10, 92:22, 106:14, 119:11
**HEATHER** [2] - 1:6, 2:6
**Heather** [3] - 3:3, 3:17, 3:18
**held** [7] - 38:3, 38:9, 38:12, 52:16, 60:24, 112:24, 113:4
**hello** [1] - 85:24
**helpful** [1] - 25:12
**helping** [2] - 40:5, 40:19
**helps** [1] - 92:11
**HERB** [2] - 1:6, 2:10

**Herb** [1] - 3:4
**hereby** [1] - 147:3
**herself** [3] - 121:12, 124:21, 136:22
**highly** [1] - 114:21
**hiking** [1] - 61:13
**Hinshaw** [3] - 3:3, 3:13, 3:15
**HINSHAW** [2] - 1:5, 2:3
**Hold** [1] - 126:20
**hold** [2] - 65:7, 72:20
**hole** [2] - 136:25, 137:8
**home** [5] - 54:15, 54:17, 64:6, 114:19, 117:4
**homes** [1] - 72:7
**honest** [5] - 14:4, 38:6, 113:3, 134:10, 137:1
**honestly** [1] - 40:9
**honeymoon** [3] - 108:16, 108:17, 109:8
**Honor** [82] - 3:7, 3:14, 3:22, 3:25, 6:19, 7:7, 17:5, 17:8, 18:15, 18:22, 19:5, 19:7, 19:16, 19:19, 20:12, 20:16, 25:25, 26:15, 26:16, 26:22, 28:9, 28:18, 28:22, 29:5, 31:8, 33:1, 33:3, 34:8, 34:10, 35:19, 35:23, 38:8, 38:19, 38:23, 38:25, 39:4, 48:14, 51:19, 53:17, 55:16, 55:17, 61:21, 64:20, 67:13, 67:25, 71:4, 71:21, 72:2, 80:7, 80:9, 82:14, 82:17, 82:19, 83:7, 91:16, 91:22, 93:23, 96:17, 96:18, 96:22, 96:24, 109:1, 109:3, 116:6, 116:11, 119:13, 126:21, 127:6, 135:7, 135:24, 136:2, 136:9, 136:10, 136:14, 136:15, 137:7, 137:20, 137:22, 138:23, 145:17, 145:18, 145:24
**HONORABLE** [1] - 1:9
**hook** [1] - 128:21
**hope** [8] - 43:22, 89:23, 89:25, 90:13,

90:15, 94:1, 143:23, 146:17
**hot** [1] - 27:1
**hotel** [3] - 23:25, 24:5, 24:6
**hours** [3] - 25:14, 25:15, 55:4
**house** [1] - 61:12
**housed** [1] - 8:24
**HOWARD** [1] - 2:8
**Howard** [2] - 3:23, 26:24
**hurt** [3] - 54:10, 54:21, 54:24
**husband** [10] - 34:17, 35:7, 37:12, 56:13, 57:6, 73:5, 74:2, 75:9, 140:11, 140:14
**hypothetical** [6] - 52:25, 53:5, 118:14, 125:13, 129:22, 131:2
**hypothetically** [1] - 118:19
**hypotheticals** [3] - 127:18, 127:19, 130:24

## I

**i.e** [1] - 120:24
**IA** [1] - 1:19
**idea** [2] - 111:16, 126:5
**identify** [1] - 3:5
**IDONI** [5] - 1:6, 2:6, 25:25, 26:2, 71:4
**Idoni** [4] - 3:3, 3:17, 3:19, 70:20
**ignoring** [1] - 62:13
**III** [3] - 2:2, 2:3, 2:8
**illegal** [6] - 119:14, 119:21, 119:23, 120:1, 122:20, 124:11
**illness** [1] - 64:2
**images** [1] - 52:9, 52:10
**impartial** [16] - 38:4, 38:15, 52:3, 62:3, 62:4, 66:24, 89:1, 89:18, 89:21, 112:25, 136:16, 139:8, 143:24, 143:25, 144:2
**impartiality** [2] - 52:19, 144:3
**impartially** [1] - 67:10
**importance** [1] - 47:6
**important** [5] - 6:25,

50:16, 52:17, 80:25, 81:1
**importantly** [1] - 128:18
**improper** [1] - 127:3
**improperly** [1] - 137:14
**IN** [1] - 1:1
**inappropriate** [1] - 22:16
**inaudible/off** [1] - 119:14
**inclination** [2] - 5:22, 93:20
**inclined** [3] - 33:21, 43:6, 100:19
**include** [18] - 36:11, 37:9, 41:13, 46:23, 59:15, 64:1, 64:2, 76:24, 77:11, 86:5, 105:6, 105:18, 112:23, 129:5, 132:25, 141:15, 142:23, 143:9
**included** [3] - 98:8, 120:2, 139:15
**includes** [2] - 64:1, 141:20
**including** [17] - 12:16, 38:2, 45:15, 49:11, 50:16, 50:20, 51:9, 58:7, 58:23, 62:9, 76:4, 80:25, 86:23, 102:23, 104:17, 136:22, 143:3
**independent** [3] - 16:14, 45:6, 143:14
**indicate** [15] - 4:21, 5:22, 6:8, 8:7, 13:3, 19:19, 19:23, 19:24, 21:21, 27:17, 43:21, 43:22, 66:11, 66:13, 129:7
**indicated** [30] - 5:10, 5:12, 5:13, 6:17, 19:8, 19:9, 19:21, 19:22, 22:7, 23:15, 29:2, 35:13, 60:17, 67:15, 68:17, 83:2, 83:5, 88:6, 89:17, 90:12, 90:18, 100:1, 106:15, 114:5, 116:17, 117:1, 117:13, 127:22, 130:4, 133:10
**indicates** [2] - 89:16, 124:19
**indicating** [3] - 34:4, 43:18, 89:19
**indictment** [1] - 95:21

**indirectly** [2] - 12:7, 43:10
**individual** [2] - 26:23, 74:18
**individuals** [5] - 36:20, 41:2, 62:9, 104:11, 104:12
**indulge** [1] - 53:9
**indulgence** [6] - 33:1, 51:21, 64:20, 67:25, 81:5, 116:13
**infer** [2] - 95:6, 96:9
**inflict** [1] - 88:11
**influence** [1] - 141:5
**influenced** [4] - 82:6, 96:9, 137:14
**inform** [8] - 36:23, 38:16, 46:7, 62:8, 88:7, 115:25, 116:5, 143:4
**information** [13] - 5:5, 32:16, 32:19, 42:19, 42:21, 64:3, 69:9, 84:6, 84:24, 84:25, 85:3, 107:8, 130:19
**informed** [8] - 14:11, 47:3, 59:14, 61:2, 77:15, 90:5, 95:3, 113:6
**initial** [2] - 22:4, 136:19
**initiative** [1] - 99:8
**ink** [1] - 142:1
**innocence** [4] - 118:11, 118:18, 128:8, 131:21
**innocent** [2] - 94:19, 95:7
**inquiry** [1] - 128:24
**insemination** [1] - 36:3
**insistent** [1] - 6:14
**insisting** [1] - 27:20
**instances** [1] - 19:9
**instead** [2] - 106:9, 134:1
**instruct** [2] - 88:19, 143:6
**instruction** [2] - 4:14, 28:2
**instructions** [13] - 12:10, 18:25, 27:21, 33:5, 39:2, 53:13, 59:14, 70:9, 85:11, 93:15, 97:16, 102:16, 107:17
**intent** [16] - 27:25, 129:4, 129:9, 129:15, 129:20, 129:22, 131:9,

132:4, 132:6, 132:19, 132:23, 133:3, 133:8, 133:22, 134:20, 135:20
**intention** [1] - 113:23
**interaction** [1] - 97:18
**interactions** [3] - 98:16, 136:19, 136:20
**interchange** [1] - 98:1
**interest** [5] - 27:13, 45:16, 83:3, 99:8, 121:11
**interested** [4] - 58:23, 100:9, 119:11, 126:9
**interfere** [5] - 38:3, 38:15, 88:25, 89:17, 112:25
**intern** [4] - 40:2, 40:7, 56:15, 56:22
**Internal** [3] - 98:9, 98:10, 98:11
**international** [1] - 110:19
**internet** [3] - 57:10, 57:12, 57:14
**internship** [1] - 40:5
**interruption** [2] - 137:12, 138:5
**intervening** [1] - 81:18
**intrauterine** [1] - 36:3
**introduced** [2] - 33:19, 97:12
**investigation** [1] - 101:10
**investigations** [1] - 98:13
**involve** [4] - 13:22, 28:5, 41:24, 57:21
**involved** [14] - 14:16, 14:17, 14:20, 51:11, 56:12, 59:24, 65:8, 73:25, 86:8, 86:24, 98:5, 100:6, 100:7, 100:10
**involvement** [2] - 14:18, 105:13
**involves** [3] - 13:23, 17:2, 23:24
**irritate** [3] - 122:21, 122:24, 128:19
**IRS** [6] - 98:22, 98:24, 98:25, 99:3, 99:19, 106:3
**issue** [30] - 4:14, 5:11, 6:25, 7:21, 17:19, 18:12, 19:4, 19:25, 20:2, 20:3, 20:11, 28:3, 38:2, 41:16,

44:15, 52:6, 62:22, 64:24, 65:24, 66:2, 80:23, 105:19, 108:6, 108:13, 112:23, 129:8, 135:12, 144:19, 144:21, 144:23
**issues** [32] - 10:22, 12:7, 13:17, 36:7, 36:9, 37:3, 37:4, 44:21, 45:16, 46:3, 46:4, 49:7, 49:9, 49:11, 58:23, 58:24, 60:14, 60:15, 60:18, 76:23, 76:25, 80:24, 83:1, 99:13, 104:3, 105:17, 126:8, 126:12, 129:21, 134:19, 135:20, 143:2
**Ithaca** [1] - 91:6
**itself** [4] - 23:3, 41:2, 83:4, 120:12
**IUI** [1] - 36:15

## J

**JAG** [2] - 140:16, 140:20
**Jamaica** [2] - 88:10, 90:24
**JASARI** [1] - 1:23
**Jasari** [2] - 1:23, 3:11
**job** [13] - 10:2, 10:4, 12:2, 35:20, 45:23, 47:16, 99:2, 99:3, 101:2, 114:24, 114:25, 115:19, 143:25
**jobs** [2] - 35:21, 40:19
**John** [5] - 3:3, 3:7, 3:12, 3:15, 3:25
**JOHN** [4] - 1:5, 1:12, 2:3, 2:10
**JR** [1] - 1:12
**Judge** [13] - 5:9, 30:10, 48:11, 68:1, 71:22, 97:5, 122:2, 125:5, 125:10, 126:1, 127:4, 130:21, 134:14
**JUDGE** [1] - 1:9
**judge** [7] - 17:12, 28:13, 48:18, 52:14, 67:24, 73:13, 137:13
**judges** [8] - 10:13, 10:19, 10:23, 57:24, 73:16, 75:2, 111:5, 139:16
**judging** [1] - 114:14

**judgment** [4] - 19:20, 48:4, 65:6, 67:16
**juries** [1] - 143:21
**jurisdiction** [1] - 102:6
**juror** [84] - 7:8, 7:14, 19:2, 21:17, 23:11, 26:19, 29:17, 29:22, 30:1, 30:12, 30:21, 31:21, 33:6, 33:7, 33:10, 39:3, 39:9, 39:14, 51:6, 51:10, 52:11, 53:15, 53:20, 54:1, 55:21, 55:23, 56:4, 63:19, 65:6, 70:10, 71:6, 71:8, 71:25, 72:1, 72:8, 72:12, 79:3, 80:3, 82:13, 83:15, 83:19, 85:13, 85:14, 85:21, 88:17, 89:21, 89:24, 90:8, 91:21, 92:2, 92:12, 92:16, 93:16, 94:3, 94:8, 96:21, 97:2, 97:8, 107:18, 107:21, 107:25, 109:6, 109:11, 109:14, 119:23, 122:1, 123:8, 124:25, 126:16, 127:14, 132:22, 134:6, 135:9, 136:8, 136:15, 137:9, 137:12, 137:18, 139:8, 139:18, 139:21, 144:22, 145:22, 145:24
**Juror** [19] - 5:12, 7:19, 23:14, 29:25, 33:15, 39:20, 54:5, 56:9, 71:10, 72:18, 72:20, 83:25, 85:25, 92:21, 94:13, 97:9, 108:5, 109:20, 139:25
**JUROR** [504] - 8:1, 8:3, 8:6, 8:9, 8:11, 8:14, 8:16, 8:22, 9:1, 9:3, 9:5, 9:10, 9:14, 9:17, 9:21, 9:24, 10:1, 10:4, 10:9, 10:11, 10:15, 10:17, 10:20, 10:24, 11:3, 11:7, 11:9, 11:12, 11:17, 11:20, 11:24, 12:1, 12:5, 12:9, 12:12, 12:19, 12:23, 13:1, 13:5, 13:8, 13:13, 13:15, 13:20, 14:1, 14:5, 14:14, 14:17, 14:22, 14:25, 15:5, 15:7, 15:10,

15:13, 15:18, 15:21, 15:24, 16:2, 16:5, 16:15, 16:18, 16:21, 16:23, 17:3, 17:10, 17:17, 17:20, 17:24, 18:5, 18:10, 18:14, 19:1, 23:18, 23:20, 23:23, 24:3, 24:6, 24:9, 24:12, 24:15, 24:18, 24:20, 24:24, 25:4, 25:9, 25:13, 25:17, 25:20, 26:6, 26:12, 30:3, 30:5, 30:7, 30:16, 30:18, 30:23, 31:1, 31:5, 31:8, 31:11, 31:15, 31:20, 31:24, 32:3, 32:6, 32:8, 32:10, 32:17, 32:21, 32:24, 33:14, 34:2, 34:8, 34:17, 34:21, 34:25, 35:4, 35:6, 35:9, 35:12, 35:15, 35:19, 35:23, 36:2, 36:8, 36:12, 36:19, 36:22, 36:25, 37:6, 37:10, 37:14, 37:18, 38:8, 38:19, 39:24, 40:2, 40:9, 40:12, 40:18, 41:4, 41:8, 41:15, 42:4, 42:8, 42:11, 42:16, 43:3, 43:16, 43:20, 43:24, 44:2, 44:10, 44:17, 44:20, 44:25, 45:12, 45:18, 45:21, 46:8, 46:11, 46:14, 46:17, 47:5, 47:13, 47:18, 48:9, 48:15, 49:3, 49:13, 49:17, 49:21, 49:24, 50:7, 50:12, 50:17, 50:21, 51:4, 51:13, 51:23, 52:20, 52:24, 53:14, 54:8, 54:12, 54:14, 54:17, 54:20, 55:3, 55:6, 55:9, 55:14, 55:20, 56:8, 56:13, 56:15, 56:18, 56:21, 57:1, 57:5, 57:9, 57:12, 57:16, 57:19, 57:22, 58:2, 58:9, 58:12, 58:16, 58:20, 59:2, 59:5, 59:9, 59:17, 59:22, 59:25, 60:5, 60:7, 60:10, 60:12, 60:16, 61:4, 61:7, 61:12, 61:16, 61:19, 61:21, 62:2, 62:12, 62:18, 62:23, 62:25, 63:5, 63:10, 63:16, 63:22,

63:25, 64:7, 64:12, 64:17, 64:23, 65:4, 65:10, 65:13, 65:17, 65:20, 66:3, 66:10, 66:16, 67:18, 67:23, 69:4, 69:7, 69:12, 69:16, 69:19, 70:2, 70:5, 70:7, 71:11, 71:14, 71:16, 71:18, 72:17, 73:1, 73:5, 73:8, 73:11, 73:14, 73:19, 73:22, 74:3, 74:5, 74:8, 74:11, 74:13, 74:16, 74:19, 74:24, 75:4, 75:10, 75:13, 75:16, 75:21, 75:24, 76:7, 76:10, 76:12, 76:14, 76:18, 76:21, 77:4, 77:17, 77:22, 77:25, 78:3, 78:7, 78:10, 78:13, 78:16, 78:22, 78:25, 79:2, 79:6, 79:9, 79:13, 79:16, 79:19, 79:22, 80:1, 80:5, 80:11, 80:18, 80:22, 81:3, 81:7, 81:10, 81:13, 81:17, 81:23, 81:25, 82:11, 84:2, 84:5, 84:8, 84:13, 84:16, 84:20, 85:1, 85:4, 85:7, 85:12, 85:24, 86:7, 86:11, 86:14, 86:18, 87:1, 87:12, 87:16, 87:20, 87:23, 88:3, 88:9, 88:22, 89:4, 89:8, 89:13, 89:23, 90:10, 90:17, 90:21, 91:6, 91:10, 91:13, 91:20, 92:14, 92:25, 93:2, 93:6, 93:8, 93:12, 94:12, 94:15, 95:12, 95:14, 95:18, 95:24, 96:5, 96:11, 96:14, 97:5, 97:15, 97:21, 97:25, 98:3, 98:7, 98:15, 98:22, 99:4, 99:7, 99:15, 99:25, 100:3, 100:7, 100:11, 100:21, 100:25, 101:9, 101:14, 101:18, 101:22, 101:25, 102:2, 102:5, 102:15, 102:18, 103:1, 103:3, 103:9, 103:20, 104:8, 104:18, 104:21, 105:7, 105:12, 105:20, 105:24,

106:2, 106:6, 106:8, 106:11, 106:23, 107:4, 107:9, 107:12, 107:16, 108:7, 108:10, 108:15, 108:19, 108:22, 109:19, 109:25, 110:2, 110:5, 110:11, 110:15, 110:19, 110:22, 111:3, 111:8, 111:11, 111:15, 111:18, 111:24, 112:5, 112:8, 112:14, 113:11, 113:14, 113:17, 113:22, 114:2, 114:8, 114:11, 114:15, 115:5, 115:8, 115:10, 115:16, 116:1, 116:3, 116:10, 116:19, 116:21, 116:25, 117:3, 117:7, 117:10, 117:20, 117:23, 118:4, 118:8, 118:12, 120:8, 120:20, 120:23, 121:8, 122:23, 123:10, 123:15, 123:18, 123:25, 124:24, 134:11, 135:21, 136:7, 139:24, 140:6, 140:8, 140:11, 140:16, 140:21, 141:2, 141:6, 141:10, 141:17, 141:21, 141:24, 142:9, 142:13, 142:18, 142:24, 143:15, 143:18, 144:6, 144:10, 144:12, 144:16, 144:24, 145:6, 145:8, 145:14, 145:20
**juror's** [2] - 82:20, 128:22
**jurors** [7] - 4:24, 5:1, 22:25, 128:12, 131:22, 146:7, 146:17
**JURY** [2] - 1:4, 1:8
**jury** [14] - 4:14, 20:22, 28:15, 31:7, 31:10, 64:2, 79:15, 79:18, 82:10, 89:1, 114:24, 115:19, 126:23, 137:10

**Justice** [1] - 100:15
**justice** [2] - 110:13, 110:15
**justified** [2] - 37:21, 112:18

### K

**keep** [7] - 27:3, 27:20, 27:23, 28:7, 55:22, 85:18, 114:13
**keeper** [1] - 55:22
**keeping** [5] - 20:13, 29:15, 53:16, 83:8, 107:19
**kept** [1] - 20:10
**key** [2] - 27:25, 38:10
**kids** [2] - 90:22, 90:25
**kind** [17] - 5:23, 11:19, 16:22, 20:17, 21:17, 34:19, 35:25, 36:6, 43:7, 44:11, 47:17, 57:15, 105:14, 112:6, 115:12, 121:24, 128:17
**kinds** [2] - 110:25, 115:13
**Kiyonaga** [1] - 4:1
**KIYONAGA** [26] - 2:10, 3:25, 20:12, 20:14, 29:8, 29:12, 51:22, 51:24, 52:21, 53:9, 53:11, 87:4, 103:7, 116:2, 116:6, 135:23, 136:2, 137:20, 137:22, 138:1, 138:4, 138:23, 139:1, 139:5, 139:7, 139:12
**Kiyonaga's** [1] - 137:12
**knowing** [4] - 51:10, 52:15, 68:10, 132:12
**knowledge** [5] - 8:16, 111:2, 111:3, 140:15, 141:1
**known** [3] - 119:25, 120:4, 124:3
**knows** [1] - 20:2
**KOLLAR** [1] - 1:9
**KOLLAR-KOTELLY** [1] - 1:9
**KOTELLY** [1] - 1:9

### L

**lady** [1] - 126:6
**large** [4] - 6:23, 8:19, 81:22, 144:12
**last** [23] - 21:22,

32:13, 46:13, 58:20, 61:5, 61:22, 64:25, 65:15, 65:18, 65:19, 71:6, 84:23, 85:6, 87:25, 88:1, 92:23, 105:25, 107:1, 107:11, 131:17, 131:19, 142:11
**late** [1] - 78:1
**latest** [1] - 30:21
**Lauren** [2] - 3:3, 3:11
**LAUREN** [2] - 1:5, 1:18
**Law** [2] - 2:3, 99:5
**law** [59] - 11:5, 11:13, 11:19, 16:20, 32:3, 33:18, 33:23, 34:15, 34:19, 34:22, 35:1, 35:11, 35:16, 36:4, 39:22, 39:25, 47:6, 50:23, 52:13, 56:12, 56:14, 57:4, 59:14, 61:1, 66:19, 66:22, 66:23, 67:10, 73:12, 73:13, 75:7, 75:16, 75:19, 75:20, 75:21, 77:14, 88:19, 88:20, 95:10, 98:5, 101:2, 101:3, 101:5, 109:23, 110:3, 111:22, 113:9, 122:19, 127:15, 140:4, 140:9, 140:24, 141:1, 141:4, 141:9, 143:6
**laws** [6] - 37:22, 51:15, 112:18, 128:20, 140:22, 144:20
**lawsuit** [1] - 100:10
**lawyer** [28] - 11:5, 11:18, 11:25, 12:3, 14:8, 21:5, 34:15, 34:17, 34:18, 57:3, 57:6, 57:10, 57:13, 62:7, 66:7, 66:8, 74:4, 74:7, 74:10, 101:20, 111:22, 140:3
**lawyers** [2] - 57:24, 111:5
**lead** [1] - 16:24
**leading** [1] - 51:14
**leaflet** [1] - 107:8
**leaflets** [3] - 32:19, 85:2, 131:12
**learned** [1] - 40:24
**least** [3] - 21:17, 52:7, 62:9
**leave** [6] - 21:15, 24:9,

24:20, 24:22, 92:17, 108:15
**leaves** [1] - 45:7
**leaving** [2] - 63:6, 87:8
**left** [5] - 21:1, 33:9, 55:25, 106:16, 127:20
**legal** [9] - 4:22, 10:14, 10:22, 11:15, 37:4, 112:11, 119:23, 126:14, 126:15
**length** [1] - 68:17
**less** [4] - 8:3, 40:10, 77:2, 82:6
**lesser** [3] - 33:22, 34:1, 34:3
**librarian** [1] - 32:10
**library** [4] - 32:10
**licenses** [1] - 36:14
**life** [6] - 38:11, 90:3, 90:14, 117:6, 119:24, 120:9
**lifer** [1] - 126:4
**likely** [2] - 99:12, 125:9
**limit** [1] - 5:8
**limited** [4] - 12:16, 58:7, 76:5, 102:23
**line** [4] - 5:21, 6:5, 46:1, 49:6
**list** [8] - 33:20, 44:22, 45:5, 45:10, 45:11, 45:12, 93:10, 101:22
**listed** [4] - 39:20, 54:6, 83:25, 93:9
**listen** [2] - 14:2, 90:1
**listened** [1] - 132:5
**listing** [2] - 42:18, 49:15, 50:5
**live** [3] - 7:22, 7:25, 114:17
**lived** [3] - 78:10, 78:16, 140:9
**living** [6] - 32:2, 78:14, 78:20, 78:21, 84:15, 84:19
**LLC** [1] - 2:3
**LLP** [1] - 1:23
**lobbies** [1] - 45:3
**lobby** [2] - 17:3, 45:13
**lobbying** [2] - 36:23, 46:25
**local** [8] - 9:23, 17:4, 30:14, 30:16, 30:17, 72:23, 73:7, 79:5
**located** [1] - 7:22
**location** [1] - 42:19
**lodged** [1] - 4:12
**look** [11] - 4:8, 4:13, 6:3, 6:5, 6:6, 14:10,

63:1, 67:18, 115:19, 117:11, 146:6
**looking** [4] - 16:13, 89:18, 103:16, 113:9
**lose** [3] - 65:9, 65:10, 65:12
**lost** [1] - 30:10
**lower** [1] - 95:22
**lunch** [2] - 146:4, 146:20

# M

**ma'am** [15] - 16:17, 17:9, 29:12, 48:14, 64:22, 65:22, 67:3, 80:10, 80:12, 81:6, 114:10, 116:15, 134:15, 138:1, 139:5
**mail** [2] - 42:21, 43:13
**mail-in** [2] - 42:21, 43:13
**march** [19] - 15:2, 59:19, 59:23, 60:3, 60:13, 77:19, 78:2, 78:21, 78:24, 82:22, 82:24, 87:15, 105:10, 105:14, 105:16, 113:15, 113:18, 144:9, 144:13
**marched** [6] - 82:24, 86:15, 87:2, 87:12, 87:23, 88:1
**marches** [5] - 113:12, 113:23, 114:3, 114:4, 128:14
**marching** [2] - 87:6, 144:14
**marijuana** [1] - 112:8
**MARTIN** [1] - 1:17
**Martin** [1] - 3:10
**mask** [25] - 7:17, 29:20, 33:13, 39:18, 54:4, 56:7, 62:6, 62:7, 62:11, 62:15, 62:17, 65:24, 66:2, 66:5, 66:7, 66:15, 72:14, 83:22, 83:24, 92:20, 94:11, 108:3, 109:17, 134:8, 135:5
**masks** [1] - 66:12
**match** [1] - 129:23
**material** [1] - 32:19
**matter** [6] - 68:8, 75:23, 99:21, 106:3, 110:18, 113:3
**matters** [8] - 32:8, 98:24, 99:1, 101:10, 101:12, 103:12,

112:11, 131:4
**MD** [1] - 2:9
**mean** [21] - 21:4, 21:11, 25:13, 50:21, 50:23, 51:4, 61:24, 68:7, 83:13, 95:2, 95:5, 100:7, 100:25, 107:4, 115:9, 120:16, 129:1, 131:13, 132:1, 134:23, 134:24
**means** [4] - 21:5, 22:21, 95:2
**meant** [1] - 89:4
**measures** [1] - 62:20
**Media** [2] - 49:22, 49:25
**media** [5] - 32:23, 41:21, 42:6, 85:5, 107:10
**medical** [2] - 62:4, 62:14
**medically** [1] - 66:13
**meet** [1] - 113:19
**member** [10] - 13:11, 58:11, 87:16, 87:21, 88:25, 103:18, 110:1, 140:7, 140:8, 141:22
**members** [2] - 17:13, 103:18
**membership** [1] - 104:22
**mention** [2] - 37:20, 112:16
**mentioned** [2] - 112:1, 117:16
**mere** [1] - 120:5
**merely** [1] - 120:9
**met** [1] - 97:16
**Metro** [1] - 4:4
**MI** [1] - 2:7
**Miami** [1] - 35:16
**mic** [2] - 78:12, 119:14
**microphone** [20] - 7:17, 23:13, 29:24, 30:9, 33:12, 34:24, 39:17, 54:3, 56:6, 72:15, 83:21, 85:23, 92:19, 93:1, 94:10, 95:17, 103:8, 108:2, 109:16, 139:23
**might** [11] - 26:20, 57:25, 70:11, 73:15, 75:1, 77:15, 111:4, 112:11, 118:20, 141:3, 144:20
**mind** [7] - 22:22, 117:22, 131:22, 142:4, 143:19,

143:22, 144:19
**mine** [2] - 81:19, 106:9
**minor** [1] - 98:17
**minute** [3] - 4:11, 4:16, 89:12
**minutes** [2] - 70:17, 93:14
**misdemeanor** [1] - 4:15
**misremembering** [1] - 141:18
**miss** [3] - 68:12, 68:13, 144:25
**missed** [1] - 111:17
**missing** [1] - 70:25
**missives** [1] - 4:19
**mix** [1] - 98:7
**moment** [4] - 20:14, 135:23, 135:25, 136:3
**moment's** [1] - 54:9
**Monday** [3] - 25:7, 26:10, 106:3
**money** [13] - 13:19, 42:2, 59:11, 65:9, 65:11, 65:12, 76:10, 76:23, 78:8, 87:10, 142:5, 142:19, 142:21
**months** [2] - 54:12, 101:4
**moral** [3] - 38:1, 88:24, 112:22
**morally** [2] - 37:21, 112:17
**morning** [26] - 3:7, 3:12, 3:14, 3:17, 3:20, 3:22, 3:24, 3:25, 4:10, 16:17, 16:18, 17:9, 17:10, 48:14, 48:15, 63:15, 63:16, 64:22, 64:23, 80:10, 80:11, 84:10, 84:12, 84:13, 84:14, 85:15
**MORNING** [2] - 1:7, 1:8
**most** [4] - 23:5, 30:22, 76:16, 128:12
**mostly** [3] - 111:15, 111:18, 112:8
**motion** [4] - 19:5, 82:14, 96:22, 145:23
**mouth** [1] - 51:2
**move** [26] - 7:15, 7:16, 20:9, 23:13, 29:24, 33:11, 39:4, 39:15, 39:16, 54:2, 54:3, 56:5, 72:1, 72:15, 83:20, 85:22, 90:22,

90:24, 92:18, 94:10, 108:1, 109:7, 109:15, 136:9, 138:22, 139:22
**movement** [1] - 88:4
**MR** [273] - 3:7, 3:10, 3:14, 3:18, 3:22, 3:25, 6:15, 6:19, 16:17, 16:19, 16:22, 17:1, 17:5, 17:8, 17:11, 17:18, 17:21, 17:25, 18:6, 18:11, 18:15, 18:19, 18:22, 19:5, 19:7, 19:16, 19:19, 19:22, 20:5, 20:12, 20:14, 20:16, 20:19, 21:13, 22:17, 23:7, 26:15, 26:16, 26:20, 26:22, 27:5, 27:7, 27:12, 28:9, 28:18, 28:22, 29:5, 29:7, 29:8, 29:12, 30:10, 32:1, 32:5, 32:7, 32:13, 32:18, 32:22, 32:25, 33:1, 33:3, 34:10, 34:11, 38:23, 38:25, 39:4, 39:7, 48:11, 48:13, 48:16, 48:22, 48:24, 49:6, 49:16, 49:19, 49:23, 50:6, 50:8, 50:14, 50:18, 51:1, 51:8, 51:19, 51:22, 51:24, 52:21, 53:9, 53:11, 53:17, 54:23, 55:16, 55:17, 57:11, 58:18, 63:15, 63:17, 63:24, 64:3, 64:9, 64:13, 64:20, 64:22, 64:24, 65:5, 65:12, 65:15, 65:18, 65:22, 66:6, 66:21, 67:3, 67:12, 67:21, 67:25, 68:1, 68:4, 68:11, 68:19, 68:20, 71:21, 71:22, 72:1, 72:4, 75:19, 80:7, 80:9, 80:12, 80:19, 80:24, 81:4, 82:14, 82:17, 82:19, 83:7, 84:10, 84:14, 84:18, 84:22, 85:2, 85:5, 85:8, 85:9, 86:17, 87:4, 91:16, 91:17, 91:22, 91:24, 93:22, 93:23, 93:25, 96:17, 96:18, 96:22, 96:24, 97:22, 101:11, 103:7, 103:8, 106:25, 107:7, 107:10, 107:13, 107:14,

109:1, 109:3, 109:7, 114:1, 114:10, 114:12, 114:23, 115:6, 115:9, 115:15, 115:17, 116:2, 116:6, 116:11, 116:13, 116:15, 116:20, 116:23, 117:1, 117:5, 117:8, 117:13, 117:21, 118:2, 118:5, 118:10, 118:13, 119:4, 119:13, 119:15, 119:22, 120:11, 120:19, 120:22, 121:1, 121:5, 121:9, 122:1, 122:5, 122:12, 122:15, 122:18, 122:25, 123:22, 124:1, 124:8, 124:15, 124:19, 125:5, 125:9, 125:14, 125:20, 125:25, 126:19, 126:21, 127:1, 127:2, 127:4, 127:5, 127:11, 128:2, 130:1, 130:3, 130:6, 130:14, 130:21, 130:24, 131:18, 132:8, 132:11, 132:15, 132:17, 132:21, 133:6, 133:11, 133:15, 133:19, 133:25, 134:3, 134:13, 134:23, 135:2, 135:3, 135:7, 135:14, 135:16, 135:22, 135:23, 136:2, 136:5, 136:9, 136:10, 136:14, 136:18, 137:7, 137:20, 137:22, 138:1, 138:4, 138:23, 139:1, 139:5, 139:7, 139:12, 145:7, 145:17, 145:18, 145:23, 146:1, 146:10
**MS** [1] - 1:21
**multitude** [1] - 49:7
**must** [2] - 49:24, 96:3
**myriad** [1] - 44:20

## N

**N.W** [1] - 147:11

137:21
**noted** [1] - 67:3
**notes** [1] - 147:5
**nothing** [8] - 9:6, 83:25, 93:9, 98:18, 104:8, 123:4, 128:8, 136:5
**notice** [1] - 54:9
**noticed** [1] - 70:20
**number** [8] - 27:15, 30:11, 41:16, 54:5, 73:8, 125:16, 138:19
**NW** [4] - 1:13, 1:16, 2:3, 2:22
**NYU** [2] - 99:4, 99:12

## O

**object** [4] - 22:17, 68:11, 116:2, 138:6
**objection** [20] - 67:1, 72:3, 82:16, 91:24, 93:22, 93:23, 93:24, 93:25, 96:23, 119:13, 135:3, 137:20, 137:21, 138:4, 138:21, 138:24, 138:25, 139:13, 145:25, 146:1
**objections** [2] - 29:9, 29:10
**objective** [9] - 121:15, 122:22, 126:16, 127:24, 129:25, 133:21, 134:19, 135:13, 136:12
**objectively** [2] - 120:7, 135:19
**objectivity** [2] - 124:16, 125:22
**obstruct** [4] - 27:25, 129:4, 132:6, 132:24
**obstructed** [2] - 129:19, 132:14
**obstruction** [3] - 37:24, 112:20, 132:18
**obstructive** [3] - 117:19, 131:10, 133:4
**obtain** [1] - 64:6
**obviously** [26] - 4:8, 13:23, 14:7, 28:5, 33:17, 38:7, 45:4, 46:20, 47:25, 58:22, 58:25, 59:10, 60:24, 69:10, 70:3, 76:22, 92:21, 93:17, 99:21, 101:1, 101:19,

101:20, 106:17, 107:5, 114:3, 142:21
**occurred** [3] - 50:22, 78:20, 78:21
**OF** [4] - 1:1, 1:2, 1:8, 147:1
**offensive** [1] - 120:2
**office** [3] - 40:15, 110:13, 122:10
**Office** [3] - 1:12, 40:4, 98:22
**officer** [5] - 14:1, 33:23, 40:6, 111:16, 111:19
**officer's** [1] - 40:20
**officers** [1] - 33:18
**Offices** [1] - 2:3
**offices** [1] - 10:13
**official** [2] - 49:15, 50:4
**Official** [2] - 2:21, 147:10
**OFFICIAL** [1] - 147:1
**Ohio** [5] - 78:7, 78:9, 78:17, 78:21, 82:25
**old** [2] - 25:18, 54:11
**once** [13] - 5:6, 6:22, 6:23, 22:19, 30:5, 30:6, 45:23, 46:9, 46:11, 58:17, 58:20, 79:9, 137:25
**one** [67] - 5:10, 6:13, 10:13, 10:16, 10:18, 18:7, 19:4, 19:25, 20:10, 20:14, 21:1, 22:7, 23:9, 27:16, 29:16, 30:24, 31:15, 31:16, 31:18, 38:8, 38:12, 40:19, 47:23, 49:11, 51:5, 56:19, 56:22, 60:6, 61:5, 62:5, 62:6, 73:10, 73:11, 75:9, 81:13, 83:9, 89:6, 89:10, 90:19, 91:14, 97:12, 97:24, 98:7, 100:4, 102:7, 105:8, 105:16, 106:21, 108:8, 109:9, 110:5, 111:9, 121:17, 125:12, 125:16, 126:18, 127:9, 130:9, 131:17, 134:5, 134:21, 136:23, 142:2, 142:16
**one-time** [1] - 142:16
**ones** [6] - 12:25, 15:17, 21:2, 82:25, 138:13, 146:8

**ongoing** [2] - 69:21, 98:15
**open** [2] - 21:18, 68:9
**openings** [1] - 4:23
**opens** [1] - 55:6
**operate** [1] - 73:16
**operates** [2] - 10:7, 10:23
**opinion** [1] - 41:24
**opinions** [5] - 38:1, 41:21, 42:6, 42:13, 112:22
**opportunities** [1] - 27:18
**opportunity** [5] - 4:17, 22:9, 22:15, 106:2, 106:12
**oppose** [2] - 19:7, 39:7, 136:10
**opposed** [4] - 4:7, 33:23, 38:17, 52:16
**opposite** [1] - 19:23
**option** [1] - 51:6
**order** [10] - 6:20, 6:21, 6:24, 48:4, 62:5, 62:13, 66:18, 83:23, 124:3, 131:14
**ordered** [1] - 132:2
**orders** [3] - 4:21, 66:4, 66:9
**ordinarily** [1] - 22:13
**organization** [64] - 11:11, 11:13, 11:15, 12:14, 12:15, 12:24, 12:25, 13:4, 13:6, 13:9, 14:16, 14:19, 18:7, 18:8, 28:24, 36:22, 36:24, 41:10, 41:11, 41:21, 42:6, 43:6, 44:7, 44:13, 45:3, 48:18, 48:19, 49:7, 49:12, 49:18, 49:22, 50:3, 50:11, 58:4, 58:5, 75:15, 76:2, 76:3, 76:11, 77:9, 82:22, 86:3, 86:4, 86:12, 86:13, 86:20, 86:21, 86:24, 86:25, 87:8, 87:9, 87:11, 87:15, 87:17, 87:18, 87:19, 87:22, 102:21, 102:22, 103:18, 103:5, 105:4, 141:12, 141:13
**organizations** [8] - 13:2, 35:24, 36:18, 36:21, 80:17, 80:19, 86:9, 103:13
**originally** [2] - 6:1,

**name** [3] - 26:23, 87:19, 87:20
**names** [2] - 15:9, 40:22
**National** [1] - 140:17
**nature** [1] - 75:3
**nauseam** [1] - 21:22
**near** [1] - 114:17
**necessarily** [6] - 28:2, 46:6, 68:10, 124:17, 125:11, 131:25
**necessary** [3] - 5:4, 48:7, 52:18
**need** [47] - 5:2, 7:16, 23:22, 24:1, 29:13, 30:8, 33:12, 34:23, 54:8, 54:10, 56:2, 56:6, 64:18, 69:23, 72:14, 83:21, 85:19, 85:23, 92:17, 92:18, 93:1, 94:6, 94:11, 95:16, 96:16, 97:6, 106:18, 107:23, 107:24, 108:2, 108:3, 109:13, 109:16, 109:17, 119:18, 121:21, 125:13, 125:24, 125:25, 127:8, 135:5, 136:3, 139:23, 146:7, 146:11, 146:12
**needed** [2] - 106:9, 146:2
**needs** [2] - 7:13, 107:24
**never** [7] - 89:24, 94:25, 98:25, 102:8, 105:14, 142:18
**new** [2] - 114:17, 146:13
**New** [9] - 23:24, 24:4, 24:17, 25:3, 25:16, 90:25, 101:6, 110:7, 110:9
**next** [7] - 24:9, 29:15, 46:18, 106:3, 108:16, 108:19, 125:23
**nice** [1] - 5:17
**niece** [3] - 90:23, 90:25, 91:7
**night** [1] - 25:14
**nine** [1] - 128:19
**nobody** [2] - 102:9, 125:5
**nonprofit** [1] - 57:9
**normally** [1] - 117:25
**Northwest** [1] - 7:22
**note** [2] - 28:16,

88:9
**otherwise** [3] - 29:10, 83:22, 108:3
**outside** [5] - 32:15, 84:24, 107:2, 107:5, 136:20
**overrule** [1] - 83:8
**overruling** [1] - 19:14
**overseas** [2] - 110:8, 110:10
**own** [14] - 6:12, 14:12, 38:10, 38:11, 46:25, 59:15, 61:2, 88:14, 88:15, 90:2, 115:25, 116:4, 134:17
**owners** [1] - 63:23

## P

**p.m** [2] - 55:9, 146:22
**P.O** [1] - 1:21
**pamphlet** [2] - 107:8, 126:6
**pamphlets** [3] - 32:18, 85:2, 126:9
**panels** [1] - 31:7
**paper** [1] - 107:7
**paperwork** [3] - 40:20, 40:21, 41:1
**parent** [3] - 90:11, 90:21, 91:11
**Parenthood** [22] - 13:5, 13:11, 17:22, 18:4, 20:23, 21:14, 28:21, 58:13, 58:22, 60:18, 76:12, 77:11, 78:9, 78:20, 80:16, 80:20, 80:25, 82:20, 114:18, 128:14, 142:10, 143:13
**part** [13] - 26:10, 33:19, 40:23, 42:16, 44:7, 53:1, 70:25, 99:7, 100:11, 120:12, 120:13, 129:1, 131:4
**partial** [1] - 65:24
**participants** [1] - 17:13
**participate** [8] - 13:11, 15:15, 45:7, 46:25, 48:7, 113:15, 131:24, 144:22
**participated** [14] - 15:2, 15:16, 15:17, 16:4, 16:8, 59:19, 59:25, 60:20, 77:19, 78:24, 103:13, 105:9, 105:21, 144:8
**participating** [1] -

114:4
**participation** [2] - 77:24, 82:22
**particular** [15] - 6:18, 12:8, 42:7, 42:8, 43:14, 44:21, 46:3, 58:23, 60:3, 60:4, 95:15, 129:6, 132:25, 144:5, 144:19
**particularly** [1] - 21:23
**parts** [1] - 100:2
**party** [2] - 41:20, 45:3
**Party** [1] - 45:4
**past** [9] - 9:20, 73:2, 73:3, 99:3, 109:23, 117:2, 117:3, 117:11, 143:16
**PATEL** [31] - 1:14, 32:1, 32:5, 32:7, 32:13, 32:18, 32:22, 32:25, 48:11, 63:15, 63:17, 63:24, 64:3, 64:9, 64:13, 71:22, 72:4, 84:10, 84:14, 84:18, 84:22, 85:2, 85:5, 85:8, 93:23, 106:25, 107:7, 107:10, 107:13, 145:18, 146:1
**Patel** [1] - 3:8
**patience** [1] - 134:15
**patient** [9] - 120:16, 120:20, 120:21, 120:24, 124:2, 130:6, 130:7, 134:17, 135:19
**patients** [4] - 114:16, 125:3, 125:7, 130:8
**pattern** [1] - 20:20
**Patterson** [7] - 5:12, 39:12, 53:24, 69:6, 83:17, 92:7, 107:24
**pay** [3] - 48:2, 48:6, 106:20
**PC** [1] - 2:6
**penalty** [1] - 24:7
**Pennsylvania** [1] - 1:16
**people** [51] - 5:2, 5:19, 5:21, 6:7, 6:20, 8:19, 20:2, 20:22, 21:8, 21:10, 22:21, 23:5, 27:16, 29:1, 40:16, 41:20, 42:18, 43:5, 45:8, 46:1, 51:5, 52:15, 66:11, 70:21, 94:1, 107:5, 114:19, 114:22, 114:25, 115:11, 115:12,

115:13, 115:17, 115:22, 117:2, 117:5, 117:18, 117:24, 118:6, 118:22, 119:24, 120:1, 121:6, 123:22, 125:2, 128:7, 128:14, 129:12, 131:20, 142:19
**people's** [1] - 5:6
**per** [1] - 97:16
**perceive** [1] - 66:22
**percent** [3] - 96:15, 101:3, 101:4
**perform** [1] - 51:10
**perhaps** [4] - 25:22, 40:10, 120:2, 122:1
**period** [4] - 4:21, 61:15, 69:1, 69:10
**permanent** [2] - 10:3, 10:4
**permit** [2] - 37:22, 112:18
**perpetrating** [1] - 40:23
**person** [25] - 6:3, 6:4, 6:12, 6:18, 7:10, 10:10, 10:12, 10:17, 11:6, 12:21, 12:22, 22:21, 38:10, 38:11, 43:14, 66:24, 73:20, 82:7, 83:13, 102:7, 128:19, 130:1, 131:23, 139:13, 144:2
**person's** [1] - 111:12
**personal** [27] - 14:7, 14:12, 38:1, 47:7, 50:15, 50:17, 59:12, 59:15, 60:23, 61:2, 62:3, 67:21, 77:10, 77:12, 77:15, 88:21, 89:20, 90:4, 90:6, 98:17, 105:12, 112:21, 113:7, 113:8, 114:13, 143:13, 143:23
**personally** [5] - 51:24, 67:4, 67:14, 103:12, 104:14
**persons** [6] - 40:22, 65:8, 67:6, 67:16, 136:20, 136:22
**perspective** [4] - 70:4, 90:3, 104:14, 125:17
**pertaining** [1] - 41:16
**philosophical** [1] - 88:24
**phone** [2] - 43:1,

71:13
**phrase** [1] - 124:7
**physical** [4] - 37:23, 52:4, 52:10, 112:20
**pick** [1] - 25:22
**place** [5] - 6:23, 8:12, 30:10, 63:23, 69:15
**places** [1] - 12:4
**plainly** [1] - 128:23
**Plaintiff** [2] - 1:3, 1:12
**Planned** [22] - 13:5, 13:11, 17:21, 18:4, 20:22, 21:14, 28:20, 58:12, 58:22, 60:18, 76:12, 77:11, 78:8, 78:19, 80:16, 80:20, 80:25, 82:20, 114:17, 128:14, 142:10, 143:13
**planned** [2] - 63:18, 64:10
**planning** [2] - 26:4, 26:5
**plans** [5] - 5:13, 20:11, 63:21, 103:25, 104:5
**pleasant** [1] - 97:17
**plenary** [2] - 138:7
**plus** [1] - 16:9
**point** [25] - 7:9, 13:25, 21:18, 26:23, 27:24, 38:22, 46:24, 53:13, 68:10, 70:15, 70:18, 82:20, 89:10, 98:21, 114:15, 121:25, 125:21, 129:18, 130:4, 130:9, 131:5, 138:9, 139:10, 146:4, 146:9
**policy** [2] - 99:9, 103:22
**policy-related** [1] - 103:22
**political** [3] - 38:1, 88:24, 112:22
**politically** [2] - 46:20, 46:22
**pool** [3] - 81:14, 81:15, 146:17
**position** [3] - 88:7, 99:11, 114:7
**positions** [2] - 47:1, 82:8
**possession** [4] - 31:16, 31:17, 31:18, 31:19
**possibility** [1] - 51:14
**possible** [2] - 47:14, 63:20
**possibly** [1] - 43:11
**post** [1] - 4:5

**Post** [1] - 6:16
**postpone** [1] - 68:25
**posture** [1] - 23:4
**potential** [2] - 106:14, 137:9
**potentially** [3] - 12:7, 57:24, 146:14
**practical** [1] - 68:8
**practice** [12] - 11:10, 11:11, 11:19, 12:3, 16:20, 34:20, 35:8, 35:11, 35:14, 57:7, 101:2, 140:15
**practiced** [1] - 141:1
**practicing** [2] - 11:13, 11:18
**precisely** [1] - 103:14
**predicated** [1] - 132:11
**predisposed** [1] - 114:21
**prefer** [2] - 4:8, 21:18
**preference** [1] - 64:17
**pregnancies** [1] - 36:3
**prepared** [3] - 66:14, 126:8, 126:13
**present** [8] - 3:11, 3:15, 3:23, 4:1, 71:2, 99:2, 126:14, 126:15
**presented** [11] - 14:8, 59:13, 61:1, 77:14, 88:18, 89:25, 115:3, 115:7, 131:7, 137:14, 143:5
**presentence** [1] - 40:15
**presenting** [3] - 121:4, 125:16, 137:9
**presently** [4] - 9:20, 9:21, 75:14, 109:23
**President** [2] - 50:1
**pressing** [10] - 23:16, 47:11, 54:6, 61:6, 89:11, 89:13, 90:19, 106:1, 108:8, 108:12
**pressure** [1] - 48:1
**pressures** [1] - 48:5
**presumably** [6] - 4:4, 13:16, 45:10, 58:25, 63:8, 83:1
**presume** [2] - 52:17, 94:18
**presumed** [1] - 95:7
**presumption** [8] - 118:11, 124:12, 124:13, 124:15, 124:17, 128:8, 128:9, 131:21
**presumptions** [1] - 123:13

**pretty** [2] - 21:14, 21:17
**previously** [1] - 112:1
**primaries** [1] - 45:8
**primarily** [2] - 52:10, 98:23
**principal** [2] - 37:2, 37:3
**principles** [2] - 95:4, 95:11
**priorities** [1] - 77:4
**priority** [1] - 80:13
**private** [10] - 11:11, 11:12, 11:14, 35:2, 35:4, 35:8, 57:8, 72:7, 125:19, 126:11
**pro** [25] - 28:12, 35:24, 35:25, 36:10, 36:16, 37:16, 52:23, 60:2, 87:1, 87:6, 87:10, 87:17, 88:8, 88:16, 89:3, 89:5, 113:24, 113:25, 114:1, 114:2, 117:6, 119:24, 120:9, 126:4
**pro-choice** [14] - 28:12, 52:23, 60:2, 87:1, 87:6, 87:10, 87:17, 88:8, 88:16, 89:3, 89:5, 113:25, 114:2, 120:9
**pro-life** [3] - 117:6, 119:24, 120:9
**pro-lifer** [1] - 126:4
**probable** [1] - 95:22
**Probation** [1] - 40:4
**probation** [3] - 40:5, 40:15, 40:20
**problem** [19] - 5:6, 22:18, 26:7, 66:23, 70:24, 90:19, 92:10, 92:22, 117:15, 120:14, 121:16, 124:7, 124:9, 129:1, 129:20, 131:6, 131:16, 136:13, 138:12
**problems** [2] - 66:18, 127:10
**procedure** [1] - 52:6
**proceed** [3] - 4:3, 4:25, 7:3
**proceeding** [1] - 71:3
**proceedings** [2] - 75:2, 147:6
**process** [5] - 40:6, 40:20, 43:7, 68:22, 69:21
**profession** [1] - 6:6
**professional** [2] -

98:16, 100:12
**professor** [3] - 75:16, 75:21, 99:6
**program** [2] - 40:24, 41:2
**programming** [1] - 42:12
**progressive** [4] - 44:21, 49:8, 49:9, 50:3
**promptly** [1] - 25:22
**prosecutor** [6] - 110:7, 110:9, 110:12, 110:16, 112:1, 112:3
**proselytizing** [1] - 126:11
**Prospective** [44] - 7:8, 19:2, 23:11, 26:19, 29:17, 29:22, 33:6, 33:7, 39:9, 53:15, 53:20, 54:1, 55:21, 55:23, 70:10, 71:8, 71:25, 72:8, 72:12, 82:13, 83:15, 83:19, 85:13, 85:14, 85:21, 91:21, 92:2, 92:16, 93:16, 94:3, 94:8, 96:21, 97:2, 97:8, 107:18, 107:21, 107:25, 109:6, 109:11, 109:14, 134:6, 136:8, 139:21, 145:22
**prospective** [8] - 7:14, 33:10, 39:3, 39:14, 56:4, 92:12, 124:25, 139:18
**PROSPECTIVE** [504] - 8:1, 8:3, 8:6, 8:9, 8:11, 8:14, 8:16, 8:22, 9:1, 9:3, 9:5, 9:10, 9:14, 9:17, 9:21, 9:24, 10:1, 10:4, 10:9, 10:11, 10:15, 10:17, 10:20, 10:24, 11:3, 11:7, 11:9, 11:12, 11:17, 11:20, 11:24, 12:1, 12:5, 12:9, 12:12, 12:19, 12:23, 13:1, 13:5, 13:8, 13:13, 13:15, 13:20, 14:1, 14:5, 14:14, 14:17, 14:22, 14:25, 15:5, 15:7, 15:10, 15:13, 15:18, 15:21, 15:24, 16:2, 16:5, 16:15, 16:18, 16:21, 16:23, 17:3, 17:10, 17:17,

17:20, 17:24, 18:5, 18:10, 18:14, 19:1, 23:18, 23:20, 23:23, 24:3, 24:6, 24:9, 24:12, 24:15, 24:18, 24:20, 24:24, 25:4, 25:9, 25:13, 25:17, 25:20, 26:6, 26:12, 30:3, 30:5, 30:7, 30:16, 30:18, 30:23, 31:1, 31:5, 31:8, 31:11, 31:15, 31:20, 31:24, 32:3, 32:6, 32:8, 32:10, 32:17, 32:21, 32:24, 33:14, 34:2, 34:8, 34:17, 34:21, 34:25, 35:4, 35:6, 35:9, 35:12, 35:15, 35:19, 35:23, 36:2, 36:8, 36:12, 36:19, 36:22, 36:25, 37:6, 37:10, 37:14, 37:18, 38:8, 38:19, 39:24, 40:2, 40:9, 40:12, 40:18, 41:4, 41:8, 41:15, 42:4, 42:8, 42:11, 42:16, 43:3, 43:16, 43:20, 43:24, 44:2, 44:10, 44:17, 44:20, 44:25, 45:12, 45:18, 45:21, 46:8, 46:11, 46:14, 46:17, 47:5, 47:13, 47:18, 48:9, 48:15, 49:3, 49:13, 49:17, 49:21, 49:24, 50:7, 50:12, 50:17, 50:21, 51:4, 51:13, 51:23, 52:20, 52:24, 53:14, 54:8, 54:12, 54:14, 54:17, 54:20, 55:3, 55:6, 55:9, 55:14, 55:20, 56:8, 56:13, 56:15, 56:18, 56:21, 57:1, 57:5, 57:9, 57:12, 57:16, 57:19, 57:22, 58:2, 58:9, 58:12, 58:16, 58:20, 59:2, 59:5, 59:9, 59:17, 59:22, 59:25, 60:5, 60:7, 60:10, 60:12, 60:16, 61:4, 61:7, 61:12, 61:16, 61:19, 61:21, 62:2, 62:12, 62:18, 62:23, 62:25, 63:5, 63:10, 63:16, 63:22, 63:25, 64:7, 64:12, 64:17, 64:23, 65:4, 65:10, 65:13, 65:17, 65:20, 66:3, 66:10, 66:16,

67:18, 67:23, 69:4, 69:7, 69:12, 69:16, 69:19, 70:2, 70:5, 70:7, 71:11, 71:14, 71:16, 71:18, 72:17, 73:1, 73:5, 73:8, 73:11, 73:14, 73:19, 73:22, 74:3, 74:5, 74:8, 74:11, 74:13, 74:16, 74:19, 74:24, 75:4, 75:10, 75:13, 75:16, 75:21, 75:24, 76:7, 76:10, 76:12, 76:14, 76:18, 76:21, 77:4, 77:17, 77:22, 77:25, 78:3, 78:7, 78:10, 78:13, 78:16, 78:22, 78:25, 79:2, 79:6, 79:9, 79:13, 79:16, 79:19, 79:22, 80:1, 80:5, 80:11, 80:18, 80:22, 81:3, 81:7, 81:10, 81:13, 81:17, 81:23, 81:25, 82:11, 84:2, 84:5, 84:8, 84:13, 84:16, 84:20, 85:1, 85:4, 85:7, 85:12, 85:24, 86:7, 86:11, 86:14, 86:18, 87:1, 87:12, 87:16, 87:20, 87:23, 88:3, 88:9, 88:22, 89:4, 89:8, 89:13, 89:23, 90:10, 90:17, 90:21, 91:6, 91:10, 91:13, 91:20, 92:14, 92:25, 93:2, 93:6, 93:8, 93:12, 94:12, 94:15, 95:12, 95:14, 95:18, 95:24, 96:5, 96:11, 96:14, 97:5, 97:15, 97:21, 97:25, 98:3, 98:7, 98:15, 98:22, 99:4, 99:7, 99:15, 99:25, 100:3, 100:7, 100:11, 100:21, 100:25, 101:9, 101:14, 101:18, 101:22, 101:25, 102:2, 102:5, 102:15, 102:18, 103:1, 103:3, 103:9, 103:20, 104:8, 104:18, 104:21, 105:7, 105:12, 105:20, 105:24, 106:2, 106:6, 106:8, 106:11, 106:23, 107:4, 107:9, 107:12, 107:16,

108:7, 108:10, 108:15, 108:19, 108:22, 109:19, 109:25, 110:2, 110:5, 110:11, 110:15, 110:19, 110:22, 111:3, 111:8, 111:11, 111:15, 111:18, 111:24, 112:5, 112:8, 112:14, 113:11, 113:14, 113:17, 113:22, 114:2, 114:8, 114:11, 114:15, 115:5, 115:8, 115:10, 115:16, 116:1, 116:3, 116:10, 116:19, 116:21, 116:25, 117:3, 117:7, 117:10, 117:20, 117:23, 118:4, 118:8, 118:12, 120:8, 120:20, 120:23, 121:8, 122:23, 123:10, 123:15, 123:18, 123:25, 124:24, 134:11, 135:21, 136:7, 139:24, 140:6, 140:8, 140:11, 140:16, 140:21, 141:2, 141:6, 141:10, 141:17, 141:21, 141:24, 142:9, 142:13, 142:18, 142:24, 143:15, 143:18, 144:6, 144:10, 144:12, 144:16, 144:24, 145:6, 145:8, 145:14, 145:20
**protest** [13] - 15:2, 16:10, 21:7, 59:23, 60:4, 60:20, 77:19, 104:19, 105:9, 113:15, 115:18, 144:9, 144:11
**protested** [1] - 15:23
**protesting** [1] - 115:11
**protests** [7] - 15:25, 16:8, 17:14, 19:13, 59:19, 60:1, 113:14
**prove** [4] - 94:23, 95:8, 96:13, 140:23
**proved** [2] - 23:1, 143:7

**proven** [2] - 67:20, 94:20
**provide** [9] - 11:15, 37:22, 41:19, 41:25, 42:19, 42:20, 43:4, 84:7, 112:19
**provided** [4] - 27:16, 32:15, 62:10, 104:5
**providers** [2] - 36:13
**provides** [1] - 10:14
**providing** [5] - 36:17, 59:6, 62:14, 76:22, 130:18
**public** [1] - 99:8
**pull** [4] - 5:22, 6:7, 6:11, 29:24
**pulled** [1] - 92:19
**pulling** [2] - 5:21, 6:24
**purchased** [1] - 104:11
**purpose** [6] - 121:18, 123:19, 124:2, 125:12, 134:23, 144:14
**purposes** [4] - 52:1, 118:16, 123:24, 134:18
**pursuing** [1] - 138:12
**pushed** [1] - 61:10
**pushing** [1] - 68:25
**put** [33] - 4:11, 13:22, 14:10, 20:24, 29:19, 38:6, 39:11, 41:16, 46:21, 47:10, 51:2, 53:22, 55:25, 72:10, 85:16, 85:17, 88:16, 89:9, 89:16, 90:4, 92:6, 92:9, 94:5, 95:10, 97:4, 97:13, 117:14, 128:6, 131:16, 137:2, 143:1, 144:7, 146:13
**putting** [3] - 4:16, 38:17, 127:8

## Q

**questioning** [3] - 22:3, 93:20, 144:3
**Questions** [2] - 109:21, 139:25
**questions** [65] - 4:24, 5:4, 7:19, 16:16, 17:7, 17:12, 18:17, 18:23, 21:4, 21:23, 22:4, 22:10, 22:15, 26:14, 28:7, 31:25, 33:3, 46:2, 46:3, 46:7, 48:10, 48:11, 48:13, 48:16, 48:17,

48:18, 53:11, 55:15, 56:10, 63:14, 63:17, 64:19, 66:1, 68:20, 71:19, 80:6, 81:6, 81:14, 84:4, 84:5, 84:9, 85:9, 91:15, 92:23, 93:18, 96:18, 106:24, 107:14, 108:25, 109:2, 114:9, 116:12, 121:23, 126:18, 128:4, 131:14, 133:22, 137:2, 137:17, 138:12, 139:4, 139:15, 145:16, 146:18
**quickly** [1] - 103:5
**quite** [6] - 6:4, 6:13, 27:15, 62:16, 137:13, 137:17
**quote** [1] - 137:1

## R

**rabbit** [2] - 136:25, 137:7
**raise** [2] - 72:11, 94:6
**raised** [2] - 64:25, 78:4
**raises** [1] - 128:12
**raising** [1] - 142:19
**rally** [8] - 15:2, 59:19, 60:20, 77:19, 105:10, 113:16, 144:9, 144:11
**rate** [3] - 20:20, 68:7, 145:11
**rather** [2] - 52:21, 93:19
**re** [2] - 71:8, 134:6
**re-entered** [2] - 71:8, 134:6
**reach** [2] - 31:10, 79:18
**reached** [1] - 143:22
**read** [4] - 4:20, 63:25, 92:24, 107:10
**ready** [3] - 4:3, 4:25, 7:5
**real** [3] - 70:24, 118:19, 131:24
**reality** [1] - 28:11
**really** [11] - 43:4, 68:13, 95:20, 103:14, 108:3, 117:24, 119:1, 119:11, 123:19, 128:5, 128:6
**reason** [9] - 19:14, 34:9, 38:21, 62:14,

62:21, 82:3, 83:6, 95:15, 133:10
**reasonable** [5] - 94:20, 94:23, 94:24, 95:8, 143:7
**reasons** [2] - 77:2, 137:4
**receive** [6] - 51:25, 63:20, 65:1, 84:23, 85:2, 107:7
**received** [2] - 32:18
**receives** [1] - 139:8
**receiving** [1] - 4:6
**recent** [4] - 17:14, 30:22, 76:16, 77:23
**recently** [3] - 77:1, 88:5, 110:5
**recess** [2] - 70:19
**recognize** [2] - 81:17, 81:24
**recognized** [3] - 81:18, 81:21, 82:1
**record** [15] - 3:6, 3:15, 19:17, 25:1, 27:10, 28:9, 28:16, 29:6, 33:13, 54:4, 94:11, 109:18, 128:3, 137:21, 139:1
**referenced** [1] - 118:6
**referring** [4] - 117:21, 130:6, 130:7, 130:8
**refine** [1] - 5:6
**refined** [1] - 4:14
**refund** [10] - 63:20, 64:6, 64:11, 64:15, 65:1, 68:25, 69:3, 69:8, 70:12, 71:17
**regarding** [8] - 15:3, 38:2, 40:20, 59:19, 77:19, 105:10, 112:22, 113:16
**regardless** [2] - 47:6, 139:12
**regional** [2] - 111:16, 111:19
**register** [2] - 45:5, 45:6
**registered** [4] - 41:20, 42:18, 45:5, 45:8
**regular** [2] - 56:20, 98:19
**regularly** [2] - 41:19, 55:2
**regulated** [1] - 36:5
**regulatory** [3] - 34:22, 35:1, 36:14
**rehabilitate** [1] - 28:14
**reiterate** [1] - 26:25
**relabel** [1] - 127:21
**relate** [3] - 104:10,

144:15, 144:16
**related** [8] - 32:19, 32:23, 37:4, 68:2, 101:10, 101:11, 103:22, 103:23
**relates** [2] - 8:20, 104:4
**relating** [7] - 28:7, 36:10, 37:8, 87:22, 99:16, 99:19, 144:22
**relations** [1] - 16:23
**relationship** [5] - 9:15, 12:21, 15:9, 100:20, 140:10
**relationships** [4] - 98:17, 103:15, 145:2
**relative** [1] - 73:4
**released** [1] - 91:22
**relevant** [1] - 103:14
**religions** [1] - 88:13
**religious** [4] - 38:1, 88:12, 88:24, 112:22
**relying** [1] - 136:11
**remain** [7] - 7:12, 33:9, 56:2, 83:17, 85:19, 97:6, 134:18
**remaining** [4] - 121:15, 133:7, 133:21, 134:19
**remains** [1] - 94:19
**remember** [7] - 13:9, 29:9, 31:12, 60:7, 78:3, 79:23, 88:4
**remembering** [1] - 142:2
**remind** [1] - 74:23
**removed** [1] - 75:25
**rental** [3] - 63:23, 64:6, 65:1
**rented** [1] - 61:12
**repeat** [1] - 84:16
**repeatedly** [2] - 27:22, 137:16
**repeating** [1] - 5:4
**rephrase** [2] - 67:12, 135:16
**report** [1] - 62:10
**Reporter** [3] - 2:20, 2:21, 147:10
**reporter** [1] - 70:16
**REPORTER** [1] - 147:1
**reporters** [1] - 27:9
**reports** [4] - 32:23, 40:16, 85:5, 107:10
**represented** [1] - 143:13
**representing** [1] - 36:17
**represents** [2] - 45:15,

77:9
**reprise** [1] - 23:8
**Reproductive** [1] - 37:1
**reproductive** [62] - 12:16, 13:8, 13:22, 15:3, 16:13, 18:9, 18:13, 28:1, 35:24, 36:10, 37:9, 38:2, 38:9, 41:12, 42:10, 42:11, 42:25, 43:9, 44:24, 45:15, 46:22, 49:11, 50:10, 50:16, 50:19, 58:6, 58:24, 59:15, 59:20, 60:14, 60:19, 76:4, 77:12, 77:20, 78:5, 81:1, 86:5, 86:15, 86:23, 87:2, 87:13, 87:24, 88:1, 102:23, 103:25, 104:6, 104:9, 104:16, 105:5, 105:10, 105:15, 105:18, 105:22, 112:23, 113:16, 129:5, 132:24, 141:14, 142:8, 142:22, 143:2, 144:15
**Republican** [1] - 45:9
**request** [1] - 62:19
**requested** [1] - 66:4
**require** [1] - 90:8
**required** [2] - 88:17, 94:18
**requires** [1] - 103:24
**requisite** [6] - 27:25, 129:4, 129:15, 131:9, 133:3, 133:8
**reschedule** [3] - 63:20, 64:5, 64:16
**rescheduled** [1] - 69:14
**research** [5] - 32:7, 36:2, 36:17, 36:19, 140:23
**researcher** [2] - 32:4, 32:5
**reservation** [2] - 23:25, 24:6
**resources** [1] - 42:22
**respect** [8] - 17:21, 18:6, 18:8, 48:17, 64:25, 65:23, 80:13, 118:11
**respectfully** [1] - 136:15
**respond** [2] - 27:14, 137:6
**response** [3] - 128:22,

137:2, 139:9
**responses** [1] - 5:7
**responsibilities** [1] -
  100:12
**rest** [5] - 7:4, 70:13,
  120:6, 131:14,
  145:12
**restrict** [1] - 52:7
**restricting** [1] - 60:1
**resume** [1] - 70:18
**retired** [1] - 110:5
**returning** [2] - 26:4,
  89:1
**Revenue** [3] - 98:9,
  98:10, 98:11
**review** [1] - 67:10
**reword** [1] - 119:18
**Rights** [3] - 1:15, 37:1,
  100:16
**rights** [16] - 13:8, 18:9,
  18:13, 35:24, 37:9,
  81:2, 86:15, 87:2,
  87:13, 87:24, 88:1,
  88:4, 88:11, 103:25,
  105:14, 113:24
**RMR** [2] - 2:21, 147:9
**ROBERT** [1] - 2:5
**Robert** [2] - 2:6, 3:18
**Roe** [1] - 88:5
**role** [5] - 51:8, 51:10,
  88:11, 89:20, 137:10
**Roman** [2] - 87:2, 87:5
**room** [6] - 6:23, 47:14,
  53:23, 56:1, 121:6,
  121:11
**Room** [2] - 2:22,
  147:10
**roommate** [1] - 141:7
**roughly** [3] - 8:2, 31:4,
  31:13
**routines** [1] - 145:3
**ruin** [1] - 109:8
**rule** [1] - 51:5
**rules** [3] - 99:16,
  137:9, 145:2
**rulings** [1] - 4:22
**run** [2] - 4:8, 99:7
**running** [1] - 82:7
**rush** [1] - 48:3

---

**S**

**safe** [1] - 65:2
**sake** [1] - 127:13
**sandwiches** [2] -
  97:21, 97:23
**Sanjay** [1] - 3:8
**SANJAY** [1] - 1:14
**Santa** [1] - 40:3
**sat** [2] - 114:23,

126:22
**Saturday** [2] - 24:19,
  25:7
**saw** [2] - 4:4, 66:6
**schedule** [1] - 142:19
**scheduled** [1] - 61:8
**scheduling** [1] - 68:1
**School** [1] - 99:5
**school** [9] - 75:17,
  75:19, 75:20, 75:22,
  101:5, 140:9,
  144:25, 145:5, 145:9
**scope** [1] - 102:5
**scot** [1] - 128:9
**scot-free** [1] - 128:9
**second** [3] - 68:14,
  87:9, 124:23
**secondly** [1] - 138:6
**secretary** [1] - 74:13
**Section** [2] - 1:15, 4:5
**Security** [1] - 110:6
**security** [3] - 111:10,
  111:16, 111:19
**See** [1] - 146:20
**seeing** [7] - 20:19,
  52:9, 52:10, 68:24,
  120:21, 120:23,
  134:1
**seem** [3] - 5:7, 14:19,
  128:24
**SEFRANEK** [1] -
  147:3
**Sefranek** [3] - 2:21,
  147:9, 147:9
**selected** [7] - 48:2,
  63:19, 64:15, 82:5,
  88:17, 90:20, 106:20
**selection** [1] - 81:15
**selective** [1] - 93:20
**Senate** [1] - 101:10
**send** [1] - 72:5
**sense** [7] - 36:6,
  47:15, 90:9, 103:24,
  118:22, 119:10,
  123:9
**sent** [1] - 4:19
**separate** [20] - 14:7,
  16:12, 19:9, 21:8,
  27:17, 47:1, 47:3,
  60:23, 80:21, 80:22,

83:5, 89:20, 89:24,
  90:14, 113:5, 113:8,
  114:6, 127:2,
  143:12, 143:20
**separating** [1] - 22:8
**separation** [1] - 47:8
**September** [3] - 70:1,
  106:12, 106:16
**series** [3] - 105:17,
  129:7, 142:19
**serve** [2] - 31:6,
  118:16
**served** [2] - 30:1,
  30:21
**Service** [4] - 98:9,
  98:10, 98:11, 110:6
**services** [15] - 28:1,
  37:23, 42:3, 42:15,
  44:14, 44:16, 44:18,
  44:24, 45:15, 50:10,
  84:21, 111:10,
  112:19, 124:20,
  132:24
**serving** [1] - 121:11
**session** [1] - 46:18
**SESSION** [2] - 1:7, 1:8
**set** [14] - 23:24, 59:12,
  68:9, 68:15, 68:16,
  77:13, 95:4, 106:14,
  121:24, 134:18,
  134:21, 135:2,
  135:17, 145:15
**setting** [1] - 145:2
**several** [2] - 126:17,
  127:5
**Shaking** [1] - 92:25
**shall** [1] - 82:4
**share** [2] - 20:23,
  49:17
**shifting** [1] - 109:9
**shifts** [1] - 94:25
**shingle** [1] - 112:9
**short** [1] - 70:15
**shortly** [1] - 15:12
**show** [3] - 128:11,
  130:25, 134:25
**shown** [1] - 19:13
**shows** [3] - 22:19,
  77:8, 88:20
**sic]** [1] - 51:22
**sick** [6] - 16:2, 16:3,
  54:9, 54:21, 54:24,
  55:11
**sickness** [1] - 26:2
**side** [7] - 17:19, 18:12,
  19:23, 19:25, 52:5,
  114:13, 139:12
**sides** [2] - 20:6, 144:1
**sidewalk** [3] - 116:24,
  118:23, 119:7

**signed** [2] - 46:15,
  46:18
**similar** [2] - 80:20,
  136:24
**simply** [5] - 28:21,
  38:6, 40:19, 93:21,
  139:13
**single** [3] - 90:21,
  91:11, 112:9
**single-shingle** [1] -
  112:9
**sister** [1] - 113:17
**sisters** [1] - 140:12
**sit** [18] - 19:20, 20:8,
  47:12, 52:2, 54:7,
  62:15, 65:5, 67:16,
  72:13, 94:9, 108:14,
  125:24, 128:3,
  134:7, 137:10,
  138:21, 139:17,
  145:12
**sitting** [7] - 6:23,
  24:16, 25:6, 47:23,
  62:16, 91:8, 143:15
**situations** [1] - 51:14
**six** [2] - 25:14, 25:15
**skills** [1] - 40:25
**small** [3] - 97:15,
  101:12, 112:9
**smaller** [1] - 119:12
**so-and-so** [1] - 43:22
**social** [1] - 88:24
**socialization** [1] -
  40:25
**Society** [2] - 1:18,
  1:20
**solely** [2] - 89:1,
  105:15
**someone** [11] - 9:14,
  10:12, 15:5, 28:11,
  66:17, 66:22, 66:23,
  82:4, 100:14, 140:9,
  141:17
**someplace** [5] - 8:10,
  9:23, 72:24, 74:15,
  78:6
**sometimes** [4] - 82:5,
  98:23, 102:7, 117:1
**somewhat** [1] - 92:22
**son** [1] - 90:23
**sophisticated** [1] -
  49:4
**sorry** [19] - 18:18,
  30:7, 34:25, 43:16,
  51:21, 55:8, 65:15,
  73:22, 78:13, 81:11,
  83:16, 87:4, 93:7,
  103:9, 111:17,
  116:4, 119:5,
  123:17, 144:18

**sort** [10] - 36:4, 43:5,
  46:2, 59:3, 61:24,
  73:4, 93:20, 99:7,
  129:2, 129:21
**sound** [1] - 49:25
**sounding** [1] - 110:25
**space** [1] - 103:4
**speaking** [2] - 54:3,
  62:16
**special** [1] - 140:18
**specialist** [1] - 16:24
**specific** [9] - 37:8,
  40:14, 45:3, 45:4,
  61:14, 82:23,
  120:12, 132:23,
  142:6
**specifically** [9] -
  37:10, 37:16, 99:17,
  101:2, 104:9,
  104:10, 104:15,
  105:15, 105:22
**specifics** [1] - 51:16
**spectrum** [2] - 19:23,
  139:13
**spend** [2] - 45:23,
  65:8
**spent** [2] - 21:25,
  135:25
**spite** [1] - 65:6
**spoken** [2] - 5:1,
  117:25
**sponsoring** [1] -
  87:15
**sponsors** [1] - 42:1
**spot** [1] - 21:20
**staff** [1] - 23:15
**staffer** [2] - 106:8,
  106:19
**staffers** [1] - 50:1
**stand** [5] - 34:6, 46:4,
  50:5, 72:10, 107:24
**standard** [3] - 95:23,
  122:24, 123:1
**standing** [7] - 7:12,
  33:9, 56:2, 83:17,
  85:19, 97:6, 141:25
**start** [9] - 6:22, 6:23,
  12:20, 26:10, 97:11,
  108:12, 140:2,
  145:4, 145:6
**started** [2] - 87:24,
  146:13
**starting** [3] - 3:6, 7:21,
  17:12
**starts** [1] - 146:17
**state** [2] - 36:4, 111:25
**State** [1] - 110:14
**statement** [3] - 44:3,
  50:13, 136:19
**STATES** [3] - 1:1, 1:2,

1:9
**States** [3] - 2:22, 3:3, 3:8
**states** [4] - 36:4, 36:15, 37:4, 83:1
**stating** [3] - 130:25, 131:1, 131:2
**statistician** [1] - 47:20
**status** [2] - 33:23, 36:15
**statute** [2] - 120:4, 121:13
**statutes** [1] - 125:10
**stay** [1] - 121:2
**stays** [1] - 102:7
**Stenographic** [1] - 2:20
**stenographic** [1] - 147:5
**step** [39] - 7:11, 18:25, 23:12, 29:18, 29:19, 33:4, 33:8, 39:1, 39:10, 39:11, 53:21, 53:23, 55:18, 55:24, 70:8, 71:23, 72:9, 81:8, 82:12, 85:10, 85:15, 91:18, 92:3, 92:4, 93:13, 94:4, 94:6, 96:19, 97:3, 103:24, 107:15, 107:22, 109:4, 109:12, 124:23, 136:6, 139:19, 139:20, 145:19
**STEPHEN** [1] - 1:20
**Steve** [1] - 3:10
**stick** [1] - 127:23
**still** [14] - 22:13, 48:2, 69:20, 81:1, 83:2, 84:12, 84:13, 84:14, 99:3, 108:6, 114:7, 121:18, 125:19, 132:2
**stint** [1] - 56:19
**stood** [1] - 76:24
**stop** [4] - 25:12, 34:13, 139:3, 146:4
**stopped** [4] - 22:10, 25:22, 26:3, 27:19
**strangers** [1] - 117:25
**Street** [4] - 1:13, 1:18, 2:10, 7:22
**street** [3] - 117:25, 118:1, 136:22
**stricken** [2] - 96:25, 137:4
**strictly** [1] - 28:3, 43:1
**strike** [10] - 19:6, 39:4, 72:1, 72:5, 82:15, 96:22, 109:7, 136:9,

137:18, 145:23
**strikes** [1] - 21:10
**strong** [1] - 89:16
**strongest** [2] - 38:9, 38:12
**strongest-held** [2] - 38:9, 38:12
**strongly** [5] - 16:7, 38:7, 60:19, 60:24, 113:4
**stuck** [1] - 23:6
**student** [4] - 81:19, 81:21, 81:25
**students** [1] - 145:2
**studied** [6] - 11:5, 34:15, 57:3, 75:7, 111:22, 140:4
**studying** [1] - 141:8
**stuff** [3] - 104:1, 124:5, 128:15
**subject** [3] - 75:23, 99:21, 110:17
**submit** [4] - 119:24, 136:15, 136:23, 137:4
**subtract** [1] - 45:20
**successfully** [1] - 42:23
**sufficient** [1] - 20:8
**sufficiently** [2] - 75:25, 126:16
**suggest** [2] - 83:11, 124:11
**suggestion** [1] - 4:5
**suitable** [1] - 139:2
**Suite** [2] - 1:24, 2:4
**summarize** [1] - 45:1
**summer** [4] - 40:10, 56:21, 56:22, 101:5
**summers** [1] - 74:19
**Sunday** [10] - 4:5, 24:19, 25:7, 26:5, 26:6, 26:8, 63:6, 108:16, 108:19, 108:20
**Superior** [3] - 9:12, 79:6, 79:10
**supervising** [1] - 40:16
**support** [8] - 41:19, 41:25, 42:13, 42:17, 43:9, 43:10, 44:22, 45:24
**supporter** [1] - 60:18
**supporting** [4] - 43:7, 43:14, 43:18, 43:22
**supportive** [2] - 67:4, 67:14
**supports** [4] - 44:3, 44:14, 49:12

**suppose** [1] - 52:21
**supposed** [4] - 69:24, 96:1, 108:15, 142:2
**Supreme** [2] - 15:18, 15:20
**survey** [1] - 36:4
**suspend** [1] - 28:12
**sustain** [1] - 67:1
**swear** [14] - 7:13, 29:21, 39:12, 53:25, 56:3, 83:18, 85:20, 92:5, 92:8, 92:15, 94:6, 107:24, 109:13, 139:20
**sworn** [18] - 7:14, 29:22, 33:10, 39:14, 54:1, 56:4, 72:12, 83:19, 85:21, 90:1, 92:8, 92:16, 94:8, 97:7, 97:8, 107:25, 109:14, 139:21
**sympathetic** [9] - 13:16, 13:18, 58:25, 59:3, 59:10, 76:23, 77:2, 142:22, 143:2
**sympathy** [2] - 19:11, 77:8
**Syracuse** [1] - 101:5
**system** [2] - 42:17, 49:4

## T

**talks** [1] - 113:12
**TAMARA** [1] - 147:3
**Tamara** [3] - 2:21, 147:9, 147:9
**targeted** [1] - 105:15
**tax** [17] - 32:8, 35:9, 75:24, 75:25, 99:9, 99:13, 99:15, 99:16, 99:17, 100:2, 100:3, 100:24, 101:10, 101:12, 102:15, 103:21
**teach** [1] - 99:12
**teacher** [1] - 144:25
**teaches** [1] - 75:23
**teaching** [3] - 68:13, 99:6, 99:10
**team** [2] - 42:17
**technically** [1] - 128:13
**technology** [2] - 34:21, 34:25
**temporary** [1] - 10:2
**ten** [7] - 30:23, 31:1, 70:16, 76:19, 76:20, 78:19, 80:16
**tended** [1] - 46:17

**Tendering** [1] - 92:12
**tenth** [1] - 128:21
**tenure** [1] - 99:11
**term** [1] - 49:8
**termed** [1] - 53:3
**terms** [54] - 13:21, 15:8, 16:7, 27:15, 30:12, 36:9, 36:16, 37:8, 46:21, 53:2, 53:3, 63:1, 63:4, 67:9, 68:24, 77:1, 79:24, 83:1, 86:20, 87:5, 88:15, 90:2, 98:21, 99:18, 99:22, 101:7, 104:22, 104:23, 104:24, 108:13, 114:4, 121:4, 121:18, 125:12, 125:17, 126:10, 129:13, 129:18, 130:11, 131:5, 131:9, 131:11, 132:4, 135:15, 136:12, 138:13, 139:16, 140:10, 141:7, 144:4, 144:21, 145:2, 146:14
**terrorism** [1] - 110:19
**test** [1] - 62:11
**testify** [2] - 106:3, 106:12
**testifying** [2] - 33:19, 106:21
**testimony** [3] - 33:22, 34:7, 136:18
**Texas** [3] - 78:14, 78:20, 82:25
**THE** [1119] - 1:1, 1:1, 1:9, 3:2, 3:9, 3:12, 3:17, 3:20, 3:24, 4:2, 5:9, 5:12, 5:14, 5:15, 6:17, 6:22, 7:5, 7:6, 7:7, 7:9, 7:15, 8:1, 8:2, 8:3, 8:4, 8:6, 8:7, 8:9, 8:10, 8:11, 8:12, 8:14, 8:15, 8:16, 8:18, 8:22, 8:23, 9:1, 9:2, 9:3, 9:4, 9:5, 9:6, 9:10, 9:11, 9:14, 9:15, 9:17, 9:19, 9:21, 9:22, 9:24, 9:25, 10:1, 10:2, 10:4, 10:5, 10:9, 10:10, 10:11, 10:12, 10:15, 10:16, 10:17, 10:18, 10:20, 10:21, 10:24, 10:25, 11:3, 11:4, 11:7, 11:8, 11:9,

11:10, 11:12, 11:14, 11:17, 11:18, 11:20, 11:22, 11:24, 11:25, 12:1, 12:2, 12:5, 12:6, 12:9, 12:10, 12:12, 12:13, 12:19, 12:20, 12:23, 12:24, 13:1, 13:3, 13:5, 13:6, 13:8, 13:10, 13:13, 13:14, 13:15, 13:16, 13:20, 13:21, 14:1, 14:3, 14:5, 14:6, 14:14, 14:15, 14:17, 14:18, 14:22, 14:23, 14:25, 15:1, 15:5, 15:6, 15:7, 15:8, 15:10, 15:11, 15:13, 15:14, 15:18, 15:20, 15:21, 15:22, 15:24, 15:25, 16:2, 16:3, 16:5, 16:6, 16:15, 16:16, 16:18, 16:21, 16:23, 17:3, 17:6, 17:10, 17:17, 17:20, 17:24, 18:5, 18:10, 18:14, 18:18, 18:21, 18:24, 19:1, 19:3, 19:8, 19:18, 19:21, 20:1, 20:7, 20:13, 20:18, 20:25, 21:21, 22:20, 23:8, 23:12, 23:18, 23:19, 23:20, 23:22, 23:23, 24:1, 24:3, 24:4, 24:6, 24:8, 24:9, 24:11, 24:12, 24:14, 24:15, 24:16, 24:18, 24:19, 24:20, 24:22, 24:24, 24:25, 25:4, 25:5, 25:9, 25:11, 25:13, 25:15, 25:17, 25:18, 25:20, 25:21, 26:1, 26:3, 26:6, 26:7, 26:12, 26:13, 26:17, 26:21, 27:3, 27:6, 27:8, 27:13, 28:17, 28:19, 28:23, 29:6, 29:9, 29:13, 29:18, 29:23, 30:3, 30:4, 30:5, 30:6, 30:7, 30:8, 30:12, 30:16, 30:17, 30:18, 30:19, 30:23, 30:24, 31:1, 31:3, 31:5, 31:6, 31:8, 31:9, 31:11, 31:12, 31:15, 31:18, 31:20, 31:21, 31:24, 31:25, 32:3, 32:6, 32:8, 32:9, 32:10, 32:12, 32:17, 32:21, 32:24, 33:2,

33:4, 33:8, 33:11,
33:14, 33:15, 34:2,
34:4, 34:8, 34:9,
34:12, 34:17, 34:19,
34:21, 34:23, 34:25,
35:2, 35:4, 35:5,
35:6, 35:7, 35:9,
35:11, 35:12, 35:13,
35:15, 35:17, 35:19,
35:20, 35:23, 35:25,
36:2, 36:6, 36:8,
36:9, 36:12, 36:16,
36:19, 36:20, 36:22,
36:24, 36:25, 37:2,
37:6, 37:7, 37:10,
37:12, 37:14, 37:15,
37:18, 37:19, 38:8,
38:13, 38:19, 38:21,
38:24, 39:1, 39:5,
39:8, 39:10, 39:15,
39:24, 39:25, 40:2,
40:7, 40:9, 40:11,
40:12, 40:14, 40:18,
41:1, 41:4, 41:5,
41:8, 41:9, 41:15,
42:2, 42:4, 42:5,
42:8, 42:9, 42:11,
42:14, 42:16, 42:24,
43:3, 43:12, 43:16,
43:17, 43:20, 43:21,
43:24, 44:1, 44:2,
44:5, 44:10, 44:12,
44:17, 44:19, 44:20,
44:23, 44:25, 45:1,
45:12, 45:13, 45:18,
45:19, 45:21, 46:6,
46:8, 46:9, 46:11,
46:13, 46:14, 46:15,
46:17, 46:20, 47:5,
47:9, 47:13, 47:17,
47:18, 47:21, 48:9,
48:10, 48:12, 48:15,
48:20, 48:23, 49:3,
49:13, 49:17, 49:21,
49:24, 50:7, 50:12,
50:17, 50:21, 51:4,
51:13, 51:23, 52:20,
52:24, 52:25, 53:10,
53:12, 53:14, 53:16,
53:18, 53:21, 54:2,
54:8, 54:11, 54:12,
54:13, 54:14, 54:15,
54:17, 54:18, 54:20,
54:24, 55:3, 55:4,
55:6, 55:8, 55:9,
55:10, 55:14, 55:15,
55:18, 55:20, 55:22,
55:24, 56:5, 56:8,
56:9, 56:13, 56:14,
56:15, 56:17, 56:18,
56:19, 56:21, 56:23,

57:1, 57:2, 57:5,
57:7, 57:9, 57:12,
57:14, 57:16, 57:17,
57:19, 57:21, 57:22,
57:23, 58:2, 58:3,
58:9, 58:10, 58:12,
58:14, 58:16, 58:19,
58:20, 58:22, 59:2,
59:3, 59:5, 59:7,
59:9, 59:10, 59:17,
59:18, 59:22, 59:23,
59:25, 60:3, 60:5,
60:6, 60:7, 60:9,
60:10, 60:11, 60:12,
60:13, 60:16, 60:17,
61:4, 61:5, 61:7,
61:9, 61:12, 61:14,
61:16, 61:17, 61:19,
61:20, 61:21, 61:23,
62:2, 62:8, 62:12,
62:13, 62:18, 62:20,
62:23, 62:24, 62:25,
63:1, 63:5, 63:8,
63:10, 63:12, 63:16,
63:22, 63:25, 64:7,
64:12, 64:14, 64:17,
64:19, 64:21, 64:23,
65:4, 65:10, 65:13,
65:17, 65:20, 66:3,
66:10, 66:11, 66:16,
67:1, 67:8, 67:18,
67:23, 68:3, 68:7,
68:15, 68:21, 69:4,
69:5, 69:7, 69:8,
69:12, 69:13, 69:16,
69:18, 69:19, 69:20,
70:2, 70:3, 70:5,
70:6, 70:7, 70:8,
70:11, 70:20, 71:6,
71:9, 71:11, 71:12,
71:14, 71:15, 71:16,
71:17, 71:18, 71:19,
71:23, 72:3, 72:5,
72:9, 72:13, 72:17,
72:18, 73:1, 73:3,
73:5, 73:6, 73:8,
73:10, 73:11, 73:12,
73:14, 73:15, 73:19,
73:20, 73:22, 73:23,
74:3, 74:4, 74:5,
74:6, 74:8, 74:9,
74:11, 74:12, 74:13,
74:15, 74:16, 74:17,
74:19, 74:21, 74:24,
74:25, 75:4, 75:6,
75:10, 75:11, 75:13,
75:14, 75:16, 75:18,
75:20, 75:21, 75:23,
75:24, 75:25, 76:7,
76:8, 76:10, 76:11,
76:12, 76:13, 76:14,

76:16, 76:18, 76:20,
76:21, 76:22, 77:4,
77:7, 77:17, 77:18,
77:22, 77:23, 77:25,
78:2, 78:3, 78:6,
78:7, 78:8, 78:10,
78:12, 78:13, 78:15,
78:16, 78:18, 78:22,
78:23, 78:25, 79:1,
79:2, 79:3, 79:6,
79:8, 79:9, 79:11,
79:13, 79:14, 79:16,
79:17, 79:19, 79:20,
79:22, 79:24, 80:1,
80:2, 80:5, 80:6,
80:8, 80:11, 80:18,
80:22, 81:3, 81:7,
81:8, 81:10, 81:12,
81:13, 81:16, 81:17,
81:20, 81:23, 81:24,
81:25, 82:3, 82:11,
82:12, 82:16, 82:18,
82:24, 83:8, 83:16,
83:20, 84:2, 84:3,
84:5, 84:6, 84:8,
84:9, 84:12, 84:13,
84:16, 84:20, 85:1,
85:4, 85:7, 85:10,
85:12, 85:15, 85:22,
85:24, 85:25, 86:7,
86:8, 86:11, 86:12,
86:14, 86:18, 86:19,
87:1, 87:5, 87:12,
87:14, 87:16, 87:18,
87:20, 87:21, 87:23,
87:25, 88:3, 88:6,
88:9, 88:15, 88:22,
88:23, 89:4, 89:7,
89:8, 89:9, 89:13,
89:15, 89:23, 90:2,
90:10, 90:12, 90:17,
90:18, 90:21, 91:2,
91:6, 91:7, 91:10,
91:11, 91:13, 91:15,
91:18, 91:20, 91:25,
92:3, 92:13, 92:14,
92:15, 92:17, 92:25,
93:1, 93:2, 93:3,
93:6, 93:7, 93:8,
93:9, 93:12, 93:13,
93:17, 93:24, 94:1,
94:4, 94:9, 94:12,
94:13, 94:15, 94:16,
95:12, 95:13, 95:14,
95:15, 95:18, 95:21,
95:24, 95:25, 96:5,
96:8, 96:11, 96:12,
96:14, 96:16, 96:19,
96:23, 96:25, 97:3,
97:5, 97:6, 97:9,
97:15, 97:19, 97:21,

97:23, 97:25, 98:1,
98:3, 98:4, 98:7,
98:14, 98:15, 98:20,
98:22, 99:2, 99:4,
99:6, 99:7, 99:13,
99:15, 99:18, 99:25,
100:1, 100:3, 100:5,
100:7, 100:8,
100:11, 100:14,
100:21, 100:22,
100:25, 101:7,
101:9, 101:12,
101:14, 101:15,
101:18, 101:19,
101:22, 101:24,
101:25, 102:1,
102:2, 102:3, 102:5,
102:11, 102:15,
102:16, 102:18,
102:19, 103:1,
103:2, 103:3, 103:6,
103:9, 103:17,
103:20, 104:3,
104:8, 104:13,
104:18, 104:20,
104:21, 104:22,
105:7, 105:8,
105:12, 105:16,
105:20, 105:21,
105:24, 105:25,
106:2, 106:5, 106:6,
106:7, 106:8,
106:10, 106:11,
106:15, 106:23,
106:24, 107:4,
107:9, 107:12,
107:15, 107:16,
107:17, 107:19,
107:22, 108:1,
108:7, 108:8,
108:10, 108:11,
108:15, 108:17,
108:19, 108:21,
108:22, 108:24,
109:2, 109:4, 109:8,
109:12, 109:15,
109:19, 109:20,
109:25, 110:1,
110:2, 110:3, 110:5,
110:9, 110:11,
110:12, 110:15,
110:17, 110:19,
110:21, 110:22,
110:24, 111:3,
111:4, 111:8, 111:9,
111:11, 111:12,
111:15, 111:17,
111:18, 111:21,
111:24, 112:2,
112:5, 112:6, 112:8,
112:10, 112:14,

112:15, 113:11,
113:12, 113:14,
113:15, 113:17,
113:21, 113:22,
114:2, 114:3, 114:8,
114:9, 114:11,
114:15, 115:5,
115:8, 115:10,
115:16, 115:25,
116:1, 116:3, 116:4,
116:8, 116:10,
116:12, 116:14,
116:19, 116:21,
116:25, 117:3,
117:7, 117:10,
117:20, 117:23,
118:4, 118:8,
118:12, 119:2,
119:16, 120:8,
120:14, 120:20,
120:23, 121:2,
121:8, 121:16,
122:3, 122:6,
122:14, 122:17,
122:23, 122:24,
123:1, 123:10,
123:12, 123:15,
123:17, 123:18,
123:21, 123:25,
124:6, 124:10,
124:18, 124:22,
124:24, 125:1,
125:6, 125:11,
125:15, 125:21,
126:7, 126:20,
127:7, 127:18,
128:25, 130:2,
130:4, 130:8,
130:15, 130:22,
131:1, 131:25,
132:10, 132:13,
132:16, 132:19,
132:23, 133:9,
133:13, 133:17,
133:23, 134:1,
134:5, 134:7,
134:11, 134:12,
134:21, 134:24,
135:5, 135:11,
135:15, 135:21,
135:25, 136:4,
136:6, 136:7,
136:11, 136:17,
137:6, 137:19,
137:21, 137:24,
138:2, 138:9,
138:25, 139:2,
139:6, 139:11,
139:14, 139:19,
139:22, 139:24,
139:25, 140:6,

140:7, 140:8,
140:10, 140:11,
140:14, 140:16,
140:19, 140:21,
140:25, 141:2,
141:3, 141:6, 141:7,
141:10, 141:11,
141:17, 141:20,
141:21, 141:22,
141:24, 142:6,
142:9, 142:11,
142:13, 142:16,
142:18, 142:21,
142:24, 142:25,
143:15, 143:17,
143:18, 144:4,
144:6, 144:7,
144:10, 144:11,
144:12, 144:14,
144:16, 144:21,
144:24, 145:4,
145:6, 145:8,
145:10, 145:14,
145:16, 145:19,
145:20, 145:25,
146:2, 146:11
**theater** [2] - 23:24,
24:4
**they've** [9] - 4:6,
21:23, 22:16, 23:6,
28:23, 33:19, 66:12,
96:1, 138:16
**thinking** [3] - 98:12,
130:12, 142:4
**third** [2] - 144:24,
146:2
**third-grade** [1] -
144:24
**Thomas** [1] - 1:18
**thomas** [1] - 1:20
**thoughts** [1] - 16:12
**three** [8] - 24:13,
24:18, 45:24, 46:12,
58:21, 74:19, 81:18,
101:4
**throughout** [2] - 71:2,
94:19
**Thursday** [11] - 24:10,
24:15, 24:21, 24:22,
24:23, 25:6, 25:12,
26:3, 90:23, 91:3,
91:4
**tickets** [2] - 23:24,
24:4
**timing** [2] - 106:13,
106:14
**today** [7] - 6:2, 8:23,
32:13, 52:2, 54:18,
84:23, 107:1
**took** [3] - 82:8, 97:15,

129:10
**top** [2] - 85:17, 102:10
**topic** [1] - 27:1
**topics** [1] - 32:7
**total** [1] - 21:9
**totally** [3] - 80:21,
100:15, 126:22
**touched** [1] - 119:17
**towards** [3] - 62:5,
77:8, 100:20
**track** [1] - 99:11
**transactional** [1] -
35:15
**transcript** [2] - 147:4,
147:6
**TRANSCRIPT** [1] - 1:8
**transportation** [1] -
25:3
**travel** [1] - 5:13
**treat** [2] - 33:25, 34:5
**treating** [1] - 33:23
**trespass** [3] - 121:19,
125:18, 127:15
**trial** [4] - 68:5, 68:18,
94:19, 146:22
**TRIAL** [2] - 1:4, 1:8
**tried** [1] - 63:25
**trip** [1] - 68:25
**trouble** [1] - 123:6
**true** [5] - 50:13,
130:21, 135:25,
147:4, 147:5
**truly** [1] - 38:12
**Trump** [3] - 142:14,
144:13
**try** [10] - 88:22,
115:15, 124:4,
127:2, 134:5,
135:14, 140:23,
143:25, 144:1,
146:12
**trying** [16] - 5:6, 14:7,
71:4, 78:3, 90:13,
102:9, 121:22,
123:2, 123:12,
124:12, 125:7,
126:15, 131:5,
134:9, 139:1
**Tupelo** [1] - 1:21
**turn** [7] - 29:21, 33:9,
39:12, 53:24, 92:7,
92:17, 121:6
**turning** [1] - 22:2
**twice** [1] - 30:7
**two** [27] - 8:3, 21:4,
22:7, 22:8, 30:8,
30:14, 37:22, 46:12,
47:22, 58:20, 60:22,
62:9, 68:23, 69:18,
69:22, 83:5, 90:24,

103:24, 106:16,
110:2, 112:2,
112:18, 114:6,
125:16, 125:25,
140:25, 146:13
**two-step** [1] - 103:24
**type** [4] - 46:18,
110:20, 115:4,
115:23
**types** [1] - 140:25

## U

**U.S** [1] - 1:12
**uncertain** [1] - 90:15
**uncle** [2] - 111:24,
112:3
**under** [1] - 71:5
**understood** [6] - 4:12,
37:2, 42:5, 70:2,
70:5, 103:9
**undisputed** [1] -
132:18
**unequivocally** [1] -
21:6
**unfair** [2] - 21:12,
28:15
**unhappy** [1] - 6:4
**UNITED** [3] - 1:1, 1:2,
1:9
**United** [3] - 2:22, 3:3,
3:8
**University** [1] - 99:5
**university** [3] - 16:24,
17:4, 91:1
**unjustified** [2] - 37:21,
112:18
**unless** [5] - 5:23, 6:7,
29:10, 62:15, 94:20,
129:13, 137:25
**unpack** [1] - 145:15
**unpaid** [1] - 40:3
**unreasonable** [1] -
28:11
**unrelated** [1] - 144:17
**unwelcome** [1] -
132:12
**unwilling** [1] - 122:21
**up** [75] - 4:13, 5:5,
5:15, 5:17, 6:6, 6:9,
7:11, 7:15, 17:12,
19:13, 20:21, 21:18,
22:4, 22:19, 23:12,
23:13, 23:22, 23:24,
24:1, 25:22, 26:13,
29:18, 29:19, 29:24,
33:8, 33:11, 34:6,
39:10, 39:11, 39:16,
45:13, 46:15, 46:18,
48:17, 49:6, 51:14,

53:21, 53:23, 54:2,
55:11, 55:24, 56:5,
71:2, 71:19, 72:9,
72:10, 72:16, 80:12,
83:14, 85:15, 85:22,
90:23, 92:3, 92:4,
92:6, 92:18, 94:4,
94:6, 97:3, 100:10,
100:18, 107:22,
108:1, 109:12,
109:15, 119:9,
123:22, 138:11,
139:19, 139:20,
139:23, 144:1,
145:2, 145:15
**upset** [1] - 65:3
**Upstate** [1] - 90:25

## V

**VA** [1] - 2:11
**vacation** [13] - 23:20,
23:23, 61:7, 61:9,
63:18, 63:21, 64:4,
64:10, 64:18, 64:25,
65:7, 69:10, 83:10
**vague** [1] - 144:18
**varied** [2] - 110:22,
110:24
**variety** [1] - 88:13
**various** [2] - 42:22,
129:19
**venue** [1] - 82:4
**verbalize** [1] - 73:21
**verdict** [5] - 31:9,
31:10, 79:17, 79:18,
89:1
**verdicts** [1] - 143:22
**view** [15] - 27:19,
28:25, 34:7, 42:7,
42:8, 48:19, 50:15,
50:17, 52:17, 96:3,
114:15, 118:21,
135:19, 143:10
**views** [51] - 13:17,
13:18, 13:21, 13:24,
14:7, 14:12, 19:8,
20:2, 20:3, 20:5,
21:11, 28:7, 29:2,
38:6, 42:7, 46:24,
47:1, 47:3, 59:1,
59:4, 59:5, 59:11,
59:12, 59:15, 60:23,
61:2, 62:3, 67:21,
77:2, 77:9, 77:10,
77:15, 88:15, 88:16,
103:19, 113:3,
113:5, 113:7, 113:8,
114:13, 115:25,
116:4, 129:25,

137:14, 142:22,
143:1, 143:3,
143:10, 143:13,
143:20
**violate** [1] - 120:4
**violated** [1] - 128:20
**violation** [2] - 127:15,
127:16
**violence** [3] - 40:6,
40:21, 40:23
**Virginia** [1] - 61:13
**vision** [1] - 20:23
**visited** [1] - 9:4
**vocal** [1] - 41:21
**voir** [1] - 139:10
**volunteer** [11] - 41:17,
41:19, 42:2, 42:5,
42:15, 45:23, 46:6,
47:4, 48:21, 48:22,
48:25
**vote** [10] - 42:23, 43:2,
43:6, 43:14, 43:23,
44:9, 44:13, 45:14,
45:25, 46:1
**voter** [3] - 41:19,
42:16, 42:20
**voting** [1] - 42:20
**vs** [2] - 1:4, 88:5

## W

**Wade** [1] - 88:5
**wait** [7] - 6:4, 6:9,
20:14, 46:16, 46:17,
96:12, 121:6
**waiting** [3] - 29:15,
119:8, 121:11
**walk** [2] - 70:23, 118:1
**walked** [1] - 70:21
**walking** [4] - 114:19,
117:2, 117:3, 117:11
**WALSH** [12] - 2:8,
3:22, 26:20, 26:22,
27:5, 27:7, 27:12,
28:9, 28:18, 28:22,
29:5, 29:7
**Walsh** [2] - 3:23,
26:24
**wants** [3] - 34:12,
71:19, 124:21
**Washington** [11] - 1:5,
1:13, 1:16, 1:25, 2:4,
2:23, 6:15, 113:18,
113:24, 114:18,
147:11
**waste** [1] - 131:18
**wasting** [2] - 133:13,
133:15
**ways** [4] - 119:24,
120:1, 126:3, 127:25

**wear** [5] - 62:5, 62:15, 66:5, 66:13, 83:22

**wearing** [2] - 62:7, 66:12

**Wednesday** [5] - 4:18, 63:11, 92:23, 106:4, 143:19

**week** [19] - 21:22, 32:13, 63:4, 63:9, 63:13, 68:12, 68:14, 84:23, 85:6, 90:22, 107:1, 107:11, 108:22, 144:25, 145:4, 145:12, 145:13, 145:15

**weekend** [5] - 4:10, 24:9, 32:22, 85:6, 107:11

**weekends** [2] - 45:24, 46:12

**weeks** [2] - 23:24, 146:13

**weight** [3] - 33:22, 34:1, 34:3

**West** [1] - 61:13

**whatnot** [1] - 114:17

**whipping** [1] - 146:8

**whole** [5] - 44:20, 63:3, 108:22, 129:7, 145:3

**wife** [3] - 23:21, 23:23, 25:22

**William** [2] - 3:4, 3:21

**WILLIAM** [2] - 1:6, 2:8

**willing** [4] - 46:25, 64:15, 64:16, 68:24

**Wilmer** [1] - 101:8

**WilmerHale** [1] - 101:1

**wind** [2] - 20:21, 119:9

**window** [1] - 145:1

**wish** [1] - 89:10

**witness** [6] - 33:20, 33:24, 68:2, 103:7, 109:7, 138:7

**woman** [1] - 126:22

**woman's** [3] - 38:9, 38:10, 51:25

**women** [8] - 59:6, 87:13, 119:25, 121:12, 124:4, 124:21, 126:4, 126:10

**women's** [7] - 78:4, 81:1, 88:4, 105:13, 105:16, 113:24, 144:13

**word** [3] - 120:18, 124:11, 136:21

**worded** [1] - 120:17

**words** [6] - 34:6, 38:16, 51:2, 52:6, 89:18, 90:7

**worker** [1] - 47:19

**works** [4] - 10:12, 35:10, 57:9, 140:19

**workwise** [1] - 104:14

**world** [1] - 104:2

**worries** [1] - 26:25

**write** [1] - 89:8

**writing** [1] - 134:13

**written** [2] - 32:19, 85:3

**wrote** [5] - 61:21, 72:21, 88:23, 98:23, 142:1

## Y

**year** [10] - 40:10, 40:13, 45:23, 45:24, 46:10, 46:11, 46:14, 58:17, 58:20, 145:3

**yearly** [2] - 58:16, 58:19

**years** [19] - 12:1, 13:15, 17:22, 30:23, 31:1, 31:3, 31:16, 46:12, 58:21, 73:9, 76:15, 76:19, 76:20, 78:19, 80:16, 82:21, 98:10

**yell** [1] - 117:10

**York** [9] - 23:24, 24:4, 24:17, 25:3, 25:16, 90:25, 101:6, 110:7, 110:9

**you-all** [4] - 27:22, 138:11, 138:18, 139:3

**yourself** [14] - 3:5, 7:12, 7:16, 23:13, 29:23, 85:16, 101:8, 102:11, 104:24, 105:1, 107:23, 108:2, 109:13, 120:2