1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3      UNITED STATES OF AMERICA,        ) Criminal Action
                                        ) No. 1:22-CR-096
                           Plaintiff,   )
4                                       ) **JURY TRIAL**
       vs.                              )
5                                       ) Washington, D.C.
       LAUREN HANDY, JOHN HINSHAW,      )
6      HEATHER IDONI, WILLIAM           ) **August 21, 2023**
       GOODMAN, HERB GERAGHTY,          ) **Time:  2:17 P.M.**
7                                       ) **AFTERNOON SESSION**
                           Defendants.  )
8

              **TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION**
9              BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                      UNITED STATES DISTRICT JUDGE
10

                          A P P E A R A N C E S
11

       For Plaintiff:        JOHN CRABB, JR.
12                           U.S. Attorney's Office
                             601 D Street NW
13                           Washington, DC 20530

14                           SANJAY HARIVADAN PATEL
                             DOJ-CRT
15                           Civil Rights Division, Criminal Section
                             950 Pennsylvania Avenue NW
16                           Washington, DC 20004

17     For Defendant         MARTIN A. CANNON
       LAUREN HANDY:         Thomas More Society
18                           16983 370th Street
                             Carson, IA 51525
19
                             STEPHEN M. CRAMPTON
20                           Thomas More Society
                             P.O. Box 4506
21                           Tupelo, MS 38803

22                           DENNIS E. BOYLE
                             BLERINA JASARI
23                           Boyle & Jasari, LLP
                             1050 Connecticut Avenue
24                           Suite 500
                             Washington, DC 20036

25

```
 1                     A P P E A R A N C E S - (Cont.)

 2     For Defendant       ALFRED GUILLAUME, III
       JOHN HINSHAW:        Law Offices of Alfred Guillaume, III, LLC
 3                          1350 Connecticut Avenue NW
                            Suite 308
 4                          Washington, DC 20036

 5     For Defendant       ROBERT J. DUNN
       HEATHER IDONI:      Robert J. Dunn, PC
 6                          1413 Center Avenue
                            Bay City, MI 48708
 7
       For Defendant       HOWARD J. WALSH, III
 8     WILLIAM GOODMAN:     3712 Cardiff Court
                            Chevy Chase, MD 20815
 9
       For Defendant       JOHN C. KIYONAGA
10     HERB GERAGHTY:       600 Cameron Street
                            Alexandria, VA 22314
11

12

13

14

15

16

17

18

19
       Stenographic Court Reporter:
20
                            Tamara M. Sefranek, RMR, CRR, CRC
21                          Official Court Reporter
                            United States Courthouse, Room 6714
22                          333 Constitution Avenue, NW
                            Washington, DC  20001
23                          202-354-3246

24

25
```

```
 1                    P R O C E E D I N G S

 2              (The following proceedings were had out of the

 3   presence and hearing of the jury:)

 4              THE COURT:  All right.  This is the way we're going

 5   to proceed.  We're going to have the government tell me whether

 6   you're resting or whatever you're doing, and I'm going to

 7   excuse the jury for the rest of the day.  I'm going to have us

 8   discuss the motion, and I need more time to be able to make a

 9   ruling on the video.  There's been confusion about the video

10   and, frankly, I focused on a different one.

11              So you filed it at 2:00 a.m., and I didn't see it

12   until 6:00 a.m.  So I haven't had enough time to really go

13   through it and make a good informed decision, which I will make

14   this afternoon and put it in writing, and I have everybody's

15   viewpoints on it.

16              But rather than rush the decision, I'd prefer to be

17   able to have the extra time.  So we'll bring them out.

18              Is there anything additional, Mr. Patel, that you're

19   doing?

20              MR. PATEL:  Your Honor, it's come to the Court's

21   [sic] attention that there's another security issue involving

22   people who are sitting in the gallery observing the trial.

23   We've learned that the organization PAAU, which Defendant Handy

24   belongs to -- which is also the organization that was handing

25   out flyers during jury selection -- is live tweeting from the
```

1     courtroom.  And they have --

2              THE COURT:  Doing what now?

3              MR. PATEL:  Live tweeting, meaning they're submitting

4     real-time social media posts.

5              THE COURT:  Oh, yes, yes, yes.  They're not supposed

6     to do that,

7              MR. PATEL:  What's most concerning is that on

8     August 17th, which was our last day of trial last week, they

9     indicated that the government is -- one of the government's

10    witnesses will be testifying next.  They used Ms. Smith, who

11    testified under the pseudonym Tina Smith; they tweeted her real

12    first name followed by her pseudonym last name in quotes.

13             THE COURT:  Okay.  So have we figured out who this

14    is?

15             MR. PATEL:  So it's being tweeted from the

16    organizational account PAAU.  I certainly have my suspicions as

17    to who those individuals are seated in the courtroom, but I

18    cannot tell you with certainty which one of those individuals

19    actually tweeted this information.

20             THE COURT:  All right.  Well, we'll refer it to the

21    Marshals Service in terms of their doing a full investigation

22    relating to it.  I've indicated to you all -- there's signs all

23    over the place -- about not passing on information.  So we'll

24    escalate it.  We've got marshals here, but we'll escalate it

25    up.  Okay?  So get the supervisors, get the material in there,

1    and have them do an investigation.  You have FBI people

2    involved.  You can ask them to do an investigation of where

3    this comes from, who it is.

4         MR. PATEL:  Yes, Your Honor.

5         THE COURT:  I've admonished people.  You're just --

6    you're, basically, deciding you don't want to have a fair

7    trial.  You don't respect the rule of law or the judicial

8    proceedings, instead trying to either intimidate or do

9    something else.  Not good.

10        So whatever the information is can be passed on to

11   the Marshals Service.  You don't have to do it this instant,

12   but you can.  The FBI, if they can provide additional

13   resources, they can look into it as well.  I just want to make

14   sure there's no issue in terms of either privacy or personal

15   safety.

16        Okay.  So apart from that, when the jury comes back,

17   are you resting?

18        MR. CRABB:  Yes, Your Honor.

19        THE COURT:  No additional exhibits or anything?

20        MR. CRABB:  No, Your Honor.  Thank you for the

21   opportunity of doing an inventory.  We're good.

22        THE COURT:  All right.  Then we'll -- I'll excuse

23   them to come back tomorrow morning.  I am going to go through a

24   quick -- the motions that you want; but as I said, quick.

25        What I'd like to also do is the review of the

1    constitutional rights that everybody has to make sure they're

2    reminded individually of them.

3           I want to clarify to make sure that everybody is

4    talking -- all those whose clients may or may not take the

5    stand, but may take it, if they're going to rely on the video,

6    that I have the exact video that we're talking about; everybody

7    is talking about the same one that they looked at and relied

8    on.

9           And then I haven't made a final decision, but will,

10    and I'll get it out as soon as we break from here.  I'll finish

11    reviewing it.  But as I said, I had focused on a different one.

12    I didn't realize that that was the one that we were talking

13    about.

14           So I would want to also know whether -- obviously,

15    they'll testify if I let it in.  If I don't let it in, whether

16    they're still going to testify.  In part, because if that

17    obviates anybody testifying, then we would move to final

18    instructions, which I would want to know by the end of today so

19    that we could tell the jury they didn't have to come in

20    because we'd have to discuss the instructions.

21           I'm just trying to plan ahead in terms of doing

22    things and what we would talk about.  So I would bring them in,

23    and you can rest, and then we'll send them home until 9:00

24    tomorrow, and we'll proceed with the proceedings here.

25           I'm just going to say that we have some legal matters

1    that are taking me some time, and rather than having them wait,

2    we're going to excuse them and leave it at that.  We can bring

3    them in.

4              (The following proceedings were had in the presence

5    and hearing of the jury:)

6              THE COURT:  Good afternoon, members of the jury.  So

7    at this point, if the government would indicate whether they're

8    resting their case.

9              MR. CRABB:  Good afternoon, Your Honor.  The

10   government rests.

11             THE COURT:  All right.  At this point, as you know,

12   the defense is not required to put on a defense at all, to

13   testify, present any evidence, or they can choose to do so.

14             We have a number of legal issues to talk about.  So

15   what I'm going to do is I'm going to excuse you for this

16   afternoon instead of leaving you in the back there while we're

17   trying to work things out and make sure everything moves

18   smoothly.  And you can go do whatever you want.  Just don't

19   talk about the case, don't let anybody talk to you about it,

20   and be ready in the jury room by 9:00, and we'll pick up at

21   that point.  Okay?

22             All right.  So have a good afternoon.  Take care.

23             (The following proceedings were had out of the

24   presence and hearing of the jury:)

25             THE COURT:  All right.  So the first order of

1    business, I think, is to give me whatever argument -- did you

2    want to say something, sir?

3              MR. BOYLE:  No, Your Honor.  I'm sorry.  My knee was

4    bothering me a little bit.  I apologize.

5              THE COURT:  That's fine.  I thought you stood -- if

6    you wanted to say anything.

7              I'll give you a short -- if you want to -- obviously,

8    each of you want to indicate your motion so you preserve the

9    record, and that's fine.  If you want to do four minutes or

10   five minutes of whatever your principal issue is, fine.  I

11   wouldn't make it any longer.

12             You're going to have more of an opportunity.  I'm

13   taking it under advisement.  So you've made your record.  And

14   depending on what the jury's verdict is, you'll have ample

15   opportunity to file pleadings, et cetera, and rely on what's

16   there or not there in the transcripts.  Okay?

17             MR. DUNN:  Judge, I have a question.  Did you want

18   the complete Rule 29 motion to be in writing?

19             THE COURT:  Not at this point.  We're not doing this

20   right now.  Okay?  All I'm doing is asking you to -- the motion

21   would be that you're just doing one quick one right now.

22             MR. DUNN:  I know.

23             THE COURT:  Okay.  And at a later point, after we get

24   the jury verdict -- so you see whether there's an issue to be

25   filed -- you would then file something.  And, yes, you would do

1   it in writing.  I'll give you enough time to get ahold of the

2   transcript if you want the transcript or whatever.  And it

3   would be based on the government's evidence.

4          So you're not losing anything in terms of doing it

5   this way.  And then we just have a better record for everybody.

6   So if each of you would do that, then I'll make my inquiry of

7   the defendants, and then I'll go back and work on the video.

8          Why don't we start with Mr. Cannon, if you're the

9   individual for Ms. Handy.

10          MR. CANNON:  Thank you, Your Honor.  I'm losing my

11   voice, and I haven't even talked much today.

12          At this point Lauren Handy moves to dismiss, and I'll

13   make just a rudimentary argument on that.

14          THE COURT:  Sure.

15          MR. CANNON:  Obviously, the FACE Act requires proof

16   that a person uses force, threat of force, or physical

17   obstruction to intentionally injure, intentionally

18   intimidate -- which means put a person in reasonable fear of

19   harm -- or intentionally interfere with a person's freedom of

20   movement.  And, of course, that is all predicated on the next

21   and very important element, which is that they do these things

22   intentionally because the person is seeking or providing

23   reproductive health services.

24          Of course, the Court is well aware of our issue on

25   that, but we really haven't addressed that element of the case

1    yet, at least from the defense standpoint.

2           But even as it sits, I think the government's

3    evidence has been, obviously, evidence of a bit of a ruckus.

4    But as far as the elements of the case goes, there are so many

5    ways to go into a clinic and do things without violating FACE.

6    The evidence of an actual FACE violation is utterly

7    underwhelming, and I think it's fallen flat.

8           THE COURT:  Okay.  Let me do it in the usual order.

9    Mr. Guillaume.

10          MR. GUILLAUME:  Thank you, Your Honor.  Your Honor,

11   I'll move to join Mr. Cannon's motion to dismiss without

12   offering any further argument, and also make a motion pursuant

13   to Rule 29 for motion of judgment of acquittal.

14          I won't make any argument on that other than to say

15   that I don't believe that, even at this stage in the light most

16   favorable to the government -- they haven't met their prima

17   facie case or provided the necessary elements for a jury to

18   convict on any of the counts that are charged.

19          But I won't make any additional argument, Your Honor.

20   Thank you.

21          THE COURT:  All right.  Mr. Dunn.

22          MR. DUNN:  Yes, Your Honor.  I would make a motion to

23   dismiss pursuant to Rule 29 of the Federal Rules of Criminal

24   Procedure on, basically, two grounds.

25          The first ground is that there's been no evidence

1    here so far that Heather Idoni conspired -- and going exactly

2    by the language of the statute -- to injure, oppress, threaten,

3    or intimidate any person in the state, territory, commonwealth,

4    et cetera, et cetera.  There hasn't been any evidence of that.

5              While we're on the subject of the verbs, however, I

6    noticed in your proposed instruction, you had put hinder in

7    there.  We can deal with that later, but hinder is not in that

8    statute.

9              The second ground for Rule 29 is little bit more

10   quirky.  The language of the conspiracy against rights statute

11   mentions victims -- potential victims three times, and they're

12   all male, male terms, all three times.  The word person is in

13   there once, and we have two male pronouns in the first

14   paragraph, and another male pronoun in the second paragraph.

15             And my argument is the rule of lenity, which began

16   with the *Blackstone Commentaries* in England.  The U.S. Supreme

17   Court adopted it in 1820 in the famous case of *U.S. v.*

18   *Wiltberger* -- and I promise I won't make any remark about that

19   name, Judge -- a decision written by Chief Justice John

20   Marshall; and reaffirmed by the Supreme Court, the rule of

21   lenity, in 1990 in the case of *U.S. v. Marshall.*

22             And the rule of lenity simply states that when

23   there's an ambiguity in the statute, there can't seem to be a

24   way to resolve it otherwise, that the interpretation most

25   favorable to the defendant must be adopted.  My argument is, if

1    the male pronoun is in there three times, it can't be just a

2    typographical error.

3              THE COURT:  I'm sorry.  Where are the male pronouns

4    that you're talking about?

5              MR. DUNN:  His and him in the first paragraph of the

6    conspiracy against rights statute when they're referring to the

7    victim, the person whose rights were violated as the object of

8    the conspiracy.

9              With respect to Count 2 of the indictment, I'm not

10   making a Rule 29 motion with respect to the six-month

11   misdemeanor aspect of it, the mere oppression -- oppressing of

12   somebody's attempt to access the clinic.  It's only when we get

13   to the language regarding violence and force, the same point

14   Mr. Cannon raised.  I don't believe there's -- that would -- if

15   the Court found and the jury so found, that would elevate it to

16   a one-year misdemeanor.

17             And with respect to Ms. Idoni, I don't believe

18   there's been any evidence that she has used force or violence

19   or attempted to use force or violence against anybody.

20             THE COURT:  All right.  Mr. Walsh.

21             MR. WALSH:  Thank you, Your Honor.  I'd also move for

22   a motion of acquittal pursuant to Rule 29.  On Count 1, the

23   evidence against Mr. Goodman is insufficient to sustain a

24   conviction that Mr. Goodman violated --

25             THE COURT:  You need to speak into the microphone.

1          MR. WALSH:  I'm sorry.  I sound like I can hear

2     myself.  Start over?

3          THE COURT:  No.  That's okay.  It was a little harder

4     to do it.

5          MR. WALSH:  Move for a judgment of acquittal based on

6     the fact that no evidence was offered from which it can be

7     determined beyond a reasonable doubt that Mr. Goodman conspired

8     to injure, oppress, threaten, or intimidate any person in the

9     district in the free exercise or enjoyment --

10          THE COURT:  You're going way too fast.  Slow down.

11          MR. WALSH:  Sorry about that.  One more time.

12     There's no evidence -- no evidence was offered from which it

13     could be determined beyond a reasonable doubt that Mr. Goodman

14     conspired to injure, oppress, threaten, or intimidate any

15     person in the district in the free exercise or enjoyment of any

16     right or privilege secured by him by the constitution or laws

17     of the United States or because of his having so exercised

18     same.

19          I also move for judgment of acquittal on Count 2.

20     The evidence against Mr. Goodman is insufficient to sustain a

21     conviction that Mr. Goodman violated 18 U.S.C. sections

22     248(a)(1) and (2); otherwise known as FACE.

23          Specifically, a violation of FACE requires evidence

24     that, by force or threat of force or by physical obstruction,

25     that Mr. Goodman intentionally injured, intimidated or

1    interfered with or attempted to --

2              THE COURT:  You're going way, way too fast.  I mean,

3    she's a very good court reporter, but she's having trouble.

4    Slow down.  It doesn't make the whole proceeding go faster if

5    you go faster.

6              MR. WALSH:  Let me start over.  The evidence does not

7    demonstrate that Mr. Goodman, by force or threat of force or by

8    physical obstruction, intentionally injured, intimidated, or

9    interfered with or attempted to injure, intimidate, or

10   interfere with any person because that person is or has been

11   or, in order to intimidate such person or any other person or

12   any class of persons, from obtaining or providing reproductive

13   health services.  Thank you.

14             THE COURT:  Okay.  All right.  Mr. Kiyonaga.

15             MR. KIYONAGA:  Thank you, Your Honor.  Mr. Geraghty

16   moves to dismiss pursuant to Rule 29 because the government's

17   case fails to establish the elements requisite of either of the

18   statutes under which he's charged.

19             THE COURT:  Okay.  So government, I'll give you an

20   opportunity to respond.

21             MR. PATEL:  Thank you, Your Honor.  Viewing the

22   evidence in the light most favorable to the government, this

23   Court should deny the defendants' collective Rule 29 motions.

24   I'll address each count in the indictment element by element

25   and how the evidence established that the government has

1        presented a prima facie case.

2               Before I start with the conspiracy statute,

3        18 U.S.C. 241, I'd like to quickly address an argument that was

4        raised by Mr. Dunn concerning the use of pronouns in the

5        statute.

6               Despite the fact that Section 241 is a Reconstruction

7        Era statute, there is no male pronoun used in the statute.  So

8        what he was referring to and how he may have inferentially been

9        trying to argue that it only applies to males and not females,

10       I think this Court can very easily dismiss that argument.

11              As to the first element of Section 241, that requires

12       that two or more persons reached an agreement to injure,

13       oppress, threaten, or intimidate the clinic's patients or

14       employees.  The government relies on a number of things, first

15       of which is the testimony of Caroline Davis.

16              She testified that, after she agreed to travel with

17       Defendant Idoni from Michigan to the District, the

18       co-conspirators had a pre-invasion meeting where the planned

19       blockade for the next day was discussed.  The group

20       collectively had strong anti-abortion beliefs and had planned

21       to blockade the clinic to prevent abortions from taking place

22       at the facility the following day.

23              The conspirators discussed the meaning of rescue and

24       how that means to block access to the clinic.  They had an

25       agreement to make a fake appointment to ensure access into the

1   clinic.  The conspirators agreed that the defendants from this

2   and the next trial would block the clinic doors while others

3   would legally protest.  And Caroline Davis' role was to counsel

4   women who pressed the 4th Floor button in the elevator.

5          The group discussed how some blockaders would use

6   locks and chains, and the group agreed that the blockaders

7   would risk arrest and give a signal to the others to leave the

8   premises if they did not want to be arrested.

9          The government further relies on communication

10  evidence that was presented at trial.  The Court saw text

11  messages between Defendant Handy and Geraghty that showed that

12  there was an agreement between them and others to --

13          THE COURT:  You also need to slow down.

14          MR. PATEL:  I'm sorry.

15          The text messages between Defendants Handy and

16  Geraghty showed that there was an agreement between them and

17  others to block clinic access and how the number of

18  participants who agreed to join kept growing in numbers.  There

19  were also social media posts discussing the number of people

20  joining from around the country and that Defendant Handy had

21  made housing arrangements for them.

22          That's just some of the evidence that would relate to

23  the first element of Section 241.

24          The second element would require a showing that the

25  defendants voluntarily and intentionally joined in the

1    agreement.  The evidence that established that this element has

2    been met by the government includes video and testimonial

3    evidence showing that each defendant's presence at the

4    pre-invasion meeting where the group met each person and each

5    of the participants who had agreed to join in the event; each

6    person, including the defendants, their agreement to play a

7    certain role in the blockade; each defendant's presence at the

8    agreed-upon location moments before the walkover to the clinic;

9    and each defendant's presence at the clinic moments before it

10   was scheduled to open.

11          Also before the walkover, there was a Facebook

12   picture that was taken of the group who were going to be

13   participating in this event showing that they were all smiling

14   while they were looking into the camera; clearly, showing that

15   there was an agreement for them to be there and participate in

16   this event.

17          And of course, lastly, each defendant's participation

18   in the forced entry is evidence that there was an agreement and

19   that each defendant voluntarily and intentionally joined that

20   agreement.

21          As to the final element, at the time the defendants

22   joined in the agreement, they intended to hinder, interfere

23   with, or prevent the clinic's patients' or employees' rights to

24   obtain reproductive health services.  The evidence that

25   establishes this element includes the testimonial evidence,

1   again from Caroline Davis, that the group had collectively held

2   strong anti-abortion --

3          THE COURT:  You need to slow down.

4          MR. PATEL:  I'm sorry.

5          That would be the testimonial evidence from Caroline

6   Davis, that the group had collectively held strong

7   anti-abortion beliefs, that the defendants and their

8   co-conspirators targeted the Washington Surgi-Clinic because it

9   provides abortion services, and that their aim was to prevent

10  women from obtaining and the clinic from providing abortions,

11  which is a statutorily defined type of reproductive health

12  service.

13         And to achieve that objective, these defendants

14  agreed to enter into the clinic without permission and block

15  the clinic doors; some using ropes, locks and chains, and all

16  of them using their bodies.

17         Lastly, the blockade was live streamed to an online

18  audience to encourage others to engage in extreme anti-abortion

19  activism.  The defendants' own words on the videos and in the

20  Facebook posts is further evidence of this.

21         Lastly, as Your Honor has found on the first day of

22  trial, the video footage of the blockade and the defendants'

23  and their co-conspirators' coordinated actions within the

24  clinic following the forced entry is further evidence of this

25  conspiracy against civil rights.

1          I'll move on to Count 2 now.  That would be

2     18 U.S.C. 248, the FACE Act.  I'd add before I discuss the

3     evidence as it relates to each element of the offense, that the

4     government charged this offense also with 18 U.S.C. Section 2,

5     that each defendant aided and abetted in the commission of the

6     FACE Act offense.

7          And the government also relies on the culpability

8     that attaches to each defendant under *Pinkerton* for their

9     participation in the conspiracy and the object of that

10    conspiracy actually being achieved.

11         So the first element of the FACE Act is that the

12    defendants used force or physical obstruction in this case.

13    The statute defines physical obstruction to mean rendering

14    entry or exit into a facility impossible, unreasonably

15    difficult, or hazardous.  There's ample element as to this --

16    ample evidence as to this element.

17         The defendants used force to enter the clinic.  This

18    is seen through the testimony of the clinic employees and the

19    video showing the melee when the clinic door was opened.

20    Defendant Smith, who pleaded guilty to a felony violation of

21    the FACE Act, was the biggest and strongest of this group.  He

22    was the first to push through the door and hold it open as the

23    other invaders, including these defendants, entered into the

24    clinic's waiting room.

25         As the video shows, several co-conspirators

1   physically pushed and shoved clinic employees who struggled to

2   keep the invaders out of the clinic's waiting room.

3          Next, the defendants used their bodies to physically

4   obstruct the clinic doors.  This is, again, seen through the

5   testimony of every government witness and the video footage

6   that shows the clinic doors being blocked by the defendants.

7          Because the defendants blocked the doors with their

8   bodies, the clinic staff was unable to open some of the doors,

9   patients were unable to enter or exit through those doors, the

10  staff was unable to open or pass through the waiting room

11  doors, the staff door was also blocked by Defendants Goodman

12  and Idoni, who refused to move even after being asked to by the

13  police.

14         As a result, for example, Ms. Ashley Jones, who

15  testified at trial, was forced to climb through a

16  receptionist's window, which is clearly hazardous.  And

17  Ms. Holler, though not a named victim in the indictment, was

18  forced to lay on the hallway floor experiencing labor pains for

19  a significant amount of time.

20         As to the second element of the FACE Act, which

21  requires that the defendants intentionally injured,

22  intimidated, or interfered with Patient A or the employees of

23  the Washington Surgi-Clinic, the statute defines intimidate as

24  apprehension of bodily injury; and interfere with to

25  restrict -- to mean restricting a person's freedom of movement.

1          This Court heard from Patient A, Ms. Ashley Jones.

2     She testified that the doors were blocked, and she was unable

3     to enter without any impediment.  This Court also heard from

4     Ms. Holler, who could not enter through the waiting room door

5     because those doors were blocked.

6          In fact, video from the hallway showed Defendant

7     Geraghty accosting Ms. Holler and her husband as they attempted

8     to enter through the waiting room door.  Ms. Holler was further

9     impeded as she lay on the ground and was accosted by Defendant

10    Goodman and a co-conspirator in the next trial, Jean Marshall.

11    Their physical presence impeded Ms. Holler from being able to

12    enter, resulting in her laying on the ground as her husband

13    begged these defendants to let her into the clinic.

14          THE COURT:  You need to slow down.

15          MR. PATEL:  I'm sorry.

16          Lastly, Your Honor, you heard from a nurse by the

17    name of Sara Compton who testified that she was injured during

18    the forced entry.  She suffered a badly sprained ankle, and

19    pictures of the bruisings [sic] that she sustained were

20    admitted into evidence.

21          As to the final element of the FACE Act, that

22    requires a showing that the defendants acted as they did

23    because Patient A sought or the clinic was providing

24    reproductive health services.  Here, the statute defines

25    reproductive health services to include pregnancy termination

1    services offered at the clinic.  The evidence is undisputed as

2    to this element.

3            The defendants blockaded the facility because it was

4    an abortion clinic.  The conspirators' statements, as seen

5    through the video footage and established through the testimony

6    of witnesses, including Caroline Davis, established that the

7    defendants blockaded the clinic because of the abortion care

8    that was offered there.

9            And beyond all of the evidence I just outlined, Your

10   Honor, this Court can further rely on the 404(b) evidence to

11   establish the requisite intent for Defendants Handy and

12   Goodman; their motivation for engaging in the prohibited

13   conduct charged in this case.  Those 404(b) incidents can be

14   used to establish proof of their plan and knowledge that their

15   conduct was criminal.

16           For those reasons, Your Honor, the government asks

17   that the defendants' motions be denied.

18           THE COURT:  All right.  So I don't think -- I'll take

19   under advisement each of these things.

20           MR. DUNN:  Your Honor, may I respond briefly just to

21   the statutory argument -- excuse me -- regarding the language

22   of the statute?

23           THE COURT:  Okay.

24           MR. DUNN:  Basically, Mr. Patel has argued that what

25   I said isn't true.  I'd like to read it into the record, if I

1       could.

2              Section 241, conspiracy against rights.  If two or

3       more persons conspire -- and I'll try not to go too fast -- to

4       injure, oppress, threaten, or intimidate any person -- now it's

5       got any person -- in any state, territory, commonwealth,

6       possession, or district in the free exercise or enjoyment of

7       any right or privilege secured to him by the constitutional

8       laws of the United States or because of his having so exercised

9       the same.

10             And then in the next paragraph, which doesn't apply

11      to this case, his free exercise enjoyment of any right.

12             Now, I would understand maybe the foolishness of this

13      argument if, indeed, the statute was drafted around the time of

14      the reconstruction.  It was not.  It says so, 1948.

15             THE COURT:  Let me see if I understand your argument,

16      Mr. Dunn.

17             MR. DUNN:  1948 is when the statute was enacted.

18             THE COURT:  So I understand your argument it somehow

19      does not apply to your client; is that your argument?  I just

20      want to understand, distilled, what it means.

21             MR. DUNN:  There hasn't been any evidence that my

22      client prevented any males from going anywhere.

23             THE COURT:  That's not what I asked you.  I'm asking

24      you about your argument about the pronouns.  Are you arguing

25      that the statute doesn't apply because your client is a female?

1          MR. DUNN:  Because there's three different male

2    pronouns.

3          THE COURT:  I'm just asking you what -- just tell me

4    what your argument is.  You've read the statute, as I

5    understand it.

6          So your argument is that it doesn't apply to your

7    client because she's a female; is that what you're saying?

8          MR. DUNN:  If we resolve the ambiguity through the

9    rule of lenity, then it can't be construed against the

10   defendants.

11         THE COURT:  All right.  I understand your argument.

12         MR. DUNN:  There may be other evidence to resolve the

13   ambiguity.

14         THE COURT:  Okay.  That's fine.  I just wanted to

15   make sure I knew what you were talking about.

16         Let me just indicate as to Ms. Handy, as to

17   Mr. Hinshaw, as to Ms. Idoni, Mr. Goodman, and Mr. Geraghty, I

18   am taking under advisement the motions that each of their

19   counsel has brought up in front of the Court.  And depending on

20   the verdict of the jury, we will -- there may need to be

21   further briefing, but you've preserved your arguments through

22   these motions, and I'll give you an opportunity to develop them

23   more fully.  It will be strictly, as it should be at this

24   point, just on what the government has presented and nothing

25   more.

1          Having done that, what I'd like to do is to have each

2     counsel and their client come up to the side here.  I want to

3     do the inquiry and just clarify, make sure we have the right

4     video in terms of my ruling.  It will take two minutes to do

5     this, but it's easier if you do it with counsel.

6          I don't want to -- some of the questions are directed

7     to her because it's her decision.

8          MR. CANNON:  Sure.  If I can mention something before

9     I forget?

10          THE COURT:  Sure.

11          MR. CANNON:  Earlier this morning before court

12     convened, I sent that YouTube link out to everybody.  I think I

13     have a witness in the hallway who should have shown up here

14     from Hawaii who actually would have the original YouTube video

15     on a flash drive or something.

16          THE COURT:  I just want to make sure I know which one

17     we're all discussing.  I'm assuming you would -- in order to

18     have it admitted, you would have this individual testify as to

19     its authenticity.

20          But can I assume it's the same one that I'm looking

21     at?

22          MR. CANNON:  I believe so.  If the one you're looking

23     at is the YouTube link I sent, I believe it starts out showing

24     a link of 6 minutes and 13 seconds.  It's got the --

25          THE COURT:  That's the one I'm looking at.

1          MR. CANNON:  -- editorial stuff in it from live

2     action.

3          THE COURT:  Okay.  Just wanted to make sure.

4          Ms. Handy, what I want to do is before the jury

5     ultimately -- which at this point will be sometime tomorrow --

6     rests in terms of your specific case, I want to make sure you

7     understand your constitutional right to testify, if that's what

8     you choose to do.  But if you choose not to do so -- you have a

9     constitutional right not to -- the jury will be told that.

10    They can't infer any guilt or hold it against you in any way.

11         So it is -- it's something that you make the decision

12    about.  I'm assuming you will have spoken to your lawyer; you

13    certainly should.  He should give you advice.  I want you to

14    understand that this is your decision.  Counsel makes legal

15    decisions about how to proceed, knows the procedures, what

16    things to raise, discuss with you the defense, but he's the

17    professional in terms of going forward with that.  So he

18    controls that.

19         This decision you control.  You, obviously, should

20    get advice, but it's your decision, ultimately, as to whether

21    you wish to either present evidence or in this case, it looks

22    like, testify.  So I want to make sure that you understand

23    that.

24         Do you understand that this is your right?  Your

25    lawyer gives you advice, but you have to decide.  It's your

1    responsibility then if it turns out later that you wished you

2    had or had not, that it's based on your own decision.

3              DEFENDANT HANDY:  I understand.  It was explained.

4    Thank you.

5              THE COURT:  Okay.  I don't know that you want to

6    indicate at this point.  You do need to let your attorney know

7    before he rests what your ultimate decision is.  Do you

8    understand that?

9              DEFENDANT HANDY:  I understand.

10             THE COURT:  Okay.  The other question that I have is,

11   assuming we've got the right video -- which it appears we do --

12   that I've been looking at, let us assume that we go through all

13   of this and for purposes of this discussion, there is a -- I

14   decide that you cannot use it.  Is your client likely to

15   testify?

16             I'm doing this more for figuring out whether -- if

17   nobody testifies, then we would move to jury instructions, and

18   the jury would be told something different.  I don't know

19   whether you've decided that or not.

20             MR. CANNON:  We have not yet decided that.  I think

21   it would depend a little on the details of your ruling,

22   particularly on whether, if you exclude the video, whether you

23   would allow her to talk about the contents of the video just in

24   testimony.

25             THE COURT:  Okay.  All right.  Then we'll leave that

1      issue for a later point.  I'll put something out that says

2      somewhere near the end of the day, after you've gotten -- had a

3      chance to look at it, what your decision is.  It's really more

4      a management issue in terms of what to do with the jury.

5              All right.  Thank you.

6              Then if we could have Mr. Guillaume and Mr. Hinshaw.

7      I'll do it in the order we've been having.  All right.

8              So, Mr. Hinshaw, I want you to understand your

9      constitutional rights.  You, obviously, have a right to

10     testify, present evidence if you want to, but you also have an

11     equal right not to testify.  It's not your burden.  It's the

12     government's burden.

13             If you decide you don't want to testify, the Court

14     would tell the jury they can't infer guilt or hold it against

15     you.  If you do testify, obviously, the evidence would be --

16     your evidence would be considered along with all the other

17     evidence.

18             I want to also make it clear that, obviously, you

19     should be speaking to your attorney about your decision, but it

20     is really your decision.  He makes legal decisions about how

21     procedures should be presented, et cetera, but this is

22     something that you totally control.

23             He can give you advice, but you assume the

24     responsibility in the decision-making on this.

25             Do you understand that?

```
1          DEFENDANT HINSHAW:  Yes, I do understand that.

2          THE COURT:  And so you don't have to give me an

3   answer now, but you should -- before he rests or decides to

4   call you, you need to let him know what decision you've

5   actually made.

6          DEFENDANT HINSHAW:  Yes.

7          THE COURT:  You understand?

8          DEFENDANT HINSHAW:  Yes, I do understand that.  We've

9   been having discussions.

10          THE COURT:  And has the -- is it the same video

11   you're talking about for your client that he has -- I'm not

12   going to ask him.  I'm asking you on his behalf -- that he

13   would testify about; is that correct?

14          MR. GUILLAUME:  Yes, Your Honor.  But as I stated

15   earlier, I think at this point it's unlikely for him to

16   testify.  So whether the Court admits the video or not would

17   not factor in our decision.

18          THE COURT:  Is that correct, Mr. Hinshaw?

19          DEFENDANT HINSHAW:  That's correct at present, yes.

20          THE COURT:  So you've decided, at least at this

21   point, you're not going to testify?

22          DEFENDANT HINSHAW:  At this point, yes.

23          THE COURT:  Okay.  You can change your mind at any

24   point before he rests.

25          DEFENDANT HINSHAW:  I understand that, too.
```

1          THE COURT:  All right.  You can go ahead and sit

2     down.

3          All right.  Mr. Dunn and Ms. Idoni.  Ms. Idoni, I

4     just want to make sure you individually understand your

5     constitutional right to testify if you choose to do so.  You

6     have an equal right not to have to testify, to present any

7     evidence.  It's the government's burden at all times; not

8     yours.

9          If you decide to testify, you'll get up on the stand

10    like everybody else that has testified.  It will be considered

11    along with all the other evidence.  If you decide not to

12    testify, then I'll tell the jury that they can't infer any

13    guilt, they can't hold it against you, and we've emphasized --

14    and I'll continue to emphasize -- that the burden is on the

15    government, not on you.

16         So do you understand your rights?

17         DEFENDANT IDONI:  Yes, Your Honor.

18         THE COURT:  Okay.  And then it is important to talk

19    to your counsel about it.  He's, obviously, in control of the

20    procedures and how to go about it in terms of trying the case,

21    but you control completely the issue of whether you wish to

22    testify or not.  That's your decision.

23         You can get advice, but it is your responsibility to

24    make that decision and not to be influenced one way or the

25    other or forced to do something.  I want you to make a free and

1    voluntary decision.

2             I don't know whether you've decided now.  If you

3    haven't, that's fine.  We can wait till later.  Have you made a

4    decision or not?  If you haven't, just tell me that.

5             MR. DUNN:  She has made the decision.  At this point

6    she intends to testify.  It would not be affected by the video.

7    Unless something else happens or she changes her mind, her

8    intention at this point is to testify.

9             THE COURT:  Okay.  Well, as I said, you can give

10   him -- just before you're called on, you can decide up to that

11   point whether you want to testify or not testify.  As I said,

12   it's totally your decision.  All right?

13            DEFENDANT IDONI:  Thank you.

14            THE COURT:  And are we still talking about the same

15   video, Mr. Dunn?  Are we still talking about -- on behalf of --

16   I assume you've talked to your client, and if she's relying on

17   the video, I want to make sure it's the same one.  Is she

18   relying on the video?

19            MR. DUNN:  No.

20            THE COURT:  She's not?

21            MR. DUNN:  She's not.

22            THE COURT:  Okay.  Then I don't have to worry about

23   you for the video.

24            Mr. Walsh and Mr. Goodman.

25            DEFENDANT GOODMAN:  Good afternoon.

1          THE COURT:  Good afternoon.  So I want to make sure

2     that you understand your rights.  You have a right to testify

3     if you want to, present evidence, but you don't have to.  It's

4     the government's burden at all times; never gets shifted.

5          And the -- if you decide not to testify, the Court

6     will tell the jury they can't infer any guilt or hold it

7     against you; we always emphasize the government's burden.

8          So do you understand your rights to testify or not to

9     testify?

10         DEFENDANT GOODMAN:  I understand, Your Honor.

11         THE COURT:  And then, importantly, this is a decision

12    that you make.  You should talk to your lawyer, of course, and

13    get his advice.  But it is a decision and responsibility that

14    you take on, and nobody should persuade you to do something you

15    don't want to do.

16         Have you made a decision?  If you haven't, you can

17    let me know later.  I wasn't sure whether you did or not.

18         MR. WALSH:  We haven't yet, Your Honor.

19         THE COURT:  So is he relying on the video or not?

20         MR. WALSH:  Yes, Your Honor.

21         THE COURT:  Is this the same video that we've been

22    talking about?

23         DEFENDANT GOODMAN:  Yes, Your Honor.

24         THE COURT:  Okay.  Just so I know what we're

25    discussing.

1              All right.  Mr. Kiyonaga with Mr. Geraghty.

2              MR. KIYONAGA:  Thank you, Your Honor.

3              THE COURT:  Mr. Geraghty, I want to make sure you

4      understand your rights.  You have a right not to testify.  It's

5      the government's burden to prove your case.  You don't have to

6      present any evidence or testify.

7              On the other hand, you do have a right to testify if

8      you choose to do so or present any evidence.  If you don't

9      testify, I'll tell the jury that it cannot infer any guilt or

10     hold it against you.  If you do testify, your evidence will be

11     considered along with all of the other evidence in the

12     particular case.

13             So do you understand your rights?

14             DEFENDANT GERAGHTY:  Yes, Your Honor.

15             THE COURT:  And it is your decision to make.  Your

16     counsel does all of the trial doings, et cetera, makes

17     decisions along those lines in conjunction with the defense you

18     have raised, but you control this decision.  And you can't be

19     forced to do so one way or the other.  This is totally your

20     decision, and it should be a voluntary decision.

21             Do you understand that?

22             DEFENDANT GERAGHTY:  Yes.

23             THE COURT:  Okay.  Have you made a decision?  If you

24     haven't, that's fine.  I'm just trying to get a sense of who

25     has made a decision and who hasn't.

1      Have you decided about testifying or are you still

2  considering it?

3      DEFENDANT GERAGHTY:  Yes, I would like to testify.

4      THE COURT:  Okay.  Are you relying on a video or

5  testifying otherwise?

6      DEFENDANT GERAGHTY:  Both.

7      THE COURT:  Is this the same video that we've been

8  talking about?

9      DEFENDANT GERAGHTY:  Yes.

10      THE COURT:  Okay.  I just want to make sure that I

11  know which one we're discussing.

12      Like you, like all of the others, before your counsel

13  gets up and either indicates you're going to testify or not or

14  rest, you need to let him know whatever your last decision is.

15  All right?

16      You can change your mind.  You're not being held to

17  this.  I just want to make sure you know what your rights are.

18      DEFENDANT GERAGHTY:  Sure.  Thank you, Your Honor.

19      THE COURT:  All right.  You can sit down.

20      I think that's it.  So I need to get back there,

21  finish looking again at this video and move forward.  Let me

22  look at one quick thing.  Okay.

23      (Deputy clerk tendering document to the Court.)

24      THE COURT:  Okay.  I see what may have happened.  We

25  have an overflow courtroom, and that's probably not being

1    monitored as well as it might be.

2           Okay.  So I will let you -- we'll docket my order.

3    I'll send you an email to get your attention that it's out

4    there.  I'm going back and finishing it off.  I need to take a

5    careful look at the video so I know what's in it without doing

6    it quickly.

7           Mr. Dunn, do you -- does it work to email it to you,

8    my order?  I want to make sure that you get it.

9           MR. DUNN:  If I can just get an email sent to me,

10   I'll get it, Judge.

11          THE COURT:  Besides docketing it for your client, I

12   will email it to you.

13          Anything else from the government?

14          MR. CRABB:  No, Your Honor.

15          THE COURT:  All right.  Anything from any counsel?

16          MR. CANNON:  No, Judge.

17          MR. DUNN:  No.

18          THE COURT:  Okay.  Then let me excuse you at this

19   time.  I'll see you back tomorrow.  Why don't you aim for being

20   in the courtroom at quarter of, so we get all -- quarter of

21   9:00, get all lined up and figure out where everybody is at

22   that point.  The parties are excused.

23          (The trial adjourned at 3:05 p.m.)

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, TAMARA M. SEFRANEK, do hereby certify that the

4     above and foregoing constitutes a true and accurate transcript

5     of my stenographic notes and is a full, true, and complete

6     transcript of the proceedings to the best of my ability.

7              Dated this 21st day of August, 2023.

8

9                         /s/ Tamara M. Sefranek_____
                          Tamara M. Sefranek, RMR, CRR, CRC
10                        Official Court Reporter
                          Room 6714
11                        333 Constitution Avenue, N.W.
                          Washington, D.C.  20001
12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 36:9

## 1

**1** [1] - 12:22
**1050** [1] - 1:23
**13** [1] - 25:24
**1350** [1] - 2:3
**1413** [1] - 2:6
**16983** [1] - 1:18
**17th** [1] - 4:8
**18** [4] - 13:21, 15:3, 19:2, 19:4
**1820** [1] - 11:17
**1948** [2] - 23:14, 23:17
**1990** [1] - 11:21
**1:22-CR-096** [1] - 1:3

## 2

**2** [5] - 12:9, 13:19, 13:22, 19:1, 19:4
**20001** [2] - 2:22, 36:11
**20004** [1] - 1:16
**20036** [2] - 1:24, 2:4
**202-354-3246** [1] - 2:23
**2023** [2] - 1:6, 36:7
**20530** [1] - 1:13
**20815** [1] - 2:8
**21** [1] - 1:6
**21st** [1] - 36:7
**22314** [1] - 2:10
**241** [5] - 15:3, 15:6, 15:11, 16:23, 23:2
**248** [1] - 19:2
**248(a)(1** [1] - 13:22
**29** [8] - 8:18, 10:13, 10:23, 11:9, 12:10, 12:22, 14:16, 14:23
**2:00** [1] - 3:11
**2:17** [1] - 1:6

## 3

**308** [1] - 2:3
**333** [2] - 2:22, 36:11
**370th** [1] - 1:18
**3712** [1] - 2:8
**38803** [1] - 1:21
**3:05** [1] - 35:23

## 4

**404(b** [2] - 22:10, 22:13
**4506** [1] - 1:20
**48708** [1] - 2:6

## 4th

**4th** [1] - 16:4

## 5

**500** [1] - 1:24
**51525** [1] - 1:18

## 6

**6** [1] - 25:24
**600** [1] - 2:10
**601** [1] - 1:12
**6714** [2] - 2:21, 36:10
**6:00** [1] - 3:12

## 9

**950** [1] - 1:15
**9:00** [3] - 6:23, 7:20, 35:21

## A

**a.m** [2] - 3:11, 3:12
**abetted** [1] - 19:5
**ability** [1] - 36:6
**able** [3] - 3:8, 3:17, 21:11
**abortion** [7] - 15:20, 18:2, 18:7, 18:9, 18:18, 22:4, 22:7
**abortions** [2] - 15:21, 18:10
**access** [4] - 12:12, 15:24, 15:25, 16:17
**accosted** [1] - 21:9
**accosting** [1] - 21:7
**account** [1] - 4:16
**accurate** [1] - 36:4
**achieve** [1] - 18:13
**achieved** [1] - 19:10
**acquittal** [4] - 10:13, 12:22, 13:5, 13:19
**Act** [7] - 9:15, 19:2, 19:6, 19:11, 19:21, 20:20, 21:21
**acted** [1] - 21:22
**Action** [1] - 1:2
**action** [1] - 26:2
**actions** [1] - 18:23
**activism** [1] - 18:19
**actual** [1] - 10:6
**add** [1] - 19:2
**additional** [4] - 3:18, 5:12, 5:19, 10:19
**address** [2] - 14:24, 15:3
**addressed** [1] - 9:25
**adjourned** [1] - 35:23
**admits** [1] - 29:16
**admitted** [2] - 21:20, 25:18
**admonished** [1] - 5:5
**adopted** [2] - 11:17, 11:25
**advice** [6] - 26:13, 26:20, 26:25, 28:23, 30:23, 32:13
**advisement** [3] - 8:13, 22:19, 24:18
**affected** [1] - 31:6
**AFTERNOON** [2] - 1:7, 1:8
**afternoon** [7] - 3:14, 7:6, 7:9, 7:16, 7:22, 31:25, 32:1
**agreed** [7] - 15:16, 16:1, 16:6, 16:18, 17:5, 17:8, 18:14
**agreed-upon** [1] - 17:8
**agreement** [10] - 15:12, 15:25, 16:12, 16:16, 17:1, 17:6, 17:15, 17:18, 17:20, 17:22
**ahead** [2] - 6:21, 30:1
**ahold** [1] - 9:1
**aided** [1] - 19:5
**aim** [2] - 18:9, 35:19
**Alexandria** [1] - 2:10
**ALFRED** [1] - 2:2
**Alfred** [1] - 2:2
**allow** [1] - 27:23
**ambiguity** [3] - 11:23, 24:8, 24:13
**AMERICA** [1] - 1:2
**amount** [1] - 20:19
**ample** [3] - 8:14, 19:15, 19:16
**ankle** [1] - 21:18
**answer** [1] - 29:3
**anti** [4] - 15:20, 18:2, 18:7, 18:18
**anti-abortion** [4] - 15:20, 18:2, 18:7, 18:18
**apart** [1] - 5:16
**apologize** [1] - 8:4
**applies** [1] - 15:9
**apply** [4] - 23:10, 23:19, 23:25, 24:6
**appointment** [1] - 15:25
**apprehension** [1] - 20:24
**argue** [1] - 15:9
**argued** [1] - 23:24
**arguing** [1] - 23:24
**argument** [18] - 8:1, 9:13, 10:12, 10:14, 10:19, 11:15, 11:25, 15:3, 15:10, 22:21, 23:13, 23:15, 23:18, 23:19, 23:24, 24:4, 24:6, 24:11
**arguments** [1] - 24:21
**arrangements** [1] - 16:21
**arrest** [1] - 16:7
**arrested** [1] - 16:8
**Ashley** [2] - 20:14, 21:1
**aspect** [1] - 12:11
**assume** [4] - 25:20, 27:12, 28:23, 31:16
**assuming** [3] - 25:17, 26:12, 27:11
**attaches** [1] - 19:8
**attempt** [1] - 12:12
**attempted** [4] - 12:19, 14:1, 14:9, 21:7
**attention** [3] - 3:21, 35:3
**attorney** [2] - 27:6, 28:19
**Attorney's** [1] - 1:12
**audience** [1] - 18:18
**August** [3] - 1:6, 4:8, 36:7
**authenticity** [1] - 25:19
**Avenue** [6] - 1:15, 1:23, 2:3, 2:6, 2:22, 36:11
**aware** [1] - 9:24

## B

**badly** [1] - 21:18
**based** [3] - 9:3, 13:5, 27:2
**Bay** [1] - 2:6
**BEFORE** [1] - 1:9
**began** [1] - 11:15
**begged** [1] - 21:13
**behalf** [2] - 29:12, 31:15
**beliefs** [2] - 15:20, 18:7
**belongs** [1] - 3:24
**best** [1] - 36:6
**better** [1] - 9:5
**between** [4] - 16:11, 16:12, 16:15, 16:16
**beyond** [3] - 13:7, 13:13, 22:9
**biggest** [1] - 19:21
**bit** [3] - 8:4, 10:3, 11:9
**Blackstone** [1] - 11:16
**BLERINA** [1] - 1:22
**block** [4] - 15:24, 16:2, 16:17, 18:14
**blockade** [5] - 15:19, 15:21, 17:7, 18:17, 18:22
**blockaded** [2] - 22:3, 22:7
**blockaders** [2] - 16:5, 16:6
**blocked** [5] - 20:6, 20:7, 20:11, 21:2, 21:5
**bodies** [3] - 18:16, 20:3, 20:8
**bodily** [1] - 20:24
**bothering** [1] - 8:4
**Box** [1] - 1:20
**BOYLE** [2] - 1:22, 8:3
**Boyle** [1] - 1:23
**break** [1] - 6:10
**briefing** [1] - 24:21
**briefly** [1] - 22:20
**bring** [3] - 3:17, 6:22, 7:2
**brought** [1] - 24:19
**bruisings** [1] - 21:19
**burden** [8] - 28:11, 28:12, 30:7, 30:14, 32:4, 32:7, 33:5
**business** [1] - 8:1
**button** [1] - 16:4

## C

**camera** [1] - 17:14
**Cameron** [1] - 2:10
**Cannon** [2] - 9:8, 12:14
**CANNON** [9] - 1:17, 9:10, 9:15, 25:8, 25:11, 25:22, 26:1, 27:20, 35:16
**Cannon's** [1] - 10:11
**cannot** [3] - 4:18, 27:14, 33:9
**Cardiff** [1] - 2:8
**care** [2] - 7:22, 22:7
**careful** [1] - 35:5
**Caroline** [5] - 15:15, 16:3, 18:1, 18:5, 22:6
**Carson** [1] - 1:18
**case** [17] - 7:8, 7:19, 9:25, 10:4, 10:17, 11:17, 11:21, 14:17, 15:1, 19:12, 22:13, 23:11, 26:6, 26:21, 30:20, 33:5, 33:12
**Center** [1] - 2:6

**certain** [1] - 17:7
**certainly** [2] - 4:16, 26:13
**certainty** [1] - 4:18
**CERTIFICATE** [1] - 36:1
**certify** [1] - 36:3
**cetera** [5] - 8:15, 11:4, 28:21, 33:16
**chains** [2] - 16:6, 18:15
**chance** [1] - 28:3
**change** [2] - 29:23, 34:16
**changes** [1] - 31:7
**charged** [4] - 10:18, 14:18, 19:4, 22:13
**Chase** [1] - 2:8
**Chevy** [1] - 2:8
**Chief** [1] - 11:19
**choose** [5] - 7:13, 26:8, 30:5, 33:8
**City** [1] - 2:6
**Civil** [1] - 1:15
**civil** [1] - 18:25
**clarify** [2] - 6:3, 25:3
**class** [1] - 14:12
**clear** [1] - 28:18
**clearly** [2] - 17:14, 20:16
**clerk** [1] - 34:23
**client** [9] - 23:19, 23:22, 23:25, 24:7, 25:2, 27:14, 29:11, 31:16, 35:11
**clients** [1] - 6:4
**climb** [1] - 20:15
**Clinic** [2] - 18:8, 20:23
**clinic** [20] - 10:5, 12:12, 15:21, 15:24, 16:1, 16:2, 16:17, 17:8, 17:9, 18:10, 18:14, 18:15, 18:24, 19:17, 19:18, 19:19, 20:1, 20:4, 20:6, 20:8, 21:13, 21:23, 22:1, 22:4, 22:7
**clinic's** [4] - 15:13, 17:23, 19:24, 20:2
**co** [5] - 15:18, 18:8, 18:23, 19:25, 21:10
**co-conspirator** [1] - 21:10
**co-conspirators** [3] - 15:18, 18:8, 19:25
**co-conspirators'** [1] - 18:23
**collective** [1] - 14:23
**collectively** [3] - 15:20, 18:1, 18:6

**COLLEEN** [1] - 1:9
**COLUMBIA** [1] - 1:1
**Commentaries** [1] - 11:16
**commission** [1] - 19:5
**commonwealth** [2] - 11:3, 23:5
**communication** [1] - 16:9
**complete** [2] - 8:18, 36:5
**completely** [1] - 30:21
**Compton** [1] - 21:17
**concerning** [2] - 4:7, 15:4
**conduct** [2] - 22:13, 22:15
**confusion** [1] - 3:9
**conjunction** [1] - 33:17
**Connecticut** [2] - 1:23, 2:3
**considered** [3] - 28:16, 30:10, 33:11
**considering** [1] - 34:2
**conspiracy** [8] - 11:10, 12:6, 12:8, 15:2, 18:25, 19:9, 19:10, 23:2
**conspirator** [1] - 21:10
**conspirators** [5] - 15:18, 15:23, 16:1, 18:8, 19:25
**conspirators'** [2] - 18:23, 22:4
**conspire** [1] - 23:3
**conspired** [3] - 11:1, 13:7, 13:14
**constitutes** [1] - 36:4
**Constitution** [2] - 2:22, 36:11
**constitution** [1] - 13:16
**constitutional** [6] - 6:1, 23:7, 26:7, 26:9, 28:9, 30:5
**construed** [1] - 24:9
**Cont** [1] - 2:1
**contents** [1] - 27:23
**continue** [1] - 30:14
**control** [5] - 26:19, 28:22, 30:19, 30:21, 33:18
**controls** [1] - 26:18
**convened** [1] - 25:12
**convict** [1] - 10:18
**conviction** [2] - 12:24, 13:21
**coordinated** [1] -

18:23
**correct** [3] - 29:13, 29:18, 29:19
**counsel** [9] - 16:3, 24:19, 25:2, 25:5, 26:14, 30:19, 33:16, 34:12, 35:15
**count** [1] - 14:24
**Count** [4] - 12:9, 12:22, 13:19, 19:1
**country** [1] - 16:20
**counts** [1] - 10:18
**course** [4] - 9:20, 9:24, 17:17, 32:12
**COURT** [73] - 1:1, 3:4, 4:2, 4:5, 4:13, 4:20, 5:5, 5:19, 5:22, 7:6, 7:11, 7:25, 8:5, 8:19, 8:23, 9:14, 10:8, 10:21, 12:3, 12:20, 12:25, 13:3, 13:10, 14:2, 14:14, 14:19, 16:13, 18:3, 21:14, 22:18, 22:23, 23:15, 23:18, 23:23, 24:3, 24:11, 24:14, 24:15:10, 25:16, 25:25, 26:3, 27:5, 27:10, 27:25, 29:2, 29:7, 29:10, 29:18, 29:20, 29:23, 30:1, 30:18, 31:9, 31:14, 31:20, 31:22, 32:1, 32:11, 32:19, 32:21, 32:24, 33:3, 33:15, 33:23, 34:4, 34:7, 34:10, 34:19, 34:24, 35:11, 35:15, 35:18, 36:1
**court** [2] - 14:3, 25:11
**Court** [19] - 2:8, 2:19, 2:21, 9:24, 11:17, 11:20, 12:15, 14:23, 15:10, 16:10, 21:1, 21:3, 22:10, 24:19, 28:13, 29:16, 32:5, 34:23, 36:10
**Court's** [1] - 3:20
**Courthouse** [1] - 2:21
**courtroom** [4] - 4:1, 4:17, 34:25, 35:20
**CRABB** [5] - 1:11, 5:18, 5:20, 7:9, 35:14
**CRAMPTON** [1] - 1:19
**CRC** [2] - 2:20, 36:9
**criminal** [1] - 22:15
**Criminal** [3] - 1:2, 1:15, 10:23
**CRR** [2] - 2:20, 36:9
**CRT** [1] - 1:14

**culpability** [1] - 19:7

**D**

**D.C** [2] - 1:5, 36:11
**Dated** [1] - 36:7
**Davis** [4] - 15:15, 18:1, 18:6, 22:6
**Davis'** [1] - 16:3
**DC** [5] - 1:13, 1:16, 1:24, 2:4, 2:22
**deal** [1] - 11:7
**decide** [7] - 26:25, 27:14, 28:13, 30:9, 30:11, 31:10, 32:5
**decided** [5] - 27:19, 27:20, 29:20, 31:2, 34:1
**decides** [1] - 29:3
**deciding** [1] - 5:6
**decision** [33] - 3:13, 3:16, 6:9, 11:19, 25:7, 26:11, 26:14, 26:19, 26:20, 27:2, 27:7, 28:3, 28:19, 28:20, 28:24, 29:4, 29:17, 30:22, 30:24, 31:1, 31:4, 31:5, 31:12, 32:11, 32:13, 32:16, 33:15, 33:18, 33:20, 33:23, 33:25, 34:14
**decision-making** [1] - 28:24
**decisions** [2] - 26:15, 28:20, 33:17
**defendant** [5] - 11:25, 17:19, 19:5, 19:8, 19:20
**Defendant** [11] - 1:17, 2:2, 2:5, 2:7, 2:9, 3:23, 15:17, 16:11, 16:20, 21:6, 21:9
**DEFENDANT** [19] - 27:3, 27:9, 29:1, 29:6, 29:8, 29:19, 29:22, 29:25, 30:17, 31:13, 31:25, 32:10, 32:23, 33:14, 33:22, 34:3, 34:6, 34:9, 34:18
**defendant's** [4] - 17:3, 17:7, 17:9, 17:17
**defendants** [19] - 9:7, 16:1, 16:25, 17:6, 17:21, 18:7, 18:13, 19:12, 19:17, 19:23, 20:3, 20:6, 20:7, 20:21, 21:13, 21:22, 22:3, 22:7, 24:10

**Defendants** [4] - 1:7, 16:15, 20:11, 22:11
**defendants'** [4] - 14:23, 18:19, 18:22, 22:17
**defense** [5] - 7:12, 10:1, 26:16, 33:17
**defined** [1] - 18:11
**defines** [3] - 19:13, 20:23, 21:24
**demonstrate** [1] - 14:7
**denied** [1] - 22:17
**DENNIS** [1] - 1:22
**deny** [1] - 14:23
**deputy** [1] - 34:23
**despite** [1] - 15:6
**details** [1] - 27:21
**determined** [2] - 13:7, 13:13
**develop** [1] - 24:22
**different** [4] - 3:10, 6:11, 24:1, 27:18
**difficult** [1] - 19:15
**directed** [1] - 25:6
**discuss** [4] - 3:8, 6:20, 19:2, 26:16
**discussed** [3] - 15:19, 15:23, 16:5
**discussing** [4] - 16:19, 25:17, 32:25, 34:11
**discussion** [1] - 27:13
**discussions** [1] - 29:9
**dismiss** [5] - 9:12, 10:11, 10:23, 14:16, 15:10
**distilled** [1] - 23:20
**district** [3] - 13:9, 13:15, 23:6
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [1] - 15:17
**Division** [1] - 1:15
**docket** [1] - 35:2
**docketing** [1] - 35:11
**document** [1] - 34:23
**doings** [1] - 33:16
**DOJ** [1] - 1:14
**DOJ-CRT** [1] - 1:14
**done** [1] - 25:1
**door** [5] - 19:19, 19:22, 20:11, 21:4, 21:8
**doors** [10] - 16:2, 18:15, 20:4, 20:6, 20:7, 20:8, 20:9, 20:11, 21:2, 21:5
**doubt** [2] - 13:7, 13:13
**down** [7] - 13:10, 14:4, 16:13, 18:3, 21:14,

30:2, 34:19
**drafted** [1] - 23:13
**drive** [1] - 25:15
**DUNN** [17] - 2:5, 8:17,
8:22, 10:22, 12:5,
22:20, 22:24, 23:17,
23:21, 24:1, 24:8,
24:12, 31:5, 31:19,
31:21, 35:9, 35:17
**Dunn** [7] - 2:5, 10:21,
15:4, 23:16, 30:3,
31:15, 35:7
**during** [2] - 3:25,
21:17

## E

**easier** [1] - 25:5
**easily** [1] - 15:10
**editorial** [1] - 26:1
**either** [5] - 5:8, 5:14,
14:17, 26:21, 34:13
**element** [17] - 9:21,
9:25, 14:24, 15:11,
16:23, 16:24, 17:1,
17:21, 17:25, 19:3,
19:11, 19:15, 19:16,
20:20, 21:21, 22:2
**elements** [3] - 10:4,
10:17, 14:17
**elevate** [1] - 12:15
**elevator** [1] - 16:4
**email** [4] - 35:3, 35:7,
35:9, 35:12
**emphasize** [2] - 30:14,
32:7
**emphasized** [1] -
30:13
**employees** [4] - 15:14,
19:18, 20:1, 20:22
**employees'** [1] - 17:23
**enacted** [1] - 23:17
**encourage** [1] - 18:18
**end** [2] - 6:18, 28:2
**engage** [1] - 18:18
**engaging** [1] - 22:12
**England** [1] - 11:16
**enjoyment** [4] - 13:9,
13:15, 23:6, 23:11
**ensure** [1] - 15:25
**enter** [7] - 18:14,
19:17, 20:9, 21:3,
21:4, 21:8, 21:12
**entered** [1] - 19:23
**entry** [4] - 17:18,
18:24, 19:14, 21:18
**equal** [2] - 28:11, 30:6
**Era** [1] - 15:7
**error** [1] - 12:2
**escalate** [2] - 4:24

**establish** [3] - 14:17,
22:11, 22:14
**established** [4] -
14:25, 17:1, 22:5,
22:6
**establishes** [1] -
17:25
**et** [5] - 8:15, 11:4,
28:21, 33:16
**event** [3] - 17:5, 17:13,
17:16
**evidence** [47] - 7:13,
9:3, 10:3, 10:6,
10:25, 11:4, 12:18,
12:23, 13:6, 13:12,
13:20, 13:23, 14:6,
14:22, 14:25, 16:10,
16:22, 17:1, 17:3,
17:18, 17:24, 17:25,
18:5, 18:20, 18:24,
19:3, 19:16, 21:20,
22:1, 22:9, 22:10,
23:21, 24:12, 26:21,
28:10, 28:15, 28:16,
28:17, 30:7, 30:11,
32:3, 33:6, 33:8,
33:10, 33:11
**exact** [1] - 6:6
**exactly** [1] - 11:1
**example** [1] - 20:14
**exclude** [1] - 27:22
**excuse** [6] - 3:7, 5:22,
7:2, 7:15, 22:21,
35:18
**excused** [1] - 35:22
**exercise** [4] - 13:9,
13:15, 23:6, 23:11
**exercised** [2] - 13:17,
23:8
**exhibits** [1] - 5:19
**exit** [2] - 19:14, 20:9
**experiencing** [1] -
20:18
**explained** [1] - 27:3
**extra** [1] - 3:17
**extreme** [1] - 18:18

## F

**FACE** [11] - 9:15, 10:5,
10:6, 13:22, 13:23,
19:2, 19:6, 19:11,
19:21, 20:20, 21:21
**Facebook** [2] - 17:11,
18:20
**facie** [2] - 10:17, 15:1
**facility** [3] - 15:22,
19:14, 22:3
**fact** [3] - 13:6, 15:6,
21:6

**factor** [1] - 29:17
**fails** [1] - 14:17
**fair** [1] - 5:6
**fake** [1] - 15:25
**fallen** [1] - 10:7
**famous** [1] - 11:17
**far** [2] - 10:4, 11:1
**fast** [3] - 13:10, 14:2,
23:3
**faster** [2] - 14:4, 14:5
**favorable** [3] - 10:16,
11:25, 14:22
**FBI** [2] - 5:1, 5:12
**fear** [1] - 9:18
**Federal** [1] - 10:23
**felony** [1] - 19:20
**female** [2] - 23:25,
24:7
**females** [1] - 15:9
**figure** [1] - 35:21
**figured** [1] - 4:13
**figuring** [1] - 27:16
**file** [2] - 8:15, 8:25
**filed** [2] - 3:11, 8:25
**final** [4] - 6:9, 6:17,
17:21, 21:21
**fine** [6] - 8:5, 8:9, 8:10,
24:14, 31:3, 33:24
**finish** [2] - 6:10, 34:21
**finishing** [1] - 35:4
**first** [11] - 4:12, 7:25,
10:25, 11:13, 12:5,
15:11, 15:14, 16:23,
18:21, 19:11, 19:22
**five** [1] - 8:10
**flash** [1] - 25:15
**flat** [1] - 10:7
**floor** [1] - 20:18
**Floor** [1] - 16:4
**flyers** [1] - 3:25
**focused** [2] - 3:10,
6:11
**followed** [1] - 4:12
**following** [5] - 3:2,
7:4, 7:23, 15:22,
18:24
**foolishness** [1] -
23:12
**footage** [3] - 18:22,
20:5, 22:5
**FOR** [1] - 1:1
**force** [11] - 9:16,
12:13, 12:18, 12:19,
13:24, 14:7, 19:12,
19:17
**forced** [7] - 17:18,
18:24, 20:15, 20:18,
21:18, 30:25, 33:19
**foregoing** [1] - 36:4

**forget** [1] - 25:9
**forward** [2] - 26:17,
34:21
**four** [1] - 8:9
**frankly** [1] - 3:10
**free** [5] - 13:9, 13:15,
23:6, 23:11, 30:25
**freedom** [2] - 9:19,
20:25
**front** [1] - 24:19
**full** [2] - 4:21, 36:5
**fully** [1] - 24:23

## G

**gallery** [1] - 3:22
**Geraghty** [7] - 14:15,
16:11, 16:16, 21:7,
24:17, 33:1, 33:3
**GERAGHTY** [8] - 1:6,
2:10, 33:14, 33:22,
34:3, 34:6, 34:9,
34:18
**Goodman** [13] - 12:23,
12:24, 13:7, 13:13,
13:20, 13:21, 13:25,
14:7, 20:11, 21:10,
22:12, 24:17, 31:24
**GOODMAN** [5] - 1:6,
2:8, 31:25, 32:10,
32:23
**government** [18] - 3:5,
4:9, 7:7, 7:10, 10:16,
14:19, 14:22, 14:25,
15:14, 16:9, 17:2,
19:4, 19:7, 20:5,
22:16, 24:24, 30:15,
35:13
**government's** [9] -
4:9, 9:3, 10:2, 14:16,
28:12, 30:7, 32:4,
32:7, 33:5
**ground** [4] - 10:25,
11:9, 21:9, 21:12
**grounds** [1] - 10:24
**group** [8] - 15:19,
16:5, 16:6, 17:4,
17:12, 18:1, 18:6,
19:21
**growing** [1] - 16:18
**GUILLAUME** [3] - 2:2,
10:10, 29:14
**Guillaume** [3] - 2:2,
10:9, 28:6
**guilt** [5] - 26:10,
28:14, 30:13, 32:6,
33:9
**guilty** [1] - 19:20

## H

**hallway** [3] - 20:18,
21:6, 25:13
**hand** [1] - 33:7
**handing** [1] - 3:24
**HANDY** [4] - 1:5, 1:17,
27:3, 27:9
**Handy** [9] - 3:23, 9:9,
9:12, 16:11, 16:15,
16:20, 22:11, 24:16,
26:4
**harder** [1] - 13:3
**HARIVADAN** [1] - 1:14
**harm** [1] - 9:19
**Hawaii** [1] - 25:14
**hazardous** [2] - 19:15,
20:16
**health** [6] - 9:23,
14:13, 17:24, 18:11,
21:24, 21:25
**hear** [1] - 13:1
**heard** [3] - 21:1, 21:3,
21:16
**hearing** [3] - 3:3, 7:5,
7:24
**Heather** [1] - 11:1
**HEATHER** [2] - 1:6,
2:5
**held** [3] - 18:1, 18:6,
34:16
**HERB** [2] - 1:6, 2:10
**hereby** [1] - 36:3
**hinder** [3] - 11:6, 11:7,
17:22
**Hinshaw** [4] - 24:17,
28:6, 28:8, 29:18
**HINSHAW** [8] - 1:5,
2:2, 29:1, 29:6, 29:8,
29:19, 29:22, 29:25
**hold** [6] - 19:22,
26:10, 28:14, 30:13,
32:6, 33:10
**holler** [5] - 20:17,
21:4, 21:7, 21:8,
21:11
**home** [1] - 6:23
**Honor** [29] - 3:20, 5:4,
5:18, 5:20, 7:9, 8:3,
9:10, 10:10, 10:19,
10:22, 12:21, 14:15,
14:21, 18:21, 21:16,
22:10, 22:16, 22:20,
29:14, 30:17, 32:10,
32:18, 32:20, 32:23,
33:2, 33:14, 34:18,
35:14
**HONORABLE** [1] - 1:9
**housing** [1] - 16:21
**HOWARD** [1] - 2:7

**husband** [2] - 21:7, 21:12

**I**

**IA** [1] - 1:18
**Idoni** [7] - 11:1, 12:17, 15:17, 20:12, 24:17, 30:3
**IDONI** [4] - 1:6, 2:5, 30:17, 31:13
**III** - 2:2, 2:2, 2:7
**impeded** [2] - 21:9, 21:11
**impediment** [1] - 21:3
**important** [2] - 9:21, 30:18
**importantly** [1] - 32:11
**impossible** [1] - 19:14
**IN** [1] - 1:1
**incidents** [1] - 22:13
**include** [1] - 21:25
**includes** [2] - 17:2, 17:25
**including** [3] - 17:6, 19:23, 22:6
**indeed** [1] - 23:13
**indicate** [4] - 7:7, 8:8, 24:16, 27:6
**indicated** [2] - 4:9, 4:22
**indicates** [1] - 34:13
**indictment** [3] - 12:9, 14:24, 20:17
**individual** [2] - 9:9, 25:18
**individually** [2] - 6:2, 30:4
**individuals** [2] - 4:17, 4:18
**infer** [5] - 26:10, 28:14, 30:12, 32:6, 33:9
**inferentially** [1] - 15:8
**influenced** [1] - 30:24
**information** [3] - 4:19, 4:23, 5:10
**informed** [1] - 3:13
**injure** [7] - 9:17, 11:2, 13:8, 13:14, 14:9, 15:12, 23:4
**injured** [4] - 13:25, 14:8, 20:21, 21:17
**injury** [1] - 20:24
**inquiry** [2] - 9:6, 25:3
**instant** [1] - 5:11
**instead** [2] - 5:8, 7:16
**instruction** [1] - 11:6
**instructions** [3] - 6:18, 6:20, 27:17

**insufficient** [2] - 12:23, 13:20
**intended** [1] - 17:22
**intends** [1] - 31:6
**intent** [1] - 22:11
**intention** [1] - 31:8
**intentionally** [9] - 9:17, 9:19, 9:22, 13:25, 14:8, 16:25, 17:19, 20:21
**interfere** [4] - 9:19, 14:10, 17:22, 20:24
**interfered** [3] - 14:1, 14:9, 20:22
**interpretation** [1] - 11:24
**intimate** [10] - 5:8, 9:18, 11:3, 13:8, 13:14, 14:9, 14:11, 15:13, 20:23, 23:4
**intimidated** [3] - 13:25, 14:8, 20:22
**invaders** [2] - 19:23, 20:2
**invasion** [2] - 15:18, 17:4
**inventory** [1] - 5:21
**investigation** [3] - 4:21, 5:1, 5:2
**involved** [1] - 5:2
**involving** [1] - 3:21
**issue** [8] - 3:21, 5:14, 8:10, 8:24, 9:24, 28:1, 28:4, 30:21
**issues** [1] - 7:14

**J**

**JASARI** [1] - 1:22
**Jasari** [1] - 1:23
**Jean** [1] - 21:10
**John** [1] - 11:19
**JOHN** [4] - 1:5, 1:11, 2:2, 2:9
**join** [3] - 10:11, 16:18, 17:5
**joined** [3] - 16:25, 17:19, 17:22
**joining** [1] - 16:20
**Jones** [2] - 20:14, 21:1
**JR** [1] - 1:11
**judge** [1] - 8:17
**JUDGE** [1] - 1:9
**Judge** [3] - 11:19, 35:10, 35:16
**judgment** [2] - 10:13, 13:5, 13:19
**judicial** [1] - 5:7
**jury** [22] - 3:3, 3:7, 3:25, 5:16, 6:19, 7:5,

7:6, 7:20, 7:24, 8:24, 10:17, 12:15, 14:20, 26:4, 26:9, 27:17, 27:18, 28:4, 28:14, 30:12, 32:6, 33:9
**JURY** [2] - 1:4, 1:8
**jury's** [1] - 8:14
**Justice** [1] - 11:19

**K**

**keep** [1] - 20:2
**kept** [1] - 16:18
**Kiyonaga** [2] - 14:14, 33:1
**KIYONAGA** [3] - 2:9, 14:15, 33:2
**knee** [1] - 8:3
**knowledge** [1] - 22:14
**known** [1] - 13:22
**knows** [1] - 26:15
**KOLLAR** [1] - 1:9
**KOLLAR-KOTELLY** - 1:9
**KOTELLY** [1] - 1:9

**L**

**labor** [1] - 20:18
**language** [4] - 11:2, 11:10, 12:13, 22:21
**last** [4] - 4:8, 4:12, 34:14
**lastly** [4] - 17:17, 18:17, 18:21, 21:16
**Lauren** [1] - 9:12
**LAUREN** [2] - 1:5, 1:17
**law** [1] - 5:7
**Law** [1] - 2:2
**laws** [2] - 13:16, 23:8
**lawyer** [3] - 26:12, 26:25, 32:12
**lay** [2] - 20:18, 21:9
**laying** [1] - 21:12
**learned** [1] - 3:23
**least** [2] - 10:1, 29:20
**leave** [3] - 7:2, 16:7, 27:25
**leaving** [1] - 7:16
**legal** [4] - 6:25, 7:14, 26:14, 28:20
**legally** [1] - 16:3
**lenity** [4] - 11:15, 11:21, 11:22, 24:9
**light** [2] - 10:15, 14:22
**likely** [1] - 27:14
**lined** [1] - 35:21
**lines** [1] - 33:17
**link** [3] - 25:12, 25:23,

25:24
**live** [4] - 3:25, 4:3, 18:17, 26:1
**LLC** [1] - 2:2
**LLP** [1] - 1:23
**location** [1] - 17:8
**locks** [2] - 16:6, 18:15
**look** [4] - 5:13, 28:3, 34:22, 35:5
**looked** [1] - 6:7
**looking** [6] - 17:14, 25:20, 25:22, 25:25, 27:12, 34:21
**looks** [1] - 26:21
**losing** [2] - 9:4, 9:10

**M**

**male** [8] - 11:12, 11:13, 11:14, 12:1, 12:3, 15:7, 24:1
**males** [2] - 15:9, 23:22
**management** [1] - 28:4
**Marshall** [2] - 11:20, 21:10
**marshall** [1] - 11:21
**Marshals** [2] - 4:21, 5:11
**marshals** [1] - 4:24
**MARTIN** [1] - 1:17
**material** [1] - 4:25
**matters** [1] - 6:25
**MD** [1] - 2:8
**mean** [3] - 14:2, 19:13, 20:25
**meaning** [2] - 4:3, 15:23
**means** [3] - 9:18, 15:24, 23:20
**media** [2] - 4:4, 16:19
**meeting** [2] - 15:18, 17:4
**melee** [1] - 19:19
**members** [1] - 7:6
**mention** [1] - 25:8
**mentions** [1] - 11:11
**mere** [1] - 12:11
**messages** [2] - 16:11, 16:15
**met** [3] - 10:16, 17:2, 17:4
**MI** [1] - 2:6
**Michigan** [1] - 15:17
**microphone** [1] - 12:25
**might** [1] - 35:1
**mind** [3] - 29:23, 31:7, 34:16
**minutes** [4] - 8:9,

8:10, 25:4, 25:24
**misdemeanor** [2] - 12:11, 12:16
**moments** [2] - 17:8, 17:9
**monitored** [1] - 35:1
**month** [1] - 12:10
**morning** [2] - 5:23, 25:11
**most** [4] - 4:7, 10:15, 11:24, 14:22
**motion** [10] - 3:8, 8:8, 8:18, 8:20, 10:11, 10:12, 10:13, 10:22, 12:10, 12:22
**motions** [5] - 5:24, 14:23, 22:17, 24:18, 24:22
**motivation** [1] - 22:12
**move** [9] - 6:17, 10:11, 12:21, 13:5, 13:19, 19:1, 20:12, 27:17, 34:21
**movement** [2] - 9:20, 20:25
**moves** [3] - 7:17, 9:12, 14:16
**MR** [49] - 3:20, 4:3, 4:7, 4:15, 5:4, 5:18, 5:20, 7:9, 8:3, 8:17, 8:22, 9:10, 9:15, 10:10, 10:22, 12:5, 12:21, 13:1, 13:5, 13:11, 14:6, 14:15, 14:21, 16:14, 18:4, 21:15, 22:20, 22:24, 23:17, 23:21, 24:1, 24:8, 24:12, 25:8, 25:11, 25:22, 26:1, 27:20, 29:14, 31:5, 31:19, 31:21, 32:18, 32:20, 33:2, 35:9, 35:14, 35:16, 35:17
**MS** [1] - 1:21
**must** [1] - 11:25

**N**

**N.W** [1] - 36:11
**name** [4] - 4:12, 11:19, 21:17
**named** [1] - 20:17
**near** [1] - 28:2
**necessary** [2] - 10:17
**need** [11] - 3:8, 12:25, 16:13, 18:3, 21:14, 24:20, 27:6, 29:4, 34:14, 34:20, 35:4
**never** [1] - 32:4
**next** [7] - 4:10, 9:20,

15:19, 16:2, 20:3, 21:10, 23:10
**nobody** [2] - 27:17, 32:14
**notes** [1] - 36:5
**nothing** [1] - 24:24
**noticed** [1] - 11:6
**number** [4] - 7:14, 15:14, 16:17, 16:19
**numbers** [1] - 16:18
**nurse** [1] - 21:16
**NW** [4] - 1:12, 1:15, 2:3, 2:22

## O

**object** [2] - 12:7, 19:9
**objective** [1] - 18:13
**observing** [1] - 3:22
**obstruct** [1] - 20:4
**obstruction** [5] - 9:17, 13:24, 14:8, 19:12, 19:13
**obtain** [1] - 17:24
**obtaining** [2] - 14:12, 18:10
**obviates** [1] - 6:17
**obviously** [9] - 6:14, 8:7, 9:15, 10:3, 26:19, 28:9, 28:15, 28:18, 30:19
**OF** [4] - 1:1, 1:2, 1:8, 36:1
**offense** [3] - 19:3, 19:4, 19:6
**offered** [4] - 13:6, 13:12, 22:1, 22:8
**offering** [1] - 5:22
**Office** [1] - 1:12
**Offices** [1] - 2:2
**OFFICIAL** [1] - 36:1
**Official** [2] - 2:21, 36:10
**once** [1] - 11:13
**one** [18] - 3:10, 4:9, 4:18, 6:7, 6:11, 6:12, 8:21, 12:16, 25:16, 25:20, 25:22, 25:25, 30:24, 31:17, 33:19, 34:11, 34:22
**One** [1] - 13:11
**one-year** [1] - 12:16
**online** [1] - 18:17
**open** [4] - 17:10, 19:22, 20:8, 20:10
**opened** [1] - 19:19
**opportunity** [5] - 5:21, 8:12, 8:15, 14:20, 24:22
**oppress** [5] - 11:2,

13:8, 13:14, 15:13, 23:4
**oppressing** [1] - 12:11
**oppression** [1] - 12:11
**order** [7] - 7:25, 10:8, 14:11, 25:17, 28:7, 35:2, 35:8
**organization** [2] - 3:23, 3:24
**organizational** [1] - 4:16
**original** [1] - 25:14
**otherwise** [3] - 11:24, 13:22, 34:5
**outlined** [1] - 22:9
**overflow** [1] - 34:25
**own** [2] - 18:19, 27:2

## P

**P.M** [1] - 1:6
**p.m** [1] - 35:23
**P.O** [1] - 1:20
**PAAU** [2] - 3:23, 4:16
**pains** [1] - 20:18
**paragraph** [4] - 11:14, 12:5, 23:10
**part** [1] - 6:16
**participants** [2] - 16:18, 17:5
**participate** [1] - 17:15
**participating** [1] - 17:13
**participation** [2] - 17:17, 19:9
**particular** [1] - 33:12
**particularly** [1] - 27:22
**parties** [1] - 35:22
**pass** [1] - 20:10
**passed** [1] - 5:10
**passing** [1] - 4:23
**PATEL** [10] - 1:14, 3:20, 4:3, 4:7, 4:15, 5:4, 14:21, 16:14, 18:4, 21:15
**Patel** [2] - 3:18, 22:24
**Patient** [3] - 20:22, 21:1, 21:23
**patients** [2] - 15:13, 20:9
**patients'** [1] - 17:23
**PC** [1] - 2:5
**Pennsylvania** [1] - 1:15
**people** [4] - 3:22, 5:1, 5:5, 16:19
**permission** [1] - 18:14
**person** [16] - 9:16, 9:18, 9:22, 11:3, 11:12, 12:7, 13:8,

13:15, 14:10, 14:11, 17:4, 17:6, 23:4, 23:5
**person's** [2] - 9:19, 20:25
**personal** [1] - 5:14
**persons** [3] - 14:12, 15:12, 23:3
**persuade** [1] - 32:14
**physical** [6] - 9:16, 13:24, 14:8, 19:12, 19:13, 21:11
**physically** [2] - 20:1, 20:3
**pick** [1] - 7:20
**picture** [1] - 17:12
**pictures** [1] - 21:19
**Pinkerton** [1] - 19:8
**place** [2] - 4:23, 15:21
**Plaintiff** [2] - 1:3, 1:11
**plan** [2] - 6:21, 22:14
**planned** [2] - 15:18, 15:20
**play** [1] - 17:6
**pleaded** [1] - 19:20
**pleadings** [1] - 8:15
**point** [19] - 7:7, 7:11, 7:21, 8:19, 8:23, 9:12, 12:13, 24:24, 26:5, 27:6, 28:1, 29:15, 29:21, 29:22, 29:24, 31:5, 31:8, 31:11, 35:22
**police** [1] - 20:13
**possession** [1] - 23:6
**posts** [3] - 4:4, 16:19, 18:20
**potential** [1] - 11:11
**pre** [2] - 15:18, 17:4
**pre-invasion** [2] - 15:18, 17:4
**predicated** [1] - 9:20
**prefer** [1] - 3:16
**pregnancy** [1] - 21:25
**premises** [1] - 16:8
**presence** [7] - 3:3, 7:4, 7:24, 17:3, 17:7, 17:9, 21:11
**present** [8] - 7:13, 26:21, 28:10, 29:19, 30:6, 32:3, 33:6, 33:8
**presented** [4] - 15:1, 16:10, 24:24, 28:21
**preserve** [1] - 8:8
**preserved** [1] - 24:21
**pressed** [1] - 16:4
**prevent** [3] - 15:21, 17:23, 18:9
**prevented** [1] - 23:22

**prima** [2] - 10:16, 15:1
**principal** [1] - 8:10
**privacy** [1] - 5:14
**privilege** [2] - 13:16, 23:7
**Procedure** [1] - 10:24
**procedures** [3] - 26:15, 28:21, 30:20
**proceed** [3] - 3:5, 6:24, 26:15
**proceeding** [1] - 14:4
**proceedings** [6] - 3:2, 5:8, 6:24, 7:4, 7:23, 36:6
**professional** [1] - 26:17
**prohibited** [1] - 22:12
**promise** [1] - 11:18
**pronoun** [3] - 11:14, 12:1, 15:7
**pronouns** [5] - 11:13, 12:3, 15:4, 23:24, 24:2
**proof** [2] - 9:15, 22:14
**proposed** [1] - 11:6
**protest** [1] - 16:3
**prove** [1] - 33:5
**provide** [1] - 5:12
**provided** [1] - 10:17
**provides** [1] - 18:9
**providing** [4] - 9:22, 14:12, 18:10, 21:23
**pseudonym** [2] - 4:11, 4:12
**purposes** [1] - 27:13
**pursuant** [4] - 10:12, 10:23, 12:22, 14:16
**push** [1] - 19:22
**pushed** [1] - 20:1
**put** [5] - 3:14, 7:12, 9:18, 11:6, 28:1

## Q

**quarter** [2] - 35:20
**questions** [1] - 25:6
**quick** [4] - 5:24, 8:21, 34:22
**quickly** [2] - 15:3, 35:6
**quirky** [1] - 11:10
**quotes** [1] - 4:12

## R

**raise** [1] - 26:16
**raised** [3] - 12:14, 15:4, 33:18
**rather** [2] - 3:16, 7:1
**reached** [1] - 15:12
**read** [2] - 22:25, 24:4

**ready** [1] - 7:20
**reaffirmed** [1] - 11:20
**real** [2] - 4:4, 4:11
**real-time** [1] - 4:4
**realize** [1] - 6:12
**really** [4] - 3:12, 9:25, 28:3, 28:20
**reasonable** [3] - 9:18, 13:7, 13:13
**reasons** [1] - 22:16
**receptionist's** [1] - 20:16
**reconstruction** [1] - 23:14
**Reconstruction** [1] - 15:6
**record** [4] - 8:9, 8:13, 9:5, 22:25
**refer** [1] - 4:20
**referring** [2] - 12:6, 15:8
**refused** [1] - 20:12
**regarding** [2] - 12:13, 22:21
**relate** [1] - 16:22
**relates** [1] - 19:3
**relating** [1] - 4:22
**relied** [1] - 6:7
**relies** [3] - 15:14, 16:9, 19:7
**rely** [3] - 6:5, 8:15, 22:10
**relying** [4] - 31:16, 31:18, 32:19, 34:4
**remark** [1] - 11:18
**reminded** [1] - 6:2
**rendering** [1] - 19:13
**Reporter** [3] - 2:19, 2:21, 36:10
**REPORTER** [1] - 36:1
**reporter** [1] - 14:3
**reproductive** [6] - 9:23, 14:12, 17:24, 18:11, 21:24, 21:25
**require** [1] - 16:24
**required** [1] - 7:12
**requires** [5] - 9:15, 13:23, 15:11, 20:21, 21:22
**requisite** [2] - 14:17, 22:11
**rescue** [1] - 15:23
**resolve** [3] - 11:24, 24:8, 24:12
**resources** [1] - 5:13
**respect** [4] - 5:7, 12:9, 12:10, 12:17
**respond** [2] - 14:20, 22:20
**responsibility** [4] -

27:1, 28:24, 30:23, 32:13
**rest** [3] - 3:7, 6:23, 34:14
**resting** [3] - 3:6, 5:17, 7:8
**restrict** [1] - 20:25
**restricting** [1] - 20:25
**rests** [5] - 7:10, 26:6, 27:7, 29:3, 29:24
**result** [1] - 20:14
**resulting** [1] - 21:12
**review** [1] - 5:25
**reviewing** [1] - 6:11
**Rights** [1] - 1:15
**rights** [14] - 6:1, 11:10, 12:6, 12:7, 17:23, 18:25, 23:2, 28:9, 30:16, 32:2, 32:8, 33:4, 33:13, 34:17
**risk** [1] - 16:7
**RMR** [2] - 2:20, 36:9
**ROBERT** [1] - 2:5
**Robert** [1] - 2:5
**role** [2] - 16:3, 17:7
**Room** [2] - 2:21, 36:10
**room** [6] - 7:20, 19:24, 20:2, 20:10, 21:4, 21:8
**ropes** [1] - 18:15
**ruckus** [1] - 10:3
**rudimentary** [1] - 9:13
**rule** [5] - 5:7, 11:15, 11:20, 11:22, 24:9
**Rule** [8] - 8:18, 10:13, 10:23, 11:9, 12:10, 12:22, 14:16, 14:23
**Rules** [1] - 10:23
**ruling** [3] - 3:9, 25:4, 27:21
**rush** [1] - 3:16

## S

**safety** [1] - 5:15
**SANJAY** [1] - 1:14
**Sara** [1] - 21:17
**saw** [1] - 16:10
**scheduled** [1] - 17:10
**seated** [1] - 4:17
**second** [4] - 11:9, 11:14, 16:24, 20:20
**seconds** [1] - 25:24
**Section** [5] - 1:15, 15:6, 15:11, 16:23, 19:4
**section** [1] - 23:2
**sections** [1] - 13:21
**secured** [2] - 13:16, 23:7

**security** [1] - 3:21
**see** [5] - 3:11, 8:24, 23:15, 34:24, 35:19
**seeking** [1] - 9:22
**seem** [1] - 11:23
**Sefranek** [3] - 2:20, 36:9, 36:9
**SEFRANEK** [1] - 36:3
**selection** [1] - 3:25
**send** [2] - 6:23, 35:3
**sense** [1] - 33:24
**sent** [3] - 25:12, 25:23, 35:9
**service** [1] - 18:12
**Service** [2] - 4:21, 5:11
**services** [7] - 9:23, 14:13, 17:24, 18:9, 21:24, 21:25, 22:1
**SESSION** [2] - 1:7, 1:8
**several** [1] - 19:25
**shifted** [1] - 32:4
**short** [1] - 8:7
**shoved** [1] - 20:1
**showed** [3] - 16:11, 16:16, 21:6
**showing** [7] - 16:24, 17:3, 17:13, 17:14, 19:19, 21:22, 25:23
**shown** [1] - 25:13
**shows** [2] - 19:25, 20:6
**sic** [2] - 3:21, 21:19
**side** [1] - 25:2
**signal** [1] - 16:7
**significant** [1] - 20:19
**signs** [1] - 4:22
**simply** [1] - 11:22
**sit** [2] - 30:1, 34:19
**sits** [1] - 10:2
**sitting** [1] - 3:22
**six** [1] - 12:10
**six-month** [1] - 12:10
**slow** [5] - 13:10, 14:4, 16:13, 18:3, 21:14
**smiling** [1] - 17:13
**Smith** [3] - 4:10, 4:11, 19:20
**smoothly** [1] - 7:18
**social** [2] - 4:4, 16:19
**Society** [2] - 1:17, 1:20
**sometime** [1] - 26:5
**somewhere** [1] - 28:2
**soon** [1] - 6:10
**sorry** [7] - 8:3, 12:3, 13:1, 13:11, 16:14, 18:4, 21:15
**sought** [1] - 21:23

**sound** [1] - 13:1
**speaking** [1] - 28:19
**specific** [1] - 26:6
**specifically** [1] - 13:23
**spoken** [1] - 26:12
**sprained** [1] - 21:18
**staff** [3] - 20:8, 20:10, 20:11
**stage** [1] - 10:15
**stand** [2] - 6:5, 30:9
**standpoint** [1] - 10:1
**start** [4] - 9:8, 13:2, 14:6, 15:2
**starts** [1] - 25:23
**state** [2] - 11:3, 23:5
**statements** [1] - 22:4
**STATES** [3] - 1:1, 1:2, 1:9
**states** [1] - 11:22
**States** [3] - 2:21, 13:17, 23:8
**statute** [17] - 11:2, 11:8, 11:10, 11:23, 12:6, 15:2, 15:5, 15:7, 19:13, 20:23, 21:24, 22:22, 23:13, 23:17, 23:25, 24:4
**statutes** [1] - 14:18
**statutorily** [1] - 18:11
**statutory** [1] - 22:21
**stenographic** [1] - 36:5
**Stenographic** [1] - 2:19
**STEPHEN** [1] - 1:19
**still** [4] - 6:16, 31:14, 31:15, 34:1
**stood** [1] - 8:5
**streamed** [1] - 18:17
**Street** [3] - 1:12, 1:18, 2:10
**strictly** [1] - 24:23
**strong** [3] - 15:20, 18:2, 18:6
**strongest** [1] - 19:21
**struggled** [1] - 20:1
**stuff** [1] - 26:1
**subject** [1] - 11:5
**submitting** [1] - 4:3
**suffered** [1] - 21:18
**Suite** [2] - 1:24, 2:3
**supervisors** [1] - 4:25
**supposed** [1] - 4:5
**Supreme** [2] - 11:16, 11:20
**Surgi** [2] - 18:8, 20:23
**Surgi-Clinic** [2] - 18:8, 20:23
**suspicions** [1] - 4:16

**sustain** [2] - 12:23, 13:20
**sustained** [1] - 21:19

## T

**Tamara** [3] - 2:20, 36:9, 36:9
**TAMARA** [1] - 36:3
**targeted** [1] - 18:8
**tendering** [1] - 34:23
**termination** [1] - 21:25
**terms** [10] - 4:21, 5:14, 6:21, 9:4, 11:12, 25:4, 26:6, 26:17, 28:4, 30:20
**territory** [1] - 11:3, 23:5
**testified** [6] - 4:11, 15:16, 20:15, 21:2, 21:17, 30:10
**testifies** [1] - 27:17
**testify** [34] - 6:15, 6:16, 7:13, 25:18, 26:7, 26:22, 27:15, 28:10, 28:11, 28:13, 28:15, 29:13, 29:16, 29:21, 30:5, 30:6, 30:9, 30:12, 30:22, 31:6, 31:8, 31:11, 32:2, 32:5, 32:8, 32:9, 33:4, 33:6, 33:7, 33:9, 33:10, 34:3, 34:13
**testifying** [4] - 4:10, 6:17, 34:1, 34:5
**testimonial** [3] - 17:2, 17:25, 18:5
**testimony** [5] - 15:15, 19:18, 20:5, 22:5, 27:24
**text** [2] - 16:10, 16:15
**THE** [74] - 1:1, 1:1, 1:9, 3:4, 4:2, 4:5, 4:13, 4:20, 5:5, 5:19, 5:22, 7:6, 7:11, 7:25, 8:5, 8:19, 8:23, 9:14, 10:8, 10:21, 12:3, 12:20, 12:25, 13:3, 13:10, 14:2, 14:14, 14:19, 16:13, 18:3, 21:14, 22:18, 22:23, 23:15, 23:18, 23:23, 24:3, 24:11, 24:14, 25:10, 25:16, 25:25, 26:3, 27:5, 27:10, 27:25, 29:2, 29:7, 29:10, 29:18, 29:20, 29:23, 30:1, 30:18,

31:9, 31:14, 31:20, 31:22, 32:1, 32:11, 32:19, 32:21, 32:24, 33:3, 33:15, 33:23, 34:4, 34:7, 34:10, 34:19, 34:24, 35:11, 35:15, 35:18
**Thomas** [1] - 1:17
**thomas** [1] - 1:20
**threat** [3] - 9:16, 13:24, 14:7
**threaten** [5] - 11:2, 13:8, 13:14, 15:13, 23:4
**three** [4] - 11:11, 11:12, 12:1, 24:1
**Tina** [1] - 4:11
**today** [2] - 6:18, 9:11
**tomorrow** [4] - 5:23, 6:24, 26:5, 35:19
**totally** [3] - 28:22, 31:12, 33:19
**TRANSCRIPT** [1] - 1:8
**transcript** [4] - 9:2, 36:4, 36:6
**transcripts** [1] - 8:16
**travel** [1] - 15:16
**trial** [10] - 3:22, 4:8, 5:7, 16:2, 16:10, 18:22, 20:15, 21:10, 33:16, 35:23
**TRIAL** [2] - 1:4, 1:8
**trouble** [1] - 14:3
**true** [3] - 22:25, 36:4, 36:5
**try** [1] - 23:3
**trying** [6] - 5:8, 6:21, 7:17, 15:9, 30:20, 33:24
**Tupelo** [1] - 1:21
**turns** [1] - 27:1
**tweeted** [3] - 4:11, 4:15, 4:19
**tweeting** [2] - 3:25, 4:3
**two** [5] - 10:24, 11:13, 15:12, 23:2, 25:4
**type** [1] - 18:11
**typographical** [1] - 12:2

## U

**U.S** [4] - 1:12, 11:16, 11:17, 11:21
**U.S.C** [4] - 13:21, 15:3, 19:2, 19:4
**ultimate** [1] - 27:7
**ultimately** [2] - 26:5, 26:20

**unable** [4] - 20:8, 20:9, 20:10, 21:2
**under** [6] - 4:11, 8:13, 14:18, 19:8, 22:19, 24:18
**underwhelming** [1] - 10:7
**undisputed** [1] - 22:1
**UNITED** [3] - 1:1, 1:2, 1:9
**United** [3] - 2:21, 13:17, 23:8
**unless** [1] - 31:7
**unlikely** [1] - 29:15
**unreasonably** [1] - 19:14
**up** [9] - 4:25, 7:20, 24:19, 25:2, 25:13, 30:9, 31:10, 34:13, 35:21
**uses** [1] - 9:16
**usual** [1] - 10:8
**utterly** [1] - 10:6

## V

**VA** [1] - 2:10
**verbs** [1] - 11:5
**verdict** [3] - 8:14, 8:24, 24:20
**victim** [2] - 12:7, 20:17
**victims** [2] - 11:11
**video** [30] - 3:9, 6:5, 6:6, 9:7, 17:2, 18:22, 19:19, 19:25, 20:5, 21:6, 22:5, 25:4, 25:14, 27:11, 27:22, 27:23, 29:10, 29:16, 31:6, 31:15, 31:17, 31:18, 31:23, 32:19, 32:21, 34:4, 34:7, 34:21, 35:5
**videos** [1] - 18:19
**viewing** [1] - 14:21
**viewpoints** [1] - 3:15
**violated** [3] - 12:7, 12:24, 13:21
**violating** [1] - 10:5
**violation** [3] - 10:6, 13:23, 19:20
**violence** [3] - 12:13, 12:18, 12:19
**voice** [1] - 9:11
**voluntarily** [2] - 16:25, 17:19
**voluntary** [2] - 31:1, 33:20
**vs** [1] - 1:4

## W

**wait** [2] - 7:1, 31:3
**waiting** [5] - 19:24, 20:2, 20:10, 21:4, 21:8
**walkover** [2] - 17:8, 17:11
**Walsh** [2] - 12:20, 31:24
**WALSH** [8] - 2:7, 12:21, 13:1, 13:5, 13:11, 14:6, 32:18, 32:20
**Washington** [9] - 1:5, 1:13, 1:16, 1:24, 2:4, 2:22, 18:8, 20:23, 36:11
**ways** [1] - 10:5
**week** [1] - 4:8
**whole** [1] - 14:4
**WILLIAM** [2] - 1:6, 2:8
**wiltberger** [1] - 11:18
**window** [1] - 20:16
**wish** [2] - 26:21, 30:21
**wished** [1] - 27:1
**witness** [2] - 20:5, 25:13
**witnesses** [2] - 4:10, 22:6
**women** [2] - 16:4, 18:10
**word** [1] - 11:12
**words** [1] - 18:19
**worry** [1] - 31:22
**writing** [3] - 3:14, 8:18, 9:1
**written** [1] - 11:19

## Y

**year** [1] - 12:16
**YouTube** [3] - 25:12, 25:14, 25:23